**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **ANAHEIM GARDENS, et al.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br>**Defendant.** | No. 93-655C<br>Judge Robert H. Hodges, Jr. |

**PLAINTIFFS' OPPOSITION TO**
**<u>DEFENDANT'S MOTION TO COMPEL ANSWERS TO INTERROGATORIES</u>**

Harry J. Kelly
NIXON PEABODY LLP
401 Ninth Street, N.W., Suite 900
Washington, D.C. 20004
(202) 585-8000

Counsel for the Plaintiffs

Dated: March 15, 2007

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

APPENDIX CONTENTS LIST ........ iii

FACTUAL AND PROCEDURAL BACKGROUND........ 1

ARGUMENT ........ 4

I Contrary to the Motion's Contentions, the Plaintiffs Have Provided Substantial Discovery To the Government. ........ 4

II The Plaintiffs Have Met Their Obligations To Respond to Interrogatory Nos. 5 and 6. .... 5

A. The Plaintiffs Provided Good Faith Responses to These Inartful Interrogatories. ........ 5

B. Having Acknowledged The Defects In Its Original Interrogatories, The Government Should Be Required To Submit New Interrogatories. ........ 7

III It Is Premature To Ask the Plaintiffs To Respond to Interrogatory 7. ........ 8

A. Plaintiffs' Objections to This Interrogatory Were Well-Founded. ........ 8

B. The Abrupt Filing Of the Motion Preempted The Plaintiffs From Presenting A Reasonable Solution Here. ........ 11

CONCLUSION ........ 12

# TABLE OF AUTHORITIES

## CASES

Capacchhione v. Charlotte Mecklenburg Schools, 182 F.R.D. 486 (W.D. N.C. 1998)....................10

Hendler v. United States, 952 F.2d 1364 (Fed. Cir. 1991)....................9

Independence Tube Corp. v. Copperweld Corp., 543 F. Supp. 706 (N.D. Ill. 1982)....................9

Kendrick v. Sullivan, 125 F.R.D. 1 (D.D.C. 1989)....................8, 10

O'Connor v. Boeing North Am, Inc., 185 F.R.D. 272 (C.D. Cal. 1999)....................9

Palazzolo v. Rhode Island, 533 U.S. 606 (2001)....................7

## COURT RULES

RCFC 33(c)....................9

# APPENDIX CONTENTS LIST


| | |
|---|---|
| Exhibit A | January 26, 2007 Letter to Harry Kelly from David Harrington |
| Exhibit B | Plaintiffs' Responses To Defendant's First Set Of Interrogatories |
| Exhibit C | February 5, 2007 Letter to Harry Kelly from David Harrington |
| Exhibit D | February 14, 2007 Letter to David Harrington from Harry Kelly |
| Exhibit E | February 22, 2007 Letter to Harry Kelly from David Harrington |
| Exhibit F | December 6, 2006 E-mail Message to David Harrington from Harry Kelly |
| Exhibit G | January 12, 2006 Letter to David Harrington from Harry Kelly |

**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **ANAHEIM GARDENS, et al.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br>**Defendant.** | No. 93-655C<br>Judge Robert H. Hodges, Jr. |

**PLAINTIFFS' OPPOSITION TO**
**<u>DEFENDANT'S MOTION TO COMPEL ANSWERS TO INTERROGATORIES</u>**

The Plaintiffs oppose the Motion To Compel Answers To Interrogatories (the "Motion") recently filed by the Government and ask the Court to deny the Motion in its entirety. Contrary to the impression that the Motion attempts to create, the Plaintiffs have fully satisfied their discovery obligations, providing written responses to the Government's interrogatories and requests for admissions, as well as more than 90,000 pages of documents pursuant to the Government's requests and a lengthy index to those documents. The most serious flaw with the Motion, however, is that the Plaintiffs have already offered what the Motion now seeks – supplemental responses – when discovery is more complete. The Court should deny the Motion, therefore, and allow the Plaintiffs to supplement their present responses, as the Plaintiffs previously committed to do, when discovery in this case is more complete.

**<u>FACTUAL AND PROCEDURAL BACKGROUND</u>**

The procedural history presented in the Motion is incomplete and inaccurate. The following constitutes a summary of the most pertinent factual and procedural background for the pending dispute:

First, as both parties have recognized, discovery in this case poses a number of challenges due to the dozens of plaintiffs involved, the many locations across the country where documents and witnesses are located, and the multiple filing and retrieval systems used by the parties in this case. In fact, in documenting its request for a second extension of its deadline to respond to the Plaintiffs' discovery requests, the Government's counsel accurately stated the discovery difficulties both sides have experienced:

> As you [are] aware, your discovery requests require compiling documents and obtaining information from various . . . offices. Much of the information is years old, has been archived, and is not readily available. Further, many . . . employees who worked on the plaintiffs' projects have retired or are no longer [available].

Letter to Harry Kelly from David Harrington dated January 26, 2007 (the "January 26 Letter") at 1 (Exh. A). The present dispute emerges from this context.

In recognition of these difficulties, both sides cooperated to resolve discovery issues and to provide sufficient time to respond to each others requests. For example, in response to its document production requests issued in July 2006 , the Government agreed to a "rolling" production, whereby the Plaintiffs made their initial production 45 days after the Government served its requests. Plaintiffs made additional productions as documents were received from the Plaintiffs' files through December 2006.[1] Similarly, after the Plaintiffs served their discovery requests in October 2007, the Government received two extensions of its discovery deadline, which is now set for April 9, 2007. *See* January 26 Letter at 1. The parties also agreed to ask the

---

1 The discovery chronology offered by the Government is misleading. The Motion states that "[u]pon remand, the Court established a five-month period for discovery on ripeness issues" pursuant to the Court's August 14, 2006 Order (the "Discovery Order") and "the United State promptly served written discovery seeking" (Motion at 3). This suggests that the Government served the interrogatories "promptly" ***after*** the Court entered the Discovery Order. In fact, the Government's interrogatories were dated July 11, 2006 and served on July 12, 2006 – the same day as the Court entered the July 12 Order and more than a month ***before*** the Discovery Order was entered.

Court to extend the discovery schedule to May 31, 2007, in light of the extent and complexity of discovery, and have tentatively agreed to request a further extension if later needed. *Id*.

Several weeks after the Plaintiffs served their written discovery responses on January 12, 2007, however, the Government sent a letter to Plaintiffs' counsel, raising questions about the Plaintiffs' Responses To Defendant's First Set Of Interrogatories (the "Responses") (Exh. B). Letter to Harry Kelly from David Harrington dated February 5, 2007 (the "February 5 Letter") (Exh. C). In a letter to the Government's counsel, Plaintiffs' counsel disputed those issues but also proposed a variety of solutions. Letter to David Harrington from Harry Kelly dated February 14, 2007 (the "February 14 Letter") (Exh. D). Following a conversation between counsel, virtually all of these disputes were harmoniously resolved, as documented in a letter to Harry Kelly from David Harrington dated February 22, 2007 at 1-2 ("February 22 Letter") (Exh. E).

The Government's account of the discussion that preceded the present dispute fails to provide a complete picture of those discussions. For example, the parties agreed that, after the Government had completed its document production, the Plaintiffs would update their responses to Interrogatories 2 and 3 to include additional documents and transactions that could not be located in the Plaintiffs' own files.[2] *See* February 22 Letter at 2. This reasonable compromise was based on the fact that the Plaintiffs' records were in some cases incomplete and that additional documents from the Government's own records would be needed to present a full answer to the Government's questions. *See* Responses at 5, 6.

2 This responsive information was contained in Exhibit A to the Plaintiffs' Responses to the Defendant's First Set of Interrogatories (the "Responses"). Exhibit A is a chart that sets forth in a few pages a comprehensive history of the Plaintiff's prepayment processing experiences under ELIHPA and LIHPRHA. Exhibit A makes it possible to chart the prepayment experience of each property and to rapidly compare that experience to the experience of other properties.

The only matters that were not resolved in these discussions concerned the Plaintiffs' responses to Interrogatories 5, 6 and 7, which are the subject of the pending Motion. Contrary to the Government's contentions (Motion at 5, 8), the Plaintiffs did respond to these interrogatories as best as possible and offered reasonable proposals to resolve the Government's concerns. The Government rebuffed these offers, however, choosing instead to preemptively file the Motion. As explained below, the Motion should not be granted because fundamental and well-founded objections to the three interrogatories remain. The Plaintiffs have offered principled suggestions below, designed to both protect the interests of the Plaintiffs and assure that the Government receives the information it needs.

## ARGUMENT

### I Contrary to the Motion's Contentions, the Plaintiffs Have Provided Substantial Discovery To the Government.

Repeatedly, the Motion makes statements suggesting that the Plaintiffs have been noncooperative, or have outright refused to provide information sought by the Government's discovery requests. *See* Motion at 5, 8. Nothing could be further from the truth. In fact, the Plaintiffs provided the Government with more than 90,000 pages of documents pursuant to its document requests. Moreover, as early as December 6, 2006, they also offered to provide their electronic database to the Government to allow it to more efficiently search records. Email message to David Harrington from Harry Kelly dated December 6, 2006 at ¶ 3 ("December 6 Message") (Exh. F). Indeed, even while it complained that the Plaintiffs had failed to provide an index to its document production, the Government ignored that offer for more than two months before finally refusing the Plaintiffs' proposal in February 2007. *Compare* December 6 Message at ¶ 3 *to* February 22 Letter at 1. Moreover, because the Plaintiffs acknowledged that gaps in their records meant that some of their answers necessarily were incomplete, the Plaintiffs

promised when they served their original Responses that they would supplement their Responses from materials provided through the Government's document production. *See* Responses at 5, 6 and Letter to David Harrington from Harry Kelly dated January 12, 2007 at 1-2 ("January 12 Letter") (Exh. G). The Government later acceded to that proposal concerning Interrogatories 2 and 3. *See* February 22 Letter at 2.

Remarkably, when the Plaintiffs offered to provide similar supplements for Interrogatories 5, 6, and 7 during the pre-Motion negotiations – that is, to provide more detailed responses to these interrogatories when more facts were available to the Plaintiffs – the Government rebuffed the Plaintiffs' offer. Given that the Government accepted the Plaintiffs offer to update Exhibit A after the Government completes its document production, it is hard to see what more the Government hopes to accomplish through the Motion, or why it seeks to compel something the Plaintiffs have already agreed to do.

## II The Plaintiffs Have Met Their Obligations To Respond to Interrogatory Nos. 5 and 6.

### A. The Plaintiffs Provided Good Faith Responses to These Inartful Interrogatories.

Although the Government contends its interrogatories were "carefully crafted" (February 5 Letter at 1), Interrogatories 5 and 6 were, in fact, unanswerable as originally propounded. For example, as first propounded, Interrogatory 5 asked the Plaintiffs to supply "all facts" about unspecified events:

> For each Subject Property, state the date upon which you contend that HUD reached a final decision regarding the application of ELIHPA to the Subject Property and state all facts upon which you base your contention.

Government Interrogatory No. 5.[3] As the Plaintiffs' Responses explained (at 5, 6), this interrogatory cannot be answered as originally propounded because it inquires about HUD's "final decision regarding the application of ELIHPA," an expression that is so vague as to be meaningless. The interrogatory defines neither the term "final decision," nor does it explain which specific "application of ELIHPA," among the many possible actions HUD could take under the Preservation Statutes, it intended to refer.[4] Similarly, it does not ask for information about specific facts, such as "when did HUD act upon a request to prepay" or "when did HUD determine a property was eligible or ineligible to prepay its mortgage pursuant to ELIHPA." Thus, contrary to the Government's contentions, Interrogatories 5 and 6 were not "carefully crafted" (February 5 Letter at 1) but were so ambiguous as to allow multiple possible interpretations.

Indeed, in its attempt to portray the Plaintiffs as dilatory and nonresponsive, the Government quotes snippets (Motion at 5) from their responses to Interrogatories 5 and 6, but misleadingly omits the full text of those responses. That text demonstrates that the Government's contention that the Plaintiffs refused to respond to these interrogatories is baseless:

> To the extent Plaintiffs possess information about the date of final approval of the plans of action for the subject properties, that information in included in the charts attached as Exhibit A. Additionally, this information is information that should reside in the Government's possession. According, to the extent that information is provided to Plaintiffs in the Government's document production, Plaintiffs will supplement the response to this interrogatory.

3 The text of Interrogatory No. 6 is substantially identical to the text of Interrogatory No. 5, but asks about HUD's decision-making concerning LIHPRHA.

4 Thus, the Plaintiffs pointed out that "[t]here were multiple points of decision in the course of the [ELIHPA] process and because of modifications, and supplements made throughout the process by both the Plaintiffs and the Government, [the Plaintiffs could not] respond as to what the "final decision" date was in the process." Responses at 5, 6.

Responses at 5, 6. Exhibit A, in turn, includes tabs labeled "Date of Approval or Rejection of Plan of Action" and "Date on Which Funding Was Provided", which reflected the Plaintiffs best guess that the phrase "final decision on the application of [the Preservation Statutes] to the Subject Properties" sought the date on which HUD took final agency action. Responses, Exhibit A. Thus, despite the patent defects in these interrogatories, the Plaintiffs made a full and good faith attempt to interpret these ambiguous questions in order to supply information that the Plaintiffs thought the Government meant to ask for – the date for the final agency action on the Plaintiffs' applications filed under the Preservation Statute. Given the imprecise nature of these interrogatories, the Government cannot ask for more.

**B. Having Acknowledged The Defects In Its Original Interrogatories, The Government Should Be Required To Submit New Interrogatories.**

Apparently the Government agreed that Interrogatories 5 and 6 were defective, because in its February 5 Letter, the Government essentially propounded an entirely new interrogatory. After citing a snippet of text from Palazzolo v. Rhode Island, 533 U.S. 606, 618 (2001), the Government said it had originally meant to ask the Plaintiffs to identify the date upon which they contend that HUD rendered the 'final decision' that ripened their as-applied taking claim." February 5 Letter at 3 (emphasis original). Whatever the Government originally sought in posing the original interrogatories, its restated question posed in the February 5 Letter is an entirely new interrogatory. Nevertheless, contrary to the Government's contentions (Motion at 5, 8), the Plaintiffs did not refuse to respond to this newly restated interrogatory, but offered to provide a supplemental answer when the Government's document production was complete. February 14 Letter at 9. Surprisingly, although this was essentially the same proposal the Government accepted with respect to Interrogatories 2 and 3 (*see* pp. 4-5, above), it rebuffed that offer and chose instead to file the Motion. February 22 Letter at 3-4.

Certainly, at this point, there is no basis to grant the Motion with respect to Interrogatories 5 and 6, which the February 5 Letter essentially withdrew. Under these circumstances, the Motion is pointless and proposes the wrong answer to the wrong question. If the Government has decided it wants to seek different information from what it originally requested, it should simply draft new interrogatories and serve them upon the Plaintiffs, pursuant to RCFC 33. The Court should not permit the Government to use the Motion to retroactively fix the fatal defects in these interrogatories.

## III It Is Premature To Ask the Plaintiffs To Respond to Interrogatory 7.

### A. Plaintiffs' Objections to This Interrogatory Were Well-Founded.

Many of the same objections raised to Interrogatories 5 and 6 apply to Interrogatory 7 as well. As originally propounded, Interrogatory 7 asked:

> For each Subject Property, if you contend that applying to prepay pursuant to the Preservation Statutes was futile, state all facts upon which you base your contention.

In the February 5 Letter, the Government was obliged to restate this interrogatory also, explaining that it asked the Plaintiffs to "state all facts upon which you base any claim that applying to prepay was under the Preservation Statutes was [sic] futile." February 5 Letter at 4 (emphasis original). However stated, the interrogatory undoubtedly asks for legal conclusions and opinions that go to the ultimate issue at this point in the case – futility. Plaintiffs objections were well-founded because "[d]iscovery as to legal arguments is impermissible." Kendrick v. Sullivan, 125 F.R.D. 1, 4 (D.D.C. 1989).

Moreover, interrogatories are a particularly inappropriate approach to exploring the detailed bases for the Plaintiffs' contentions concerning futility, especially where document

discovery is incomplete and the Government appears poised to embark on a calendar of depositions:

> The use of interrogatories by a discovering party may be quite limiting since such devices are "designed to identify discreet information or sources of information [and] not to elicit opinions on complex issues where the detailed cross examination allowed by deposition is imperative."

O'Connor v. Boeing North Am, Inc., 185 F.R.D. 272, 227 (C.D. Cal. 1999), *quoting* Independence Tube Corp. v. Copperweld Corp., 543 F.Supp. 706, 720 (N.D. Ill. 1982). Interrogatory 7 does not seek "discreet information," but rather asks the Plaintiffs to supply "all facts" that support their contentions on futility. Essentially, Interrogatory 7 asks the Plaintiffs to prepare the fact section of the Government's summary judgment brief. As the Federal Circuit has explained, for the government "[t]o use discovery as an alternative to its own preparation of a defense or to harass comes close to governmental abuse of the judicial process." Hendler v. United States, 952 F.2d 1364, 1380 (Fed. Cir. 1991). Where, as here, the Government has made plain its intent to depose possibly dozens of individual owners, using an interrogatory to "elicit opinions on complex issues" becomes at best superfluous.

Most important, asking the Plaintiffs to present "all facts" concerning their futility contentions is at least as premature as asking them to present "all facts" supporting their ripeness contentions in Interrogatories 5 and 6. According to RCFC 33(c), the Court may order that a contention interrogatory "need not be answered until after designated discovery has been completed or until a pretrial conference or other later time." Thus, the court in Capacchhione v. Charlotte Mecklenburg Schools – a case cited by the Government in its February 5 Letter (at 3) – explained the problem with seeking to compel responses to contention interrogatory at an early point in discovery:

> Due to the nature of contention interrogatories, they are more appropriately used after a substantial amount of discovery has been conducted – ***typically, at the end of the discovery period.***

182 F.R.D. 486, 490 (W.D. N.C. 1998) (emphasis added). As the court in Kendrick, explained, this rule

> further recognizes that the propriety of a "contention interrogatory" may depend upon the point in the proceedings at which it is served. If premature, i.e., ***if served before prior discovery has established a reasonable factual predicate***, such interrogatories may do more harm than good.

125 F.R.D. at 2 (emphasis added). Certainly, it cannot be contended that there has been "substantial discovery" by the Plaintiffs in this matter – the Government admits it has not even completed its document production, which may be finished later in April 2007 at the earliest. January 26 Letter at 1. The need to complete the Government's production in this case is manifest: the Government's records should contain a vast number of submissions, data compilations, and correspondence that would go directly to the question of futility. For example, internal HUD correspondence, to which the Plaintiffs had no previous access, may shed light on HUD's views about the ability of owners of assisted housing – in general cases or with respect to the Plaintiffs specifically – to prepay their mortgages. It simply makes no sense to ask them to prove "all facts" supporting their case until the record is complete.

Indeed, it is important to bear in mind that it is the Government, not the Plaintiffs, that created the prepayment problem here – it drafted the laws, implemented the regulations, and established the process which determined whether or not owners could prepay. If the Government truly wants the Plaintiffs to present "all facts" that support their contentions that it was futile to attempt to prepay their mortgages, the Plaintiffs should at least have the opportunity to review the full documentary record – including the record of HUD's processing of the documents they filed. To seek to compel the Plaintiffs to make binding admissions concerning

"all facts" that support their futility claims when the Government has not even finished producing the documents that the Government knows the Plaintiffs need to state those facts is utterly premature, if not actually abusive.[5]

**B. The Abrupt Filing Of the Motion Preempted The Plaintiffs From Presenting A Reasonable Solution Here.**

Contrary to the Motion's contention (at 5, 8), the Plaintiffs did not refuse to make a response to this Interrogatory but stated they would do so at the close of discovery, when, pursuant to the guidance of Capacchione and Kendrick, "all facts" relevant to their futility contentions had been adduced. February 14 Letter at 11. In his conversation with the Government counsel that preceded the filing of this Motion, Plaintiffs' counsel sought to explore other alternatives that would satisfy the Government's legitimate needs without requiring the Plaintiffs to respond on the basis of an incomplete factual record. The Government's counsel refused to accept anything less than an immediate response to this Interrogatory upon the Government's own terms (February 22 Letter at 3), however, and several days later filed this Motion.

At the time the Motion was filed, Plaintiffs' counsel was drafting a letter to the Government proposing an interim solution to provide concrete information to the Government without prejudicing the Plaintiffs. Specifically, Plaintiffs were going to offer to provide a written statement for each Plaintiff stating the reasons why, at the time they filed the original complaint here, they felt it was futile for them to attempt to prepay, to be supplemented with a complete statement of "all facts" that support their futility contentions at the close of discovery. While the Plaintiffs cannot fairly be requested to state "all facts" that support their futility contentions

5 Of course, to fully present "all facts," deposition testimony and possibly expert reports may be necessary. To the extent that they make any factual response to the subject interrogatories, Plaintiffs reserve the right to supplement such response with additional facts adduced in the course of later discovery.

before there has been "substantial discovery," the Plaintiffs are more than able to state now the reasons why they believed they could not prepay pursuant to the Preservation Statutes. By obtaining a detailed statement with respect to each owner's reasons why it was futile to seek to prepay, the Government would be fully briefed on each Plaintiffs' position for purposes of preparing for depositions.

Although the preemptive filing of the Motion made further negotiations moot, the interim solution conceived by the Plaintiffs offers a workable alternative that protects the Plaintiffs' interests and provides the Government with the information it reasonably requires. In fact, the Government has noticed no depositions yet, and has acknowledged the parties' agreement that they "will consider submitting a joint request to modify the current schedule if additional time for discovery proves necessary." January 26 Letter at 1. Thus, aside from its own pique, the Government has demonstrated no discernable prejudice that it has suffered, nor any reason why the Plaintiffs should be compelled to immediately produce responses that the Government knows will be incomplete. Rather than compel further responses to Interrogatory 7, the Court should adopt the Plaintiffs interim solution as an effective alternative that is both expedient and fair to both sides.

## CONCLUSION

The Motion (at 5) is correct about one thing: the Plaintiffs will make a particularized showing that their claims are ripe and that it was futile to seek HUD approval to prepay their mortgages. In making that promise, however, they did not waive their right to seek the discovery from the Government they need to make that very showing. As the Government itself has acknowledged, discovery in this case involves "information [that] is years old, has been archived, and is not readily available." January 26 Letter at 1. The constraints that apply to the

Government's document production also apply to the Plaintiffs' ability to respond to the Government's interrogatories. Given these constraints, the Motion should be denied and instead, the Court should adopt the reasonable steps proposed herein by the Plaintiffs.

Dated: March 15, 2007

Respectfully submitted,

/s/ Harry J. Kelly

Harry J. Kelly
NIXON PEABODY LLP
401 Ninth Street, N.W., Suite 900
Washington, D.C. 20004
(202) 585-8000

Counsel for the Plaintiffs

CERTIFICATE OF F ILING

I hereby certify that on the 15th day of March, 2007, a copy of the foregoing Opposition to Defendant's Motion To Compel Answers To Interrogatories was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. Additionally, a copy of this filing has been hand-delivered to the Government's counsel, David Harrington, Esq.

/s/ Harry J. Kelly

# EXHIBIT A

**U.S. Department of Justice**

Civil Division

DMC:BMS:DHarrington
DJ No. 154-93-655 & 154-97-582

Telephone: (202) 307-0277
Facsimile: (202) 307-0972

*Washington, D.C. 20530*

January 26, 2007

*Via Facsimile & U.S. Mail*

Harry J. Kelly, Esq.
Nixon Peabody LLP
401 Ninth St., N.W.
Suite 900
Washington, D.C. 20004

Re: *Anaheim Gardens, et al. v. United States*, No. 93-655C (Fed. Cl.);
*Algonquin Heights, et al. v. United States*, No. 97-582C (Fed. Cl.).

Dear Mr. Kelly:

I am writing to confirm our discussion about discovery in the Anaheim Gardens and Algonquin Heights cases. As you aware, your discovery requests require compiling documents and obtaining information from various HUD field offices. Much of the information is years old, has been archived, and is not readily available. Further, many HUD employees who worked on the plaintiffs' projects have retired or are no longer with the agency. Consequently, we agreed that the United States would have an additional 70 days to respond to plaintiffs' written discovery. This extension will run through April 9, 2007. To the extent feasible, we will attempt to produce documents in advance of that date. Additionally, as we discussed, the parties will consider submitting a joint request to modify the current schedule if additional time for discovery proves necessary.

During our discussion, I also mentioned our previous request that plaintiffs provide certain basic information (e.g., the name of the plaintiff who has produced the documents and the significance of the bates number prefixes on the documents produced) about the documents that have been produced to date. This information is essential given the many plaintiffs in these actions, the large volume of documents that have been produced, and plaintiffs' use of RCFC 33(d) in some interrogatory answers. We appreciate your willingness to provide the requested information and look forward to discussing next week when this additional information can be anticipated.

Very truly yours,

David A. Harrington
Trial Attorney
Commercial Litigation Branch

cc: Terri L. Roman, Esq.
Alice A. Peterson, Esq.

# EXHIBIT B

**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **ANAHEIM GARDENS, et al.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br>**Defendant.** | No. 93-655C<br>Judge Robert H. Hodges, Jr. |
| **ALGONQUIN HEIGHTS, et al.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br>**Defendant.** | No. 97-582C<br>Judge Robert H. Hodges, Jr. |

**PLAINTIFFS' RESPONSES**
**TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Rules of the United States Court of Federal Claims, Plaintiffs Anaheim Gardens, et al. and Algonquin Heights, et al. ("Plaintiffs"), by their attorneys Nixon Peabody LLP, make the following general and specific objections to the "Defendant's First Set of Interrogatories" (collectively, "Interrogatories" and individually, each an "Interrogatory") propounded by Defendant, The United States.

## GENERAL OBJECTIONS

1. Plaintiffs object to the Interrogatories that attempt to elicit documents or information that are or may be protected by the attorney-client privilege, the work product doctrine, and any other legally cognizable privilege or protection from disclosure.

Inadvertent disclosure of any privileged or protected information shall not be a waiver of any claim or privilege or protection.

2. Plaintiffs object to each Interrogatory that is vague, ambiguous, irrelevant to the claim of ripeness, overbroad, calculated to cause undue burden and expense, and/or that seeks information outside the scope of permissible discovery.

3. Plaintiffs object to each Interrogatory that seeks information not within its possession, custody, or control.

4. Plaintiffs object to each Interrogatory that seeks documents or information within Defendant's knowledge and possession or to which Defendant has equal access.

5. Plaintiffs object to each Interrogatory that contains terms or phrases that are undefined.

6. Plaintiffs object to each Interrogatory that is unlimited in time or otherwise not limited to a reasonable time frame relevant to this litigation.

7. Plaintiffs object to each Interrogatory to the extent that discovery is ongoing in this matter, and it may not yet be in possession of all information necessary to respond in full to the Interrogatory. In this event, Plaintiff will supplement its answer at the appropriate time.

8. Plaintiffs object to each Interrogatory including the instructions and definitions thereto that impose discovery obligations that exceed the Rules of the United States Court of Federal Claims.

The foregoing General Objections are incorporated by reference within each of its answers and all answers are made subject to, and without waiving, those General Objections, whether or not specifically reiterated in the answers themselves.

**INTERROGATORY 1:**

Identify every owner, including general partners and limited partners, current and former, who invested in each of the Subject Properties. For each owner indicate their ownership interest, the period of time for which that ownership interest was held, and any other Subject Property in which that owner invested.

**Response:**

Plaintiffs object to this interrogatory on the ground that it is overly broad and unduly burdensome in that it requests information from 1969 through to the present. Plaintiffs further object to this interrogatory, because it does not seek information relevant to the ripeness issue, and because the information requested constitutes confidential business information of the owners of the Subject Properties.

**INTERROGATORY 2:**

For each Subject Property, describe in detail all actions taken pursuant to the ELIHPA including, but not limited to, whether you submitted a notice of intent to HUD, the date upon which any notice of intent was submitted to HUD, whether you submitted a plan of action to HUD, the date upon which any plan of action was submitted to HUD, the date upon which any submitted plan of action was approved or rejected by HUD, and the date upon which funding for any approved plan of action was provided by HUD.

**Response:**

Plaintiffs object to this interrogatory to the extent that it asks for a detailed description of "all actions." This portion of the interrogatory is ambiguous, vague, overly broad and unduly burdensome. Plaintiff also objects with respect to inquiries concerning approval or rejection of plans of actions: HUD routinely approved, conditionally approved, rejected and/or rejected and

later approved plans of action. Without waiving these objections, Plaintiffs' further respond as reflected on the charts attached hereto as Exhibit A.

**INTERROGATORY 3:**

For each Subject Property, describe in detail all actions taken pursuant to the LIHPRHA including, but not limited to, whether you submitted a notice of intent to HUD, the date upon which any notice of intent was submitted to HUD, whether you submitted a plan of action to HUD, the date upon which any plan of action was submitted to HUD, the date upon which any submitted plan of action was approved or rejected by HUD, and the date upon which funding for any approved plan of action was provided by HUD.

**Response:**

Plaintiffs object to this interrogatory to the extent that it asks for a detailed description of "all actions." This portion of the interrogatory is ambiguous, vague, overly broad and unduly burdensome. Plaintiff also objects with respect to inquiries concerning approval or rejection of plans of actions: HUD routinely approved, conditionally approved, rejected and/or rejected and later approved plans of action. Without waiving these objections, Plaintiffs' further respond as reflected on the charts attached hereto as Exhibit A.

**INTERROGATORY 4:**

For each Subject Property, describe in detail all communications between you and HUD relating to the possible prepayment of the property's Government-insured mortgage.

**Response:**

Plaintiffs object to this interrogatory as ambiguous, vague, overly broad and unduly burdensome. This request potentially encompasses 37 years of "all communications." To the extent the interrogatory seeks detailed information about oral communications, given the breadth

and vagueness of the request, it is more appropriately addressed in a deposition, and is not a proper subject for an interrogatory. To the extent there have been such communications, and those communications are written communications in the possession of Plaintiffs, they have previously been provided as part of the Plaintiffs' rolling document production.

**INTERROGATORY 5:**

For each Subject Property, state the date upon which you contend that HUD reached a final decision regarding the application of ELIHPA to the Subject Property and state all facts upon which you base your contention.

**Response:**

Plaintiffs object to this interrogatory on several grounds. First, the meaning of the term "final decision" is vague and ambiguous. There were multiple points of decision in the course of the process and because of modifications, and supplements made throughout the process by both the Plaintiffs and the Government, we cannot respond as to what the "final decision" date was in the process. To the extent Plaintiffs possess information about the date of final approval of the plans of action for the subject properties, that information is included in the charts attached as Exhibit A. Additionally, this information is information that should reside in the Government's possession. Accordingly, to the extent that information is provided to Plaintiffs in the Government's document production, Plaintiffs will supplement the response to this interrogatory. Further, the interrogatory is overly broad and unduly burdensome.

**INTERROGATORY 6:**

For each Subject Property, state the date upon which you contend that HUD reached a final decision regarding the application of LIHPRHA to the Subject Property and state all facts upon which you base your contention.

**Response:**

Plaintiffs object to this interrogatory on several grounds. First, the meaning of the term "final decision" is vague and ambiguous. There were multiple points of decision in the course of the process and because of modifications and supplements made throughout the process by both the Plaintiffs and the Government, we cannot respond as to what the "final decision" date was in the process. To the extent Plaintiffs possess information about the date of final approval of the plans of action for the subject properties, that information is included in the charts attached as Exhibit A. Additionally, this information is information that should reside in the Government's possession. Accordingly, to the extent that information is provided to Plaintiffs in the Government's document production, Plaintiffs will supplement the response to this interrogatory. Further, the interrogatory is overly broad and unduly burdensome.

**INTERROGATORY 7:**

For each Subject Property, if you contend that applying to prepay pursuant to the Preservation Statutes was futile, state all facts upon which you base your contention.

**Response:**

Plaintiffs object to this interrogatory on the ground that it calls for a legal conclusion and opinion. Further, Plaintiffs object to this interrogatory on the ground that it is vague, overly broad and unduly burdensome.

**INTERROGATORY 8:**

For each request for admission to which you responded with anything other than an unqualified admission, describe in detail the basis for your answer.

**Response:**

Plaintiffs object to this interrogatory on the ground that it is overly broad and burdensome because it requires a detailed explanation of unqualified denials. To the extent an admission was denied, the basic factual information supporting that denial is included in the charts attached as Exhibit A.

As to Objections

Dated: January 12, 2007

Respectfully submitted:

Harry J. Kelly
NIXON PEABODY LLP
401 Ninth Street, N.W., Suite 900
Washington, D.C. 20004
(202) 585-8000

Counsel for the Plaintiffs

EXHIBIT A

| Subject Property Name | Notice of Intent Filed Under ELIHPA | Date of Notice | Plan of Action Submitted Under ELIHPA | Date Plan of Action Submitted | Date of Approval or Rejection of Plan of Action | Date on Which Funding Was Provided |
|---|---|---|---|---|---|---|
| 100 Centre Street | Yes | 12/28/90 | No | N/A | N/A | N/A |
| 1550 Beacon Street | Yes | 12/00/90 | No | N/A | N/A | N/A |
| Algonquin Heights | Yes | 12/00/90 and June 1992 | Yes | 10/22/92 | Approved in HUD letter dated 9/28/94, amended by subsequent undated HUD letter | Unknown at this time |
| Anaheim Gardens | No | N/A | N/A | N/A | N/A | N/A |
| Beaumont/Thetford III | Yes | 12/00/90 and 6/5/92 | Yes | 12/22/93 | Rejected in HUD letter dated 12/18/94 | Unknown at this time |
| Brandy Hill | Yes | 12/27/90 and 6/5/92 | Yes | 12/8/93 | Approved in HUD letter dated 9/27/94 | As of 11/1/94 |
| Brookside Manor | No | N/A | N/A | N/A | N/A | N/A |
| Buckman Gardens | No | N/A | N/A | N/A | N/A | N/A |
| Calico Court (d/b/a Crab Point)/Thetford IV | No | N/A | N/A | N/A | N/A | N/A |
| Cedar Gardens | No | N/A | N/A | N/A | N/A | N/A |
| Chauncy House | No | N/A | N/A | N/A | N/A | N/A |
| Cherry Branch (Kimberly Gardens) | No | N/A | N/A | N/A | N/A | N/A |
| Chowan Court/Thetford IV | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time |
| Coleridge Road/Thetford III | Yes | 12/00/90 and 6/5/92 | Yes | 7/7/94 | Unknown at this time | Unknown at this time |
| Columbus Court/Thetford IV | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time |
| Countrytowne Apartments | No | N/A | N/A | N/A | N/A | N/A |
| Creekside Terrace | No | N/A | N/A | N/A | N/A | N/A |
| Cromwell Court | Yes | 12/27/90 and 6/2/92 | Yes | 11/12/92 | Approved in HUD letter dated 9/27/94 | As of 11/1/94 |
| Dolly Ann Apts. | No | N/A | N/A | N/A | N/A | N/A |
| Emory Grove (Willow Creek) | Yes | 12/21/90 | No | N/A | N/A | N/A |
| First Landmark | No | N/A | N/A | N/A | N/A | N/A |

| Subject Property Name | Notice of Intent Filed Under ELIHPA | Date of Notice | Plan of Action Submitted Under ELIHPA | Date Plan of Action Submitted | Date of Approval or Rejection of Plan of Action | Date on Which Funding Was Provided |
|---|---|---|---|---|---|---|
| Florin Meadows I | Yes | 7/12/89 and 5/18/92 | Yes | 9/1/89 and 7/22/94 | 1989 POA Rejected in HUD letter dated 7/16/91 and 1994 POA Approved in HUD letter dated 9/27/94 | Unknown at this time |
| Florin Meadows II | Yes | 5/15/90 and 5/18/92 | Yes | 5/15/90 and 7/22/94 | 1990 POA Rejected in HUD letter dated 7/16/91 and 1994 Approved in HUD letter dated 9/27/94 | Unknown at this time |
| Foothill | No | N/A | N/A | N/A | N/A | N/A |
| Forest Glen I | No | N/A | N/A | N/A | N/A | N/A |
| Forest Glen II | No | N/A | N/A | N/A | N/A | N/A |
| Fort Heath | Yes | 12/10/90 | Yes | 1/16/95 | Unknown at this time | Unknown at this time |
| Franklin Court/Thetford IV | No | N/A | N/A | N/A | N/A | N/A |
| Garrison Forest | No | N/A | N/A | N/A | N/A | N/A |
| Glenreed/Glenarden L.P. | Yes | 12/00/90 | No | N/A | N/A | N/A |
| Glenarden/Glenreed L.P. | Yes | 12/00/90 | No | N/A | N/A | N/A |
| Glendale Court/Thetford IV | Yes | 12/00/90 | No | N/A | N/A | N/A |
| Glenview Gardens | No | N/A | N/A | N/A | N/A | N/A |
| Halawa View | No | N/A | N/A | N/A | N/A | N/A |
| Hardee Street/Thetford III | Yes | 12/00/90 & 6/5/92 | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time |
| Henry Street/Thetford III | Yes | 12/00/90 and 6/5/92 | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time |
| Holiday Town/Thetford III | Yes | 12/00/90 | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time |
| Holiday Town II/Thetford IV | Yes | 12/00/90 | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time |
| Holloway Court/Thetford III | Yes | 12/00/90 | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time |
| Icemorelee Street/Thetford III | Yes | 12/00/90 and 6/5/92 | No | N/A | N/A | N/A |
| Indian Head Manor | Yes | 12/28/90 | No | N/A | N/A | N/A |
| Jefferson Court/Thetford IV | Yes | 12/00/90 | No | N/A | N/A | N/A |
| Jewel Lake Villa I | No | N/A | N/A | N/A | N/A | N/A |

| Subject Property Name | Notice of Intent Filed Under ELIHPA | Date of Notice | Plan of Action Submitted Under ELIHPA | Date Plan of Action Submitted | Date of Approval or Rejection of Plan of Action | Date on Which Funding Was Provided |
|---|---|---|---|---|---|---|
| Jewel Lake Villa II | No | N/A | N/A | N/A | N/A | N/A |
| Jodani | No | N/A | N/A | N/A | N/A | N/A |
| Johnson Court/Thetford III | Yes | 12/00/90 | No | N/A | N/A | N/A |
| Kings Grant | Yes | 6/5/92 | Yes | 11/12/92 | Approved in HUD letter dated 12/30/94 | As of 4/1/95 |
| Leader House | No | N/A | N/A | N/A | N/A | N/A |
| Long Drive I/Thetford IV | No | N/A | N/A | N/A | N/A | N/A |
| Market North I/Thetford IV | No | N/A | N/A | N/A | N/A | N/A |
| Market North II/Thetford IV | No | N/A | N/A | N/A | N/A | N/A |
| Metro West | No | N/A | N/A | N/A | N/A | N/A |
| Millbank Court/Thetford III | Yes | 12/00/90 and 6/5/92 | Yes | Unknown at this time | Denied Preliminary Approval in HUD letter dated 9/24/93; Preliminary Approval subsequently granted, but the date is unknown at this time. | Unknown at this time |
| Millwood Townhomes/Mid City | No | N/A | N/A | N/A | N/A | N/A |
| Milwood Apts/Biafora | No | N/A | N/A | N/A | N/A | N/A |
| Napa Park | Yes | 12/29/90 | No | N/A | N/A | N/A |
| New Amsterdam | No | N/A | N/A | N/A | N/A | N/A |
| Oakwood Ave/Thetford IV | Yes | 12/00/90 and 6/5/92 | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time |
| Oakwood Ave II/Thetford IV | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time |
| Ontario Townhouses | No | N/A | N/A | N/A | N/A | N/A |
| Palomar | No | N/A | N/A | N/A | N/A | N/A |
| Parthenia Manor | Yes | Unknown at this time | No | N/A | N/A | N/A |
| Peachtree Court/Thetford IV | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time |
| Person Court/Thetford III | Yes | 12/00/90 | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time |
| Pine Crest | No | N/A | N/A | N/A | N/A | N/A |

| Subject Property Name | Notice of Intent Filed Under ELIHPA | Date of Notice | Plan of Action Submitted Under ELIHPA | Date Plan of Action Submitted | Date of Approval or Rejection of Plan of Action | Date on Which Funding Was Provided |
|---|---|---|---|---|---|---|
| Raleigh North/Thetford III | Yes | 12/00/90 and 6/5/92 | Yes | 8/13/93 | Approved in HUD letter dated 4/25/94 | Unknown at this time |
| River Falls/Thetford III | Yes | 12/00/90 | No | N/A | N/A | N/A |
| Riverside Village | Yes | 12/12/90 and 6/5/92 | Yes | 9/1/93 | Approved in HUD letter dated 9/27/94 | As of 11/1/94 |
| Rock Creek Terrace | No | N/A | N/A | N/A | N/A | N/A |
| San Tomas | No | N/A | N/A | N/A | N/A | N/A |
| Sierra Vista I | No | N/A | N/A | N/A | N/A | N/A |
| Silverlake Village | No | N/A | N/A | N/A | N/A | N/A |
| Southgate/Thetford IV | Yes | 12/00/90 | No | N/A | N/A | N/A |
| St. George's Plaza | No | N/A | N/A | N/A | N/A | N/A |
| Stewarts Creek/Thetford IV | No | N/A | N/A | N/A | N/A | N/A |
| Su Casa Por Cortez | No | N/A | N/A | N/A | N/A | N/A |
| Suburbia Fairfax | No | N/A | N/A | N/A | N/A | N/A |
| Suehar | No | N/A | N/A | N/A | N/A | N/A |
| Tower West | No | N/A | N/A | N/A | N/A | N/A |
| Town & Country I & II | No | N/A | N/A | N/A | N/A | N/A |
| Tucker Street/Thetford III | Yes | 12/00/90 and 6/5/92 | Yes | 12/22/93 | Denied Preliminary Approval in HUD letter dated 2/18/94; subsequent approval not known at this time | Unknown at this time |
| Victorian Arms | No | N/A | N/A | N/A | N/A | N/A |
| Waipahu Tower | No | N/A | N/A | N/A | N/A | N/A |
| Washington Plaza | Yes | 12/28/90 | No | N/A | N/A | N/A |
| Washington Street (d/b/a Deanswood)/Thetford III | Yes | 12/00/90 | No | N/A | N/A | N/A |
| Young Avenue/Thetford III | Yes | 12/00/90 | No | N/A | N/A | N/A |

| Subject Property Name | Notice of Intent Filed Under LIHPRHA | Date of Notice | Plan of Action Submitted Under LIHPRHA | Date of Plan of Action | Date of Approval or Rejection of Plan of Action | Date on Which Funding Was Provided |
|---|---|---|---|---|---|---|
| 100 Centre Street | Yes | Unknown at this time | Yes | 3/21/95 | Conditionally Approved in HUD letter dated 9/27/95 | Approval letter states no funds available |
| 1550 Beacon Street | Yes | 6/5/92 | Yes | Unknown at this time | Unknown at this time | Unknown at this time |
| Algonquin Heights | No | N/A | N/A | N/A | N/A | N/A |
| Anaheim Gardens | Yes | 7/20/92 | Yes | 5/18/94 | Approved in HUD letter dated 1/31/95 | HUD letter dated 6/29/95 stating no funds available |
| Beaumont/Thetford IIII | No | N/A | N/A | N/A | N/A | N/A |
| Brandy Hill | No | N/A | N/A | N/A | N/A | N/A |
| Brookside Manor | Yes | 12/23/94 | Yes | 6/12/96 | Approved in HUD letter dated 8/12/96 | Unknown at this time |
| Buckman Gardens | Yes | 4/12/93 | Yes | 3/23/95 | Conditionally Approved in HUD letter dated 9/30/95 | Unknown at this time |
| Calico Court (d/b/a Crab Point)/Thetford IV | Yes | 6/5/92 | Yes | 1/4/95 | Unknown at this time | Unknown at this time |
| Cedar Gardens | Yes | 2/22/91 and 10/20/92 | Yes Plan of Action filed by Purchaser | 4/15/95 | HUD letter dated 6/15/95 refers to a 5/12/95 approval date of the non-profit Purchaser's Plan of Action | HUD letter dated 6/15/95 no funds available; HUD letter dated 6/22/95 reaffirmed no funds; appears funds not provided as of 10/24/95 letter from HUD addressing request to prepay |
| Chauncy House | Yes | 10/19/93 | Yes | 8/10/95 | Unknown at this time | As of 9/26/97 |
| Cherry Branch (Kimberly Gardens) | Yes | 12/22/94 | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time |

| Subject Property Name | Notice of Intent Filed Under LIHPRHA | Date of Notice | Plan of Action Submitted Under LIHPRHA | Date of Plan of Action | Date of Approval or Rejection of Plan of Action | Date on Which Funding Was Provided |
|---|---|---|---|---|---|---|
| Chowan Court/Thetford IV | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time |
| Coleridge Road/Thetford III | No | N/A | N/A | N/A | N/A | N/A |
| Columbus Court/Thetford IV | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time |
| Countrytowne Apartments | Yes | 5/4/94 | Yes | 4/16/96 | Unknown at this time | Unknown at this time |
| Creekside Terrace | Yes | Unknown at this time | Yes | On or about 1/19/94 based on HUD letter confirming receipt | Approved in HUD letter dated 10/11/94 | Unknown at this time |
| Cromwell Court | No | N/A | N/A | N/A | N/A | N/A |
| Dolly Ann Apts. | Yes | 1/26/95 | Yes | 5/21/96 | Approved in HUD letter dated 7/12/96 | Unknown at this time |
| Emory Grove (Willow Creek) | Yes | 4/6/94 and 8/8/94 | Yes | 2/15/96 | Approved in HUD letter dated 7/23/96 | Unknown at this time |
| First Landmark | Yes | 8/8/94 | Yes | 9/5/95 | Unknown at this time | Unknown at this time |
| Florin Meadows I | Yes | 6/17/92 | No | N/A | N/A | N/A |
| Florin Meadows II | Yes | 6/17/92 | No | N/A | N/A | N/A |
| Foothill | Yes | 5/8/92 | Yes | 2/10/94 | Unknown at this time | Unknown at this time |
| Forest Glen I | Yes | 1/30/95 | Yes | 6/14/96 | Approved in HUD letter dated 8/2/96 | Unknown at this time |
| Forest Glen II | Yes | 1/30/95 | Yes | 6/13/96 | Approved in HUD letter dated 8/2/96 | Unknown at this time |
| Fort Heath | No | N/A | N/A | N/A | N/A | N/A |
| Franklin Court/Thetford IV | Yes | 6/5/92 | Yes | 1/16/95 | Unknown at this time | Unknown at this time |
| Garrison Forest | Yes | Unknown at this time | Yes | 2/3/95 | Approved in HUD letter dated 10/17/95 | Unknown at this time |
| Glenarden/Glenreed L.P. | Yes | 11/13/92 | Yes | 12/22/95 | Approved in HUD letter dated 7/12/96 | Unknown at this time |
| Glenreed/Glenarden L.P. | Yes | 11/13/92 | Yes | 12/22/95 | Approved in HUD letter dated 7/12/96 | Unknown at this time |

| Subject Property Name | Notice of Intent Filed Under LIHPRHA | Date of Notice | Plan of Action Submitted Under LIHPRHA | Date of Plan of Action | Date of Approval or Rejection of Plan of Action | Date on Which Funding Was Provided |
|---|---|---|---|---|---|---|
| Glendale Court/Thetford IV | Yes | 6/5/92 | Yes | 12/23/94 | Unknown at this time | Unknown at this time |
| Glenview Gardens | Yes | 12/8/92 | Yes | 4/26/96 | Conditionally Approved in HUD letter dated 7/11/96 | Unknown at this time |
| Halawa View | Yes | 12/31/92 | Yes | Unknown at this time | Approved in HUD letter dated 7/1/96 | Unknown at this time |
| Hardee Street/Thetford III | Unknown at this time | Unknown at this time | Yes, based on 3/3/96 HUD approval letter | Unknown at this time | Conditionally Approved in HUD letter dated 3/3/96 | Per 3/3/96 HUD letter, no funding available |
| Henry Street/Thetford III | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time |
| Holiday Town/Thetford III | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time |
| Holiday Town II/Thetford IV | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time |
| Holloway Court/Thetford III | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time |
| Icemorelee Street/Thetford III | Yes | 10/4/94 | Yes | 12/14/95 | Unknown at this time | Unknown at this time |
| Indian Head Manor | Yes | 6/5/92 | Yes | 10/10/95 | Approved by HUD in letter dated 7/23/96 | Unknown at this time |
| Jefferson Court/Thetford IV | Yes | 6/5/92 | Yes | On or about 6/17/94 | Approved by HUD in letter dated 12/22/94 as supplemented in letter dated 3/16/95 | Unknown at this time |
| Jewel Lake Villa I | Yes | 6/12/92 | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time |
| Jewel Lake Villa II | Yes | 6/12/92 | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time |
| Jodani | No | N/A | N/A | N/A | N/A | N/A |
| Johnson Court/Thetford III | Yes | 6/5/92 | Yes | 1/16/95 | Unknown at this time | Unknown at this time |
| Kings Grant | Yes | 12/27/90 | No | N/A | N/A | N/A |

| Subject Property Name | Notice of Intent Filed Under LIHPRHA | Date of Notice | Plan of Action Submitted Under LIHPRHA | Date of Plan of Action | Date of Approval or Rejection of Plan of Action | Date on Which Funding Was Provided |
|---|---|---|---|---|---|---|
| Leader House | Yes | 5/3/93 | Yes | 10/28/96 | Approved in HUD letter dated 2/12/97 | No funding available due to limited budget authority |
| Long Drive I/Thetford IV | Yes | 6/5/92 | Yes | 7/21/94 | Unknown at this time | Unknown at this time |
| Market North I/Thetford IV | Yes | 6/5/92 | Yes | 10/21/94 | Unknown at this time | Unknown at this time |
| Market North II/Thetford IV | Yes | 6/5/92 | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time |
| Metro West | Yes | 10/1/92 | Yes | 8/29/94 | Approved in HUD letter dated 8/4/95 as revised in 12/1/95 letter | HUD letter dated 9/11/95 stating no funds available |
| Millbank Court/Thetford III | No | N/A | N/A | N/A | N/A | N/A |
| Millwood Townhomes/Mid City | Yes | 9/3/92 | Yes | 4/22/94 | Approved in HUD letter dated 10/21/94 | Unknown at this time |
| Milwood Apts/Biafora | Yes | 5/8/92 | Yes | On or about 8/17/93 | Approved as of 2/24/94 as stated in HUD letter dated 3/4/94 | Unknown at this time |
| Napa Park | Yes | 6/5/92 | Yes | On or about 2/1/95 | Approved in HUD letter dated 3/8/95 | Unknown at this time |
| New Amsterdam | Yes | 5/3/93 | Yes | 10/28/96 | Approved in HUD letter dated 2/12/97 | No funding available due to limited budget authority |
| Oakwood Ave/Thetford IV | No | N/A | N/A | N/A | N/A | N/A |
| Oakwood Ave II/Thetford IV | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time |
| Ontario Townhouses | Yes | 7/2/92 | Yes | 2/28/94 | Approved as of 1/1/95 as stated in HUD letter dated 12/29/94 | Unknown at this time |
| Palomar | Yes | 7/29/92 and 8/17/92 | Yes | 1/10/95 | Approved in HUD letter dated 7/13/95 | Unknown at this time |

| Subject Property Name | Notice of Intent Filed Under LIHPRHA | Date of Notice | Plan of Action Submitted Under LIHPRHA | Date of Plan of Action | Date of Approval or Rejection of Plan of Action | Date on Which Funding Was Provided |
|---|---|---|---|---|---|---|
| Parthenia Manor | Yes | 5/8/92 | Yes | On or about 8/12/93 | Approved effective 2/24/94 in HUD letter dated 3/4/94 | Unknown at this time |
| Peachtree Court/Thetford IV | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time |
| Person Court/Thetford III | No | N/A | N/A | N/A | N/A | N/A |
| Pine Crest | No | N/A | N/A | N/A | N/A | N/A |
| Raleigh North/Thetford III | No | N/A | N/A | N/A | N/A | N/A |
| River Falls/Thetford III | Yes | 6/5/92 | Yes | 8/23/95 | Conditionally Approved in HUD letter dated 10/31/95 | Unknown at this time |
| Riverside Village | No | N/A | N/A | N/A | N/A | N/A |
| Rock Creek Terrace | Yes | 6/19/92 | Yes | 7/22/94 | Approved in HUD letter dated 1/31/95 | Unknown at this time |
| San Tomas | Yes | 5/8/92 | Yes | 1/17/94 | Approved in HUD letter dated 9/9/94 | Unknown at this time |
| Sierra Vista I | Yes | 6/22/92 | Yes | 9/2/94 | Approved in HUD letter dated 1/19/95 | Unknown at this time |
| Silverlake Village | Yes | 5/8/92 | Yes | Original date unknown at this time, revised 3/28/95 | Approved in HUD letter dated 4/27/95 as amended in letters dated 11/6/95 and 12/13/95 | HUD letter dated 9/11/95 stating no funds available, amended 9/20/95 |
| Southgate/Thetford IV | Yes | 6/5/92 | Yes | 7/15/94 | Conditionally Approved in HUD letter dated 12/4/95 | Unknown at this time |
| St. George's Plaza | Yes | 6/1/92 | Yes | 6/4/96 | Approved in HUD letter dated 7/12/96 and supplemented in HUD letter dated 2/12/97 | Unknown at this time |
| Stewarts Creek/Thetford IV | Yes | 11/23/94 | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time |

| Subject Property Name | Notice of Intent Filed Under LIHPRHA | Date of Notice | Plan of Action Submitted Under LIHPRHA | Date of Plan of Action | Date of Approval or Rejection of Plan of Action | Date on Which Funding Was Provided |
|---|---|---|---|---|---|---|
| Su Casa Por Cortez | Yes | 6/17/92 | Yes | 7/15/94 | Conditionally Approved in HUD letter dated 2/3/95 | Unknown at this time |
| Suburbia Fairfax | Yes | 7/10/92 | Yes | 9/13/95 | Conditionally Approved in HUD letter dated 6/14/96 | Unknown at this time |
| Suehar | No | N/A | N/A | N/A | N/A | N/A |
| Tower West | Yes | 5/14/92 | Yes | 3/20/95 | Approved in HUD letter dated 5/18/95 | January 1995 |
| Town & Country I & II | Yes | 9/14/93 | Yes | 1/24/95 | Approved in HUD letter dated 4/27/95 | Unknown at this time |
| Tucker Street/Thetford III | No | N/A | N/A | N/A | N/A | N/A |
| Victorian Arms | Yes | 7/29/92 | Yes | 6/20/94 | Conditionally Approved in HUD letter dated 12/22/94 | Unknown at this time |
| Waipahu Tower | Yes | 4/27/93 | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time |
| Washington Plaza | Yes | 8/6/92 | Yes | On or about 2/23/95 | Unknown at this time | Unknown at this time |
| Washington Street (d/b/a Deanswood)/Thetford III | Yes | 6/5/92 | Yes | 8/28/95 | Conditionally Approved in HUD letter dated 12/7/95 | Unknown at this time |
| Young Avenue/Thetford III | Yes | 11/23/94 | Unknown at this time | Unknown at this time | Unknown at this time | Unknown at this time |

I HEREBY CERTIFY THAT the contents of the foregoing Responses to Defendant's First Set of Interrogatories are true and correct to the best of my knowledge, information and belief.

Anaheim Gardens

By: Graham Gardens
Its: L. Sm. Ames

Foothill Apartments

By: ______________________
Its: ______________________

B-L Associates

By: ______________________
Its: ______________________

Frances T. Ward

By: ______________________
Its: ______________________

C-W Associates

By: ______________________
Its: ______________________

Glenview Gardens, LP

By: ______________________
Its: ______________________

Denise A. Kellenbeck (d/b/a) Victorian Arms Apartments)

By: ______________________
Its: ______________________

Hillview Townhouses Limited

By: ______________________
Its: ______________________

Earl W. Kellenbeck

By: ______________________
Its: ______________________

Hillview Townhouses Limited No. 1

By: ______________________
Its: ______________________

Florin Meadows I, Ltd.

By: ______________________
Its: ______________________

Indian Head Manor Limited Partnership I

By: ______________________
Its: ______________________

Florin Meadows II, Ltd.

By: ______________________
Its: ______________________

J.D.V. Ward

By: ______________________
Its: ______________________

I HEREBY CERTIFY THAT the contents of the foregoing Responses to Defendant's First Set of Interrogatories are true and correct to the best of my knowledge, information and belief.

Anaheim Gardens

By: ______________________
Its: ______________________

B-L Associates

By: [signature]
Its: General Partner

C-W Associates

By: [signature]
Its: General Partner

Denise A. Kellenbeck (d/b/a) Victorian Arms Apartments)

By: ______________________
Its: ______________________

Earl W. Kellenbeck

By: ______________________
Its: ______________________

Florin Meadows I, Ltd.

By: ______________________
Its: ______________________

Florin Meadows II, Ltd.

By: ______________________
Its: ______________________

Foothill Apartments

By: ______________________
Its: ______________________

Frances T. Ward

By: ______________________
Its: ______________________

Glenview Gardens, LP

By: ______________________
Its: ______________________

Hillview Townhouses Limited

By: ______________________
Its: ______________________

Hillview Townhouses Limited No. 1

By: ______________________
Its: ______________________

Indian Head Manor Limited Partnership I

By: ______________________
Its: ______________________

J.D.V. Ward

By: ______________________
Its: ______________________

Fax 202-585-8080

I HEREBY CERTIFY THAT the contents of the foregoing Responses to Defendant's First Set of Interrogatories are true and correct to the best of my knowledge, information and belief.

Anaheim Gardens

By: ______________________
Its: ______________________

B-L Associates

By: ______________________
Its: ______________________

C-W Associates

By: ______________________
Its: ______________________

Denise A. Kellenbeck (d/b/a) Victorian Arms Apartments)

By: ______________________
Its: ______________________

Earl W. Kellenbeck

By: ______________________
Its: ______________________

Florin Meadows I, Ltd.

By: [signature]
Its: GENERAL PARTNER

Florin Meadows II, Ltd.

By: [signature]
Its: GENERAL PARTNER

Foothill Apartments

By: ______________________
Its: ______________________

Frances T. Ward

By: ______________________
Its: ______________________

Glenview Gardens, LP

By: ______________________
Its: ______________________

Hillview Townhouses Limited

By: ______________________
Its: ______________________

Hillview Townhouses Limited No. 1

By: ______________________
Its: ______________________

Indian Head Manor Limited Partnership I

By: ______________________
Its: ______________________

J.D.V. Ward

By: ______________________
Its: ______________________

10244474 1

I HEREBY CERTIFY THAT the contents of the foregoing Responses to Defendant's First Set of Interrogatories are true and correct to the best of my knowledge, information and belief.

Anaheim Gardens

By: ______________________
Its: ______________________

B-L Associates

By: ______________________
Its: ______________________

C-W Associates

By: ______________________
Its: ______________________

Denise A. Kellenbeck (d/b/a) Victorian Arms Apartments)

By: ______________________
Its: ______________________

Earl W. Kellenbeck

By: ______________________
Its: ______________________

Florin Meadows I, Ltd.

By: ______________________
Its: ______________________

Florin Meadows II, Ltd.

By: ______________________
Its: ______________________

Foothill Apartments

By: [signature]
Its: General Partner

Frances T. Ward

By: ______________________
Its: ______________________

Glenview Gardens, LP

By: ______________________
Its: ______________________

Hillview Townhouses Limited

By: ______________________
Its: ______________________

Hillview Townhouses Limited No. 1

By: ______________________
Its: ______________________

Indian Head Manor Limited Partnership I

By: ______________________
Its: ______________________

J.D.V. Ward

By: ______________________
Its: ______________________

I HEREBY CERTIFY THAT the contents of the foregoing Responses to Defendant's First Set of Interrogatories are true and correct to the best of my knowledge, information and belief.

Anaheim Gardens

By: ______________________
Its: ______________________

B-L Associates

By: ______________________
Its: ______________________

C-W Associates

By: ______________________
Its: ______________________

Denise A. Kellenbeck (d/b/a) Victorian Arms Apartments)

By: ______________________
Its: ______________________

Earl W. Kellenbeck

By: ______________________
Its: ______________________

Florin Meadows I, Ltd.

By: ______________________
Its: ______________________

Florin Meadows II, Ltd.

By: ______________________
Its: ______________________

Foothill Apartments

By: ______________________
Its: ______________________

Frances T. Ward

By: Mark Ward
Its: Executor of Estate

Glenview Gardens, LP

By: ______________________
Its: ______________________

Hillview Townhouses Limited

By: ______________________
Its: ______________________

Hillview Townhouses Limited No. 1

By: ______________________
Its: ______________________

Indian Head Manor Limited Partnership I

By: ______________________
Its: ______________________

J.D.V. Ward

By: Mark Ward
Its: Executor of Estate

I HEREBY CERTIFY THAT the contents of the foregoing Responses to Defendant's First Set of Interrogatories are true and correct to the best of my knowledge, information and belief.

Anaheim Gardens

By: ______________________
Its: ______________________

B-L Associates

By: ______________________
Its: ______________________

C-W Associates

By: ______________________
Its: ______________________

Denise A. Kellenbeck (d/b/a) Victorian Arms Apartments)

By: ______________________
Its: ______________________

Earl W. Kellenbeck

By: ______________________
Its: ______________________

Florin Meadows I, Ltd.

By: ______________________
Its: ______________________

Florin Meadows II, Ltd.

By: ______________________
Its: ______________________

Foothill Apartments

By: ______________________
Its: ______________________

Frances T. Ward

By: ______________________
Its: ______________________

Glenview Gardens, LP

By: [signature]
Its: AGENT

Hillview Townhouses Limited

By: ______________________
Its: ______________________

Hillview Townhouses Limited No. 1

By: ______________________
Its: ______________________

Indian Head Manor Limited Partnership I

By: [signature]
Its: AGENT

J.D.V. Ward

By: ______________________
Its: ______________________

James W. Y. Wong

By: ______________________
Its: ______________________

Jewel Lake Villa II

By: ______________________
Its: Agent

Joseph Biafora & Stefi Biafora

By: ______________________
Its: ______________________

Metro West Limited

By: ______________________
Its: ______________________

Millwood Associates LP

By: ______________________
Its: ______________________

Napa Park Apartments LP

By: ______________________
Its: ______________________

Norman M. Kronick & Louis Dulien (d/b/a Halawa View Apartments)

By: ______________________
Its: ______________________

Ontario Townhouses LP

By: ______________________
Its: ______________________

Peter H. Y. Hsi & Pricilla L.F. Hsi (d/b/a General Partners of Waipahu Tower)

By: ______________________
Its: ______________________

Rock Creek Terrace LP

By: ______________________
Its: ______________________

Sierra Vista One

By: ______________________
Its: ______________________

Silverlake Village

By: ______________________
Its: ______________________

The Palomar Apartments

By: ______________________
Its: ______________________

Thetford Properties III LP

By: ______________________
Its: ______________________

James W. Y. Wong

By: ______________________
Its: ______________________

Jewel Lake Villa II

By: ______________________
Its: ______________________

Joseph Biafora & Stefi Biafora
Millwood Apartments

By: Joseph R. Biafora
Its: Stefi Biafora

Metro West Limited

By: ______________________
Its: ______________________

Millwood Associates LP

By: ______________________
Its: ______________________

Napa Park Apartments LP

By: ______________________
Its: ______________________

Norman M. Kronick & Louis Dulien (d/b/a Halawa View Apartments)

By: ______________________
Its: ______________________

Ontario Townhouses LP

By: ______________________
Its: ______________________

Peter H. Y. Hsi & Pricilla L.F. Hsi (d/b/a General Partners of Waipahu Tower)

By: ______________________
Its: ______________________

Rock Creek Terrace LP

By: ______________________
Its: ______________________

Sierra Vista One

By: ______________________
Its: ______________________

Silverlake Village

By: ______________________
Its: ______________________

The Palomar Apartments

By: ______________________
Its: ______________________

Thetford Properties III LP

By: ______________________
Its: ______________________

James W. Y. Wong

By: ______________________
Its: ______________________

Jewel Lake Villa II

By: ______________________
Its: ______________________

Joseph Biafora & Stefi Biafora
Parthenia Manor Apts.

By: Joseph R. Biafora
Its: Stefi Biafora

Metro West Limited

By: ______________________
Its: ______________________

Millwood Associates LP

By: ______________________
Its: ______________________

Napa Park Apartments LP

By: ______________________
Its: ______________________

Norman M. Kronick & Louis Dulien (d/b/a Halawa View Apartments)

By: ______________________
Its: ______________________

Ontario Townhouses LP

By: ______________________
Its: ______________________

Peter H. Y. Hsi & Pricilla L.F. Hsi (d/b/a General Partners of Waipahu Tower)

By: ______________________
Its: ______________________

Rock Creek Terrace LP

By: ______________________
Its: ______________________

Sierra Vista One

By: ______________________
Its: ______________________

Silverlake Village

By: ______________________
Its: ______________________

The Palomar Apartments

By: ______________________
Its: ______________________

Thetford Properties III LP

By: ______________________
Its: ______________________

James W. Y. Wong

By: ______________________
Its: ______________________

Jewel Lake Villa II

By: ______________________
Its: ______________________

Joseph Biafora & Stefi Biafora

By: ______________________
Its: ______________________

Metro West Limited

By: ✓ Richard Todd Jenkins
Its: ✓ General Partner

Millwood Associates LP

By: ______________________
Its: ______________________

Napa Park Apartments LP

By: ______________________
Its: ______________________

Norman M. Kronick & Louis Dulien (d/b/a Halawa View Apartments)

By: ______________________
Its: ______________________

Ontario Townhouses LP

By: ______________________
Its: ______________________

Peter H. Y. Hsi & Pricilla L.F. Hsi (d/b/a General Partners of Waipahu Tower)

By: ______________________
Its: ______________________

Rock Creek Terrace LP

By: ______________________
Its: ______________________

Sierra Vista One

By: ✓ Richard Todd Jenkins
Its: ✓ General Partner

Silverlake Village

By: ✓ Richard Todd Jenkins
Its: ✓ General Partner

The Palomar Apartments

By: ______________________
Its: ______________________

Thetford Properties III LP

By: ______________________
Its: ______________________

James W. Y. Wong

By: ______________________
Its: ______________________

Jewel Lake Villa II

By: ______________________
Its: ______________________

Joseph Biafora & Stefi Biafora

By: ______________________
Its: ______________________

Metro West Limited

By: ______________________
Its: ______________________

Millwood Associates LP
By: Mid-City Financial Corporation, Gen. Partner

By: [signature]
Its: PRESIDENT

Napa Park Apartments LP

By: [signature]
Its: AGENT

Norman M. Kronick & Louis Dulien (d/b/a Halawa View Apartments)

By: ______________________
Its: ______________________

Ontario Townhouses LP
By: Mid-City Financial Corporation. General Partner

By: [signature]
Its: PRESIDENT

Peter H. Y. Hsi & Pricilla L.F. Hsi (d/b/a General Partners of Waipahu Tower)

By: ______________________
Its: ______________________

Rock Creek Terrace LP
By: Mid-City Financial Corporation - Gen. PARTNER

By: [signature]
Its: PRESIDENT

Sierra Vista One

By: ______________________
Its: ______________________

Silverlake Village

By: ______________________
Its: ______________________

The Palomar Apartments

By: ______________________
Its: ______________________

Thetford Properties III LP

By: ______________________
Its: ______________________

James W. Y. Wong

By: ______________________
Its: ______________________

Jewel Lake Villa II

By: ______________________
Its: ______________________

Joseph Biafora & Stefi Biafora

By: ______________________
Its: ______________________

Metro West Limited

By: ______________________
Its: ______________________

Millwood Associates LP

By: ______________________
Its: ______________________

Napa Park Apartments LP

By: ______________________
Its: ______________________

Norman M. Kronick & Louis Dulien (d/b/a Halawa View Apartments)

By: [signature] tte
Its: General Partner
1-11-07

Ontario Townhouses LP

By: ______________________
Its: ______________________

Peter H. Y. Hsi & Pricilla L.F. Hsi (d/b/a General Partners of Waipahu Tower)

By: ______________________
Its: ______________________

Rock Creek Terrace LP

By: ______________________
Its: ______________________

Sierra Vista One

By: ______________________
Its: ______________________

Silverlake Village

By: ______________________
Its: ______________________

The Palomar Apartments

By: ______________________
Its: ______________________

Thetford Properties III LP

By: ______________________
Its: ______________________

10244474.1

2

James W. Y. Wong

By: ____________________
Its: ____________________

Jewel Lake Villa II

By: ____________________
Its: ____________________

Joseph Biafora & Stefi Biafora

By: ____________________
Its: ____________________

Metro West Limited

By: ____________________
Its: ____________________

Millwood Associates LP

By: ____________________
Its: ____________________

Napa Park Apartments LP

By: ____________________
Its: ____________________

Norman M. Kronick & Louis Dulien (d/b/a Halawa View Apartments)

By: ____________________
Its: ____________________

Ontario Townhouses LP

By: ____________________
Its: ____________________

* Peter H. Y. Hsi & Pricilla L.F. Hsi (d/b/a General Partners of Waipahu Tower)

By: [signature] PETER H.Y. HSI
Its: OWNER

Rock Creek Terrace LP

By: ____________________
Its: ____________________

Sierra Vista One

By: ____________________
Its: ____________________

Silverlake Village

By: ____________________
Its: ____________________

The Palomar Apartments

By: ____________________
Its: ____________________

Thetford Properties III LP

By: ____________________
Its: ____________________

James W. Y. Wong

By: ______________________________
Its: ______________________________

Jewel Lake Villa II

By: ______________________________
Its: ______________________________

Joseph Biafora & Stefi Biafora

By: ______________________________
Its: ______________________________

Metro West Limited

By: ______________________________
Its: ______________________________

Millwood Associates LP

By: ______________________________
Its: ______________________________

Napa Park Apartments LP

By: ______________________________
Its: ______________________________

Norman M. Kronick & Louis Dulien (d/b/a Halawa View Apartments)

By: ______________________________
Its: ______________________________

Ontario Townhouses LP

By: ______________________________
Its: ______________________________

Peter H. Y. Hsi & Pricilla L.F. Hsi (d/b/a General Partners of Waipahu Tower)

By: ______________________________
Its: ______________________________

Rock Creek Terrace LP

By: ______________________________
Its: ______________________________

Sierra Vista One

By: ______________________________
Its: ______________________________

Silverlake Village

By: ______________________________
Its: ______________________________

The Palomar Apartments

By: ______________________________
Its: ______________________________

Thetford Properties III LP

By: ______________________________
Its: General Partner

Thetford Properties IV LP

By: [signature]
Its: General Partner

620 Su Casa Por Cortez

By: ______________________
Its: ______________________

Washington Plaza Partners Ltd.

By: ______________________
Its: ______________________

825 San Tomas Apartments

By: ______________________
Its: ______________________

185-225 Parkhill Corp.

By: ______________________
Its: ______________________

3740 Silverlake Village

By: ______________________
Its: ______________________

Thetford Properties IV LP

By: ______________________
Its: ______________________

620 Su Casa Por Cortez

By: ______________________
Its: ______________________

Washington Plaza Partners Ltd.

By: [signature]
Its: General Partner

825 San Tomas Apartments

By: ______________________
Its: ______________________

185-225 Parkhill Corp.

By: ______________________
Its: ______________________

3740 Silverlake Village

By: ______________________
Its: ______________________

Thetford Properties IV LP

By: ______________________
Its: ______________________

620 Su Casa Por Cortez

By: ______________________
Its: ______________________

Washington Plaza Partners Ltd.

By: ______________________
Its: ______________________

825 San Tomas Apartments

By: ______________________
Its: ______________________

185-225 Parkhill Corp.

By: [signature]
Its: Managing Member

3740 Silverlake Village

By: ______________________
Its: ______________________

Thetford Properties JV LP

By: ________________________
Its: ________________________

620 Su Casa Por Cortez

By: ✓ Richard Todd Spiker
Its: ✓ General Partner

Washington Plaza Partners Ltd.

By: ________________________
Its: ________________________

825 San Tomas Apartments

By: ✓ Richard Todd Spiker
Its: ✓ General Partner

185-225 Parkhill Corp.

By: ________________________
Its: ________________________

3740 Silverlake Village

By: ✓ Richard Todd Spiker
Its: ✓ General Partner

I HEREBY CERTIFY THAT the contents of the foregoing Responses to Defendant's First Set of Interrogatories are true and correct to the best of my knowledge, information and belief.

Cedar Gardens Associates

By: James R Bancroft

JAMES R. BANCROFT

Its: Managing Partner

I HEREBY CERTIFY THAT the contents of the foregoing Responses to Defendant's First Set of Interrogatories are true and correct to the best of my knowledge, information and belief.

Algonquin Heights Associates LP

By: [signature]
Its: General Partner

Brandy Hill Co.

By: ______________________
Its: ______________________

Brookside Manor Associates LP

By: ______________________
Its: ______________________

Buckman Gardens LP

By: ______________________
Its: ______________________

Chauncy House Co.

By: ______________________
Its: ______________________

Cromwell Court Co.

By: ______________________
Its: ______________________

Country Towne Apartments Partnership

By: ______________________
Its: ______________________

Dolly Ann Apartments LP

By: ______________________
Its: ______________________

Emory Grove LP

By: ______________________
Its: ______________________

First Landmark Associates LP

By: ______________________
Its: ______________________

Forest Glen Limited Dividend Housing Association

By: ______________________
Its: ______________________

Fort Heath Associates

By: ______________________
Its: ______________________

Garrison Forest Associates

By: ______________________
Its: ______________________

Glenarden LP

By: ______________________
Its: ______________________

I HEREBY CERTIFY THAT the contents of the foregoing Responses to Defendant's First Set of Interrogatories are true and correct to the best of my knowledge, information and belief.

Algonquin Heights Associates LP

By: ______________________
Its: ______________________

Brandy Hill Co.
Kenmore Housing Realty Co., Inc. GP
By: [signature]
Its: Treasurer

Brookside Manor Associates LP

By: ______________________
Its: ______________________

Buckman Gardens LP

By: ______________________
Its: ______________________

Chauncy House Co.

By: [signature]
Its: Authorized Representative

Cromwell Court Co.
Kenmore Housing Realty Co, Inc. GP
By: [signature]
Its: Treasurer

Country Towne Apartments Partnership

By: ______________________
Its: ______________________

Dolly Ann Apartments LP

By: ______________________
Its: ______________________

Emory Grove LP

By: ______________________
Its: ______________________

First Landmark Associates LP

By: ______________________
Its: ______________________

Forest Glen Limited Dividend Housing Association

By: ______________________
Its: ______________________

Fort Heath Associates

By: ______________________
Its: ______________________

Garrison Forest Associates

By: ______________________
Its: ______________________

Glenarden LP

By: ______________________
Its: ______________________

10244477.1

I HEREBY CERTIFY THAT the contents of the foregoing Responses to Defendant's First Set of Interrogatories are true and correct to the best of my knowledge, information and belief.

Algonquin Heights Associates LP

By: ______________________
Its: ______________________

Brandy Hill Co.

By: ______________________
Its: ______________________

Brookside Manor Associates LP

By: [signature]
Its: AGENT

Buckman Gardens LP

By: [signature]
Its: AGENT

Chauncy House Co.

By: ______________________
Its: ______________________

Cromwell Court Co.

By: ______________________
Its: ______________________

Country Towne Apartments Partnership

By: ______________________
Its: ______________________

Dolly Ann Apartments LP

By: [signature]
Its: AGENT

Emory Grove LP

By: [signature]
Its: AGENT

First Landmark Associates LP
By: Mid-City Financial Corporation - Gen. Partner

By: [signature]
Its: PRESIDENT

Forest Glen Limited Dividend Housing Association

By: [signature]
Its: AGENT

Fort Heath Associates

By: ______________________
Its: ______________________

Garrison Forest Associates

By: ______________________
Its: ______________________

Glenarden LP

By: [signature]
Its: AGENT

I HEREBY CERTIFY THAT the contents of the foregoing Responses to Defendant's First Set of Interrogatories are true and correct to the best of my knowledge, information and belief.

Algonquin Heights Associates LP

By: ______________________
Its: ______________________

Brandy Hill Co.

By: ______________________
Its: ______________________

Brookside Manor Associates LP

By: ______________________
Its: ______________________

Buckman Gardens LP

By: ______________________
Its: ______________________

Chauncy House Co.

By: ______________________
Its: ______________________

Cromwell Court Co.

By: ______________________
Its: ______________________

Country Towne Apartments Partnership

By: [signature]
Its: managing member
John E Pakenham Jr

Dolly Ann Apartments LP

By: ______________________
Its: ______________________

Emory Grove LP

By: ______________________
Its: ______________________

First Landmark Associates LP

By: ______________________
Its: ______________________

Forest Glen Limited Dividend Housing Association

By: ______________________
Its: ______________________

Fort Heath Associates

By: ______________________
Its: ______________________

Garrison Forest Associates

By: ______________________
Its: ______________________

Glenarden LP

By: ______________________
Its: ______________________

I HEREBY CERTIFY THAT the contents of the foregoing Responses to Defendant's First Set of Interrogatories are true and correct to the best of my knowledge, information and belief.

Algonquin Heights Associates LP

By: ______________________
Its: ______________________

Brandy Hill Co.

By: ______________________
Its: ______________________

Brookside Manor Associates LP

By: ______________________
Its: ______________________

Buckman Gardens LP

By: ______________________
Its: ______________________

Chauncy House Co.

By: ______________________
Its: ______________________

Cromwell Court Co.

By: ______________________
Its: ______________________

Country Towne Apartments Partnership

By: ______________________
Its: ______________________

Dolly Ann Apartments LP

By: ______________________
Its: ______________________

Emory Grove LP

By: ______________________
Its: ______________________

First Landmark Associates LP

By: ______________________
Its: ______________________

Forest Glen Limited Dividend Housing Association

By: ______________________
Its: ______________________

Fort Heath Associates
By: Broad Sound Corp. its General Partner

By: [signature], Pres
of Its: General Partner

Garrison Forest Associates

By: ______________________
Its: ______________________

Glenarden LP

By: ______________________
Its: ______________________

10244477.1

I HEREBY CERTIFY THAT the contents of the foregoing Responses to Defendant's First Set of Interrogatories are true and correct to the best of my knowledge, information and belief.

Algonquin Heights Associates LP

By: ____________________
Its: ____________________

Brandy Hill Co.

By: ____________________
Its: ____________________

Brookside Manor Associates LP

By: ____________________
Its: ____________________

Buckman Gardens LP

By: ____________________
Its: ____________________

Chauncy House Co.

By: ____________________
Its: ____________________

Cromwell Court Co.

By: ____________________
Its: ____________________

Country Towne Apartments Partnership

By: ____________________
Its: ____________________

Dolly Ann Apartments LP

By: ____________________
Its: ____________________

Emory Grove LP

By: ____________________
Its: ____________________

First Landmark Associates LP

By: ____________________
Its: ____________________

Forest Glen Limited Dividend Housing Association

By: ____________________
Its: ____________________

Fort Heath Associates

By: ____________________
Its: ____________________

Garrison Forest Associates

By: Richard Dawson
Its: Managing General Partner

Glenarden LP

By: ____________________
Its: ____________________

Jodani Associates LP

By: ✓
Its: SEYMOUR ALPERT

Pine Crest Co.

By: ______
Its: ______

Kimberly Associates

By: ______
Its: ______

Riverside Village Co.

By: ______
Its: ______

King's Grant Co.

By: ______
Its: ______

Suburbia Associates LP

By: ______
Its: ______

Leader House Associates

By: ______
Its: ______

Suchar Associates LP

By: ✓
Its: SEYMOUR ALPERT

Leader House Co.

By: ______
Its: ______

Tower West Associates LP

By: ______
Its: ______

New Amsterdam Associates

By: ______
Its: ______

Tower West, Inc.

By: ______
Its: ______

New Amsterdam Houses Inc.

By: ______
Its: ______

Town & Country Apartments & Townhouses

By: ______
Its: ______

Jodani Associates LP

By: ______________________
Its: ______________________

Kimberly Associates

By: ______________________
Its: AGENT

King's Grant Co.

By: ______________________
Its: ______________________

Leader House Associates

By: ______________________
Its: ______________________

Leader House Co.

By: ______________________
Its: ______________________

New Amsterdam Associates

By: ______________________
Its: ______________________

New Amsterdam Houses Inc.

By: ______________________
Its: ______________________

Pine Crest Co.

By: ______________________
Its: ______________________

Riverside Village Co.

By: ______________________
Its: ______________________

Suburbia Associates LP

By: ______________________
Its: AGENT

Suchar Associates LP

By: ______________________
Its: ______________________

Tower West Associates LP

By: ______________________
Its: ______________________

Tower West, Inc.

By: ______________________
Its: ______________________

Town & Country Apartments & Townhouses

By: ______________________
Its: ______________________

Jodani Associates LP

By: ______________________
Its: ______________________

Kimberly Associates

By: ______________________
Its: ______________________

King's Grant Co.
Kenmore Housing Realty Co, Inc GP
By: [signature]
Its: Treasurer

Leader House Associates

By: ______________________
Its: ______________________

Leader House Co.

By: ______________________
Its: ______________________

New Amsterdam Associates

By: ______________________
Its: ______________________

New Amsterdam Houses Inc.

By: ______________________
Its: ______________________

Pine Crest Co.
Kenmore Housing Realty Co., Inc. GP
By: [signature]
Its: Treasurer

Riverside Village Co.
Kenmore Housing Realty Co., Inc GP
By: [signature]
Its: Treasurer

Suburbia Associates LP

By: ______________________
Its: ______________________

Suehar Associates LP

By: ______________________
Its: ______________________

Tower West Associates LP

By: ______________________
Its: ______________________

Tower West, Inc.

By: ______________________
Its: ______________________

Town & Country Apartments & Townhouses

By: ______________________
Its: ______________________

Jodani Associates LP

By: ______________________
Its: ______________________

Kimberly Associates

By: ______________________
Its: ______________________

King's Grant Co.

By: ______________________
Its: ______________________

Leader House Associates L.P.

By: ______________________
Its: V.P.

Leader House Co.

By: ______________________
Its: V.P.

New Amsterdam Associates L.P.

By: ______________________
Its: V.P.

New Amsterdam Houses Inc.

By: ______________________
Its: V.P.

Pine Crest Co.

By: ______________________
Its: ______________________

Riverside Village Co.

By: ______________________
Its: ______________________

Suburbia Associates LP

By: ______________________
Its: ______________________

Suehar Associates LP

By: ______________________
Its: ______________________

Tower West Associates LP

By: ______________________
Its: V.P.

Tower West, Inc.

By: ______________________
Its: V.P.

Town & Country Apartments & Townhouses

By: ______________________
Its: ______________________

Jodani Associates LP

By: ______________________
Its: ______________________

Kimberly Associates

By: ______________________
Its: ______________________

King's Grant Co.

By: ______________________
Its: ______________________

Leader House Associates

By: ______________________
Its: ______________________

Leader House Co.

By: ______________________
Its: ______________________

New Amsterdam Associates

By: ______________________
Its: ______________________

New Amsterdam Houses Inc.

By: ______________________
Its: ______________________

Pine Crest Co.

By: ______________________
Its: ______________________

Riverside Village Co.

By: ______________________
Its: ______________________

Suburbia Associates LP

By: ______________________
Its: ______________________

Suehar Associates LP

By: ______________________
Its: ______________________

Tower West Associates LP

By: ______________________
Its: ______________________

Tower West, Inc.

By: ______________________
Its: ______________________

Town & Country Apartments & Townhouses

By: Richard Dawson
Its: Managing General Partner

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that two (2) true and correct copies of the foregoing were served this 12th day of January, 2007, by hand, upon the following:

David Harrington, Esq.
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, NW
Room 12136
Washington, DC 20530

Harry J. Kelly

# EXHIBIT C

**U.S. Department of Justice**

Civil Division

DMC:BMS:DHarrington
DJ No. 154-93-655 & 154-97-582

Telephone: (202) 616-0465
Facsimile: (202) 307-0972

*Washington, D.C. 20530*

February 5, 2007

*Via Facsimile & U.S. Mail*

Harry J. Kelly, Esq.
Nixon Peabody LLP
401 Ninth St., N.W.
Suite 900
Washington, D.C. 20004

Re: *Anaheim Gardens, et al. v. United States*, No. 93-655C (Fed. Cl.);
*Algonquin Heights, et al. v. United States*, No. 97-582C (Fed. Cl.).

Dear Mr. Kelly:

As you know, the United States served interrogatories, requests for production and requests for admission upon the plaintiffs in July 2006. We received your written response to our discovery on January 12, 2007, and, based upon our preliminary review, have a substantial number of concerns.

I. Plaintiffs' Interrogatory Answers

Most of the interrogatory answers provided by the plaintiffs are incomplete or provide no information whatsoever. The United States served carefully crafted interrogatories that sought information about the ripeness of plaintiffs' claims or requested information needed to conduct meaningful deposition discovery. It is disappointing that, after providing plaintiffs an additional five months to respond to our interrogatories, complete answers have not been received. The most significant deficiencies with the plaintiffs' answers are addressed below. It is our hope that we can resolve these issues without court involvement.

A. Interrogatory 1

Interrogatory 1 seeks information about the identity of the owners of the projects at issue in this litigation. This information is essential to conduct deposition discovery on ripeness issues and, therefore, is proper under the Rules of the Court of Federal Claims. See RCFC 26(b)(1) (authorizing the discovery of information "calculated to lead to the discovery of admissible evidence").

Your answer to interrogatory 1 provides no information about the identity of the owners of the subject properties on the ground that the interrogatory is overly broad and seeks information not relevant to ripeness. As explained above, your objection that the information sought by interrogatory 1 is not relevant to ripeness is misplaced. However, given that the Preservation Statutes were not enacted until 1987, it would be sufficient for present purposes to identify the owners of each of the subject properties from 1987 to the present.

B. Interrogatories 2 and 3

Interrogatories 2 and 3 request information about all actions taken pursuant to the Preservation Statutes. The Preservation Statues established a complex administrative process through which a project owner could prepay, sell or receive monetary incentives. A clear understanding of the actions occurring in this administrative process is necessary to assess whether plaintiffs' as-applied taking claims are ripe.

While a summary table containing some information about the administrative process was attached to plaintiffs' interrogatory answers, the plaintiffs' response to interrogatories 2 and 3 is nevertheless incomplete. For instance, the summary table frequently gives a date when a plan of action ("POA") was submitted to HUD, and may even indicate whether the plan of action was approved by HUD, but gives no information about what action the owner's POA requests (e.g., a request for permission to prepay, a request for a use agreement providing financial incentives, or a request to sell to a qualified purchaser) and fails to indicate whether the POA was in fact implemented (e.g., a use agreement was executed). Additionally, while the plaintiffs' interrogatory answers state that "HUD routinely approved, conditionally approved, rejected and/or rejected and later approved plains of action," the summary table appears to omit information about the plan of action process such as instances when the owner withdrew a POA, chose to revise a pending POA, or submitted a second POA after an initial POA was rejected. Please promptly supplement your interrogatory answer to provide a complete response to interrogatories 2 and 3.

We also find unclear the entry in the summary table attached to your interrogatory answers concerning the "Glenarden/Glenreed L.P." project. The first amended complaint in the Algonquin Heights case identifies Glenarden L.P. as the owner of Glenarden Woods Apartments. Pl.'s First Am. Compl. ¶ 8. Glenarden L.P. also owns the Glenreed Apartment project. Id. Please let us know if the "Glenarden/Glenreed L.P." entry is intended to refer to the Glenarden Woods project owned by Glenarden L.P.

C. Interrogatory 4

Interrogatory 4 seeks information about communications between the owners and HUD regarding prepayment. The plaintiffs have provided no substantive response to this interrogatory.

With respect to "oral communications," you state that the information is better obtained through deposition testimony. However, the failure to provide information about who engaged in discussions with HUD about prepayment makes it impossible to notice depositions to obtain more detailed information. Please provide an answer to this interrogatory describing any oral communications between HUD and the owners regarding prepayment.

With respect to "written communications," you state that such communications have been provided "as part of Plaintiffs' rolling document production." The plaintiffs have produced tens of thousands of pages of material. Although under RCFC 33(d) a party may chose to identify documents from which the answer to an interrogatory can be derived, a general reference to a mass undifferentiated documents does not comport with RCFC 33(d). See, e.g., O'Connor v. Boeing N. Am., Inc., 185 F.R.D. 272, 277 (C.D. Cal. 1999) ("Rule 33(d) is not satisfied by the wholesale dumping of documents."); Capacchione v. Charlotte-Mecklenburg Schools, 182 F.R.D. 486, 489 (W.D.N.C. 1998) ("A party that responds to an interrogatory under the provisions of Rule 33(d) abuses this option when the responding party simply directs the interrogating party to a mass of business records or offers to make all of their records generally available."). Rather, "a responding party has the duty to specify by category and location, the records from which answers to interrogatories can be derived." Capacchione, 182 F.R.D. at 489 (quoting Fed.R.Civ.P. 33 (advisory committee's note)); accord Oleson v. Kmart Corp., 175 F.R.D. 560, 563 (D. Kan. 1997). With respect to written communications, please provide Bates numbers or a description that allows the documents that contain discussions about the possibility of prepayment to be readily located.

D. Interrogatories 5 and 6

An "as-applied" taking claim does not ripen "until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." Palazzolo v. Rhode Island, 533 U.S. 606, 618 (2001) (emphasis added). Interrogatories 5 and 6 ask the plaintiffs to identify the date upon which they contend that HUD reached a "final decision" regarding application of the Preservation Statutes to their property.

You object to these interrogatories on the ground that there "were multiple points of decision" in the administrative process established by the Preservation Statutes. Your objection misses the point. We have requested that the plaintiffs identify the date upon which they contend that HUD rendered the "final decision" that ripened their as-applied taking claim. This information is central to the ripeness inquiry. Please promptly provide a responsive answer to these interrogatories. If the plaintiffs do not contend that HUD reached a final decision regarding the application of either ELIHPA or LIHPRHA, a statement acknowledging this fact would be sufficient.

E. Interrogatory 7

Interrogatory 7 seeks the factual basis for any contention by a plaintiff that applying to HUD to prepay pursuant to the Preservation Statutes was futile. Rather than answer this interrogatory, you object that the interrogatory calls for a legal conclusion, is vague, over broad and burdensome. See Pls.' Resp. To Def.'s First Set of Interrogs. at 6. These objections are baseless.

As an initial matter, the plain language of our interrogatory requests that you state all facts upon which you base any claim that applying to prepay was under the Preservation Statutes was futile. Thus, the interrogatory does not seek a legal conclusion. Furthermore, information concerning any claim of futility is an essential part of discovery concerning the issue of ripeness. If you persist in asserting objections to this interrogatory, we will feel compelled to take this issue to the Court.

II. Plaintiff's Admissions

In our first set of requests for admissions, we asked plaintiffs to admit that they had not applied to prepay pursuant to the Preservation Statutes. The Preservation Statutes establish an administrative process for obtaining permission to prepay. Under both ELIHPA and LIHPRHA, the owner's submission of a plan of action to prepay is an essential step in this process. See ELIHPA §§ 221-23; 12 U.S.C. §§ 4101(a), 4108.

Plaintiff's interrogatory answers state that many owners did not submit any plan of action under one or both of the Preservation Statutes. However, in response to our request for admission, these same plaintiffs deny that they failed to apply to prepay. The response to these requests for admission is inconsistent with the plaintiffs' own interrogatory answers. Accordingly, we urge plaintiffs to reconsider the denial of our first and third requests for admission. See RCFC 37(c)(2).

III. Plaintiffs' Production of Documents

By letter dated November 27, 2006, we requested certain basic information (e.g., the name of the plaintiff who produced the documents, the significance of the bates number prefixes on the documents) about the documents that have been produced in the Anaheim Gardens and Algonquin Heights actions. This information is essential given the numerous plaintiffs in these actions, the large volume of documents produced, and plaintiffs' use of RCFC 33(d) in some of its interrogatory answers. While you have agreed to provide the requested information, no information about the plaintiffs' document production has not yet been received. Please contact me at your earliest convenience to discuss when it should be anticipated.

Very truly yours,

David A. Harrington
Trial Attorney
Commercial Litigation Branch

cc: Terri L. Roman, Esq.
Alice A. Peterson, Esq.

# EXHIBIT D

NIXON PEABODY LLP
ATTORNEYS AT LAW

Suite 900
401 9th Street, N.W.
Washington, D.C. 20004-2128
(202) 585-8000
Fax: (202) 585-8080

Harry J. Kelly
Direct Dial: (202) 585-8712
E-Mail: hkelly@nixonpeabody.com

February 14, 2007

**VIA HAND DELIVERY**

David Harrington, Esq.
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, NW
Room 12136
Washington, DC 20530

**Re: Anaheim Gardens/Algonquin Heights**

Dear Mr. Harrington:

As indicated in my letter to you of February 6, 2007, this letter responds in detail to your letter to me dated February 5, 2007. As I mentioned in that earlier letter, I was disappointed by the timing, content and tone of your February 5 letter, which attacked both the scope and substance of our prior discovery responses. Again, for the record, I entirely reject any such attacks on our discovery responses, which fully satisfied the requirements of the Rules of the Court of Federal Claims ("RCFC"). Your letter does not fairly reflect the content of our responses, nor does it take account of our other communications on discovery matters in which you and I have engaged. I believe when those communications are considered, many of the objections you raise evaporate. To the extent you have remaining questions, however, I will address them in this letter and, as appropriate, hope to work with you further to resolve them. The letter first discusses your February 5 letter in the context of our discovery communications and activities to date, and then responds to the specific questions that letter raised.

1. **The February 5 Letter Is Premature Due To The Plaintiffs' Outstanding Proposal To Exchange Databases and the <u>Pending Responses of the Government.</u>**

Your February 5 letter is premature for several reasons. First, many of the matters you raise in your letter can be resolved by reviewing the documents we have produced to you, as discussed in more detail below. At the outset, we did not, as your February 5 letter seems to suggest (at 3), attempt to burden you by "dumping" an undifferentiated mass of documents upon you. To the contrary – at very large expense to the plaintiffs -- we carefully culled thousand of pages of nonresponsive materials from the raw files that our clients provided to us and delivered to you only those materials that fairly responded to your requests. While our production was exhaustive and comprehensive, it was not padded, but rather represented a very scrupulous attempt to produce materials that you requested. As an alternative, we could have shifted that entire burden of production onto you and simply given you access to the raw files (with the exception of privileged materials), and let you select the documents you wanted, at which point you could produce your own index to those documents. While I did not expect you to congratulate us on the scope of our production, I am dismayed that you would cite our good faith response as somehow intended to burden or oppress you.

As you point out, you requested in your November 27, 2006 letter that the plaintiffs prepare an index that would allow you to search through the documents we have been producing to you since last September on a property by property basis. When this issue first arose early in December 2006, we discussed preparing some form of index that would allow you to search by Bates-stamp number the documents that relate to each property among the 90,000+ pages of documents that we produced in response to your document requests.

At the same time, I offered, as a courtesy, to provide to the government a copy of our document database, if the government would agree to provide its database to us. That would provide a far more sophisticated search capability to you, because we have "tagged" a variety of the most critical documents, such as the notices of intent and plans of action (to the extent available) for each plaintiff; to the extent you want to tag other documents, of course, you could do so easily. It would also allow you to extract documents on a property by property basis, and make a number of more useful searches of the documentary database. In response, you indicated that the proposed exchange was attractive, but that you needed to consult with your colleagues at the Department of Justice ("DOJ") and your client at the Department of Housing and Urban Development ("HUD"), to see if they were comfortable with such an exchange, and also determine if there were any technical obstacles to the exchange. I made this proposal to you in my email dated December 6, 2006 – more than two months ago. Please see a copy of the email (pg. 1, ¶3), attached.

In that same email, I said I would provide an index of "identifying information" to you "[i]f a reciprocal database sharing isn't practicable." It was entirely appropriate to request that

NIXON PEABODY LLP



determination before preparing the index: producing a property-by-property index in hard copy is a time-consuming and expensive process that requires one of our paralegals to search the database on a property by property basis. Frankly, it would be a waste of our time to give you a voluminous hard copy index of our production only to learn later that you decided to accept our proposal for a database exchange, which, as noted above, will provide much more robust search abilities to you than a hard copy index would allow. For that reason, you and I never set a date to turn over the index to you, because I was waiting for your response to the database exchange. Nevertheless, the written discovery responses you received in January 2007 were made while our offer was pending. You have been aware since December 6, 2006, therefore, of our intent to provide additional identifying information to you, either by way of an index or a database exchange.

More than six weeks after sending my email to you, however, I have not received a response to my proposal. In fact, shortly after my eye surgery last month, when I called you to give my consent to the additional 70 days you requested for your discovery responses, I repeated both the offer of the document index and the database exchange. You indicated that you had spoken with others at HUD and DOJ about the proposed exchange, but did not have a final response. As you January 26, 2007 noted, we agreed to speak further about this when I returned from recuperating from my surgery, but that letter made no mention of my outstanding offer to exchange databases. Your February 5 letter arrived shortly I returned to the office – and again, without any indication of your response to the database exchange proposal in made more than two months ago. I am particularly distressed, therefore, that you would contend that, in connection with several interrogatory responses in which we directed you to look to our document production, we have failed to provide you with identifying information pursuant to RCFC 33(d). For more than two months, we have been waiting to provide that information to you. You cannot contend that we have failed to meet our obligation under RCFC 33(d) where, for more than two months, we have waited for you to respond to our straight-forward request to exchange databases. Simply put, there is no basis for your objections to the content of our interrogatory responses in light of your failure to respond to our proposal to provide that specific information.

Although you have not responded to our offer to exchange databases, that offer remains outstanding and, I believe, would be extremely useful to both sides. Nevertheless, although you have not informed me about whether or not the proposed database exchange is amenable to you, I have, as a show of good faith, directed our paralegal to compile the index in hard copy. A copy of that index is enclosed with this letter.[1]

[1] In your letters of November 27, 2006, you ask us to explain "the significance of the bates [sic] number prefixes" on the documents we produced. You have renewed that request in subsequent correspondence. The prefix was the letters "IRH." We could use any combination of letters, numbers and symbols we wanted to identify our documents and in more than two decades of litigation, I have never had opposing counsel contend that our choice for prefix was in any sense a proper subject for discovery. Without conceding that the information is

Your letter is premature in a second respect. As you know, at your request, the plaintiffs initiated a "rolling" document production in August 2006. Our production continued until mid-December 2006, by which time we had produced over 90,000 pages of responsive documents to you. As Exhibit A to our interrogatory responses indicates, several of the plaintiffs were unable to locate a complete set of documents that were responsive to your document requests and interrogatories. As the cover letter mentions, we anticipate that many of these documents will be found in the materials that are responsive to our document production requests and we promised then – and we renew that promise now – to amend or supplement our responses as appropriate when and if those materials are produced by the government. To the extent that your February 5 letter seek additional responses with respect such matters, we cannot amend or supplement our responses further until that production is complete – and at the moment, it will not be complete until at least April 6, 2007, as a result of the discovery extension to which we agreed. Obviously, we cannot provide information we do not have but, to the extent we obtain additional information from your documents that provide grounds to amend or supplement the responses we have already provided, we will do so (again, exchanging databases may allow us to accelerate that process).

Finally, when I consented to the additional time you requested last month, I asked that you provide the same sort of rolling production of your documents that we provided to you, so that we could begin reviewing your documents and would not be deluged with documents whenever you complete your responses. Although you have not contacted me to respond to that offer, I did receive two boxes of documents late in the afternoon of February 9, which apparently constitutes a *de facto* agreement to engage in such a rolling production. Nevertheless, I should point out that, at your insistence, within 45 days of service of your discovery requests, we had produced more than 4000 pages of documents to you. In contrast, our discovery requests were served upon you on October 27, 2006, and it took more than 104 days after we served those requests before we received the first responsive documentation from you. Given the fact that it took almost twice as long for the government to produce its first documents to us as it took for us to produce our first documents to you – and that it apparently remains unable after more than two months to determine whether it will exchange databases with us – the government is frankly in no position to complain about any aspect of the plaintiffs' discovery responses to date.[2]

## 2. Specific Responses to the February 5 Letter

Your February 5 letter raised questions about a number of our specific discovery responses. Many of the preceding points apply to these criticisms. In other places, it appears

---

irrelevant and not discoverable, as a courtesy to you, I will inform you that the prefix we used was selected solely to assist with billing the copying and production charges for these materials, and to assure that these documents would have a prefix distinct from prefixes used in other litigation in this office.

[2] To the extent that the documents we received last week was intended to indicate your agreement to engage in a rolling production of documents, I would appreciate a note confirming that agreement in writing and setting forth the terms or approximate dates pursuant to which you intend to make additional production.

you have restated or clarified some of your discovery requests, as we will point out. While you claim that you "served carefully crafted interrogatories" upon us, the interrogatories were often far less clear and precise than they appear to you. We did not raise quibbling objections; fairly construed, many of your interrogatories swept up huge amounts of information, much of which is irrelevant, nonexistent and/or excessively burdensome to produce. Finally, in some cases, you have restricted the scope and nature of the information you requested. I will address these matters below:

A. Interrogatory 1

In the February 5 letter, you state (at 1) that "Interrogatory 1 seeks information about the identity of the owners of the projects at issue in this litigation." The "owners of the "projects at issue" are the plaintiffs in these lawsuit – largely general partnerships, with some limited liability companies and general partnerships. To the extent that you want the names of all of the plaintiffs' partners, we continue to believe that producing a list of partners from the creation of these entities to the current date is burdensome and oppressive and not calculated to lead to the discovery of admissible evidence. As noted in our response, production of that information would jeopardize the plaintiffs' confidential business information, a point that your February 5 letter does not discuss.

Your letter indicates that this information is needed for possible deposition purposes and suggests some ideas to streamline the scope of this request. Thus, you state that it would be sufficient if we identified the "owners" for the period from 1987 to the present. Again, the "owners" are the plaintiffs themselves, and you already have that information. If you are seeking the identity of the decision-makers who directed the actions of the owners with respect to ripeness issues for possible deposition purposes, then let me suggest that we provide you with the names of the general partners or managing members of the owners (the caption already lists the names of those persons who are general partners). Just as you note that the time prior to 1987 is not relevant, the time after 1996, when the prepayment prohibitions were lifted, is equally irrelevant, so we propose to provide those names from 1987 to 1996. We continue to believe that the identity of the plaintiffs' limited partners – who can be very numerous – is not relevant, because, by the very nature of their status as limited partners, they were not in a position to direct its affairs with respect to prepayment issues. I believe this focused list of decision-makers will provide the identity of the persons you need for deposition purposes.

B. Interrogatory 2 and 3

You characterize Interrogatories 2 and 3 as requesting "information about all actions taken pursuant to the Preservation Statutes." Again, with due respect, we doubt you fairly meant to ask us to report on "all actions taken pursuant" to those laws. Without straining the language of your request, these actions could include a bewildering variety of conduct, including, among others, a conversation between a general partner and his secretary concerning the mailing of a

plan of action, attendance at an industry seminar discussing the operation of ELIHPA or LIHPRHA, initial calls to appraisers to obtain quotes for appraisals, and a host of other "actions" all of which were "taken pursuant" to the Preservation Statutes. Although you contend these interrogatories were "carefully crafted," this language is on its face extremely imprecise and over-inclusive. We do not think you intended that we would identify all such trivial interactions and if you did, we would have well-founded reasons to object that such a broad scope of inquiry was not calculated to lead to the discovery of admissible evidence, pursuant to RCFC 26(b)(1).

Consequently, we construed your interrogatories as seeking information about the actual interactions between the owners and HUD that the owners undertook to comply with the procedural provisions of these statutes. We think this was what you intended, and is consistent both with the present focus of the litigation – that is, to demonstrate whether the plaintiffs' claims were ripe – as well as examples cited in the remainder of Interrogatories 2 and 3, which focused on such interactions with HUD ("whether you submitted a notice of intent to HUD, the date upon which any notice of intent was submitted," etc.). Given the specific examples you cited, it was appropriate – and frankly, we think extremely helpful – to condense the plaintiffs' formal interactions with HUD into the chart that appears on Exhibit A. As you no doubt have noticed, the topics covered in Exhibit A tie back directly to the specific matters requested in Interrogatories 2 and 3. In a handful of pages, we have listed the known filings you requested (including notices of intent and plans of actions) with the agency, along with HUD's action dates. We have also noted those places where documentary records are lacking. The alternative to preparing Exhibit A would have been to prepare short narratives for each property. That approach would have provided no more detailed information to you than is contained in Exhibit A, and would have made it more difficult for both you and us to identify those places were documentary information is lacking.

The primary thrust of your objection to our responses to these interrogatories is that we did not include information about the actual content of the documents and the outcomes. Your contention is legally and factually incorrect. First, with respect to the outcome of these interactions under the Preservation Statutes, we disagree that we did not provide information with respect to the outcome of these processes; this data is expressly contained in Exhibit A.

With respect to your claim that we did not provide information about the content of the plaintiffs' plans of action, you misstate the nature of our obligations. First, as a legal matter, we are not required to supply you with a narrative account of all of the interactions between HUD and the individual owners. On the contrary, our obligation under RCFC 33(d) is complete if we provide you with access to the same documents that we would use to obtain that information and the means to locate relevant information among those documents, on the same basis we have[3].

[3] This is not a case, as in Capacchione v. Charlotte Mecklenburg Schools, 182 F.R.D. 486, 490 (W.D. N.C. 1998), where the responding party was in a "far better position to locate the documents containing the requested information" than the propounding party. As you and I have discussed, there are dozens of plaintiffs in this case, most of whom have their own document filing and retrieval systems. Aside from the fact that our staff

NIXON PEABODY LLP



As noted above, more than two months ago we offered to share our database with you. If you had accepted our invitation, you would have been able to search the database immediately and would have found the documents – to the extent they are available to us – that we cite in Exhibit A and that contain the information you seek. That offer is still open, and as noted above, we believe an exchange of databases will allow both sides to obtain information that they need expeditiously.

Second, as a factual matter, we have pointed out the documents that contain the requested information in Exhibit A and have provided, as an interim expedient, the enclosed index, even though we have not received your response to our request to exchange databases. As a result, there can be no doubt that the information you seek is now equally available to you and we have met our discovery obligations by pointing out to you where you will find that information.

Although we have met our obligation to respond to these interrogatories, it is premature in any case to seek additional supplementation of our responses to these interrogatories now, for several reasons. First, as noted, we have not received your response to our request to exchange databases, and we believe that, if you accept our proposal, the information you seek will be readily available to you directly. Second, there are several gaps in the record for many of the owners and even if we agreed to provide a day-by-day narrative of these interactions – which, to repeat for the record, is not required by the RCFC – we may not be able to provide the information you request at this point. Third, as noted above, we already committed to supplement our responses after receipt of your documents, which we expect will allow us to fill in most of the "gaps" noted in Exhibit A. Accordingly, we suggest that we defer any discussion about further supplementation until these contingencies have been resolved.[4]

C. Interrogatory 4

Your February 5 letter contends that the plaintiffs "provided no substantive response to this interrogatory." We disagree. As a decision you relied upon, O'Connor v. Boeing North Am., Inc., makes clear,

> the use of interrogatories by a discovering party may be quite limiting since such devices are "designed to identify discreet information or sources of information

paged through the universe of plaintiffs' documents in order to produce the documents you have received, both sides have exactly the same familiarity with the plaintiffs' documents. Indeed, one of the reasons that we assembled the database was so that we could have a standardized method of locating documents. That is why we felt it would be helpful to offer that same database to you: to assure that you did in fact have exactly the same access to the plaintiffs' documents that we have.

[4] Your February 5 letter (at 2) also asks about the status of the Glenarden L.P. owner and its properties. Glenarden owns both Glenarden Woods Apartments and Glenreed Apartments. Both projects are the subject of Glenarden L.P.'s complaint in this case. On Exhibit A, we intended to provide information concerning both properties. The references on pages 2 and 6 should have indicated the apartment name/owner as, respectively, "Glenreed/Glenarden L.P." and "Glenarden/Glenarden L.P." We regret the typographic error.

> [and] not to elicit opinions on complex issues where the detailed cross-examination allowed by deposition is imperative."

185 F.R.D. 272, 227 (C.D. Cal. 1999), quoting Independence Tube Corp. v Copperweld Corp., 543 F.Supp. 706, 720 (N.D. Ill. 1982).

With respect to oral communications concerning the history of prepayment, we believe that the nature of oral communications between HUD and the owners is, in fact, better obtained through deposition testimony. The O'Connor court noted that "the depositions of knowledgeable corporate witnesses under Rule 30(b)(6), or the individually noticed deposition of defendants' employees, will ultimately be more productive" than the use of interrogatories. *Id.* Indeed, your letter does not really appear to dispute that position, but asserts that our response does not provide you with "information about who engaged in discussions with HUD about prepayment [which] makes it impossible to notice depositions." February 5 letter at 3. With all respect, that is not what you asked for: Your interrogatory asked for "all communications" between the owners and HUD, not the identity of all persons who communicated with HUD, which your February 5 letter acknowledges is the real subject of this inquiry.

In any event, as noted above (pg. 5), we have agreed to provide you with a list of all the general partners during the relevant time period which will provide the information you need to notice depositions. In light of your clarification of this Interrogatory, we will contact the owners to determine if there were persons other than the owners' general partners who had verbal communications with HUD concerning prepayment, and provided that information to you.

With respect to written communications, we have provided to you all responsive and nonprivileged documents concerning contacts between HUD and the owners. To my knowledge, this is the first time opposing counsel has accused me of producing too many documents, which must be the point of your statements (at 3) that we provided "mass undifferentiated documents" to you and that our production constitutes a "wholesale dumping of documents," a comparison that you apparently intended by quoting O'Connor, 185 F.R.D. 185 at 277.

On the contrary, our production was methodical, comprehensive, and meticulous. As noted above, we deleted thousands of pages of nonresponsive documents, rather than inundate you with paper, and we did not demand, as we could have, that you search our file room for responsive materials. We believe the materials we delivered to you comply with the letter and spirit of our obligations under the RCFC.

Moreover, we have offered to provide a complete database that will allow you to search the materials we did provide as fully as you would like. Even though you have not responded to that request, we have provided the enclosed index to you which will allow you to search our document production on the same basis that we would (except to the extent that we have those materials in our database). The index provides Bates-stamp references to individual documents,

NIXON PEABODY LLP

David Harrington, Esq.
February 14, 2007
Page 9

which is a far greater level of detail than is contained in the cover letter that accompanied your recent production, and should be more than sufficient to satisfy RCFC 33(d) and to meet any request contained in your February 5 letter.

D. Interrogatories 5 and 6

These interrogatories requested us to state "the date upon which [the plaintiffs'] contend that HUD reached a final decision regarding the application" of the Prepayment Statutes to their properties. We objected that, despite your contentions that your interrogatories were "carefully crafted," these interrogatories were in fact "vague and ambiguous." We simply could not determine what you meant by "final application." These statutes were complex and involved a number of regulatory matters, and we believe we were correct to point out these ambiguities. For example, as written, the request would seem to ask us when HUD determined that the Preservation Statutes "applied" to the subject properties, which we could construe legitimately as a request to determine, for example, when HUD decided that the Preservation Statute's prepayment prohibitions "applied" to the subject properties. Whatever that term means, it is something different from "the date upon which [the plaintiffs] contend that HUD rendered the "final decision that ripened their as-applied takings claim," which is the clarification offered in your February 5 letter at 3 (emphasis original). The fact that you offered that clarification is more than sufficient to demonstrate that our objection to your interrogatories was well-taken.

With respect to your request that we provide a further response to the restated request contained in your February 5 letter, we believe that our response is adequate for purposes of RCFC 33(d), in light of the index we have provided to you and the database that we have offered. The combination of the documents that we have provided, the responses made to date (including the information contained in Exhibit A) and the attached index is more than sufficient for you to locate information responsive to the newly restated interrogatory. Consideration of any further supplementation is also premature for the same reasons cited in connection with Interrogatories 3 and 4 above. Even in light of the narrower scope of the interrogatory contained in your February 5 letter, which focuses on the date of the final decision that ripened [the plaintiffs'] as-applied takings claim," we will supplement our responses as appropriate when more information becomes available to us, but we are entitled to receive the government's full production before responding to any such request.[5]

E. Interrogatory 7

You contend that we are obliged to provide you with a statement of all of the facts supporting our claims that, as you restate this interrogatory, "applying was under the

[5] For the record, we believe that the passage you quote (February 5 letter at 3) from Palazzolo v. Rhode Island, 533 U.S. 606, 618 (2001) is not relevant to the discovery issues you raised there, nor does it establish the correct standard for deciding the ripeness issues in this case, which are more fully discussed in Anaheim Gardens v. United States, 444 F.3d1309 (Fed. Cir. 2006) and the cases cited there.

NIXON PEABODY LLP



Preservation Statues was [sic] futile." February 5 letter at 4. You threatened to take us to court if we do not provide a more detailed response to this interrogatory. In addition to those grounds stated in our original objection to this interrogatory, we believe the arguments and threats that you make in your February 5 letter are mistaken.

First, like all of our interrogatory responses, our response to this interrogatory is subject to the provisions of RCFC 33(d). As we noted in our General Objection No. 4, we object to this interrogatory because it "seeks documents or information within Defendant's knowledge and possession or to which Defendant has equal access." Interrogatory Responses at 2. We have provided the same documents to you that we would use to answer this question, and enclose herewith the index that will allow you to locate project-specific documents, as you requested. We believe that satisfies our obligation under RCFC 33(d). Under that rule, we are not required to assemble an exhaustive narrative of the prepayment experience of each plaintiff, nor are we required to draft the equivalent of our Proposed Findings of Uncontroverted Facts under RCFC 56(h)(1) in response to this interrogatory. This is especially true where, as here, much of the information you request is already in your hands. As the Federal Circuit has explained, in such cases, for the government "[t]o use discovery as an alternative to its own preparation of a defense or to harass comes close to governmental abuse of the judicial process." Hendler v. United States, 952 F.2d 1364, 1380 (Fed. Cir. 1991). We do not believe that a court would require us to go further than RCFC 33(d) requires, especially where the government possess much of the information needed to respond to this interrogatory.

Moreover, this interrogatory is a contention interrogatory, and the courts recognize that such interrogatories are premature at the initial phases of discovery. This point is clearly made in a case you relied upon in the February 5 letter, Capacchione,182 F.R.D. at 489, which explained that "[d]ue to the nature of contention interrogatories, they are more appropriately used after a substantial amount of discovery has been conducted – ***typically, at the end of the discovery period.*** Emphasis added. This is precisely the situation we face here: In fact, these interrogatories were dated July 11, 2006 – before the Court even entered its July 12, 2006 order officially acknowledging the remand of these cases. Moreover, many of the relevant documents are in the government's possession, the government has not fully responded to the plaintiffs' discovery requests, and the government has not decided whether it will agree to the proposed exchange of databases.

Under these circumstances, it is clearly premature to request the plaintiffs to produce at this point a narrative of "all facts" that support their claims that "applying to prepay pursuant to the Preservation Statutes was futile." Thus, we believe our response was complete for purposes of RCFC 33(d), especially in light of our enclosed index, the database exchange we have proposed, and the present early stage of discovery. Nevertheless, we are prepared to discuss with you further supplementation of this interrogatory, as well as your response to the cognate

NIXON PEABODY LLP



interrogatory we have proposed, at the conclusion of the discovery period, consistent with the suggestion in Capacchione.

II. Plaintiffs' Admissions

You apparently object to our some of our admission responses – although you do not name them specifically, I believe you are referring to our response to Requests for Admissions Nos. 1 and 3 – because you believe that some of our responses are inconsistent with our responses to certain unidentified interrogatories you propounded elsewhere. In support of that objection, you include preliminary comments that "[t]he Preservation Statutes establish an administrative process for obtaining permission to prepay" and that under those statutes, "the owner's submission of a plan of action to prepay is an essential step in this process." February 5 letter at 4. Needless to say, we do not necessarily agree with those preliminary comments; accordingly, we are not required to answer your requests for admissions as though we accepted this previously unstated predicate. We believe that we fairly interpreted your requests and answered them to the best of our information.

Moreover, with respect to the alleged inconsistency between our responses to those unidentified interrogatories and our responses to Requests for Admissions Nos. 1 and 3, the Requests for Admission did not cross-reference any of your interrogatories, and therefore we were required to provide stand-alone responses to the Requests for Admissions. To the extent your interrogatories sought different information than your requests for admissions, it is entirely likely that they will elicit different answers. Again, we believe that we construed your requests for admissions fairly and answered them accurately. To the extent you believe that there is any inconsistency between our interrogatory and admission responses, you may wish to propound more specific requests for admissions, rather than to ask us to revise the responses we have already made.

**III. Plaintiffs' Production of Documents.**

I believe that the requests contained in this portion of your February 5 letter have been answered above (*see* pp. 2 - 4). As noted, the index you requested is enclosed.

**Conclusion**

As noted, I believe that our responses to your discovery requests are complete and sufficient in light of the requirements of RCFC. We have agreed to provide some additional information to you and will provide such responses to you at a mutually agreeable date. If, however, this additional information and the responses contained in this letter do not fully extinguish your questions, I would like to meet with you to discuss any remaining issues. Obviously, to the extent that you insist on further responses from us, we would expect similar responses from the government – again, our obligations here are reciprocal. I believe that we will

NIXON PEABODY LLP



be able to eventually resolve your questions in a way that both parties will find sufficient and manageable. Please call me with your responses and any questions you may have. I look forward to hearing from you soon.

Very truly yours,

Harry J. Kelly

cc: Alycia A. Ziarno, Esq.

**Kelly, Harry**

**From:** Kelly, Harry
**Sent:** Wednesday, December 06, 2006 4:30 PM
**To:** 'David Harrington (david.harrington@usdoj.gov)'
**Cc:** Ziarno, Alycia
**Subject:** Anaheim/Algonquin -- Discovery Matters

David --

It was good to speak with you today to discuss the matters raised in your letter dated Nov. 27, 2006, and related discovery topics. We discussed and agreed as follows:

1) Pursuant to your request, the plaintiffs agree to extend the deadline for your response to their document requests for an additional period of 60 days, through and including January 27, 2007 (that is a Saturday, so let's call it January 29, 2007). You have indicated that you may request a further extension at that time. Although you did not make a specific request, and we have not discussed a subsequent deadline, we anticipate that we will agree to a further reasonable extension if requested at that time, as you have extended similar courtesy to us. If you find that you are encountering particular difficulties and want to discuss a further extension before January 29, 2007, please feel free to call me.

2) We discussed the deadline to file the plaintiffs' responses to your written discovery requests and agreed to a "hard" deadline to delivery the plaintiffs' outstanding written discovery responses on January 12, 2007. Again, we appreciate you courtesy in this matter.

3) Your Nov. 27 letter requested assistance in identifying the documents that we have produced to you to date. As I explained, we are in the process of "tagging" our documents and incorporating them into a searchable database. As one approach to dealing with your request, I suggested that the parties agree to exchange their databases, at least insofar as they identify documents by plaintiff and bates number. You indicated that you would review whether DOJ has any policy with respect to exchanging this sort of information and would let me know if that is a possibility. I believe we actually use the Concordance technology, not Summation, if that makes any difference. If a reciprocal database sharing isn't practicable, we will work with you to provide identifying information when our tagging operation is complete.

4) In light of our on-going discovery activities, we agreed that it was appropriate to ask the court for an extension in the discovery deadline of four months (approximately 120 days), through and including May 31, 2007 (if you want to make it June 1, 2007, a Friday, that would be fine too). I said I would prepare a short motion to the Court and circulate it to you early next week.

I believe that covers that matters we discussed. If I have omitted anything, or if I have materially misstated anything in your view, please let me know as soon as possible. Thanks! HJK

Harry J. Kelly
Nixon Peabody LLP

Suite 900
401 9th Street, N.W.
Washington, D.C. 20004-2128
Office: 202.585.8712
Fax: 202.585.8080
hkelly@nixonpeabody.com
www.nixonpeabody.com

This email message and any attachments are confidential. If you are not the intended recipient, please immediately reply to the sender and delete the message from your email system. Thank you.

# EXHIBIT E

**U.S. Department of Justice**

Civil Division

JED:BMS:DHarrington
DJ No. 154-93-655 & 154-97-582

Telephone: (202) 616-0465
Facsimile: (202) 307-0972

*Washington, D.C. 20530*

February 22, 2007

*Via Facsimile & U.S. Mail*

Harry J. Kelly, Esq.
Nixon Peabody LLP
401 Ninth St., N.W.
Suite 900
Washington, D.C. 20004

Re: *Anaheim Gardens, et al. v. United States*, No. 93-655C (Fed. Cl.);
*Algonquin Heights, et al. v. United States*, No. 97-582C (Fed. Cl.).

Dear Mr. Kelly:

Our discussion yesterday about the plaintiffs' response to the United States' written discovery on ripeness was cordial and productive, but regrettably, we appear to have reached an impasse with respect to certain issues. As we agreed, I am providing this letter to memorialize our conversation.

1. Document Production

As a preliminary matter, we addressed your proposal to exchange searchable databases of the documents being produced by the respective parties. I explained that the proposed exchange would not be feasible and, therefore, that the production of documents and responses to interrogatories should occur as in any other matter. I also confirmed that the United States has begun producing documents responsive to the plaintiffs requests for production on a rolling basis, as you requested. We currently expect to be able to meet our agreed April 9, 2007 date for the production of non-privileged, responsive documents. With respect to the plaintiffs' production of documents, you stated that you had recently received a small number of responsive documents and that you would produce them promptly.

2. Interrogatories

We then turned to issues about the plaintiffs' interrogatory answers raised in my February 5, 2007 letter, and addressed further in your February 14, 2007 response.

a. Interrogatory 1

Interrogatory 1 requests information about the identity of the owners of the projects at issue. You originally objected to this interrogatory as burdensome and overly broad. We discussed plaintiffs' objections and agreed that for purposes of discovery on ripeness, the plaintiffs will promptly provide a list of general partners for each project and, additionally, will identify any limited partners who had interactions with HUD (e.g., discussed prepayment) in the course of the administrative process established by the Preservation Statutes. At present, we agreed that it would will be sufficient to provide this information for the period 1987 to 1996. We may, if warranted, seek further information as part of the current phase of discovery and reserve the right to insist upon a comprehensive answer to this interrogatory after ripeness issues are resolved.

b. Interrogatories 2 and 3

Interrogatories 2 and 3 request information about all actions taken by the plaintiffs pursuant to the administrative process established by the Preservation Statutes (i.e., ELIHPA and LIHPRHA). In your February 14, 2007 letter, you stated that you construed these interrogatories "as seeking information about the actual interactions between the owners and HUD that the owners understood to comply with the procedural provisions of these statutes." Letter from Harry Kelly to David Harrington at 6 (Feb. 14, 2007). I agreed that this was a fair reading of these interrogatories.

I explained, however, that the table appended to your interrogatory answers does not provide a full and complete answer. For instance, the table does not indicate what was requested through plans of action submitted to HUD, and does not appear to reflect instances when plans of action were withdrawn, amended or resubmitted. I explained that a comprehensive answer was needed. You agreed that the plaintiffs would supplement the answers to interrogatories 2 and 3 to provide a complete response. You indicated that you will discuss with your colleague (who has more familiarity with the documents and your database, but who is out of the office this week) to determine the best way to supplement the answers to interrogatories 2 and 3. Please contact me as soon as possible to let me know what to expect in the way of supplemental answers and when supplemental answers should be expected.

c. Interrogatory 4

Interrogatory 4 requests that each plaintiff describe in detail all communications with HUD about the possibility of prepaying the project's HUD-insured mortgage. You agreed to provide a list of all general and limited partners who communicated with HUD about the possibility of prepayment. Additionally, you stated that you will include information, to the extent known, about the identity of the HUD contact, the date that the discussion occurred, and the name of the project that was being discussed.

With respect to written communications concerning prepayment of which you are aware, we further requested that you identify the documents by Bates number or otherwise.

d. Interrogatories 5, 6 and 7

Interrogatories 5 and 6 request that you identify the date on which you contend that HUD reached a final decision regarding the application of ELIHPA and LIHPRHA, respectively. Interrogatory 7 requests that you state whether you contend that applying to prepay pursuant to the Preservation Statutes was futile and, if so, to state all facts upon which you base this contention.

You asserted objections to these interrogatories. In our February 5, 2007 letter, we explained why the asserted objections were unfounded and clarified the information sought by our interrogatories. In your February 14, 2007 letter, you declined to provide answers to these interrogatories citing RCFC 33(d) and asserting that it was premature to respond to contention-type interrogatories.

Yesterday, I again requested that answers to interrogatories 5, 6 and 7 be provided. You stated that the plaintiffs would not respond until the United States has completed the production of documents requested by the plaintiffs, which will not occur until mid-April 2007. I explained that there was no basis for refusing to answer the interrogatories immediately. I pointed out that the interrogatories were served in July 2006. Moreover, I explained that if any plaintiff did not apply to prepay under the Preservation Statutes in the early 1990's because it believed that applying to HUD was futile, then this information is currently known by the plaintiff. The production of documents by the United States is irrelevant. As you are unwilling to alter your position, we regrettably have been unable to resolve the dispute regarding these interrogatories through our discussions.

Very truly yours,

David A. Harrington
Trial Attorney
Commercial Litigation Branch

cc: Terri L. Roman, Esq.
Alice A. Peterson, Esq.

# EXHIBIT F

**Greene, Billie**

**From:** Kelly, Harry
**Sent:** Wednesday, December 06, 2006 4:30 PM
**To:** 'David Harrington (david.harrington@usdoj.gov)'
**Cc:** Ziarno, Alycia
**Subject:** Anaheim/Algonquin -- Discovery Matters
**Contacts:** David Harrington

| **Tracking:** | **Recipient** | **Read** |
|---|---|---|
| | 'David Harrington (david.harrington@usdoj.gov)' | |
| | Ziarno, Alycia | Read: 12/6/2006 4:30 PM |

David --

It was good to speak with you today to discuss the matters raised in your letter dated Nov. 27, 2006, and related discovery topics. We discussed and agreed as follows:

1) Pursuant to your request, the plaintiffs agree to extend the deadline for your response to their document requests for an additional period of 60 days, through and including January 27, 2007 (that is a Saturday, so let's call it January 29, 2007). You have indicated that you may request a further extension at that time. Although you did not make a specific request, and we have not discussed a subsequent deadline, we anticipate that we will agree to a further reasonable extension if requested at that time, as you have extended similar courtesy to us. If you find that you are encountering particular difficulties and want to discuss a further extension before January 29, 2007, please feel free to call me.

2) We discussed the deadline to file the plaintiffs' responses to your written discovery requests and agreed to a "hard" deadline to delivery the plaintiffs' outstanding written discovery responses on January 12, 2007. Again, we appreciate you courtesy in this matter.

3) Your Nov. 27 letter requested assistance in identifying the documents that we have produced to you to date. As I explained, we are in the process of "tagging" our documents and incorporating them into a searchable database. As one approach to dealing with your request, I suggested that the parties agree to exchange their databases, at least insofar as they identify documents by plaintiff and bates number. You indicated that you would review whether DOJ has any policy with respect to exchanging this sort of information and would let me know if that is a possibility. I believe we actually use the Concordance technology, not Summation, if that makes any difference. If a reciprocal database sharing isn't practicable, we will work with you to provide identifying information when our tagging operation is complete.

4) In light of our on-going discovery activities, we agreed that it was appropriate to ask the court for an extension in the discovery deadline of four months (approximately 120 days), through and including May 31, 2007 (if you want to make it June 1, 2007, a Friday, that would be fine too). I said I would prepare a short motion to the Court and circulate it to you early next week.

I believe that covers that matters we discussed. If I have omitted anything, or if I have materially misstated anything in your view, please let me know as soon as possible. Thanks! HJK

Harry J. Kelly
Nixon Peabody LLP
Suite 900
401 9th Street, N.W.
Washington, D.C. 20004-2128
Office: 202.585.8712

Fax: 202.585.8080
hkelly@nixonpeabody.com
www.nixonpeabody.com

NIXON PEABODY LLP
ATTORNEYS AT LAW

This email message and any attachments are confidential. If you are not the intended recipient, please immediately reply to the sender and delete the message from your email system. Thank you.

# EXHIBIT G

NIXON PEABODY LLP
ATTORNEYS AT LAW

Suite 900
401 9th Street, N.W.
Washington, D.C. 20004-2128
(202) 585-8000
Fax: (202) 585-8080

Harry J. Kelly
Direct Dial: (202) 585-8712
E-Mail: hkelly@nixonpeabody.com

January 12, 2007

**VIA HAND DELIVERY**

David Harrington, Esq.
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, NW
Room 12136
Washington, DC 20530

Re: **Anaheim Gardens/Algonquin Heights**
**-- Plaintiffs' Discovery Responses**

Dear Mr. Harrington:

Pursuant to our prior agreement, please find enclosed two (2) copies of each of the following documents:

1. Plaintiffs' Responses to Defendant's First Set of Interrogatories (including Exhibit A thereto) ("Interrogatory Responses"); and

2. Plaintiffs' Response to Defendant's First Set of Requests for Admission ("Admission Responses").

We have drafted the Responses on a consolidated basis for the two cases. This approach allowed us to present much of the pertinent processing information in a single table, Exhibit A, which should allow you to spot specific information about all of the subject properties in a single document. We found this useful and we think you will also. A couple of the plaintiffs were traveling this week and, despite our best efforts, we were not able to obtain their signatures to the Interrogatory Responses and Admission Responses. As soon as they return, I will obtain their signatures and send them to you. Finally, as you will see, our review of the documents left some remaining questions. We expect that some of these questions may be answered by the materials

W642889.1

NIXON PEABODY LLP



we receive as a result of the outstanding discovery requests we served upon the Government last year. Presently, responses to those requests are due later this month (or such later date as we may mutually agree to). If appropriate, we will amend or supplement these responses after we receive your responses to those requests.

I hope the new year has started off well for you. Please let me know if you have any questions.

Very truly yours,

Harry J. Kelly

cc: Alycia A. Ziarno, Esq.

HJK:bg

Enclosures