EXHIBIT A

IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

ANAHEIM GARDENS, a limited partnership
c/o L.S. Ames
P.O. Box 515
25332 Narbonne Avenue
Suite 200
Lomita, CA 90717

B-L Associates, a limited partnership
c/o Roger W. Stern
1560 Beacon Street
Brookline, MA 02146

JOSEPH R. BIAFORA and STEFI BIAFORA
c/o Joseph R. Biafora
7133 Etiwanda Avenue
Suite 100
Reseda, CA 91335

CEDAR GARDENS ASSOCIATES, a partnership
c/o James R. Bancroft
Bancroft & McAlister
601 Montgomery Street, Suite 900
San Francisco, CA 94111-2612

No. 93-655C

(Judge Robinson)

FOURTH AMENDED COMPLAINT

C-W ASSOCIATES, a limited partnership
c/o Roger W. Stern
1560 Beacon Street
Brookline, MA 02146

GLENVIEW GARDENS LIMITED PARTNERSHIP
c/o Mid-City Financial Corporation
4340 East-West Highway
Suite 300
Bethesda, MD 20814

PETER HWEI-YANG HSI and PRISCILLA LAI-FONG HSI dba GENERAL PARTNERS OF WAIPAHU TOWER, A HAWAII LIMITED PARTNERSHIP
615 Piikoi Street
Suite 2001
Honolulu, HI 96814

INDIAN HEAD MANOR LIMITED PARTNERSHIP I )
c/o Mid-City Financial Corporation )
4340 East-West Highway, Suite 300 )
Bethesda, MD 20814 )
)
NORMAN M. KRONICK and LOUIS DULIEN as Tenants in Common dba Halawa View Apartments, a registered general partnership )
c/o Norman Kronick )
Halawa View Apartments )
3605 Manamana Pl. )
Honolulu, HI 96822 )
)
METRO WEST LIMITED, a Limited Partnership )
c/o Tod Spieker )
1032 Elwell Court #115 )
Palo Alto, CA 94303 )
)
MILLWOOD ASSOCIATES LIMITED PARTNERSHIP )
c/o Mid-City Financial Corporation )
4340 East-West Highway, Suite 300 )
Bethesda, MD 20814 )
)
NAPA PARK APARTMENTS, a limited partnership )
c/o Mid-City Financial Corporation )
4340 East-West Highway, Suite 300 )
Bethesda, MD 20814 )
)
ONTARIO TOWNHOUSES, a limited partnership )
c/o Mid-City Financial Corporation )
4340 East-West Highway, Suite 300 )
Bethesda, MD 20814 )
)
THE PALOMAR APARTMENTS, a Limited Partnership )
c/o Jerald L. Katleman )
3990 Old Town Avenue )
Suite 305-C )
San Diego, CA 92110 )
)

ROCK CREEK TERRACE LIMITED PARTNERSHIP )
c/o Mid-City Financial Corporation )
4340 East-West Highway )
Suite 300 )
Bethesda, MD 20814 )
)
SIERRA VISTA ONE, a limited partnership )
c/o Tod Spieker )
1032 Elwell Court #115 )
Palo Alto, CA 94303 )
)
SILVERLAKE VILLAGE, a )
Limited Partnership )
c/o Tod Spieker )
1032 Elwell Ct., #115 )
Palo Alto, CA 94303 )
)
THETFORD PROPERTIES III, )
LIMITED PARTNERSHIP )
c/o Richard A. Urban )
P.O. Box 168 )
Richmond, VA 23201 )
)
THETFORD PROPERTIES IV, )
LIMITED PARTNERSHIP )
c/o Richard A. Urban )
P.O. Box 168 )
Richmond, VA 23201 )
)
620 SU CASA POR CORTEZ, a California )
general partnership )
c/o Tod Spieker )
1032 Elwell Ct., #115 )
Palo Alto, CA 94303 )
)
825 SAN TOMAS APARTMENTS, a )
California Limited Partnership )
c/o Tod Spieker )
1032 Elwell Ct., #115 )
Palo Alto, CA 94303 )
)

5324 FOOTHILL APARTMENTS, a California General Partnership )
c/o Tod Spieker )
1032 Elwell Ct., #115 )
Palo Alto, CA 94303 )

Plaintiffs, )

v. )

THE UNITED STATES OF AMERICA )

Defendant. )

## FOURTH AMENDED COMPLAINT

### I. PRELIMINARY STATEMENT

1. Plaintiffs (hereinafter also referred to as "Owners") bring this action to recover damages for the failure of the United States (hereinafter referred to as "United States") to pay them compensation to which the Plaintiffs are lawfully entitled. The Plaintiffs are owners of various multifamily apartment projects located throughout the United States.

2. These projects provide below-market rate affordable housing in exchange for receiving mortgage guarantees and interest subsidies from the United States. This arrangement provided Owners with certain returns, and required the Owners to rent their apartments to lower-income persons. Under the terms of their agreements with the United States, the Owners were entitled to prepay their mortgages after 20 years and terminate the Government's restrictions on the Owners' use of their properties.

3. Because Congress perceived that large-scale prepayments would begin to occur in the late 1980s which could lead to significant reductions in the stock of affordable housing, Congress enacted the Emergency Low Income Housing Preservation Act of 1987, Pub. L. 101-242, 101 Stat. 1815, 1877 (February 5, 1988) (hereinafter "ELIHPA"), which

was intended to halt prepayments temporarily (See ¶¶ 34-35, infra). Congress later enacted the Low Income Housing Preservation and Resident Homeownership Act of 1990 (hereinafter "LIHPRHA") 12 U.S.C.A. §§ 4101 et seq. (West Supp. 1993). LIHPRHA was intended by Congress to prevent prepayment in virtually all cases and was consciously known by Congress to constitute a taking of the Owners' original prepayment rights. LIHPRHA therefore also incorporated other provisions which, in Congress' estimation, provided just compensation for the taking of the prepayment rights. (See ¶¶ 36-38, infra.) To obtain that compensation, however, Owners were required to apply to the Department of Housing and Urban Development (hereinafter as "HUD"), which was directed to process the requests for compensation, generally known as incentives, to be provided to the Owners pursuant to strict statutory definition. (See ¶¶ 38-39, infra).

4. HUD, however, has thwarted Congress' intent -- and denied the Plaintiffs' right to compensation -- by failing to timely issue and put into effect its regulations implementing LIHPRHA and to process the Owners' applications for compensation as LIHPRHA required. As a result, five years after Congress deprived the Owners of their right to prepay, the Owners have still not received the compensation Congress intended.

5. Without waiving any issues and claims and pursuant to the Orders, the Owners seek damages on two remaining theories. Count Three seeks damages for LIHPRHA's taking of the Owners' property rights without just compensation. Count Five seeks damages for breach of contract resulting from HUD's abrogation of the Owners' right to prepay. (See ¶¶ 83-85, infra).

## II. JURISDICTION AND VENUE

6. This is a civil action against the United States of America, acting through HUD, arising under contracts entered into between HUD and each of the Plaintiffs, arising under

LIHPRHA, and arising under the Fifth Amendment to the U.S. Constitution. Therefore, this Court has jurisdiction pursuant to 28 U.S.C.A. § 1491 (West 1989 and Supp). Accordingly, venue is appropriate in this Court.

## III. PARTIES

7. The Plaintiffs are 22 individuals, partnerships, and corporations. The following is a list of each Owner's name and the project it owns:

| | | |
|---|---|---|
| 1. | Anaheim Gardens, a limited partnership<br>c/o L.S. Ames<br>Box 515<br>Narbonne Avenue - Suite 200<br>Lomita, CA 90717 | Anaheim Gardens |
| 2. | B-L Associates, a limited partnership<br>c/o Roger W. Stern<br>Beacon Street<br>Brookline, MA 02146 | 1550 Beacon Plaza |
| 3. | Joseph R. Biafora and<br>Stefi Biafora<br>c/o Joseph R. Biafora<br>Etiwanda Avenue<br>Suite 100<br>Reseda, CA 91335 | Millwood Apts.<br>Parthenia Manor Apts. |
| 4. | C-W Associates, a limited partnership<br>c/o Roger W. Stern<br>Beacon Street<br>Brookline, MA 02146 | 100 Centre Plaza |
| 5. | Cedar Gardens Associates, a partnership<br>c/o James R. Bancroft<br>Bancroft & McAlister<br>Montgomery Street, Suite 900<br>San Francisco, CA 94111-2612 | Cedar Gardens |
| 6. | Glenview Gardens Limited Partnership<br>c/o Mid-City Financial Corporation<br>East-West Highway<br>Suite 300<br>Bethesda, MD 20814 | Glenview Gardens<br>Apartments |

| | | |
|---|---|---|
| 7. | Peter Hwei-Yang Hsi and Priscilla Lai-Fong Hsi, dba General Partners of Waipahu Tower, a Hawaii limited partnership<br>Piikoi Street<br>Suite 2001<br>Honolulu, HI 96814 | Waipahu Tower |
| 8. | Indian Head Manor Limited Partnership I<br>c/o Mid-City Financial Corporation<br>East-West Highway<br>Suite 300<br>Bethesda, MD 20814 | Indian Head Manor Apartments |
| 9. | Norman M. Kronick and Louis Dulien as Tenants in Common dba Halawa View Apartments, a registered general partnership<br>c/o Norman Kronick<br>Halawa View Apartments<br>Manamana Pl.<br>Honolulu, HI 96822 | Halawa View Apartments |
| 10. | Metro West Limited, a Limited Partnership<br>c/o Tod Spieker<br>Elwell Court #115<br>Palo Alto, CA 94303 | Metro West Apartments |
| 11. | Millwood Associates Limited Partnership<br>c/o Mid-City Financial Corporation<br>East-West Highway<br>Suite 300<br>Bethesda, MD 20814 | Millwood Townhouses |
| 12. | Napa Park Apartments, a limited partnership<br>c/o Mid-City Financial Corporation<br>East-West Highway<br>Suite 300<br>Bethesda, MD 20814 | Napa Park Apartments |

| | | |
|---|---|---|
| 13. | Ontario Townhouses, a limited partnership<br>c/o Mid-City Financial Corporation<br>East-West Highway<br>Suite 300<br>Bethesda, MD 20814 | Ontario Townhouses |
| 14. | The Palomar Apartments,<br>A Limited Partnership<br>c/o Jerald L. Katleman<br>Old Town Avenue, Suite 305-C<br>San Diego, CA 92110 | The Palomar |
| 15. | Rock Creek Terrace Limited Partnership<br>c/o Mid-City Financial Corporation<br>East-West Highway, Suite 300<br>Bethesda, MD 20814 | Rock Creek Terrace Apartments |
| 16. | Sierra Vista One, a limited partnership<br>c/o Tod Spieker<br>Elwell Court #115<br>Palo Alto, CA 94303 | Sierra Vista I |
| 17. | Silverlake Village, a<br>Limited Partnership<br>c/o Tod Spieker<br>Elwell Ct., #115<br>Palo Alto, CA 94303 | Silverlake Village |
| 18. | Thetford Properties III,<br>Limited Partnership<br>c/o Richard A. Urban<br>Box 168<br>Richmond, VA 23201 | River Falls Apts.<br>Market North Apts. II<br><br>Deanswood Apts. |
| 19. | Thetford Properties IV,<br>Limited Partnership<br>c/o Richard A. Urban<br>Box 168<br>Richmond, VA 23201 | Southgate Apts<br>Jefferson Court Apts<br>Glendale Court Apts<br>Market North Apts. I |
| 20. | 620 Su Casa Por Cortez, a California general partnership<br>c/o Tod Spieker<br>Elwell Ct., #115<br>Palo Alto, CA 94303 | Su Casa Por Cortez |

| | | |
|---|---|---|
| 21. | 825 San Tomas Apartments, a California Limited Partnership<br>c/o Tod Spieker<br>Elwell Ct., #115<br>Palo Alto, CA 94303 | San Tomas Gardens |
| 22. | 5324 Foothill Apartments, a California General Partnership<br>c/o Tod Spieker<br>Elwell Ct., #115<br>Palo Alto, CA 94303 | Foothill Plaza |

Three of the above-noted Plaintiffs were added through the Third Amended Complaint. These Plaintiffs and corresponding execution dates of their notes are as follows:

| OWNER | FHA NO. | ORIGINAL NOTE DATE |
|---|---|---|
| Glenview Gardens Limited Partnership | 052-44007-LDP | 09/21/72 |
| B-L Associates | 023-016NI | 12/19/72 |
| C-W Associates | 023-35NI | 07/01/70 |

8. HUD is an agency of the Defendant United States, and at all times relevant to the allegations in this Complaint, was acting as an agent of the Defendant, and acts of HUD are imputed to the Defendant. HUD acts through its Secretary and other authorized officials. HUD is authorized by Acts of Congress, including the National Housing Act of 1934 (as amended, 12 U.S.C.A. §§ 1701 et seq.) (West 1989 and Supp.) to enter into contracts with private property owners, including the Owners.

## IV. STATEMENT OF FACTS

9. Plaintiffs are Owners of multifamily housing projects which participated in programs established by Section 221(d)(3) (the "221(d)(3) program") or Section 236

("Section 236") of the National Housing Act, as amended, to encourage private development of housing for lower income persons.

A. Section 221(d)(3) Program.

10. Under the Section 221(d)(3) program, the government offered Owners contracts for 40-year loans at a below market three percent interest rate, but required that the Owners pass the benefit of such reduced interest to the tenants in the form of lower rents. 12 U.S.C.A. § 1715l(d)(3) (West 1989 and Supp.). Participating Owners undertook the risk of building and operating such housing and agreed to a limitation on distribution of any earnings to a maximum of 6% of their initial equity investment.

11. To participate in the Section 221(d)(3) program, the Owners were required to execute a contract called a Regulatory Agreement ("221 Regulatory Agreement"), that restricts the Owners' use and operation of their projects with respect to rents, charges, and methods of operation. Both the 221 Regulatory Agreement and applicable regulations place restrictions on the Owner's use of their property including: (1) restrictions limiting occupancy for new tenants to low and moderate income families; (2) restrictions on the rent actually charged tenants; (3) restrictions on the capital structure and the rate of return from the project; (4) restrictions on the procedures for increasing rents; and (5) restrictions on the procedures for evicting tenants.

12. The 221 Regulatory Agreement also provides that its restrictions continue as long as the contract for mortgage insurance continues in effect.

13. Project owners also entered into a long-term deed of trust with a private lender and executed a standard promissory note (hereinafter as "Note") which, notwithstanding the original 40 year term of the loan, permits project owners to prepay the note twenty years after the date of the mortgage without having to obtain Government approval. HUD

endorsed the Note, stating that the Note was insured under Section 221(d)(3) and the federal regulations thereunder in effect on the date of execution. Contemporaneous with the execution of the 221 Regulatory Agreement and the Note, HUD and the lender entered into a contract of mortgage insurance.

14. Prepayment of the Note terminates both the mortgage and the HUD mortgage insurance. Thus, if the mortgage is prepaid, the mortgage insurance ceases and the project owner is no longer bound by the terms of the Regulatory Agreement to maintain the project's use restrictions.

15. Specifically, the Note widely used in the Section 221(d)(3) program and endorsed by HUD, FHA Form No. 4104-3, provided in part as follows: "The debt evidenced by this Deed of Trust Note may not be prepaid, either in whole or in part, prior to the final maturity date hereof without the prior written approval of the Federal Housing Commissioner, except a maker which is a limited distribution mortgagor may prepay without such approval after twenty (20) years from the date of final endorsement of this note by the Federal Housing Commissioner."

B. Section 236 Program.

16. The Section 236 program was enacted in 1968 (12 U.S.C.A. § 1715z-1 (West 1989 and Supp.)). The Section 236 program was essentially intended to replace the Section 221(d)(3) program. The Section 236 program offered project Owners contracts for 40-year loans at market rate but with an interest subsidy so that the Owner effectively paid interest at only a 1% rate. The Owner was required to pass the benefits of the federally-assisted loans to the tenants in the form of lower rents. Participating owners still undertook the risk of building and operating such housing and agreed to a limitation on distribution of any earnings to 6%.

17. To participate in the Section 236 program, Owners were required to enter into a series of agreements, including a contract, also called the Regulatory Agreement ("236 Regulatory Agreement") that restricts Owners' use and operation of their projects with respect to rents, charges, and methods of operation. Like the 221 Regulatory Agreement, the 236 Regulatory Agreement and applicable regulations place restrictions on the Owners' use of their property including: (1) restrictions limiting occupancy for new tenants to low and moderate income families; (2) restrictions on the rent actually charged tenants; (3) restrictions on the capital structure and the rate of return from the project; (4) restrictions on the procedures for increasing rents; and (5) restrictions on the procedures for evicting tenants.

18. The 236 Regulatory Agreement also provides that its restrictions continue as long as the contract for mortgage insurance continues in effect.

19. Project owners also entered into a long-term deed of trust with a private lender and executed a standard Note which permits project owners to prepay the Note twenty years after the date of the mortgage, without having to obtain Government approval. HUD endorsed the Note, stating that the Note was insured under Section 236 and the federal regulations thereunder in effect on the date of execution. Contemporaneous with the execution of the Regulatory Agreement and the Note, HUD and the lender entered into a contract of mortgage insurance.

20. Under the Section 236 program, prepayment of the Note terminates both the mortgage and the HUD mortgage insurance. Thus, if the mortgage is prepaid, the mortgage insurance ceases and the project owner is no longer bound by the terms of the Regulatory Agreement to maintain the project's use restrictions.

21. Specifically, the Note widely used in the Section 236 program and endorsed by HUD, FHA Form No. 4104-3, provided in part as follows: "The debt evidenced by this Deed of Trust Note may not be prepaid, either in whole or in part, prior to the final maturity date hereof without the prior written approval of the Federal Housing Commissioner, except where: (1) the prepayment is in connection with the release of an individual unit for sale to a lower income, elderly, or handicapped person; or (2) the Maker is a limited distribution mortgagor which is not receiving payments from the Commissioner under a rent supplement contract pursuant to Section 101 of the Housing and Urban Development Act of 1965, and the prepayment occurs after the expiration of twenty (20) years from the date of final endorsement of this Deed of Trust Note by the Commissioner. . . ."

C. Massachusetts Plaintiffs.

22. In the case of two Owners, C-W Associates and B-L Associates (jointly, the "Massachusetts Plaintiffs"), the lender is the Massachusetts Housing Finance Agency, an instrumentality of the Commonwealth of Massachusetts ("state agency lender").

23. In the case of a state agency lender, HUD did not insure payment of the mortgage under Section 236, but did subsidize the mortgage payments pursuant to Section 236(b), making interest reduction payments identical to those made for projects insured by HUD. In such cases, HUD, in lieu of entering into the Regulatory Agreement described in ¶¶ 11 and 17, above, enters into a tri-party Interest Reduction Contract ("IRC") with borrowers such as the aforementioned Owners and the state agency lender.

24. Section 4 of the C-W Associates IRC and Section 6 of the B-L Associates IRC set forth the same low income occupancy restrictions contained in the Regulatory Agreement described in ¶¶ 11 and 17 for projects insured by HUD. Section 8 of the C-W Associates

IRC and Section 10 of the B-L Associates IRC provide that these contracts terminate upon the prepayment of the mortgage, thereby terminating the aforesaid occupancy restrictions.

25. In Section 17 of its Mortgage with the Massachusetts Housing Finance Agency, plaintiff C-W Associates received the right to prepay the mortgage note; said right was reaffirmed in Section 3 of the Modification and Restatement of Mortgage and Security Agreement and Assignment of Rents. In Section 12 of its Mortgage with the Massachusetts Housing Finance Agency, plaintiff B-L Associates received the right to prepay the mortgage note; said right was reaffirmed in Section 2 of the Modification and Restatement of Mortgage and Security Agreement and Assignment of Rents.

26. ELIHPA and LIHPRHA are specifically made applicable to plaintiffs in Section 233 (l)(A)(iii) and Section 229(1)(A)(iii) respectively. ELIHPA and LIHPRHA thus made the above cited prepayment right impossible to exercise, thereby denying plaintiffs C-W Associates and B-L Associates the right to receive a valuable benefit of the contract. The Massachusetts Plaintiffs are situated similarly to the other Owners and have suffered from the same injuries resulting from loss of their 20 year prepayment rights.

<u>Status of Owners' Prepayment Prospects</u>

27. Consistent with the language of the Notes endorsed by HUD, HUD regulations codified at 24 C.F.R. § 221.524(a)(ii) (1986) (and predecessors thereto), implementing Sections 221 and 236 of the National Housing Act, permitted limited distribution mortgagors to prepay their mortgages twenty years after endorsement and to terminate their Regulatory Agreements with HUD.

28. All of the plaintiffs qualified as limited distribution mortgagors, and none of the plaintiffs that entered into Regulatory Agreements pursuant to Section 236 of the National Housing Act, 12 U.S.C.A. § 1715z-1, is receiving payments from the Commissioner under a

COUNT II

[Deleted Pursuant to March 27, 1995 Order]

COUNT III

THE OWNERS HAVE NOT RECEIVED JUST COMPENSATION FOR LIHPRHA'S TAKING OF THEIR PREPAYMENT RIGHTS

79. Paragraphs 1 through 78 are incorporated as if repeated herein.

80. The Plaintiffs entered into contracts with the Defendant, which provided Plaintiffs with the right to prepay their mortgages, and terminate project use restrictions, after 20 years. Plaintiffs had reasonable investment-backed expectations that they could exercise such right, and realize the appreciation of their property values. Plaintiffs' prepayment rights are property rights, protected by the Fifth Amendment to the U.S. Constitution.

81. LIHPRHA prohibits the Plaintiffs' exercise of their contract right to prepay. Accordingly, LIHPRHA takes the Plaintiffs' contract rights and investment expectations. The taking occurred as to each Owner when such Owner became eligible to prepay their mortgage at will, but was unable to prepay because of LIHPRHA. Accordingly, the Fifth Amendment requires that just compensation, including interest, should be paid from the date of the taking.

82. LIHPRHA provides a process for payment of just compensation to Owners for the taking that each Owner suffers thereunder. However, the Owners have not received LIHPRHA's just compensation because of HUD's failure to implement LIHPRHA according to its terms. Accordingly, Owners are entitled to damages equal to the eight percent annual return provided by LIHPRHA for the period of such taking.

COUNT IV

[Deleted Pursuant to March 27, 1995 Order]

COUNT V

BREACH OF CONTRACT

[Applicable To All Plaintiffs Except For
Thetford Properties IV, Limited Partnership
(Southgate and Jefferson Court Apartments)]

83. Paragraphs 1 through 82 are incorporated as of repeated herein.

84. HUD has breached its contractual obligations to Owners by abrogating Owner's right to prepay their mortgages and terminate their participation in HUD's low-income housing programs.

85. Owners have been damaged by the Defendant's breach in an amount to be shown at trial. Owners are continuing to suffer injury and resulting damages each day they are denied their contractual right to prepay their mortgages.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand money damages, interest, and other relief for the amounts they should have received as required under LIHPRHA and/or damages from the date when the takings alleged herein occurred. Owners specifically demand that they be awarded monetary relief for the damages suffered to date and for the damages Owners continue to suffer as a result of HUD's breach of Owners' contracts, in an amount to be determined at trial. Plaintiffs further demand interest from the date of the taking, or such additional amounts as this Court determines, including attorneys fees pursuant to the Equal Access to Justice Act or other applicable Law.

Dated: August 27, 1997

Respectfully submitted,

By: Charles L. Edson, by Harry J. Kelly

Charles L. Edson, Esq.
PEABODY & BROWN
1255 23rd Street, N.W.
Washington, D.C. 20037
(202) 973-7700

Of Counsel:

Harry J. Kelly, Esq.
Stephen J. Wallace, Esq.
Richard M. Price, Esq.
PEABODY & BROWN
1255 23rd Street, N.W.
Washington, D.C. 20037
(202) 973-7700

Attorneys for Plaintiffs