**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **ANAHEIM GARDENS, et al.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br>**Defendant.** | No. 93-655C<br>Judge Robert H. Hodges, Jr. |

| | |
|---|---|
| **ALGONQUIN HEIGHTS, et al.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br>**Defendant.** | No. 97-582C<br>Judge Robert H. Hodges, Jr. |

**PLAINTIFFS' BRIEF ON LAW OF RIPENESS**
**IN CONNECTION WITH THEIR REGULATORY TAKINGS CLAIMS**

Dated: July 17, 2007

Harry J. Kelly
NIXON PEABODY LLP
401 Ninth Street, N.W., Suite 900
Washington, D.C. 20004
(202) 585-8000

Attorneys for the Plaintiffs

# TABLE OF CONTENTS

**PAGE**


TABLE OF AUTHORITIES ........ ii

FACTUAL AND PROCEDURAL BACKGROUND........ 1

ARGUMENT ........ 4

I. IN A REGULATORY TAKINGS CASE, A PLAINTIFF IS NOT REQUIRED TO EXHAUST ADMINISTRATIVE REMEDIES WHERE THE RESPONSIBLE GOVERNMENTAL AGENCY LACKS DISCRETION TO GRANT THE REQUESTED RELIEF ........ 4

II. THE ALTERNATIVE RIPENESS THEORIES OFFERED BY THE GOVERNMENT SHOULD BE REJECTED BY THE COURT........ 8

A. The Court Should Reject the Government's "One-Bite" Theory. ........ 9

B. The Court Should Determine that 12 U.S.C. § 4114 Does Not Constitute An Alternative Administrative Remedy. ........ 10

III. THE PLAINTIFFS SHOULD NOT BE COMPELLED TO RESPOND TO THE GOVERNMENT'S DISCOVERY REQUESTS SEEKING IRRELEVANT INFORMATION........ 11

CONCLUSIONS........ 12

# TABLE OF AUTHORITIES

## FEDERAL CASES

Anaheim Gardens v. United States,
33 Fed. Cl. 24 (1995) .......... 3, 12

Anaheim Gardens v. United States,
444 F.3d 1309 (Fed. Cir. 2006) .......... 3, 6, 7, 12

CCA Associates v. United States,
75 Fed. Cl. 170 (2007) .......... 6, 7, 12

Cienega Gardens v. United States,
194 F.3d 1231 (Fed. Cir. 1998) .......... 2, 12

Cienega Gardens v. United States,
265 F.3d 1237 (2001) .......... passim

Cienega Gardens v. United States,
67 Fed. Cl. 434 (2005) .......... 7, 12

City Line Joint Venture v. United States,
71 Fed. Cl. 486 (2006) .......... 8, 12

Howard W. Heck & Assocs. v. United States,
134 F.3d 1468 (Fed. Cir. 1998) .......... 9

Palazzolo v. Rhode Island,
533 U.S. 616 (2001) .......... 4, 5, 6, 7

Royal Manor, Ltd. v. United States,
No. 98-778C, 2005 U.S. Claims LEXIS 404 (Fed. Cl. Apr. 8, 2005) .......... 7, 9, 10, 11, 12

Suitum v. Tahoe Regional Planning Agency,
520 U.S. 725 (1997) .......... 4, 5, 7

## FEDERAL STATUTES

Emergency Low Income Housing Preservation Act 10 1987,
Pub. L. No. 100-242, 101 Stat. 1877 (1988) .......... passim

Low Income Housing Preservation and Resident Homeownership Act of 1990,
Pub L. No. 101-625, tit. VI, 104 Stat. 4249 (1990) .......... passim

12 U.S.C. § 4108 .......... 6, 10, 11

12 U.S.C. § 4114 .......... 10, 11

**PLAINTIFFS' BRIEF ON LAW OF RIPENESS**
**IN CONNECTION WITH THEIR REGULATORY TAKINGS CLAIMS**

The Plaintiffs in the above-captioned cases, by and through undersigned counsel and pursuant to the Court's Order dated July 9, 2007, respectfully submit this brief setting out their understanding of the law concerning the ripeness of their claims arising from the taking of their right to prepay their government-insured mortgages as a result of the enactment of the Emergency Low Income Housing Preservation Act 10 1987, Pub. L. No. 100-242, 101 Stat. 1877 ("ELIHPA") and the Low Income Housing Preservation and Resident Homeownership Act of 1990, Pub. L. No. 101-625, tit. VI, 104 Stat. 4249 (1990) ("LIHPRHA") (jointly, ELIHPA and LIHPRHA are referred to herein as the "Preservation Statutes"). The Court directed the parties to file briefs on the law of ripeness in this case in connection with pending motions dealing with the scope and nature of discovery, and the Plaintiffs' objections that some of the discovery sought by the Government is unnecessary or irrelevant to the ripeness issues. As explained below, the law of ripeness in this case is clear, complete and consistent, and demonstrates why the Plaintiffs' objections are well-founded.

**FACTUAL AND PROCEDURAL BACKGROUND**

Although the present briefs are not motions for summary judgment, a short synopsis of the Plaintiffs' claims and the history of these cases may provide useful context for the legal discussion that follows. The Plaintiffs are owners of affordable housing projects built with mortgages that were insured or subsidized pursuant to the so-called Section 236 or Section 221(d)(3) programs, administered by the U.S. Department of Housing and Urban Development ("HUD"). Anaheim Gardens Fourth Amended Complaint ("Anaheim Comp.") at ¶9; Algonquin

Heights Second Amended Complaint ("Algonquin Comp.") at ¶10.[1] The mortgage or deed of trust notes generally provided for a 40 year amortization period, but allowed the owners to prepay their mortgages without HUD approval on the twentieth anniversary of the final endorsement of those notes by HUD. Anaheim Comp. at ¶13; Algonquin Comp. at ¶14. As the twentieth anniversary of the original notes approached, Congress took action to prevent owners from exercising these prepayment rights, first by enacting ELIHPA in 1988 and later by enacting LIHPRHA in 1990. Anaheim Comp. at ¶¶34, 35; Algonquin Comp. at ¶¶41, 42. Essentially, the Preservation Statutes for the first time required owners to seek HUD approval to prepay their mortgages and imposed specific criteria for that approval. Anaheim Comp. at ¶¶34, 36; Algonquin Comp. at ¶¶41, 43. The Plaintiffs assert that it is impossible for them to satisfy the prepayment criteria contained in the Preservation Statutes. Anaheim Comp. at ¶¶38, 51-52; Algonquin Comp. at ¶¶45, 50-51.

Anaheim Gardens, filed in 1993, and Algonquin Heights, filed in 1997, are two of several cases challenging the lawfulness of the Preservation Statutes. As in a number of these cases, the Plaintiffs in Anaheim and Algonquin included breach of contract and takings claims. The breach of contract claims paralleled those made by the plaintiffs in Cienega Gardens v. United States, which were rejected by the Federal Circuit in 194 F.3d 1231 (Fed. Cir. 1998). Earlier in this case, this Court (Robinson, J.) dismissed the Plaintiffs' claim that HUD's failure to issue regulations according to the deadlines set in the Preservation Statutes and to promptly process applications filed by owners for incentives under those statutes constituted independent takings.

[1] As explained during the status conference on July 9, 2007, the Plaintiffs have filed a Renewed Motion to Amend Complaint in the Algonquin Heights case, because the Government has reneged on its written consent that was given to the filing of the Plaintiffs' Second Amended Complaint in May 1998, prior to the dismissal of this action. Because formal leave of court is not required by RCFC 15(a) when the adverse party provides its written consent, the Second Amended Complaint is the operative complaint in the Algonquin Heights case and is cited here.

Anaheim Gardens v. United States, 33 Fed. Cl. 24 (1995). The Plaintiffs here are proceeding with their regulatory takings claim, pursuant to which they allege that the Preservation Statutes and implementing HUD regulations and guidance constituted a taking of the right to prepay contained in their respective mortgage and deed of trust documents.[2] Those regulatory takings claims were originally dismissed by this Court in August 2000, on the grounds that the Plaintiffs had not exhausted their administrative remedies under the Preservation Statutes, and that their claims therefore were not ripe for adjudication. Subsequently, the Federal Circuit clarified the ripeness issues. ***See, e.g.***, Cienega Gardens v. United States, 265 F.3d 1237 (2001). In the appeals of the instant cases, the Federal Circuit applied the holding in Cienega Gardens and reversed and remanded to the Court of Federal Claims to determine whether, in fact, the Plaintiffs claims are ripe for adjudication. Anaheim Gardens v. United States, 444 F.3d 1309 (Fed. Cir. 2006).

The Government may seek to apply other, extraneous theories here or argue that additional hurdles should be placed before the adjudication of the Plaintiffs' claims. Those tactics should be rejected and instead, the Court should adopt the simple test for ripeness established by the courts that have looked at the claims of the Plaintiffs and similarly-situated owners: that exhaustion of the administrative remedies in the Preservation Statutes was not required because HUD lacked discretion to allow the Plaintiffs to prepay their mortgages when they could not meet the stringent criteria for prepayment in those statutes.

2 While the Plaintiffs are no longer contending that the delay in issuing HUD regulations required by the Preservation Statutes and in processing the Plaintiffs' applications under those statutes constitute separate takings, those delays are relevant to determining the length of the taking and amount of damages related to their regulatory takings claims.

## ARGUMENT

### I. IN A REGULATORY TAKINGS CASE, A PLAINTIFF IS NOT REQUIRED TO EXHAUST ADMINISTRATIVE REMEDIES WHERE THE RESPONSIBLE GOVERNMENTAL AGENCY LACKS DISCRETION TO GRANT THE REQUESTED RELIEF

Examining exactly the same issues in Cienega Gardens that the Court faces here, the Federal Circuit explained that "[a] 'regulatory taking' may occur when government action, although not encroaching upon or occupying private property, still affects and limits its use to such an extent that a taking occurs." Cienega Gardens, 265 F.3d at 1244. As in that case, the Government here "insists that the [o]wners must first file Plans of Actions with HUD and receive final decisions from HUD denying their requests, before the [o]wners' taking claims ripen." *Id.* Relying on land use precedents, the Federal Circuit observed the "'important principle that a landowner may not establish a taking before a land-use authority has the opportunity, using its own reasonable procedures, to decide and explain the reach of a challenged regulation.'" *Id., quoting* Palazzolo v. Rhode Island, 533 U.S. 616, 621 (2001). According to the Federal Circuit, seeking a final agency decision was important, "allegedly due to the 'high degree of discretion characteristically possessed by land-use boards in softening the strictures of the general regulations they administer.'" *Id., quoting* Suitum v. Tahoe Regional Planning Agency, 520 U.S. 725, 738 (1997). In other words, as the Federal Circuit explained, "where agencies have discretion, requiring a final administrative decision ensures that there has been an injury-in-fact." Cienega Gardens, 265 F.3d at 1245.

But what happens where, as here, the agency possesses no such discretion to grant the relief the owner seeks? In such a case, a futility exception excuses owners from exhausting administrative remedies. Thus, the Supreme Court has determined that where an agency lacks the administrative discretion to grant relief – in other words, where it would be futile to do so –

exhaustion is not required. In Suitum, 520 U.S. at 739, the Supreme Court held that where an owner had been denied the right to build a house on a lot as a result of land use regulations that provided no discretion to the local board, exhaustion was unnecessary: "because the agency has no discretion to exercise over the [owner's] right to use her land, no occasion exists for applying the [county's] requirement that a landowner take steps to obtain a final decision about the use that will be permitted on a particular parcel."

The Federal Circuit in Cienega Gardens also considered the Supreme Court's holding in Palazzolo, in which a land owner was "not required to submit further applications to a local land use authority once it was determined that [further requests] would be denied." 265 F. 3d at 1245 – 46. In such cases, where seeking relief from the agency was futile, exhaustion of administrative remedies was not required:

> Once it becomes clear that the agency lacks the discretion to permit any development, or the permissible uses of the property are known to a reasonable degree of certainty, a takings claim is likely to have ripened.
>
> * * *
>
> Ripeness doctrine does not require a landowner to submit applications for their own sake. Petitioner is required to explore development opportunities on his upland parcel only if there is uncertainty as to the land's permitted use.

***Id., quoting*** Palazzolo, 533 U.S. at 609, 610. Citing a series of decisions, the Federal Circuit concluded that "where an agency has no discretion in the application of a contested regulation, an aggrieved party does not need to obtain a final decision from the agency determining the scope of the regulation." Cienega Gardens, 265 F.3d at 1246.

In Cienega Gardens, the Federal Circuit determined that the plaintiffs in that case "present an even more compelling case of futility than in Suitum, Palazzolo" and the other cited cases, because Congress did not provide ***any*** discretion to HUD in applying the strict prepayment criteria in the Preservation Statutes:

> Here, HUD lacks the "high degree of discretion characteristically possessed by land-use boards in softening the strictures of the general regulations they administer." The prerequisites for HUD to grant a prepayment request are set forth by statutes, and there is no allegation that HUD has any discretion to depart from these statutory requirements. Rather, section 4108 [of LIHPRHA] sets forth strict numerical criteria that must be met before HUD may exercise any discretion it has to approve prepayment requests.

***Id***., ***quoting*** Palazzolo, 533 U.S. at 609.[3] Because HUD lacked discretion to allow owners to prepay where the statutory criteria were not met, the Federal Circuit held that the four "Model Plaintiffs" there "and those other owners that demonstrate on a case-by-case basis in future proceedings that it would have been futile to submit prepayment requests to HUD," did not have to exhaust those remedies. *Id.* at 1248.

The rule enunciated in Cienega Gardens – that exhaustion is not required to ripen an owners claim where HUD lacks the discretion to grant the requested relief – has been steadily and consistently applied in addressing the ripeness of the takings claims of owners under the Preservation Statutes, including the Federal Circuit itself in the present cases and in several other decisions of the Court of Federal Claims. As the Federal Circuit explained in its decision in this case,

> Thus, a claimant need not obtain a final decision if the agency lacks any discretion to avoid the allegedly offending regulatory action, or if the record shows, with a reasonable degree of certainty, the remaining permissible uses of the property after the regulatory action because there can be no variance from the facial requirements of the applicable regulation. This amounts to the futility exception to the finality rule.

Anaheim Gardens v. United States, 444 F.3d 1309, 1316 (Fed. Cir. 2006) (intervening citations omitted). In that decision, the Federal Circuit applied the same rule as in its earlier Cienega

[3] Although the Federal Circuit in Cienega Gardens was addressing HUD's lack of discretion under the LIHPRHA criteria (*codified at* 12 U.S.C. § 4108), HUD was also bound to follow the equally-strict and unyielding statutory requirements for prepayment approval for properties seeking to prepay under ELIHPA. *See, e.g.*, CCA Associates v. United States, 75 Fed. Cl. 170, 183 (2007) (citing strict language of § 225 of ELIPHA that HUD "may approve prepayment '***only*** upon a written finding' that the statutory criteria would be satisfied.") (emphasis supplied by court).

Gardens decision with the instruction that "[i]f the factual circumstances of any or all of the remaining Owners present a similarly compelling case of administrative futility, then the trial court should adjudicate their takings claims, as well." *Id.* at 1317. Therefore, the Federal Circuit remanded "for the development of facts on whether [Plaintiffs'] takings claims are ripe." *Id.*

Similarly, in its own recent decisions, the Court of Federal Claims has followed the rule laid down by the Federal Circuit in Cienega Gardens and applied in Anaheim Gardens. Thus, after reviewing the ripeness holdings in Cienega Gardens, as well as the Supreme Court's decisions in Palazzolo and Suitum and after reviewing the undisputed testimony that the owners could not satisfy the standards for prepayment contained in LIHPRHA, the Court of Federal Claims agreed that "[i]n short, HUD lacked the discretion to approve the Cienega Gardens-related properties' plans of action seeking prepayment." Cienega Gardens v. United States, 67 Fed. Cl. 434, 461 (2005); CCA Associates, 75 Fed. Cl. at 183 ("If prepayment would run afoul of these strict numerical restrictions or the other statutory standards [contained in the Preservation Statutes], HUD then had ***no*** discretion to permit prepayment.") (emphasis original). Likewise, the court in Royal Manor, Ltd. V United States, No. 98-778C, 2005 U.S. Claims LEXIS 404, *13 (Fed. Cl. Apr. 8, 2005) explained that "under both Supreme Court and Federal Circuit precedent, the threshold inquiry in a ripeness challenge to an as-applied regulatory takings claim is whether the agency had discretion to grant the plaintiff relief from the statute or regulation alleged to effect a taking." As the Court reasoned, "[o]nce the facts indicate that HUD did not have discretion, as a matter of law [the owner] was not required to seek a final decision to ripen its claim." *Id*. at * 16 – 17. The Court of Federal Claims has followed suit in other cases. *See* CCA Associates, 75 Fed. Cl. at 186 (ripeness established where owner proved "it would have been futile to apply to HUD for prepayment of its mortgage under ELIHPA or LIHPRHA

because HUD lacked the discretion to approve prepayment."); and City Line Joint Venture v. United States, 71 Fed. Cl. 486, 490 (2006) (ripeness established where "evidence makes clear that HUD could not have made the factual findings necessary to allow plaintiff to prepay its mortgage, thereby foreclosing the possibility of prepayment as a matter of law. Plaintiff was thus excused from seeking prepayment as a condition to establishing the ripeness of its claim since such an undertaking would have been futile.") (intervening citation omitted).

These cases demonstrate that in order to show that their claims are ripe for adjudication now, the plaintiffs are only required to "demonstrate, on a case-by-case basis . . . that it would have been futile to submit prepayment requests to HUD." Cienega Gardens, 265 F.3d at 1248. Because "[t]he prerequisites for HUD to grant a prepayment request are set forth [by the Preservation Statutes], and [because] there is no allegation that HUD has any discretion to depart from these statutory requirements," the only relevant factual issue is whether the Plaintiffs would have satisfied the strict criteria for prepayment that applied under the Preservation Statutes. *Id.* at 1246. Thus, to the extent that the Government's discovery requests seek information concerning a "final decision" by HUD on applications to prepay their mortgages, those requests are irrelevant. *See* pp. 11-12, below.

## II. THE ALTERNATIVE RIPENESS THEORIES OFFERED BY THE GOVERNMENT SHOULD BE REJECTED BY THE COURT.

Recognizing that its original approach to ripeness has been routinely rejected by the courts that have examined the issue since the Federal Circuit's 2001 decision in Cienega Gardens, the Government has offered several alternative ripeness theories. These theories have been examined by other courts, have been found to be meritless, and should be rejected by this Court now.

**A. The Court Should Reject the Government's "One-Bite" Theory.**

In this case, and in other cases, the Government has offered a variant on its original ripeness claims, asserting that even if an owner is not required to obtain a final decision from HUD that it could not prepay its mortgage, the owner was required to at least submit one application to start the administrative process. Thus, the Government asserts here that "[b]efore invoking 'futility,' a property owner must give the Government the opportunity, using its own reasonable procedures, to decide and explain the reach of the challenged regulation," *citing* Howard W. Heck & Assocs. v. United States, 134 F.3d 1468, 1472 (Fed. Cir. 1998). Response to Plaintiffs Request for Admission No. 14. (Excerpt, Exhibit A hereto) Except, essentially, the Government's theory would subvert the Federal Circuit's holding in Cienega Gardens that an owner is not required to pursue an administrative remedy that it can never receive, simply for the sake of doing so.

The Government raised this same "one-bite" rule in other cases, whether is has been soundly rejected. Thus, the court in Royal Manor rejected the Government's argument, again citing Heck, that "a plaintiff asserting an as-applied regulatory takings claim must apply to an agency for a final decision 'at least once.'" Royal Manor, 2005 U.S. Claims LEXIS at *15. The Government's "one-bite" rule would impose an illogical burden on owners where, HUD, as the courts routinely conclude, does not possess discretion:

> What the government misunderstands is that futility depends on the circumstances of the case. If an agency does not have discretion under a statutory scheme to grant relief, then an application to that agency would be futile. ***Requiring a plaintiff to apply to an agency for relief when the agency cannot grant relief is illogical.*** . . . [Heck and related cases] stand for the proposition that when an agency has discretion the plaintiff must make at least one application. They say nothing about a situation in which the agency does not have discretion under the statutory scheme.

Royal Manor at *17. The Court of Federal Claims and the Federal Circuit have routinely held that HUD lacked such discretion, alleviating any need for the Plaintiffs to file an application for a remedy that HUD could never provide to them. Whatever merit the Government's "one-bite" rule may carry in cases in which the Government possesses a modicum of discretion, it does not apply here, where no such discretion exists, and it should be expressly rejected by the Court.

**B. The Court Should Determine that 12 U.S.C. § 4114 Does Not Constitute An Alternative Administrative Remedy.**

The Government has also asserted that there was an "alternative" approach that the Plaintiffs and other owners could have used if they sincerely wished to prepay their mortgages. According to this theory, the Plaintiffs could have sought prepayment under 12 U.S.C. § 4114, which "provided that a property owner could prepay the mortgage and exit the program if the government failed to provide the assistance it promised in an approved plan of action or if, despite assistance from the government, the property owner could not find a qualified purchaser." Royal Manor at *18. The Government referred to § 4114 prepayment as an "alternative" during the status conference on July 9, 2007. The problem with the Government's theory is that § 4114 was not an "alternative" at all:

> Section 4114 [sic] . . . did not provide a procedure for obtaining a variance, or other discretionary relief, from the statutory abrogation of the contractual right to prepayment. Instead, § 4114 provided a remedy in the event that a subsequent arrangement with the government, either to receive incentives in exchange for entering into a new use agreement or to attempt to maximize the selling price by selling to a qualified purchaser, failed.

Royal Manor at *21 – 22. In other words, because "HUD did not have discretion to provide the plaintiff with relief from the prepayment restriction," § 4114 was not an alternative to § 4108, where the owner had already suffered a taking as a result of § 4108:

> Thus, ***the relief provided under § 4114 would have gone to the length of the alleged taking, not whether there was a taking in the first instance***. The alleged

> taking occurred when the plaintiff could not freely prepay its mortgage and exit the program on its twenty year anniversary . . .

Royal Manor at *23 (emphasis added). Plaintiffs trapped by § 4108 were not somehow liberated by § 4114. Consequently, the Government's contentions that the Plaintiffs' claims are not ripe because § 4114 provided an "alternative" route to prepayment is meritless and also should be rejected by the Court.

## III. THE PLAINTIFFS SHOULD NOT BE COMPELLED TO RESPOND TO THE GOVERNMENT'S DISCOVERY REQUESTS SEEKING IRRELEVANT INFORMATION.

The direction to file this brief arose from disputes concerning the nature and extent of permissible discovery by the Government here. As demonstrated, a number of the Government's discovery requests are irrelevant, because they do not relate to the issue of whether or not the Plaintiffs' claims are ripe, under the pertinent precedents. As noted in the Plaintiffs' Opposition (at 5) to the Government's Motion to Dismiss, the Government's original Interrogatories Nos. 5 and 6, which in pertinent part asked the Plaintiffs to "state the date upon which you contend that HUD reached a final decision regarding the application of [ELIHPA or LIHPRHA, respectively] to the Subject Property," were inartfully worded, because the meaning of the term "final decision" was so ambiguous. Notwithstanding this ambiguity, the Plaintiffs answered these interrogatories to the full extent possible. *See* Plaintiffs' Opposition at 5.

Responding to the patent deficiencies of those interrogatories, the Government issued new Interrogatories Nos. 20 and 21 in its Third Set of Interrogatories. As reworded, the new interrogatories seek information that is simply irrelevant under the definition of ripeness that applies here:

> For each subject property, state whether you contend that HUD reached a final decision regarding application of [ELIHPA or LIHPRHA, respectively] to the subject property such that your as-applied taking claim ripened . . . .

Given the holdings of the Federal Circuit and the Court of Federal Claims in the Cienega Gardens, Anaheim Gardens, Algonquin Heights, Royal Manor, CCA Associates and City Line Joint Venture cases, there was no need to obtain a "final decision" from HUD to ripen the Plaintiffs' takings claims here, because HUD lacked discretion to allow the Plaintiffs to prepay. *See* pp. 4-8, above. Consequently, these interrogatories pose a tautology and are impossible to answer: because the Plaintiffs' claims ripened without need for a "final decision" by HUD, the Plaintiffs cannot state any facts relating to whether a "final decision" ripened their claims. To the extent that the Government's Interrogatories Nos. 20 and 21 seek information that is irrelevant under the pertinent statutes and are based upon a legal theory of ripeness that has been soundly rejected, the Plaintiffs should not be compelled to respond to them further.[4]

## CONCLUSIONS

For the foregoing reasons, the Court should conclude that the Plaintiffs were not required to exhaust remedies under the Preservation Statutes in order to ripen their regulatory takings claims because HUD lacked discretion to grant them the right to prepay where the statutory criteria cannot be met. The Court should further deny the Government's Motion to Compel to the extent the Government's discovery requests seek information that is irrelevant in light of the governing law of ripeness here.

---

[4] The Government's Motion To Compel also asked to compel the Plaintiffs to respond to its Interrogatory No. 7, which asked them in pertinent part to state "all facts" supporting their contention that "applying to prepay pursuant to the Preservation Statutes was futile." Among other grounds, the Plaintiffs objected that responding to this discovery was premature, where document discovery was incomplete and "the Government appears poised to embark on a calendar of depositions." Plaintiffs' Opposition at 9. Indeed, contrary to the Government's recent claims that it has been forced to conduct additional depositions because of the alleged inadequacy of the Plaintiffs' written response, the Opposition, which was filed in March 2007, demonstrates that the Government long ago announced its intention to depose virtually every one of the Plaintiffs. As the Plaintiffs' Opposition explains (at 9), "[w]here, as here, the Government has made plain its intent to depose possibly dozens of individual owners, using an interrogatory to 'elicit opinions on complex issues' becomes at best superfluous." Because of the Government's burdensome deposition campaign, it remains premature to respond to this interrogatory.

Dated: July 17, 2007

Respectfully submitted:

/s/ Harry J. Kelly________
Harry J. Kelly
NIXON PEABODY LLP
401 Ninth Street, N.W., Suite 900
Washington, D.C. 20004
(202) 585-8000

Attorneys for the Plaintiffs

**CERTIFICATE OF FILING**

I hereby certify that on the 17th day of July, 2007, a copy of the foregoing Plaintiffs' Brief on Law of Ripeness In Connection With Their Regulatory Takings Claims was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. Additionally, a copy of this filing has been transmitted by facsimile to the Government's counsel, David Harrington, Esq.

/s/ Harry J. Kelly