**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ANAHEIM GARDENS, et al., Plaintiffs, v. THE UNITED STATES, Defendant. | ) | No. 93-655C (Judge Margaret M. Sweeney) |
| ALGONQUIN HEIGHTS, et al., Plaintiffs, v. THE UNITED STATES, Defendant. | ) | No. 97-582C (Judge Margaret M. Sweeney) |

**PLAINTIFFS' MOTION TO COMPEL DEFENDANT TO ANSWER QUESTIONS CONCERNING DOCUMENT RETENTION AND PRODUCTION MATTERS**

Pursuant to Rule 37(a)(2)(B) of the Rules of the Court of Federal Claims ("RCFC"), Plaintiffs move for an order compelling the Defendant to produce a witness or witnesses to fully testify regarding the document retention practices and policies of the U.S. Department of Housing and Urban Development. The witness proffered by the Government in response to Plaintiffs' Rule 30(b)(6) notices was unable to provide full and authoritative responses to even the most basic questions about the retention of documents that are relevant to this case. The Government has declined to provide any other witness to testify in response to the Plaintiffs'

inquiries. Pursuant to Rule 37(a)(2)(B) of the RCFC, Plaintiffs certify that they have attempted in good faith to confer with Government counsel to resolve these matters prior to bringing the instant motion, but that those efforts were unsuccessful.

## **BACKGROUND**

In October 2007, the Plaintiffs served Rule 30(b)(6) deposition notices upon the Government.[1] In two of these notices, the Plaintiffs identified several areas of inquiry, including HUD's general document retention practices. The first notice sought a witness to testify about:

> 5. The document retention policies of HUD, including those of any relevant field offices, and the actual steps taken to produce documents for the Plaintiffs and subject Properties listed in Exhibits A and B.

See Plaintiffs' Revised Rule 30(b)(6) Notice of Deposition (Exhibit A hereto, referred to as the "HUD Notice"). A similar request was made in a second Rule 30(b)(6) deposition notice but that notice focused on the document retention practices of a specific HUD office known as the Economic & Market Analysis Section ("EMAS"):

> 5. The document retention policies of EMAS, and the specific steps taken, if any, to produce documents in the above referenced matter in response to the Plaintiff's Request for Production of Documents.

See Plaintiffs' Revised Rule 30(b)(6) Notice of Deposition (Exhibit B hereto referred to as the "EMAS Notice").

In response to these notices, on November 5, 2007, the Government produced a HUD employee, Carmelita Bridges. Ms. Bridges is employed as HUD's Branch Chief, Records and Directives. In the course of her testimony, it became clear that Ms. Bridges lacked knowledge sufficient to address the information requested by the Plaintiffs' deposition notices. Initially, she indicated that she would testify broadly about the subject matters contained in the HUD Notice

[1] The deposition notices issued in October 2007 were revised versions of Rule 30(b)(6) deposition notices originally issued in August 2007.

and the EMAS Notice. See Bridges Deposition Transcript of November 5, 2007 ("Bridges Deposition Transcript") at p. 7, line 20 through p. 8, line 2 and p. 8, line 20 through p. 9, line 1 (Exhibit C hereto). Eventually, however, she self-limited her testimony, admitting that she was actually only prepared to testify concerning the actual physical transfer of documents from HUD to the Federal Record Retention Center at the National Archives. Id. at 22, lines 6 through 9. She also admitted that, except for bringing a copy of HUD's record retention schedule and speaking with counsel, she had done nothing to prepare to provide testimony with respect to the other matters included in subject matter request No. 5. Bridges' Deposition transcript at p. 11, line 4 through p. 12, line 1. Additionally, Ms. Bridges was not prepared to testify regarding subject matter No. 5 in the EMAS Notice with respect to any EMAS documents in Field Offices. Bridges Deposition transcript at p. 9, lines 2-9. Moreover, another HUD employee, Pamela Sharpe, who was proffered to testify concerning all of the other subject matters contained in the EMAS Notice, could not testify regarding subject matter No. 5 in the EMAS notice. See, e.g., Deposition Transcript of Pamela Sharpe dated November 7, 2007 at p.16, line 7 through p. 17, line 10 (Exhibit D hereto).

As a result, on November 8, 2007, counsel for the Plaintiffs wrote to the Government's counsel, alerting him to these deficiencies and requesting the Government to produce alternative witnesses. Exhibit E hereto. The Government's counsel responded on November 13, 2007, repeating prior objections to the scope of the Plaintiffs' deposition notices and reiterating its position that its testimony would be limited to "HUD document retention policies." Exhibit F hereto at 2 ("November 13 Letter"). With respect to the record retention policy of EMAS, the November 13 Letter repeated that "HUD has a single record retention policy" and that "there has never been a different policy that governs record retention by EMAS." Id. Nevertheless, citing a

"miscommunication" when "Government counsel stated at the Bridges deposition that Mrs. Bridges would not be addressing the record retention policy of EMAS" (id.) and that Mrs. Bridges would be made available to testify "solely about . . . the record retention policy applicable to HUD's economic and market analysis section" on December 11, 2007. Despite the objections that the Government has raised as early as October about these subject matters, it never obtained a protective order imposing any limitations on the scope of Plaintiffs' notices. Moreover, the Government's offer in connection with its objections in October to produce a written summary of its collection with regard to documents in these litigations in lieu of testimony was plainly rejected by Plaintiffs as insufficient. See Letter to David A. Harrington from Harry J. Kelly dated October 16, 2007 (Exhibit G hereto).

Thus, the Government's response to subject matters Nos. 5 in both the HUD Notice and EMAS Notice is incomplete. It has not provided any witness to describe (a) its actual retention practices (except with respect to its disposition of records to the FRRC), (b) record retention practices at relevant field offices; (c) its practices in producing documents in connection with this litigation; and (d) the document retention and production practices of EMAS at both the headquarter and field office levels.

## ARGUMENT

**1) The Government Is Obliged To Produce A Rule 30(b)(6) Witness To Respond To Subject Matter Nos. 5 in both the HUD and EMAS Notices.**

Rule 30(b)(6) of the RCFC requires a party, including the Government, to provide a witness or witnesses to testify on its behalf in a deposition about matters identified with reasonable particularity. If a designated representative does not have personal knowledge of the subject matters to be covered, the entity producing the witness has an obligation to familiarize and prepare the witness so that he or she can testify fully. See e.g., Starlight Int'l v. Herlihy, 186

F.R.D. 626, 638-40 (D. Kan. 1999). A representative who appears at a Rule 30(b)(6) deposition who provides evasive or incomplete answers does not satisfy the knowledgeable witness requirement. See RCFC 37(a)(3); see also Fox v. Morris Jupiter Assoc., 2007 U.S. Dist. LEXIS 70880, at *6-7 (S.D. Fla. 2007).

Here, the Government has failed to produce a witness who could fully testify about subject matter Nos. 5 in the HUD and EMAS Notices. Essentially, Ms. Bridges testified only about the narrow scope of her personal responsibility – i.e., the disposition of documents from HUD to the FRRC at the National Archives. As the record makes clear, she was unable to substantively address any questions concerning how HUD managed the actual files of the Plaintiffs in this case, including what would be included in those files and where they would be kept.[2] Indeed, the Government seems to believe that producing a HUD guidance document satisfies the Plaintiffs' legitimate discovery needs. The fact that HUD had a policy, however, does not explain how HUD followed – or did not follow – that policy in practice. For that, live testimony is needed.

The Plaintiffs' need for this information is not hypothetical. Indeed, subsequent fact witnesses who testified after Ms. Bridges highlighted the importance of Plaintiffs' need to obtain information concerning HUD's document practices. For example, several witnesses responsible for various aspects of processing applications under ELIHPA and LIHPRHA in HUD offices testified that they either did not receive notices to preserve documents relevant to this litigation or – more alarmingly – only received those notices in recent months. Deposition Transcript of

---

[2] The Government's counsel contended that any discussion of its document production practices in this case would infringe on attorney-client privilege. November 13 Letter at 2. The claim is without merit: a party cannot invoke attorney-client privilege to insulate inquiry into its document production practices, and in any event, as the Government's counsel has been advised before, claims of privilege are to be made during a deposition on the record, not in advance of a deposition as a tool to avoid producing a witness. ..

Thomas Vitek dated November 15, 2007 ("Vitek Deposition Transcript") at p. 57, line13 through pg, 58, line 6 (Exhibit H hereto); Franca Hetue Deposition Transcript dated November 14, 2007 ("Hetue Deposition Transcript") at 57, line 19 to pg. 59, line 14 (Exhibit I hereto). It appears that significant amounts of potentially important and relevant documents may simply have been discarded by HUD. See, e.g., Vitek Transcript at pg. 190, line 19 through 194, line 20. Indeed, one fact witness, Franca Hetue, an employee at HUD's Indianapolis office, testified that critical files concerning the one identified property that allegedly prepaid its HUD insured mortgage – Parc Chateau West – were inexplicably missing from her office's records. Hetue Deposition Transcript at 59, line 20 to pg. 61, line 15. On the other hand, it is apparent from other statements that at least some records pertaining that to property are in existence, although they have not been provided to the Plaintiffs despite express discovery requests.

Plaintiffs request for information concerning HUD's document retention and production practices is not meant to necessarily imply that misconduct has occurred. Nonetheless, it is entirely proper for the Plaintiffs to seek information from a knowledgeable HUD witness about how relevant records were maintained, what if any steps were taken to secure relevant documents in connection with this litigation, and why relevant records apparently do not exist. Certainly, in the absence of a protective order, the Government must do more than produce a witness whose only knowledge relates to the actual transfer of HUD files to the National Archives.[3] What the Government plainly cannot do is make a unilateral determination of how much and what sort of testimony the Plaintiffs should receive about topics that are squarely relevant, and frankly commonplace in virtually every litigation.

[3] The November 13th offer to produce Ms. Bridges once again to provide restricted testimony with respect to EMAS' document practices will not yield any more useful information than her original deposition, and will not fill in any of the information gaps that exist on the basis of her prior testimony.

## CONCLUSION

For the foregoing reasons, the Government should be ordered to produce a witness or witnesses who are capable and fully prepared to testify about the subject matter contained within subject matter Nos. 5 of both the HUD and EMAS Notices.

Dated: December 7, 2007

NIXON PEABODY LLP

s/ Harry J. Kelly
Harry J. Kelly
401 9th Street N.W., Suite 900
Washington, D.C. 20004
(202) 585-8712
Attorneys for Plaintiffs