**EXHIBIT G**

NIXON PEABODY LLP
ATTORNEYS AT LAW

401 9th Street N.W.
Suite 900
Washington, DC 20004-2128
(202) 585-8000
Fax: (202) 585-8080

Harry J. Kelly
Direct Dial: (202) 585-8712
E-Mail: hkelly@nixonpeabody.com

October 16, 2007

**VIA E-MAIL**

Mr. David Harrington
Commercial Litigation Branch, Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, NW, Room 12136
Washington, DC 20530

Re: Rule 30(b)(6) Notices in Algonquin Heights v. United States and Anaheim Gardens v. United States

Dear David:

I am in receipt of your letter dated October 12, 2007 (attached hereto as Exhibit A). I have many concerns about that letter, but the following only addresses that portion of the letter that states objections to the Rule 30(b)(6) notices we served in the above matters in August 2007. I am dismayed by the fact that you essentially object to every single subject matter we included in the deposition notices. It is my hope that we can resolve these matters short of Court intervention, but given your stated positions, I am not confident that we will succeed without it. Given that you requested a status conference with the Court which is now scheduled for Wednesday, October 17, 2007 at 2:00 p.m., I am submitting a copy of this letter to the Court in advance of that conference so that it will have sufficient information to fully understand the context of the newest discovery disputes.

I will begin by stating that contrary to your assertion, the Rule 30(b)(6) notices we served in August 2007 do comply with the Rules of the United States Court of Federal Claims ("RCFC"). As you note, those rules, specifically RCFC 26, only require that the 30(b)(6) notices state with "reasonable particularity" the subject matters for the deposition. Our notices do exactly that. Each subject matter is directly relevant to a claim raised by Plaintiffs and/or a defense raised by the Government. However, in stark contrast, your unilateral attempt to

**EXHIBIT G**



constrain the scope of our depositions by refusing to produce witnesses on subject matters to which you have objections is expressly **not** permitted under the rules.

Rather, the proper course of action for you to take should you wish to object to the subject matters detailed in the Rule 30(b)(6) notices is to immediately seek a protective order from the Court. Should you delay in doing this, and thereby delay discovery to the point where we cannot ***reasonably*** prepare for and complete our depositions in the agreed to time frame, please be aware that we will seek an extension of time to enlarge the deposition period. In addition, we will seek whatever sanctions may be appropriate and/or whatever costs the Plaintiffs are unnecessarily forced to incur as a result of what we view as your dilatory behavior.

Your general objection that "[m]any of the topics in plaintiffs' deposition notices are vague and overbroad" is devoid of merit, and frankly does not warrant a response. However, I will comment that I am not sure whether you understand that such an objection does not provide a basis for refusing to produce witnesses. Moreover, your sweeping statement that it will be "an impossible task" to designate an appropriate person or persons is an overstatement, if not an outright misrepresentation. You received the deposition notices in August 2007, and you have had several months to decide who to produce. Indeed, you repeatedly represented to us that you were going to produce 4-6 persons in response to the notices, and that is why we agreed to give you until October 12th to provide us with specific names. Instead you have identified only two potential witnesses and it appears that your primary witness on the substantive prepayment topics is an employee of one of HUD's state offices, rather than an official from HUD Headquarters with pertinent experience. Moreover, you now claim after several months of stalling that it is "impossible" to produce other witnesses - this is a blatant abuse of the discovery process and unduly prejudices the Plaintiffs.

A number of your objections are based on your reading of the recent decision of the Federal Circuit in Cienega Gardens, ___ F.3d. ___ (2007), which contained language (including footnote 9) that clarifies the pertinent law on ripeness. Accordingly, you contend that in light of this decision, certain areas of inquiry – such as the so-called "sale option" under the Preservation Statutes – have been eliminated and that the Plaintiffs should not be allowed to obtain deposition testimony on those matters. While we agree that the new Cienega Gardens decision strengthens the Plaintiffs' ripeness claims, your letter does not constitute an unequivocal admission that the Government agrees that the Plaintiffs had no option to prepay their mortgages – i.e., an admission that prepayment was futile and that Plaintiffs' claims are ripe for adjudication. Should the Government be willing to provide an appropriate stipulation, some of the anticipated inquiries may be curtailed. Short of such a stipulation, however, we obviously need to inquire about how the statutory alternatives to prepayment operated. Even with a stipulation, it will be necessary to explore at least some aspects of HUD processing under the non-prepayment alternatives in order to determine the extent to which the processing of the Plaintiffs' applications shed light on their inability to prepay their mortgages.

Finally, your general objection that compliance with the notices poses an undue burden on the Government, because the notices allegedly seek to examine witnesses on privileged

**EXHIBIT G**



matters is frivolous, inconsistent with the rules, and a clear example of your obstructive and dilatory discovery practice. As you should well know, but maybe you do not, objections as to privilege are to be made during the deposition as they arise. At that time, you may instruct your witness not to answer a pending question that you believe intrudes on the privilege subject, of course, to a later resolution by the Court. However, you may not use this objection at this stage as a reason for not producing a person or persons to testify on any subject matter listed in the Plaintiffs' notices.

With regard to your more specific objections, our responses are as follows.

**Plaintiffs' First Deposition Notice**[1]

1. The United States Department of Housing and Urban Development's ("HUD") policies and practices concerning prepayment under the Emergency Low Income House Preservation Act of 1987 ("ELIHPA") and the Low Income Housing Preservation and Resident Homeownership Act of 1990 ("LIHPRHA").

You object that this request is vague and overly broad. It is not. It very specifically asks for HUD's policies and practices concerning a particular aspect of the Preservation Statutes – i.e., prepayment. Thus, your objection that the Government will not produce a witness to address policies and practices that do not "directly concern" prepayment is both confusing, and seemingly without merit. As noted above, we intend, in asking about the policies and practices regarding prepayment, to ask questions that relate to other options under the Preservation Statutes – i.e., the incentive and sale options to the extent that those options related to and interacted with the prepayment option. Irrespective of the holding in Cienega Gardens, those matters are immediately pertinent to the Plaintiffs' ripeness claims. If you intend to instruct your witnesses not to answer such questions, we suggest that you seek an appropriate protective order from the Court in advance. Otherwise, your baseless objections on this ground will simply delay the orderly taking of the deposition, and extend the overall time it takes to complete the depositions.

2. The nature and extent of HUD's discretion under ELIHPA and LIHPRHA, and specific examples of the exercise of that discretion.

Your objection that this request is vague, overly broad and unintelligible is nonsensical, and in any event, such an objection cannot support your refusal to provide a witness. First, as you well know, the issue of the extent of a government agency's discretion is central to the pending ripeness question. Therefore, Plaintiffs' are clearly entitled under RCFC 26 to inquire

---

[1] You did not attach the deposition notices to your letter and it is difficult to discern what you consider to be the "first," "second," and "third" deposition notices. We have attached the notices to this letter for the Court's benefit, and we have placed them in the order we believe you intended to address them as Exhibits B, C, and D. Additionally, in your letter you do not use the exact language of the request. We have done so here to avoid any confusion, rather than adopting your characterization of what the requests purportedly state.

**EXHIBIT G**



into this subject matter. Moreover, your objection ignores the Government's prior position that HUD had discretion under ELIHPA and LIHPRHA. Indeed, given the Government's earlier assertions about discretion, we do not understand what is so "unintelligible" about this request.[2] If, however, HUD now concedes that it had no discretion under ELIHPA or LIHPRHA, and it is willing to so stipulate, then there may be no need to further explore this subject matter. If not, then HUD must testify not only as to what was encompassed within its alleged discretion, but it should be capable of offering examples of when that discretion was exercised. Short of a protective order from the Court barring inquiry into this subject matter, we fully expect that you will produce a witness capable of answering questions about it.

3. The identity of any properties that were permitted to prepay under ELIHPA and LIHPRHA, and all facts and circumstances related to those properties and the prepayment.

You object that this request is overly broad, and unduly burdensome. You state that in order to respond, the Government would be required to review information concerning thousands of HUD and state insured projects that are not at issue in this litigation. First, this subject arises out of the Government's assertion that several properties in the United States were permitted to prepay under the ELIHPA and LIHPRHA which Plaintiffs dispute. For example, in response to Plaintiffs' Interrogatory No. 11, the Government provided the declaration of Joseph Mallory (attached as Exhibit E) – a document produced many years ago in another lawsuit. According to Mr. Mallory, who was proffered as a witness on behalf of the Government in that case, eight HUD projects sought to prepay under ELIHPA and LIHPRHA, and of those eight, three properties were permitted to prepay. It is preposterous for the Government to attempt to use this assertion as a defense to Plaintiffs' claim that no property was able to satisfy the prepayment criteria, and then upon further questioning by Plaintiffs, disclaim any ability to support the assertion with facts. HUD must either concede that no property was ever permitted to prepay under either ELIHPA and LIHPRHA, or it must provide Plaintiffs with the specific information that they are entitled to receive about who/what properties attempted to prepay and who/what properties were permitted to prepay.

Moreover, the Mallory declaration makes it clear that your assertion that the Government would be unduly burdened by having to respond to this subject matter because it would require a search through information about thousands of HUD and state insured properties is either a gross overstatement, or a baseless fabrication. Plainly, thousands of properties need not be searched to respond to questions about this subject – we just need information about the eight that HUD has already identified. HUD should be able to testify about all eight of the properties that allegedly attempted to prepay, and specifically, about the three allegedly granted permission to do so. If HUD asserts that it cannot testify because documents are no longer available, then

---

[2] For example, we refer the Government to its response to Interrogatory No. 5 in the Defendant's Response to Plaintiffs' First Set of Interrogatories (attached as Exhibit F). In addition, the Government also stated in response to Plaintiffs' Request for Admission No. 3 and Request for Admission No. 10 that HUD had the ability to exercise discretion in making a prepayment determination (also attached as Exhibit F).

**EXHIBIT G**



the Government is likely guilty of spoliation of evidence, and Plaintiffs will seek an appropriate sanction. In sum, as with the other challenged subject matter areas, in the absence of a protective order prohibiting inquiry into this subject matter, we intend to ask questions about it, and expect you to tender a witness fully prepared and capable of answering them.

4. The specific criteria and/or methodology used by HUD to determine whether a property was permitted to prepay under ELIHPA and LIHPRHA.

You object to this request on the ground that is overbroad and unduly burdensome, because it is not limited to projects owned by Plaintiffs. You also again assert that in order to address this subject matter, HUD would be required to review information concerning thousands of HUD and state insured properties not at issue in this litigation. It appears from your objection that you have misunderstood the request.

Here, Plaintiffs are simply seeking general information about how HUD would have gone about assessing whether a property was permitted to prepay under ELIHPA and LIHPRHA. This does not require a search of information related to thousands of properties. There were various statutory directives, legislative guidelines, and internal and external HUD guidance related to this subject. As a result, someone at HUD should be well equipped, with proper preparation, to state on the record what the specific criteria and/or methodology that HUD would have used to determine if a property was permitted to prepay under ELIHPA or LIHPRHA. Hence, we expect that with this clarification you will tender an appropriate witness on this subject matter. If you do plan to, please obtain an appropriate protective order from the Court so that the deposition is not unduly delayed.

5. The specific steps and authorizations required to process an application to prepay, seek incentives, or sell a property to a qualified purchaser under ELIHPA and LIHPRHA.

Again, your stated objection is inappropriate and unfounded. Plaintiffs are entitled to inquire about the steps taken to process an application for incentives or for a sale to the extent that those options give context to, and inter-relate to, the steps and authorizations required to process an application to prepay. Moreover, your reliance on the most recent Cienega Gardens decision is misplaced in that the Government's defenses to date in this case may vary from propositions stated in a recent decision in a different case. As noted above, should the Government wish to change its previously stated positions, and stipulate to certain facts in writing, we may be able to tailor this subject matter more narrowly. Again, in the absence of an appropriate protective order from the Court, please understand that we expect you to tender a witness on this subject matter notwithstanding your misplaced objections on scope and relevance.

6. The drafting and development of the forms used to process applications under ELIHPA and LIHPRHA, including specifically all of the versions of the forms known as a Notice of Intent used between 1987 and 1996.

**EXHIBIT G**



Contrary to your assertion, this subject matter is not irrelevant, and it is calculated to lead to the discovery of admissible evidence. Additionally, your assertion that the text of the forms did not change or was not altered throughout their use in the preservation processing is flat out wrong based on the documents produced in this matter. In any event, please recall that during the depositions of the Plaintiffs in this matter, you took great pains to walk the Plaintiffs through the various elements of the ELIHPA and LIHPRHA Notice of Intent ("NOI") forms. Indeed, you made much of the fact that one version of the form included a "box" or "option" related to prepayment. Through your questioning, you suggested that it was of significance that the form included "three options," and not just the "two options" the Plaintiffs repeatedly told you actually existed in reality. Based on those questions, and our own examination of the various forms, we have questions for the Government about the form design. Indeed, given the Government's implication and innuendo that there was significance as to what was included or not included in the various iterations of the forms, we are entitled to explore this subject matter further. Again, absent an appropriate protective order, we expect you to produce a person or persons capable of answering questions about the NOI forms and why certain elements were included or not included, and when the forms were developed and put into operational use.

**Plaintiffs' Second Deposition Notice**

1. The United States Department of Housing and Urban Development's ("HUD"), processing of prepayment and other requests under the Emergency Low Income House Preservation Act of 1987 ("ELIHPA") and/or the Low Income Housing Preservation and Resident Homeownership Act of 1990 ("LIHPRHA") for the Plaintiffs and subject properties listed in Exhibit A.

It is ludicrous of the Government to argue that the processing of the subject properties' requests for prepayment ***"and other requests"*** under the ELIHPA and LIHPRHA is irrelevant to the ripeness determination. It is in fact, what the present inquiry is all about, and, as noted above, nothing in the recent Cienega Gardens decision changes that fact. Unless the Government intends to stipulate to ripeness for each of the subject properties, the Plaintiffs are most certainly entitled to ask about the processing of prepayment ***and other requests*** under ELIHPA and LIHPRHA. Plaintiffs not only fully expect that the Government will produce a person or persons capable of testifying about this subject matter, but they will seek sanctions against the Government if it refuses to do so in the absence of an appropriate protective order.

3. The specific criteria and/or methodology used by HUD to determine whether each of the Plaintiffs and subject properties listed in Exhibit A would have been eligible to prepay or to receive incentives under ELIHPA and/or LIHPRHA.

Under ELIHPA and LIHPRHA, HUD was required, upon receipt of a Notice of Intent, to assess whether a property was eligible to prepay and/or receive incentives. In April 1992, this requirement was codified into "a test" made public in Federal Register commonly known as the "Windfall Profits Test" ("WPT"). Since the WPT should have been used by HUD to assess

**EXHIBIT G**



whether each of the subject properties was in fact eligible to prepay its mortgage and/or receive incentives under ELIHPA and LIHPRHA, it is clear that the subject matter is directly relevant to the question of futility. Nothing in the recent Cienega Gardens decision suggests that Plaintiffs are not entitled to explore this subject matter. Moreover, the Government has produced some documents to Plaintiffs addressing a subject property's eligibility for incentives (albeit, less than expected), and Plaintiffs are entitled to ask questions about those documents. Accordingly, Plaintiffs will pursue questions about this subject matter, and they expect that absent an appropriate protective order, the Government will produce a person or persons capable of, and fully prepared to testify about, this subject matter as well as any related documents produced by the Government.

4. Any analysis, memoranda, reports, internal reports, or other written or oral communications HUD prepared, received, or reviewed with respect to the possibility of prepayment or the receipt of incentives by any of the Plaintiffs and their subject properties listed in Exhibit A.

Again, you make an unfounded objection that Plaintiffs are not entitled to ask any questions about the receipt of incentives in light of the recent Cienega Gardens decision. Not only is this assertion wrong, unfortunately for the Government, as a mater of law it does not unilaterally get to decide how the Plaintiffs case should be presented. Here, the issue of the receipt of incentives versus the ability to prepay a mortgage is central both directly and indirectly to ripeness. Moreover, the Government has staked out certain positions on these issues, that unless, it is willing to stipulate to in writing, remain the record in this case. Accordingly, under RCFC 26 Plaintiffs are entitled to inquire into this subject matter particularly with respect to their individual properties. Once again, absent an appropriate protective order precluding such questions, Plaintiffs intend to inquire about this subject matter and expect a fully prepared Government witness to be tendered to respond to their questions.

5. The document retention policies of HUD, including those of any relevant field offices, and the actual steps taken to produce documents for the Plaintiffs and subject properties listed in Exhibit A.

You argue that because a written document retention policy is publicly accessible, Plaintiffs are not entitled to inquire into the subject matter of document retention policies. That is absurd. Plaintiffs are absolutely entitled to ask about the actual application of a written document retention policy. Further, we are entitled to explore why certain documents have not been produced. For example, although you argue that "any" EMAS correspondence would have been kept in local field office project files, we have received surprisingly few such documents with no explanations as to why we lack them for most properties. In addition, although final drafts of documents may have been sent to field offices that does not account for copies, duplicates, drafts, and/or internal and external correspondence all of which are called for by our document requests. Even if you do not see the value, you may not refuse to produce a witness to testify unless you have an appropriate protective order in place. Accordingly, please be aware that we intend to take the deposition of someone with knowledge about the document retention

**EXHIBIT G**



policy and practices of HUD, as well as EMAS (the request directed specifically to EMAS as opposed to HUD and its field offices generally is included in the so-called "third" deposition notice discussed below).

In addition, you assert that because counsel for the Government supervised the collection of documents for production in these matters, we are precluded from asking about document retention. In making that assertion, you again, miss the point. Counsel's supervision of the document collection does not insulate the agency charged with maintaining records from answering questions about steps taken to preserve, collect, and produce relevant documents both prior to and after the time when the Government was on notice of the litigation. If you recall, although we supervised the production of documents for the plaintiffs, you asked the plaintiffs questions about their role in producing those to us, the location of documents, and the extent of the search for documents. If you believe that you were permitted to ask such questions, you cannot truly believe that the same does not hold for us. Your repetitive practice of attempting to block us from doing the very same things that you have done in discovery is troubling and frustrating to say the least.

Moreover, the topics of an agency's retention practices and the execution of a retention policy are separate and distinct from the topic of collection and production of documents in a litigation. In other words, your role (or that of other attorneys) in the actual collection and production does not preclude Plaintiffs from asking questions about the practices and execution of a general retention policy. We find it particularly alarming that you are taking such a hard stance on the scope of what we can and cannot ask about retention in light of your revelation in your letter that all of the documents for Person Court have been destroyed by HUD.[3]

Finally, to the extent that you believe that questions about this subject matter will intrude on the attorney-client privilege, you may object to those questions at the deposition. However, you may not use that objection to justify preemptively denying us access to a proper witness. That is simply not how this issue is handled. Accordingly, in the absence of protective order, we expect you to have a witness available and fully prepared to testify about this subject matter.

**<u>Plaintiffs' Third Deposition Notice</u>**

1. The Economic & Market Analysis Section's role in processing prepayment and other requests under ELIHPA and LIHPRHA.

You object to this request and state that no witness will be proffered to address EMAS' analysis of "other requests" under the Preservation Statutes. Again, to the extent that the

---

[3] Moreover, while your letter suggests that you are going to prepare some type of summary regarding the document production, and you apparently believe that such a written summary from you or other attorneys suffices to address this subject matter, please be on notice that it does not, and we will not accept your proposed summary as doing so.

**EXHIBIT G**



Plaintiffs requested relief other than prepayment, we are entitled to explore how HUD processed their requests, irrespective of the recent holding in Cienega Gardens.

2. The nature and extent of EMAS' role in processing prepayment and other requests under ELIHPA and/or LIHPRHA.

You object that this subject matter is overly broad and seeks information that is not relevant to ripeness under the most recent Cienega Gardens decision. Specifically, you appear to object to the inclusion of "other requests." For the reasons cited above, you are incorrect in your assessment, and without a right to make such an objection at this stage. Moreover, as explained above in response to similar objections to a similar request, to the extent that the "other requests" relate to and inter-relate to prepayment, Plaintiffs are fully within their rights to ask about this subject matter.

3. The specific criteria and/or methodology used by EMAS to determine whether a property was permitted to prepay or receive incentives under ELIHPA and/or LIHPRHA.

You object to this request on the basis that is overbroad and unduly burdensome, because it is not limited to projects owned by Plaintiffs. Therefore, you assert, to address this subject matter HUD would be required to review information concerning thousands of HUD and state insured properties not at issue in this litigation. It appears from your objection that you have again misunderstood the request as you did in the similar request made in a separate notice directed to HUD more generally which is addressed above.

Again, in order to answer questions related to this subject, HUD need not search through property specific information for thousands of properties. The request is much simpler. Here, Plaintiffs are simply seeking general information about how HUD, and specifically EMAS, went about assessing whether a property was permitted to prepay under ELIHPA and LIHPRHA. Clearly, there were various statutory directives, legislative guidelines, and HUD internal and external guidance. As a result, someone at HUD should be well equipped, with proper preparation, to state on the record what the specific criteria and/or methodology that EMAS would have used to determine if a property was permitted to prepay under ELIHPA or LIHPRHA. Moreover, someone should be able to address the criteria and methodologies used in correspondence produced by the Government that reflect EMAS' assessment of a properties' ability to prepay or receive incentives. Hence, we expect that with this clarification that you will tender an appropriate witness on this subject matter. If you do not wish to do so, please obtain a protective order from the Court.

4. Any analysis, memoranda, reports, internal reports, or other written or oral communications EMAS prepared, received, or reviewed with respect to the possibility of prepayment or the receipt of incentives by any of the Plaintiffs and their subject properties (see list attached as Exhibit A).

**EXHIBIT G**



You make the same objection to this request as you did to the similar request in the HUD deposition notice. As you might expect, our response to your objections is also the same, so please refer to it. In sum, we expect a witness prepared and fully capable of answering questions related to this subject matter absent an order from the Court prohibiting us from asking question about this subject matter. As you know, we insisted – over your frequent objections – on having adequate time to prepare our 30(b)(6) witnesses, so that they would be able to offer pertinent testimony on behalf of the Plaintiffs. We expect you to be as diligent as we were in preparing your witnesses, so that they can give the same level of detailed testimony on behalf of the Government.

5. The document retention policies of EMAS, and the specific steps taken, if any, to produce documents in the above referenced matter in response to the Plaintiff's Request for Production of Documents.

Again, please refer to our response above which addresses the same objections you made in connection with our similar request to HUD generally.

**Conclusion**

In sum, it is difficult to understand why you believe that you are entitled to withhold witnesses based on objections of relevancy, breadth, undue burden, vagueness, and/or phantom claims of privilege. Please be clear that under the rules, none of your objections provides a valid basis for you to refuse to produce a witness or witnesses. Rather, you can make your objections during the depositions. Further, as you know, you may only instruct your witnesses not to answer on the basis of an asserted privilege, and to the extent you attempt to do so on the other grounds stated in your letter, you do so at your own peril. Alternatively, you are entitled to seek a protective order from the Court in advance of the depositions which will permit you to refuse to produce a witness provided that the Court agrees with your grounds.

However, you cannot attempt to limit our ability to obtain complete discovery in a timely manner as you appear to try do in your letter. I will remind you that you previously represented on more than one occasion that you would be producing 4-6 individuals to testify in response to our notices that were served in August 2007. On that stated basis we agreed to give you until October 12th to identify those individuals. However, instead of identifying the witnesses as promised, you blind-sided us and provided us with only two names and presented a lengthy list of unfounded and improper objections in your October 12th letter. Your approach is again reflective of the lack of civility with which you are conducting yourself in this discovery process. Moreover, it is disappointing to think that the Government is consciously acting to waste the Plaintiffs' time and resources on frivolous discovery motion practice, rather than litigating the substantive claims.

Again, I urge you to reevaluate your position and recognize that your stated objections do not relieve you of your obligation to produce suitable 30(b)(6) witnesses to testify fully about each of the subject matters included in Plaintiffs' deposition notices. To the extent you are

**EXHIBIT G**



willing to supply us with an unequivocal stipulation with respect to ripeness issues, we are prepared to discuss it. We would prefer if you cannot come to a reasoned conclusion, that you seek a protective order from the Court. If you instead opt to produce ill-prepared witnesses, thus, requiring Court intervention during the depositions, you will have succeeded only in needlessly extending the time and costs of completing discovery in this matter. If that occurs, Plaintiffs will seek appropriate sanctions and costs to compensate the Plaintiffs' for the unnecessary lost time, resources, and money caused by your dilatory actions.

Sincerely,

Harry J. Kelly