IN THE UNITED STATES COURT OF FEDERAL CLAIMS

\- - - - - - - - - - - - - - - x

ANAHEIM GARDENS, et al., :

Plaintiffs, :

v. : No. 93-655 C

THE UNITED STATES, :

Defendant. :

\- - - - - - - - - - - - - - - x

ALGONQUIN HEIGHTS, et al.,:

Plaintiffs, :

v. : No. 97-582 C

THE UNITED STATES, :

Defendant. :

\- - - - - - - - - - - - - - - x

Deposition of MAURICE BARRY

Washington, D.C.

Wednesday, November 14, 2007

9:46 a.m.

Volume II

Reported by: TRISTAN-JOSEPH, RPR



3bd498e0-10ba-49cd-bc2b-3fedd7ae0afe

being Exhibit 27.

(Witness reviews document.)

BY MS. ZIARNO:

Q. I think I have a pending question which is --

A. Oh, I'm sorry.

Q. -- do either of these refresh your recollection as to the final endorsement date for Coleridge Road Apartments?

A. From this circle date at the bottom, it appears that it's finally been endorsed in July 25th of 1972.

Q. And that's Exhibit 27 you're pointing to?

A. I'm sorry. Hold on a minute.

Exhibit 27.

Q. And so that final endorsement date was July 25, 1972?

A. July 25, 1972.

Q. I'm sorry. Correct.

Does that help you analyze or figure out or explain the delays --

A. Well --
Q. -- that we've been talking about between the receipt of the initial NOI for Coleridge Road and its distribution?
A. -- if you add twenty years to that, you would get to July of 1992. And then, under Title II, they would be eligible to submit their Notice of Intent one year prior, which would be in July of '91. So it appears that their Initial Notice of Intent that was submitted was submitted too early.
Q. That still doesn't, for me, though explain -- maybe I'm missing something.
If the Initial Notice of Intent was dated 12/26/90, and they were eligible, and that's when HUD received that Notice, and they were eligible to proceed on July 25th of 1991, this still sat in the file somewhere until June 15th of 1992 --
A. But --
Q. -- passed its eligibility date for filing.

A. But I think then the letter talks about the lack of a -- possibly a proper Notice of Intent, this July 17, '92, letter to Richard Urban at Thetford Properties indicating that they need -- even though the process was begun under an Election to Proceed, that they still needed a Notice of Intent to properly, you know, have a proper record of a Plan of Action process for this particular property Coleridge Road.

Q. Well, if the December 1990 Notice of Intent was wasn't proper, why was that distributed in 1992?

Why wouldn't they have asked for a proper Notice of Intent prior to that?

MR. HARRINGTON: Objection.

Lack of foundation.

THE WITNESS: That, I don't know.

BY MS. ZIARNO:

Q. And so we still don't know why between July 25th of 1991 and June 15th of 1992 the Notice of Intent was not distributed to EMAS.

MR. HARRINGTON: Objection.



3bd498e0-10ba-49cd-bc2b-3fedd7ae0afe

Lack of foundation.
Mischaracterizes the documents.
You can answer.
THE WITNESS: I guess I'd have to go back to this letter that, even though the processing appeared to take place under the Election to Proceed, there was still a requirement for a submission of a proper Notice of Intent.
BY MS. ZIARNO:
Q. Again, I'm confused.
You wanted to know the eligibility date for this property thinking that may have had an impact on why --
A. Delayed processing.
Q. -- this was delayed.
MR. HARRINGTON: Go ahead and wait until their a question --
THE WITNESS: Okay. I'm sorry.
MR. HARRINGTON: -- Mr. Barry.
THE WITNESS: I'm sorry.
BY MS. ZIARNO:
Q. And so we've determined that they were


3bd498e0-10ba-49cd-bc2b-3fedd7ae0afe

eligible to file a Notice of Intent based on your calculation as of July 25, 1991. Right?

A. That's correct.

Q. Okay. So when they filed in December of 1990, arguably they filed early that Notice of Intent. Correct?

A. Correct.

Q. Okay. So then why on July 26, 1991, after they were eligible, was that Notice of Intent not circulated to the different branches?

A. Because it was -- I believe it was dated December 26th of 1990. It wasn't a proper Notice of Intent.

Q. But they then distributed it in June of '92. Why not ask for a proper Notice of Intent in July of '91?

We still have a year lag here.

MR. HARRINGTON: Objection.

Lack of foundation.

Mischaracterizes the documents.

You can go ahead and answer the question, if you can, Mr. Barry?



3bd498e0-10ba-49cd-bc2b-3fedd7ae0afe

THE WITNESS: I guess what I'm -- what I'm assuming is that they proceeded under the Notice of Election to proceed and sent that document around as the Initial Notice of Intent.

And then, when this July 17th, '92, letter goes out, there's acknowledging receipt of the Notice of Election to Proceed but then they ask for a copy of a Notice of Intent.

BY MS. ZIARNO:

Q. Why would HUD have not asked for a different Notice of Intent in July of 1991?

A. That, I don't know.

Q. And to find that out we would have to -- I think you've testified, find somebody in the North Carolina Field Office who could testify about this property?

A. I would say so, yes.

Q. Is there anything further you can tell me about the processing of Coleridge Road Apartments?

MR. HARRINGTON: Objection. Vague.

BY MS. ZIARNO:



3bd498e0-10ba-49cd-bc2b-3fedd7ae0afe

Q. You can answer.
A. I'm not a hundred percent sure I know what you're asking.
Q. Is there anything else you can tell me, other than what we've discussed so far today, about the processing of Coleridge Road Apartments?
A. No.
Q. And I just want to clarify something too that you just said.
You stated that you're assuming they distributed the Notice of Election to Proceed on June 15, 1992.
According to this prepayment log, Exhibit 16, it doesn't say that it distributed a Notice of Election to Proceed, correct?
It stated that distributed a Notice of Intent?
A. But I'm just looking at the receipt date of the Election to Proceed and then when the documents are submitted to EMAS, FH&EO, Val., and A&E.
I'm assuming that there was possibly a

mistake in sending those documents and assuming that that was the Initial Notice of Intent, and what they were supposed to do at that point in time.

Q. So that -- am I understanding you to say then that where this states that the date Initial NOI distributed it to EMAS, you're reading that to mean that it was the date that the NOE, the Notice of Election to Proceed was distributed to EMAS?

A. Just based on the dates. I'm looking at the date of the Election to Proceed, in which that was received on June 11th of '92. And, you know, on June 15th, you know, a request is made from EMAS, FH&EO, Val., and A&E to perform their functions under the Notice of Intent at that time.

Q. Okay. I refer you back to Exhibit 23.

This is Ms. Briscoe's memo dated 6/15/92, which we've already established was tied to the prepayment log.

Where in that memoranda to EMAS and FH&EO does it state that she's distributing a Notice of Election to proceed rather than a Notice



3bd498e0-10ba-49cd-bc2b-3fedd7ae0afe

to Intent to Proceed?

MR. HARRINGTON: Objection. Mischaracterizes the name of the documents.

MS. ZIARNO: I'm just reading what she has in her documents, asking if this is, in fact, what he's referring to. That's what she called it.

THE WITNESS: Well, she's calling it a Notice of Intent to Proceed.

BY MS. ZIARNO:

Q. Right. So is that why you think that maybe she was distributing the Notice of Election to Proceed and not the Notice of Intent?

A. That's -- that's -- that's right.

Q. That's why we're asking you these questions, to figure this stuff out.

A. Okay.

Q. We still don't know why in July of '91 HUD would not have asked for a, as you put it, proper Notice of Intent on this property. Right?

A. Yeah, we still don't know that.

Q. Okay. Under the guidelines that are



3bd498e0-10ba-49cd-bc2b-3fedd7ae0afe

published, was it proper for the North Carolina office to not do anything with the Initial Notice of Intent upon receipt?

MR. HARRINGTON: Objection.

Assumes facts not in evidence.

You can go ahead and answer it.

THE WITNESS: I can't tell from those documents what was done and what wasn't done. I don't know.

BY MS. ZIARNO:

Q. What documents would you need to be able to answer that question?

A. I'm not sure unless somebody kept, you know, a more in-depth log than this log here. I don't know what else you could use.

Q. Let's try it this way.

Based on your knowledge of the processing guidelines for Title II, if you received a Notice of Intent in 1990, what should have happened with that Notice of Intent upon receipt?

A. You would have had to become the process for, you know, dealing with Notices of Intent.



3bd498e0-10ba-49cd-bc2b-3fedd7ae0afe

Q. And what was that process?

A. The guidelines as, you know, as outlined in 90-98 and 91 -- well, 91-29 didn't exist at that point in time, but you would have to follow the procedures as outlined in the Notices.

Q. And what did you do with the Notice under those procedures?

A. The Notice would be transmitted to each of the appropriate divisions.

Q. What happened if you received a Notice of Intent that you thought was filed prematurely?

A. Well, you'd notify the Owner of a premature submission of a Notice of Intent.

Q. Give him or her instructions as to what you do next. Correct?

A. That's correct.

Q. Did that happen with respect to Coleridge based on the documents that you reviewed here today?

A. I don't know that it didn't. But based on the documents, I would say no.

Q. Is there any guidance that you're aware

of under Title II that permitted HUD to do nothing within Notice of Intent to proceed that was filed?

MR. HARRINGTON: Objection. It's vague.

THE WITNESS: I'm not aware of any.

BY MS. ZIARNO:

Q. Let's go back to Exhibit 19, which is Southgate Apartments.

MS. ZIARNO: Let's mark Exhibit 28.

(Barry Deposition Exhibit No. 28 was marked for Identification.)

(Witness reviews document.)

BY MS. ZIARNO:

Q. Is there anything in this document that helps you know what the date of eligibility for this project would be or date of final endorsement, I'm sorry?

A. I don't see it, no.

Q. Okay.

MR. HARRINGTON: Do we have the Deed Of Trust Note for Southgate?

Exhibit 28 is the Deed Of Trust.

MS. ZIARNO: Yeah, apparently not right

handy. And, frankly --

MR. HARRINGTON: Okay.

MS. ZIARNO: -- we made to headway with it the last time, so I'm not prepared to break to go look for it again.

We'll move --

MR. HARRINGTON: That's fine.

MS. ZIARNO: -- to another exhibit.

Twenty-nine.

(Barry Deposition Exhibit No. 29 was marked for Identification.)

(Witness reviews document.)

BY MS. ZIARNO:

Q. Have you had a chance to review Exhibit 29?

A. Yes.

Q. Do you recognize that's it's a letter dated January 28, 1991, from the Greensboro, North Carolina Field Office to Mr. Richard A. Urban?

A. Yes.

Q. And it addresses Southgate Apartments. Correct?



3bd498e0-10ba-49cd-bc2b-3fedd7ae0afe

A. Correct.
Q. When we were looking at Exhibit 19 earlier, that was the Southgate Apartments Prepayment Log. It indicated the receipt of the date of the Initial NOI was 12/26/90. Correct?
A. Correct.
Q. Is this letter in response to the receipt of that NOI?
A. Do you also have a copy of the NOI?
Q. I don't.
I've asked you, If this Exhibit 29 is a response to the receipt of the 12/26/1990 NOI?
A. I guess I'm confused in the sense that the first -- the first sentence says, We've received your notification of Intent to Prepay the subject mortgage."
And here it says, Receipt date of Initial Notice of Intent," which I believe is your question.
Q. If you refer back to Exhibit 20, it is the Intent to Prepay mortgage form for Southgate Apartments, which I showed you earlier.



3bd498e0-10ba-49cd-bc2b-3fedd7ae0afe

A. Okay, here it is here.

(Witness reviews document.)

A. I still don't know that for sure because the date stamped here is September 26th and it looks like 1995 but I can't be sure. I don't know exactly what that says.

Q. This form was not used in 1995, was it --

A. No, I know.

Q. -- Exhibit 20?

A. I'm just saying that that's what it's dated.

Q. You don't agree that --

A. You're trying to match -- you're trying to match -- you're trying to get me to match these up, and I'm not a hundred percent sure that I can do that, because they make reference to different things.

This makes reference to an Initial Notice of Intent; this makes notice to an Intent to prepay. This is called an Intent to Prepay the mortgage form, but it's dated September 26th, and I

can't tell the year.

Q. Who would be able to explain the processing of this particular project?

A. Other than the Field, I don't know.

Q. So even with these documents that we've given you today, you cannot explain, on behalf of the Agency, the processing for this property?

MR. HARRINGTON: I object that this is a selected portion of the documents relating to Southgate. And I object on that basis.

Now can you answer the question.

THE WITNESS: I can't answer the question.

BY MS. ZIARNO:

Q. So we would have to go to somebody in the North Carolina Field Office to be able to answer that question?

A. If someone was still there who could answer it, yeah, yes.

Q. What about the files?

Shouldn't those still be in North Carolina?



3bd498e0-10ba-49cd-bc2b-3fedd7ae0afe

MR. HARRINGTON: Objection.
The files from North Carolina have been produced in this action.
You can answer the question, Mr. Barry.
THE WITNESS: If -- you know, you could look at the file.
BY MS. ZIARNO:
Q. If this were all that was in the file with respect to the Intent to Prepay or the Notice of Intent, how we would figure out what HUD did with the processing of this project?
MR. HARRINGTON: Object to the foundation of the question.
This is not all that was in the file.
BY MS. ZIARNO:
Q. I said with respect to the Notice of Intent or an Intent to Prepay.
A. I'm not sure.
Q. Looking at the January 20, 1991, letter, marked as Exhibit 29, do you see anywhere in there where it suggest to Mr. Urban that there was anything deficient with the Intent to Prepay the



3bd498e0-10ba-49cd-bc2b-3fedd7ae0afe