# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ANAHEIM GARDENS, et al.,<br>Plaintiffs,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 93-655C<br>(Judge Margaret M. Sweeney) |
| ALGONQUIN HEIGHTS, et al.,<br>Plaintiffs,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 97-582C<br>(Judge Margaret M. Sweeney) |

## PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO COMPEL DEFENDANT TO ANSWER QUESTIONS AND TO PRODUCE CERTAIN DOCUMENTS

As set forth in more detail below, despite the Government's opposition, Plaintiffs' motion to compel should be granted for at least four reasons:

1. Plaintiffs properly attempted to resolve the issues raised by the instant motion as required by the RCFC, but those attempts were rebuffed by the Government.

2. Plaintiffs' motion is not mooted by any actions taken by the Government subsequent to the filing of the motion.

3. Plaintiffs are entitled to the documents and information sought by the instant motion, and the Government is required to provide it unless the Government can establish with sufficient factual evidence, not just a conclusory assertion by Government counsel, that the information is not reasonably available and accessible to the Government.

4. Plaintiffs are entitled to further deposition testimony from the Government in response to the cited sections of the Rule 30(b)(6) notices served on the Government because the witness proffered by the Government was inadequately prepared to provide full and authoritative testimony on behalf of the Government even though the information sought is plainly in possession of, and accessible to, the Government.

## A. Plaintiffs Satisfied the Obligation under the RCFC to Confer in Good Faith With the Government Prior to Moving for the Requested Relief

In the first instance, the Government argues that Plaintiffs' motion should be denied because Plaintiffs failed to confer in good faith as required by the RCFC. This argument is baseless and ignores the facts. The Government has been on notice that Plaintiffs would like information related to any property that prepaid under either ELIHPA or LIHPRHA since as early as October 2006 when Plaintiffs' discovery was initially served. See, e.g., Plaintiffs' Motion to Compel Defendant to Answer Questions and Produce Certain Documents ("Plaintiffs' Motion to Compel") at p. 11. Over the course of discovery, Plaintiffs' counsel and the Government's counsel engaged in more than one conversation addressing this very issue. Despite this knowledge, the Government withheld the name of Parc Chateau West until November 2, 2007, when it knew this property name as early as June or July of 2007.[1] See

---

[1] Plaintiffs should have been given timely notice of the name of Parc Chateau West so that even without the production of the improperly withheld documents, Plaintiffs could have had the opportunity to exhaust various resources to learn what they could about the property. By withholding the name for at least four months until November 2, 2007, just before the start of an intense two-week period of Plaintiffs' depositions, the Government essentially sandbagged the Plaintiffs.

Plaintiffs' Motion to Compel at p. 5, notes 2 and 3. Moreover, the Government knowingly failed to disclose the fact that documents related to Parc Chateau West existed until it was revealed in Mr. Barry's second day of deposition on November 14, 2007. See Plaintiffs' Motion to Compel at pp. 4-6.

Surprisingly, the Government asserts in its memorandum in opposition to Plaintiffs' motion that on November 14, 2007, it agreed to produce the Parc Chateau West documents. Plaintiffs are surprised by this contention since the record is clear that on November 14th, the Government plainly resisted producing the documents. See Plaintiffs' Motion to Compel at pp. 8-9. For example, the Government's counsel argued on the record that the Government was permitted to withhold the Parc Chateau West documents because the Government was not obligated to produce all of the documents it used to prepare Mr. Barry for his testimony. Id. Further, when Plaintiffs' counsel pointed out that the documents were in fact responsive to the October 2006 document requests propounded by Plaintiffs, the Government's counsel still refused to concede that he would produce the documents. Id. No matter how broad a reading is given to the November 14th deposition transcript, it is far from a record reflecting an agreement to produce documents. Nor did the Government actually produce, or agree to produce, the documents on November 15, 2007, as requested in Plaintiffs' counsel's email. Id.

Accordingly, when Mr. Kelly sent an email to the Government's counsel on December 5, 2007, about the issues related to Parc Chateau West as well as Mr. Barry's overall deficiency as a 30(b)(6) witness, the Government's counsel understood that Plaintiffs were contemplating moving for relief if an agreement could not be reached, and knew that Plaintiffs were reaching

out to him for one last time prior to moving to compel.[2] Had the Government truly wanted to confer as the opposition memorandum suggests, Government counsel could have simply picked up the telephone and done so, or at a minimum, if tied up on other matters, indicated a desire to do so in the near future via either a return email or telephone call. Mr. Harrington did neither. In other words, the Government flat out rejected Plaintiffs' attempt to confer about the issues. As a result, it is absurd for the Government to now use the rejection of Plaintiffs' overture to claim that the Plaintiffs somehow failed in meeting their obligations under the RCFC.

Similarly, it was apparent throughout the course of Mr. Barry's deposition on November 14, 2007, and indeed, it was expressly stated on the record several times, that the Plaintiffs were dissatisfied with the adequacy of Mr. Barry's testimony, and that in their view, the Government had not met its obligations under RCFC 30(b)(6). See, e.g., Plaintiffs' Motion to Compel at pp. 4-7. Thus, again, when Mr. Kelly sent the Government's counsel emails on December 5 and 6, 2007, it should have come as no surprise to the Government's counsel. And again, if the Government had truly wanted to confer, a simple phone call or return email so indicating would have sufficed, and in fact, would have forestalled Plaintiffs' filing of the motion pending that conversation even if the conversation could not have occurred immediately. Instead, the Government's counsel opted to remain silent until after Plaintiffs' motion was filed on December

2 The Government attached the December 5, 2007 email as Exhibit A to Defendant's opposition to Plaintiffs' Motion to Compel. The Government asserts that this was a "perfunctory" email. Being concise and to the point does not render an email "perfunctory." The December 5, 2007 email clearly explains (1) the issues, (2) Plaintiffs' position on the issues, (3) expresses a hope that resolution can be achieved short of Court intervention and (4) invites the Government to engage in discussions to resolve the issues as required by the RCFC. There is nothing perfunctory about it.

7, 2007.[3] As a result, the Government's rejection of Plaintiffs' overture to confer cannot fairly be used to argue that Plaintiffs failed in any duty imposed by the RCFC.[4]

In sum, Plaintiffs attempted to contact the Government's counsel to discuss the various issues underlying the instant motion to compel. Those attempts were not a surprise, and they were plainly rejected by the Government. Even if pressed for time, the Government's counsel could have indicated a desire to confer, thus precluding Plaintiffs from having to file a motion, but he opted not do so. This is a clear case where the intentional silence spoke volumes. Consequently, the Government's argument that the instant motion should be denied on the ground that Plaintiffs failed to make a good faith effort to resolve the issues prior to moving should be rejected.

## B. The Government's Production of Certain Limited Parc Chateau Documents Does Not Moot Plaintiffs' Motion

The Government claims in its opposition memorandum that it informed Plaintiffs on November 14, 2007, and again on December 7, 2007, that it intended to produce the Parc Chateau West documents. As is plain from the record, that claim is not exactly true. First, as noted above, on November 14, 2007, Government's counsel disputed whether the Government had a duty to produce the Parc Chateau West. Further, when Plaintiffs' counsel pointed out that the documents were responsive to a document request, Government's counsel still refused to concede the point. Thus, contrary to the Government's assertion, the Government most certainly

---

[3] Mr. Harrington's letter dated December 7, 2007, addressing, in part, the Parc Chateau West documents was not received by Plaintiffs' counsel until it was sent by Mr. Harrington in an email three days later on December 10, 2007 at 11:24 a.m. – a date and time well AFTER Plaintiffs' motion was filed. See Exhibit A attached hereto.

[4] It is worth noting that there was ample time between the filing of Plaintiffs' motion on December 7, 2007 and the filing of the Government opposition on December 28, 2007, for the Government to negotiate with Plaintiffs regarding the issues raised in the instant motion. However, the Government made absolutely no effort to do so. This failure is clear evidence that no matter what it suggests in its opposition memorandum, the Government had no real interest in resolving these issues short of Court intervention.

did not indicate in any way or manner on November 14, 2007, that it intended to, or would actually, produce the Parc Chateau West documents.[5]

Moreover, as already noted, the Government ignored Plaintiffs' counsel's email request following the deposition on November 14th asking the Government to bring the Parc Chateau West documents to the November 15, 2007 deposition. Rather, on November 15th the Government stated that it could not produce the documents that day because they were located somewhere other than Washington D.C. and suggested that they were in Boston. See Plaintiffs' Motion to Compel at p. 8. It is plain having now received the documents that they could have easily been faxed or sent via a PDF attached to an email since there are essentially only eight substantive pages. In fact, given the small number of pages involved, it is mind-boggling that it ultimately took the Government one month from the specific request for these documents to compile and produce them.[6]

Finally, the Government incredibly asserts that Plaintiffs knew, by virtue of Government counsel's December 7, 2007 letter, that the Government intended to produce the Parc Chateau West documents. However, as set forth in footnote number three above, while Government counsel's letter may be dated December 7, 2007, it was not actually sent to Plaintiffs' counsel until December 10, 2007 at 11:24 a.m. – a date and time well **AFTER** the instant motion was filed. Thus, it is self-evident that the so-called December 7th letter could not have possibly

---

[5] Moreover, the Government's assertion on page 14 of its opposition memorandum that "[t]hese documents were not available at the time plaintiffs conducted the Rule 30(b)(6) deposition of Mr. Barry on November 14, 2007" is false. The documents were available to the Government prior to and as of November 14th. Indeed, Mr. Barry testified under oath that he was prepared for his deposition with these documents the week before his November 14th testimony – *i.e.*, before his initial day of deposition on November 9, 2007. Moreover, the Government's counsel told Plaintiffs' counsel on November 15, 2007 that the documents were used to prepare Mr. Barry in Boston for his testimony prior to November 9th.

[6] Of course, the documents should have originally been produced in response to Plaintiffs' discovery requests served in October of 2006.

served to put Plaintiffs on notice prior to filing the instant motion on December 7, 2007, that the Government would produce the Parc Chateau West documents.

In any event, the Government's argument that Plaintiffs' motion with respect to any Parc Chateau West documents is mooted because the Government finally delivered some documents to Plaintiffs on December 20, 2007 is wrong. It is wrong because it overlooks the full scope of the relief Plaintiffs seek. Specifically, Plaintiffs' motion to compel does not simply seek to compel the production of the Parc Chateau West documents that the Government's counsel withheld until after the motion was filed. Rather, as expressly requested in Plaintiffs' motion, and in the document requests served on the Government in October of 2006 to which these documents are responsive, Plaintiffs seek information about the fate of the Parc Chateau documents that we know once existed, but that are apparently no longer available for production. See Plaintiffs' Motion to Compel at pp. 11-12. Accordingly, the motion is clearly not moot, and it should be granted.[7]

**C. Plaintiffs Are Entitled to Further Information Not Only About Parc Chateau West But Also About Other Properties Permitted to Prepay under the Preservation Statutes**

The Government's characterizations of the reasons why Plaintiffs seek information and documents related to Parc Chateau West and any other properties permitted to prepay under the statutes are wrong. The mischaracterizations then mistakenly lead the Government into arguments in opposition to the instant motion that are unfounded. Plaintiffs have repeatedly and clearly explained to the Government why they seek information about any properties permitted to prepay under the Preservation Statutes. It is not a secret. Indeed, this issue lies at the very

---

[7] Notably, the Government never argues in its opposition that the Parc Chateau West documents were not actually responsive to the specific document request Plaintiffs' cite in their motion. Having conceded this point, as explained further in the next section, the Government must fully comply with the document request including providing information about the missing documents known to have once existed.

heart of the dispute over ripeness, because it speaks to the administrative futility of filing a plan of action for prepayment under the statutes.[8]

By way of background, throughout the history of this lawsuit, and others like it, the Plaintiffs and other owners have asserted that their right to prepay their mortgages and terminate the use restrictions imposed on their properties was taken by the Government with the enactment of ELIHPA and LIHPRHA because it was impossible, as a practical objective matter, for any property to satisfy the criteria that HUD was required to apply before it could permit a prepayment under the Preservation Statutes. To counter this allegation, the Government has in this lawsuit, and others like it, made the affirmative assertion that Plaintiffs are wrong, because three properties in the United States were in fact permitted to prepay under the Preservation Statutes. Indeed, as this Court now knows, the Government filed a sworn declaration in the Greenbriar case making this very assertion. See Plaintiffs' Motion to Compel at p. 5, note 2.

However, as is plain from the face of that declaration, it is devoid of any detail about the eight properties that sought prepayment, let alone the three allegedly permitted to prepay. Indeed, the names of the properties are not even provided. It is the detail that Plaintiffs seek to discover. Plaintiffs seek to discover these details because they are necessary to prove that any prepayments approved by HUD under the Preservation Statutes were unusual and unique, and thus, not reflective of the broad proposition that the Government uses them to support. However, without any factual detail, including even the most limited details such as the properties names

8 There is no question that Plaintiffs and the Government disagree about the proper interpretation of the administrative futility exception to the ripeness rule. Despite the Government's attempt to do so throughout its opposition memorandum, this is not the appropriate forum in which to argue that issue. Suffice it to say that for purposes of the instant motion that the disagreement may lead to differing opinions about what is directly relevant to the showing that must ultimately be made, but it in no way forecloses Plaintiffs' right to engage in discovery to make their case to the Court. This issue has arisen before and Judge Hodges reinforced the point that Plaintiffs are entitled to discovery to make their case, even if the Government disagrees with that case, in his October 22, 2007 Order. See Plaintiffs' Motion to Compel at p. 3.

and locations, it makes it difficult, if not impossible for Plaintiffs to counter the Government's assertion. It is patently unfair to permit the Government to make a key assertion in defense of a claim, and then block the Plaintiffs from discovering during the lawsuit the necessary information to rebut that assertion.

Nonetheless, Plaintiffs recognize that if information is not reasonably available to the Government it cannot be produced to Plaintiffs. Notwithstanding that simple proposition, the central question raised by the instant motion, and left unanswered by the Government's opposition, is whether the information sought is **in fact** not reasonably available. At this point, all that the Plaintiffs and the Court have to rely on is Government counsel's conclusory blanket assertion that the information is not reasonably available. There are no facts offered in the opposition to explain how counsel reaches that conclusion. However, the record clearly reflects that the very same blanket conclusory assertion was previously asserted against Plaintiffs and was found to be inaccurate since someone, somewhere in the Government, actually did possess knowledge and documents about Parc Chateau West after the Government had repeatedly insisted that it could not obtain any information about any of the properties in the Malloy declaration. As a result, given the case history, the same conclusory assertion should not be accepted today without first requiring the Government to provide detailed factual support compelling the conclusion that it has unilaterally reached.

Moreover, the assertion related to the alleged burden imposed by Plaintiffs request is a gross overstatement in that contrary to the Government's arguments, it need not search for records related to thousands of properties to answer the Plaintiffs' inquiries. Rather, the reality is that the Government need only search a much a smaller universe of documents related to a much smaller number of properties – i.e., those in Indiana related to Parc Chateau West, those in St.

Louis, and those in Madison, Wisconsin.[9] Hence, at a minimum, Plaintiffs' motion to compel should be granted since there are absolutely no facts to counter the motion and support the Government's conclusory assertion that the information sought is not **in fact** "reasonably available" within the meaning of the RCFC. Thereafter, to the extent that it becomes clear that the information sought is not in fact reasonably available to the Government, the Government should be required to support that assertion by sharing openly and in detail what was done to search for the requested information. Finally, the Government should be compelled to comply with Plaintiffs' document requests served in October 2006, and to the extent that it discovers that responsive documents might have existed at one time, but no longer do, that it provide the requested information to Plaintiffs.[10]

## D. Mr. Barry's Further Testimony Regarding Parc Chateau West

The Government offers in its opposition to make Mr. Barry available for testimony about "the recently produced Parc Chateau West documents." While Plaintiffs accept that offer, it is not the end of the issue. As the Court is aware, Plaintiffs seek testimony about Parc Chateau West that extends beyond the documents themselves in the sense that Plaintiffs also seek an authoritative and binding explanation and analysis about the prepayment that was permitted. In other words, Plaintiffs do not simply want testimony from Mr. Barry that X document says Y. Plaintiffs can read the documents on their own. Because they believe that the Government's

---

9 And, the Government need not explore the fate of every HUD property in those locations. Rather, it can eliminate from consideration any ELIHPA or LIHPRHA eligible properties that were sold pursuant to the Preservations Statutes, or that were granted incentives, etc. Thus, by eliminating some possibilities based upon known facts, the Government can further narrow down the subset of possible properties that might underlie the Malloy declaration.

10 The Government suggests that if responsive documents no longer exist it is defensible because the documents would be for properties that are not plaintiffs in this litigation. For obvious reasons, Plaintiffs take issue with that proposition and believe that those documents should have been subject to a litigation hold. While that issue may very well be the subject of a future motion, it can only be fairly addressed by Plaintiffs and the Court after a full disclosure by the Government.

offer does not include this broader scope of information, Plaintiffs continue to request that the Court enter an order directing the Government to properly prepare Mr. Barry as the Government's 30(b)(6) witness to testify fully with regard to the facts and circumstances surrounding the Parc Chateau West prepayment.[11] Further, should it evolve that there is additional information about the other two properties allegedly permitted to prepay under the Preservation Statutes, Plaintiffs request an order directing the Government to produce either Mr. Barry or some other person capable of completing the Government's testimony on the subject matter regarding any properties permitted to prepay under the Preservation Statutes.

**E. Plaintiffs are Entitled to Further Deposition Testimony Addressing the Processing of Plaintiffs' Projects Under ELIHPA and LIHPRHA**

The Government's central argument in opposition to that part of Plaintiffs' motion that seeks further testimony from the Government regarding the processing of Plaintiffs' properties under ELIHPA and LIHPRHA is that Mr. Barry was not prepared to testify about processing delays because administrative delay is no longer an issue in this case. First, that argument is wrong because it rests on a complete misunderstanding of the purpose of the testimony sought by Plaintiffs. As this Court understands, not all discovery is calculated to lead to the "smoking gun" capable of winning a case hands down. Rather, some discovery is exactly what the word connotes – i.e., an attempt to discover or understand what happened as a matter of fact in a case. In this case the statutes at issue were convoluted and difficult to understand, HUD guidance was late in coming, and HUD guidance and forms were moving targets that constantly changed over time. Thus, in some cases, Plaintiffs questions about processing were simply asked so as to

[11] Mr. Barry previously testified that because he did not personally handle the prepayment any testimony he could give would be limited by his lack of personal knowledge. Plaintiffs would like to avoid having to move to compel again in the future by clarifying at this stage that Mr. Barry is the Government's designated 30(b)(6) witness on this subject matter which requires him to go beyond his personal knowledge in his testimony.

better understand what occurred and why. No more and no less. Secondly, even though Plaintiffs concede that administrative delays in processing do not in and of itself independently comprise a claim against the Government, the fact that extensive delays in processing occurred is indeed relevant and important to understand as a component of Plaintiffs' regulatory takings claims. As a result, Plaintiffs questions were plainly permissible, and Mr. Barry, as the Government's designated witness, should have been prepared to fully testify in response to all of the questions posed, whether or not he personally processed any of the properties at issue.

Since the deposition record is clear, Plaintiffs will not belabor the myriad of arguments that exist to counter the second argument posed by the Government in opposition to Plaintiffs' motion to compel – *i.e.*, that Mr. Barry did in fact answer Plaintiffs' questions. However Plaintiffs will note that each and every time Mr. Barry could not answer a question, he explained why, and directed Plaintiffs' counsel to other Government sources more likely to be able to answer the questions. Indeed, some simple research by Plaintiffs after the deposition revealed that a Ms. Cindy Belton is still employed by HUD in the North Carolina office that was the subject of several of the questions posed by Plaintiffs that Mr. Barry could not answer, and that she was in fact involved at some point in processing applications under ELIHPA and LIHPRHA. Thus, Ms. Belton either could be proffered as a witness by HUD to address processing for the projects related to North Carolina, or it could use Ms. Belton as a source of information for Mr. Barry to testify. Either way, it is clear that the Government's broad assertion that no one who was involved in the processing of Plaintiffs' properties remains employed by HUD today rendering it impossible or unduly burdensome to provide the sought after testimony, is not accurate.

Similarly, the Government argues that because Ms. Hetue from the Indiana HUD field office could not testify about certain matters, and Mr. Barry was likewise unable to testify about those matters, that Plaintiffs are foreclosed from getting any further information about the Indiana properties. However this argument is flawed. First, Ms. Hetue testified that she did nothing to prepare for her testimony as an individual – i.e., she did not sit down with documents to refresh her recollection as would have been required if she were proffered as a 30(b)(6) witness. Plaintiffs believe that it is very possible that with proper preparation Ms. Hetue's recollections would be more forthcoming so that if she were prepared as a proper 30(b)(6) witness she would be able to testify about the processing of the Indiana properties that she processed back at the relevant time. Moreover, Mr. Barry stated that in preparation for his testimony he did not talk to Ms. Hetue, and thus, on this very superficial level, he was plainly inadequately prepared as the Government's designated witness with respect to any property she processed. Again, Plaintiffs do not care which individual or individuals the Government proffers as its 30(b)(6) witness(es); all that Plaintiffs ask is that the Government proffer a properly prepared witness or witnesses who can testify as to matters plainly within the scope of discovery.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs request that the Court grant their motion to compel.

Dated: January 14, 2008

NIXON PEABODY LLP

s/ Harry J. Kelly

Harry J. Kelly
401 9th Street N.W., Suite 900
Washington, D.C. 20004
(202) 585-8712

Attorneys for Plaintiffs

CERTIFICATE OF FILING

I certify that on the 14th day of January 2008, a copy of "PLAINTIFFS REPLY IN FURTHER SUPPORT OF THEIR MOTION TO COMPEL DEFENDANT TO ANSWER QUESTIONS AND TO PRODUCE CERTAIN DOCUMENTS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Harry J. Kelly

# EXHIBIT A

## Kelly, Harry

**From:** Harrington, David (CIV) [David.Harrington@usdoj.gov]

**Sent:** Monday, December 10, 2007 11:24 AM

**To:** Kelly, Harry

**Subject:** Anaheim Gardens/Algonquin Heights, Nos. 93-655 & 97-582 (Fed. Cl.).

**Attachments:** 2007-12-07 Letter to Harry Kelly re docs.pdf

**David A. Harrington**
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W.
Washington, D.C. 20530 (for overnight deliveries 20005)
(202) 616-0465

**U.S. Department of Justice**

Civil Division

JED:BMS:DHarrington
DJ No. 154-93-655 & 154-97-582

Telephone: (202) 616-0465
Facsimile: (202) 307-0972

*Washington, D.C. 20530*

December 7, 2007

*Via Electronic Mail and U.S. Mail*

Harry J. Kelly, Esq.
Nixon Peabody LLP
401 Ninth St., N.W.
Suite 900
Washington, D.C. 20004

Re: *Anaheim Gardens, et al. v. United States*, No. 93-655C (Fed. Cl.);
*Algonquin Heights, et al. v. United States*, No. 97-582C (Fed. Cl.).

Dear Mr. Kelly:

I received on December 6, 2007, a letter identifying a number of documents that you "believe were omitted from the Government's document production." Letter from Harry Kelly to David A. Harrington at 1 (Dec. 5, 2007). We are looking into this issue. If it is determined that HUD possesses the documents identified in your letter, that the documents were not previously produced and that the documents are responsive to plaintiffs' document requests, the documents will be produced.

Your letter also makes reference to unspecified documents that your colleague, Alycia Ziarno, purportedly requested during plaintiffs' depositions. Id. As you note at the outset of your letter, on November 15, 2007, we requested that you identify all specific document production issues to which you would like a response. See Letter from David A. Harrington to Harry Kelly at 1 (Nov. 15, 2007). To the extent there are any documents in addition to those identified in your December 5, 2007 letter that you believe were omitted from the Government's document production, please identify the documents as soon as possible. Upon receipt of a letter identifying such documents, we will look into the issues that you raise.

Lastly, you inquire about the production of documents relating to the Parc Chateau West project. As you are aware, Parc Chateau West is not one of the plaintiffs in these actions and left the HUD inventory in the mid-1990s. As a result, few documents concerning Parc Chateau West are available. We nevertheless anticipate producing in the near future those available documents that concern the project's prepayment.

Very truly yours,

David A. Harrington
Trial Attorney
Commercial Litigation Branch