# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ANAHEIM GARDENS, et al., Plaintiffs, v. THE UNITED STATES, Defendant. | ) | No. 93-655C (Judge Margaret M. Sweeney) |
| ALGONQUIN HEIGHTS, et al., Plaintiffs, v. THE UNITED STATES, Defendant. | ) | No. 97-582C (Judge Margaret M. Sweeney) |

## PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO COMPEL DEFENDANT TO ANSWER QUESTIONS CONCERNING DOCUMENT RETENTION AND PRODUCTION MATTERS

The Response filed by the Government (the "Response") to the Plaintiffs' Motion to Compel Defendant to Answer Questions Concerning Document Retention and Production Matters (the "Motion") depends on a quibbling and constricted reading of the scope of the Plaintiffs' Rule 30(b)(6) deposition notices (the "Deposition Notices," Exhibits A and B to the Motion) that is not supported by the plain language of those notices. Moreover, other discovery from the Government demonstrates that there are serious deficiencies, omissions and inconsistencies with the Government's document production in this case, all of which emerged after the Deposition Notices were originally submitted to the Government. These circumstances

demonstrate why the discovery requested by the Plaintiffs with respect to the Government's document production policies has not been satisfied, and why the Government must be compelled to fully explain what it did – and did not do – to respond to the Plaintiffs' discovery requests here.[1]

## ARGUMENT

### A. The Government Should Not Be Allowed To Use An Artificially Constricted Construction Of The Plaintiffs' Deposition Notices To Avoid Producing A Responsive Witness.

The principal argument advanced by the Government is that in seeking testimony concerning the record retention "policies" of HUD, the Plaintiffs are not entitled to seek information concerning HUD's "practices," which, it contends, were not expressly mentioned in the Deposition Notices and therefore are outside the scope of those notices. Response at 2 - 4. The argument is mistaken in several respects. First, as early as October 16, 2007, the Plaintiffs' counsel sent a detailed letter to the Government's counsel, attempting to clarify questions he had raised about the scope of the Plaintiffs' Deposition Notices. In that letter, sent weeks before the Rule 30(b)(6) depositions were scheduled, Plaintiffs' counsel made clear that they intended to question the Government's witnesses about both its document retention policies and practices:

> Accordingly, please be aware that we intend to take the deposition of someone with knowledge about the document retention policies and practices of HUD. . . .

---

[1] The Government contends that the Plaintiffs failed to engage in good faith negotiations prior to filing this Motion. Response at 6. The Plaintiffs vigorously disagree, because the Government made clear on numerous occasions that it did not intend to comply with the Plaintiffs' Rule 30(b)(6) deposition notices, including the portion dealing with document retention policies and document retention. *See, e.g.,* letter to Harry J. Kelly from David Harrington dated October 12, 2007 at 3 (Exhibit A hereto); Letter to Harry J. Kelly from David Harrington dated October 25, 2007 (Exhibit B hereto). Given that even now, the Response does not indicate any willingness to provide the additional testimony sought by the Plaintiffs, it is disingenuous for the Government to contend that the Plaintiffs should have waited for yet another perfunctory refusal before filing the Motion.

Letter to David Harrington from Harry J. Kelly dated October 16, 2007 at 7 – 8 ("October 16 Letter") (Exhibit C hereto). The October 16, 2007 Letter thus eliminated any confusion about the scope of the Plaintiffs' request, and the Government had ample time to locate one or more witnesses to respond to the Plaintiffs' request.

Second, regardless of the clarifications in the October 16 Letter, the plain language of the Deposition Notices was sufficient to permit the Plaintiffs to inquire about HUD's daily course of action in administering its document retention policies. Modern discovery rules do not permit a party to use a hyper-technical construction of plain words to dodge its discovery obligations, as the Response attempts. Werbungs Und Commerz Union Austalt v. Collectors Guild, Ltd., 728 F. Supp. 975, 982 (S.D.N.Y. 1989) (discovery requests "should not be read hypertechnically; rather, a party should attempt to comply with discovery demands in good faith."), *rev'd in part on other grounds*, 930 F.2d 1021 (2nd Cir. 1991). Thus, the words of a discovery request, such as a Rule 30(b)(6) deposition notice, should be given a plain reading and not be subjected to excessively stringent constructions.

Here, however, the Government contends it is not required to provide a witness to testify concerning the Government's "practices" because the Deposition Notices only asked for a witness to discuss HUD's "policies." According to dictionary definitions, a "policy" includes "a principle, plan, or ***course of action***, as pursued by a government . . . ." and a "practice" includes "a frequent or usual ***action; habit; [or] usage***." Webster's New World Dictionary (Second College Ed. 1986) (emphases added). Clearly, the Government's "action," "habit" and "usage" are encompassed within its "course of action" on discovery matters, so the distinction between "policies" and "practices" that the Government relies upon simply does not exist. Thus while the October 16 Letter clarified that the Deposition Notices sought information concerning HUD's

practices, it only emphasized what was already evident in the plain language of the Deposition Notices.

Indeed, the Government failed to meet even its own artificially narrow definition of "policies." While it contends that its proferred Rule 30(b)(6) witness would testify about "HUD record retention policy" (*see* Response at 3), in fact its witness testified only about one specific "policy" – disposition of Government records with the National Archives. *See* Deposition Transcript of Carmelita Bridges at 23, lines 6 - 9 (Exhibit C to Motion). Even in the artificially constricted interpretation of "policies" used by the Government, therefore, it failed to satisfy the requirements of the Deposition Notices and its own prior assurances, and should be compelled to do so now.

### B. **Subsequent Discovery Demonstrates That The Government Has Not Satisfied Its Obligations Here.**

In addition to information concerning HUD's "policies," the Plaintiffs also specifically asked for a witness to testify concerning "the actual steps taken to produce documents for the Plaintiffs and subject properties listed in Exhibits A and B." Deposition Notices at 2 (Exhibit A to the Motion).[2] The Government apparently contends that the Plaintiffs should have conducted serial depositions of specific HUD personnel to obtain that requested information. Response at 4.

In fact, the Plaintiffs were able to obtain partial information about document production associated with this case from a few other HUD officials from its regional offices, but the Plaintiffs' skill – or luck – in identifying a handful of HUD employees with relevant information

---

[2] The Motion also addresses a second Deposition Notice, intended to obtain testimony concerning the operation and conduct of HUD's Economic & Market Analysis Section ("EMAS"). *See* Exhibit B to the Motion. The Deposition Notice concerning EMAS similarly asked for testimony on "[t]he document retention policies of EMAS, and the specific steps taken, if any, to produce documents in the above referenced matter in response to the Plaintiff's Request for Production of Documents." EMAS Deposition Notice, ¶ 5 at 2.

is no substitute for testimony from a Rule 30(b)(6) witness, prepared to testify concerning the steps HUD actually took to preserve and produce documents here. The Government misunderstands the purpose of RCFC 30(b)(6), which is intended to put the burden on the party receiving the deposition notice to produce a witness who can provide responsive information:

> The party seeking discovery [pursuant to Rule 30(b)(6)] may simply name the corporation, or other organization, as the deponent. It is then the duty of the corporation to name one or more persons who consent to testify on its behalf and these persons must testify as to matters known or reasonably available to the corporation. If in the course of taking the deposition it becomes apparent that the person or persons designated are not able to provide testimony on the matters specified in the notice, ***it is the duty of the corporation immediately to make a new designation substituting someone who can give the needed testimony.***

8A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2103 (2d ed. 1994) (addressing cognate Fed. R. Civ. P. 30(b)(6)) (emphases added). These commentators added that "[n]ot only must the organization designate a witness, but it is responsible also to prepare the witness to answer questions on the topics identified and present the organization's knowledge on those topics." *Id.*, 2007 Pocket Part at 10. Absent a protective order, the Government had an obligation to produce a responsive Rule 30(b)(6) witness.

In fact, the testimony the Plaintiffs managed to obtain from these witnesses only underscores why the Motion is so urgently necessary here. The Government's witnesses testified, among other things, that HUD had not imposed prompt "litigation hold" restrictions on pertinent documents,[3] had initiated discovery after the deadline to produce relevant information,[4] or had apparently lost critical documents, such as information pertaining to Parc Chateau West, the only specifically-identified project that apparently succeeded in prepaying its HUD-insured

---

[3] Deposition Transcript at Thomas Vitek, pg. 57, line 13, through pg. 58, line 6 (Exhibit H to Motion); Deposition Transcript of Franca Hetue, at pg. 57, line 19, through pg. 59, line 4 (Exhibit I to Motion) ("Hetue Deposition Transcript").

[4] Hetue Deposition Transcript at pg. 59, line 20, through pg. 60, line 7 (Exhibit I to Motion).

mortgage.[5] The limited discovery on these matters obtained by the Plaintiffs underscores their well-founded belief that the Government has not satisfied its obligations here, and explains why the Motion must be granted.

**C. The Government Cannot Invoke the Attorney-Client Privilege Or Work Product Protection To Deny A Full Inquiry Into Its Document Production Activity Here.**

The Government's final argument is that questions concerning the steps taken to produce documents in this case "would implicate attorney-client communications and protected work product" and that the Motion therefore should be denied. Response at 4. Again, the Government's Response is incorrect for several reasons.

First, the Government appears to be leaping to the conclusion that responsive information necessarily would require deposition of the Government's attorneys, a proposition that at this point appears premature. Several of the regional HUD officials who were deposed provided information about steps that were taken by them or their offices to preserve documents and to respond to the Plaintiffs' requests (*see* pg. 5, above); similarly, to respond to the Deposition Notices, the Plaintiffs seek one or more Rule 30(b)(6) witnesses who can testify about the same activities on behalf of HUD generally. It would be up to the Government to determine which person/s have the most responsive information, of course, but at least initially, there is no immediate reason to suppose that attorney testimony is required here.

Second, the Government's argument that further discovery on the actual steps taken here to produce documents should be denied because it implicates attorney-client privilege is vastly overstated. In this court as under the Federal Rules, all discovery is overseen by attorneys. Consequently, if it were possible for a party to use attorney-client privilege or work product

---

5 *Id.* at pg. 59, line 20, through pg. 61, line 15 (Exhibit I to Motion).

protections to shield its actual discovery conduct from scrutiny, it would be impossible for courts to make inquiry into the adequacy of document production or discovery responses generally. Simply put, the Government should not be allowed to use attorney-client privilege as a sword to prevent a legitimate inquiry into what was done to preserve and produce documents in this case.[6]

In any event, the Government has waived any attorney-client privilege that arguably pertains here. First, as the Government admits, it already produced a one-page document, entitled "Document Production Efforts in Anaheim Gardens and Algonquin Heights" (the "Report"), purporting to set forth the steps it has taken to respond to the Plaintiffs' discovery requests. *See* Response at 5 and Report, accompanying Exhibit B hereto. Moreover, as noted above (pg. 5), the Government's witnesses have already provided testimony on document preservation and production activities in their respective offices. Thus, in the unlikely event that any privilege applies to the Government's document production practices here, that privilege was waived by the release of the Report and the testimony of its witnesses. Bowne, Inc. v. AmBase Corp., 150 F.R.D. 465, 478 - 9 (S.D.N.Y. 1993) (waiver will follow when a party takes voluntary steps that "will predictably lead" to disclosure of information). Here, the Government should not be allowed to make selective voluntary disclosures of privileged information while withholding less favorable information:

> [T]he voluntary production of a privileged document effects a waiver of the privilege as to all other privileged communications concerning the same subject matter. ***This is so because fairness and full disclosure cannot permit a party to selectively choose to produce only those communications which may be favorable to him and withhold on grounds of privilege others which may be favorable to his adversary.***

6 The cases cited by the Government – including its lead case, Sparton v. United States, 44 Fed. Cir. 557 (1999), *rev'd*, 399 F.3d 1321 (Fed. Cir. 2005) – do not impose a different rule: they do not prohibit testimony from an attorney, but only explain the circumstances under which such testimony may be obtained. Until such time as it becomes clear that the required testimony can only be obtained from counsel, however, those cases are inapposite.

Standard Chartered Bank PLC v. Ayala International Holdings (U.S.), Inc., 111 F.R.D. 76, 85 (S.D.N.Y. 1986) (emphasis added). The Government cannot be allowed to make partial, self-serving disclosures and then attempt to invoke attorney-client privilege to prevent a full inquiry by the Plaintiff into its document production activity.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion to Compel Defendant to Answer Questions Concerning Document Retention and Production Matters should be granted.

Dated: January 14, 2008

/s/ Harry J. Kelly
Harry J. Kelly
NIXON PEABODY LLP
401 9th Street N.W., Suite 900
Washington, D.C. 20004
(202) 585-8000
(202) 585-8080

Attorneys for Plaintiffs

## CERTIFICATE OF FILING

I certify that on the 14th day of January 2008, a copy of "PLAINTIFFS REPLY IN FURTHER SUPPORT OF THEIR MOTION TO COMPEL DEFENDANT TO ANSWER QUESTIONS AND TO PRODUCE CERTAIN DOCUMENTS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Harry J. Kelly