# In the United States Court of Federal Claims

No. 93-655 C
(Filed: February 29, 2008)

| | |
|---|---|
| ANAHEIM GARDENS, et al., | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | * |
| | * |
| THE UNITED STATES, | * |
| | * |
| Defendant. | * |

## RULING ON PLAINTIFFS' MOTION TO COMPEL DEFENDANT TO ANSWER QUESTIONS AND TO PRODUCE CERTAIN DOCUMENTS

Before the court are Plaintiffs' Motion to Compel Defendant to Answer Questions and to Produce Certain Documents ("Pls.' Mot." or "motion") and accompanying exhibits ("Pls.' Ex."), Defendant's Response to Plaintiff's Motion to Compel Defendant to Answer Questions and Produce Documents ("Def.'s Resp." or "response") and accompanying exhibits ("Def.'s Ex."), and Plaintiffs' Reply in Further Support of Their Motion to Compel Defendant to Answer Questions and to Produce Certain Documents ("Pls.' Reply" or "reply") and accompanying exhibit ("Pls.' Reply Ex."). In their motion, plaintiffs seek, pursuant to Rule 37(a)(2)(B) of the Rules of the United States Court of Federal Claims ("RCFC"), an order compelling defendant to produce a witness or witnesses who can fully testify regarding (a) the identity of properties whose owners were permitted to prepay their government-issued mortgages under either the Emergency Low Income Housing Act of 1987 ("ELIHPA") or the Low Income Housing Preservation and Resident Homeownership Act of 1990 ("LIHPRHA"), and (b) the processing of plaintiffs' properties under these statutes. Additionally, plaintiffs seek an order pursuant to RCFC 37(a)(2)(A) compelling defendant to produce documents, as well as an order pursuant to RCFC 37(a)(4)(A) directing defendant to pay reasonable costs and expenses incurred in bringing their motion. For the reasons set forth below, plaintiffs' motion is granted in part and denied in part.

### Discussion

In its August 14, 2006 Order, the court directed the parties to conduct discovery on ripeness. According to defendant, ripeness discovery has yielded "nearly one million pages of material," with defendant alone representing that it has produced in excess of 250,000 pages of documents to plaintiffs. Def.'s Resp. 8. Before discussing plaintiffs' motion as it relates to the

production of specific documents and preparation of witnesses, the court must first determine whether plaintiffs' motion complies with the requirements set forth in RCFC 37.

**I.**

Plaintiffs certify in their motion that, pursuant to RCFC 37(a)(2)(B), they attempted in good faith to confer with defendant prior to filing their motion.[1] Pls.' Mot. 2. Defendant argues that plaintiffs' motion should be denied because plaintiffs failed to engage in a "meaningful, good faith effort" to resolve the parties' dispute. Def.'s Resp. 2; see also id. at 3, 9 (same). Plaintiffs contend that defendant's argument is "baseless," particularly since defendant "has been on notice that Plaintiffs would like information related to any property that prepaid under either ELIHPA or LIHPRHA since as early as October 2006 when Plaintiffs' discovery was initially served." Pls.' Reply 2. Moreover, plaintiffs argue that defendant "flat out rejected Plaintiffs' attempt to confer about the issues." Id. at 4.

**A.**

RCFC 37 addresses the failure to make disclosures or cooperate in discovery and permits sanctions. It is virtually identical to Rule 37 of the Federal Rules of Civil Procedure ("FRCP" or "Federal Rules"), and interpretation of FRCP 37 "is persuasive" in interpreting RCFC 37.[2] Armour of Am. v. United States, 70 Fed. Cl. 240, 243 (2006); see also Zoltek Corp. v. United States, 71 Fed. Cl. 160, 167 (2006) (noting that interpretation of an identical federal rule "informs the Court's analysis" of the corresponding RCFC). RCFC 37(a)(2)(A) pertains to disclosures and provides:

> If a party fails to make a disclosure required by RCFC 26(a), any other party may move to compel disclosure and for appropriate sanctions. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action.

RCFC 37(a)(2)(A). The rule further provides:

---

[1] As discussed below, RCFC 37(a)(2)(A) also requires certification that plaintiffs have in good faith conferred or attempted to confer. The court assumes that plaintiffs' certification with respect to RCFC 37(a)(2)(B) also pertains to their request for relief under RCFC 37(a)(2)(A) based upon the phrase "these matters" contained in their certification in reference to the various issues raised in their motion. Pls.' Mot. 2.

[2] The court notes that the Federal Rules were amended on December 1, 2007, "as part of the general restyling of the Civil Rules . . . ." Fed. R. Civ. P. 37 advisory committee's note (2007 Amendment). Any changes to FRCP 37 were "intended to be stylistic only," and the court therefore relies upon authorities construing the previous version of FRCP 37.

> If a . . . corporation or other entity fails to make a designation under RCFC 30(b)(6) or 31(a), . . . the discovering party may move for an order compelling . . . a designation . . . . The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action.

RCFC 37(a)(2)(B). The requirement that the moving party's motion include a certification indicating that the movant has made a good faith effort to confer is common to both subparts of the rule. Furthermore, if the court grants the motion or the disclosure or requested discovery is provided after the motion was filed, "the court shall . . . require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion," unless (1) the motion was filed without the moving party first engaging in a good faith effort to obtain discovery without court intervention; (2) the opposing party's nondisclosure, response, or objection was substantially justified; or (3) other circumstances make an award of expenses unjust. RCFC 37(a)(4)(A).

RCFC 37, like its federal rule counterpart, does not specify a time limit for filing a motion to compel. Cabot v. United States, 35 Fed. Cl. 80, 81 (1996); see also Days Inn Worldwide, Inc. v. Sonia Invs., 237 F.R.D. 395, 396 (N.D. Tex. 2006) (noting that FRCP 37 provides no deadline for the filing of motions to compel discovery). Nonetheless, "[i]f the moving party has unduly delayed, the court may conclude that the motion is untimely." 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2285 (2d ed. 1994). Thus, courts have looked to the deadline for completion of discovery when determining the timeliness of a motion to compel. See Days Inn Worldwide, Inc., 237 F.R.D. at 396-97 (citing cases); Cabot, 35 Fed. Cl. at 81 (rejecting plaintiff's timeliness argument that the motion was brought after discovery closed based upon plaintiff's prior unwillingness to respond to defendant's requests). In the instant case, the court's October 22, 2007 Order set the close of discovery for December 7, 2007.[3] Plaintiffs filed their motion on December 7, and defendant does not challenge the timeliness of plaintiffs' motion.

"In order to succeed on a motion to compel discovery, a party must first prove that it sought discovery from its opponent." Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1310 (3d Cir. 1995). The court's October 22, 2007 Order explicitly indicated that plaintiffs were "entitled to all available information related to their case through normal discovery channels," and it is clear from their motion and accompanying exhibits that plaintiffs sought discovery from defendant. Defendant's response acknowledges that plaintiffs sought discovery, see Def.'s Resp.

---

[3] In an Order dated November 29, 2007, the court permitted defendant to depose one of plaintiffs' witnesses beginning on January 9, 2008. The court advised the parties that they should file an appropriate motion if they determine additional time is necessary to conduct discovery beyond January 10, 2008. No such motion has been filed.

10 (citing communications on November 14, 2007, and December 7, 2007, from defendant indicating that responsive documents would be produced and that some documents were provided to plaintiffs on December 20, 2007).

Instead, the parties disagree over whether plaintiffs have demonstrated a good faith effort to resolve these issues without court intervention, which is required before the court can reach the merits of plaintiffs' motion. Robinson v. Potter, 453 F.3d 990, 995 (8th Cir. 2006). As noted above, both provisions of RCFC 37 relevant here require that a motion include a certification that the movant has in good faith conferred or attempted to confer. Like its federal rule counterpart, RCFC 37 "does not set forth what must be included in the moving party's certification except to indicate that the document must declare that the movant has 'in good faith conferred or attempted to confer' . . . ." Shuffle Master, Inc. v. Progressive Games, Inc., 170 F.R.D. 166, 171 (D. Nev. 1996). The Shuffle Master, Inc. court, for example, required that a certification include, inter alia, "the names of the parties who conferred or attempted to confer, the manner by which they communicated, the dispute at issue, as well as the dates, times, and results of their discussions, if any." Id.

The certification must evidence "good faith confer[ment]." RCFC 37(a)(2)(B). Good faith "cannot be shown merely through the perfunctory parroting of statutory language on the certificate to secure court intervention; rather it mandates a genuine attempt to resolve the discovery dispute through non-judicial means." Shuffle Master, Inc., 170 F.R.D. at 171. Conferment requires that the moving party "must personally engage in two-way communication with the nonresponding party to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention." Id.

**B.**

Defendant contends that plaintiffs failed to satisfy these requirements when they transmitted "perfunctory e-mails," Def.'s Resp. 2, and relies upon Robinson, Naviant Marketing Solutions, Inc. v. Larry Tucker, Inc., 339 F.3d 180 (3d Cir. 2003), Cannon v. Cherry Hill Toyota, Inc., 190 F.R.D. 147 (D.N.J. 1999), and Shuffle Master, Inc., to support its position, Def.'s Resp. 2, 9. In Naviant Marketing Solutions, Inc., the United States Court of Appeals for the Third Circuit determined that plaintiff's counsel failed to make a good faith effort to resolve discovery disputes prior to seeking court intervention. 339 F.3d at 186. Specifically, it noted that plaintiff's counsel faxed a twenty-page letter demanding more complete answers to interrogatories and containing an ultimatum giving defendant from "the end of the day on Tuesday . . . until the end of the day Wednesday to inform [plaintiff] whether it would respond to its twenty-page list of concerns by Friday." Id. Determining that the twenty-page list of demands "may not have been reasonable and it may have been impossible . . . to comply with the timetable imposed by . . . counsel," id. at 186, the circuit court concluded that plaintiff failed to exercise a good faith attempt to resolve the issue, id. at 186-87.

In Cannon, defendant's counsel filed various motions, including a motion to compel certified answers to interrogatories and requests for admissions. 190 F.R.D. at 153-54. The Cannon court, however, never ruled on counsel's motion to compel. Id. at 153. Instead, it dismissed the motion as moot after counsel informed the court he was withdrawing it. Id. Nonetheless, the court noted that counsel "completely disregarded" the court's local rules, which required that the parties present the issue before the court via telephone conference or letter to the magistrate judge, and falsely stated that the moving party conferred with counsel prior to filing the motion. Id. The apparent conference to which counsel referred, the court noted, was a lone facsimile sent by counsel in which "he demand[ed] certified responses by the close of business [the following day], and threaten[ed] that he will file a motion to compel if he does not receive the certifications." Id. The court characterized this single facsimile as constituting a "token effort . . . made to resolve this issue . . . ." Id.

The motion to compel at issue in Shuffle Master, Inc. contained a certification stating "only that 'after personal consultation and sincere effort to do so, counsel have been unable to satisfactorily resolve this matter.'" 170 F.R.D. at 172. The court noted that the motion did not specify "who, when, or how the parties attempted to personally and meaningfully discuss the discovery dispute." Id. It also found that the motion was not made in good faith because the record indicated that various facsimiles and only one telephone communication were exchanged between the parties. Id. Determining that "[t]elecopied demand letters to opposing counsel demonstrate . . . counsel's insufficient level of sincerity," the court concluded that a series of facsimiles "do not satisfy the requirement set forth in Rule 37 that the movant in good faith confer or attempt to confer with the other party in order to secure discovery." Id.

The court finds that the circumstances described in these cases are wholly distinguishable from the instant case. Notwithstanding the Cannon court's assessment that one facsimile communication evidenced a lack of good faith, it never ruled upon the motion because it was withdrawn. Even if it had addressed the substance of the motion, the facts here indicate that several communications, rather than merely one via facsimile containing a twenty-four hour, full-compliance deadline, were made by plaintiffs. Plaintiffs' exhibits accompanying their motion demonstrate that ongoing discussions occurred between the parties prior to plaintiffs' counsel's December 5, 2007 and December 6, 2007 communications. See, e.g., Pls.' Ex. A (containing defendant's objections to RCFC 30(b)(6) deposition notices); Pls.' Ex. B (containing plaintiffs' response to defendant's objections to RCFC 30(b)(6) deposition notices and indicating that plaintiffs would seek court intervention if necessary); Pls.' Ex. G (memorializing the discussion between the parties regarding production of documents and witness testimony on the record); Pls.' Ex. K (requesting that defendant produce and bring documents to deposition). Viewing plaintiffs' December 5, 2007 and December 6, 2007 communications in light of the totality of circumstances, plaintiffs have demonstrated good faith efforts to confer with defendant such that they have satisfied their obligation under RCFC 37.[4]

---

[4] The court reaches this conclusion irrespective of plaintiffs' counsel's own statement to opposing counsel in his December 5, 2007 electronic mail communication that, "[f]or the record,

Moreover, even if plaintiffs' December 5, 2007 and December 6, 2007 communications constituted plaintiffs' only attempts to confer in good faith, they were neither akin to the communication described in Naviant Marketing Solutions, Inc. nor "perfunctory." Plaintiff's counsel in Naviant Marketing Solutions, Inc. faxed a twenty-page letter demanding confirmation the following day that more complete answers would be furnished by the end of the week. See 339 F.3d at 186. Here, plaintiffs' December 5 communication only sought answers from defendant as to whether defendant would provide witnesses and produce documents. Def.'s Ex. A. Plaintiffs' December 6 communication enumerated five categories of documents plaintiffs requested, but it ultimately sought an answer from defendant as to "whether you intend to supplement your production to provide them to us . . . [and] when you intend to produce those materials." Def.'s Ex. B (emphasis added). Defendant was not given an ultimatum to confirm that documents would be produced no later than the end of that week.

With respect to the language contained in plaintiffs' certification, the court notes that plaintiffs' certification states only that they "have attempted in good faith to confer with Government counsel to resolve these matters prior to bringing the instant motion, but that those efforts were unsuccessful." Pls.' Mot. 2. As such, it bears similarity to the Shuffle Master, Inc. certification. See 170 F.R.D. at 172. Plaintiffs' motion, however, is unlike the one before the court in Shuffle Master, Inc., wherein the court found that the motion at issue failed to describe in detail how the parties attempted to resolve the dispute. Id. That is not the case here. Plaintiffs' motion provides an in-depth discussion of the events precipitating their motion and efforts to achieve a resolution, including citations to deposition testimony and other communications between counsel, and accompanying exhibits. See Pls.' Mot. 2-9.

Lastly, plaintiffs argue that defendant "understood that Plaintiffs were contemplating moving for relief if an agreement could not be reached, . . . knew that Plaintiffs were reaching out . . .for one last time prior to moving to compel," and "could have simply picked up the phone to do so." Pls.' Reply 4. Given the frequent exchange of written communications, see, e.g., Pls.' Ex. G at 216:18-20 (noting plaintiffs' counsel's statement, made on the record during a deposition, that "[w]e previously have exchanged extensive letters regarding your objections on all of our subject matters"), and apparent acrimony between the parties, see, e.g., Def.'s Resp. 2 ("Plaintiffs here are more interested in casting aspersions than in obtaining discovery."); id. at 17 (citing "poor deposition preparation and practices by plaintiffs' attorney"); Pls.' Reply 5 n.4 ("[T]he Government had no real interest in resolving these issues short of Court intervention."); Pls.' Mot. 10 (claiming that defendant demonstrated "inadequate preparation and lack of

---

under Rule 30 [sic] of the RCFC, we have an obligation to confer with you in good faith prior to moving to compel answers. This is our attempt to do so." Def.'s Ex. A. The court also notes that plaintiffs' counsel omitted a letter from his electronic mail communication on December 5, 2007, and instead transmitted it to defendant's counsel on December 6, 2007. See Def.'s Ex. B. In the electronic mail communication accompanying the letter, plaintiffs' counsel requested that defendant's counsel reply by "noontime" on December 7, 2007, rather than by the close of business on December 6, due to this omission. Id.

diligence in investigating the facts underlying the subject matters at issue"), the court is not persuaded that defendant's failure to telephone opposing counsel is material. Defendant ultimately provided a response to plaintiffs' December 5 and December 6 communications, dated December 7, 2007, wherein defendant noted that it previously requested that plaintiffs "identify all specific document production issues to which you would like a response" and "anticipate[d] producing in the near future" specific, available documents. Def.'s Ex. D. Its response, however, was not actually sent to plaintiffs until December 10, 2007, the week after plaintiffs filed the instant motion. See Pls.' Reply Ex. A.

The court is satisfied that plaintiffs' motion complies with the requirements set forth in RCFC 37 and next addresses the substance of their motion.

## II.

### A. RCFC 30(b)(6) Witnesses

In August 2007, plaintiffs served three RCFC 30(b)(6) deposition notices on defendant. Pls.' Mot. 2; Pls.' Ex. A. According to plaintiffs, defendant indicated a belief that it would produce between four and six witnesses to testify regarding those notices. Pls.' Mot. 2. On October 12, 2007, defendant identified two RCFC 30(b)(6) designees,[5] and stated its objections to the deposition notices.[6] Pls.' Ex. A; see also Def.'s Resp. 13 (characterizing these notices as concerning "17 broad, ill-defined subject areas"). Plaintiffs' response, dated October 16, 2007, advised defendant that, absent a protective order, plaintiffs intended to question government witnesses. Pls.' Ex. B. The court conducted a status conference with the parties on October 17, 2007. In its October 22, 2007 Order, the court addressed the parties' dispute concerning the RCFC 30(b)(6) deposition notices and defendant's objections. It stated:

> Claims of privilege should be made on the record as they arise. The parties should file requests for protective orders prior to scheduled depositions. Plaintiffs are entitled to all available information related to their case through normal discovery channels. Defendant must provide appropriately knowledgeable government officials and other current or former government employees, if any,

---

[5] One of the designees, Mr. Maurice Barry, a Department of Housing and Urban Development ("HUD") employee, would "testify on subject matters concerning prepayment under the Preservation Statutes." Pls.' Ex. A. During his deposition, counsel for defendant indicated that Mr. Barry "is going to testify about all six subject areas on this Deposition Notice, but . . . subject to the objections that we've previously asserted." Pls.' Ex. F at 15:18-21.

[6] Defendant's objections included failure to conform to the requirements of RCFC 30(b)(6) with respect to deposition time limitations and overbroadness, as well as vagueness, privilege (attorney-client, attorney work product, and deliberative process), and relevance. Pls.' Ex. A.

> so that plaintiffs may obtain the information necessary to present their case to the court. Defendant's refusal to provide such officials may result in various sanctions . . . .
>
> Rules limiting depositions by hours and days are based on practical considerations that should be self-evident. Plaintiffs and defendant must conduct concise, well-organized, and economical depositions that serve the interests of both the parties and the witnesses. The parties may refer to RCFC 30(d) for resolving circumstances that create a need to extend depositions beyond one day. They may contact the court for further guidance if necessary.

Order of Oct. 22, 2007, at 1-2 (citation omitted).

Plaintiffs state that, "[d]espite [the court's] order, the Government did not alter its designation of Maurice Barry, a relatively low level HUD employee from the Boston field office, as the 30(b)(6) witness with respect to the majority of two of the three Rule 30(b)(6) notices." Pls.' Mot. 3. Plaintiffs argue that Mr. Barry "proved to be unable to provide full and authoritative testimony on all of the designated subject matters." Id. at 4. Specifically, plaintiffs maintain that Mr. Barry "testified that because he had no personal knowledge of any prepayments under ELIHPA or LIHPRHA, his testimony . . . was 'cloudy.'" Id. (quoting Pls.' Ex. F at 14:21-17:6). Plaintiffs further assert that defendant was aware that plaintiffs "were dissatisfied with the adequacy of Mr. Barry's testimony, and that in their view, the Government had not met its obligations under RCFC 30(b)(6)."[7] Pls.' Reply 4.

Without conceding these points, defendant attributes plaintiffs' dissatisfaction with Mr. Barry's deposition to plaintiffs' counsel, Def.'s Resp. 17, and responds that preparation of Mr. Barry for questioning encountered "difficulties created by the ill-defined subjects in plaintiffs' deposition notices and, moreover, the challenges of preparing any witness to testify about events that occurred between 12 and 20 years ago," id. at 13-14. Furthermore, defendant emphasizes that it objected to plaintiffs' interrogatory seeking the identity of certain projects that prepaid because it was overly broad and unduly burdensome, see Def.'s Ex. C, and noted that the information was not reasonably available, Def.'s Resp. 14. As a result, defendant "has not identified the names of those additional projects that were permitted to pay. Consequently, Mr. Barry could not and did not testify about such additional projects." Id. at 15. Additionally, defendant states that Mr. Barry's testimony "compares favorably to plaintiffs' own Rule 30(b)(6)

---

[7] The record reveals at least two occasions during the course of Mr. Barry's deposition where plaintiffs' counsel expressed dissatisfaction. See, e.g., Pls.' Ex. G at 217:9-14 ("[Y]our objections . . . do not preclude Mr. Barry from having to testify . . . . If he's not able to, because he's not prepared . . . to do so, that is fine. The record will so reflect that."); id. at 221:12-18 ("I've asked [the witness] a question about testifying on that. He tells me, unless I show him a document that you've not produced in discovery, he can't answer any questions. Exactly how is that preparing and producing a witness capable of responding to the 30(b)(6) Notice[?]").

witnesses, who testified about far fewer projects." Id. at 14. Moreover, defendant emphasizes that plaintiffs fail to describe with specificity "information that was not obtained from [Mr. Barry's] Rule 30(b)(6) deposition." Id. at 16.

Notwithstanding the parties' dispute over Mr. Barry's preparation and ability to provide adequate testimony, the excerpted deposition transcripts reveal that Mr. Barry's answers were generally responsive and that he was able to supply plaintiffs with useful information. Plaintiffs acknowledge that "each and every time Mr. Barry could not answer a question, he explained why, and directed Plaintiffs' counsel to other Government sources more likely to be able to answer the questions." Pls.' Reply 12. Nonetheless, plaintiffs argue that defendant "failed to produce a witness who could fully testify about" particular subject matters.[8] Pls.' Mot. 10.

With respect to recently produced Parc Chateau West documents, discussed below, defendant represents that it will make Mr. Barry or another witness available to testify about those documents. Def.'s Resp. 14. Plaintiffs "accept that offer," but advise the court that they seek information extending "beyond the documents themselves in the sense that Plaintiffs also seek an authoritative and binding explanation and analysis about the prepayment that was permitted." Pls.' Reply 10. They request that the court issue an order "directing the Government to properly prepare Mr. Barry as the Government's 30(b)(6) witness to testify fully with regard to the facts and circumstances surrounding the Parc Chateau West prepayment" and "directing the Government to produce either Mr. Barry or some other person capable of completing the Government's testimony on the subject matter regarding any properties permitted to prepay under the Preservation Statutes." Id. at 11.

Defendant has already agreed to produce a witness to testify about the Parc Chateau West documents. The court cannot, however, direct defendant to, on the one hand, "properly prepare Mr. Barry" as its witness concerning these documents, Pls.' Reply 11, while plaintiffs, on the other hand, object to defendant's designation of Mr. Barry, whom they characterized as a "relatively low level HUD employee from the Boston field office,"[9] Pls.' Mot. 3. Defendant ultimately determines its RCFC 30(b)(6) designee. Sprint Comm'ns Co. v. Theglobe.com, Inc., 236 F.R.D. 524, 529 (D. Kan. 2006). It is not obligated to produce an individual "with the greatest knowledge about a subject; instead, it need only produce a person with knowledge

---

[8] Specifically, plaintiffs seek a designee who is able to testify to the "identity of any properties that were permitted to prepay under ELIHPA and LIHPRHA, and all facts and circumstances related to those properties and the prepayment," Pls.' Ex. D, and HUD's "processing of prepayment and other requests" under ELIHPA and LIHPRHA for plaintiffs and properties listed in appendices accompanying plaintiffs' RCFC 30(b)(6) notice, Pls.' Ex. E.

[9] In their reply, plaintiffs state that they "do not care which individual or individuals the Government proffers as its 30(b)(6) witness(es); all that Plaintiffs ask is that the Government proffer a properly prepared witness or witnesses who can testify as to matters plainly within the scope of discovery." Pls.' Reply 13.

whose testimony will be binding" on it. Rodriguez v. Pataki, 293 F. Supp. 2d 305, 311 (S.D.N.Y.), aff'd, 293 F. Supp. 2d 315 (S.D.N.Y. 2003). Having committed itself to making a witness available, defendant must designate an individual or individuals who "shall testify as to matters known or reasonably available to the organization," RCFC 30(b)(6) (emphasis added), and ensure that any witness it tenders is prepared to discuss information that is reasonably available to HUD about Parc Chateau West, the identity of and information about other properties allegedly permitted to prepay, and the processing of plaintiffs' properties under ELIHPA and LIHPRHA.

With respect to HUD's processing of plaintiffs' properties under ELIHPA and LIHPRHA, defendant argues that Mr. Barry "gave literally hours of testimony on this very subject." Def.'s Resp. 15. Moreover, defendant argues that processing delays under ELIHPA "are simply not at issue in this action." Id. at 16. Nonetheless, the court agrees with plaintiffs that they are entitled to discovery in this area, particularly since it furthers their "attempt to discover or understand what happened as a matter of fact in [this] case." Pls.' Reply 11; accord id. at 11-12 ("Plaintiffs['] questions about processing were simply asked so as to better understand what occurred and why. No more and no less."). While plaintiffs state that at least one witness can address "processing for the projects related to North Carolina," id. at 12, defendant states that plaintiffs "chose to voluntar[ily] cancel the deposition of an additional HUD employee who handled preservation processing in the Midwest," Def.'s Resp. 9. Notwithstanding the diverse geographic distribution of the various properties at issue and possible witnesses who might be able to discuss processing of only one property at a time, defendant shall determine how HUD can respond to plaintiffs' inquiry in the most efficient and expeditious manner and designate a witness or witnesses accordingly.

To summarize, plaintiffs are entitled to question HUD about the recently produced Parc Chateau West documents, as well as additional information known or reasonably available to HUD about Parc Chateau West, the identity of and information about other properties allegedly permitted to prepay, and the processing of plaintiffs' properties under ELIHPA and LIHPRHA.

**B. Production of Documents**

Plaintiffs also seek an order compelling defendant to produce documents related to properties whose owners were allegedly permitted to prepay the subject mortgage under ELIHPA and/or LIHPRHA. Pls.' Mot. 2. Some of these documents include those related to Parc Chateau West, which were addressed during Mr. Barry's deposition on November 14, 2006. During Mr. Barry's deposition, defendant indicated that, "[i]f there are any documents that we have that have not been produced that are responsive to a discovery request, we will look into it, and we will make sure they are produced." Pls.' Ex. G at 222:16-20. On November 15, 2007, plaintiffs requested that defendant bring copies of those documents to another deposition scheduled for November 16, 2007. Pls.' Ex. K. Defendant did not produce the documents on that date. Pls.' Mot. 8. Defendant's December 7, 2007 letter to plaintiffs indicated that "those available documents" related to Parc Chateau West would be produced "in the near future," Def.'s Ex. D,

and defendant produced "various documents" to plaintiffs on December 20, 2007, Def.'s Ex. E; see also Pls.' Reply 7 (indicating that defendant delivered some documents on December 20, 2007). Because it produced these materials, defendant maintains that plaintiffs' motion should be denied as moot.

Plaintiffs maintain that their motion is not moot. Pls.' Reply 7. They argue that defendant was aware of the existence of these documents "as early as June or July of 2007, and possessed accessible documents relevant to the property somewhere in the Government's files,"[10] Pls.' Mot. 9, and that there are "serious questions about exactly what documents the government possesses concerning not only Parc Chateau West, but any other properties that allegedly were permitted to prepay their mortgages under ELIHPA or LIHPRHA, the extent and number of those documents, and what happened to any missing or destroyed records such as those [one witness] was unable to locate in June or July of 2007." Id.; see also Pls.' Reply 7 (noting that plaintiffs seek "information about the fate of the Parc Chateau documents that we know once existed, but that are apparently no longer available for production").

In their First Request for Production of Documents, plaintiffs requested "all documents . . . describing, discussing, mentioning, relating to or concerning the ability of an owner to prepay a Government insured mortgage on any insured property pursuant to the Preservation Statutes." Pls.' Ex. L. Plaintiffs also requested that, "[f]or each document responsive to these requests that is known to have existed, but that cannot be located, or has been destroyed or discarded," defendant "identify the author(s), the date, the recipient(s)[,] and summarize the content." Id. Plaintiffs argue that defendant has not explained missing documents and what happened to specific documents witnesses testified at one point existed. Pls.' Mot. 12. Instead, plaintiffs maintain that defendant has provided only "blanket conclusory assertions," not actual facts, indicating that requested documents are not reasonably available. Pls.' Reply 9. Plaintiffs request that, "to the extent that it becomes clear that the information sought is not in fact reasonably available to the Government, the Government should be required to support that assertion by sharing openly and in detail what was done to search for the requested information." Id. at 10.

Defendant counters that plaintiffs' request is unduly burdensome and "reflects a fundamental misunderstanding of the ripeness inquiry." Def.'s Resp. 10. Defendant states that it has employed "diligent efforts . . . to identify the specific projects that prepaid pursuant to the Preservation Statutes." Id. at 12. It emphasizes that no database or "other unified source" containing the names of the projects that received approval of plans of action to prepay can be ascertained, id., and it has been unable to ascertain the names of those other projects, id. at 13. It has, defendant asserts, "taken reasonable steps to identify the names of projects" permitted to

---

[10] Specifically, plaintiffs allege that, because defendant knew about the Parc Chateau West project "as early as June or July of 2007," defendant "sandbagged the Plaintiffs" by withholding this information until November 2, 2007, Pls.' Reply 2 & n.1, the date on which defendant served a supplemental interrogatory response, Pls.' Mot. 5 n.3.

prepay. Id. at 15. Moreover, due to the passage of time, defendant notes that "few current HUD employees were involved in preservation processing[,] and still fewer recall specific details about projects they handled." Id. at 12. Additionally, HUD apparently maintains a six-year document retention and preservation policy,[11] and documents concerning projects that prepaid "left the HUD inventory before March 1996, i.e., at least 12 years ago."[12] Id. at 13 n.9.

The court finds that plaintiffs' motion is not moot and that their request, to the extent that it seeks an explanation from defendant as to the efforts it has employed to determine that certain materials are not reasonably available, is not unduly burdensome. Although HUD's document retention policy is six years for "most documents," id., the agency has not stated that all documents were destroyed. If HUD archived documents responsive to plaintiffs' requests, then the agency must search that repository. Additionally, plaintiffs clarified the extent to which they seek records: "the Government need only search . . . documents related to a much smaller number of properties - i.e., those in Indiana related to Parc Chateau West, those in St. Louis, and those in Madison, Wisconsin." Pls.' Reply 9-10. Furthermore, plaintiffs emphasize that, within that universe of documents, defendant "can eliminate from consideration any ELIHPA or LIHPRHA eligible properties that were sold pursuant to the Preservations Statutes, or that were granted incentives, etc." Id. at 10 n.9. These requests are not unreasonable.

As the court stated in its October 22, 2007 Order, plaintiffs "are entitled to all available information related to their case through normal discovery channels." Plaintiffs requested, and are entitled to obtain, information concerning what responsive documents may have existed but are no longer extant relating to properties that were allegedly permitted to prepay under ELIHPA and/or LIHPRHA. See Pls.' Ex. L. Defendant has, to some degree, already provided this information to plaintiffs. See Def.'s Ex. E (detailing renewed attempts to obtain information without success, citing absence of a HUD database from which certain information can be obtained, and representing that "our efforts are nevertheless continuing"); see also Pls.' Ex. G at 222:16-20 (acknowledging, during Mr. Barry's November 14, 2007 deposition, that"[i]f there are any documents that we have that have not been produced that are responsive to a discovery request, we will look into it, and we will make sure they are produced"). Notwithstanding HUD's document retention and preservation policy, defendant should be able to explain that policy in greater depth, along with the good faith efforts it has employed and continues to employ in order to "look into" finding additional responsive information, even if those documents are no longer reasonably available. Plaintiffs recognize that "if information is not reasonably available

---

[11] According to defendant, "HUD policy provides that most documents should be discarded after six years." Def.'s Resp. 13 n.9 (emphasis added). This policy statement, however, begs the question as to what pertinent documents remain and should be provided to plaintiffs.

[12] Plaintiffs argue that if responsive documents no longer exist for properties that are not plaintiffs in this litigation, a litigation hold should have preserved those documents. Pls.' Reply 10.

to the Government[,] it cannot be produced to Plaintiffs," Pls.' Reply 9, and defendant shall not be overly burdened attempting to obtain information that simply does not exist.

Plaintiffs' motion to compel the production of documents related to the properties that were allegedly permitted to prepay under ELIHPA and/or LIHPRHA is granted to the extent those documents are extant and subject to the small universe of documents described in plaintiffs' reply. Therefore, defendant shall employ reasonable methods to identify and produce responsive materials related to Parc Chateau West, as well as ELIHPA or LIHPRHA eligible properties in St. Louis, Missouri and Madison, Wisconsin "that were [not] sold pursuant to the Preservations Statutes, or that were granted incentives, etc." Id. at 10 n.9. Additionally, it shall supplement its position that certain materials are not reasonably available by providing to plaintiffs an explanation detailing how it has made those determinations. To the extent that those materials no longer exist, defendant shall provide as much of the information about those materials that is reasonably available, as set forth in plaintiffs' First Request for Production of Documents.

## III.

As discussed above, RCFC 37(a)(4)(A) authorizes payment of reasonable expenses incurred in making a motion to compel if plaintiffs' motion is granted or disclosure or requested discovery is provided after their motion was filed. The court is not required to impose sanctions if it finds that the motion was filed without plaintiffs first engaging in a good faith effort to obtain discovery without court intervention, defendant's nondisclosure, response, or objection was substantially justified, or other circumstances make an award of expenses unjust. It is clear that defendant produced various Parc Chateau West documents after plaintiffs filed the instant motion, though it is apparent that defendant indicated its intent to do so much earlier. Additionally, defendant has offered to make a witness available to answer questions pertaining to those documents, though such an offer occurred after plaintiffs filed the instant motion.

Given defendant's explanation as to the difficulties it has encountered in obtaining and producing the materials plaintiffs request and assurances to plaintiffs that it would continue looking for and producing responsive documents, the court is not persuaded that defendant's conduct justifies the imposition of sanctions at this time. See Dairyland Power Coop. v. United States, 79 Fed. Cl. 709, 714-15 (2007) (noting, in awarding fees and costs incurred to partially reopen RCFC 30(b)(6) deposition, that courts have held that sanctions are a "most severe penalty" authorized only in "extreme circumstances"). Nevertheless, defendant shall continue its efforts to locate and produce responsive documents and offer knowledgeable witnesses who can testify to the matters discussed above. Defendant shall not deprive plaintiffs of an opportunity to complete their discovery or prevent this case from moving forward, and shall engage in a good faith effort to furnish requested materials that are responsive and would potentially lead to relevant evidence. Plaintiffs' need for discovery, however, is not boundless, and some materials they seek may simply not be reasonably ascertainable or extant.

The court therefore denies plaintiffs' request for sanctions. However, defendant is cautioned that its refusal to permit plaintiffs access to "available information related to their case through normal discovery channels" can result in sanctions in the future. Order of October 22, 2007. Given that the deadline for discovery has passed, the parties shall cooperate to conclude discovery as expeditiously as possible. To that end, plaintiffs shall assist defendant by, to the extent possible, narrowing the scope of and/or defining with specificity the remainder of information sought, see Def.'s Ex. D (reiterating, in December 7, 2007 letter from defendant's counsel to plaintiffs' counsel, defendant's request that plaintiffs identify specific document production issues and alleged omissions from defendant's production); Pls.' Reply 9-10 & n.9 (narrowing document request to specific properties), such that defendant may locate responsive documents or information about documents no longer in existence, as well as identify and prepare prospective witnesses to testify about the matters enumerated above.

## Conclusion

Plaintiffs' Motion to Compel Defendant to Answer Questions and to Produce Certain Documents is **GRANTED IN PART** and **DENIED IN PART**. The parties shall confer and determine dates for a further deposition or depositions as well as deadlines for exchanging information about the documents plaintiffs seek from defendant. They shall file a joint status report indicating their agreed upon schedule for concluding these outstanding issues no later than **March 7, 2008.**

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge