NIXON PEABODY LLP
ATTORNEYS AT LAW

401 9th Street N.W.
Suite 900
Washington, DC 20004-2128
(202) 585-8000
Fax: (202) 585-8080

Harry J. Kelly
Direct Dial: (202) 585-8713
E-Mail: hkelly@nixonpeabody.com

March 26, 2008

**VIA E-MAIL/U.S. POSTAL SERVICE**

Mr. David Harrington
Commercial Litigation Branch, Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, NW, Room 12136
Washington, DC 20530

**Re: Anaheim/Algonquin Litigation**
**-- Scope of Remaining Depositions**

Dear David:

This letter is to follow-up of our conversation yesterday regarding the outstanding issues related to the scope of the upcoming continued 30(b)(6) depositions of the Government.

First, with regard to processing of the Massachusetts properties, we believe that under the Court's order we are entitled to additional testimony from a Government witness about these properties, as stated in my March 21 letter. However, given your concerns, we have been able to limit the scope of the testimony we seek about these properties to several topic areas. We expect that this narrowing should alleviate the need for you to prepare a witness to testify about the precise details surrounding the actual processing of each of the Massachusetts properties. The subject matters we want to inquire about as they relate to the Massachusetts properties include:

1. Secondary financing of the properties

2. Rent stabilization (Brookline and Boston)

3. The calculation of the prepayment eligibility dates for Massachusetts properties where there was no final endorsement by HUD.

If you review Maurice Barry's deposition testimony, you will see that he was asked several times, and in several ways about each of these subject matters, but was unable to provide

definitive agency responses. I think it is fair to ask Mr. Barry, or another Government witness, to address this limited list of subjects.

As we discussed yesterday, we believe that the two Cambridge Square Grand Rapids properties are well within the scope of the Court's order and that we are entitled to additional inquiry about them in the upcoming depositions. Further, we do not believe that including these two properties places a significant additional burden on the Government in terms of witness preparation. Much of HUD's processing of the thirteen Cambridge Square/Carriage House properties was done in groups, and in particular, these two properties were processed together since they are a phase I-phase II situation. In that regard, you may want to review the Government's depositions of Dean Donnelson, Cambridge Square/Carriage House's 30(b)(6) witness, which were able to efficiently cover several of the Cambridge Square/Carriage House properties together in a summary manner. Accordingly, the Government should provide a witness to testify about all thirteen of the Cambridge Square/Carriage House properties, including specifically, the two Cambridge Square Grand Rapids properties.

During our conversation yesterday, you mentioned your concerns about the "depth" of our examination. As I explained in my March 21 letter, we cannot agree to blanket restrictions in advance on the scope of our questions. We should be permitted to ask questions about all relevant aspects of the plaintiffs' processing history. Nevertheless, our inquiries are not boundless. I believe that the transcript of Maurice Barry's deposition, as well as a review of the government's depositions of the plaintiffs for these properties, will give you a sense of the sort of questions that we will be asking with respect to the remaining properties.

Finally, both Alycia Ziarno and I reviewed our notes from our prior calls and the text of the Joint Status Report, and neither of us has any record reflecting a further specification of a list of properties for the offices at issue for the document policy and practice depositions. It may be that you are thinking about our initial discussions when we narrowed the scope of the offices we sought information about based on which properties were processed by which offices. However, the questions for the document policy and practice depositions will not necessarily be property-specific. Rather, the questions will be focused on the local offices' practices as a whole. Actually, until we conduct the depositions, it is impossible for us to determine whether a specific office applied the same document retention policies and practices to all of its properties, or whether there were some specific differences in the office's handling of its properties' documents. If based on what you know about how these offices handled documents, you believe that we will need to ask about each property specifically or that there were in fact some property-specific differences in the way in which documents were handled, please let us know.

Sincerely,

Harry J. Kelly

10958038.1