**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ANAHEIM GARDENS, et al., Plaintiffs, v. THE UNITED STATES, Defendant. | ) | No. 93-655C (Judge Margaret M. Sweeney) |
| ALGONQUIN HEIGHTS, et al., Plaintiffs, v. THE UNITED STATES, Defendant. | ) | No. 97-582C (Judge Margaret M. Sweeney) |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR AN EXPEDITED <u>STATUS CONFERENCE</u>**

This Court's February 29, 2008 Ruling on Plaintiff's Motion to Compel Defendant to Answer Questions and To Produce Certain Documents ("Feb. 29th Order"), is not "vague" and does not create "problems" in determining the scope of the discovery that Plaintiffs are entitled to pursuant to the Order, as the documents supporting the Government's "Motion for An Expedited Status Conference" (the "Motion") contends. <u>See</u> Ex. A to Motion. To the contrary, the Court's Feb. 29th Order is clear and unambiguous: it directs the Government in plain

language to produce a witness or witnesses who can testify about the processing of Plaintiffs' properties under ELIHPA and LIHPRHA. There is nothing vague about that direction, and despite the Government's attempt to do so, there is no reason to reconsider the Feb. 29 Order.[2]

This is at least the third attempt by the Government to frustrate the Plaintiffs' ability to obtain discovery and, as in the past, it must be rejected. Plaintiffs are disappointed and truly regret that the Government's repeated obstructive behavior again places them in the position of expending significant resources to defend their right to obtain discovery – a right that both this Court and Judge Hodges have unequivocally confirmed on multiple occasions.[3] The Government's latest gambit should be rejected because, in fact, the Plaintiffs are manifestly entitled to the discovery they seek pursuant to RCFC 30, the Feb. 29 Order, and because the Plaintiffs have repeatedly offered to narrow the scope of the further depositions as the Court requested.

**The Scope of the Feb. 29 Order**

Plaintiffs moved on December 7, 2007 to compel the Government to produce a witness or witnesses capable of fully testifying about several subjects, expressly including "HUD's processing of prepayment and other requests under ELIHPA and/or LIHPRHA for the Plaintiffs and the subject properties" listed in two exhibits attached to the relevant Rule 30(b)(6) deposition notice. Plaintiffs did not place any geographical or property specific limitation on that request

[2] Although styled as a "Motion for Expedited Status Conference To Address the Scope of Discovery Pursuant to The Court's February 29, 2008 Order," the Government's Motion is akin to a motion for a protective order – an order it has no right to seek in the current procedural posture of this case. Alternatively, the Motion could be fairly characterized as a motion for reconsideration or for clarification of this Court's Feb. 29th Order (See Defendant's Motion for Expedited Status Conference at 7 (". . . the United States respectfully requests that the Court . . . clarify the scope of deposition discovery that is to be conducted pursuant to the Court's February 29, 2008 order.")). In either case, the Motion is not proper and the Government makes no effort to comply with this Court's rules for bringing such motions.

[3] As this Court knows, Judge Hodges previously instructed the Government to produce knowledgeable current and/or former Government employees to answer Plaintiffs' questions.

for relief. In other words, Plaintiffs did not move to compel a witness to testify only about certain properties, or to only answer certain specific questions.

When it granted Plaintiffs' motion in its Feb. 29th Order, the Court understood what the Plaintiffs were seeking and did not impose any such limitation. At the outset, the Court recognized that "[i]n their motion, plaintiffs seek . . . an order compelling defendant to produce a witness or witnesses who can fully testify regarding . . . (b) the processing of plaintiffs' properties under these statutes." Feb. 29th Order at 1. It reiterated Judge Hodges' order of October 2007 that plaintiffs should receive "all available information related to their case through normal discovery channels." *Id.* at 7. Concerning "HUD's processing of plaintiffs' properties under ELIPHA and LIHPRHA," the Court stated that it agreed "with plaintiffs that they are entitled to discovery in this area." *Id.* at 10 (internal citations omitted). Specifically, this Court concluded that ". . . plaintiffs are entitled to question HUD about . . . the processing of plaintiffs' properties under ELIHPA and LIHPRHA." Feb. 29th Order at 10. Nothing in the Order suggested any restriction on the scope of the plaintiffs' ability to inquire concerning the processing of their properties applications under ELIPHA and LIHPRHA.

Nonetheless, the Government has decided to unilaterally read into the Court's plain and clear direction, a limitation on the scope of these required depositions and number of properties that Plaintiffs are entitled to ask about. The Government does this by focusing on the examples Plaintiffs' cited in their motion and claiming that those examples were implicit limitations on the scope of the relief requested. However, the examples cited were just that – examples – and were not limitations on the scope of the requested discovery. Nor were the examples used the only instances in which Mr. Barry was unable to fully answer Plaintiffs question. To accept the Government's argument, is to impermissibly permit the Government to rewrite Plaintiffs'

motion, and this Court's order. Indeed, the Government is not attempting to clarify the Feb. 29th Order, because it is not clarity that it truly seeks. Rather, the Government does not agree with the Feb 29th Order, and it now seeks to reargue the issues and rewrite that order to deny the Plaintiffs the discovery this Court has repeatedly ordered.

**The Plaintiffs' Attempt To Narrow**
**The Scope of Their Depositions To Avoid Dispute**

Plaintiffs recognize that this Court, through its Feb. 29th Order, urged the Plaintiffs to focus the remaining discovery obligations. Specifically, the Court instructed Plaintiffs to "assist defendant by, to the extent possible, narrowing the scope of and/or defining with specificity the remainder of information sought." Feb. 29th Order at 14 (emphasis added). Notwithstanding the broad authorization contained in the Feb. 29 Order to obtain discovery generally on processing matters, the Plaintiffs have significantly and repeatedly attempted to narrow the scope of the depositions so as to avoid both imposing undue burden on the Government and involving the Court in discovery again. Nonetheless, despite those attempts to accommodate the Government and two Court orders directing the Government to produce information, the Government has rebuffed these efforts by resolutely refusing to provide the discovery requested.

It was clear from the outset that the parties had different views concerning the scope of the depositions permitted by the Feb. 29th Order. As stated above, in the initial discussions

---

9 Accordingly, the Government's attempt in its motion to make it appear as if Plaintiffs' intentionally avoided responding sooner is misplaced and not well taken.

concerning the processing depositions, the Government contended that the Plaintiffs were allowed to inquire about only a handful of properties mentioned in the course of Mr. Barry's depositions, but grudgingly agreed that it would permit the Plaintiffs to inquire about the remaining Thetford properties and the Cambridge Square/Carriage House properties that were handled by HUD's Indianapolis office. The Government's position is summarized in a letter to Plaintiffs' counsel dated March 6, 2008. See Exhibit A to Motion. Thereafter, the parties were able to resolve a number of other issues concerning the remaining discovery ordered by this Court. However, the JSR also notified the Court that the parties were continuing to discuss the scope of the depositions concerning HUD's administrative processing, and that the Plaintiffs would respond to the Government's March 6 letter on March 21, 2008. See Dkt. #197, 85 JSR at 3, fn. 3.[9]

In their March 21, 2008 letter to the Government's counsel (Ex. B to Motion), Plaintiffs explained their position that the Feb. 29th Order did not, as the Government contended, limit the scope of testimony about processing only to those properties that were the subject of Mr. Barry's prior testimony. Nevertheless, mindful of the Court's direction, the Plaintiffs indicated that they would voluntarily limit the number of properties for which they would seek testimony. In addition to the Thetford properties and the Indiana Cambridge Square/Carriage House properties to which the Government had already agreed, the only additional inquiry Plaintiffs proposed related to two Cambridge Square/Carriage House properties processed by HUD's Grand Rapids office, and ten properties processed by its Massachusetts office – a total of 12 more properties. The Plaintiffs pointed out that the Cambridge Square/Carriage House properties were "block filed" and processed in groups, which would make preparation of knowledgeable witnesses relatively easy. Plaintiffs also committed to provide a streamlined list of the Massachusetts

properties about which they would inquire by April 7 or sooner, if required by the Government's schedule. Exhibit B to Motion at 2.

The parties conferred on March 25, 2008. Among other things, the Government again objected to "open-ended" inquiries concerning the Massachusetts properties. Thus, Plaintiffs offered a further limitation on the scope of discovery: they offered to limit the inquiry related to the Massachusetts properties to three distinct processing subjects, including (1) secondary financing related to the Boston properties; (2) rent stabilization laws that affected three properties located in Boston and Brookline, Massachusetts; and (3) the calculation of the prepayment eligibility dates for the Massachusetts properties for which there was no final endorsement of the mortgage by HUD.

Plaintiffs offered this further concession so that they could obtain the discovery they needed while complying with the admonition in the Feb. 29th Order to assist the Government by narrowing the scope of remaining discovery. Contrary to the Government's contentions, discovery concerning secondary financing in Massachusetts and the impact of any rent stabilization laws is directly pertinent to HUD's processing. Those issues affected the valuation of the Plaintiffs' properties, which was a key component in the preservation process under both ELIHPA and LIHPRHA.

Moreover, testimony concerning the prepayment eligibility dates for the Massachusetts properties has taken on more significance recently, insofar as the Court directed the Plaintiffs to file further responses to the Government's interrogatories concerning when their claims became ripe. Unlike most of the other Plaintiffs, many of the Massachusetts properties were financed by a state agency; and because HUD did not insure those mortgages, there is no "final endorsement date" to be used to determine prepayment eligibility. Because the eligibility dates are central to

determining the date of ripeness to respond to the Government's interrogatories it is critical for the Plaintiffs to know HUD's views concerning when these properties became eligible to prepay. If the Plaintiffs are required to supply the date their claims became ripe, they should not be prevented from asking the Government to state its position about when the Massachusetts properties could prepay their mortgages. The Plaintiffs are not seeking the "reopen" discovery as the Government contends, but rather are attempting in good faith to limit their inquiries.

Shortly before it filed the present Motion, the Government's counsel contacted Plaintiffs' counsel, to propose that it would agree to permit deposition testimony on all of the Thetford properties and all of the Cambridge Square/Carriage House properties, if the Plaintiffs would agree to eliminate the Massachusetts properties entirely. In light of the issues discussed above, Plaintiffs' counsel responded that it could not agree to that limitation, and, literally moments later, the Motion was filed.

Notwithstanding the filing of the Motion, the Plaintiffs made one last attempt to satisfy the Government's concerns by proposing to eliminate depositions concerning the Massachusetts prepayment eligibility dates if the Government would enter into a stipulation. Letter to David Harrington from Harry Kelly dated April 4, 2008, Exhibit A attached hereto. Specifically, Plaintiffs explained that if the Government would stipulate to the eligibility dates for the Massachusetts properties – a fact that the Government should be able to ascertain with limited effort and definitive certainty – then the Plaintiffs would have no need to depose witnesses about that subject matter, thus further narrowing the scope of the required depositions. While it agreed to consider such a stipulation in general, the Government rejected any such quid pro quo as a way to resolve the pending dispute. See Letter from David Harrington dated April 4, 2008, Exhibit B hereto.

Based on the foregoing, it is clear that Plaintiffs have complied with this Court's order that it work with the Government to narrow the scope of further depositions about the processing of the Plaintiffs' properties under ELIHPA and LIHPRHA. However, the Government has rebuffed every attempt to reach a reasonable cooperative resolution. The time has come for the Government to stop causing unnecessary and excessive expenditure of Plaintiffs' resources on collateral issues that do nothing but distract from the central issues of the case. Consequently, Plaintiffs respectfully request that this Court, once again, order the Government to comply with its discovery obligations and produce a witness or witnesses to testify about the processing of Plaintiffs' properties under ELIHPA and LIHPRHA.

Dated: April 9, 2008

NIXON PEABODY LLP

/s/ Harry J. Kelly

Harry J. Kelly
401 9th Street N.W., Suite 900
Washington, D.C. 20004
P: (202) 585-8000
F: (202) 585-8080
hkelly@nixonpeabody.com

Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

I certify that on the 8th day of April 2008, a copy of Plaintiffs' Response To Defendant's Motion for An Expedited Status Conference was filed electronically. I understand that notice of the filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Harry J. Kelly

NIXON PEABODY LLP
ATTORNEYS AT LAW

**EXHIBIT A**

401 9th Street N.W.
Suite 900
Washington, DC 20004-2128
(202) 585-8000
Fax: (202) 585-8080

Harry J. Kelly
Direct Dial: (202) 585-8713
E-Mail: hkelly@nixonpeabody.com

April 4, 2008

**VIA E-MAIL AND U.S. POSTAL SERVICE**

David Harrington, Esq.
Commercial Litigation Branch, Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, NW, Room 12136
Washington, DC 20530

**Re: Anaheim/Algonquin Litigation**
**-- Prepayment Eligibility Dates for Massachusetts Properties**

Dear David:

As we discussed on Wednesday and pursuant to the letter I sent yesterday, we hope to eliminate the need to involve the Court in making a determination concerning the number and scope of the depositions to be taken by the Plaintiffs pursuant to the Court's Ruling On Plaintiffs' Motion to Compel Defendant To Answer Questions And To Produce Certain Documents (the "Order"). In an effort to do so, we are supplying a list of the 20-year prepayment eligibility dates for the Massachusetts properties in the above-referenced litigation based on our records. It is my hope that the Government will stipulate to these dates. If so, we can eliminate the need for deposition testimony on these matters which I hope will allow the parties to agree to proceed with depositions pursuant to the Order, without need for a status conference. A detailed proposal is set forth below.

As we discussed, there are ten (10) plaintiff properties in Massachusetts that were not HUD-insured, so they do not have the typical final endorsement date from which prepayment eligibility is routinely calculated. With respect to these properties, we believe the appropriate date to measure the 20-year eligibility date is the date of the final mortgage. Those dates are set forth below for the ten (10) plaintiff properties processed by the Boston office, as follows:

**EXHIBIT A**



| | |
|---|---|
| Algonquin Heights | February 23, 1992 |
| Brandy Hill | April 26, 1992 |
| Cromwell Court | June 15, 1992 |
| Fort Heath, | October 22, 1991 |
| Riverside Village, | September 1, 1991 |
| Chauncy House | October 14, 1995 |
| Church Park Apartments | February 11, 1991 |
| Pine Crest | March 23, 1993 |
| 1550 Beacon Street | December 19, 1992 |
| 100 Centre Plaza | July 1, 1990 |

To summarize, our proposal is as follows:

1. The parties will stipulate that the dates listed above are the 20-year prepayment eligibility dates for the subject properties, for all purposes related to these litigations.
2. The parties agree that the Plaintiffs may proceed with depositions pursuant to the Order with respect to the preservation processing of the following properties:
   a. The Thetford properties
   b. The Cambridge Square and Carriage House properties processed by the Indianapolis office
   c. The Cambridge Square and Carriage House properties processed by the Grand Rapids office
   d. The properties processed by the Boston office, but solely with respect to issues related to (i) rent control or stabilization laws affecting those properties and (ii) secondary financing of those properties.
3. The Government will withdraw its Motion For Expedited Status Conference To Address The Scope of Discovery Pursuant To The Court's February 29, 2008 Order.

The Government has already agreed to allow the Plaintiffs to take the depositions listed in paragraph 2(a) – (c), and we hope that by eliminating the need for testimony on eligibility dates, you will agree to depositions concerning the narrow Massachusetts-related topics listed in paragraph 2(d). I believe the Court will appreciate it if we can resolve this matter without a status conference. If these terms are acceptable to you, please let me know as soon as possible, so that we can promptly notify the Court that the parties have resolved this matter. Please let me know if you have any questions.

Very truly yours,

Harry J. Kelly

cc: Alycia Ziarno, Esq.

10969323.1

**U.S. Department of Justice** **EXHIBIT B**

Civil Division

JED:BMS:DHarrington
DJ No. 154-93-655 & 154-97-582

Telephone: (202) 616-0465
Facsimile: (202) 305-7644

*Washington, D.C. 20530*

April 4, 2008

*Via E-Mail & U.S. Mail*

Harry J. Kelly, Esq.
Nixon Peabody LLP
401 Ninth St., N.W.
Suite 900
Washington, D.C. 20004

Re: *Anaheim Gardens, et al. v. United States*, No. 93-655C (Fed. Cl.);
*Algonquin Heights, et al. v. United States*, No. 97-582C (Fed. Cl.).

Dear Mr. Kelly:

I have reviewed your letter of April 4, 2008. You mistakenly state that the United States has agreed to produce a witness to testify "about the Cambridge Square and Carriage House properties processed by the Grand Rapids office." Letter from Harry Kelly to David A. Harrington at 2 (Apr. 4, 2008). The United States' position regarding such depositions was stated in my March 6, 2008 letter and explained once again in our motion for status conference. Our position has not changed.

We will research the eligibility dates for the non-insured projects mentioned in your letter. When that research is completed, we will inform you whether we agree or disagree with your eligibility dates. Regrettably, given that you continue to seek depositions about projects in Boston and Grand Rapids, we do not anticipate that an agreement regarding eligibility dates would obviate the need for a status conference with Judge Sweeney.

Very truly yours,

David A. Harrington
Trial Attorney
Commercial Litigation Branch