**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ANAHEIM GARDENS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 93-655C |
| v. | ) | (Judge Margaret M. Sweeney) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## INTRODUCTION

Plaintiffs allege that the Low Income Housing Preservation and Resident Homeownership Act of 1990 ("LIHPRHA") effected a taking of their contractual right to prepay the federally-insured mortgage on their respective properties. The mortgage documents of four properties in this action contain no contractual right to prepay. Consequently, the taking claims relating to these properties must fail and the Court should grant this motion for partial summary judgment.[1]

## STATEMENT OF THE ISSUE

Whether the owners of Milwood Apartments, Parthenia Manor Apartments, Market North II Apartments, and 100 Center Plaza possessed a contractual right to prepay their HUD-insured mortgages that could be taken by LIHPRHA.

---

[1] On June 4, 2008, the Court directed the parties to file summary judgment motions on ripeness on or before September 22, 2008. Order of Judge Sweeney at 1 (June 4, 2008). The United States will file a separate motion addressing the issue of ripeness in accordance with the Court's order.

## STATEMENT OF THE CASE

### I. Nature of the Case

Plaintiffs own housing projects that were developed using loans insured by the United States under housing programs administered by the Department of Housing and Urban Development ("HUD"). In 1993, plaintiffs sued the United States alleging that LIHPRHA effected an as-applied, regulatory taking of the "contract right to prepay" their Government-insured loans. Fourth Am. Compl. ¶¶ 80-81. Plaintiffs seek compensation pursuant to the Takings Clause of the Fifth Amendment. Id. ¶ 81.

### II. Statement of Facts

#### A. The Section 221(d)(3) And Section 236 Programs

Modern national housing policy began in the New Deal era with the passage of the National Housing Act of 1934. Initially, the Government provided low-income housing by subsidizing projects that were developed, owned, and managed by local public housing authorities. During the 1960's, to encourage private developers to construct, own, and manage low- and moderate-income housing, Congress enacted two programs – the section 221(d)(3) program and the section 236 program – that authorized the Federal Housing Administration, and later HUD, to provide mortgage insurance and other financial incentives.[2] See generally Cienega Gardens v. United States, 331 F.3d 1319, 1234 (Fed. Cir. 2003).

[2] Before 1968, developers received below-market mortgage interest rates through the section 221(d)(3) program. 12 U.S.C. § 1715l(d)(3). Developers subsequently received market-rate mortgages with an interest subsidy through the Section 236 program. 12 U.S.C. § 1715z-1.

Generally, when obtaining a HUD-insured mortgage to develop a project under the section 221(d)(3) and 236 programs, the owner executed a deed of trust note payable to a private lending institution. The note evidenced a loan made pursuant to an agreement between the owner and the lending institution. Payment of the indebtedness was secured by a deed of trust on the subject property. The repayment term of the loan was generally forty years and the note specified the terms on which prepayment of the loan could occur.[3] Id. at 1324.

To obtain Federal mortgage insurance, as well as other taxpayer-funded benefits, the developer entered into a "regulatory agreement" with HUD in which the owner accepted specific restrictions on the mortgaged property, including restrictions on tenant income, allowable rental rates, and cash distributions from project income. The regulatory agreement remained in force as long as the property was subject to the Government-insured mortgage. Thus, by prepaying the outstanding loan, the owner would end affordability restrictions in the property's regulatory agreement. Id. at 1234-35.

**B. The Mortgage Documents For Four Projects In This Action Contain No Right To Prepay**

**1. Milwood Apartments (FHA No. 122-35130)**

The owners of Milwood Apartments, Joseph R. Biafora and Stephi Biafora, executed a deed of trust, a deed of trust note, and a regulatory agreement on January 4, 1971. DA1-11. The loan evidenced by the deed of trust note was provided by Wells Fargo Bank, N.A., and has a

[3] Prepayment was also limited by Federal regulations, which prohibited prepayment of the insured debt without HUD approval for 20 years after final endorsement of the project's mortgage insurance. See, e.g., 24 C.F.R. § 221.524(a) (1970). The regulations governing prepayment were subject to amendment by HUD. See, e.g., 24 C.F.R. § 221.749 (1970).

final maturity date of December 1, 2011. DA1 The final endorsement for Federal mortgage insurance was provided by HUD on January 13, 1972. DA2.

Rider A to the deed of trust note concerns prepayment of the insured debt. DA4. The rider states that "[t]he debt evidenced by this Deed of Trust Note may not be prepaid, either in whole or in part, prior to the final maturity date hereof, without the prior written approval of the Federal Housing Commissioner." DA4.

**2. <u>Parthenia Manor Apartments (FHA No. 122-35090)</u>**

The owner of Parthenia Manor Apartments, B & C Company, executed a deed of trust, a deed of trust note, and a regulatory agreement on December 1, 1970. DA12-22. The loan evidenced by the deed of trust note was provided by Union Bank, and has a final maturity date of May 1, 2012. DA12 The final endorsement for Federal mortgage insurance was provided by HUD on October 30, 1972. DA13.

Rider A to the deed of trust note concerns prepayment of the insured debt. DA15. The rider states that "[t]he debt evidenced by this Deed of Trust Note may not be prepaid, either in whole or in part, prior to the final maturity date hereof, without the prior written approval of the Federal Housing Commissioner." DA15.

**3. <u>Market North II Apartments (FHA No. 053-35017)</u>**

The owners of Market North II Apartments, E.N. Richards and R.A. Bryan, Jr., executed a deed of trust, a deed of trust note, and a regulatory agreement on July 1, 1969. DA23-24, 70. The loan evidenced by the deed of trust note was provided by Cameron-Brown Company, and has a final maturity date of April 1, 2011. DA23. The final endorsement for Federal mortgage insurance was provided by HUD on July 28, 1970. DA24.

The preprinted deed of trust note states that "[p]rivilege is reserved to pay the debt in whole or in an amount equal to one or more monthly payments on principal next due, on the first day of any month prior to maturity upon at least thirty (30) days' prior written notice to the holder." DA23. However, the deed of trust note contains the following typed addition: "Notwithstanding the prepayment privilege stated herein, no prepayments, total or partial, may be made without the prior written approval of the Federal Housing Commissioner." DA23.

Thetford Properties III, LP, purchased the Market North II Apartments project and assumed the project's Government-insured mortgage on June 15, 1983. DA25-70.

**4. 100 Center Plaza (FHA No. 023-35NI)**

The owners of 100 Centre Plaza, B-L Associates, executed a mortgage, a mortgage note, and a regulatory agreement on July 1, 1970. DA71-83. The loan evidenced by the mortgage note was provided by the Massachusetts Housing Finance Agency ("MHFA"). DA71. Under the original mortgage documents, the owner had no contractual right to prepay until July 1, 1990. See DA71, 80-81.

On August 3, 1988, B-L Associates and the MHFA executed a disposition agreement, a new regulatory agreement, and a "Modification And Restatement Of Mortgage, Security Agreement And Assignment Of Lease And Rents." DA84-113. The modified mortgage provided that "[p]rior to twenty (20) years from the date hereof, the Borrower may not prepay the principal amount of the Mortgage Note in advance of the amortization schedule established by the Agency, unless the Agency consents to prepayment and the purpose of prepayment is to convert the ownership of the Project to cooperative or condominium ownership by occupants."

DA111. Thus, under the terms of the modified mortgage, the owner of 100 Center Plaza could not prepay and terminate affordability restrictions until August 3, 2008. DA111.

On December 27, 1990, the owner and MHFA amended the modified mortgage to permit prepayment with respect to 71 of the project's 216 units. DA116-21. However, in so doing, the parties stipulated that the owner would obtain incentives from HUD to maintain low-income affordability restrictions on the units, rather than prepay and terminate low-income affordability restrictions. DA117. Thus, at no time did the owner of 100 Center Plaza have a contractual right to prepay that permitted the termination of low-income affordability restrictions.

## ARGUMENT

### I. Standard of Review

Summary judgment is "a salutary method of disposition 'designed to secure the just, speedy and inexpensive determination of every action.'" Sweats Fashions, Inc. v. Pannill Knitting Company, Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). It is proper when no genuine issues of material fact are in dispute and the moving party is entitled to judgment as a matter of law. RCFC 56(b); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Facts are material only if they "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. Substantive law provides the basis to identify the material facts. Embrey v. United States, 17 Cl. Ct. 617 (1989).

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The non-moving party is then obliged

to "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof . . . at trial." Id. at 322. A failure of proof concerning an essential element of the non-moving party's case entitles the moving party to a legal judgment. Id. at 323.

As the United States Court of Appeals for the Federal Circuit emphasized in Sweats Fashions: "the burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact." 833 F.2d at 1563 (emphasis in original). Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the [Court of Federal Claims] – that there is an absence of evidence to support the non-moving party's case." Id. (emphasis in original) (quoting Celotex, 477 U.S. at 325). The burden then shifts to the non-moving party to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the non-moving party's case. Celotex, 477 U.S. at 331.

"The party opposing the motion must point to an evidentiary conflict created on the record at least by a counter statement of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant." Barmag Barmer Maschinenfabrik AG v. Murata Mach. Ltd., 731 F.2d 831, 836 (Fed. Cir. 1984). It is well settled that self-serving conclusory statements as to the ultimate issue asserted by a party's witnesses cannot raise a genuine issue of material fact. Imperial Tobacco Limited v. Phillip Morris, Inc., 899 F.2d 1575, 1581 (Fed. Cir. 1990) (citing Sweats Fashions, 833 F.2d at 1564); RCFC 56.

In this case, the relevant facts are either not in dispute or, given the evidence presented in the appendix to this motion, not subject to a genuine dispute. Summary judgment in favor of the Government is therefore appropriate. Celotex, 477 U.S. at 325.

## II. The Court Should Grant Summary Judgment With Respect To Plaintiffs That Have No Contractual Right To Prepay

Plaintiffs allege that they entered into contracts that provide a right to prepay their respective HUD-insured mortgages after 20 years.[4] 4th Am. Compl. ¶ 80. Plaintiffs further allege that LIHPRHA prohibited the exercise of the contractual right to prepay and, therefore, effected a regulatory taking. Id. ¶ 81.

The projects that are the subject of this motion fall into one of two categories: (1) the project's mortgage note expressly states that the owner has no right to prepay without HUD's consent; or (2) the owner modified the project's mortgage to eliminate the contractual right to prepay before enactment of LIHPRHA. See DA4, 15, 23, 111. It is axiomatic that a taking claim must fail where the plaintiff does not possess the property interest allegedly taken. See, e.g., Huntleigh USA Corp. v. United States, 525 F.3d 1370, 1377 (Fed. Cir. 2008) ("only persons with a valid property interest at the time of the taking are entitled to compensation"); Adams v. United States, 391 F.3d 1212, 1218 (Fed. Cir. 2004) (a court must first "determine whether the claimant possessed a cognizable property interest"). Because Milwood Apartments, Parthenia Manor Apartments, Market North II Apartments, and 100 Center Plaza possess no contractual right to prepay, the Court should grant the United States' motion for summary judgment.

[4] Plaintiffs' taking count incorrectly avers that these contracts were with the United States. 4th Am. Compl. ¶ 80. The only agreement between plaintiffs and the United States – the regulatory agreement – contains no prepayment right. See Cienega Gardens v. United States, 194 F.3d 1231, 1240-42 (Fed. Cir. 1998). Furthermore, this Court dismissed plaintiffs' breach of contract claim on August 16, 2000 – a ruling that plaintiffs did not appeal to the Federal Circuit. See Anaheim Gardens v. United States, 444 F.3d 1309 (Fed. Cir. 2006).

**CONCLUSION**

For these reasons, the United States respectfully requests that the Court grant this motion for partial summary judgment and enter judgment in favor of the United States with respect to the taking claims of the owners of Milwood Apartments, Parthenia Manor Apartments, Market North II Apartments and 100 Center Plaza.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Brian M. Simkin

BRIAN M. SIMKIN
Assistant Director

s/ David A. Harrington

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0277
Fax: (202) 307-0972

August 1, 2008

Attorneys for Defendant

**CERTIFICATE OF FILING**

I hereby certify that on the 1st day of August 2008, a copy of "DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT," and an accompanying appendix, were filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ David A. Harrington