FHA FORM NO. 4104-e
(CORPORATE)
(Revised October 1951)

*Conformed Copy*

# DEED OF TRUST NOTE

Los Angeles, California,

$ 96,100.00 January 4, 19 71.

FOR VALUE RECEIVED, the undersigned promise(s) to pay to

Wells Fargo Bank, N. A., Sonoma Mortgage Company Division, ,or order,

the principal sum of Ninety-Six Thousand, One Hundred Dollars and no/100 Dollars ($ 96,100.00 ), with interest from date until paid at the rate of Eight and one-half per centum ( 8-1/2 %) per annum.

The principal and interest of this note are to be paid in monthly installments as follows:
Interest payable monthly on the 1st day of February, 1971, and on the 1st day of each month thereafter, to and including December 1, 1971; thereafter, and commencing on the 1st day of January, 1972, monthly installments of interest and principal shall be paid in the sum of Seven Hundred and Four Dollars and 51/100 ($704.51) each, such payments to continue monthly thereafter on the 1st day of each succeeding month until the entire indebtedness has been paid. In any event the balance of principal, if any remaining unpaid, plus accrued interest, shall be due and payable on December 1, 2011. The installment of interest and principal shall be applied first to interest at the rate of Eight and one-half percent (8-1/2%) per annum upon the principal sum or so much thereof as shall from time to time remain unpaid, and the balance thereof shall be applied on account of principal.

In the event of prepayment of principal during any one calendar year in an amount in excess of fifteen percent (15%) of the original principal amount of the note, all parties liable for payment thereof hereby agree to be jointly and severally bound to pay to the holder for its own account a penalty or charge equal to three percent (3%) of the amount of such excess less one-eighth of one percent (1/8th of 1%) for each twelve-month period which has elapsed since the date of the note.

Both principal and interest under this note, as well as the additional payments set forth in the Deed of Trust, shall be payable at the office of Wells Fargo Bank, N. A., Sonoma Mortgage Company Division
in Santa Rosa, California
or such other place as the holder may designate in writing.
See Rider A attached hereto and made a part hereof.

~~Privilege is reserved to pay the debt in whole or in an amount equal to one or more monthly payments on principal next due on the first day of any month prior to maturity upon at least thirty (30) days' prior written notice to the holder.~~ If this debt is paid in full prior to maturity and while insured under the National Housing Act, all parties liable for payment thereof hereby agree to be jointly and severally bound to pay to the holder hereof any adjusted premium charge required by the applicable Regulations promulgated under the National Housing Act, as amended.

Notwithstanding any provision herein for a prepayment charge or premium, prepayments of principal which do not exceed an aggregate of fifteen per centum (15%) of the original principal sum of this note in any one calendar year, may be made without any prepayment charge or premium.

If default be made in the payment of any installment under this note, and if the default is not made good prior to the due date of the next such installment, the entire principal sum and accrued interest shall at once become due and payable without notice at the option of the holder of this note. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default.

No default shall exist by reason of nonpayment of any required installment of principal so long as the amount of optional additional prepayments of principal already made equals or exceeds the amount of such required installment of principal.

The makers and endorsers severally waive diligence, presentment, protest, and demand, and also notice of protest, dishonor, and nonpayment of this note, and expressly agree that this note, or any payment thereunder, may be extended from time to time, and consent to the acceptance of further security for this note, including other types of security, all without in any way affecting the liability of the makers and endorsers hereof. The right to plead any and all statutes of limitations as a defense to any demand on this note, or any guaranty thereof, or to any agreement to pay the same, or to any demand secured by the Deed of Trust, or other security, securing this note, or any and all obligations, or liabilities arising out of or in connection with said note or Deed of Trust by any of the parties hereto, is expressly waived by each and every of the makers, endorsers, guarantors, or sureties.

Principal and interest . . payable in lawful money of the Unite tates. If action be instituted on this note, the undersigned promise(s) to pay in addition to the costs and disbursements allowed by law such sum as the Court may adjudge reasonable as attorney's fees in said action. This note is secured by a Deed of Trust, of even date herewith, to Wells Fargo Bank, N. A., Sonoma Mortgage Compar as Trustee, on real estate situated in the City of Los Angeles County of Los Angeles / / Divisior California.

Should this note be signed by more than one person and/or firm and/or corporation, all of the obligations herein contained shall be considered joint and several obligations of each signer hereof.

Signed and sealed this 4th day of January ,1971.

[CORPORATE SEAL]

By Joseph R. Biafora President

By Stefi Biafora Secretary

I HEREBY CERTIFY that this is the note described in and secured by the Deed of Trust of even date herewith, and in the same principal amount as herein stated, to Wells Fargo Bank, N. A., Sonoma Mortgage Company Division Trustee(s), on real estate in the City of Los Angeles County of Los Angeles State of California.

Dated this 4th day of January ,1971.

OFFICIAL SEAL
LORRAYNE S. WHITING
NOTARY PUBLIC-CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY
My commission expires My Commission Expires Jul 4, 1974

Notary Public in and for said County and State.

STATE OF CALIFORNIA

Loan No.

**Deed of Trust Note**

TO

No. 122-35130-LDI-SUP

Insured under 221(d)(3) of the National Housing Act and Regulations thereunder of the Federal Housing Commissioner

In effect on December 2, 1970

To the extent of advances approved by the Commissioner.

FEDERAL HOUSING COMMISSIONER

By Raymond Carrasco Authorized Agent.

Date January 14, 1971

A total sum of $ ........ has been approved for insurance hereunder by the Commissioner.

FEDERAL HOUSING COMMISSIONER

By ........ Authorized Agent.

Date January 13, 1972

Reference is made to the Act and to the Regulations thereunder covering assignments of the insurance protection on this note.

GPO 925351



GOV-WAS_07584

Principal and interest are payable in lawful money of the United States. If action be instituted on this note, the undersigned promise(s) to pay in addition to the costs and disbursements allowed by law such sum as the Court may adjudge reasonable as attorney's fees in said action. This note is secured by a Deed of Trust, of even date herewith, to Wells Fargo Bank, N.A., Sonoma Mortgage Company as Trustee, on real estate situated in the City of Los Angeles County of Los Angeles / / Division California.

Should this note be signed by more than one person and/or firm and/or corporation, all of the obligations herein contained shall be considered joint and several obligations of each signer hereof.

Signed and sealed this 4th day of January, 1971.

[CORPORATE SEAL]

By Joseph R. Biafora ~~President~~

By Stefi Biafora ~~Secretary~~

I HEREBY CERTIFY that this is the note described in and secured by the Deed of Trust of even date herewith, and in the same principal amount as herein stated, to Wells Fargo Bank, N.A., Sonoma Mortgage Company Division Trustee(s), on real estate in the City of Los Angeles County of Los Angeles State of California.

Dated this 4th day of January, 1971.

OFFICIAL SEAL

Lorrayne E. Whiting
*Notary Public in and for said County and State.*

My commission expires

STATE OF CALIFORNIA

Loan No.

# Deed of Trust Note

TO

No. 122-35130-LDI-SUP

Insured under 221(d)(3) of the National Housing Act and Regulations thereunder of the Federal Housing Commissioner

In effect on December 2, 1970

To the extent of advances approved by the Commissioner.

FEDERAL HOUSING COMMISSIONER

By /s/ Raymond Carrasco *Authorized Agent.*
Raymond Carrasco

Date January 14, 1971

A total sum of $.................... has been approved for insurance hereunder by the Commissioner.

FEDERAL HOUSING COMMISSIONER

By .................... *Authorized Agent.*

Date ....................

Reference is made to the Act and to the Regulations thereunder covering assignments of the insurance protection on this note.

GPO 925951

Deed of Trust Note
Project #122-35130-LDI-SUP

RIDER A

This Rider is attached to and made a part of Trust Note dated January 4, 1971, by and between Joseph R. Biafora and Stefi Biafora, Makers, and Wells Fargo Bank, N.A., Sonoma Mortgage Company Division, Payee.

1. In the event that any payment of principal and interest secured hereby shall be overdue for a period in excess of fifteen (15) days, the Trustor agrees to pay to the Beneficiary a "late charge" of two cents (2¢) for each dollar ($1.00) so overdue for the purpose of defraying the expense incident to handling the delinquent payment.

2. The debt evidenced by this Deed of Trust Note may not be prepaid, either in whole or in part, prior to the final maturity date hereof, without the prior written approval of the Federal Housing Commissioner. Prepayments may only be made in an amount equal to one or more monthly payments on principal next due on the first day of any month prior to maturity upon at least thirty (30) days prior written notice to the holder of the Deed of Trust Note.

JRB / S.B.

Page one and only page

When Recorded Mail To. Dept. of Urban & Housing Development
2500 Wilshire Blvd., Rm. 562, Los Angeles
Attn: Erwin Rosenstein

FHA FORM NO. 1730
Rev. Oct., 1969
(Prior Revisions Obsolete)

U. S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
FEDERAL HOUSING ADMINISTRATION

2276

**REGULATORY AGREEMENT FOR LIMITED DISTRIBUTION MORTGAGOR PROJECTS UNDER SECTION 221(d)(3) OF THE NATIONAL HOUSING ACT, AS AMENDED**

Project No. 122-35130-LDI-SUP

Mortgagee Wells Fargo Bank, N.A. Sonoma Mortgage Company Division

Amount of Mortgage Note $96,100.00 Date January 4, 1971

Mortgage: Recorded: Concurrently State California County Los Angeles Date

Book Page

This Agreement entered into this 4th day of January, 1971

between Joseph R. Biafora and Stefi Biafora, Husband and Wife

whose address is 18645 Sherman Way, Suite 110, Reseda, ~~California 91335~~

RECORDED IN OFFICIAL RECORDS OF LOS ANGELES COUNTY, CALIF.
1 Min. Past 1 PM. JAN 14 1971
Registrar-Recorder

their successors, heirs, and assigns (jointly and severally, hereinafter referred to as Owners) and the undersigned Secretary of Housing and Urban Development and his successors, acting by and through the Federal Housing Commissioner (hereinafter called Commissioner).

In consideration of the endorsement for insurance by the Commissioner of the above described note or in consideration of the consent of the Commissioner to the transfer of the mortgaged property, and in order to comply with the requirements of Section 221(d)(3) of the National Housing Act, as amended, and the Regulations adopted by the Commissioner pursuant thereto, Owners agree for themselves, their successors, heirs and assigns, that in connection with the mortgaged property and the project operated thereon and so long as the contract of mortgage insurance continues in effect, and during such further period of time as the Commissioner shall be the owner, holder or reinsurer of the mortgage, or during any time the Commissioner is obligated to insure a mortgage on the mortgaged property:

1. Owners, except as limited by paragraph 17 hereof, shall promptly make all payments due under the note and mortgage.

2. (a) Owners shall establish or continue to maintain a reserve fund for replacements by the allocation to such reserve fund in a separate account with the mortgagee or in a safe and responsible depository designated by the mortgagee, concurrently with the beginning of payments towards amortization of the principal of the mortgage insured or held by the Commissioner of an amount equal to $ 28.25 per month unless a different date or amount is approved in writing by the Commissioner. Such fund, whether in the form of a cash deposit or invested in obligations of, or fully guaranteed as to principal by, the United States of America, shall at all times be under the control of the mortgagee. Disbursements from such fund, whether for the purpose of effecting replacement of structural elements and mechanical equipment of the project or for any other purpose, may be made only after receiving the consent in writing of the Commissioner. In the event of a default in the terms of the mortgage, pursuant to which the loan has been accelerated, the Commissioner may apply or authorize the application of the balance in such fund to the amount due on the mortgage debt as accelerated.

(b) Where Owners are acquiring a project already subject to an insured mortgage, the reserve fund for replacements to be established will be equal to the amount due to be in such fund under existing agreements or charter provisions at the time Owners acquire such project, and payments hereunder shall begin with the first payment due on the mortgage after acquisition, unless some other method of establishing and maintaining the fund is approved or required in writing by the Commissioner.

(c) Owners shall establish and maintain, in addition to the reserve fund for replacements, a residual receipts fund by depositing thereto, with the mortgagee, the residual receipts, as defined herein, within 60 days after the end of the semiannual or annual fiscal period within which such receipts are realized. Residual receipts shall be under the control of the Commissioner, and shall be disbursed only on the direction of the Commissioner, who shall have the power and authority to direct that the residual receipts, or any part thereof, be used for such purpose as he may determine.

RECORDED AT REQUEST OF TITLE INSURANCE & TRUST CO.

2276

3. Real property covered by the mortgage and this Agreement is described in Schedule A attached hereto.

4. The Owners covenant and agree that:

(a) Admission to the project shall be limited to families having a low or moderate income which does not exceed the limits established by the Commissioner and in effect at the time of admission;

(b) Preference or priority for admission to the project and for placement on the waiting list, which Owners shall maintain, shall be extended to those families of low or moderate incomes who have certificates of eligibility as displaced families;

(c) On forms approved by the Commissioner they will obtain from each prospective tenant a certification of income prior to admission to the project, and a recertification of income from each tenant at least every two years following the date of admission;

(d) If any recertification discloses that family income exceeds the limits established by the Commissioner and in effect at the time of recertification, they shall either terminate the lease, or require the tenant to pay an increased rental in an amount computed in accordance with the formula prescribed by the Commissioner;

(e) They shall require all tenants to execute a lease in the form prescribed by the Commissioner, and shall not rent any unit in the project for less than 30 days nor more than one year;

(f) The rent charged for each unit shall not exceed the upper limit of the range shown for such type of unit on the rental schedule approved in writing by the Commissioner, and shall include the reasonable use of all utilities shown on said schedule, but in no event shall the total gross monthly rents for all dwelling units exceed the gross monthly dwelling income for all units approved by the Commissioner on the rental schedule;

(g) No increase will be made in the amount of the gross monthly dwelling income for all units as shown on the rental schedule unless such increase is approved by the Commissioner, who will at any time entertain a written request for an increase properly supported by substantiating evidence and within a reasonable time shall:

(1) Approve a rental schedule that is necessary to compensate for any net increase, occurring since the last approved rental schedule, in taxes (other than income taxes) and operating and maintenance expenses over which Owners have no effective control, or

(2) Deny the increase stating the reasons therefor;

(h) If there are rent supplement units in the project, the determination as to the eligibility of tenants for admission to such units and the conditions of continued occupancy shall be in accordance with the Rent Supplement Contract executed by the Owners and the Commissioner which is incorporated in and made a part of this Agreement;

(i) They will rent commercial facilities, if any, at not less than the rental approved by the Commissioner;

(j) In selecting tenants they shall not discriminate against any person or persons by reason of the fact that there are children in the family.

5. Upon prior written approval of the Commissioner, the Owners may charge to and receive from any tenant such amounts as from time to time may be mutually agreed upon between the tenant and Owners for any facilities and/or services which may be furnished by the Owner or others to such tenant upon his request, in addition to the facilities and services included in the approved Rental Schedule.

6. Owners shall not without the prior written approval of the Commissioner:

(a) Convey, transfer, or encumber any of the mortgaged property, or permit the conveyance, transfer or encumbrance of such property;

(b) Assign, transfer, dispose of, or encumber any personal property of the project, including rents, or pay out any funds, other than from surplus cash, except for reasonable operating expenses and necessary repairs; 22776

(c) Convey, assign, or transfer any beneficial interest in any trust holding title to the mortgaged property, or the interest of any general partner in a partnership owning the mortgaged property, or any right to manage or receive the rents and profits from the mortgaged property;

(d) Remodel, add to, reconstruct, or demolish any part of the mortgaged property or subtract from any real or personal property of the project;

(e) Make, or receive and retain, any distribution of assets or any income of any kind of the project except from surplus cash and except on the following conditions:

(1) All distributions shall be made only as of or after the end of a semiannual or annual fiscal period, and only as permitted by the law of the applicable jurisdiction; all such distributions in any one fiscal year shall be limited to six per centum on the initial equity investment, which shall be determined by the Commissioner; the right to such distribution shall be cumulative;

(2) No distribution shall be made from borrowed funds or prior to the completion of the project, or when there is any default under this agreement or under the note or mortgage;

(3) Any distribution of any funds of the project, which the party receiving such funds is not entitled to retain hereunder, shall be held in trust separate and apart from any other funds;

(4) There shall have been compliance with all outstanding notices of requirements for proper maintenance of the project.

(f) Engage, except for natural persons, in any other business or activity, including the operation of any other rental project, or incur any liability or obligation not in connection with the project;

(g) Require, as a condition of the occupancy or leasing of any unit in the project, any consideration or deposit other than the prepayment of the first month's rent plus a security deposit in an amount not in excess of one month's rent to guarantee the performance of the covenants of the lease. Any fund collected as security deposits shall be kept separate and apart from all other funds of the project in a trust account the amount of which shall at all times equal or exceed the aggregate of all outstanding obligations under said account;

(h) Permit the use of the dwelling accommodations of the project for any purpose except the use which was originally intended, or permit commercial use greater than that originally approved by the Commissioner;

(i) Incur any liability, direct or contingent, other than for current operating expenses, exclusive of the indebtedness secured by the mortgage and necessarily incident to the execution and delivery thereof;

(j) Pay any compensation, including wages or salaries, or incur any obligations, to themselves, or any officers, directors, stockholders, trustees, partners, beneficiaries under a trust, or to any of their nominees;

(k) Enter into any contract or contracts for supervisory or managerial services.

7. Owners shall maintain the mortgaged premises, accommodations and the grounds and equipment appurtenant thereto, in good repair and condition. In the event all or any of the buildings covered by the mortgage shall be destroyed or damaged by fire or other casualty, the money derived from any insurance on the property shall be applied in accordance with the terms of the insured mortgage.

8. Owners shall not file any petition in bankruptcy, or for a receiver, or in insolvency, or for reorganization or composition, or make any assignment for the benefit of creditors or to a trustee for creditors or permit an adjudication in bankruptcy, the taking possession of the mortgaged property or any part thereof by a receiver, or the seizure and sale of the mortgaged property or any part thereof under judicial process or pursuant to any power of sale and fail to have such adverse actions set aside within forty-five days.

9. (a) Owners shall provide for the management of the project in a manner satisfactory to the Commissioner. Any management contract entered into by Owners, or any of them, involving the project shall contain a provision that it shall be subject to termination, without penalty and with or without cause, upon written request by the Commissioner addressed to the Owners. Upon receipt of such request Owners shall immediately terminate the contract within a period of not more than thirty (30) days and shall make arrangements satisfactory to the Commissioner for continuing proper management of the project.

(b) Payment for services, supplies, or materials shall not exceed the amount ordinarily paid for such services, supplies, or materials in the area where the services are rendered or the supplies or materials furnished.

(c) The mortgaged property, equipment, buildings, plans, offices, apparatus, devices, books, contracts, records, documents, and other papers relating thereto shall at all times be maintained in reasonable condition for proper audit and shall be subject to examination and inspection at any reasonable time by the Commissioner or his duly authorized agents. Owners shall keep copies of all written contracts or other instruments which affect the mortgaged property, all or any of which may be subject to inspection and examination by the Commissioner or his duly authorized agents. 2276

(d) The books and accounts of the operations of the mortgaged property and of the project shall be kept in accordance with the requirements of the Commissioner.

(e) Within sixty days following the end of each fiscal year the Commissioner shall be furnished with a complete annual financial report based upon an examination of the books and records of the mortgagor prepared in accordance with the requirements of the Commissioner, certified to by an officer or responsible Owner and, when required by the Commissioner, prepared and certified by a Certified Public Accountant, or other person acceptable to the Commissioner.

(f) At the request of the Commissioner, his agents, employees, or attorneys, the Owners shall furnish monthly occupancy reports and shall give specific answers to questions upon which information is desired from time to time relative to the income, assets, liabilities, contracts, operation, and condition of the property and the status of the insured mortgage.

(g) All rents and other receipts of the project shall be deposited in the name of the project in a bank, whose deposits are insured by the F.D.I.C. Such funds shall be withdrawn only in accordance with the provisions of this Agreement for expenses of the project or for distributions of surplus cash as limited by paragraph 6 (e) above. Any Owner receiving funds of the project other than by such distribution of surplus cash shall immediately deposit such funds in the project bank account and failing so to do in violation of this Agreement shall hold such funds in trust. Any Owner receiving property of the project in violation of this Agreement shall immediately deliver such property to the project and failing so to do shall hold such property in trust.

h) The Rent Supplement Contract of even date herewith executed by Owner and the Commissioner is incorporated in and made a part of this agreement.

10. Owners will comply with the provisions of any Federal, State, or local law prohibiting discrimination in housing on the grounds of race, color, creed, or national origin, including Title VI of the Civil Rights Act of 1964 (Public Law 88-352, 78 Stat. 241), all requirements imposed by or pursuant to the Regulations of the Department of Housing and Urban Development (24 CFR, Subtitle A, Part 1) issued pursuant to that title, and regulations issued pursuant to Executive Order 11063.

11. Upon a violation of any of the above provisions of this Agreement by Owners, the Commissioner may give written notice thereof to Owners, by registered or certified mail, addressed to the addresses stated in this Agreement, or such other addresses as may subsequently, upon appropriate written notice thereof to the Commissioner, be designated by the Owners as their legal business address. If such violation is not corrected to the satisfaction of the Commissioner within thirty days after the date such notice is mailed or within such further time as the Commissioner reasonably determines is necessary to correct the violation, without further notice the Commissioner may declare a default under this Agreement effective on the date of such declaration of default and upon such default the Commissioner may:

(a) (1) If the Commissioner holds the note - declare the whole of said indebtedness immediately due and payable and then proceed with the foreclosure of the mortgage;

(2) If said note is not held by the Commissioner - notify the holder of the note of such default and request holder to declare a default under the note and mortgage, and the holder after receiving such notice and request, but not otherwise, at its option, may declare the whole indebtedness due, and thereupon proceed with foreclosure of the mortgage, or assign the note and mortgage to the Commissioner as provided in the Regulations;

(b) Collect all rents and charges in connection with the operation of the project and use such collections to pay the mortgagor's obligations under this Agreement and under the note and mortgage and the necessary expenses of preserving the property and operating the project;

(c) Take possession of the project, bring any action necessary to enforce any rights of the Owners growing out of the project operation, and operate the project in accordance with the terms of this Agreement until such time as the Commissioner in his discretion determines that the Owners are again in a position to operate the project in accordance with the terms of this Agreement and in compliance with the requirements of the note and mortgage;

(d) Apply to any court, State or Federal, for specific performance of this Agreement, for an injunction against any violation of the Agreement, for the appointment of a receiver to take over and operate the project in accordance with the terms of the Agreement, or for such other relief as may be appropriate, since the injury to the Commissioner arising from a default under any of the terms of this Agreement would be irreparable and the amount of damage would be difficult to ascertain.

12. As security for the payment due under this Agreement to the reserve fund for replacements, and to secure the Commissioner because of his liability under the endorsement of the note for insurance, and as security for the other obligations under this Agreement, the Owners respectively assign, pledge and mortgage to the Commissioner their rights to the rents, profits, income and charges of whatever sort which they may receive or be entitled to receive from the operation of the mortgaged property, subject, however, to any assignment of rents in the insured mortgage referred to herein. Until a default is declared under this Agreement, however, permission is granted to Owners to collect and retain under the provisions of this Agreement such rents, profits, income, and charges, but upon default this permission is terminated as to all rents due or collected thereafter. 2276

13. As used in this Agreement the term:

(a) "Mortgage" includes "Deed of Trust", "Chattel Mortgage", and any other security for the note identified herein, and endorsed for insurance or held by the Commissioner;

(b) "Mortgagee" refers to the holder of the mortgage identifed herein, its successors and assigns;

(c) "Mortgagor" means the original borrower under the mortgage and its successors and assigns;

(d) "Owners" refers to the persons named in the first paragraph hereof and designated as Owners, their successors and assigns;

(e) "Mortgaged Property" includes all property, real, personal, or mixed covered by the mortgage or mortgages securing the note endorsed for insurance or held by the Commissioner;

(f) "Project" includes the mortgaged property and all its other assets of whatsoever nature or wheresoever situate, used in or owned by the business conducted on said mortgaged property, which business is providing housing and other such activities as are incidental thereto;

(g) "Surplus Cash" means any cash remaining after:

(1) the payment of:

(i) All sums due or currently required to be paid under the terms of any mortgage or note insured or held by the Federal Housing Commissioner;

(ii) All amounts required to be deposited in the reserve fund for replacements;

(iii) All obligations of the project other than the insured mortgage unless funds for payment are set aside or deferment of payment has been approved by the Commissioner; and

(2) the segregation of:

(i) An amount equal to the aggregate of all special funds required to be maintained by the project;

(ii) All tenant security deposits held;

(h) "Residual Receipts" means any cash remaining at the end of a semiannual or annual fiscal period after deducting from surplus cash the amount of all distributions as that term is defined below and as limited by Paragraph 6(e) hereof;

(i) "Family" means (1) two or more persons related by blood, marriage, or operation of law who occupy the same unit; (2) a handicapped person who has a physical impairment which is expected to be of long continued and indefinite duration, substantially impedes his ability to live independently, and is of such a nature that his ability could be improved by more suitable housing conditions; (3) a single person, 62 years of age or older; or (4) a single person less than 62 years of age provided that occupancy by such persons is limited to 10% of the dwelling units in the project, unless the occupants receive rent supplement benefits pursuant to a rent supplement contract in which instance the 10 percent limitation shall not be applicable;

(j) "Distribution" means any withdrawal or taking of cash or any assets of the project, including the segregation of cash or assets for subsequent withdrawal within the limitations of Paragraph 6(e) hereof, and excluding payment for reasonable expenses incident to the operation and maintenance of the project;

(k) "Income" means the gross annual income of the family from all sources before taxes and withholding, after giving effect to exclusions allowed by the Commissioner;

(l) "Default" means a default declared by the Commissioner when a violation of this Agreement is not corrected to his satisfaction within the time allowed by this Agreement or such further time as may be allowed by the Commissioner after written notice.

14. This instrument shall bind, and the benefits shall inure to, the respective Owners, their heirs, legal representatives, executors, administrators, successors in office or interest, and assigns, and to the Commissioner and his successors so long as the contract of mortgage insurance continues in effect; and during such further time as the Commissioner shall be the owner, holder, or reinsurer of the mortgage, or obligated to reinsure the mortgage.

15. Owners warrant that they have not, and will not, execute any other agreement with provisions contradictory of, or in opposition to, the provisions hereof, and that, in any event, the requirements of this Agreement are paramount and controlling as to the rights and obligations set forth and supersede any other requirements in conflict therewith.

2276

16. The invalidity of any clause, part or provision of this Agreement shall not affect the validity of the remaining portions thereof.

17. The following Owners:

do not assume personal liability for payments due under the note and mortgage, to the reserve for replacements, or for matters not under their control, except:

(a) for funds or property of the project coming into their hands which, by the provisions hereof, they are not entitled to retain; and

(b) for their own acts and deeds or acts and deeds of others which they have authorized in violation of the provisions hereof.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals on the date first hereinabove written.

Seal

JOSEPH R. BIAFORA and STEFI BIAFORA, H/W
*Owners*

WITNESS

By Joseph R. Biafora

Stefi Biafora

SECRETARY OF HOUSING AND URBAN DEVELOPMENT
acting by and through the FEDERAL HOUSING
COMMISSIONER

By RAYMOND CARRASCO ( *Authorized Agent*)

*(Add proper acknowledgements)*

TO 447 C
(Individual)

STATE OF CALIFORNIA
COUNTY OF Los Angeles } SS.

On January 4, 1971 before me, the undersigned, a Notary Public in and for said State, personally appeared Joseph R. Biafora and Stefi Biafora, known to me to be the persons whose names are subscribed to the within instrument and acknowledged that they executed the same.

WITNESS my hand and official seal.

Signature

Lorrayne S. Whiting
Name (Typed or Printed)

(This area for official notarial seal)

22276

SCHEDULE A

The south 50 feet of the north 100 feet of the west one-half of Lot 3 in Block 88 of Owensmouth Tract, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 19, Pages 36 and 37 of Miscellaneous Records, in the office of the County Recorder of aaid county.

Page One and only page

9422

EHA FORM NO. 4104-
(CORPORATE)
(Revised October 1961)

04 786079-6

Rec'd 5/11
10 ~ Sec ✓

# DEED OF TRUST NOTE

Los Angeles , California,

$ 1,046,700.00 December 1 ,19 70

FOR VALUE RECEIVED, the undersigned promise(s) to pay to

UNION BANK, a California corporation ,or order,

the principal sum of One Million, Forty-Six Thousand, Seven Hundred Dollars ($1,046,700.00), with interest from date until paid at the rate of Eight and one-half per centum ( 8-1/2 %) per annum. The principal and interest of this note are to be paid in monthly installments as follows:

Interest payable monthly on the 1st day of January, 1971, and on the 1st day of each month thereafter, to and including May 1, 1972; thereafter, and commencing on the 1st day of June, 1972, monthly installments of interest and principal shall be paid in the sum of Seven Thousand Six Hundred Seventy-Three Dollars and 30/100 ($7,673.30) each, such payments to continue monthly thereafter on the 1st day of each succeeding month until the entire indebtedness has been paid. In any event, the balance of principal (if any, remaining unpaid, plus accrued interest, shall be due and payable on May 1, 2012. The installment of interest and principal shall be applied first to interest at the rate of eight and one-half percent (8-1/2%) per annum upon the principal sum or so much thereof as shall from time to time remain unpaid, and the balance thereof shall be applied on account of principal.

In the event of prepayment of principal during any one calendar year in an amount in excess of fifteen percent (15%) of the original principal amount of the Note, all parties liable for payment thereof shall hereby agree to be jointly and severally bound to pay to the holder thereof for its own account a premium or charge equal to three percent (3%) of the amount of such excess less one-eighth (1/8th) of one percent (1%) for each 12-month period which has elapsed since the date of the Note.

Both principal and interest under this note, as well as the additional payments set forth in the Deed of Trust, shall be payable at the office of UNION BANK

in Sherman Oaks, California
or such other place as the holder may designate in writing.
See Rider "A" attached hereto and made a part hereof.

[illegible] If this debt is paid in full prior to maturity and while insured under the National Housing Act, all parties liable for payment thereof hereby agree to be jointly and severally bound to pay to the holder hereof any adjusted premium charge required by the applicable Regulations promulgated under the National Housing Act, as amended.

Notwithstanding any provision herein for a prepayment charge or premium, prepayments of principal which do not exceed an aggregate of fifteen per centum (15%) of the original principal sum of this note in any one calendar year, may be made without any prepayment charge or premium.

If default be made in the payment of any installment under this note, and if the default is not made good prior to the due date of the next such installment, the entire principal sum and accrued interest shall at once become due and payable without notice at the option of the holder of this note. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default.

No default shall exist by reason of nonpayment of any required installment of principal so long as the amount of optional additional prepayments of principal already made equals or exceeds the amount of such required installment of principal.

The makers and endorsers severally waive diligence, presentment, protest, and demand, and also notice of protest, dishonor, and nonpayment of this note, and expressly agree that this note, or any payment thereunder, may be extended from time to time, and consent to the acceptance of further security for this note, including other types of security, all without in any way affecting the liability of the makers and endorsers hereof. The right to plead any and all statutes of limitations as a defense to any demand on this note, or any guaranty thereof, or to any agreement to pay the same, or to any demand secured by the Deed of Trust, or other security, securing this note, or any and all obligations, or liabilities arising out of or in connection with said note or Deed of Trust by any of the parties hereto, is expressly waived by each and every of the makers, endorsers, guarantors, or sureties.
The Maker and the partners thereof assume no personal liability for the payments hereof except as set out in the deed of trust of even date given to secure this indebtedness.



IRH 0097521

Principal and interest are payable in lawful money of the United States. If action be instituted on this note, the undersigned promise(s) to pay in addition to the costs and disbursements allowed by law such sum as the Court may adjudge reasonable as attorney's fees in said action. This note is secured by a Deed of Trust, of even date herewith, to UNION BANK as Trustee, on real estate situated in the City of Los Angeles County of Los Angeles, California.

Should this note be signed by more than one person and/or firm and/or corporation, all of the obligations herein contained shall be considered joint and several obligations of each signer hereof.

Signed and sealed this 1st day of December, 19 70.

B & C COMPANY, a partnership,

xXXXXXXXXXXXXXXXXXXx

By [signature]
Joseph R. Biafora ~~xxxxxx~~ partner

xXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXx
~~Secretary~~

---

I HEREBY CERTIFY that this is the note described in and secured by the Deed of Trust of even date herewith, and in the same principal amount as herein stated, to UNION BANK, Trustee(s), on real estate in the City of Los Angeles County of Los Angeles, State of California.

Dated this 1st day of December 19 70.

OFFICIAL SEAL
LORRAYNE S. WHITING
NOTARY PUBLIC-CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY
My Commission Expires May 4, 1974

My commission expires

[signature]
Notary Public in and for said County and State.

STATE OF CALIFORNIA

Loan No.

# Deed of Trust Note

TO

No. 122-35009-LDP-SUP

Insured under SEC. / 221(d)(3) of the National Housing Act and Regulations thereunder of the Federal Housing Commissioner

In effect on NOV. 19, 1970

To the extent of advances approved by the Commissioner.

FEDERAL HOUSING COMMISSIONER

By [signature] RAYMOND CARRASCO Authorized Agent.

Date DEC. 10, 1970

A total sum of $ 1,028,200 has been approved for insurance hereunder by the Commissioner.

FEDERAL HOUSING COMMISSIONER

By [signature] Authorized Agent.

Date October 30, 1972

Reference is made to the Act and to the Regulations thereunder covering assignments of the insurance protection on this note.

18,500.00 is credited to the principal amount due and the principal outstanding on date of ay 1, 1972 is $1,028,200.00. This is a reduction of principal and not an optional prepayment under the terms of this note and mortgage. Monthly payments are to be adjusted accordingly and beginning June 1, 1972 monthly payments of principal and interest shall be n the amount of SEVEN THOUSAND FIVE HUNDRED THIRTY-SEVEN AND 68/100 DOLLARS ($7,537.68). ll other terms of the note remain the same with all principal due and payable May 1, 2012.

& C COMPANY, a partnership

y: [signature]
Joseph R. Biafora - partner
"Mortgagor"

UNION BANK

By: [signature]
Bernice A. Storms
Assistant Vice President
"Mortgagee"



IRH 0097522

PAY TO THE ORDER OF FEDERAL NATIONAL MORTGAGE ASSOCIATION, WITHOUT RECOURSE.

DATED: November 13, 1972.

UNION BANK, a Corporation

By: C. Milton Wesley
C. Milton Wesley, Vice President

122-35090-LDP-SUP
Deed of Trust Note

RIDER "A"

This Rider is attached to and made a part of Deed of Trust Note dated December 1, 1970, by and between B & C COMPANY, a partnership, Maker, and UNION BANK, Payee.

1. In the event that any payment of principal and interest secured hereby shall be overdue for a period in excess of fifteen (15) days, the Trustor agrees to pay to the Beneficiary a "late charge" of two cents (2¢) for each dollar ($1.00) so overdue for the purpose of defraying the expense incident to handling the delinquent payment.

2. The debt evidenced by this Deed of Trust Note may not be prepaid, either in whole or in part, prior to the final maturity date hereof, without the prior written approval of the Federal Housing Commissioner. Prepayments may only be made in an amount equal to one or more monthly payments on principal next due on the first day of any month prior to maturity upon at least thirty (30) days prior written notice to the holder of the Deed of Trust Note. No Prepayment

GKB

LAW OFFICES
FONA AND WEINER
SUITE 110
645 SHERMAN WAY
EOA, CALIF. 91335
TELEPHONE
AREA CODE 213
343-4627
345-4627
987-1383

Page One and only page of Rider "A"

FHA FORM NO. 1730
Rev. Oct., 1969
(Prior Revisions Obsolete)

2500 Wilshire Blvd.
Los Angeles, Calif. 90057

U. S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
FEDERAL HOUSING ADMINISTRATION

## REGULATORY AGREEMENT FOR LIMITED DISTRIBUTION MORTGAGOR PROJECTS UNDER SECTION 221(d)(3) OF THE NATIONAL HOUSING ACT, AS AMENDED

Project No. 122-35090-LDP-SUP

Mortgagee Union Bank

Amount of Mortgage Note $1,046,700.00 Date Dec. 1, 1970

Mortgage: Recorded: Concurrently herewith State California County Los Angeles Date

Book Page

This Agreement entered into this 1st day of December, 19 70

between B & C COMPANY, a partnership

whose address is 18645 Sherman Way, Reseda, California

their successors, heirs, and assigns (jointly and severally, hereinafter referred to as Owners) and the undersigned Secretary of Housing and Urban Development and his successors, acting by and through the Federal Housing Commissioner (hereinafter called Commissioner).

In consideration of the endorsement for insurance by the Commissioner of the above described note or in consideration of the consent of the Commissioner to the transfer of the mortgaged property, and in order to comply with the requirements of Section 221(d)(3) of the National Housing Act, as amended, and the Regulations adopted by the Commissioner pursuant thereto, Owners agree for themselves, their successors, heirs and assigns, that in connection with the mortgaged property and the project operated thereon and so long as the contract of mortgage insurance continues in effect, and during such further period of time as the Commissioner shall be the owner, holder or reinsurer of the mortgage, or during any time the Commissioner is obligated to insure a mortgage on the mortgaged property:

1. Owners, except as limited by paragraph 17 hereof, shall promptly make all payments due under the note and mortgage.

2. (a) Owners shall establish or continue to maintain a reserve fund for replacements by the allocation to such reserve fund in a separate account with the mortgagee or in a safe and responsible depository designated by the mortgagee, concurrently with the beginning of payments towards amortization of the principal of the mortgage insured or held by the Commissioner of an amount equal to $ 317.00 per month unless a different date or amount is approved in writing by the Commissioner. Such fund, whether in the form of a cash deposit or invested in obligations of, or fully guaranteed as to principal by, the United States of America, shall at all times be under the control of the mortgagee. Disbursements from such fund, whether for the purpose of effecting replacement of structural elements and mechanical equipment of the project or for any other purpose, may be made only after receiving the consent in writing of the Commissioner. In the event of a default in the terms of the mortgage, pursuant to which the loan has been accelerated, the Commissioner may apply or authorize the application of the balance in such fund to the amount due on the mortgage debt as accelerated.

(b) Where Owners are acquiring a project already subject to an insured mortgage, the reserve fund for replacements to be established will be equal to the amount due to be in such fund under existing agreements or charter provisions at the time Owners acquire such project, and payments hereunder shall begin with the first payment due on the mortgage after acquisition, unless some other method of establishing and maintaining the fund is approved or required in writing by the Commissioner.

(c) Owners shall establish and maintain, in addition to the reserve fund for replacements, a residual receipts fund by depositing thereto, with the mortgagee, the residual receipts, as defined herein, within 60 days after the end of the semiannual or annual fiscal period within which such receipts are realized. Residual receipts shall be under the control of the Commissioner, and shall be disbursed only on the direction of the Commissioner, who shall have the power and authority to direct that the residual receipts, or any part thereof, be used for such purpose as he may determine.



IRH 0097451

3. Real property covered by the mortgage and this Agreement is described in Schedule A attached hereto. (Consisting of 1 page)

4. The Owners covenant and agree that:

(a) Admission to the project shall be limited to families having a low or moderate income which does not exceed the limits established by the Commissioner and in effect at the time of admission;

(b) Preference or priority for admission to the project and for placement on the waiting list, which Owners shall maintain, shall be extended to those families of low or moderate incomes who have certificates of eligibility as displaced families;

(c) On forms approved by the Commissioner they will obtain from each prospective tenant a certification of income prior to admission to the project, and a recertification of income from each tenant at least every two years following the date of admission;

(d) If any recertification discloses that family income exceeds the limits established by the Commissioner and in effect at the time of recertification, they shall either terminate the lease, or require the tenant to pay an increased rental in an amount computed in accordance with the formula prescribed by the Commissioner;

(e) They shall require all tenants to execute a lease in the form prescribed by the Commissioner, and shall not rent any unit in the project for less than 30 days nor more than one year;

(f) The rent charged for each unit shall not exceed the upper limit of the range shown for such type of unit on the rental schedule approved in writing by the Commissioner, and shall include the reasonable use of all utilities shown on said schedule, but in no event shall the total gross monthly rents for all dwelling units exceed the gross monthly dwelling income for all units approved by the Commissioner on the rental schedule;

(g) No increase will be made in the amount of the gross monthly dwelling income for all units as shown on the rental schedule unless such increase is approved by the Commissioner, who will at any time entertain a written request for an increase properly supported by substantiating evidence and within a reasonable time shall:

(1) Approve a rental schedule that is necessary to compensate for any net increase, occurring since the last approved rental schedule, in taxes (other than income taxes) and operating and maintenance expenses over which Owners have no effective control, or

(2) Deny the increase stating the reasons therefor;

(h) If there are rent supplement units in the project, the determination as to the eligibility of tenants for admission to such units and the conditions of continued occupancy shall be in accordance with the Rent Supplement Contract executed by the Owners and the Commissioner which is incorporated in and made a part of this Agreement;

(i) They will rent commercial facilities, if any, at not less than the rental approved by the Commissioner;

(j) In selecting tenants they shall not discriminate against any person or persons by reason of the fact that there are children in the family.

5. Upon prior written approval of the Commissioner, the Owners may charge to and receive from any tenant such amounts as from time to time may be mutually agreed upon between the tenant and Owners for any facilities and/or services which may be furnished by the Owner or others to such tenant upon his request, in addition to the facilities and services included in the approved Rental Schedule.

6. Owners shall not without the prior written approval of the Commissioner:

(a) Convey, transfer, or encumber any of the mortgaged property, or permit the conveyance, transfer or encumbrance of such property;

(b) Assign, transfer, dispose of, or encumber any personal property of the project, including rents, or pay out any funds, other than from surplus cash, except for reasonable operating expenses and necessary repairs;

(c) Convey, assign, or transfer any beneficial interest in any trust holding title to the mortgaged property, or the interest of any general partner in a partnership owning the mortgaged property, or any right to manage or receive the rents and profits from the mortgaged property;

(d) Remodel, add to, reconstruct, or demolish any part of the mortgaged property or subtract from any real or personal property of the project;

(e) Make, or receive and retain, any distribution of assets or any income of any kind of the project except from surplus cash and except on the following conditions:

(1) All distributions shall be made only as of or after the end of a semiannual or annual fiscal period, and only as permitted by the law of the applicable jurisdiction; all such distributions in any one fiscal year shall be limited to six per centum on the initial equity investment, which shall be determined by the Commissioner; the right to such distribution shall be cumulative;

(2) No distribution shall be made from borrowed funds or prior to the completion of the project, or when there is any default under this agreement or under the note or mortgage;

(3) Any distribution of any funds of the project, which the party receiving such funds is not entitled to retain hereunder, shall be held in trust separate and apart from any other funds;

(4) There shall have been compliance with all outstanding notices of requirements for proper maintenance of the project.

(f) Engage, except for natural persons, in any other business or activity, including the operation of any other rental project, or incur any liability or obligation not in connection with the project;

(g) Require, as a condition of the occupancy or leasing of any unit in the project, any consideration or deposit other than the prepayment of the first month's rent plus a security deposit in an amount not in excess of one month's rent to guarantee the performance of the covenants of the lease. Any fund collected as security deposits shall be kept separate and apart from all other funds of the project in a trust account the amount of which shall at all times equal or exceed the aggregate of all outstanding obligations under said account;

(h) Permit the use of the dwelling accommodations of the project for any purpose except the use which was originally intended, or permit commercial use greater than that originally approved by the Commissioner;

(i) Incur any liability, direct or contingent, other than for current operating expenses, exclusive of the indebtedness secured by the mortgage and necessarily incident to the execution and delivery thereof;

(j) Pay any compensation, including wages or salaries, or incur any obligations, to themselves, or any officers, directors, stockholders, trustees, partners, beneficiaries under a trust, or to any of their nominees;

(k) Enter into any contract or contracts for supervisory or managerial services.

7. Owners shall maintain the mortgaged premises, accommodations and the grounds and equipment appurtenant thereto, in good repair and condition. In the event all or any of the buildings covered by the mortgage shall be destroyed or damaged by fire or other casualty, the money derived from any insurance on the property shall be applied in accordance with the terms of the insured mortgage.

8. Owners shall not file any petition in bankruptcy, or for a receiver, or in insolvency, or for reorganization or composition, or make any assignment for the benefit of creditors or to a trustee for creditors or permit an adjudication in bankruptcy, the taking possession of the mortgaged property or any part thereof by a receiver, or the seizure and sale of the mortgaged property or any part thereof under judicial process or pursuant to any power of sale and fail to have such adverse actions set aside within forty-five days.

9. (a) Owners shall provide for the management of the project in a manner satisfactory to the Commissioner. Any management contract entered into by Owners, or any of them, involving the project shall contain a provision that it shall be subject to termination, without penalty and with or without cause, upon written request by the Commissioner addressed to the Owners. Upon receipt of such request Owners shall immediately terminate the contract within a period of not more than thirty (30) days and shall make arrangements satisfactory to the Commissioner for continuing proper management of the project.

(b) Payment for services, supplies, or materials shall not exceed the amount ordinarily paid for such services, supplies, or materials in the area where the services are rendered or the supplies or materials furnished.

(c) The mortgaged property, equipment, buildings, plans, offices, apparatus, devices, books, contracts, records, documents, and other papers relating thereto shall at all times be maintained in reasonable condition for proper audit and shall be subject to examination and inspection at any reasonable time by the Commissioner or his duly authorized agents. Owners shall keep copies of all written contracts or other instruments which affect the mortgaged property, all or any of which may be subject to inspection and examination by the Commissioner or his duly authorized agents.

(d) The books and accounts of the operations of the mortgaged property and of the project shall be kept in accordance with the requirements of the Commissioner.

(e) Within sixty days following the end of each fiscal year the Commissioner shall be furnished with a complete annual financial report based upon an examination of the books and records of the mortgagor prepared in accordance with the requirements of the Commissioner, certified to by an officer or responsible Owner and, when required by the Commissioner, prepared and certified by a Certified Public Accountant, or other person acceptable to the Commissioner.

(f) At the request of the Commissioner, his agents, employees, or attorneys, the Owners shall furnish monthly occupancy reports and shall give specific answers to questions upon which information is desired from time to time relative to the income, assets, liabilities, contracts, operation, and condition of the property and the status of the insured mortgage.

(g) All rents and other receipts of the project shall be deposited in the name of the project in a bank, whose deposits are insured by the F.D.I.C. Such funds shall be withdrawn only in accordance with the provisions of this Agreement for expenses of the project or for distributions of surplus cash as limited by paragraph 6 (e) above. Any Owner receiving funds of the project other than by such distribution of surplus cash shall immediately deposit such funds in the project bank account and failing so to do in violation of this Agreement shall hold such funds in trust. Any Owner receiving property of the project in violation of this Agreement shall immediately deliver such property to the project and failing so to do shall hold such property in trust.

(h) The Rent Supplement Contract of even date herewith executed by Owner and the Commissioner is incorporated in and made a part of this Agreement.

10. Owners will comply with the provisions of any Federal, State, or local law prohibiting discrimination in housing on the grounds of race, color, creed, or national origin, including Title VI of the Civil Rights Act of 1964 (Public Law 88-352, 78 Stat. 241), all requirements imposed by or pursuant to the Regulations of the Department of Housing and Urban Development (24 CFR, Subtitle A, Part 1) issued pursuant to that title, and regulations issued pursuant to Executive Order 11063.

11. Upon a violation of any of the above provisions of this Agreement by Owners, the Commissioner may give written notice thereof to Owners, by registered or certified mail, addressed to the addresses stated in this Agreement, or such other addresses as may subsequently, upon appropriate written notice thereof to the Commissioner, be designated by the Owners as their legal business address. If such violation is not corrected to the satisfaction of the Commissioner within thirty days after the date such notice is mailed or within such further time as the Commissioner reasonably determines is necessary to correct the violation, without further notice the Commissioner may declare a default under this Agreement effective on the date of such declaration of default and upon such default the Commissioner may:

(a) (1) If the Commissioner holds the note - declare the whole of said indebtedness immediately due and payable and then proceed with the foreclosure of the mortgage;

(2) If said note is not held by the Commissioner - notify the holder of the note of such default and request holder to declare a default under the note and mortgage, and the holder after receiving such notice and request, but not otherwise, at its option, may declare the whole indebtedness due, and thereupon proceed with foreclosure of the mortgage, or assign the note and mortgage to the Commissioner as provided in the Regulations;

(b) Collect all rents and charges in connection with the operation of the project and use such collections to pay the mortgagor's obligations under this Agreement and under the note and mortgage and the necessary expenses of preserving the property and operating the project;

(c) Take possession of the project, bring any action necessary to enforce any rights of the Owners growing out of the project operation, and operate the project in accordance with the terms of this Agreement until such time as the Commissioner in his discretion determines that the Owners are again in a position to operate the project in accordance with the terms of this Agreement and in compliance with the requirements of the note and mortgage.

(d) Apply to any court, State or Federal, for specific performance of this Agreement, for an injunction against any violation of the Agreement, for the appointment of a receiver to take over and operate the project in accordance with the terms of the Agreement, or for such other relief as may be appropriate, since the injury to the Commissioner arising from a default under any of the terms of this Agreement would be irreparable and the amount of damage would be difficult to ascertain.

12. As security for the payment due under this Agreement to the reserve fund for replacements, and to secure the Commissioner because of his liability under the endorsement of the note for insurance, and as security for the other obligations under this Agreement, the Owners respectively assign, pledge and mortgage to the Commissioner their rights to the rents, profits, income and charges of whatever sort which they may receive or be entitled to receive from the operation of the mortgaged property, subject, however, to any assignment of rents in the insured mortgage referred to herein. Until a default is declared under this Agreement, however, permission is granted to Owners to collect and retain under the provisions of this Agreement such rents, profits, income, and charges, but upon default this permission is terminated as to all rents due or collected thereafter.

13. As used in this Agreement the term:

(a) "Mortgage" includes "Deed of Trust", "Chattel Mortgage", and any other security for the note identified herein, and endorsed for insurance or held by the Commissioner;

(b) "Mortgagee" refers to the holder of the mortgage identifed herein, its successors and assigns;

(c) "Mortgagor" means the original borrower under the mortgage and its successors and assigns;

(d) "Owners" refers to the persons named in the first paragraph hereof and designated as Owners, their successors and assigns;

(e) "Mortgaged Property" includes all property, real, personal, or mixed covered by the mortgage or mortgages securing the note endorsed for insurance or held by the Commissioner;

(f) "Project" includes the mortgaged property and all its other assets of whatsoever nature or wheresoever situate, used in or owned by the business conducted on said mortgaged property, which business is providing housing and other such activities as are incidental thereto;

(g) "Surplus Cash" means any cash remaining after:

(1) the payment of:

(i) All sums due or currently required to be paid under the terms of any mortgage or note insured or held by the Federal Housing Commissioner;

(ii) All amounts required to be deposited in the reserve fund for replacements;

(iii) All obligations of the project other than the insured mortgage unless funds for payment are set aside or deferment of payment has been approved by the Commissioner; and

(2) the segregation of:

(i) An amount equal to the aggregate of all special funds required to be maintained by the project;

(ii) All tenant security deposits held;

(h) "Residual Receipts" means any cash remaining at the end of a semiannual or annual fiscal period after deducting from surplus cash the amount of all distributions as that term is defined below and as limited by Paragraph 6(e) hereof;

(i) "Family" means (1) two or more persons related by blood, marriage, or operation of law who occupy the same unit; (2) a handicapped person who has a physical impairment which is expected to be of long continued and indefinite duration, substantially impedes his ability to live independently, and is of such a nature that his ability could be improved by more suitable housing conditions; (3) a single person, 62 years of age or older; or (4) a single person less than 62 years of age provided that occupancy by such persons is limited to 10% of the dwelling units in the project, unless the occupants receive rent supplement benefits pursuant to a rent supplement contract in which instance the 10 percent limitation shall not be applicable;

(j) "Distribution" means any withdrawal or taking of cash or any assets of the project, including the segregation of cash or assets for subsequent withdrawal within the limitations of Paragraph 6(e) hereof, and excluding payment for reasonable expenses incident to the operation and maintenance of the project;

(k) "Income" means the gross annual income of the family from all sources before taxes and withholding, after giving effect to exclusions allowed by the Commissioner;

(l) "Default" means a default declared by the Commissioner when a violation of this Agreement is not corrected to his satisfaction within the time allowed by this Agreement or such further time as may be allowed by the Commissioner after written notice.

14. This instrument shall bind, and the benefits shall inure to, the respective Owners, their heirs, legal representatives, executors, administrators, successors in office or interest, and assigns, and to the Commissioner and his successors so long as the contract of mortgage insurance continues in effect; and during such further time as the Commissioner shall be the owner, holder, or reinsurer of the mortgage, or obligated to reinsure the mortgage.

15. Owners warrant that they have not, and will not, execute any other agreement with provisions contradictory of, or in opposition to, the provisions hereof, and that, in any event, the requirements of this Agreement are paramount and controlling as to the rights and obligations set forth and supersede any other requirements in conflict therewith.

16. The invalidity of any clause, part or provision of this Agreement shall not affect the validity of the remaining portions thereof.

17. The following ~~Owners~~ partners of the owner (and all hereafter admitted partners) JOSEPH R. BIAFORA and ARDITH E. COWAN do not assume personal liability for payments due under the note and mortgage, to the reserve for replacements, or for matters not under their control, except:

(a) for funds or property of the project coming into their hands which, by the provisions hereof, they are not entitled to retain; and

(b) for their own acts and deeds or acts and deeds of others which they have authorized in violation of the provisions hereof.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals on the date first hereinabove written.

B & C COMPANY, a partnership,

By [signature]
Joseph R. Biafora, a partner (Owners)

Seal

WITNESS

_______________ By _______________

_______________ _______________

SECRETARY OF HOUSING AND URBAN DEVELOPMENT acting by and through the FEDERAL HOUSING COMMISSIONER

_______________ By [signature]
RAYMOND CARRASCO (*Authorized Agent*)

*(Add proper acknowledgements)* STATE OF CALIFORNIA )
COUNTY OF LOS ANGELES ) ss

On December 1st, 1970, before me, the undersigned, a Notary Public in and for the said State, personally appeared JOSEPH R. BIAFORA, known to me to be one of the partners of the partnership that executed the within instrument and acknowledged to me that such partnership executed the same

WITNESS my hand and official seal.

[signature]
Notary Public.

OFFICIAL SEAL
LORRAYNE S. WHITING
NOTARY PUBLIC CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY
My Commission Expires May 4, 1974

SCHEDULE A

Regulatory Agreement - 122-35090-LDP-SU

Lot 1 of Tract No. 22542 in the City of Los Angeles in the County of Los Angeles, State of California as per map Recorded in book 709 pages 65 and 66 of Maps, in the office of the county recorder of said county.

page one only

FHA FORM NO. 4161-D
(CORPORATE)
(Revised February 1963)

# DEED OF TRUST NOTE

$ 1,083,300.00

Raleigh, Wake County, North Carolina,
July 1, 19 69.

FOR VALUE RECEIVED, in money loaned, the undersigned, MARKET NORTH APARTMENTS #2, a partnership, consisting of E. N. Richards and R. A. Bryan, Jr., of Raleigh, North Carolina, promise(s) to pay to Cameron-Brown Company, or order, the principal sum of One Million Eighty-three Thousand Three Hundred and 00/100 -------------- Dollars ($ 1,083,300.00 ), with interest from date at the rate of Seven and one-half per centum ( 7-1/2 %) per annum on the unpaid balance. The principal and interest on this note are to be paid in monthly installments as follows:

Interest only on the unpaid principal balance payable monthly on the first day of August, 1969, and on the first day of each month thereafter to and including the first day of April, 1971.

Commencing on the first day of May, 1971, installments of interest and principal shall be paid in the sum of Seven Thousand One Hundred Twenty-eight and 88/100 Dollars ($7,128.88), each, such payments to continue monthly thereafter on the first day of each succeeding month until the entire indebtedness has been paid. In any event, the balance of principal, if any, remaining unpaid, plus accrued interest, shall be due and payable on April 1, 2011. The installments of interest and principal shall be applied first to interest at the rate of Seven and One-half per cent (7-1/2%) per annum upon the principal sum or so much thereof as shall from time to time remain unpaid, and the balance thereof shall be applied on account of principal.

Both principal and interest under this note, as well as the additional payments set forth in the Deed of Trust, shall be payable at the office of Cameron-Brown Company in Raleigh, North Carolina, or such other place as the holder may designate in writing

Privilege is reserved to pay the debt in whole or in an amount equal to one or more monthly payments on principal next due, on the first day of any month prior to maturity upon at least thirty (30) days' prior written notice to the holder. If this debt is paid in full prior to maturity and while insured under the National Housing Act, all parties liable for payment of this debt hereby agree to be jointly and severally bound to pay to the holder hereof any adjusted premium charge required by the applicable Regulations.

Notwithstanding any provision herein for a prepayment charge or premium, prepayments of principal which do not exceed an aggregate of fifteen per centum (15%) of the original principal sum of this note in any one calendar year, may be made without any prepayment charge or premium.

If default be made in the payment of any installment under this note, and if such default is not made good prior to the due date of the next such installment, the entire principal sum and accrued interest shall at once become due and payable without notice, at the option of the holder of this note. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. In the event of default in the payment of this note, and if the same is collected by an attorney at law, the undersigned hereby agree(s) to pay all costs of collection, including a reasonable attorney's fee

No default shall exist by reason of nonpayment of any required installment of principal so long as the amount of optional additional prepayments of principal already made pursuant to the privilege of prepayment set forth above equals or exceeds the amount of such required installment of principal.

Notwithstanding the prepayment privilege stated herein, no prepayments, total or partial, may be made without the prior written approval of the Federal Housing Commissioner.

All parties to this note, whether principal, surety, guarantor, or endorser, hereby waive presentment for payment, demand, protest, notice of protest, and notice of dishonor.

Signed ~~and sealed~~ this first day of July , 19 69.

The makers assume no personal liability for the payment hereof except as set out in the deed of trust of even date given to secure this indebtedness.

~~XXXXXX~~ [signature] Pearl D. Whicker By [signature] R. A. Bryan, Jr., Partner

THIS IS TO CERTIFY that this is the Note described in and secured by Deed of Trust of even date herewith and in the same principal amount as herein stated to Charles P. Landt, Trustee, and Cameron-Brown Company

~~Trustee(s)~~ and secured by real estate in the County of New Hanover , State of North Carolina.

Dated this first day of July , 19 69.

[signature: Kathryn M. Mogilnicki]
Notary Public

KATHRYN M. MOGILNICKI NOTARY PUBLIC WAKE COUNTY, N.C.

My commission expires March 20, 1970.

PAY TO THE ORDER OF

WITHOUT RECOURSE
CAMERON-BROWN COMPANY
By [signature]
Vice President

Date:

STATE OF NORTH CAROLINA

LOAN NO. 053-35017-LDP-SUP

**Deed Of Trust Note**

MARKET NORTH APARTMENTS #2
TO
CHARLES P. LANDT, TRUSTEE
CAMERON-BROWN COMPANY

No. 053-35017-LDP-SUP

Insured under 221 (d)(3) of the National Housing Act and Regulations thereunder of the Federal Housing Commissioner

In effect on June 27, 1969

To the extent of advances approved by the Commissioner

FEDERAL HOUSING COMMISSIONER
By [signature] (Authorized Agent)
Date July 16 1969

A total sum of $1,054,900 has been approved for insurance hereunder by the Commissioner

FEDERAL HOUSING COMMISSIONER
By [signature] (Authorized Agent)
Date July 28 1970

Reference is made to the Act and to the Regulations thereunder covering assignments of the insurance protection on this note.

45127-P Rev. 2/63 HUD-Wash., D. C.

Twenty-eight Thousand Four Hundred and 00/100 Dollars ($28,400.00) is credited to the principal amount due and the principal outstanding on this date is One Million Fifty-four Thousand Nine Hundred and 00/100 Dollars ($1,054,900.00). This is a reduction of principal and not an optional prepayment under the terms of this note and the deed of trust. Monthly payments are to be made at the times and in the amount provided in this note until the amount due is paid in full.

CAMERON-BROWN COMPANY

By [signature]
James C. Steadman, Vice President

Date: July 28, 1970.

MARKET NORTH APARTMENTS #2,
A Partnership

By [signature] (SEAL)
E. N. Richards, Partner

By [signature] (SEAL)
R. A. Bryan, Jr., Partner

Date: July 28, 1970.