**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ANAHEIM GARDENS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 93-655C |
| v. | ) | (Judge Margaret M. Sweeney) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to Rule 56(h)(1) of the Rules of the Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits the following proposed findings of uncontroverted fact in support of its motion for summary judgment.

1. Modern national housing policy began in the New Deal era with the passage of the National Housing Act of 1934. The Government initially provided low-income housing by subsidizing projects that were developed, owned, and managed by local public housing authorities. However, during the 1960's, to encourage private developers to construct, own, and manage low- and moderate-income housing, Congress enacted two programs – the section 221(d)(3) program and the section 236 program – that authorized the Federal Housing Administration, and later HUD, to provide mortgage insurance and other financial incentives. See Cienega Gardens v. United States, 331 F.3d 1319, 1234 (Fed. Cir. 2003).

2. Under the section 221(d)(3) program, developers received below-market mortgage interest rates. 12 U.S.C. § 1715l(d)(3). Under the section 236 program, developers received market-rate mortgages with an interest subsidy. 12 U.S.C. § 1715z-1.

3. When obtaining a HUD-insured mortgage to develop a project under the section 221(d)(3) and 236 programs, the owner generally executed a deed of trust note payable to a

private lending institution. The note evidenced a loan made pursuant to an agreement between the owner and the lending institution. Payment of the indebtedness was secured by a deed of trust on the subject property. The repayment term of the loan was generally forty years and the note specified the terms on which prepayment of the loan could occur. See Cienega Gardens, 331 F.3d at 1234.

4. Prepayment was also limited by Federal regulations, which prohibited prepayment of the insured debt without HUD approval for 20 years after final endorsement of the project's mortgage insurance. See, e.g., 24 C.F.R. § 221.524(a) (1970). The regulations governing prepayment were subject to amendment by HUD. See, e.g., 24 C.F.R. § 221.749 (1970).

5. To obtain Federal mortgage insurance, as well as other taxpayer-funded benefits, the developer entered into a "regulatory agreement" with HUD in which the owner accepted specific restrictions on the mortgaged property, including restrictions on tenant income, allowable rental rates, and cash distributions from project income. The regulatory agreement remained in force as long as the property was subject to the Government-insured mortgage. See Cienega Gardens, 331 F.3d at 1234-35.

6. The owners of Milwood Apartments, Joseph R. Biafora and Stephi Biafora, executed a deed of trust, a deed of trust note, and a regulatory agreement on January 4, 1971. DA1-11.

7. The loan evidenced by the deed of trust note was provided by Wells Fargo Bank, N.A. DA1. The loan's final maturity date was December 1, 2011. DA1

8. The final endorsement for Federal mortgage insurance was provided by HUD on January 13, 1972. DA2.

9. Rider A to the deed of trust note concerns prepayment of the insured debt. DA4. The rider provides that "[t]he debt evidenced by this Deed of Trust Note may not be prepaid, either in whole or in part, prior to the final maturity date hereof, without the prior written approval of the Federal Housing Commissioner." DA4.

10. The owner of Parthenia Manor Apartments, B & C Company, executed a deed of trust, a deed of trust note, and a regulatory agreement on December 1, 1970. DA12-22.

11. The loan evidenced by the deed of trust note was provided by Union Bank. DA12. The loan has a final maturity date of May 1, 2012. DA12

12. The final endorsement for Federal mortgage insurance was provided by HUD on October 30, 1972. DA13.

13. Rider A to the deed of trust note concerns prepayment of the insured debt. DA15. The rider provides that "[t]he debt evidenced by this Deed of Trust Note may not be prepaid, either in whole or in part, prior to the final maturity date hereof, without the prior written approval of the Federal Housing Commissioner." DA15.

14. The owners of Market North II Apartments, E.N. Richards and R.A. Bryan, Jr., executed a deed of trust, a deed of trust note, and a regulatory agreement on July 1, 1969. DA23-24, 70.

15. The loan evidenced by the deed of trust note was provided by Cameron-Brown Company. DA23. The loan has a final maturity date of April 1, 2011. DA23.

16. The final endorsement for Federal mortgage insurance was provided by HUD on July 28, 1970. DA24.

17. The preprinted deed of trust note states that "[p]rivilege is reserved to pay the debt in whole or in an amount equal to one or more monthly payments on principal next due, on the first day of any month prior to maturity upon at least thirty (30) days' prior written notice to the holder." DA23. However, the deed of trust note contains the following typed addition: "Notwithstanding the prepayment privilege stated herein, no prepayments, total or partial, may be made without the prior written approval of the Federal Housing Commissioner." DA23.

18. Thetford Properties III, LP, purchased the Market North II Apartments project and assumed the project's Government-insured mortgage on June 15, 1983. DA25-70.

19. The owners of 100 Centre Plaza, B-L Associates, executed a mortgage, a mortgage note, and a regulatory agreement on July 1, 1970. DA71-83.

20. The loan evidenced by the mortgage note was provided by the Massachusetts Housing Finance Agency ("MHFA"). DA71. Under the original mortgage documents, the owner had no contractual right to prepay until July 1, 1990. See DA71, 80-81.

21. On August 3, 1988, B-L Associates and the MHFA executed a disposition agreement, a new regulatory agreement, and a "Modification And Restatement Of Mortgage, Security Agreement And Assignment Of Lease And Rents." DA84-113. The modified mortgage provided that "[p]rior to twenty (20) years from the date hereof, the Borrower may not prepay the principal amount of the Mortgage Note in advance of the amortization schedule established by the Agency, unless the Agency consents to prepayment and the purpose of

prepayment is to convert the ownership of the Project to cooperative or condominium ownership by occupants." DA111.

22. Under the terms of the modified mortgage, the owner of 100 Center Plaza could not prepay and terminate affordability restrictions until August 3, 2008. DA111.

23. On December 27, 1990, the owner and MHFA amended the modified mortgage to permit prepayment with respect to 71 of the project's 216 units. DA116-21. In so doing, the parties stipulated that the owner would obtain incentives from HUD to maintain low-income affordability restrictions on the units, rather than prepay and terminate low-income affordability restrictions. DA117.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Brian M. Simkin

BRIAN M. SIMKIN
Assistant Director

s/ David A. Harrington

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0277
Fax: (202) 307-0972

August 1, 2008

Attorneys for Defendant

**CERTIFICATE OF FILING**

I hereby certify that on the 1st day of August 2008, a copy of "DEFENDANT'S PROPOSED FINDING OF UNCONTROVERTED FACT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ David A. Harrington