**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ANAHEIM GARDENS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 93-655C |
| | ) | (Judge Margaret M. Sweeney) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' RESPONSE AND OPPOSITION TO DEFENDANT'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Dated: August 29, 2008

Harry J. Kelly
NIXON PEABODY LLP
401 9th Street N.W., Suite 900
Washington, D.C. 20004
P: (202) 585-8000
F: (202) 585-8080
hkelly@nixonpeabody.com

Attorney for Plaintiffs

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

ARGUMENT ........ 2

A. The 221(d)(3) Program ........ 2

B. HUD Regulations and Policies Permitted Milwood, Parthenia Manor and Market North #2 to Prepay Their Mortgages Despite Deed of Trust Note Language to the Contrary ........ 2

C. HUD's Processing of Milwood, Parthenia Manor, and Market North #2 Under LIHPRHA Establishes That Each Had a Right to Prepay the Mortgage Without HUD's Consent But For Congress' Enactment of ELIHPA and LIHPRHA ........ 6

D. 100 Centre Plaza's Relevant Mortgage Note Permitted Prepayment of the Mortgage Without HUD's Consent ........ 8

CONCLUSION ........ 11

# TABLE OF AUTHORITIES

## Cases

*Cienega Gardens v. The United States*,
1996 U.S. Claims LEXIS 200 (Ct. Fed. Cl. 1996),
*vacated and remanded on other grounds*, 162 F.3d 1123 (Fed. Cir. 1998)................................. 8

*Filtration Dev. Co., LLC v. United States*,
60 Fed. Cl. 371 (Fed. Cl. 2004) ......................................................................................... 8

## Statutes

Section 221(d)(3) of the National Housing Act ..................................................................... passim

12 U.S.C.S. § 4119(1)(A)(i)............................................................................................. 6

12 U.S.C.S. § 4119(1)(B).................................................................................................. 6

12 U.S.C.S. § 17151(d)(3) ................................................................................................ 2

24 C.F.R. § 221.524 ........................................................................................................ 3, 4, 7

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ANAHEIM GARDENS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 93-655C |
| | ) | (Judge Margaret M. Sweeney) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' RESPONSE AND OPPOSITION TO DEFENDANT'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs Joseph R. Biafora and Stephi Biafora, owners of Milwood Apartments and Parthenia Manor Apartments, Thetford Properties, III, L.P., owner of Market North Apartments #2, and C-W Associates, L.P., owner of 100 Centre Plaza, submit this memorandum in opposition to Defendant's motion for partial summary judgment. Defendant's motion is premised on the faulty notion that Plaintiffs cannot establish the existence of an essential element of their regulatory taking claims – i.e., a contractual right to prepay their mortgages without HUD's consent prior to the enactment of the Emergency Low Income Housing Preservation Act ("ELIHPA") or the Low Income Housing Preservation and Resident Homeownership Act of 1990 ("LIHPRHA"). However, as fully set forth below, there is absolutely no failure of proof. Plaintiffs' had a right to prepay their mortgages without HUD's consent prior to the enactment of ELIHPA and/or LIHPRHA. Thus, the Government's motion for partial summary judgment must be denied.[1]

---

[1] These and the other Plaintiffs will file a motion for summary judgment on ripeness issues on September 22, 2008. This response is intended only to address the grounds for summary judgment contained in the Government's motion and does not constitute a cross-motion for summary judgment on ripeness.

## ARGUMENT

### A. The 221(d)(3) Program

In 1961, Congress incorporated into § 221(d)(3) of the National Housing Act a program to encourage the private development of low to moderate income housing. *See* 12 U.S.C.S. § 17151(d)(3), Plaintiffs' Appendix ("PA") at 001-31. The program became known as the § 221(d)(3) program and it was administered by the Department of Housing and Urban Development ("HUD"). Under the program, HUD insured low interest 40-year mortgages. *Id.* Those mortgages were made available to developers to construct and maintain qualified housing. *Id.* Three of the Plaintiffs at issue in this motion took advantage of the program, and Milwood Apartments ("Milwood"), Parthenia Manor Apartments ("Parthenia Manor") and Market North Apartments #2 ("Market North #2") were each developed as § 221(d)(3) projects. *See* Defendant's Appendix ("DA") at 2, 13, and 24 (indicating that the properties were insured under the § 221(d)(3) program). In addition, initially, each of these § 221(d)(3) projects received rent supplement assistance from HUD. *See, e.g.*, PA at 036-39, 040-43, and 044-45 at ¶ 4.

The other Plaintiff at issue in this motion, 100 Centre Plaza, participated in the Government's § 236 program. *See* PA at 046-53.

### B. HUD Regulations and Policies Permitted Milwood, Parthenia Manor and Market North #2 to Prepay Their Mortgages Despite Deed of Trust Note Language to the Contrary

The Government correctly points out that the mortgage notes for Milwood, Parthenia Manor, and Market North #2 each expressly stated that the property owner had no right to prepay the mortgage without HUD's consent during the life of the mortgage. *See* DA at 4, 15, and 23. Plaintiffs do not dispute this fact. However, everything that the Government concludes based on this undisputed fact is based on a misapprehension of the applicable law, and an incomplete

analysis of the relevant facts. Essentially, the Government argues that because the Plaintiffs' mortgage notes required HUD's consent to prepay the mortgage throughout the 40-year life of the mortgage, the Government could not have taken away a contract right when it imposed the statutory prepayment restrictions in ELIHPA and LIHPRHA. With nothing taken, the Government argues, Plaintiffs cannot state an essential element of their regulatory takings claims. From this, the Government concludes that it is entitled to summary judgment. The Government is wrong.

As the documents submitted by the Government show, the Milwood mortgage note was executed on January 4, 1971. DA at 2. The Parthenia Manor mortgage note was executed on December 1, 1970 (DA at 13), and the Market North #2 mortgage note was executed on July 1, 1969. DA at 24. When the mortgages notes were executed, and for several years thereafter, each property received rent supplement assistance payments. *See* PA at 036-39, 040-43, and 044-45 at ¶ 4. Under the then-applicable HUD regulations, and consistent with the mortgage note language, as a § 221(d)(3) property receiving rent supplement assistance, each project was precluded from prepaying the mortgage for the entire 40-year term without HUD's consent. *See* 24 C.F.R. § 221.524, PA at 054-57.[2] However, there came a time when each project stopped receiving rent supplement assistance, and this fact is critical to determining each project's right to prepay the mortgage without HUD's consent prior to the enactment of ELIHPA and LIHPRHA

---

[2] The regulation, which remained unchanged during the relevant period of time, was titled "Prepayment Privileges." It stated that prepayment of a mortgage note in full without the Commissioner's consent was permitted where the mortgagor was a limited distribution type not receiving rent supplement assistance and the prepayment occurred twenty years after the date of final endorsement of the mortgage note. 24 C.F.R. § 221.524 (a)(ii).

Specifically, in 1985, Milwood converted from receiving rent supplement assistance to receiving Section 8 Loan Management Set Asides ("Section 8 LMSA"). *See* PA at 058 (indicating an initial term beginning June 1, 1985). Similarly, two years earlier in 1983, Parthenia Manor stopped receiving rent supplement assistance, and started receiving Section 8 LMSA. *See* PA at 059 (indicating an initial term beginning September 1, 1983).[3] And, as early as 1981, Market North #2 converted to Section 8 LMSA from rent supplement assistance. *See* PA at 060 (indicating an initial term beginning December 1, 1981). Thus, prior to enactment of ELIHPA (February 1988) or LIHPRHA (November 1990), each of these projects was a § 221(d)(3) project that was not receiving rent supplement assistance.

Once a project converted from rent supplement assistance to Section 8 LMSA, it was no longer subject to the 40-year prepayment lockout applicable to rent supplement properties, and became subject only to the standard 20-year prepayment restriction contained in 24 C.F.R. § 221.524. *See* PA at 061-63, 062 (HUD letter concluding that if a project converted from rent supplement assistance to Section 8 it was no longer subject to the prepayment restriction in § 221.524). In other words, under § 221.524, each of the projects became eligible as of the effective date of their conversion to Section 8 LMSA to prepay their mortgages after the expiration of twenty years from date of final endorsement. *See* PA at 064-191, 073 (LIHPRHA Interim Rule). Further, and importantly, that regulatory prepayment right trumped any contrary language in the mortgage note for the project. As HUD stated, "if the applicable program regulations at 221.524 . . . allow prepayment at the expiration of 20 years after final endorsement, but the mortgage note prohibits prepayment without HUD's consent for the full

3 HUD advised the owner of Parthenia that by converting to Section 8, the 40 year prepayment lock-out applicable to rent supplement properties would terminate, and that the project would only be subject to the standard 20-year prepayment restriction applicable to § 221(d)(3) properties. Declaration of Joseph R. Biafora, Sr. at ¶ 4, PA 044.

term of the mortgage, HUD . . .construes the regulation as superseding the prepayment prohibition in the mortgage note." PA at 192-278, 200-01. Thus, Milwood, Parthenia Manor, and Market North #2 each, notwithstanding the language of their mortgage notes, had a right to prepay their mortgages 20 years from the date of final endorsement without HUD's consent, and it is that right that underlies Plaintiffs' claims.

HUD's policy that its regulations supplant and supersede contrary mortgage language was clearly reiterated in a May 1, 1995 letter from HUD's Office of the General Counsel. In this letter, HUD's General Counsel ruled on the eligibility of an owner of a § 221(d)(3) project to prepay the mortgage in the face of an express prepayment prohibition in the mortgage note. *See* PA at 279-81 (HUD letter addressing the LIHPRHA eligibility of Maunakea Tower). Consistent with its earlier position in 1991, HUD's General Counsel again concluded that a prepayment prohibition contained in the relevant mortgage note did not override the directly conflicting regulation which permitted prepayment of the mortgage without HUD's consent after the expiration of 20 years. *Id.* at 281. The letter again explained that HUD regulations supersede contrary language in a mortgage note. *Id.* And, in support of its conclusion, HUD's Office of General Counsel pointed out that both the preamble to, and the Interim Rule for LIHPRHA, reflected HUD's policy that where there is a conflict between HUD regulations and mortgage note language, the regulations govern. *Id.*

In this case, HUD's final endorsement of Milwood's mortgage note was dated January 13, 1972, Parthenia Manor's final endorsement date was October 30, 1972, and Market North #2's final endorsement date was July 28, 1970. DA at 2, 13 and 24. Thus, pursuant to HUD's regulations, after January 12, 1992, Milwood had a right to prepay its mortgage note without HUD's consent, despite the contrary language in the note cited by the Government in its motion.

Similarly, after October 29, 1992, Parthenia Manor had a right to prepay its mortgage without HUD's consent, notwithstanding the contrary language of its note. Market North #2, similarly, had a right to prepay its mortgage note, despite the contrary note language, after July 27, 1990. In sum, each of the challenged properties had a right to prepay their mortgage notes without HUD's consent, and when ELIHPA and LIHPRHA were enacted, that right to prepay was taken away. Thus, the Government's motion for summary judgment is based on an incorrect premise – i.e., that the properties lacked a contractual right to prepay – and it must be denied.

### C. HUD'S Processing of Milwood, Parthenia Manor, and Market North #2 Under LIHPRHA Establishes That Each Had a Right to Prepay the Mortgage Without HUD's Consent But For Congress' Enactment of ELIHPA and LIHPRHA

Although not necessary in light of the preceding analysis, there is further proof of the existence of each property's right to prepay their mortgage prior to ELIHPA and LIHPRHA. In fact, the Court need look no further than HUD's administrative processing of each of the challenged properties under LIHPRHA. Under LIHPRHA, only projects which were eligible to prepay – i.e., had a right to prepay, whether considered contractual or regulatory – without HUD's prior approval could be deemed "eligible low income housing." *See* 12 U.S.C.S. § 4119(1)(B), PA at 283. Only projects deemed "eligible low income housing" were entitled to obtain incentives under LIHPRHA.

There was a two part analysis HUD conducted to determine if a § 221(d)(3) rent supplement project was "eligible low income housing" entitled to proceed under LIHPRHA. First, HUD had to determine that the property was housing financed by a loan or mortgage insured or held by the Secretary of HUD under 221(d)(3) of the National Housing Act and that it was receiving loan management assistance under Section 8 due to a conversion from rent supplement assistance. *See* 12 U.S.C.S. § 4119(1)(A)(i), PA at 282. Second, HUD had to

conclude that, under either its regulations or a contract in effect before February 5, 1988 (the date ELIHPA was enacted), the property was eligible within 24 months to prepay its mortgage note without prior approval of the Secretary. *Id.* Here, as outlined above, each project was a § 221(d)(3) rent supplement project that had converted from rent supplement assistance to Section 8 LMSA, and by virtue of HUD regulation § 221.524, and the project's final endorsement date, it was entitled to prepay the mortgage without HUD's consent prior to February 1988. Thus, HUD correctly concluded that each of the challenged properties was "eligible low income housing" as evidenced by HUD's processing of the properties under LIHPRHA.

In fact, HUD took each of these properties completely through the LIHPRHA process and approved each to receive incentives. Indeed, HUD entered into and signed a Use Agreement with each of the properties. For example, the Milwood and Parthenia Manor Use Agreements were both signed by HUD on June 1, 1994. PA at 285-95 and 296-308. Each agreement expressly acknowledged that the respective property was "eligible low income housing" as defined by LIHPRHA. PA at 285 and 296. Similarly, Market North #2's Use Agreement was entered into and signed by HUD on April 10, 1995. PA at 309-21. Notably, that agreement employs slightly different language, and it expressly states in the third "whereas" clause that Market North #2 was "eligible to prepay the mortgage." *See* PA at 309. Thus, the Government's current argument – i.e., that these properties do not have a viable regulatory taking claim, because they lacked a contractual right to prepay their mortgages without HUD's consent prior to enactment of ELIHPA and LIHPRHA – is disingenuous, and without merit.

Indeed, the Government argued in *Cienega Gardens*, a lawsuit similar to the present action, that mortgage prepayment eligibility "**was always. . . determined by applicable**

**regulations**," not the language in the mortgage note between a lender and the project owner. *See Cienega Gardens v. The United States*, 1996 U.S. Claims LEXIS 200, at *7 (Ct. Fed. Cl. 1996), *vacated and remanded on other grounds*, 162 F.3d 1123 (Fed. Cir. 1998) (emphasis added). Moreover, in this very matter, the Government agreed with these Plaintiffs, among others, that they were eligible to prepay their mortgages on the prepayment dates set forth above. *See* PA at 322-32. The Government's agreement with the prepayment eligibility dates for these properties is a judicial admission that the properties were eligible to prepay and it is binding on the Government. *See, e.g.***,** *Filtration Dev. Co., LLC v. United States*, 60 Fed. Cl. 371 (Fed. Cl. 2004) (citations omitted) (judicial admissions render a fact indisputable). Consequently, the Government's motion for summary judgment must be denied.

### D. 100 Centre Plaza's Relevant Mortgage Note Permitted Prepayment of the Mortgage Without HUD's Consent

In addition to moving for partial summary judgment on Milwood, Parthenia Manor and Market North #2, the Government moves for summary judgment seeking dismissal of the regulatory taking claim of 100 Centre Plaza. According to the Government, a document entitled "First Amendment to Modification and Restatement of Mortgage, Security Agreement and Assignment of Leases and Rents," executed in December 1990, precluded the owner of 100 Centre Plaza from prepaying its mortgage. Specifically, the Government claims that the owner of 100 Centre Plaza "stipulated" in this document that it would obtain incentives under LIHPRHA, rather than prepay the mortgage. Thus, the Government reasons, the owner of 100 Centre Plaza had no right to prepay taken by LIHPRHA, and consequently, the project has no regulatory taking claim against the Government. The Government is again wrong.

100 Centre Plaza was financed by the Massachusetts Housing Finance Agency ("MHFA"), and thus, its mortgage history is somewhat different from many of the other

Plaintiffs in this case. 100 Centre Plaza entered into its original mortgage in July 1970. *See* DA at 71-83. According to the terms of that mortgage, it is undisputed that the project had a right to prepay the mortgage note without consent after 20 years, or in July 1990. DA at 80. In September 1971, 100 Centre Plaza entered into an Interest Reduction Contract with HUD providing that 71 units of the project would receive § 236 subsidies. *See* PA at 046-53. On August 3, 1988, 100 Centre Plaza entered into a Modification and Restatement of Mortgage, Security Agreement and Assignment of Leases and Rents (the "August 1988 Modification").[4] DA at 101-113. This mortgage document contained a 20 year prepayment lock-out period which appeared to override the term of the earlier note and in effect delayed the project's ability to prepay the mortgage without consent until August 2008. *See* DA at 111.

In early 1990, 100 Centre Plaza submitted an ELIHPA Notice of Intent to Prepay. *See* PA at 333-37. That notice was rejected by HUD, because HUD concluded that the notice was premature, since according to HUD, the project was not entitled to prepay without consent until August 2008 given the August 1988 Modification. *See* PA at 338-39. This rejection letter triggered a series of extensive discussions between 100 Centre Plaza, HUD and the MHFA regarding the project's right to prepay its mortgage without consent. *See* PA at 338-60. Those discussions culminated in the execution of the First Amendment to Modification and Restatement of Mortgage, Security Agreement and Assignment of Leases and Rents (the "First Amendment") upon which the Government's motion relies. DA at 116-121. As is clear from the language of the documents, the modification expressly and unambiguously permitted prepayment of the mortgage on 100 Centre Plaza, provided that certain conditions related to the payment of bonds issued by MHFA, were met. DA at 117. Contrary to Government counsel's

---

4 There were several amendments and modifications to the mortgage preceding this document, but for purposes of this motion, those are not relevant.

assertion in the instant motion, there is absolutely nothing in the plain language of the First Amendment that leads to a conclusion that there was a "stipulation" by 100 Centre Plaza to obtain incentives and give up its right to prepay its mortgage. In addition to expressly reinstating the property's prepayment right, the note simply states in a separate sentence that the project would use its best efforts to obtain LIHPRHA incentives. *Id.* As the owner explained in the 30(b)(6) deposition for this property in the context of discussing a related document, that was certainly not an agreement or abrogation of 100 Centre Plaza's unfettered right to prepay, but was instead intended by the parties to confirm the owner's right to prepay by correcting the errors in the Massachusetts loan documents. *See* PA at 361-77 (Excerpt of the Deposition of C-W Associates, LP, Jeffrey Stern Designee, dated July 18, 2007 ("Stern Dep")).

Moreover, in accord with a request from HUD after HUD had reviewed a draft of the First Amendment prior to its execution (PA at 357-58), 100 Centre Plaza obtained an opinion from MHFA which stated that the § 236 portion of the 100 Centre Plaza mortgage was eligible to prepay without constraint because the required contingencies had been satisfied. *See* PA at 378. As is plain from that letter, that opinion was provided to HUD. *Id.* Immediately thereafter, 100 Centre Plaza submitted another Notice of Intent (this time under LIHPRHA). *See* PA at 379-81. The cover letter to that submission explained the status and resolution of the issue of the project's eligibility to prepay. *Id.*

The Notice of Intent was accepted by HUD, and HUD proceeded to process 100 Centre Plaza under LIHPRHA. *See*, *e.g.*, PA at 382-86 (HUD letter stating that the notice was received and HUD had determined that the project was an "eligible project"). Indeed, the processing concluded with HUD's approval of incentives. *See* PA at 387-95 (HUD letter approving plan of action); *see also* PA at 396-97. Accordingly, there is no question that HUD had finally agreed

that 100 Centre Plaza had a right to prepay its mortgage note prior to the enactment of ELIHPA and LIHPRHA. Had it not done so, HUD would not, and could not, have processed the project under LIHPRHA concluding with approval of incentives. As a result, the Government's motion for summary judgment must be denied.

**CONCLUSION**

Based on the foregoing, Plaintiffs request that the Court find that each of the challenged properties had a right to prepay its mortgage without HUD's consent prior to enactment of ELIHPA and LIHPRHA, and deny the Government's motion for partial summary judgment in its entirety.

Dated: August 29, 2008

NIXON PEABODY LLP

/s/ Harry J. Kelly
Harry J. Kelly
401 9th Street N.W., Suite 900
Washington, D.C. 20004
P: (202) 585-8000
F: (202) 585-8080
hkelly@nixonpeabody.com

Attorney for Plaintiffs

# CERTIFICATE OF FILING

I certify that on the 29th day of August 2008, a copy of "PLAINTIFFS' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Harry J. Kelly
Harry J. Kelly