**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ANAHEIM GARDENS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 93-655C |
| | ) | (Judge Margaret M. Sweeney) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

# PLAINTIFFS' APPENDIX

**TABLE OF CONTENTS**

12 U.S.C.S. § 17151(d)(3) .......... PA 001

Declaration in Support of Plaintiffs' Response and Opposition to Defendant's Motion for Partial Summary Judgment .......... PA 032

December 1970 Rent Supplement Contract for Milwood Apartments .......... PA 036

July 1969 Rent Supplement Contract for Market North Apartments #2 .......... PA 040

Biafora Declaration .......... PA 044

September 1971 Interest Reduction Contract for C-W Associates Covering 100 Centre Plaza .......... PA 046

24 C.F.R. § 221.524 (1970) .......... PA 054

1990 Housing Assistance Payments (HAP) Contract Renewal for Milwood Apartments .......... PA 058

1989 Housing Assistance Payments (HAP) Contract Renewal for Parthenia Manor .......... PA 059

1986 Housing Assistance Payments (HAP) Contract Renewal for Market North Apartments #2 .......... PA 060

Memorandum Dated July 17, 1992 from David R. Cooper, Assistant General Counsel Multifamily Mortgage Division Regarding Conversion of Rent Supplement Units to Section 8 Assistance .......... PA 061

Prepayment of a HUD-Insured Mortgage by an Owner of Low Income Housing, 51 Fed. Reg. 11,992 (Apr. 8, 1992) .......... PA 064

Prepayment of a HUD-Insured Mortgage by an Owner of Low Income Housing, 56 Fed. Reg. 20,262 (May 2, 1991) .......... PA 192

Letter Dated May 1, 1995 from David R. Cooper for John J. Daly, Associate General Counsel Office of Insured Housing .......... PA 279

12 U.S.C.S. § 4119(1) .......... PA 282

Use Agreement and Amendment of Regulatory Agreement for Milwood Apartments .......... PA 285

Use Agreement and Amendment of Regulatory Agreement for

Parthenia Manor Apartments ........ PA 296

Use Agreement and Amendment of Existing Regulatory Agreement for Market North #2 Apartments ........ PA 309

Defendant's Counter-List of Anniversary Dates Dated June 23, 1995 ........ PA 322

Letter Dated January 16, 1990 from Pamela Goodman to Frank Malone with Attachment ........ PA 333

Letter Dated March 20, 1990 from Nick M. Nibbi to Pamela Goodman ........ PA 338

Letter Dated April 17, 1990 from Pamela Goodman to David L. Keene ........ PA 340

Letter Dated August 22, 1990 from Pamela Goodman to Nick M. Nibbi with Attachment ........ PA 344

Letter Dated September 13, 1990 from Mary Noble to Pamela Goodman ........ PA 352

Letter Dated October 23, 1990 from Kathleen M. Sheehan, Esq. to Patricia P. Allen, Esq. ........ PA 354

Letter Dated October 31, 1990 from Kathleen M. Sheehan, Esq. to Patricia P. Allen, Esq. ........ PA 355

Letter Dated November 26, 1990 from Kathleen M. Sheehan, Esq. to Patricia P. Allen, Esq. ........ PA 356

Letter Dated December 26, 1990 from Kathy E. Machan, Esq. to Kathleen M. Sheehan, Esq. ........ PA 357

Letter Dated December 27, 1990 from Kathleen M. Sheehan, Esq. to David L. Keene ........ PA 359

Deposition of C-W Associates, LP, Jeffrey Stern, Designee 118:4 – 127:22, July 18, 2007........ PA 361

Letter Dated December 27, 1990 from Edward T. Pollack, Esq. to Nick M. Nibbi ........ PA 378

Letter Dated December 28, 1990 from Kathleen M. Sheehan, Esq. to Nick M. Nibbi ........ PA 379

Letter Dated October 29, 1992 from Maureen Fahey to Roger W. Stern with Attachments ........ PA 382

Letter Dated September 27, 1995 from Jeanne M. McHallam to Roger W. Stern ............ PA 387

Memorandum Dated September 28, 1995 from Jeanne M. McHallam to
Kerry Mulholland Regarding Plan of Action – Funding Request ............................... PA 396

8 of 41 DOCUMENTS

UNITED STATES CODE SERVICE
Copyright © 2008 Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved

*** CURRENT THROUGH PL 110-316, APPROVED 8/14/2008 ***
*** WITH A GAP OF 110-315 ***

TITLE 12. BANKS AND BANKING
CHAPTER 13. NATIONAL HOUSING
MORTGAGE INSURANCE

**Go to the United States Code Service Archive Directory**

*12 USCS § 1715l*

§ 1715l. Housing for moderate income and displaced families

(a) Purpose. This section is designed to assist private industry in providing housing for low and moderate income families and displaced families.

(b) Authorization. The Secretary is authorized, upon application by the mortgagee, to insure under this section as hereinafter provided any mortgage (including advances during construction on mortgages covering property of the character described in paragraphs (3) and (4) of subsection (d) of this section) which is eligible for insurance as provided herein and, upon such terms and conditions as the Secretary may prescribe, to make commitments for the insurance of such mortgages prior to the date of their execution or disbursement thereon.

(c) Definitions. As used in this section, the terms "mortgage," "first mortgage," "mortgagee," "mortgagor," "maturity date" and "State" shall have the same meaning as in section 201 of this Act [*12 USCS § 1707*].

(d) Eligibility for insurance; conditions; limits. To be eligible for insurance under this section, a mortgage shall--

(1) have been made to and be held by a mortgagee approved by the Secretary as responsible and able to service the mortgage properly;

(2) be secured by property upon which there is located a dwelling conforming to applicable standards prescribed by the Secretary under subsection (f) of this section, and meeting the requirements of all State laws, or local ordinances or regulations, relating to the public health or safety, zoning, or otherwise, which may be applicable thereto, and shall involve a principal obligation (including such initial service charges, appraisal, inspection, and other fees as the Secretary shall approve) in an amount (A) not to exceed (i) $ 31,000 (or $ 36,000, if the mortgagor's family includes five or more persons) in the case of a property upon which there is located a dwelling designed principally for a single-family residence, (ii) $ 35,000 in the case of a property upon which there is located a dwelling designed principally for a two-family residence, (iii) $ 48,600 in the case of a property upon which there is located a dwelling designed principally for a three-family residence, or (iv) $ 59,400 in the case of a property upon which there is located a dwelling designed principally for a four-family residence, except that the Secretary may increase the foregoing amounts to not to exceed $ 36,000 (or $ 42,000 if the mortgagor's family includes five or more persons), $ 45,000, $ 57,600, and $ 68,400 respectively, in any geographical area where he finds that cost levels so require; and (B) not to exceed the appraised value of the property (as of the date the mortgage is accepted for insurance): *Provided,* That (i)(1) in the case of a displaced family, he shall have paid on account of the property at least $ 200 in the case of a single-family

dwelling, $ 400 in the case of a two-family dwelling, $ 600 in the case of a three-family dwelling, and $ 800 in the case of a four-family dwelling, or (2) in the case of any other family, he shall have paid on account of the property at least 3 per centum of the Secretary's estimate of its acquisition cost (excluding the mortgage insurance premium paid at the time the mortgage is insured), in cash or its equivalent; which amount in either instance may include amounts to cover settlement costs and initial payments for taxes, hazard insurance, and other prepaid expenses; or (ii) in the case of repair and rehabilitation, the amount of the mortgage shall not exceed the sum of the estimated cost of repair and rehabilitation and the Secretary's estimate of the value of the property before repair and rehabilitation, except that in no case involving refinancing shall such mortgage exceed such estimated cost of repair and rehabilitation and the amount (as determined by the Secretary) required to refinance existing indebtedness secured by the property: *Provided further,* That the mortgagor shall to the maximum extent feasible be given the opportunity to contribute the value of his labor as equity in such dwelling; or

(3) if executed by a mortgagor which is a public body or agency (and, except with respect to a project assisted or to be assisted pursuant to section 8 of the United States Housing Act of 1937 [*42 USCS § 1437f*], which certifies that it is not receiving financial assistance from the United States exclusively pursuant to such Act), a cooperative (including an investor-sponsor who meets such requirements as the Secretary may impose to assure that the consumer interest is protected), or a limited dividend corporation (as defined by the Secretary), or a private nonprofit corporation or association, or other mortgagor approved by the Secretary, and regulated or supervised under Federal or State laws or by political subdivisions of States, or agencies thereof, or by the Secretary under a regulatory agreement or otherwise, as to rents, charges, and methods of operation, in such form and in such manner as in the opinion of the Secretary will effectuate the purposes of this section--

(i) [Repealed]

(ii) (I) not exceed, for such part of the property or project as may be attributable to dwelling use (excluding exterior land improvements as defined by the Secretary), $ 42,048 [$ 48,328] per family unit without a bedroom, $ 48,481 [$ 55,722] per family unit with one bedroom, $ 58,469 [$ 67,202] per family unit with two bedrooms, $ 74,840 [$ 86,020] per family unit with three bedrooms, and $ 83,375 [$ 95,830] per family unit with four or more bedrooms; except that as to projects to consist of elevator-type structures the Secretary may, in his discretion, increase the dollar amount limitations per family unit to not to exceed $ 44,250 [$ 50,859] per family unit without a bedroom, $ 50,724 [$ 58,300] per family unit with one bedroom, $ 61,680 [$ 70,893] per family unit with two bedrooms, $ 79,793 [$ 91,712] per family unit with three bedrooms, and $ 87,588 [$ 100,672] per family unit with four or more bedrooms, as the case may be, to compensate for the higher costs incident to the construction of elevator-type structures of sound standards of construction and design; (II) the Secretary may, by regulation, increase any of the dollar amount limitations in subclause (I) (as such limitations may have been adjusted in accordance with section 206A of this Act [*12 USCS § 1712a*]) by not to exceed 170 percent in any geographical area where the Secretary finds that cost levels so require and by not to exceed 170 percent, or 215 percent in high cost areas, where the Secretary determines it necessary on a project-by-project basis, but in no case may any such increase exceed 90 percent where the Secretary determines that a mortgage purchased or to be purchased by the Government National Mortgage Association in implementing its special assistance functions under section 305 of this Act (as such section existed immediately before November 30, 1983) is involved;

(iii) not exceed (1) in the case of new construction, the amount which the Secretary estimates will be the replacement cost of the property or project when the proposed improvements are completed (the replacement cost may include the land, the proposed physical improvements, utilities within the boundaries of the land, architect's fees, taxes, interest during construction, and other miscellaneous charges incident to construction and approved by the Secretary), or (2) in the case of repair and rehabilitation, the sum of the estimated cost of repair and rehabilitation and the Secretary's estimate of the value of the property before repair and rehabilitation: *Provided,* That the mortgage may involve the financing of the purchase of property which has been rehabilitated by a local public agency with Federal assistance pursuant to section 110(c)(8) of the Housing Act of 1949 [*42 USCS § 1460*(c)(8)], and, in such case, the amount of the mortgage shall not exceed the appraised value of the property as of the date the mortgage is accepted for insurance: *Provided further,* That in the case of any mortgagor other than a nonprofit corporation or association, cooperative (including an investor-sponsor), or public body, or a mortgagor meeting the special requirements of subsection (e)(1), the amount of the mortgage shall not exceed 90 per centum of the amount otherwise authorized under this section: *Provided further,* That such property or project, when constructed, or repaired and rehabilitated, shall be

for use as a rental or cooperative project, and low and moderate income families or displaced families shall be eligible for occupancy in accordance with such regulations and procedures as may be prescribed by the Secretary and the Secretary may adopt such requirements as he determines to be desirable regarding consultation with local public officials where such consultation is appropriate by reason of the relationship of such project to projects under other local programs; or

(4) if executed by a mortgagor and which is approved by the Secretary--

(i) [Repealed]

(ii) (I) not exceed, for such part of the property or project as may be attributable to dwelling use (excluding exterior land improvements as defined by the Secretary), $ 37,843 [$ 43,493] per family unit without a bedroom, $ 42,954 [$ 49,370] per family unit with one bedroom, $ 51,920 [$ 59,675] per family unit with two bedrooms, $ 65,169 [$ 74,903] per family unit with three bedrooms, and $ 73,846 [$ 84,878] per family unit with four or more bedrooms; except that as to projects to consist of elevator-type structures the Secretary may, in his discretion, increase the dollar amount limitations per family unit not to exceed $ 40,876 [$ 46,981] per family unit without a bedroom, $ 46,859 [$ 53,858] per family unit with one bedroom, $ 56,979 [$ 65,490] per family unit with two bedrooms, $ 73,710 [$ 84,722] per family unit with three bedrooms, and $ 80,913 [$ 93,000] per family unit with four or more bedrooms, as the case may be, to compensate for the higher costs incident to the construction of elevator-type structures of sound standards of construction and design; (II) the Secretary may, by regulation, increase any of the dollar limitations in subclause (I) (as such limitations may have been adjusted in accordance with section 206A of this Act [*12 USCS § 1712a*]) by not to exceed 170 percent in any geographical area where the Secretary finds that cost levels so require and by not to exceed 170 percent, or 215 percent in high cost areas, where the Secretary determines it necessary on a project-by-project basis, but in no case may any such increase exceed 90 percent where the Secretary determines that a mortgage purchased or to be purchased by the Government National Mortgage Association in implementing its special assistance functions under section 305 of this Act (as such section existed immediately before November 30, 1983) is involved;

(iii) not exceed (in the case of a property or project approved for mortgage insurance prior to the beginning of construction) 90 per centum of the amount which the Secretary estimates will be the replacement cost of the property or project when the proposed improvements are completed (the replacement cost may include the land, the proposed physical improvements, utilities within the boundaries of the land, architect's fees, taxes, interest during construction, and other miscellaneous charges incident to construction and approved by the Secretary, and shall include an allowance for builder's and sponsor's profit and risk of 10 per centum of all of the foregoing items, except the land, unless the Secretary, after certification that such allowance is unreasonable, shall by regulation prescribe a lesser percentage); and

(iv) not exceed 90 per centum of the sum of the estimated cost of repair and rehabilitation (including the cost of evaluating and reducing lead-based paint hazards, as such terms are defined in section 1004 of the Residential Lead-Based Paint Hazard Reduction Act of 1992 [*42 USCS § 4851b*]) and the Secretary's estimate of the value of the property before repair and rehabilitation if the proceeds of the mortgage are to be used for the repair and rehabilitation of a property or project: *Provided*, That the Secretary may, in his discretion, require the mortgagor to be regulated or restricted as to rents or sales, charges, capital structure, rate of return, and methods of operation, and for such purpose the Secretary may make such contracts with and acquire for not to exceed $ 100 such stock or interest in any such mortgagor as the Secretary may deem necessary to render effective such restrictions or regulations, with such stock or interest being paid for out of the General Insurance Fund and being required to be redeemed by the mortgagor at par upon the termination of all obligations of the Secretary under the insurance;

(5) bear interest at such rate as may be agreed upon by the mortgagor and the mortgagee; and contain such terms and provisions with respect to the application of the mortgagor's periodic payment to amortization of the principal of the mortgage, insurance, repairs, alterations, payment of taxes, default reserves, delinquency charges, foreclosure proceedings, anticipation of maturity, additional and secondary liens, and other matters as the Secretary may in his discretion prescribe: *Provided*, That a mortgage insured under the provisions of subsection (d)(3) shall bear interest (exclusive of any premium charges for insurance and service charge, if any) at not less than the lower of (A) 3 per centum per annum, or (B) the annual rate of interest determined, from time to time by the Secretary of the Treasury at the request of the Secretary, by estimating the average market yield to maturity on all outstanding marketable obligations of the United States, and by adjusting such yield to the nearest one-eighth of 1 per centum, and there shall be no differentiation in the rate of interest charged under this proviso as between mortgagors under subsection (d)(3) on

the basis of differences in the types or classes of such mortgagors; and

(6) provide for complete amortization by periodic payments (unless otherwise approved by the Secretary) within such terms as the Secretary may prescribe, but as to mortgages coming within the provisions of subsection (d)(2) not to exceed from the date of the beginning of amortization of the mortgage (i) 40 years in the case of a displaced family, (ii) 35 years in the case of any other family if the mortgage is approved for insurance prior to construction, except that the period in such case may be increased to not more than 40 years where the mortgagor is not able, as determined by the Secretary, to make the required payments under a mortgage having a shorter amortization period, and (iii) 30 years in the case of any other family where the mortgage is not approved for insurance prior to construction.

(e) "Mortgagor" defined; release of mortgagor or part of property.

(1) A mortgagor which may be approved by the Secretary as provided in subsection (d)(3) includes a mortgagor which, as a condition of obtaining insurance of the mortgage and prior to the submission of its application for such insurance, has entered into an agreement (in form and substance satisfactory to the Secretary) with a private nonprofit corporation eligible for an insured mortgage under the provisions of subsection (d)(3), that the mortgagor will sell the project when it is completed to the corporation at the actual cost of the project, as certified pursuant to section 227 of this Act [*12 USCS § 1715r*]. The mortgagor to whom the property is sold shall be regulated or supervised by the Secretary as provided in subsection (d)(3) to effectuate its purposes.

(2) The Secretary may at any time, under such terms and conditions as he may prescribe, consent to the release of the mortgagor from his liability under the mortgage or the credit instrument secured thereby, or consent to the release of parts of the mortgaged property from the lien of the mortgage.

(f) Compliance with standards; nondwelling facilities in projects in urban renewal areas; number of family units; premium charges; housing for low-income purchasers; expiration of mortgage insurance authority; "family" defined; single occupants in subsection (d)(3) housing; use of certain housing facilities for classroom purposes. The property or project shall comply with such standards and conditions as the Secretary may prescribe to establish the acceptability of such property for mortgage insurance and may include such commercial and community facilities as the Secretary deems adequate to serve the occupants: *Provided,* That in the case of any such property or project located in an urban renewal area, the provisions of section 220(d)(3)(B)(iv) [*12 USCS § 1715k(d)(3)(B)(iv)*] shall apply with respect to the nondwelling facilities which may be included in the mortgage: *Provided further,* That, in the case of a mortgage which bears interest at the below-market interest rate prescribed in the proviso of subsection (d)(5), the provisions of section 220(d)(3)(B)(iv) [*12 USCS § 1715k(d)(3)(B)(iv)*] shall only apply if the mortgagor waives the right to receive dividends on its equity investment in the portion thereof devoted to commercial facilities.

A property or project covered by a mortgage insured under the provisions of subsection (d)(3) or (d)(4) shall include five or more family units: *Provided,* That such units, in the case of a project designed primarily for occupancy by displaced, elderly, or handicapped families, need not, with the approval of the Secretary, contain kitchen facilities, and such projects may include central dining and other shared facilities. The Secretary is authorized to adopt such procedures and requirements as he determines are desirable to assure that the dwelling accommodations provided under this section are available to displaced families. Notwithstanding any provision of this Act, the Secretary, in order to assist further the provision of housing for law and moderate income families, in his discretion and under such conditions as he may prescribe, may insure a mortgage which meets the requirements of subsection (d)(3) of this section as in effect after the date of enactment of the Housing Act of 1961 [enacted June 30, 1961], or which meet the requirements of subsection (h), (i), or (j), with no premium charge, with a reduced premium charge, or with a premium charge for such period or periods during the time the insurance is in effect as the Secretary may determine, and there is hereby authorized to be appropriated, out of any money in the Treasury not otherwise appropriated, such amounts as may be necessary to reimburse the General Insurance Fund for any net losses in connection with such insurance. Any person who is sixty-two years of age or over, or who is a handicapped person within the meaning of section 202 of the Housing Act of 1959 [*12 USCS § 1701q*], or who is a displaced person, shall be deemed to be a family within the meaning of the terms "family" and "families" as those terms are used in this section. Low- and moderate-income persons who are less than 62 years of age shall be eligible for occupancy of dwelling units in a project financed with a mortgage insured

under subsection (d)(3). In any case in which it is determined in accordance with regulations of the Secretary that facilities in existence or under construction on the date of enactment of the Housing and Urban Development Act of 1970 [enacted Dec. 31, 1970] which would appropriately be used for classroom purposes are available in any such property or project and that public schools in the community are overcrowded due in part to the attendance at such schools of residents of the property or project, such facilities may be used for such purposes to the extent permitted in such regulations (without being subject to any of the requirements of the proviso in section 220(d)(3)(B)(iv) [*12 USCS § 1715k(d)(3)(B)(iv)*] except the requirement that the project be predominantly residential).

As used in this section the terms displaced family, displaced families, and displaced person shall mean a family or families, or a person, displaced from an urban renewal area, or as a result of governmental action, or as a result of a major disaster as determined by the President pursuant to the Disaster Relief and Emergency Assistance Act.

In order to induce advances by owners for capital improvements (excluding any owner contributions that may be required by the Secretary as a condition for assistance under section 201 of the Housing and Community Development Amendments of 1978 [*12 USCS §§ 1715z-1* and *1715z-1a*]) to benefit projects covered by a mortgage under the provisions of subsection (d)(3) that bears a below market interest rate prescribed in the proviso to subsection (d)(5), in establishing the rental charge for the project the Secretary may include an amount that would permit a return of such advances with interest to the owner out of project income, on such terms and conditions as the Secretary may determine. Any resulting increase in rent contributions shall be--

(A) to a level not exceeding the lower of 30 percent of the adjusted income of the tenant or the published existing fair market rent for comparable housing established under section 8(c) of the United States Housing Act of 1937 [*42 USCS § 1437f(c)*];

(B) phased in equally over a period of not less than 3 years, if such increase is 30 percent or more; and

(C) limited to not more than 10 percent per year if such increase is more than 10 percent but less than 30 percent.

Assistance under section 8 of the United States Housing Act of 1937 [*42 USCS § 1437f*] shall be provided, to the extent available under appropriations Acts, if necessary to mitigate any adverse effects on income-eligible tenants.

(g) Entitlement of mortgagee to benefits; applicability of other provisions; debentures; definition of "going Federal rate"; transfer of original credit instrument. The mortgagee shall be entitled to receive the benefits of the insurance as hereinafter provided--

(1) as to mortgages meeting the requirements of paragraph (2) of subsection (d) of this section[,] paragraph (5) of subsection (h) of this section, or paragraph (2) of subsection (i) of this section, as provided in section 204(a) of this Act [*12 USCS § 1710(a)*] with respect to mortgages insured under section 203 [*12 USCS § 1709*], and the provisions of subsections (b), (c), (d), (e), (f), (g), (h), (j), and (k) of section 204 of this Act [*12 USCS § 1710 (b)*, (c), (d), (e), (f), (g),(h), (j), and (k)] shall be applicable to such mortgages insured under this section, except that all references therein to the Mutual Mortgage Insurance Fund or the Fund shall be construed to refer to the General Insurance Fund and all references therein to section 203 [*12 USCS § 1709*] shall be construed to refer to this section; or

(2) as to mortgages meeting the requirements of paragraph (3) or (4) of subsection (d) of this section[,] paragraph (1) of subsection (h) of this section, or paragraph (2) of subsection (j) of this section, as provided in section 207(g) of this Act [*12 USCS § 1713(g)*] with respect to mortgages insured under said section 207, and the provisions of subsections (h), (i), (j), (k), and (l) of section 207 of this Act [*12 USCS § 1713 (h)*, (i), (j), (k), and (l)] shall be applicable to such mortgages insured under this section; or

(3) as to mortgages meeting the requirements of this section which are insured or initially endorsed for insurance on or after the date of enactment of the Housing Act of 1961 [enacted June 30, 1961], notwithstanding the provisions of paragraphs (1) and (2) of this subsection, the Secretary in his discretion, in accordance with such regulations as he may prescribe, may make payments pursuant to such paragraphs in cash or in debentures (as provided in the mortgage insurance contract), or may acquire a mortgage loan that is in default and the security therefor upon payment to the mortgagee in cash or in debentures (as provided in the mortgage insurance contract) of a total amount equal to the unpaid principal balance of the loan plus any accrued interest and any advances approved by the Secretary and made

previously by the mortgagee under the provisions of the mortgage, and after the acquisition of any such mortgage by the Secretary the mortgagee shall have no future rights, liabilities, or obligations with respect to the loan or the security for the loan. The appropriate provisions of sections 204 and 207 [*12 USCS §§ 1710* and *1713*] relating to the issuance of debentures shall apply with respect to debentures issued under this paragraph, and the appropriate provisions of sections 204 and 207 [*12 USCS §§ 1710* and *1713*] relating to the rights, liabilities, and obligations of a mortgagee shall apply with respect to the Secretary when he has acquired an insured mortgage under this paragraph, in accordance with and subject to regulations (modifying such provisions to the extent necessary to render their application for such purposes appropriate and effective) which shall be prescribed by the Secretary, except that as applied to mortgages so acquired (A) all references in section 204 [*12 USCS § 1710*] to the Mutual Mortgage Insurance Fund or the Fund shall be construed to refer to the General Insurance Fund, and (B) all references in section 204 [*12 USCS § 1710*] to *section 203* [*12 USCS § 1709*] shall be construed to refer to this section. If the insurance is paid in cash, there shall be added to such payment an amount equivalent to the interest which the debentures would have earned, computed to a date to be established pursuant to regulations issued by the Secretary.

(4) (A) in the event any mortgage insured under this section pursuant to a commitment to insure entered into before the effective date of this clause is not in default at the expiration of twenty years from the date the mortgage was endorsed for insurance, the mortgagee shall, within a period thereafter to be determined by the Secretary, have the option to assign, transfer, and deliver to the Secretary the original credit instrument and the mortgage securing the same and receive the benefits of the insurance as hereinafter provided in this paragraph, upon compliance with such requirements and conditions as to the validity of the mortgage as a first lien and such other matters as may be prescribed by the Secretary at the time the loan is endorsed for insurance. Upon such assignment, transfer, and delivery the obligation of the mortgagee to pay the premium charges for insurance shall cease, and the Secretary shall issue to the mortgagee debentures having a par value equal to the amount of the original principal obligation of the mortgage which was unpaid on the date of the assignment, plus accrued interest to such date. Debentures issued pursuant to this paragraph shall be issued in the same manner and subject to the same terms and conditions as debentures issued under paragraph (1) of this subsection, except that the debentures issued pursuant to this paragraph shall be dated as of the date the mortgage is assigned to the Secretary, shall mature ten years after such date, and shall bear interest from such date at the going Federal rate determined at the time of issuance. The term "going Federal rate" as used herein means the annual rate of interest which the Secretary of the Treasury shall specify as applicable to the six-month period (consisting of January through June or July through December) which includes the issuance date of such debentures, which applicable rate for each such six-month period shall be determined by the Secretary of the Treasury by estimating the average yield to maturity, on the basis of daily closing market bid quotations or prices during the month of May or the month of November, as the case may be, next preceding such six-month period, on all outstanding marketable obligations of the United States having a maturity date of eight to twelve years from the first day of such month of May or November (or, if no such obligations are outstanding, the obligation next shorter than eight years and the obligation next longer than twelve years, respectively, shall be used), and by adjusting such estimated average annual yield to the nearest one-eighth of 1 per centum. The Secretary shall have the same authority with respect to mortgages assigned to him under this paragraph as contained in section 207(k) and section 207(l) [*12 USCS § 1713(k)* and (l)] as to mortgages insured by the Secretary and assigned to him under section 207 of this Act [*12 USCS § 1713*].

(B) In processing a claim for insurance benefits under this paragraph, the Secretary may direct the mortgagee to assign, transfer, and deliver the original credit instrument and the mortgage securing it directly to the Government National Mortgage Association in lieu of assigning, transferring, and delivering the credit instrument and the mortgage to the Secretary. Upon the assignment, transfer, and delivery of the credit instrument and the mortgage to the Association, the mortgage insurance contract shall terminate and the mortgagee shall receive insurance benefits as provided in subparagraph (A). The Association is authorized to accept such loan documents in its own name and to hold, service, and sell such loans as agent for the Secretary. The mortgagor's obligation to pay a service charge in lieu of a mortgage insurance premium shall continue as long as the mortgage is held by the Association or by the Secretary. The Secretary shall have the same authority with respect to mortgages assigned to the Secretary or the Association under this subparagraph as provided by section 223(c) [*12 USCS § 1715n(c)*].

(C)

(i) In lieu of accepting assignment of the original credit instrument and the mortgage securing the credit

instrument under subparagraph (A) in exchange for receipt of debentures, the Secretary shall arrange for the sale of the beneficial interests in the mortgage loan through an auction and sale of the (I) mortgage loans, or (II) participation certificates, or other mortgage-backed obligations in a form acceptable to the Secretary (in this subparagraph referred to as "participation certificates"). The Secretary shall arrange the auction and sale at a price, to be paid to the mortgagee, of par plus accrued interest to the date of sale. The sale price shall also include the right to a subsidy payment described in clause (iii).

(ii) (I) The Secretary shall conduct a public auction to determine the lowest interest rate necessary to accomplish a sale of the beneficial interests in the original credit instrument and mortgage securing the credit instrument.

(II) A mortgagee who elects to assign a mortgage shall provide the Secretary and persons bidding at the auction a description of the characteristics of the original credit instrument and mortgage securing the original credit instrument, which shall include the principal mortgage balance, original stated interest rate, service fees, real estate and tenant characteristics, the level and duration of applicable Federal subsidies, and any other information determined by the Secretary to be appropriate. The Secretary shall also provide information regarding the status of the property with respect to the provisions of the Emergency Low Income Housing Preservation Act of 1987 [note to this section] or any subsequent Act with respect to eligibility to prepay the mortgage, a statement of whether the owner has filed a notice of intent to prepay or a plan of action under the Emergency Low Income Housing Preservation Act of 1987 [note to this section] or any subsequent Act, and the details with respect to incentives provided under the Emergency Low Income Housing Preservation Act of 1987 [note to this section] or any subsequent Act in lieu of exercising prepayment rights.

(III) The Secretary shall, upon receipt of the information in subclause (II), promptly advertise for an auction and publish such mortgage descriptions in advance of the auction. The Secretary may conduct the auction at any time during the 6-month period beginning upon receipt of the information in subclause (II) but under no circumstances may the Secretary conduct an auction before 2 months after receiving the mortgagee's written notice of intent to assign its mortgage to the Secretary.

(IV) In any auction under this subparagraph, the Secretary shall accept the lowest interest rate bid for purchase that the Secretary determines to be acceptable. The Secretary shall cause the accepted bid to be published in the Federal Register. Settlement for the sale of the credit instrument and the mortgage securing the credit instrument shall occur not later than 30 business days after the date winning bidders are selected in the auction, unless the Secretary determines that extraordinary circumstances require an extension (not to exceed 60 days) of the period.

(V) If no bids are received, the bids that are received are not acceptable to the Secretary, or settlement does not occur within the period under subclause (IV), the mortgagee shall retain all rights (including the right to interest, at a rate to be determined by the Secretary, for the period covering any actions taken under this subparagraph) under this section to assign the mortgage loan to the Secretary.

(iii) As part of the auction process, the Secretary shall agree to provide a monthly interest subsidy payment from the General Insurance Fund to the purchaser under the auction of the original credit instrument or the mortgage securing the credit instrument (and any subsequent holders or assigns who are approved mortgagees). The subsidy payment shall be paid on the first day of each month in an amount equal to the difference between the stated interest due on the mortgage loan and the lowest interest rate necessary to accomplish a sale of the mortgage loan or participation certificates (less the servicing fee, if appropriate) for the then unpaid principal balance plus accrued interest at a rate determined by the Secretary. Each interest subsidy payment shall be treated by the holder of the mortgage as interest paid on the mortgage. The interest subsidy payment shall be provided until the earlier of---

(I) the maturity date of the loan;

(II) prepayment of the mortgage loan in accordance with the Emergency Low Income Housing Preservation Act of 1987 [note to this section] or any subsequent Act, where applicable; or

(III) default and full payment of insurance benefits on the mortgage loan by the Federal Housing Administration.

(iv) The Secretary shall require that the mortgage loans or participation certificates presented for assignment are auctioned as whole loans with servicing rights released and also are auctioned with servicing rights retained by the current servicer.

(v) To the extent practicable, the Secretary shall encourage State housing finance agencies, nonprofit organizations, and organizations representing the tenants of the property securing the mortgage, or a qualified mortgagee participating in a plan of action under the Emergency Low Income Housing Preservation Act of 1987 [note

to this section] or subsequent Act to participate in the auction.

(vi) The Secretary shall implement the requirements imposed by this subparagraph within 30 days from the date of enactment of this subparagraph and not be subject to the requirement of prior issuance of regulations in the Federal Register. The Secretary shall issue regulations implementing this section within 6 months of the enactment of this subparagraph.

(vii) Nothing in this subparagraph shall diminish or impair the low income use restrictions applicable to the project under the original regulatory agreement or the revised agreement entered into pursuant to the Emergency Low Income Housing Preservation Act of 1987 [note to this section] or subsequent Act, if any, or other agreements for the provision of Federal assistance to the housing or its tenants.

(viii) This subparagraph shall not apply after December 31, 2002, except that this subparagraph shall continue to apply if the Secretary receives a mortgagee's written notice of intent to assign its mortgage to the Secretary on or before such date. Not later than January 31 of each year (beginning in 1992), the Secretary shall submit to the Congress a report including statements of the number of mortgages auctioned and sold and their value, the amount of subsidies committed to the program under this subparagraph, the ability of the Secretary to coordinate the program with the incentives provided under the Emergency Low Income Housing Preservation Act of 1987 or subsequent Act [note to this section], and the costs and benefits derived from the program for the Federal Government.

(ix) The authority of the Secretary to conduct multifamily auctions under this paragraph shall be effective for any fiscal year only to the extent and in such amounts as are approved in appropriations Acts for the costs of loan guarantees (as defined in section 502 of the Congressional Budget Act of 1974 [*2 USCS § 661a*]), including the cost of modifying loans.

(h) Insurance of mortgages to finance purchase and rehabilitation by nonprofit organizations of housing for resale to low-income purchasers, and insurance of mortgages executed for the purpose of financing rehabilitation or improvement of dwellings owned and occupied by mortgagors who purchased from nonprofit organizations.

(1) In addition to mortgages insured under the other provisions of this section, the Secretary is authorized, upon application by the mortgagee, to insure under this subsection as hereinafter provided any mortgage (including advances under such mortgage during rehabilitation) which is executed by a nonprofit organization to finance the purchase and rehabilitation of deteriorating or substandard housing for subsequent resale to low-income home purchasers and, upon such terms and conditions as the Secretary may prescribe, to make commitments for the insurance of such mortgages prior to the date of their execution or disbursement thereon.

(2) To be eligible for insurance under paragraph (1) of this subsection, a mortgage shall--

(A) be executed by a private nonprofit corporation or association, approved by the Secretary, for financing the purchase and rehabilitation (with the intention of subsequent resale) of property comprising one or more tracts or parcels, whether or not contiguous, upon which there is located deteriorating or substandard housing consisting of (i) four or more single-family dwellings of detached, semidetached, or row construction, or (ii) four or more one-family units in a structure or structures for which a plan of family unit ownership approved by the Secretary is established;

(B) be secured by the property which is to be purchased and rehabilitated with the proceeds thereof;

(C) be in a principal amount not exceeding the appraised value of the property at the time of its purchase under the mortgage plus the estimated cost of the rehabilitation;

(D) bear interest (exclusive of premium charges for insurance and service charge, if any) at the rate in effect under the proviso in subsection (d)(5) at the time of execution;

(E) provide for complete amortization (subject to paragraph (5)(E)) by periodic payments within such term as the Secretary may prescribe; and

(F) provide for the release of individual single-family dwellings from the lien of the mortgage upon the sale of the rehabilitated dwellings in accordance with paragraph (5).

(3) No mortgage shall be insured under paragraph (1) unless the mortgagor shall have demonstrated to the satisfaction of the Secretary that (A) the property to be rehabilitated is located in a neighborhood which is sufficiently stable and contains sufficient public facilities and amenities to support long-term values, or (B) the rehabilitation to be carried out by the mortgagor plus its related activities and the activities of other owners of housing in the neighborhood, together with actions to be taken by public authorities, will be of such scope and quality as to give reasonable promise that a

stable environment will be created in the neighborhood.

(4) The aggregate principal balance of all mortgages insured under paragraph (1) and outstanding at any one time shall not exceed $ 50,000,000.

(5) (A) No mortgage shall be insured under paragraph (1) unless the mortgagor enters into an agreement (in form and substance satisfactory to the Secretary) that it will offer to sell the dwellings involved, upon completion of their rehabilitation, to individuals or families (hereinafter referred to as "low-income purchasers") determined by the Secretary to have incomes below the maximum amount specified (with respect to the area involved) in section 101(c)(1) of the Housing and Urban Development Act of 1965 [*12 USCS § 1701s(c)(1)*].

(B) The Secretary is authorized to insure under this paragraph mortgages executed to finance the sale of individual dwellings to low-income purchasers as provided in subparagraph (A). Any such mortgage shall--

(i) be in a principal amount equal to that portion of the unpaid balance of the principal mortgage covering the property (insured under paragraph (1)) which is allocable to the individual dwelling involved; and

(ii) bear interest at the same rate as the principal mortgage or such lower rate, not less than 1 per centum, as the Secretary may prescribe if in his judgment the purchaser's income is sufficiently low to justify the lower rate, and provide for complete amortization within a term equal to the remaining term (determined without regard to subparagraph (E)) of such principal mortgage: *Provided*, That, if the rate of interest initially prescribed is less than the rate borne by the principal mortgage and the purchaser's income (as determined on the basis of periodic review) subsequently rises, the rate of interest so prescribed shall be increased (but not above the rate borne by such principal mortgage), under regulations of the Secretary, to the extent appropriate to reflect the increase in such income, and the mortgage shall so provide.

(C) The price for which any individual dwelling is sold to a low-income purchaser under this paragraph shall be the amount of the mortgage covering the sale as determined under subparagraph (B), except that the purchaser shall in addition thereto be required to pay on account of the property at the time of purchase such amount (which shall not be less than $ 200, but which may be applied in whole or in part toward closing costs) as the Secretary may determine to be reasonable and appropriate in the circumstances.

(D) Upon the sale under this paragraph of any individual dwelling, such dwelling shall be released from the lien of the principal mortgage, and such mortgage shall thereupon be replaced by an individual mortgage insured under this paragraph to the extent of the portion of its unpaid balance which is allocable to the dwelling covered by such individual mortgage. Until all of the individual dwellings in the property covered by the principal mortgage have been sold, the mortgagor shall hold and operate the dwellings remaining unsold at any given time as though they constituted rental units in a project covered by a mortgage which is insured under subsection (d)(3) (and which receives the benefits of the interest rate provided for in the proviso in subsection (d)(5)).

(E) Upon the sale under this paragraph of all of the individual dwellings in the property covered by the principal mortgage, and the release of all individual dwellings from the lien of the principal mortgage, the insurance of the principal mortgage shall be terminated and no adjusted premium charge shall be charged by the Secretary upon such termination.

(F) Any mortgage insured under this paragraph shall contain a provision that if the low-income mortgagor does not continue to occupy the property the interest rate shall increase to the highest rate permissible under this section and the regulations of the Secretary effective at the time of commitment for insurance of the principal mortgage; except that the increase in interest rate shall not be applicable if the property is sold and the purchaser is (i) the non-profit organization which executed the principal mortgage, (ii) a public housing agency having jurisdiction under the United States Housing Act of 1937 over the area where the dwelling is located, or (iii) a low-income purchaser approved for the purposes of this paragraph by the Secretary.

(6) In addition to the mortgages that may be insured under paragraphs (1) and (5), the Secretary is authorized to insure under this subsection at any time within one year after the date of the enactment of this paragraph [enacted Aug. 1, 1968], upon such terms and conditions as he may prescribe, mortgages which are executed by individuals or families that meet the income criteria prescribed in paragraph (5)(A) and are executed for the purpose of financing the rehabilitation or improvement of single-family dwellings of detached, semi-detached, or row construction that are owned in each instance by a mortgagor who has purchased the dwelling from a nonprofit organization of the type described in this subsection. To be eligible for such insurance, a mortgage shall--

(A) be in a principal amount not exceeding the lesser of $ 18,000 or the sum of the estimated cost of repair and rehabilitation and the Secretary's estimate of the value of the property before repair and rehabilitation, except that in no case involving refinancing shall such mortgage exceed such estimated cost of repair and rehabilitation and the amount (as determined by the Secretary) required to refinance existing indebtedness secured by the property;

(B) bear interest (exclusive of premium charges for insurance and service charge, if any) at 3 per centum per annum or such lower rate, not less than 1 per centum, as the Secretary may prescribe if in his judgment the mortgagor's income is sufficiently low to justify the lower rate: *Provided,* That, if the rate of interest initially prescribed is less than 3 per centum per annum and the mortgagor's income (as determined on the basis of periodic review) subsequently rises, the rate shall be increased (but not above 3 per centum), under regulations of the Secretary, to the extent appropriate to reflect the increase in such income, and the mortgage shall so provide;

(C) involve a mortgagor that shall have paid on account of the property at the time of the rehabilitation such amount (which shall not be less than $ 200 in cash or its equivalent, but which may be applied in whole or in part toward closing costs) as the Secretary may determine to be reasonable and appropriate under the circumstances; and

(D) contain a provision that, if the low-income mortgagor does not continue to occupy the property, the interest rate shall increase to the highest rate permissible under this section and the regulations of the Secretary effective at the time the commitment was issued for insurance of the mortgage; except that the increase in interest rate shall not be applicable if the property is sold and the purchaser is (i) a nonprofit organization which has been engaged in purchasing and rehabilitating deteriorating and substandard housing with financing under a mortgage insured under paragraph (1) of this subsection, (ii) a public housing agency having jurisdiction under the United States Housing Act of 1937 over the area where the dwelling is located, or (iii) a low-income purchaser approved for the purposes of this paragraph by the Secretary.

(7) Where the Secretary has approved a plan of family unit ownership, the terms "single-family dwelling," "single-family dwellings," "individual dwelling," an [and] "individual dwellings" shall mean a family unit or family units, together with the undivided interest (or interests) in the common areas and facilities.

(8) For purposes of this subsection, the terms "single-family dwelling" and "single-family dwellings" (except for purposes of paragraph (7)) shall include a two-family dwelling which has been approved by the Secretary.

(i) Conversion of insured project to plan of family unit ownership; sale of units; agreements for maintenance; release from lien of project mortgage; insurance of mortgages financing purchase of individual family units; eligibility for insurance; definitions.

(1) The Secretary is authorized, with respect to any project involving a mortgage insured under subsection (d)(3) which bears interest at the below-market interest rate prescribed in the proviso of subsection (d)(5), to permit a conversion of the ownership of such project to a plan of family unit ownership. Under such plan, each family unit shall be eligible for individual ownership and provision shall be included for the sale of the family units, together with an undivided interest in the common areas and facilities which serve the project, to low or moderate income purchasers. The Secretary shall obtain such agreements as he determines to be necessary to assure continued maintenance of the common areas and facilities. Upon such sale, the family unit and the undivided interest in the common areas shall be released from the lien of the project mortgage.

(2) (A) The Secretary is authorized, upon application by the mortgagee, to insure under this subsection mortgages financing the purchase of individual family units under the plan prescribed in paragraph (1). Commitments may be issued by the Secretary for the insurance of such mortgages prior to the date of their execution or disbursement thereon, upon such terms and conditions as the Secretary may prescribe. To be eligible for such insurance, the mortgage shall--

(i) be executed by a mortgagor having an income within the limits prescribed by the Secretary for occupants of projects financed with a mortgage insured under subsection (d)(3) which bears interest at the below-market rate prescribed in the proviso of subsection (d)(5);

(ii) involve a principal obligation (including such initial service charges, and such appraisal, inspection, and other fees, as the Secretary shall approve) in an amount not to exceed the Secretary's estimate of the appraised value of the family unit, including the mortgagor's interest in the common areas and facilities, as of the date the mortgage is accepted for insurance;

(iii) bear interest at a rate determined by the Secretary (which may vary in accordance with the regulations of the

Secretary promulgated pursuant to the last sentence of paragraph (4) of this subsection) but not less than the below-market rate in effect under the proviso of subsection (d)(5) at the date of the commitment for insurance; and

(iv) provide for complete amortization by periodic payments within such term as the Secretary may prescribe, but not to exceed forty years from the beginning of amortization of the mortgage.

(B) The price for which the individual family unit is sold to the low or moderate income purchaser shall not exceed the appraised value of the property, as determined under subparagraph (A)(ii), except that the purchaser shall be required to pay on account of the property at the time of purchase at least such amount, in cash or its equivalent (which shall be not less than 3 per centum of such price, but which may be applied in whole or in part toward closing costs), as the Secretary may determine to be reasonable and appropriate.

(3) Upon the sale of all of the family units covered by the project mortgage, and the release of all of the family units (including the undivided interest allocable to each unit in the common areas and facilities) from the lien of the project mortgage, the insurance of the project mortgage shall be terminated and no adjusted premium charge shall be collected by the Secretary upon such termination.

(4) Any mortgage covering an individual family unit insured under this subsection shall contain a provision that, if the original mortgagor does not continue to occupy the property, the interest rate shall increase to the highest rate permissible under this section and the regulations of the Secretary effective at the time the commitment was issued for the insurance of the project mortgage; except that the requirement for an increase in interest rate shall not be applicable if the property is sold and the purchaser is (i) a nonprofit purchaser approved by the Secretary, or (ii) a low or moderate income purchaser who has an income within the limits prescribed by the Secretary for occupants of projects financed with a mortgage insured under subsection (d)(3) which bears interest at the below-market rate prescribed in the proviso of subsection (d)(5). The mortgage shall also contain a provision that, if the Secretary determines that the annual income of the original mortgagor (or a purchaser described in clause (ii) of the preceding sentence) has increased to an amount enabling payment of a greater rate of interest, the interest rate of the individual mortgage may be increased up to the highest rate permissible under the regulations of the Secretary for mortgages insured under this section, effective at the time the commitment was issued for the insurance of the mortgage.

(5) For the purpose of this subsection--

(i) the term "mortgage," when used in relation to a mortgage insured under paragraph (2) of this subsection, includes a first mortgage given to secure the unpaid purchase price of a fee interest in, or a long-term lease-hold interest in, a one-family unit in a multifamily project and an undivided interest in the common areas and facilities which serve the project; and

(ii) the term "common areas and facilities" includes the land and such commercial, community, and other facilities as are approved by the Secretary.

(j) Conversion of insured rental projects to cooperatives; eligibility for membership; insurance of cooperative mortgages financing purchase of projects; eligibility for insurance.

(1) The Secretary is authorized, with respect to any rental project involving a mortgage insured under subsection (d)(3) which bears interest at the below-market interest rate prescribed in the proviso of subsection (d)(5), to permit a conversion of the ownership of such project to a cooperative approved by the Secretary. Membership in such cooperative shall be made available only to those families having an income within the limits prescribed by the Secretary for occupants of projects financed with a mortgage insured under subsection (d)(3) which bears interest at such below-market rate: *Provided,* That families residing in the rental project at the time of its conversion to a cooperative who do not meet such income limits may be permitted to become members in the cooperative under such special terms and conditions as the Secretary may prescribe.

(2) The Secretary is authorized, upon application by the mortgagee, to insure under this subsection cooperative mortgages financing the purchase of projects meeting the requirements of paragraph (1). Commitments may be issued by the Secretary for the insurance of such mortgages prior to the date of their execution or disbursement thereon, upon such terms and conditions as the Secretary may prescribe. To be eligible for such insurance, the mortgage shall--

(i) involve a principal obligation (including such initial service charges and appraisal, inspection, and other fees as the Secretary shall approve) in an amount not exceeding the appraised value of the property for continued use as a cooperative, which value shall be based upon a mortgage amount on which the debt service can be met from the income

of the property when operated on a nonprofit basis, after the payment of all operating expenses, taxes, and required reserves;

(ii) bear interest at the below-market rate prescribed in the proviso of subsection (d)(5); and

(iii) provide for complete amortization within such term as the Secretary may prescribe.

(k) Increase in maximum insurance amounts for costs incurred from solar energy systems and energy conservation measures. With respect to any project insured under subsection (d)(3) or (d)(4), the Secretary may further increase the dollar amount limitations which would otherwise apply for the purpose of those subsections by up to 20 per centum if such increase is necessary to account for the increased cost of the project due to the installation therein of a solar energy system (as defined in subparagraph (3) of the last paragraph of section 2(a) of this Act) [*12 USCS § 1703(a)*] or residential energy conservation measures (as defined in section 210(11)(A) through (G) and (I) of Public Law 95-619) in cases where the Secretary determines that such measures are in addition to those required under the minimum property standards and will be cost-effective over the life of the measure.

(l) Rental charges; "eligible multifamily housing" defined.

(1) Notwithstanding any other provision of law, tenants residing in eligible multifamily housing whose incomes exceed 80 percent of area median income shall pay as rent not more than the lower of the following amounts: (A) 30 percent of the family's adjusted monthly income; or (B) the relevant fair market rental established under section 8(b) of the United States Housing Act of 1937 [*42 USCS § 1437f(b)*] for the jurisdiction in which the housing is located. An owner shall phase in any increase in rents for current tenants resulting from this subsection.

(2) For purposes of this subsection, the term "eligible multifamily housing" means any housing financed by a loan or mortgage that is (A) insured or held by the Secretary under subsection (d)(3) and assisted under section 101 of the Housing and Urban Development Act of 1965 or section 8 of the United States Housing Act of 1937 [*42 USCS § 1437f*]; or (B) insured or held by the Secretary and bears interest at a rate determined under the proviso of subsection (d)(5).

**HISTORY:**

(June 27, 1934, ch 847, Title II, § 221, as added Aug. 2, 1954, ch 649, Title I, § 123, 68 Stat. 599; Aug. 11, 1955, ch 783, Title I, § 102(c), (j), 69 Stat. 635, 636; Aug. 7, 1956, ch 1029, Title I, § 108, Title III, § 307(c), 70 Stat. 1094, 1102; July 12, 1957, P.L. 85-104, Title I, § 112, 71 Stat. 297; Sept. 23, 1959, P.L. 86-372, Title I, §§ 110(a)(1), (2), (b)-(e), 116(b), 73 Stat. 658, 659, 664; June 30, 1961, P.L. 87-70, Title I, § 101(a), 75 Stat. 149; June 29, 1963, P.L. 88-54, 77 Stat. 73; Sept. 2, 1964, P.L. 88-560, Title I, §§ 105(c)(2), 107(d), 114, Title II, §§ 202, 203(b), 78 Stat. 772, 775, 778, 783, 784; Aug. 10, 1965, P.L. 89-117, Title I, § 102(a), (b), Title II, § 207(d), Title XI, § 1108(i), 79 Stat. 454, 467, 505; Nov. 3, 1966, P.L. 89-754, Title III, §§ 307-310(c), 80 Stat. 1268; Nov. 6, 1966, P.L. 89-769, § 4, 80 Stat. 1317; May 25, 1967, P.L. 90-19, § 1(a)(3), (4), 81 Stat. 17; Aug. 1, 1968, P.L. 90-448, Title I, §§ 101(b)-(c)(3), 105, Title III, §§ 305, 306, 311(b), 316, 82 Stat. 483, 488, 508, 510, 512; Sept. 30, 1969, P.L. 91-78, § 2(c), 83 Stat. 125; Dec. 24, 1969, P.L. 91-152, Title I, §§ 101(c), 113(e), 83 Stat. 379, 384; Oct. 2, 1970, P.L. 91-432, § 1(c), 84 Stat. 887; Oct. 21, 1970, P.L. 91-473, § 1(c), 84 Stat. 1064; Dec. 1, 1970, P.L. 91-525, § 1(c), 84 Stat. 1384; Dec. 31, 1970, P.L. 91-606, Title III, § 301(d), 84 Stat. 1758; Dec. 31, 1970, P.L. 91-609, Title I, §§ 101(c), 114(a), 114 [115](a)(1), (2), 84 Stat. 1770, 1773; Oct. 18, 1972, P.L. 92-503, § 1(c), 86 Stat. 906; Aug. 10, 1973, P.L. 93-85, § 1(c), 87 Stat. 220; Oct. 2, 1973, P.L. 93-117, § 1(c), 87 Stat. 421; May 22, 1974, P.L. 93-288, Title VII [VI], § 702(d) [602(d)], 88 Stat. 163; Aug. 22, 1974, P.L. 93-383, Title III, §§ 302(c), 303(d), (e), 304(e), 316(c), 319(a), 88 Stat. 676-678, 685, 686; Dec. 23, 1975, P.L. 94-173, §§ 3, 4(a), 89 Stat. 1027; Aug. 3, 1976, P.L. 94-375, §§ 3(d), 8(a), (b)(4), (5), 90 Stat. 1069, 1071, 1072; April 30, 1977, P.L. 95-24, Title I, § 106, 91 Stat. 56; June 30, 1977, P.L. 95-60, § 1(c), 91 Stat. 257; July 31, 1977, P.L. 95-80, § 1(c), 91 Stat. 339; Oct. 12, 1977, P.L. 95-128, Title III, §§ 301(c), 303(c), 91 Stat. 1131; Sept. 30, 1978, P.L. 95-406, § 1(c), 92 Stat. 879; Oct. 31, 1978, P.L. 95-557, Title III, §§ 301, 325, 92 Stat. 2096, 2104; Sept. 28, 1979, P.L. 96-71, § 1(c), 93 Stat. 501; Nov. 8, 1979, P.L. 96-105, § 1(c), 93 Stat. 794; Dec. 21, 1979, P.L. 96-153, Title III, §§ 301(c), 314, 93 Stat. 1111, 1117; Oct. 3, 1980, P.L. 96-372, § 1(c), 94 Stat. 1363; Oct. 8, 1980, P.L. 96-399, Title III, §§ 301(c), 310(d), 333(c), (d), 94 Stat. 1638, 1642, 1653; Aug. 13, 1981, P.L. 97-35, Title III, Subtitle A, Part 3, §§ 331(c), 339B(a), 95 Stat. 412, 417; Sept. 8, 1982, P.L. 97-253, Title II, § 201(d), 96 Stat. 789; Oct. 6, 1982, P.L.

97-289, § 1(c), 96 Stat. 1230; Dec. 21, 1982, P.L. 97-377, Title I, § 101(c) in part, 96 Stat. 1908; May 26, 1983, P.L. 98-35, § 1(c), 97 Stat. 197; Oct. 1, 1983, P.L. 98-109, § 1(c), 97 Stat. 745; Nov. 30, 1983, P.L. 98-181, Title IV, Part A, Subpart 1, §§ 401(c), 404(b)(8), 408, 409, Subpart 2, § 423(b)(3), Subpart 3, § 432(b), (c), Subpart 4 § 446(d), 97 Stat. 1207, 1209, 1211, 1216, 1220, 1228; Oct. 17, 1984, P.L. 98-479, Title II, § 204(a)(6), 98 Stat. 2232; Oct. 8, 1985, P.L. 99-120, § 1(c), 99 Stat. 502; Nov. 15, 1985, P.L. 99-156, § 1(c), 99 Stat. 815; Dec. 26, 1985, P.L. 99-219, § 1(c), 99 Stat. 1730; March 27, 1986, P.L. 99-267, § 1(c), 100 Stat. 73; April 7, 1986, P.L. 99-272, Title III, § 3007(c), 100 Stat. 104; May 2, 1986, P.L. 99-289, § 1(b) in part, 100 Stat. 412; June 24, 1986, P.L. 99-345, § 1, 100 Stat. 673; Sept. 30, 1986, P.L. 99-430, 100 Stat. 986; Sept. 30, 1987, P.L. 100-122, § 1, 101 Stat. 793; Nov. 5, 1987, P.L. 100-154, 101 Stat. 890; Nov. 17, 1987, P.L. 100-170, 101 Stat. 914; Dec. 3, 1987, P.L. 100-179, 101 Stat. 1018; Dec. 21, 1987, P.L. 100-200, 101 Stat. 1327; Feb. 5, 1988, P.L. 100-242, Title IV, Subtitle A, §§ 401(a)(2), 406(b)(10)-(13), 426(d), (e), (h), 101 Stat. 1898, 1901, 1916; Nov. 23, 1988, P.L. 100-707, Title I, § 109(e)(3), 102 Stat. 4708; Nov. 5, 1990, P.L. 101-508, Title II, Subtitle C, § 2201, 104 Stat. 1388-21; Nov. 28, 1990, P.L. 101-625, Title VI, Subtitle B, §§ 611(b)(2), 612(b), 104 Stat. 4278, 4279; Oct. 28, 1992, P.L. 102-550, Title V, Subtitle A, §§ 509(d), (e), 516(d), Title X, Subtitle A, § 1012(l), 106 Stat. 3783, 3791, 3907; Oct. 5, 1994, P.L. 103-337, Div C, Title XXXIV, Subtitle B, § 3411(a)(1), (2), 108 Stat. 3100; April 26, 1996, P.L. 104-134, Title I [Title II, § 219], 110 Stat. 1321-290; May 2, 1996, P.L. 104-140, § 1(a), 110 Stat. 1327; Oct. 21, 1998, P.L. 105-276, Title II, § 222, 112 Stat. 2489; Oct. 27, 2000, P.L. 106-377, § 1(a)(1), 114 Stat. 1441; Nov. 26, 2001, P.L. 107-73, Title II, § 213(d), (e), 115 Stat. 676; Dec. 4, 2002, P.L. 107-326, § 5(b)(4), (5), 116 Stat. 2795; Dec. 16, 2003, P.L. 108-186, Title III, § 302(b), 117 Stat. 2692; Dec. 26, 2007, P.L. 110-161, Div K, Title II, § 221(1), 121 Stat. 2436.)

**HISTORY; ANCILLARY LAWS AND DIRECTIVES**

References in text:

The "Disaster Relief and Emergency Assistance Act", also known as the Robert T. Stafford Disaster Relief and Emergency Assistance Act, referred to in subsec. (f), is Act May 22, 1974, P.L. 93-288, 88 Stat. 143, which appears generally as *42 USCS §§ 5121* et seq. For full classification of such Act, consult USCS Tables volumes.

The "effective date of this clause" referred to in subsec. (g)(4)(A) is probably the date on which the existing provisions of subsec. (g)(4) were designated as subpara. (A) of such subsec., which was done by Act Nov. 30, 1983. See the 1983 Amendments notes.

The "Emergency Low Income Housing Preservation Act of 1987", referred to in subsec. (g)(4)(C), is Title II of P.L. 100-242, Feb. 5, 1988, 101 Stat. 1877, which, as amended by P.L. 101-625, is known as the Low Income Housing Preservation and Resident Homeownership Act of 1990. For full classification of this Act, consult USCS Tables volumes.

The "Housing and Community Development Amendments of 1978", referred to in subsec. (f), is Act Oct. 31, 1978, P.L. 95-557, 92 Stat. 2081. For full classification of such Act, consult USCS Tables volumes.

"Section 305 of this Act (as such section existed immediately before November 30, 1983)", referred to in this section, is § 305 of Act June 27, 1934, ch 847, Title III, 48 Stat. 1254, which appeared as *12 USCS § 1720* and was repealed by Act Nov. 30, 1983, P.L. 98-181, Title I, Ch I, Title IV, Part D, § 483(a), 97 Stat. 1240.

"Section 210(11)(A) through (G) and (I) of Public Law 95-619", referred to in subsec. (k), is Act Nov. 9, 1978, P.L. 95-619, § 210(11)(A)-(G) and (I), 92 Stat. 3209, which is classified to *42 USCS § 8211(11)(A)*-(G) and (I). *42 USCS § 8229* provided for termination of the authority under *42 USCS §§ 8211* et seq. effective June 30, 1989.

"Section 101 of the Housing and Urban Development Act of 1965", referred to in subsec. (l)(2), is § 101 of Act Aug. 10, 1965, P.L. 89-117, Title I, 79 Stat. 451, which is classified to *12 USCS § 1701s* and *42 USCS §§ 1451* and *1465*. *42 USCS § 1465* was repealed by Act Jan. 2, 1971, P.L. 91-646, Title II, § 220(a)(5), 84 Stat. 1903.

"This Act", referred to in this section, is the National Housing Act, which appears generally as *12 USCS §§ 1701* et seq. For full classification of this Act, consult the USCS Tables volumes.

The "United States Housing Act of 1937", referred to in this section, is Act Sept. 1, 1937, ch 896, as amended, which appears generally as *42 USCS §§ 1437* et seq. For full classification of this Act, consult USCS Tables volumes.

Explanatory notes:

The bracketed dollar amounts in subsecs. (d)(3)(ii)(I) and (d)(4)(ii)(I) are the adjusted dollar amounts for calendar year 2008. They have been inserted pursuant to *12 USCS § 1712a*, which provides that the dollar amounts in such subsections shall be adjusted annually. The 2008 adjusted amounts appear at *73 Fed. Reg. 7316*, February 7, 2008.

The bracketed number "115" was inserted in the history of this section to indicate the probable intended designation of the provision of Act of Dec. 31, 1970 which amended this section.

Act May 2, 1996, P.L. 104-140, § 1(a), 110 Stat. 1327, inserted the heading "TITLE I--OMNIBUS APPROPRIATIONS" after the enacting clause of Act April 26, 1996, P.L. 104-134.

The amendment made by § 1(a)(1) of Act Oct. 27, 2000, P.L. 106-377, is based on § 209(b) of Title II of H.R. 5482 (114 Stat. 1441A-25), as introduced on Oct. 18, 2000, which was enacted into law by such § 1(a)(1).

Amendments:

1955. Act Aug. 11, 1955, in subsec. (a), authorized assistance in relocating families from urban renewal areas even though such families are not required to leave the area; in para. (3) of subsec. (d), increased from $ 5,000,000 to $ 12,500,000 the limitation on the maximum amount of a mortgage.

1956. Act Aug. 7, 1956, in subsec. (a), inserted in the first sentence ", or (3) there is being carried out an urban renewal project assisted under section 1462 of Title 42" and substituted "clause (2) or (3)" for "clause (2)" each place it appears in the last proviso; in subsec. (d) substituted "$ 9,000" for "$ 7,600" and "$ 10,000" for "$ 8,600" in pars. (2) and (3); amended par. (2) to allow mortgage insurance for appraised value and to require at least $ 200 initial payment, which amount could include prepaid expenses, in lieu of former provisions which allowed mortgage to be insured up to 95 percent of the appraised value and required at least a 5 percent initial payment; eliminated "95 per centum of" following "not in excess of" and added "or the Federal Housing Commissioner" following "agencies thereof" in par. (3) and substituted "forty" for "thirty" in par. (4).

1957. Act July 12, 1957 in para. (1) of subsec. (g), substituted "(h), and (j)" for "and (h)".

1959. Act Sept. 23, 1959, in subsec. (a), inserted "(1)", "or environs of communities", "or near", and a clause (3), substituted ", (2)" for "and", "(A)" for "(1)", "(B)" for "(2)", "(C)" for "(3)", "(2)(A)" for "(1)" in two places, "(2)(B)" for "(2)" in two places, and "(2)(C)" for "(3)" in two places; substituted para. (2) of subsec. (d) for one which read: "involve a principal obligation (including such initial service charges, appraisal, inspection, and other fees as the Commissioner shall approve) in an amount not to exceed $ 9,000, except that the Commissioner may by regulation increase this amount to not to exceed $ 10,000 in any geographical area where he finds that cost levels so require, and not to exceed the appraised value (as of the date the mortgage is accepted for insurance) of a property upon which there is located a dwelling designed principally for a single-family residence, less such amount as may be necessary to comply with the succeeding proviso: *Provided*, That the mortgagor shall be the owner and occupant of the property at the time of the insurance and shall have paid on account of the property at least $ 200 in cash or its equivalent (which amount may include amounts to cover settlement costs and initial payments for taxes, hazard insurance, mortgage insurance premium, and other prepaid expenses): *Provided further*, That nothing contained herein shall preclude the Commissioner from issuing a commitment to insure and insuring a mortgage pursuant thereto where the mortgagor is not the owner and occupant and the property is to be built or acquired and repaired or rehabilitated for sale and the

insured mortgage financing is required to facilitate the construction or the repair or rehabilitation of the dwelling and provide financing pending the subsequent sale thereof to a qualified owner-occupant, and in such instances the mortgage shall not exceed 85 per centum of the appraised value; or" in para. (3) of subsec. (d), substituted "$ 12,000" for "$ 10,000" and clauses (1) and (2) and a proviso for "the Commissioner's estimate of the value of the property or project when constructed, or repaired and rehabilitated, for use as rental accommodations for ten or more families eligible for occupancy as provided in this section; redesignated subsec. (d)(4) to be (d)(5), and inserted a new subsec. (d)(4); in subsec. (f), added "and may include such commercial and community facilities as the Commissioner deems adequate to serve the occupants"; in para. (1) of subsec. (g), and substituted "(j), and (k)" for "and (j)"; in para. (2) of subsec. (g), inserted "or (4)".

1961. Act June 30, 1961, substituted the catchline for one which read: "Relocation housing"; substituted subsec. (a) for one which read: "This section is designed to supplement systems of mortgage insurance under other provisions of the National Housing Act in order to assist (1) in relocating families from urban renewal areas, (2) in relocating families to be displaced as the result of governmental action in a community respecting which (A) the Housing and Home Finance Administrator has made the certification to the Commissioner provided for by subsection 101(c) of the Housing Act of 1949, as amended, or (B) there is being carried out a project covered by a Federal aid contract executed, or prior approval granted, by the Housing and Home Finance Administrator under Title I of the Housing Act of 1949 as amended, before the effective date of the Housing Act of 1954, or (C) there is being carried out an urban renewal project assisted under section 111 of the Housing Act of 1949, as amended, and (3) in relocating families residing in the environs of a community described in clause (2) which are to be displaced as a result of governmental action. Mortgage insurance under this section shall be available only in those localities or communities or environs of communities, which shall have requested such mortgage insurance to be provided: *Provided*, That the Commissioner shall prescribe such procedures as in his judgment are necessary to secure to the families referred to above, a preference or priority of opportunity to purchase or rent such dwelling units: *Provided further*, That the total number of dwelling units in properties covered by mortgage insurance under this section in or near any such community shall not exceed the aggregate number of such dwelling units which the Housing and Home Finance Administrator, from time to time, certifies to the Commissioner to be needed for the relocation of families referred to above who would be eligible to rent or purchase dwelling accommodations in properties covered by mortgage insurance authorized by this section: *Provided further*, That, with respect to any community referred to in clause (2)(A) of this subsection, said Administrator shall not certify any dwelling units during any period when, in his opinion, the locality fails to carry out the workable program upon which said Administrator based the certification to the Commissioner that mortgage insurance under this section may be made available in such community: *And provided further*, That with respect to any community referred to in clause (2)(B) or (2)(C) of this subsection (but not clause (2)(A) thereof), the number of dwelling units certified by said Administrator shall not exceed the number which he estimates to be needed for the relocation of such displaced families during the period when the project referred to in said clause (2)(B) or (2)(C) is being carried out"; in subsec. (b), inserted the parenthetical phrase; substituted "$ 11,000" for "$ 9,000", "$ 27,000" for "$ 25,000", and "$ 33,000" for "$ 32,000", deleted ", except that the Commissioner may by regulation increase this amount to not to exceed $ 1,200 in any geographical area where he finds that cost levels so require" in clause (i), and the same language with the exception of the dollar limitation in clauses (ii), (iii), and (iv), the limitations being $ 20,000, $ 27,500, and $ 35,000, respectively, inserted the two provisos in subdiv. (A), deleted "of any such property, less such amount, in the case of any mortgagor, as may be necessary to comply with the succeeding provisos" preceding the provisos in subdiv. (B), "(i)", "(ii)", "(iii)", and "(iv)" preceding the dollar amount in subdiv. (B), and the final proviso which read: ": *And provided further*, That the Commissioner shall prescribe such procedures as in his judgment are necessary to secure to families, referred to in subsection (a) above, priorities in occupancy of the remaining units of two-, three-, and four-family dwellings after occupancy of one unit by the owner", inserted, "(i)", "(1) in the case of a displaced family," "in either instance", and clause (ii) in the first proviso of subdiv. (B), substituted ", or (2) in the case of any other family, he shall have paid on account of the property at least 3 per centum of the Secretary's estimate of its acquisition cost"; for "in cash or its equivalent" in subsec. (d)(2); substituted para. (3) of subsec. for one which read: "if executed by a mortgagor which is a private nonprofit corporation or association or other acceptable private nonprofit organization, regulated or supervised

under Federal or State laws or by political subdivisions of States or agencies thereof or the Federal Housing Commissioner, as to rents, charges, and methods of operation, in such form and in such manner as, in the opinion of the Commissioner, will effectuate the purposes of this section, the mortgage may involve a principal obligation not in excess of $ 12,500,000; and not in excess of $ 9,000 per family unit for such part of such property or project as may be attributable to dwelling use, except that the Commissioner may by regulation increase this amount to not to exceed $ 12,000 in any geographical area where he finds that cost levels so require, and not in excess of (1) in the case of new construction, the amount which the Commissioner estimates will be the replacement cost of the property or project when the proposed improvements are completed (the replacement cost may include the land, the proposed physical improvements, utilities within the boundaries of the land, architect's fees, taxes, interest during construction, and other miscellaneous charges incident to construction and approved by the Commissioner), or (2) in the case of repair and rehabilitation, the Commissioner's estimate of the value of the property when the proposed repair and rehabilitation is completed: *Provided,* That such property or project, when constructed, or repaired and rehabilitated, shall be for use as rental accommodations for ten or more families eligible for occupancy as provided in this section; or", substituted "other than a mortgage referred to in subsection (d)(3)" for "which is not a nonprofit organization" and clause (ii) for one which read: "not exceed $ 9,000 per family unit for such part of such property or project as may be attributable to dwelling use, except that the Commissioner may by regulation increase this amount to not to exceed $ 12,000 in any geographical area where he finds that cost levels so require", inserted "the sum of the estimated cost of repair and rehabilitation and", and substituted "before repair and rehabilitation" for "when the proposed repair and rehabilitation is completed" and the first proviso for one which read: "*Provided,* That such property or project when constructed, or repaired and rehabilitated, shall be for use as rental accommodations for ten or more families eligible for occupancy as provided in this section:", and deleted "and" at the end of subsec. (d)(4); deleted "provide for complete amortization by periodic payments within such terms as the Commissioner may prescribe, but not to exceed forty years from the date of insurance of the mortgage or three-quarters of the Commissioner's estimate of the remaining economic life of the building improvements, whichever is the lesser;" at the beginning of subsec. (d)(5), and added the proviso in subsec. (d)(5) and new subsec. (d)(6); added four sentences to subsec. (f); redesignated subsec. (g)(3) to be (g)(4) and in such subsection deleted "(3)" following "this paragraph" and added subsec. (g)(3); and inserted "cash payments," in the last sentence of subsec. (h).

1963. Act June 29, 1963, in subsec. (f), substituted "1965" for "1963".

1964. Act Sept. 2, 1964, inserted ", or other mortgagor approved by the Commissioner, and", substituted the language following the parenthetical phrase in clause (ii) down to "to compensate" for "$ 2,250 per room (or $ 8,500 per family unit if the number of rooms in such property or project is less than four per family unit), except that the Commissioner may in his discretion increase the dollar amount limitation of $ 2,250 per room to not to exceed $ 2,750 per room, and the dollar amount limitation of $ 8,500 per family unit to not to exceed $ 9,000 per family unit, as the case may be," and "clause" for "paragraph", and "45 per centum" for "$ 1,000 per room without regard to the number of rooms being less than four, or four or more," and inserted ", by regulation," in clause (ii), and added the second proviso in clause (iii) of subsec. (d)(3); made the same changes in clause (ii) of subsec. (d)(4) as were made in clause (ii) of subsec. (d)(3); redesignated subsec. (e) to be (e)(2) and added a par. (1) to subsec. (e); substituted "September 30," for "July 1" in two places, and added a sentence at the end of subsec. (f); and added a sentence at the end of subsec. (g)(3) which read: "If the insurance is paid in cash, there shall be added to such payment an amount equivalent to the interest which the debentures would have earned, computed to a date to be established pursuant to regulations issued by the Commissioner."

1965. Act Aug. 10, 1965, deleted "and" and "or more" two places each and inserted "and $ 19,250 per family unit with four or more bedrooms" and "and $ 22,750 per family unit with four or more bedrooms" in pars. (3)(ii) and (4)(ii) and inserted "the lower of (A) 3 per centum per annum, or (B)" in par. (5) of subsec. (d); substituted "this section after

October 1, 1969" for "subsection (d)(2) or (d)(4) after September 30, 1965, or under subsection (d)(3) after September 30, 1965" in subsec. (f); substituted "General" for "Section 221 Housing" in subsecs. (d)(4), (f), and (g)(1), and (3); substituted "; or" for "and all references therein to the Housing Insurance Fund or the Housing Fund shall be construed to refer to the Section 221 Housing Insurance Fund" at the end of subsec. (g)(2); added "and" before "(B)" and deleted ", and (C) all references in section 207 to the Housing Insurance Fund, the Housing Fund, or the Fund shall be construed to refer to the Section 221 Housing Insurance Fund"; deleted subsec. (g)(3), and subsec. (h) which read: "There is hereby created a Section 221 Housing Insurance Fund which shall be used by the Commissioner as a revolving fund for carrying out the provisions of this section, and the Commissioner is hereby authorized to transfer to such Fund the sum of $ 1,000,000 from the War Housing Insurance Fund established pursuant to the provisions of section 602 of this Act. General expenses of operation of the Federal Housing Administration under this section may be charged to the Section 221 Housing Insurance Fund.

"Moneys in the Section 221 Housing Insurance Fund not needed for the current operations of the Federal Housing Administration under this section shall be deposited with the Treasurer of the United States to the credit of such Fund, or invested in bonds or other obligations of, or in bonds or other obligations guaranteed as to principal and interest by, the United States. The Commissioner may, with the approval of the Secretary of the Treasury, purchase in the open market debentures issued under the provisions of this section. Such purchases shall be made at a price which will provide an investment yield of not less than the yield obtainable from other investments authorized by this section. Debentures so purchased shall be canceled and not reissued.

"Premium charges, adjusted premium charges, and appraisal and other fees received on account of the insurance of any mortgage accepted for insurance under this section, the receipts derived from the property covered by such mortgage and claims assigned to the Commissioner in connection therewith shall be credited to the Section 221 Housing Insurance Fund. The principal of, and interest paid and to be paid on, debentures issued under this section, cash adjustments, cash payments, and expenses incurred in the handling, management, renovation, and disposal of properties acquired under this section shall be charged to such fund."

1966. Act Nov. 3, 1966, in clause (A) of para. (2) of subsec. (d), substituted "$ 12,500" for "$ 11,000" and "$ 20,000" for "$ 18,000"; in subsec. (f), added a proviso to the first sentence and a sentence at the end, inserted "or which meet the requirements of subsection (h)," in the fourth sentence of such subsection; in subsec. (g), inserted "or paragraph (5) of subsection (h) of this section" in par. (1) and "or paragraph (1) of subsection (h) of this section"; added subsec. (h).

Act Nov. 6, 1966, in subsecs. (a), para. (2) of subsec. (d), clause (iii) of para. (3) of subsec. (d), para. (6) of subsec. (d), and subsec. (f), substituted "displaced family" for "family displaced from an urban renewal area or as a result of governmental action" and "displaced families" for "families displaced from urban renewal areas or as a result of governmental action" or "families displaced by urban renewal or other governmental action"; added a sentence at the end of subsec. (f). Section 14 of Act Nov. 6, 1966, provided: "This Act and the amendments made by this Act shall apply with respect to any major disaster occurring after October 3, 1964.

1967. Act May 25, 1967 substituted "Secretary" for "Commissioner" and "Secretary's" for "Commissioner's" throughout the section.

1968. Act Aug. 1, 1968, in subsec. (d), substituted "$ 15,000 (or $ 17,500, if the mortgagor's family includes five or more persons)" for "$ 12,500", "the mortgagor" for "a displaced family", and "$ 17,500 (or $ 20,000 if the mortgagor's family includes five or more persons)" for "$ 15,000" and inserted ", in cash or its equivalent" and the final proviso in par. (2), inserted the second proviso of par. (3)(iii); in subsec. (f), substituted the second proviso in the first sentence for "if the mortgagor waives the right to receive dividends on its equity investment in the portion thereof devoted to community and shopping facilities." and inserted "(i), or (j)"; in subsec. (g), deleted "or" and inserted "or paragraph (2) of subsection (i) of this section," in par. (1) and deleted "or" and inserted "or paragraph (2) of subsection (j) of this section," in par. (2); in subsec. (h), substituted clause (A) of par. (2) for one which read: "be executed by a private

nonprofit corporation or association approved for purposes of this subsection by the Secretary, for the purpose of financing the purchase of property (comprising one or more tracts or parcels, whether or not contiguous) upon which there is located deteriorating or substandard housing consisting of five or more single-family dwellings of detached, semi-detached, or row construction and of rehabilitating such dwellings with a view to subsequent resale as hereinafter provided:", "$ 50,000,000" for "$ 20,000,000" in par. (4), clause (B)(ii) of par. (5) for one which read: "bear interest at the same rate as the principal mortgage, and provide for complete amortization by periodic payments within a term equal to the remaining term (determined without regard to subparagraph (E)) of such principal mortgage.", and added pars. (6), (7) and (8); added subsecs. (i) and (j).

1969. Act Oct. 1, 1969, in subsec. (f), substituted "January 1, 1970" for "October 1, 1969".

Act Dec. 24, 1969, in para. (2) of subsec. (d), substituted "$ 18,000", "$ 21,000", "$ 24,000", "$ 32,400", "$ 39,600", for "$ 15,000", "$ 17,500", "$ 20,000", "$ 27,000", and "$ 33,000" respectively each place they appear, substituted "$ 30,000", "$ 38,400", and "$ 45,600", for "$ 25,000", "$ 32,000", and "$ 38,000" respectively; in clause (ii) of para. (3) of subsec. (d), substituted "$ 9,200", "$ 12,937.50", "$ 15,525", "$ 19,500", and "$ 22,137.50", for "$ 8,000", "$ 11,250", "$ 13,500", "$ 17,000", and "$ 19,250" respectively each place they appear and "$ 10,925", "$ 18,400", "$ 23,000", and "$ 26,162.50" for "$ 9,500", "$ 16,000", "$ 20,000", and "$ 22,750", respectively; in clause (ii) of para. (4) of subsec. (d), substituted "$ 9,200", "$ 12,937.50", "$ 15,525", "$ 19,550", and "$ 22,137.50" for "$ 8,000", "$ 11,250", "$ 13,500", "$ 17,000", and "$ 19,250" respectively each place they appear and "$ 10,925", "$ 18,400", "$ 23,000", and "$ 26,162.50", for "$ 9,500", "$ 16,000", "$ 20,000", and "$ 22,750", respectively; in subsec. (f), substituted "October 1, 1970" for "January 1, 1970"; and in subsec. (h)(6)(A) substituted "$ 18,000" for "$ 15,000".

1970. Act Oct. 2, 1970, in subsec. (f), substituted "November 1, 1970" for "October 1, 1970".

Act Oct. 21, 1970, in subsec. (f), substituted "December 1, 1970", for "November 1, 1970".

Act Dec. 1, 1970, in subsec. (f), substituted "January 1, 1971", for "December 1, 1970".

Act Dec. 31, 1970 ((P.L. 91-606, effective upon enactment (enacted Dec. 31, 1970), as provided by § 304 of such Act, which appears as *26 USCS § 165* note)) in subsec. (f), substituted "the Disaster Relief Act of 1970" for "the Act entitled 'An Act to authorize Federal assistance to States and local governments in major disasters, and for other purposes', approved September 30, 1950, as amended (*42 U.S.C. 1855-1855g*)".

Act Dec. 31, 1970 (P.L. 91-609), in subsec. (f), substituted "October 1, 1972" for "January 1, 1971"; added "In any case . . . predominantly residential)."; added "*Provided,* That such . . . shared facilities"; added "or who was a displaced person,"; substituted "the terms 'displaced family', 'displaced families,' and 'displaced person' shall mean a family or families, or a person," for "the terms 'displaced family' and 'displaced families' shall mean a family or families".

1972. Act Oct. 18, 1972, in subsec. (f), substituted "June 30, 1973" for "October 1, 1972".

1973. Act Aug. 10, 1973, in subsec. (f), substituted "October 1, 1973" for "June 30, 1973".

Act Oct. 2, 1973, in subsec. (f), substituted "October 1, 1974" for "October 1, 1973".

1974. Act May 22, 1974 (effective April 1, 1974, as provided by § 605 of such Act, which was repealed by Act Nov. 23, 1988, P.L. 100-707, title I, § 108(b), 102 Stat. 4708, and appears as *42 USCS § 5121* note), in subsec. (f), substituted "the Disaster Relief Act of 1974" for "the Disaster Relief Act of 1970".

Act Aug. 22, 1974, in clause (A) of para. (2) of subsec. (d), substituted "$ 21,600", "$ 25,200", "$ 28,000", "$ 38,880", and "$ 47,520", for "$ 18,000", "$ 21,000", "$ 24,000", "$ 32,400", and "$ 39,600", respectively in the matter preceding the first proviso, substituted "$ 25,200", "$ 28,800", "$ 36,000", "$ 46,080", and "$ 54,720", for "$ 21,000", "$ 24,000", "$ 30,000", "$ 38,400", and "$ 45,600", respectively in the second proviso; in clause (ii) of para. (3) of subsec. (d), substituted "$ 11,240", "$ 15,240", "$ 15,540", "$ 18,630", "$ 23,460", "$ 26,570", "$ 13,120", "$ 16,200",

"$ 22,080", "$ 27,600" and "$ 32,000" for "$ 9,200", "$ 12,937.50", "$ 15,525", "$ 19,550", "$ 22,137.50", "$ 10,925", "$ 13,500", "$ 18,400", "$ 23,000", and "$ 26,162.50", respectively; in clause (ii) of para. (4) of subsec. (d), substituted "$ 12,300", "$ 18,188", "$ 20,525", "$ 24,700", and "$ 29,038", for "$ 9,200", "$ 12,937.50", "$ 15,525", "$ 19,550", and "$ 22,137.50" respectively in matter preceding first semicolon, "$ 13,975", "$ 20,025", "$ 24,350", "$ 31,500", and "$ 34,578", for "$ 10,525", "$ 15,525", "$ 18,400", "$ 23,000", and "$ 26,162.50", respectively in matter following first semicolon; deleted clauses (i) of para. (3) and (i) of para. (4) of subsec. (d) which both read: "(i) not exceed $ 12,500,000;"; in para. (3) of subsec. (d), substituted "(and, except with respect to a project assisted or to be assisted pursuant to section 8 of the United States Housing Act of 1937, which certifies that it is not receiving financial assistance from the United States exclusively pursuant to such Act)" for "(and which certifies that it is not receiving financial assistance from the United States exclusively pursuant to the United States Housing Act of 1937)"; and in subsec. (f) substituted "June 30, 1977" for "October 1, 1974".

1975. Act Dec. 23, 1975, in clauses (ii) of paras. (3) and (4) of subsec. (d), substituted "by not to exceed 75 per centum in any geographical area" for "by not to exceed 45 per centum in any geographical area"; and in subsec. (f) deleted ", but not more than 10 per centum of the dwelling units in any such project shall be available for occupancy by such persons" following "insured under subsection (d)(3)".

1976. Act Aug. 3, 1976, in clause (A) of para. (2) of subsec. (d), substituted "$ 25,200" for "$ 21,600" in the matter preceding the first proviso, "$ 29,000" and "$ 33,000" for "$ 25,200" and "$ 28,800" respectively in the second proviso; in clause (ii) of paras. (3) and (4) of subsec. (d), substituted "50 per centum" for "75 per centum"; in clause (ii) of para. (3) of subsec. (d), substituted "$ 16,860", "$ 18,648", "$ 22,356", "$ 28,152", "$ 31,884", "$ 19,680", "$ 22,356", "$ 26,496", "$ 33,120", and "$ 38,400" for "$ 11,240", "$ 15,540", "$ 18,630", "$ 23,460", "$ 26,570", "$ 13,120", "$ 18,630", "$ 22,080", "$ 27,600", and "$ 32,000", respectively; in clause (ii) of para. (4) of subsec. (d), substituted "$ 18,450", "$ 20,625", "$ 24,630", "$ 29,640", and "$ 34,846" for "$ 12,300", "$ 17,188", "$ 20,525", "$ 24,700", and "$ 29,038" respectively in the matter preceding the first semicolon, "$ 20,962", "$ 24,030", "$ 29,220", "$ 37,800", and "$ 41,494" for "$ 13,975", "$ 20,025", "$ 24,350", "$ 31,500", and "$ 34,578", respectively in the matter following the first semicolon.

1977. Act April 30, 1977, in subsec. (d)(4), deleted from the introductory matter following "by a mortgagor" the words "other than a mortgagor referred to in subsection (d)(3) of this section,".

Act June 30, 1977, in the then fifth sentence of subsec. (f), substituted "July 31, 1977" for "June 30, 1977".

Act July 31, 1977, in the then fifth sentence of subsec. (f), substituted "September 30, 1977" for "July 31, 1977".

Act Oct. 12, 1977 in subsec. (d)(2)(A), substituted "$ 25,000", "$ 29,000" and "$ 33,000" for "$ 31,000", "$ 36,000", and "$ 42,000", respectively; and substituted "$ 28,000", "$ 38,880", "$ 47,520", "$ 36,000", "<4>6,080", and "$ 54,750" for "$ 35,000", $ 48,600", "$ 59,400", "$ 45,000", "$ 57,600" and "$ 68,400, respectively; and in subsec. (f), substituted "September 30, 1978" for "September 30, 1977".

1978. Act Sept. 30, 1978, in subsec. (f), substituted "October 31, 1978" for "September 30, 1978".

Act Oct 31, 1978, in subsec. (d)(3)(ii), substituted "$ 21,563", "$ 24,662", "$ 29,984", "$ 38,379", and "$ 42,756", for "$ 16,860", "$ 18,648", "$ 22,356", "$ 28,152", and "$ 31,884", respectively, substituted "$ 22,692", "$ 26,012", "$ 31,631", "$ 40,919" and "$ 44,917" for "$ 19,680", "$ 22,356", "$ 26,496", "$ 33,120" for "$ 38,400" respectively and in subsec. (d)(4)(ii), substituted "$ 19,406", "$ 22,028", "$ 26,625", "$ 33,420", and "$ 37,870" for "$ 18,450", "$ 20,625", "$ 24,630", "$ 29,640", and "$ 34,846", respectively; in subsec. (f), substituted "September 30, 1979" for "October 31, 1978".

1979. Act Sept. 28, 1979, in subsec. (f), substituted "October 31, 1979" for "September 30, 1979".

Act Nov. 8, 1979, in subsec. (f), substituted "November 30, 1979" for "October 31, 1979".

Act Dec. 21, 1979, in subsecs. (d)(3)(ii) and (d)(4)(ii) substituted "by not to exceed 75 per centum in any geographical area where he finds that cost levels so require, except that, where the Secretary determines it necessary on a project by project basis, the foregoing dollar amount limitations contained in this paragraph may be exceeded by not to exceed 90 per centum in such an area" for "by not to exceed 50 per centum in any geographical area where he finds that cost levels so require"; in subsec. (f) in the second paragraph in the sentence beginning "No mortgage . . ." substituted "September 30, 1980" for "November 30, 1979".

1980. Act Oct. 3, 1980, in subsec. (f), substituted "October 15, 1980" for "September 30, 1980".

Act Oct. 8, 1980, in subsec. (d)(6), deleted ": *Provided*, That no mortgage insured under subsection (d)(2) shall have a maturity exceeding three-quarters of the Secretary's estimate of the remaining economic life of the building improvements", following "insurance prior to construction"; in subsec. (f), substituted "September 30, 1981" for "October 15, 1980"; in subsec. (i)(2)(A)(iv), deleted "the lesser of" following "not to exceed", and deleted "or three-quarters of the Secretary's estimate of the remaining economic life of the building improvements" following "amortization of the mortgage."; and added subsec. (k).

1981. Act Aug. 13, 1981 (effective Oct. 1, 1981, as provided by § 371 of such Act, which appears as *12 USCS § 3701* note), in subsec. (f), substituted "September 30, 1982" for "September 30, 1981"; and in subsec. (k), inserted "therein" and deleted "therein" following "of the measure".

1982. Act Sept. 8, 1982, in subsec. (d)(2), in cl. (A), inserted ": *Provided further*, That the foregoing maximum mortgage amounts may be increased by the amount of the mortgage insurance premium paid at the time the mortgage is insured", and in cl (B)(i)(2), inserted "(excluding the mortgage insurance premium paid at the time the mortgage is insured)", and deleted "mortgage insurance premium," following "hazard insurance,".

As to the implementation of such amendments, see Act Sept. 8, 1982, P.L. 97-253, Title II, § 201(g), 96 Stat. 790, which appears as *12 USCS § 1709* note.

Act Oct. 6, 1982, in subsec. (f), substituted "May 20, 1983" for "September 30, 1982".

Act Dec. 21, 1982, in subsec. (d), in paras. (3)(ii) and (4)(ii), inserted "(by not to exceed 140 per centum where the Secretary determines that a mortgage other than one purchased or to be purchased under section 305 of this Act by the Government National Mortgage Association in implementing its special assistance functions is involved)".

1983. Act May 26, 1983, in subsec. (f), in the second undesignated para., substituted "September 30, 1983" for "May 20, 1983".

Act Oct. 1, 1983, in subsec. (f), in the second undesignated para., substituted "November 30, 1983" for "September 30, 1983".

Act Nov. 30, 1983, in subsec. (d), in para. (3)(iii), deleted "*Provided*, That in no case involving refinancing shall such mortgage exceed such estimated cost of repair and rehabilitation and the amount (as determined by the Secretary) required to refinance existing indebtedness secured by the property or project:" following "and rehabilitation:", and deleted "further" following "*Provided*" the first place it appears, in para. (4)(iv), deleted "*Provided*, That in no case involving refinancing shall such mortgage exceed such estimated cost of repair and rehabilitation and the amount (as determined by the Secretary) required to refinance existing indebtedness secured by the property or project:" following "or project", and deleted "further" following "*Provided*" the first time it appears, in para. (5), substituted "at such rate as may be agreed upon by the mortgagor and the mortgagee" for "(exclusive of premium charges for insurance and service charge, if any) at not to exceed 5 per centum per annum on the amount of the principal obligation outstanding at any time, or not to exceed such per centum per annum not in excess of 6 per centum as the Secretary finds necessary to meet the mortgage market"; in subsec. (f), in the second undesignated para., substituted "September 30, 1985" for "November 30, 1983"; and, in subsec. (g)(4), designated the existing provisions as subpara. (A), in subpara. (A), as so designated,

inserted "pursuant to a commitment to insure entered into before the effective date of this clause", and added subpara. (B).

Section 446(d) of such Act further, in subsec. (d)(6), inserted "(unless otherwise approved by the Secretary)"; for application of this amendment, see § 446(f) of such Act, which appears as a note to this section.

Such Act further (effective as provided by § 423(c) of such Act, which appears as *12 USCS § 1709* note), in subsec. (d)(2), deleted ": *Provided further,* That the foregoing maximum mortgage amounts may be increased by the amount of the mortgage insurance premium paid at the time the mortgage is insured" following "cost levels so require".

1984. Act Oct. 17, 1984, in subsec. (d)(3)(iii), substituted "rehabilitated" for "rehabilited".

1985. Act Oct. 8, 1985, in subsec. (f), in the second para., substituted "November 14, 1985" for "September 30, 1985".

Act Nov. 15, 1985, in subsec. (f) in the second para, substituted "December 15, 1985" for "November 14, 1985".

Act Dec. 1985, in subsec. (f), in the second para., substituted "March 17, 1986" for "December 15, 1985".

1986. Act March 27, 1986, in subsec. (f), in the second undesignated para., substituted "April 30, 1986" for "March 17, 1986".

Act April 7, 1986, in subsec. (f), purported to substitute "March 17, 1986" for "December 15, 1985"; however, such substitution was not executed inasmuch as such amendment was executed by Act Dec. 26, 1985, P.L. 99-219. See the 1985 Amendments note to this section.

Act May 2, 1986, in subsec. (f), substituted "June 6, 1986" for "April 30, 1986".

Act June 24, 1986, in subsec. (f), in the second undesignated para., substituted "September 30, 1986" for "June 6, 1986".

Act Sept. 30, 1986, in subsec. (f), in the second undesignated para., substituted "September 30, 1987" for "September 30, 1986".

1987. Act Sept. 30, 1987, in subsec. (f), substituted "October 31, 1987" for "September 30, 1987".

Act Nov. 5, 1987, in subsec. (f), substituted "November 15, 1987" for "October 31, 1987".

Act Nov. 17, 1987, in subsec. (f), substituted "December 2, 1987" for "November 15, 1987".

Act Dec. 3, 1987, in subsec. (f), substituted "December 16, 1987" for "December 2, 1987".

Act Dec. 21, 1987, in subsec. (f), substituted "March 15, 1988" for "December 16, 1987".

1988. Act Feb. 5, 1988, in subsec. (d), in para. (3)(ii), substituted "$ 28,032", "$ 38,979", "$ 49,893", "$ 55,583", "$ 29,500", "$ 33,816", "$ 41,120", "$ 53,195", and "$ 58,392" for "$ 21,563", "$ 29,984", "$ 38,379", "$ 42,756", "$ 22,692", "$ 26,012", "$ 31,631", "$ 40,919", and "$ 44,917", respectively, and substituted "not to exceed 110 percent in any geographical area where the Secretary finds that cost levels so require and by not to exceed 140 percent where the Secretary determines it necessary on a project-by-product basis, but in no case may any such increase exceed 90 percent where the Secretary determines that a mortgage purchased or to be purchased by the Government National Mortgage Association in implementing its special assistance functions under section 305 of this Act (as such section existed immediately before November 30, 1983) is involved" for "not to exceed 75 per centum in any geographical area where he finds that cost levels so require, except that, where the Secretary determines it necessary on a project by project basis, the foregoing dollar amount limitations contained in this paragraph may be exceeded by not to exceed 90 per centum (by not to exceed 140 per centum where the Secretary determines that a mortgage other than one purchased or to be purchased under section 305 of this Act by the Government National Mortgage Association in implementing its special assistance functions is involved) in such an area"; and in para. (4)(ii), substituted "$ 25,228", "$ 28,636", "$ 34,613", "$ 43,446", "$ 49,231", "$ 27,251", "$ 31,239", "$ 37,986", "$ 49,140", and "$ 53,942" for "$ 19,406", "$ 22,028", "$ 26,625", "$ 33,420", "$ 37,870", "$ 20,962", "$ 24,030", "$ 29,220", "$ 37,800", and "$ 41,494", respectively, and

substituted "not to exceed 110 percent in any geographical area where the Secretary finds that cost levels so require and by not to exceed 140 percent where the Secretary determines it necessary on a project-by-project basis, but in no case may any such increase exceed 90 percent where the Secretary determines that a mortgage purchased or to be purchased by the Government National Mortgage Association in implementing its special assistance functions under section 305 of this Act (as such section existed immediately before November 30, 1983) is involved" for "not to exceed 75 per centum in any geographical area where he finds that cost levels so require, except that, where the Secretary determines it necessary on a project by project basis, the foregoing dollar amount limitations contained in this paragraph may be exceeded by not to exceed 90 per centum (by not to exceed 140 per centum where the Secretary determines that a mortgage other than one purchased or to be purchased under section 305 of this Act by the Government National Mortgage Association in implementing its special assistance functions is involved) in such an area".

Such Act further provided for the substitution, in subsec. (d)(3)(ii), of "$ 32,321" for "$ 24,862"; however, the amendment was executed by substituting "$ 32,321" for "$ 24,662" in order to effectuate the probable intention of Congress.

Such Act further, in subsec. (f), deleted the sentence which read: "No mortgage shall be insured under this section after March 15, 1988, except pursuant to a commitment to insure before that date or except a mortgage covering property which the Secretary finds will assist in the provision of housing for displaced families." preceding "Any person who is sixty-two years . . .".

Such Act further (applicable as provided by § 406(d) of such Act, which appears as *12 USCS § 1709* note), in subsec. (d), in para. (2), substituted ", except that" for ": *Provided*, That a mortgage secured by property upon which there is located a dwelling designed principally for a two-, three-, or four-family residence shall not be insured under this section except in the case of a dwelling for occupancy by the mortgagor: *Provided further*, That", substituted "*Provided*, That (i)(1) in" for "*Provided*, That (i) if the mortgagor is the owner and an occupant of the property at the time of insurance, (1) ", deleted the provision which read: "*Provided further*, That nothing contained herein shall preclude the Secretary from issuing a commitment to insure, and insuring a mortgage pursuant thereto, where the mortgagor is not the owner and an occupant of the property, if the property is to be built or acquired and repaired or rehabilitated for sale, and the insured mortgage financing is required to facilitate the construction, or the repair or rehabilitation, of the dwelling and to provide financing pending the subsequent sale thereof to a qualified owner who is also an occupant thereof, but in such instances the mortgage shall not exceed 85 per centum of the appraised value: ", following "secured by the property:", and purported to substitute "the mortgagor" for "if the mortgagor is the owner and an occupant of the property such"; however, such substitution was applied to "if the mortgagor is the owner and an occupant of the property, such", in para. (6)(ii), deleted "is an owner-occupant of the property and" following "where the mortgagor"; in subsec. (h), in para. (6), deleted "and occupied" following "that are owned", and in para. (8), deleted "if one of the units is to be occupied by the owner" following "the Secretary".

Act Nov. 23, 1988, in subsec. (f), in the third undesignated para., substituted "and Emergency Assistance Act" for "Act of 1974".

1990. Act Nov. 5, 1990, in subsec. (g)(4), added subpara. (C).

Act Nov. 28, 1990, in subsec. (f), added the undesignated para. beginning "In order to induce advances . . ."; and added subsec. (l).

1992. Act. Oct. 28, 1992 (effective and applicable on enactment, as provided by § 2 of such Act, which appears as *42 USCS § 5301* note), in subsec. (d), in para. (3)(ii), substituted "$ 33,638", "$ 38,785", "$ 46,775", "$ 59,872", "$ 66,700", "$ 35,400", "$ 40,579", "$ 49,344", "$ 63,834", and "$ 70,070" for "$ 28,032", "$ 32,321", "$ 38,979", "$ 49,893", "$ 55,583", "$ 29,500", "$ 33,816", "$ 41,120", "$ 53,195", and "$ 58,392", respectively, in para. (4), in cl. (ii), substituted "$ 30,274", "$ 34,363", "$ 41,536", "$ 52,135", "$ 59,077", "$ 32,701", "$ 37,487", "$ 45,583", "$ 58,968", and "$ 64,730" for "$ 25,288", "$ 28,636", "$ 34,613", "$ 43,446", "$ 49,231, "$ 27,251", "$ 31,239", "$ 37,986", "$ 49,140", and "$ 53,942", respectively, and, in cl. (iv), inserted "(including the cost of evaluating and reducing lead-based paint hazards, as such terms are defined in section 1004 of the Residential Lead-Based Paint Hazard

Reduction Act of 1992)"; and, in subsec. (g)(4), in subpara. (A), substituted "issue to the mortgagee debentures having a par value" for ", subject to the cash adjustment provided herein, issue to the mortgagee debentures having a total face value".

1996. Act April 26, 1996, in subsec. (g)(4)(C)(viii), substituted "September 30, 1996" for "September 30, 1995".

1998. Act Oct. 21, 1998, in subsec. (g)(4)(C), in cl. (viii), substituted "December 31, 2002" for "September 30, 1996", and added cl. (ix).

2000. Act Oct. 27, 2000, in subsec. (g)(4)(C)(viii), inserted ", except that this subparagraph shall continue to apply if the Secretary receives a mortgagee's written notice of intent to assign its mortgage to the Secretary on or before such date".

2001. Act Nov. 26, 2001, in subsec. (d), in para. (3)(ii), substituted "$ 42,048" for "$ 33,638", substituted "$ 48,481" for "$ 38,785", substituted "$ 58,469" for "$ 46,775", substituted "$ 74,840" for "$ 59,872", substituted "$ 83,375" for "$ 66,700", substituted "$ 44,250" for "$ 35,400", substituted "$ 50,724" for "$ 40,579", substituted "$ 61,680" for "$ 49,344", substituted "$ 79,793" for "$ 63,834", and substituted "$ 87,588" for "$ 70,070", and, in para. (4)(ii), substituted "$ 37,843" for "$ 30,274", substituted "$ 42,954" for "$ 34,363", substituted "$ 51,920" for "$ 41,536", substituted "$ 65,169" for "$ 52,135", substituted "$ 73,846" for "$ 59,077", substituted "$ 40,876" for "$ 32,701", substituted "$ 46,859" for "$ 37,487", substituted "$ 56,979" for "$ 45,583", substituted "$ 73,710" for "$ 58,968", and substituted "$ 80,913" for "$ 64,730".

2002. Act Dec. 4, 2002, in subsec. (d), in para. (3)(ii), inserted the clause designator "(I)", and substituted "; (II) the Secretary may, by regulation, increase any of the dollar amount limitations in subclause (I) (as such limitations may have been adjusted in accordance with section 206A of this Act)" for "; and except that the Secretary may, by regulation, increase any of the foregoing dollar amount limitations contained in this clause", and, in para. (4)(ii), inserted the clause designator "(I)", and substituted "; (II) the Secretary may, by regulation, increase any of the dollar limitations in subclause (I) (as such limitations may have been adjusted in accordance with section 206A of this Act)" for "; and except that the Secretary may, by regulation, increase any of the foregoing dollar amount limitations contained in this clause".

2003. Act Dec. 16, 2003, in subsec. (d), in paras. (3)(ii)(II) and (4)(ii)(II), substituted "140 percent" for "110 percent" preceding "in any", and inserted ", or 170 percent in high cost areas,".

2007. Act Dec. 26, 2007, in subsec. (d), in paras. (3)(ii)(II) and (4)(ii)(II), substituted "170 percent" for "140 percent" in two places, and substituted "215 percent in high cost areas" for "170 percent in high cost areas".

Redesignation:
Section 602(d) of Title VI of Act May 22, 1974, P.L. 93-288, which amended this section, was redesignated § 702(d) of Title VII of such Act by Act Oct. 5, 1994, P.L. 103-337, Div C, Title XXXIV, Subtitle B, § 3411(a)(1), (2), 108 Stat. 3100.

Short titles:

Section 1 of Act June 30, 1961, provides: "This Act may be cited as 'Housing Act of 1961'." For full classification of such Act, consult USCS Tables volumes.

Other provisions:

**Amendments to provisions for family unit limits on rental housing; equitable application of such amendments or pre-amendment provisions to projects submitted for consideration prior to September 2, 1964.** Act Sept. 2, 1964, P.L. 88-560, § 107(g), 78 Stat. 776, provides: "If the Federal Housing Commissioner determines that it would be inequitable to apply the provisions of the National Housing Act as amended by this section to a project which had been submitted for his consideration prior to the date of the enactment of this Act, such provisions may be applied to such project without regard to the amendments made by this section."

**Taxation of interest paid on obligations secured by insured mortgages and issued by public agencies.** Act Aug. 22, 1974, P.L. 93-383, Title III, § 319(b), 88 Stat. 686, provides: "With respect to any obligation secured by a mortgage which is insured under section 221(d)(3) of the National Housing Act [this section] and issued by a public agency as mortgagor in connection with the financing of a project assisted under section 8 of the United States Housing Act of 1937 [*42 USCS § 1437f*], the interest paid on such obligation shall be included in gross income for purposes of chapter 1 of the Internal Revenue Code of 1954 [*26 USCS §§ 1* et seq.]."

**Limitation on number of dwelling units with mortgages not providing for complete amortization.** Act Nov. 30, 1983, P.L. 98-181, title IV, Part A, Subpart 4, § 446(f), 97 Stat. 1228, provides that "The aggregate number of dwelling units included in properties covered by mortgages insured pursuant to the authority granted in the amendments made by this section [*12 USCS §§ 1713, 1715k, 1715l* and *1715v*] in any fiscal year may not exceed 10,000."

**Preservation of low income housing.** Act Feb. 5, 1988, P.L. 100-242, Title II, Subtitles A and B, §§ 201-203, 221-230, 232-235, 101 Stat. 1877; Nov. 7, 1988, P.L. 100-628, Title X, Subtitle B, §§ 1021-1027, 102 Stat. 3270, 3271; Dec. 15, 1989, P.L. 101-235, Title II, §§ 201, 202(a)-(c), 203(b), 103 Stat. 2037, 2038; Oct. 1, 1990, P.L. 101-402, § 1, 104 Stat. 866 (effective as if enacted on Sept. 29, 1990); Oct. 31, 1990, P.L. 101-494, § 2(a), 104 Stat. 1185 (effective as provided by § 1 of such Act, which appears as a note to this section), which were generally amended by Act Nov. 28, 1990, P.L. 101-625, Title VI, Subtitle A, § 601(a), 104 Stat. 4249, and which now appear as *12 USCS §§ 4101* et seq., formerly provided as follows:

"SUBTITLE A. GENERAL PROVISIONS

"Sec. 201. Short title.

"This title may be cited as the 'Emergency Low Income Housing Preservation Act of 1987'.

"Sec. 202. Findings and purpose.

"(a) Findings. The Congress finds that--

"(1) in the next 15 years, more than 330,000 low income housing units insured or assisted under sections 221(d)(3) and 236 of the National Housing Act [subsec. (d)(3) of this section, *12 USCS § 1715z-1*] could be lost as a result of the termination of low income affordability restrictions;

"(2) in the next decade, more than 465,000 low income housing units produced with assistance under section 8 of the United States Housing Act of 1937 [*42 USCS § 1437f*] could be lost as a result of the expiration of the rental assistance contracts;

"(3) some 150,000 units of rural low income housing financed under section 515 of the Housing Act of 1949 [*42 USCS § 1485*] are threatened with loss as a result of the prepayment of mortgages by owners;

"(4) the loss of this privately owned and federally assisted housing, which would occur in a period of sharply rising rents on unassisted housing and extremely low production of additional low rent housing, would inflict unacceptable harm on current tenants and would precipitate a grave national crisis in the supply of low income housing that was neither anticipated nor intended when contracts for these units were entered into;

"(5) the loss of this affordable housing, to encourage the production of which the public has provided substantial benefits over past years, would irreparably damage hard-won progress toward such important and long-established

national objectives as--

"(A) providing a more adequate supply of decent, safe, and sanitary housing that is affordable to low income Americans;

"(B) increasing the supply of housing affordable to low income Americans that is accessible to employment opportunities; and

"(C) expanding housing opportunities for all Americans, particularly members of disadvantaged minorities;

"(6) the provision of an adequate supply of low income housing has depended and will continue to depend upon a strong, long-term partnership between the public and private sectors that accommodates a fair return on investment;

"(7) recent reductions in Federal housing assistance and tax benefits related to low income housing have increased the incentives for private industry to withdraw from the production and management of low income housing;

"(8) efforts to retain this housing must take account of specific financial and market conditions that differ markedly from project to project;

"(9) a major review of alternative responses to this threatened loss of affordable housing is now being undertaken by numerous private sector task forces as well as State and local organizations; and

"(10) until the Congress can act on recommendations that will emerge from this review, interim measures are needed to avoid the irreplaceable loss of low income housing and irrevocable displacement of current tenants.

"(b) Purpose. It is the purpose of this title [this note, among other things; for full classification, consult USCS Tables volumes]--

"(1) to preserve and retain to the maximum extent practicable as housing affordable to low income families or persons those privately owned dwelling units that were produced for such purpose with Federal assistance;

"(2) to minimize the involuntary displacement of tenants currently residing in such housing; and

"(3) to continue the partnership between all levels of government and the private sector in the production and operation of housing that is affordable to low income Americans.

"Sec. 203. Termination of certain provisions.

"(a) In general. Effective on November 30, 1990, or the date of enactment of the Cranston-Gonzalez National Affordable Housing Act, whichever is earlier--

"(1) subtitles B [this note and amending *12 USCS § 1715z-6*] and D [amending *12 USCS § 1715z-15, 42 USCS §§ 1437f, 1485*] are repealed; and

"(2) each provision of law amended by subtitle B [this note and amending *12 USCS § 1715z-6*] or D [amending *12 USCS § 1715z-15, 42 USCS § 1437f, 1485*] is amended to read as it would without such amendment.

"(b) Savings provision. The repeal or amendment of any provision under subsection (a) shall have no effect on any action taken or authorized under the provision prior to such repeal or amendment.

"SUBTITLE B. PREPAYMENT OF MORTGAGES INSURED UNDER NATIONAL HOUSING ACT

"Sec. 221. General prepayment limitation.

"(a) Prior approval of plan of action. An owner of eligible low income housing may prepay, and a mortgagee may accept prepayment of, a mortgage on such housing only in accordance with a plan of action approved by the Secretary of Housing and Urban Development under this subtitle [this note and amending *12 USCS § 1715z-6*]. An insurance contract with respect to eligible low-income housing may be terminated pursuant to section 229 of the National Housing Act [*12 USCS § 1715t*] only in accordance with a plan of action approved by the Secretary under this subtitle.

"(b) Alternative prepayment moratorium. In the event any court of the United States or any State invalidates the requirements established in this subtitle [this note and amending *12 USCS § 1715z-6*] (1) an owner of eligible low income housing located in the geographic area subject to the jurisdiction of such court may not prepay, and a mortgagee may not accept prepayment of, a mortgage on such housing during the 2-year period following the date of such invalidation, and (2) an insurance contract with respect to eligible low-income housing located in the geographic area subject to the jurisdiction of such court may not be terminated pursuant to section 229 of the National Housing Act [*12 USCS § 1715t*] during the 2-year period following the date of such invalidation.

"Sec. 222. Notice of intent.

"An owner of eligible low income housing seeking to initiate prepayment or other changes in the status or terms of the mortgage or regulatory agreement (including a request to terminate the insurance contract pursuant to section 229 of the

National Housing Act) [*12 USCS § 1715t*] shall file with the Secretary a notice of the intent of the owner in such form and manner as the Secretary shall prescribe. The owner shall simultaneously file the notice of intent with any appropriate State or local government agency for the jurisdiction within which the housing is located.

"Sec. 223. Plan of action.

"(a) Preparation and submission. Upon receipt of a notice of intent, the Secretary shall provide the owner with such information as the owner needs to prepare a plan of action, which information shall include a description of the Federal incentives authorized under this title [this note among other things; for full classification, consult USCS Tables volumes], and any relevant market area and demographic information that the Secretary has custody of and that the owner may use in preparing the plan. The owner shall submit the plan of action to the Secretary in such form and manner as the Secretary shall prescribe. The owner may simultaneously submit the plan of action to any appropriate State or local government agency for the jurisdiction within which the housing is located, which agency shall, in reviewing the plan, consult with representatives of the tenants of the housing.

"(b) Contents. The plan of action shall include--

"(1) a description of any proposed changes in the status or terms of the mortgage or regulatory agreement, which may include a request for incentives to extend the low income use of the housing;

"(2) a description of any assistance that could be provided by State or local government agencies, as determined by prior consultation between the owner and any appropriate State or local agencies;

"(3) a description of any proposed changes in the low income affordability restrictions;

"(4) a description of any change in ownership that is related to prepayment;

"(5) an assessment of the effect of the proposed changes on existing tenants;

"(6) a statement of the effect of the proposed changes on the supply of housing affordable to lower and very low income families or persons in the community within which the housing is located and in the area that the housing could reasonably be expected to serve; and

"(7) any other information that the Secretary determines is necessary to achieve the purposes of this title [this note among other things; for full classification, consult USCS Tables Volumes].

"(c) Revisions. The owner may from time to time revise and amend the plan of action as may be necessary to obtain approval of the plan under this subtitle [this note and amending *12 USCS § 1715z-6*].

"(d) Authority to limit contents of plan. The Secretary shall limit the amount of appraisal, market area, and demographic information required under this section in the case of a plan of action requesting incentives.

"Sec. 224. Incentives to extend low income use.

"(a) Agreements by Secretary. After receiving a plan of action from an owner of eligible low income housing, the Secretary may enter into such agreements as are necessary to satisfy the criteria for approval under section 225 [§ 225 of this note].

"(b) Permissible incentives. Agreements entered into under subsection (a) that by modifications to the existing regulatory agreement or mortgage extend the low income affordability restrictions through the term of the mortgage or, in the case of the prepayment of a mortgage, by a recorded instrument impose low income affordability restrictions (including the obligations specified in the regulatory agreement) through a period equivalent to the term of the original mortgage may include one or more of the following incentives that the Secretary, after taking into account local market conditions, determines to be necessary to achieve the purposes of this title [this note among other things; for full classification, consult USCS Tables volumes]:

"(1) An increase in the allowable distribution or other measures to increase the rate of return on investment.

"(2) Revisions to the method of calculating equity.

"(3) Increased access to residual receipts accounts or excess replacement reserves.

"(4) Provision of insurance for a second mortgage under section 241(f) of the National Housing Act [*12 USCS § 1715z-6(f)*].

"(5) An increase in the rents permitted under an existing contract under section 8 of the United States Housing Act of 1937 [*42 USCS § 1437f*], or (subject to the availability of amounts provided in appropriation Acts) additional assistance under such section 8 [*42 USCS § 1437f*] or an extension of any project-based assistance attached to the housing.

"(6) Financing of capital improvements under section 201 of the Housing and Community Development

Amendments of 1978 [amending *12 USCS § 1715z-1*, adding *12 USCS § 1715z-1a* and note].

"(7) Other actions, authorized in other provisions of law, to facilitate a transfer or sale of the project to a qualified nonprofit organization, limited equity tenant cooperative, public agency, or other entity acceptable to the Secretary.

"(8) Other incentives authorized in law.

"Sec. 225. Criteria for approval of plan of action.

"(a) Plan of action involving termination of low income affordability restrictions. The Secretary may approve a plan of action that involves termination of the low income affordability restrictions only upon a written finding that--

"(1) implementation of the plan of action will not materially increase economic hardship for current tenants (and will not in any event result in (A) a monthly rental payment by a current tenant that exceeds 30 percent of the monthly adjusted income of the tenant or an increase in the monthly rental payment in any year that exceeds 10 percent (whichever is lower), or (B) in the case of a current tenant who already pays more than such percentage, an increase in the monthly rental payment in any year that exceeds the increase in the Consumer Price Index or 10 percent (whichever is lower)) or involuntarily displace current tenants (except for good cause) where comparable and affordable housing is not readily available, determined without regard to the availability of Federal housing assistance that would address any such hardship or involuntary displacement; and

"(2)

(A) the supply of vacant, comparable housing is sufficient to ensure that such prepayment will not materially affect--

"(i) the availability of decent, safe, and sanitary housing affordable to lower income and very low-income families or persons in the area that the housing could reasonably be expected to serve;

"(ii) the ability of lower income and very low-income families or persons to find affordable, decent, safe, and sanitary housing near employment opportunities; or

"(iii) the housing opportunities of minorities in the community within which the housing is located; or

"(B) the plan has been approved by the appropriate State agency and any appropriate local government agency for the jurisdiction within which the housing is located as being in accordance with a State strategy approved by the Secretary under section 226 [§ 226 of this note].

"(b) Plan of action including incentives. The Secretary may approve a plan of action that includes incentives only upon finding that--

"(1) the package of incentives is necessary to provide a fair return on the investment of the owner;

"(2) due diligence has been given to ensuring that the package of incentives is, for the Federal Government, the least costly alternative that is consistent with the full achievement of the purposes of this title [this note among other things; for full classification, consult USCS Tables volumes]; and

"(3) binding commitments have been made to ensure that--

"(A) the housing will be retained as housing affordable for very low-income families or persons, lower income families or persons, and moderate income families or persons for the remaining term of the mortgage;

"(B) throughout such period, adequate expenditures will be made for maintenance and operation of the housing;

"(C) current tenants shall not be involuntarily displaced (except for good cause);

"(D) any increase in rent contributions for current tenants shall be to a level that does not exceed 30 percent of the adjusted income of the tenant or the fair market rent for comparable housing under section 8(b) of the United States Housing Act of 1937 [*42 USCS § 1437f(b)*], whichever is lower;

"(E)

(i) any resulting increase in rents for current tenants (except for increases made necessary by increased operating costs)--

"(I) shall be phased in equally over a period of not less than 3 years, if such increase is 30 percent or more; and

"(II) shall be limited to not more than 10 percent per year if such increase is more than 10 percent but less than 30 percent; and

"(ii) assistance under section 8 of the United States Housing Act of 1937 [*42 USCS § 1437f*] shall be provided if necessary to mitigate any adverse affect on current income eligible tenants; and

"(F)

(i) rents for units becoming available to new tenants shall be at levels approved by the Secretary that will ensure,

to the extent practicable, that the units will be available and affordable to the same proportions of very low-income families or persons, lower income families or persons, and moderate income families or persons (including families or persons whose incomes are 95 percent or more of area median income) as resided in the housing as of January 1, 1987 (based on the area median income limits established by the Secretary in February, 1987), or the date the plan of action is approved, whichever date results in the highest proportion of very low-income families, except that this limitation shall not prohibit a higher proportion of very low-income families from occupying the housing; and

"(ii) in approving rents under this paragraph, the Secretary shall take into account any additional incentives provided under this subtitle and shall make provision for such annual rent adjustments as may be made necessary by future reasonable increases in operating costs.

"(c) Section 8 rental assistance. When providing rental assistance under section 8, the Secretary may enter into a contract with an owner, contingent upon the future availability of appropriations for the purpose of renewing expiring contracts for rental assistance as provided in appropriations Acts, to extend the term of such rental assistance for such additional period or periods as is necessary to carry out an approved plan of action. The contract and the approved plan of action shall provide that, if the Secretary is unable to extend the term of such rental assistance or is unable to develop a revised package of incentives providing benefits to the owner comparable to those received under the original approved plan of action, the Secretary, upon the request of the owner, shall take the following actions (subject to the limitations under the following paragraphs):--

"(1) Modification of the binding commitments made pursuant to subsection (b) that are dependent on such rental assistance.

"(2) If action under paragraph (1) is not feasible, release of an owner from the binding commitments made pursuant to subsection (b) that are dependent on such rental assistance.

"(3) If action under paragraphs (1) and (2) would, in the determination of the Secretary, result in the default of the insured loan, approval of the revised plan of action, notwithstanding subsection (a), that involves the termination of low-income affordability restrictions.

At least 30 days prior to making a request under the preceding sentence, an owner shall notify the Secretary of the owner's intention to submit the request. The Secretary shall have a period of 90 days following receipt of such notice to take action to extend the rental assistance contract and to continue the binding commitments under subsection (b).

"(d) Relocation of displaced tenants. Any plan of action shall specify actions that the Secretary and the owner shall take to ensure that any tenants, displaced as a result of a plan of action approved under subsection (a) or as a result of modifications taken pursuant to subsection (c), are relocated to affordable housing.

"Sec. 226. Alternative state strategy.

"(a) Criteria for approval. The Secretary may approve a State strategy for purposes of section 225(a) [§ 225(a) of this note] only upon finding that it is a practicable statewide strategy that ensures at a minimum that--

"(1) current tenants will not be involuntarily displaced (except for good cause);

"(2) housing opportunities for minorities will not be adversely affected in the communities within which the housing is located;

"(3) any increase in rent for current tenants shall be to a level that does not exceed 30 percent of the adjusted income of the tenants or the fair market rent for comparable housing under section 8(b) of the United States Housing Act of 1937 [*42 USCS § 1437f(b)*], whichever is lower, except that any increase not necessitated by increased operating costs shall be phased in equally over not less than 3 years if such increase exceeds 10 percent;

"(4) housing approved under the State strategy will remain affordable to very low-income, lower income or moderate income families and persons for not less than the remaining term of the original mortgage, if the housing is to be made available for rental, or for not less than 40 years, if the housing is to be made available for homeownership;

"(5)

(A) not less than 80 of all units in eligible low income housing approved under the State strategy shall be retained as affordable to families or persons meeting the income eligibility standards for initial occupancy that applies to the housing on January 1, 1987; and

"(B) not less than 60 percent of the units in any one project shall remain available and affordable to such families or persons, within which not less than 20 percent of the units shall remain available and affordable to very low income families or persons as determined by the Secretary with adjustments for smaller and larger families;

"(6) expenditures for rehabilitation, maintenance and operation shall be at a level necessary to maintain the housing as decedent, safe and sanitary for the period specified in paragraph (4);

"(7) not less than 25 percent of new assistance required to maintain low income affordability in accordance with this section shall be provided through State and local actions, such as tax exempt financing, low-income tax credits, State or local tax concessions, and other incentives provided by the State or local governments; and

"(8) for each unit of eligible low income housing approved under the State strategy that is not retained as affordable to families or persons meeting the income eligibility standards for initial occupancy on January 1, 1987, the State will provide with State funds 1 additional unit of comparable housing in the same market area that is available and affordable to such families or persons, and such units or funds shall be made available before the Secretary approves the State strategy.

"(b) Additional requirements.

"(1) The Secretary may not approve a State strategy until the State has entered into all of the agreements necessary to carry out the strategy.

"(2) Each State strategy shall include any other provision that the Secretary determines to be necessary to implement an approved State strategy.

"(c) Implementation agreements. The Secretary may enter into such agreements as are necessary to implement an approved State strategy, which agreements may include incentives that are authorized in other provisions of this subtitle [this note and amending *12 USCS § 1715z-6*].

"Sec. 227. Timetable for approval of plan of action.

"(a) Notification of deficiencies. Not later than 60 days after receipt of a plan of action, the Secretary shall notify the owner in writing of any deficiencies that prevent the plan of action from being approved. If deficiencies are found, such notice shall describe alternative ways in which the plan could be revised to meet the criteria for approval.

"(b) Notification of approval.

"(1) In general. Not later than 180 days after receipt of a plan of action, or such longer period as the owner requests, the Secretary shall notify the owner in writing whether the plan of action, including any revisions, is approved. If approval is withheld, the notice shall describe--

"(A) the reasons for withholding approval; and

"(B) the actions that could be taken to meet the criteria for approval.

"(2) Opportunity to revise. The Secretary shall subsequently give the owner a reasonable opportunity to revise the plan of action and seek approval.

"Sec. 228. Modification of existing regulatory agreements.

"(a) In general. If a plan of action cannot be approved within 300 days after a plan of action is submitted, the Secretary may, upon the request of the owner, modify existing regulatory agreements to--

"(1) prevent involuntary displacement of current tenants (except for good cause);

"(2) ensure that adequate expenditures will be made for maintenance and operation of the housing;

"(3) extend any expiring project-based assistance on the housing for the term of the agreement;

"(4) permit an increase in the allowable distribution that could be accommodated by a rise in rents on occupied units to rise to a level no higher than 30 percent of the adjusted income of the current tenants, as determined by the Secretary, except that rents shall not exceed the fair market rent for comparable housing under section 8(b) of the United States Housing Act of 1937 [*42 USCS § 1437f(b)*] and any resulting increase in rents for current tenants shall be phased in equally over a period of no less than 3 years unless such increase is less than 10 percent; and

"(5) ensure that units becoming vacant during the term of the agreement are made available in accordance with section 225(b)(3)(F) [subsec. (b)(3)(F) of this note].

"(b) Expiration. Agreements entered into under this section shall expire upon the expiration of the 4-year period beginning on the date of the enactment of this Act. Upon the expiration of the agreements, the housing covered by the agreements shall be subject to any law then affecting low income affordability restrictions.

"Sec. 229. Consultations with other interested parties.

"The Secretary shall confer with any appropriate State or local government agency to confirm any State or local assistance that is available to achieve the purposes of this title [this note among other things; for full classification, consult USCS Tables volumes] and shall give consideration to the views of any such agency when making

determinations under section 225 [§ 225 of this note]. The Secretary shall also confer with appropriate interested parties that the Secretary believes could assist in the development of a plan of action that best achieves the purposes of this title [this note among other things; for full classification, consult USCS Tables volumes].

"Sec. 230. Right of conversion to alternative prepayment system.

"Any agreement to extend low income affordability restrictions under section 225(b) [§ 225(b) of this note] shall, for 4 years from the date of the enactment of this Act, provide the owner the right to convert to any system of incentives and restrictions provided in law during such period, with such adjustments as the Secretary determines are appropriate to compensate for the value of any benefits the owner had received under this title [this note among other things; for full classification, consult USCS Tables volumes].

"Sec. 232. Report to Congress.

"Not later than 1 year after the date of the enactment of this Act, the Secretary shall submit to the Congress a report setting forth the activities carried out under this subtitle [this note and amending *12 USCS § 1715z-6*]. The report shall include a description of the plans of action approved under subsections (a) and (b) of section 225 [§ 225(a), (b) of this note] and an analysis of the extent to which the plans retain housing affordable for very low-income families or persons, lower income families or persons, and moderate income families or persons. The report shall also include a detailed description of (1) the actions taken by the Secretary to ensure meaningful participation by affected tenants; and (2) the incentives developed by the Secretary under section 224 [§ 224 of this note] to ensure compliance with this subtitle [adding this note and amending *12 USCS § 1715z-6*].

"Sec. 233. Definitions.

"For purposes of this subtitle [this note and amending *12 USCS § 1715z-6*]:

"(1) The term 'eligible low income housing' means any housing financed by a loan or mortgage--

"(A) that is--

"(i) insured or held by the Secretary under section 221(d)(3) of the National Housing Act [subsec. (d)(3) of this section] and assisted under section 101 of the Housing and Urban Development Act of 1965 [*12 USCS § 1701s, 42 USCS §§ 1451, 1465*] or section 8 of the United States Housing Act of 1937 [*42 USCS § 1437f*];

"(ii) insured or held by the Secretary and bears interest at a rate determined under the proviso of section 221(d)(5) of the National Housing Act [subsec. (d)(5) of this section];

"(iii) insured, assisted, or held by the Secretary or a State or State agency under section 236 of the National Housing Act [*12 USCS § 1715z-1*]; or

"(iv) held by the Secretary and formerly insured under a program referred to in clause (i), (ii), or (iii); and

"(B) that, under regulation or contract in effect before the date of the enactment of this Act, is or will within 1 year become eligible for prepayment without prior approval of the Secretary.

"(2) The term 'low income affordability restrictions' means limits imposed by regulation or regulatory agreement on tenant rents, rent contributions, or income eligibility in eligible low income housing.

"(3) The terms 'lower income families or persons' and 'very low-income families or persons' means families or persons whose incomes do not exceed the respective levels established for lower income families and very low-income families under section 3(b)(2) of the United States Housing Act of 1937 [*42 USCS § 1437a(b)(2)*].

"(4) The term 'moderate income families or persons' means families or persons whose incomes are between 80 percent and 95 percent of median income for the area, as determined by the Secretary with adjustments for smaller and larger families.

"(5) The term 'owner' means the current or subsequent owner or owners of eligible low income housing.

"(6) The term 'Secretary' means the Secretary of Housing and Urban Development.

"(7) The term 'termination of low income affordability restrictions' means any elimination or relaxation of low income affordability restrictions (other than those permitted under an approved plan of action under section 225(b) [§ 225(b) of this note]).

"Sec. 234. Regulations.

"The Secretary shall issue final regulations to carry out this subtitle [this note and amending *12 USCS § 1715z-6*] not later than 60 days after the date of the enactment of this Act. The Secretary shall provide for the regulations to take effect not later than 45 days after the date on which the regulations are issued.

"Sec. 235. Effective date.

"The requirements of this subtitle shall apply to any project that is eligible low income housing on or after November 1, 1987.".

**Repeal of Nehemiah Housing Opportunity Grant provisions.** Act Feb. 5, 1988, P.L. 100-242, Title VI, §§ 601-613, 101 Stat. 1951, which formerly appeared as a note to this section, was repealed by Act Nov. 28, 1990, P.L. 101-625, Title II, Subtitle F, § 289(b)(1), 104 Stat. 4128, which appears as *42 USCS § 12839(b)(1)*. Such sections provided for the Nehemiah Housing Opportunity Fund for grants to encourage homeownership and to rebuild depressed city areas.

Act Oct. 28, 1991, P.L. 102-139, Title II, 105 Stat. 759, purported to amend § 606(c) of Act Feb. 5, 1988, P.L. 100-242; however, the amendment could not be executed.

Act Oct. 28, 1992, P.L. 102-550, Title I, Subtitle E, § 183(a), (b), 106 Stat. 3738 (applicable to any loan made under section 604 of Act Feb. 5, 1988 after July 1, 1990, as provided by § 183(c) of Act Oct. 28, 1992) purported to amend §§ 604 and 606(e)(5) of Act Feb. 5, 1988, P.L. 100-242; however the amendment could not be executed.

**Effective date of temporary extension of Emergency Low Income Housing Preservation Act of 1987; correction of any repeal.** Act Oct. 31, 1990, P.L. 101-494, § 1, 104 Stat. 1185, provides:

"(a) Effective date of extender. Public Law 101-402 [amending Subtitles A and B of Title II of Act Feb. 2, 1988, P.L. 100-242, which appears as a note to this section] shall be deemed to have taken effect as if such law were enacted on September 29, 1990.

"(b) Status of Act. The Emergency Low Income Housing Preservation Act of 1987 (*12 U.S.C. 1715l* note) shall be deemed to have been in effect on and after September 29, 1990, as if Public Law 101-402 had been enacted on September 29, 1990.

"(c) Correction of any repeal. The provisions of the Emergency Low Income Housing Preservation Act of 1987 (*12 U.S.C. 1715l* note), other than section 203, are amended to read as such provisions were in effect on September 29, 1990. The amendment made by this subsection shall take effect as if this Act were enacted on September 29, 1990.

"(d) Effective date. If the Cranston-Gonzalez National Affordable Housing Act is enacted before the enactment of this Act, this section shall be deemed to have taken effect immediately before the enactment of the Cranston-Gonzalez National Affordable Housing Act.".

**Effective date of additional temporary extension of Emergency Low Income Housing Preservation Act of 1987.** Act Oct. 31, 1990, P.L. 101-494, § 2(b), 104 Stat. 1185, provides: "If the Cranston-Gonzalez National Affordable Housing Act is enacted on or after October 31, 1990, this section [amending § 203 of Act Feb. 5, 1988, P.L. 100-242 (note to this section)] shall be deemed to have taken effect on October 30, 1990.".

**Delegation of processing.** For provisions for delegation of mortgage insurance processing functions to selected approved mortgagees, see Act Nov. 28, 1990, P.L. 101-625, Title III, Subtitle B, § 328, 104 Stat. 4138, which appears as *12 USCS § 1713* note.

**NOTES:**

Code of Federal Regulations:

Office of the Secretary, Department of Housing and Urban Development--Nondiscrimination in federally assisted programs of the Department of Housing and Urban Development-effectuation of Title VI of the Civil Rights Act of 1964, 24 CFR Part 1.

Office of Assistant Secretary for Housing-Federal Housing Commissioner, Department of Housing and Urban Development--Electronic transmission of required data for certification and recertification and subsidy billing procedures for multifamily subsidized projects, 24 CFR Part 208.

Office of Assistant Secretary for Housing-Federal Housing Commissioner, Department of Housing and Urban Development--Mortgage insurance and insured improvement loans for urban renewal and concentrated development areas, 24 CFR Part 220.

Office of Assistant Secretary for Housing-Federal Housing Commissioner, Department of Housing and Urban Development--Low cost and moderate income mortgage insurance--savings clause, 24 CFR Part 221.

Office of Assistant Secretary for Housing-Federal Housing Commissioner, Department of Housing and Urban

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ANAHEIM GARDENS, et al., | ) | |
| Plaintiffs, | ) | No. 93-655C |
| v. | ) | (Judge Margaret M. Sweeney) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DECLARATION IN SUPPORT OF PLAINTIFFS' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

I, Harry J. Kelly, declare as follows:

1. I am a partner in Nixon Peabody LLP and the lead counsel of record for Plaintiffs in the above-captioned matter.

2. Exhibit A is true and correct copy of the December 1970 Rent Supplement Contract for Milwood Apartments.

3. Exhibit B is a true and correct copy of the July 1969 Rent Supplement Contract for Market North Apartments #2.

4. Exhibit C is a true and correct copy of the September 1971 Interest Reduction Contract for C-W Associates covering 100 Centre Plaza.

5. Exhibit D is a true and correct copy of a 1990 Housing Assistance Payments (HAP) Contract Renewal for Milwood Apartments.

6. Exhibit E is a true and correct copy of a 1989 Housing Assistance Payments (HAP) Contract Renewal for Parthenia Manor.

7. Exhibit F is a true and correct copy of a 1986 Housing Assistance Payments (HAP) Contract Renewal for Market North Apartments #2.

8. Exhibit G is a true and correct copy of a memorandum dated July 17, 1992 from David R. Cooper, Assistant General Counsel Multifamily Mortgage Division regarding Conversion of Rent Supplement Units to Section 8 Assistance.

9. Exhibit H is a true and correct copy of a letter dated May 1, 1995 from David R. Cooper for John J. Daly, Associate General Counsel Office of Insured Housing.

10. Exhibit I is a true and correct copy of the Use Agreement and Amendment of Regulatory Agreement for Milwood Apartments.

11. Exhibit J is a true and correct copy of the Use Agreement and Amendment of Regulatory Agreement for Parthenia Manor Apartments.

12. Exhibit K is a true and correct copy of the Use Agreement and Amendment of Existing Regulatory Agreement for Market North Apartments #2.

13. Exhibit L is a true and correct copy of the Defendant's Counter-List of Anniversary Date dated June 23, 1995.

14. Exhibit M is a true and correct copy of a letter dated January 16, 1990 from Pamela Goodman to Frank Malone with attachment.

15. Exhibit N is a true and correct copy of a letter dated March 20, 1990 from Nick M. Nibbi to Pamela Goodman.

16. Exhibit O is a true and correct copy of a letter dated April 17, 1990 from Pamela Goodman to David L. Keene.

17. Exhibit P is a true and correct copy of a letter dated August 22, 1990 from Pamela Goodman to Nick Nibbi with attachment.

18. Exhibit Q is a true and correct copy of a letter dated September 13, 1990 from Mary Noble to Pamela Goodman.

19. Exhibit R is a true and correct copy of a letter dated October 23, 1990 from Kathleen M. Sheehan, Esq. to Patricia Allen, Esq.

20. Exhibit S is a true and correct copy of a letter dated October 31, 1990 from Kathleen M. Sheehan, Esq. to Patricia P. Allen, Esq.

21. Exhibit T is a true and correct copy of a letter dated November 26, 1990 from Kathleen M. Sheehan, Esq. to Patricia P. Allen, Esq.

22. Exhibit U is a true and correct copy of letter dated on or about December 26, 1990 from Kathy E. Machan, Esq. to Kathleen Sheehan, Esq.

23. Exhibit V is a true and correct copy of a letter dated December 27, 1990 from Kathleen M. Sheehan, Esq. to David Keene.

24. Exhibit W is a true and correct copy of a letter dated December 27, 1990 from Edward T. Pollack, Esq. to Nick Nibbi.

25. Exhibit X is a true and correct copy of a letter dated December 28, 1990 from Kathleen M. Sheehan, Esq. to Nick Nibbi.

26. Exhibit Y is a true and correct copy of a letter dated October 29, 1992 from Maureen Fahey to Roger W. Stern with attachments.

27. Exhibit Z is a true and correct copy of a letter dated September 27, 1995 from Jeanne McHallem to Roger W. Stern.

28. Exhibit AA is a true and correct copy of a memorandum dated September 28, 1995 from Jeanne M. McHallam to Kerry Mulholland regarding Plan of Action – Funding Request.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 29th of August, 2008.

Harry J. Kelly

APR.15.1996 12:17PM HUD LA 213 251 7096 NO.759 P.2

U. S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
FEDERAL HOUSING ADMINISTRATION

FHA FORM NO. 2503

Contract No. 122-35130-LDI-SUP
(Project No.)

# RENT SUPPLEMENT CONTRACT

THIS AGREEMENT *(herein called the "Contract")*, entered into this 16th day of December, 1970, between Milwood Apartments *(herein called the "Housing Owner")*, and its successors, and the Secretary of Housing and Urban Development, acting by and through the Federal Housing Commissioner *(herein called the "Commissioner")*, and his successors, WITNESSETH:

In consideration of the mutual covenants hereinafter set forth, the parties hereto agree as follows:

SECTION 1. Purpose of Contract -- The purpose of this Contract is to provide financial assistance to enable certain private housing to be available for low income families and individuals who are elderly, handicapped, displaced, victims of natural disasters, or occupants of substandard housing. By the Commissioner's payment of a portion of the rent on behalf of qualified tenants, pursuant to Section 101 of the Housing and Urban Development Act of 1965, Public Law 89-117 89th Congress, H.R. 7984, August 10, 1965 *(herein called the "Rent Supplement Program")*.

SECTION 2. Description of Project -- The housing project covered by this Contract is identified as follows: Milwood Apartments

FHA Project No. 122-35130-LDI-SUP, located at 6922 Milwood Avenue, Canoga Park, California, consisting of 8 units *(herein called the "Project")*. The Project is subject to a mortgage in the amount of $ 96,100, insured under Section 221-D-3 of the National Housing Act bearing interest at a permanent rate of 3% % *(herein called the "Insured Mortgage")*.

SECTION 3. Housing Owner's Certification of Authority - Commissioner's Certification of Eligibility of Housing Owner -- The Housing Owner certifies that it has the legal authority to enter into this Contract and to own, operate and manage the Project in accordance with this Contract and the regulations of the Secretary of Housing and Urban Development and the Commissioner governing the Rent Supplement Program.

The Commissioner certifies that the Housing Owner is eligible and has been approved for receiving the benefits of the Rent Supplement Program.

SECTION 4. Term -- This Contract shall continue until the termination or maturity of the Insured Mortgage, or 40 years from the date of the first payment made hereunder, whichever occurs first.

SECTION 5. Maximum Annual Contract Amount - The maximum dollar amount of rent supplement payments that may be made under this Contract in any one fiscal year shall be limited to an amount fixed by the Commissioner in the following manner:

Based upon probable effective demand and distribution of tenant income, the Commissioner has estimated that rent supplement payments in any one year plus a contingency allowance of 10% will not exceed $ 11,616 (8)

The Housing Owner agrees, during a rent-up period as defined herein, to use its best efforts to secure tenants whose annual rent supplement requirements would not exceed the Commissioner's estimate.

At the termination of the rent-up period, the Commissioner will adjust the original estimate to reflect the actual rent supplement requirements of tenants during the rent-up period plus a contingency allowance of 10%. Upon such adjustment being made, the Commissioner shall give written notice thereof to the Housing Owner by an Addendum to be made a part of this contract.

The amount stated in the Addendum shall constitute the maximum annual contract amount and limit the amount of rent supplement payments that may be made under this Contract in any one fiscal year. It shall be effective, on a non-cumulative basis, from the time commencing after the rent-up period through the remaining term of the Contract.

The rent-up period shall commence on the date occupancy is first approved by the Commissioner and shall terminate 6 months thereafter, or upon such later date as the Commissioner has consented to in writing.

SECTION 6. Qualified Tenants -- The benefits of the rent supplement program shall be available only to an individual or family with respect to whom the Commissioner has issued a certificate of eligibility.

52

10 A



DOJ0740006

Kelly Decl. Ex. A

SECTION 7. Certificate of Eligibility - Amount of Rent Supplement Payments - Termination for Reported
Increased Income - Increase for Hardship - Yearly Recertification Requirements and Adjustment. -- The Housing
Owner will assist a tenant in preparing an application for rent supplement payments. Upon request of the Hous-
ing Owner, the Commissioner will review the application for eligibility. If the application meets the require-
ments of the Commissioner, the Commissioner shall issue the initial certificate of eligibility. The initial certifi-
cate shall state the amount of rent supplement payment that the Commissioner will make monthly to the Housing
Owner on behalf of the qualified tenant. This shall be the amount by which the fair market rental for the unit ap-
proved by the Commissioner exceeds one-fourth of the tenant's income as determined by the Commissioner, or
exceeds any welfare allowance for housing if such allowance is larger than one-fourth of the tenant's income,
except that the amount of rent supplement payment stated in the initial certificate of eligibility shall not, re-
gardless of the tenant's income, exceed 70% of the fair market rental for the unit. An initial certificate of eligi-
bility will not be issued in any case where the amount of rent supplement payment would be less than 10% of the
fair market rental for the unit.

The Commissioner may terminate rent supplement payments upon a reported increase in income by the
tenant pursuant to Section 9 hereof.

Where a tenant's income has decreased due to illness, loss of job, or other hardship beyond his control,
the Commissioner may grant a temporary increase in rent supplement payments.

A recertification of income shall be obtained by the Housing Owner each year from the date the initial
certificate was issued, except with respect to tenants who are 62 years of age or older. The rent supplement
payment shall be adjusted to reflect income changes shown by the recertification.

SECTION 8. Commissioner's Agreement to Make Rent Supplement Payments to Housing Owner -- During
the rent-up period the Commissioner agrees to make rent supplement payments to the Housing Owner on behalf
of qualified tenants in the amounts set forth in the certificate of eligibility. Thereafter, the Commissioner
agrees to make rent supplement payments to the Housing Owner on behalf of qualified tenants in the amounts set
forth in the certificates of eligibility subject to the adjustment provided herein and the maximum annual contract
amount limiting the amount of payments in any one fiscal year. Payments shall be made monthly in accordance
with procedures prescribed by the Commissioner. In no event shall payments be made for vacant units.

SECTION 9. Lease - Continuing Occupancy - Size of Units -- Occupancy by qualified tenants shall be
permitted only upon the execution of a lease in form approved by the Commissioner. The lease must provide
that the tenant report immediately any increase in income which results in a monthly income of four or more
times the full monthly rental for the housing unit occupied. The Housing Owner agrees to immediately notify
the Commissioner in writing of such report so that termination of rent supplement payments can be made. Fail-
ure of the Housing Owner to notify the Commissioner of the report shall obligate the Housing Owner to reimburse
the Commissioner for any rent supplement payments made during the period the tenant is receiving the reported
increase in income. The lease shall also contain a provision obligating the tenant to reimburse the Commis-
sioner for any rent supplement payments made by the Commissioner during a period when the tenant's income has
increased to four or more times the full monthly rental and the payments have not been terminated because of the
tenant's failure to report such increase to the Housing Owner.

Where, by reason of an increase in income, a tenant is no longer entitled to rent supplement benefits, he
may continue to occupy the unit, but in no event shall the rent for the unit exceed the fair market rental as de-
termined by the Commissioner.

Qualified tenants shall not be permitted to occupy units larger than the Commissioner determines neces-
sary for their needs.

SECTION 10. Tenant Selection -- The Housing Owner will be responsible for tenant selection and for the
usual landlord-tenant relationships, conditioned on the Commissioner's approval if the tenant is eligible for rent
supplements. The Housing Owner will be free to evict tenants for violation of lease provisions or for other
causes. The Housing Owner may rent units to families or individuals who can afford to pay market rents or to
families and individuals eligible to receive rent supplements.

SECTION 11. Records -- The Housing Owner shall maintain accurate records, books and accounts in
such form and manner as the Commissioner may prescribe. Such records, books and accounts shall be avail-
able to the Commissioner for inspection and audit.

SECTION 12. Defaults -- The violation of the regulations, or of any covenant of this Contract, or of the
insured mortgage, or of the regulatory agreements, or the filing of any false statement or misrepresentation to
the Commissioner on the part of the Housing Owner, shall constitute a default under this Contract. Upon such
default, the Commissioner may terminate this Contract without further liability hereunder and bring action to re-
cover from the Housing Owner any excess rent supplement payments received in violation of this Contract.

-3-

SECTION 13. Non-Assignment -- This Contract or any interest therein may not be assigned without the prior written approval of the Commissioner.

SECTION 14. Exclusion - No member of or delegate to Congress, or resident commission, shall be admitted to any share or part of this Contract or to any benefits which may arise therefrom; but this provision shall not be construed to extend to this Contract if made with a corporation for its general benefit.

SECTION 15. Provisions Applicable if Housing Owner is a Cooperative Corporation --

(a) As used in this Contract the term "tenant" shall mean a member of a cooperative, and the term "rent" shall mean the charges under the occupancy agreement between the members of the cooperative.

(b) A member of a cooperative that obtains a certificate of tenant eligibility shall be required, as a condition of receiving such certificate, to agree that upon a sale of such membership any equity increment accumulated through rent supplement payments will be turned over to the cooperative housing owner and will not be made available to the member. Funds received by a cooperative representing equity increment accumulated through rent supplement payments shall be deposited in a special account by the cooperative and disbursed as directed by the Commissioner.

SECTION 16. Renegotiation, Modification, Termination -- If, at any future time, the parties find that it would be to their best interests and to the best interests of the Rent Supplement Program, the maximum annual contract amount may be increased or decreased, or any other provision of the Contract may be modified or amended, or the entire contract be terminated, upon written agreement of the parties.

SECTION 17. Special Conditions -- The following special conditions shall be applicable to this Contract:

(a) No more than 25 percent of the units in a project may be eligible for supplementation of more than 60 percent of the economic rent.

(b) "The lease must provide that the tenant report immediately any increase in assets to more than $5,000 in the case of the elderly (62 years or older) and more than $2,000 in the case of other than the elderly. The Housing Owner agrees to immediately notify the Commissioner in writing of such report so that termination of rent supplement payments can be made. Failure of the Housing Owner to notify the Commissioner of the report shall obligate the Housing Owner to reimburse the Commissioner for any rent supplement payments made during the period the tenant's assets exceeded the aforesaid limits. The lease shall also contain a provision obligating the tenant to reimburse the Commissioner during the period when the tenant's assets exceeded the aforesaid limits and the payments have not been terminated because of the tenant's failure to report such increase to the Housing Owner."

(SEAL)

Attest:

______________________________

[signature] (Housing Owner)

By [signature]

SECRETARY OF HOUSING AND URBAN DEVELOPMENT

by FEDERAL HOUSING COMMISSIONER

Attest:

______________________________

By [signature]

Project Number 122-35130

Project Name MILWOOD APTS.

HUD Field Office L.A.

TEMPORARY AMENDMENT TO RENT SUPPLEMENT CONTRACT

THIS AGREEMENT, entered into this 30th day of June, 1983, between Joseph R. Biafora + Stefi Biafora (hereinafter called the "Housing Owner"), and its successors, and the Secretary of Housing and Urban Development (herein called the "Secretary", and his/her successors,

WITNESSETH:

In consideration of the mutual covenants hereinafter set forth and for good and valuable consideration the parties hereto agree as follows:

SECTION 1. Purpose of Agreement - The purpose of this Agreement is to provide supplemental assistance to projects with existing Rent Supplement Contracts requiring increases in their existing contract amounts so that they are funded for a two-year period. The two-year period covered under this agreement shall be from October 1, 1982 to September 30, 1984.

SECTION 2. Temporary Maximum Annual Contract Amount - The maximum annual contract amount stated in Section 5 of the Rent Supplement Contract (or in the addendum, if any) is temporarily amended (increased) by $ 1,104 annually.

SECTION 3. Expiration - Upon expiration of the term of this amendment, the previously approved annual contract amount of $ 14,256 as stated in Section 5 of the Rent Supplement Contract (or the amount revised by the addendum, if any) shall prevail.

In all other respects the aforesaid Rent Supplement Contract shall remain in full force and effect.

BY: [signature] Stefi Biafora [signature]
Housing Owner

DATE: June 30th 1983

BY: [signature]
Secretary of Housing & Urban Development

DATE: 7/14/83

FHA FORM NO. 2503

DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
FEDERAL HOUSING ADMINISTRATION

Contract No. 053-35017-LDP-SUP
(Project No.)

# RENT SUPPLEMENT CONTRACT

THIS AGREEMENT *(herein called the "Contract")*, entered into this first day of July, 19 69, between Market North Apartments #2, a Partnership, *(herein called the "Housing Owner")*, and its successors, and the Secretary of Housing and Urban Development, acting by and through the Federal Housing Commissioner *(herein called the "Commissioner")*, and his successors, WITNESSETH:

In consideration of the mutual covenants hereinafter set forth, the parties hereto agree as follows:

SECTION 1. Purpose of Contract -- The purpose of this Contract is to provide financial assistance to enable certain private housing to be available for low income families and individuals who are elderly, handicapped, displaced, victims of natural disasters, or occupants of substandard housing, by the Commissioner's payment of a portion of the rent on behalf of qualified tenants, pursuant to Section 101 of the Housing and Urban Development Act of 1965, Public Law 89-117 89th Congress, H.R. 7984, August 10, 1965 *(herein called the "Rent Supplement Program")*.

SECTION 2. Description of Project -- The housing project covered by this Contract is identified as follows:

FHA Project No. 053-35017-LDP-SUP, located at Rosemont Avenue, Wilmington, N. C. ______, consisting of 100 units *(herein called the "Project")*. The Project is subject to a mortgage in the amount of $ 1,083,300.00, insured under Section 221 (d) (3) of the National Housing Act bearing interest at a permanent rate of 7-1/2 % *(herein called the "Insured Mortgage")*.

SECTION 3. Housing Owner's Certification of Authority - Commissioner's Certification of Eligibility of Housing Owner -- The Housing Owner certifies that it has the legal authority to enter into this Contract and to own, operate and manage the Project in accordance with this Contract and the regulations of the Secretary of Housing and Urban Development and the Commissioner governing the Rent Supplement Program.

The Commissioner certifies that the Housing Owner is eligible and has been approved for receiving the benefits of the Rent Supplement Program.

SECTION 4. Term -- This Contract shall continue until the termination or maturity of the Insured Mortgage, or 40 years from the date of the first payment made hereunder, whichever occurs first.

SECTION 5. Maximum Annual Contract Amount - The maximum dollar amount of rent supplement payments that may be made under this Contract in any one fiscal year shall be limited to an amount fixed by the Commissioner in the following manner:

Based upon probable effective demand and distribution of tenant income, the Commissioner has estimated that rent supplement payments in any one year plus a contingency allowance of 10% will not exceed $ 124,740.00.

The Housing Owner agrees, during a rent-up period as defined herein, to use its best efforts to secure tenants whose annual rent supplement requirements would not exceed the Commissioner's estimate.

At the termination of the rent-up period, the Commissioner will adjust the original estimate to reflect the actual rent supplement requirements of tenants during the rent-up period plus a contingency allowance of 10%. Upon such adjustment being made, the Commissioner shall give written notice thereof to the Housing Owner by an Addendum to be made a part of this contract.

The amount stated in the Addendum shall constitute the maximum annual contract amount and limit the amount of rent supplement payments that may be made under this Contract in any one fiscal year. It shall be effective, on a non-cumulative basis, from the time commencing after the rent-up period through the remaining term of the Contract.

The rent-up period shall commence on the date occupancy is first approved by the Commissioner and shall terminate 12 months thereafter, or upon such later date as the Commissioner has consented to in writing.

SECTION 6. Qualified Tenants -- The benefits of the rent supplement program shall be available only to an individual or family with respect to whom the Commissioner has issued a certificate of eligibility.

SECTION 7. Certificate of Eligibility - Amount of Rent Supplement Payments - Termination for Reported Increased Income - Increase for Hardship - Yearly Recertification Requirements and Adjustment. -- The Housing Owner will assist a tenant in preparing an application for rent supplement payments. Upon request of the Housing Owner, the Commissioner will review the application for eligibility. If the application meets the requirements of the Commissioner, the Commissioner shall issue the initial certificate of eligibility. The initial certificate shall state the amount of rent supplement payment that the Commissioner will make monthly to the Housing Owner on behalf of the qualified tenant. This shall be the amount by which the fair market rental for the unit approved by the Commissioner exceeds one-fourth of the tenant's income as determined by the Commissioner, or exceeds any welfare allowance for housing if such allowance is larger than one-fourth of the tenant's income, except that the amount of rent supplement payment stated in the initial certificate of eligibility shall not, regardless of the tenant's income, exceed 70% of the fair market rental for the unit. An initial certificate of eligibility will not be issued in any case where the amount of rent supplement payment would be less than 10% of the fair market rental for the unit.

The Commissioner may terminate rent supplement payments upon a reported increase in income by the tenant pursuant to Section 9 hereof.

Where a tenant's income has decreased due to illness, loss of job, or other hardship beyond his control, the Commissioner may grant a temporary increase in rent supplement payments.

A recertification of income shall be obtained by the Housing Owner each year from the date the initial certificate was issued, except with respect to tenants who are 62 years of age or older. The rent supplement payment shall be adjusted to reflect income changes shown by the recertification.

SECTION 8. Commissioner's Agreement to Make Rent Supplement Payments to Housing Owner -- During the rent-up period the Commissioner agrees to make rent supplement payments to the Housing Owner on behalf of qualified tenants in the amounts set forth in the certificate of eligibility. Thereafter, the Commissioner agrees to make rent supplement payments to the Housing Owner on behalf of qualified tenants in the amounts set forth in the certificates of eligibility subject to the adjustment provided herein and the maximum annual contract amount limiting the amount of payments in any one fiscal year. Payments shall be made monthly in accordance with procedures prescribed by the Commissioner. In no event shall payments be made for vacant units.

SECTION 9. Lease - Continuing Occupancy - Size of Units -- Occupancy by qualified tenants shall be permitted only upon the execution of a lease in form approved by the Commissioner. The lease must provide that the tenant report immediately any increase in income which results in a monthly income of four or more times the full monthly rental for the housing unit occupied. The Housing Owner agrees to immediately notify the Commissioner in writing of such report so that termination of rent supplement payments can be made. Failure of the Housing Owner to notify the Commissioner of the report shall obligate the Housing Owner to reimburse the Commissioner for any rent supplement payments made during the period the tenant is receiving the reported increase in income. The lease shall also contain a provision obligating the tenant to reimburse the Commissioner for any rent supplement payments made by the Commissioner during a period when the tenant's income has increased to four or more times the full monthly rental and the payments have not been terminated because of the tenant's failure to report such increase to the Housing Owner.

Where, by reason of an increase in income, a tenant is no longer entitled to rent supplement benefits, he may continue to occupy the unit, but in no event shall the rent for the unit exceed the fair market rental as determined by the Commissioner.

Qualified tenants shall not be permitted to occupy units larger than the Commissioner determines necessary for their needs.

SECTION 10. Tenant Selection -- The Housing Owner will be responsible for tenant selection and for the usual landlord-tenant relationships, conditioned on the Commissioner's approval if the tenant is eligible for rent supplements. The Housing Owner will be free to evict tenants for violation of lease provisions or for other causes. The Housing Owner may rent units to families or individuals who can afford to pay market rents or to families and individuals eligible to receive rent supplements.

SECTION 11. Records -- The Housing Owner shall maintain accurate records, books and accounts in such form and manner as the Commissioner may prescribe. Such records, books and accounts shall be available to the Commissioner for inspection and audit.

SECTION 12. Defaults -- The violation of the regulations, or of any covenant of this Contract, or of the insured mortgage, or of the regulatory agreements, or the filing of any false statement or misrepresentation to the Commissioner on the part of the Housing Owner, shall constitute a default under this Contract. Upon such default, the Commissioner may terminate this Contract without further liability hereunder and bring action to recover from the Housing Owner any excess rent supplement payments received in violation of this Contract.

SECTION 13. Non-Assignment -- This Contract or any interest therein may not be assigned without the prior written approval of the Commissioner.

SECTION 14. Exclusion - No member of or delegate to Congress, or resident commission, shall be admitted to any share or part of this Contract or to any benefits which may arise therefrom; but this provision shall not be construed to extend to this Contract if made with a corporation for its general benefit.

SECTION 15. Provisions Applicable if Housing Owner is a Cooperative Corporation --

(a) As used in this Contract the term "tenant" shall mean a member of a cooperative, and the term "rent" shall mean the charges under the occupancy agreement between the members of the cooperative.

(b) A member of a cooperative that obtains a certificate of tenant eligibility shall be required, as a condition of receiving such certificate, to agree that upon a sale of such membership any equity increment accumulated through rent supplement payments will be turned over to the cooperative housing owner and will not be made available to the member. Funds received by a cooperative representing equity increment accumulated through rent supplement payments shall be deposited in a special account by the cooperative and disbursed as directed by the Commissioner.

SECTION 16. Renegotiation, Modification, Termination -- If, at any future time, the parties find that it would be to their best interests and to the best interests of the Rent Supplement Program, the maximum annual contract amount may be increased or decreased, or any other provision of the Contract may be modified or amended, or the entire contract be terminated, upon written agreement of the parties.

SECTION 17. Special Conditions -- The following special conditions shall be applicable to this Contract:

SEE ATTACHED EXHIBIT A.

MARKET NORTH APARTMENTS #2,
A Partnership
(Housing Owner)

WITNESS:

Pearl D. Whicker

Pearl D. Whicker

By E. N. Richards

E. N. Richards, Partner

SECRETARY OF HOUSING AND URBAN DEVELOPMENT

by FEDERAL HOUSING COMMISSIONER

Attest:

By Harry L. Cooper

211200-P

FHA-Wash., D. C.

EXHIBIT A
TO
RENT SUPPLEMENT CONTRACT
FHA FORM NO. 2503

The lease must provide that the Tenant report immediately any increase in assets to more than $5,000.00 in the case of the elderly (62 years or older) and more than $2,000.00 in the case of others other than the elderly.

The Housing Owner agrees to immediately notify the Commissioner in writing of such report so that termination of rent supplement payments can be made. Failure of the Housing Owner to notify Commissioner of the report shall obligate the Housing Owner to reimburse the Commissioner for any rent supplement payment made during the period the Tenant's assets exceeded the aforesaid limit.

The lease shall also contain a provision obligating the Tenant to reimburse the Commissioner during the period when the Tenant's assets exceed the aforesaid limits and the payments have not been terminated because of the Tenant's failure to report such increases to the Housing Owner.

No more than 25 per cent of the units in a project may be eligible for supplementation of more than 60 per cent of the economic rent.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ANAHEIM GARDENS, et al., Plaintiffs, v. THE UNITED STATES, Defendant. | ) ) ) ) ) ) ) ) ) ) | No. 93-655C (Judge Margaret M. Sweeney) |

**DECLARATION OF JOSEPH R. BIAFORA, SR.**

Joseph R. Biafora, Sr., being duly sworn, deposes and states as follows:

1. My name is Joseph R. Biafora, Sr. I am over the age of eighteen and competent to testify in this case. I make this declaration based on my personal knowledge.

2. I am one of the plaintiffs in the above-captioned litigation. I am an owner of Milwood Apartments and of Parthenia Manor Apartments ("Parthenia"), both of which are properties involved in this litigation.

3. Parthenia participated in the Section 221(d)(3) program operated by the U.S. Department of Housing and Urban Development. Its project number was 122-350900-LDP-SUP.

4. Parthenia initially participated in HUD's rent supplement program. The suffix "SUP" in Parthenia's project number indicates that it participated in the rent supplement program. During the 1980s, HUD officials told me that Parthenia would no longer be subject to the 40 year prepayment prohibition if it converted from the rent supplement program to the Section 8 program, but would only be subject to the 20 year prepayment prohibition that applied to Section 221(d)(3) properties. In 1983, Parthenia terminated its participation in the rent supplement program and converted to the Section 8 rental assistance program, pursuant to a Housing Assistance Payments Contract.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 28th, 2008.

Joseph R. Biafora, Sr.

Joseph R. Biafora, Sr.