handling delinquent payments. Late charges shall be separately charged to and collected from the borrower and shall not be deducted from any aggregate monthly payment.

§ 241.1120 Mortgagee's consent.

The holder of an insured mortgage which is recorded prior to the equity or acquisition loan shall not withhold its consent to the equity or acquisition loan (whether or not such equity or acquisition loan is insured by the Commissioner) or the security instrument executed in connection therewith, and may not charge a fee as a condition to its consent to such loan or security instrument.

Subpart F -- Insurance for Equity Loans and Acquisition Loans -- Contract Rights and Obligations

§ 241.1200 Cross-references.

(a) *Projects with a HUD-insured or HUD-held mortgage.* (1) All the provisions of part 207, subpart B of this chapter, covering mortgages insured under section 207 of the Act, apply to equity loans or acquisition loans on a project insured under section 241(f) of the Act, except the following provisions:

Sec.

207.251 Definitions.

207.252 First, second and third premium.

207.252a Premiums -- operating loss loans.

207.252b Premiums -- mortgages insured pursuant to section 223(f) of the Act.

207.252c Premiums -- mortgages insured pursuant to section 238(c) of the Act.

207.254 Insurance endorsement.

(2) For the purposes of subpart F of this part, all references in part 207 of this chapter to section 207 of the Act and to the term "mortgage" shall be construed to refer to section 241(f) of the Act and "equity or acquisition loan," respectively.

(b) *Projects without a HUD-insured or HUD-held mortgage.* The provisions of subpart D of this part shall be applicable to a project without a HUD-insured or HUD-held mortgage that is receiving an equity loan or acquisition loan under subpart E of this part in connection with a plan of action approved by the Commissioner under part 248 of this chapter.

(c) All of the definitions in § 241.1005 apply to subpart F of this part. In addition, as used in subpart F of this part, the term "contract of insurance" means the agreement evidenced by the Commissioner's insurance endorsement and includes the provisions of subpart F of this part and of the Act.

§ 241.1205 Payment of insurance benefits.

All the provisions of § 207.259 of this chapter relating to insurance benefits shall apply to an equity or acquisition loan insured under subpart F of this part, except that insurance benefits shall be payable in cash if the insurance benefits under the senior insured mortgage are payable in cash, unless the lender files a written request for payment in debentures. If such a request is made, payment shall be made in debentures with a cash payment to adjust for any difference between the total amount of the insurance payment and the amount of the debentures issued.

§ 241.1210 Condition for payment of insurance benefits.

(a) All of the provisions of § 207.258 of this chapter apply to subpart F of this part, except that, if the holder of the senior insured mortgage institutes a foreclosure action, the lender shall notify the Commissioner in a timely manner of such action. The Commissioner, at its option, may then direct the lender to assign the equity or acquisition loan to the Commissioner, or bid an amount necessary to acquire the project and convey the project to the Commissioner.

(b) If the equity loan or acquisition loan is assigned in accordance with this section, the Commissioner at a foreclosure sale may bid, in addition to amounts otherwise authorized, any sum not in excess of the aggregate unpaid indebtedness secured by the senior insured mortgage and equity or acquisition loan, plus taxes, insurance, foreclosure costs, fees and other expenses.

§ 241.1215 Calculation of insurance benefits.

All of the provisions of § 207.259 of this chapter apply to subpart F of this part, except that if the lender, at the direction of the Commissioner, acquires title to the project at a foreclosure sale instituted by the holder of the senior insured mortgage, the amount of the claim determined under § 207.259(c) of this chapter shall also include an amount bid by the lender to satisfy the senior insured mortgage at the foreclosure sale.

§ 241.1220 Termination of insurance benefits.

All of the provisions of § 207.253a of this chapter apply to subpart F of this part, except that the following shall also constitute grounds for terminating the contract of insurance:

(a) The failure of the lender to notify the Commissioner in a timely manner of a foreclosure action initiated by the holder of the senior insured mortgage; and

(b) The failure of the lender when directed by the Commissioner to assign the equity or acquisition loan or bid an amount necessary to acquire title to the project and convey the project to the Commissioner, in accordance with § 241.1210.

§ 241.1230 No vested right in fund.

Neither the lender nor the borrower shall have any vested or other right in the insurance fund under which the loan is insured.

§ 241.1235 Cross default.

In the event the borrower commits a default under a prior recorded insured mortgage and the holder thereof initiates a foreclosure proceeding, said default under the prior recorded insured mortgage shall constitute a default under the equity or acquisition loan.

§ 241.1245 Insurance endorsement.

(a) *Endorsement.* The Commissioner shall indicate his insurance of the equity loan or acquisition loan by endorsing the original credit instrument and identifying the section of the Act and the regulations under which the loan is insured and the date of insurance.

(b) *Endorsement of phased loan.* In the event the loan is phased, the Commissioner shall indicate his insurance of each amount by endorsing the original credit instrument and identifying the section of the Act and the regulations under which such amount is insured and the date of the insurance.

(c) *Final advance of phased loan.* When all advances of a phased loan have been made and the terms and conditions of the commitment have been complied with to the satisfaction of the Commissioner, the Commissioner shall indicate on the original credit instrument the total of all advances the Commissioner has approved for insurance and again endorse such instrument.

§ 241.1250 Effect of endorsement.

From the date that the equity or acquisition loan is endorsed, the Commissioner and the lender shall be bound by the provisions of subpart F of this part to the same extent as if they had executed a contract including the provisions of subpart F of this part and the applicable sections of the Act.

PART 248 -- PREPAYMENT OF LOW INCOME HOUSING MORTGAGES

14. The authority citation for part 248 is revised to read as follows:

Authority: *12 U.S.C. 1715 et seq., 42 U.S.C. 3535*(d).

15. In chapter II, part 248, subpart A is revised, subpart B is redesignated as subpart C, and a new subpart B (consisting of §§ 248.101 through 248.183) is added to read as follows:

Subpart A -- General

Sec.

248.1 Purpose.

248.3 Applicability.

248.5 Election to proceed under subpart B or subpart C of this part.

248.7 Waivers.

Subpart B -- Prepayments and Plans of Action Under the Low Income Housing Preservation and Resident Homeownership Act of 1990

Sec.

248.101 Definitions.

248.103 General prepayment limitation.

248.105 Notice of intent.

248.111 Appraisal and preservation value of eligible low income housing.

248.121 Annual authorized return and aggregate preservation rents.

248.123 Determination of Federal cost limit.

248.127 Limitations on action pursuant to Federal cost limit.

248.131 Information from the Commissioner.

248.133 Second notice of intent.

248.135 Plans of action.

248.141 Criteria for approval of a plan of action involving prepayment and voluntary termination.

248.145 Criteria for approval of a plan of action involving incentives.

248.147 Housing standards.

248.149 Timetable for approval of a plan of action.

248.153 Incentives to extend low income use.

248.157 Voluntary sale of housing not in excess of Federal cost limit.

248.161 Mandatory sale of housing in excess of the Federal cost limit.

248.165 Assistance for displaced tenants.

248.169 Permissible prepayment or voluntary termination and modification of commitments.

248.173 Resident homeownership program.

248.175 Resident homeownership program -- limited equity cooperative.

248.177 Delegated responsibility to state agencies.

248.179 Consultation with other interested parties.

248.181 Notice to tenants.

248.183 Preemption of State and local laws.

Subpart A -- General

§ 248.1 Purpose.

The purpose of this part is to --

(a) Preserve and retain to the maximum extent practicable as housing affordable to low income families or persons those privately owned dwelling units that were produced for such purpose with Federal assistance, without unduly restricting the owners' prepayment rights;

(b) Minimize the involuntary displacement of tenants currently residing in such housing;

(c) Work in partnership with State and local government and the private sector in the provision and operation of housing that is affordable to very low, low and moderate income families; and

(d) Facilitate the sale of housing to residents under a resident homeownership program.

§ 248.3 Applicability.

The requirements of subparts B and C of this part apply to any project that is eligible low income housing, as defined in subparts B and C of this part respectively, on or after November 1, 1987, except that such requirements shall not apply to a project which receives assistance under title IV, subtitle B of the Cranston-Gonzalez National Affordable Housing Act in connection with a homeownership program approved by the Commissioner thereunder.

§ 248.5 Election to proceed under subpart B or subpart C of this part.

(a) Any owner who has not submitted a notice of intent prior to January 1, 1991, pursuant to either § 248.211 or § 248.105, shall proceed under subpart B of this part.

(b) Any owner who has filed a plan of action with the Commissioner on or before October 11, 1990 pursuant to subpart C of this part, regardless of whether or not the Commissioner has approved such plan of action or whether the owner has received incentives thereunder, may proceed under subpart B of this part by submitting a notice of intent to the Commissioner in accordance with § 248.105 within 30 days after publication of revised Appraisal Guidelines or within thirty days after the Commissioner notifies the owner of HUD's final approval of the plan of action, whichever is later. The notice of intent shall state that the owner is exercising its conversion right pursuant to this section. If the owner fails to file a notice of intent within that period, the owner forfeits its right of conversion. In awarding incentives to an owner who elects to proceed under subpart B of this part in accordance with this section, the Commissioner shall take into consideration any incentives which the owner has already received under subpart C of this part.

(c) Any owner of housing that becomes eligible low income housing, as defined in subpart B of this part, before January 1, 1991, and who before such date, filed a notice of intent under § 248.211 of subpart C of this part, may, unless

a plan of action was submitted after October 11, 1990, elect to proceed under subpart B or under subpart C of this part. An owner must indicate its election by submitting to the Commissioner, within 30 days of the effective date of this part, a notice of election to proceed indicating whether it wishes to proceed under subpart B or subpart C of this part, or proceed under subpart B of this part until completion of the appraisals and then elect either subpart B or subpart C of this part. An owner who chooses to retain its option until after the completion of the appraisals under § 248.111 must submit a new notice of intent to the Commissioner within 30 days after receipt of the information provided by the Commissioner under § 248.131. The notice of intent shall be submitted in accordance with either § 248.105 (for owners electing to proceed under subpart B of this part) or § 248.211 (for owners electing to proceed under subpart C of this part). Any owner who fails to file a notice of intent within the 30-day period may not proceed under subpart C of this part, but may proceed under subpart B of this part by filing a new notice of intent thereafter. If an owner who has filed a notice of intent before January 1, 1991 elects under this paragraph to proceed under subpart C of this part, it may change its election within 30 days after receipt of the information provided by the Commissioner under § 248.131 by filing a new notice of intent under § 248.211. For purposes of calculating any time periods or deadlines under this part for actions following the filing of the notice of intent, the date on which the owner submits the new notice of intent under this paragraph shall be deemed the date of the filing of the notice of intent. Any owner who, exercising its option under paragraph (c) of this section, submits a notice of intent under § 248.211 after the Commissioner has incurred the cost of having an appraisal, or appraisals, performed pursuant to § 248.111 of subpart A of this part, shall reimburse the Commissioner for these expenses within 30 days of receipt of a bill covering these expenses.

(d) An owner who has filed a plan of action after October 11, 1990, pursuant to § 248.213, may not elect to proceed under subpart B of this part.

§ 248.7 Waivers.

Upon making a determination and finding of good cause, the Commissioner may waive any provision of this part, subject to statutory limitations. Each waiver shall be in writing and shall be supported by documentation of the facts and reasons which form the basis for the waiver.

Subpart B -- Prepayments and Plans of Action under the Low Income Housing Preservation and Resident Homeownership Act of 1990

§ 248.101 Definitions.

*Acquisition Loan.* A loan or advance of credit made to a qualified purchaser of eligible low income housing and insured by the Commissioner under part 241, subpart E of this chapter.

*Adjusted Income.* Annual income, as specified in § 813.106 of this title, less allowances specified in the definition of "Adjusted Income" in § 813.102 of this title.

*Aggregate Preservation Rent.* The extension preservation rent or transfer preservation rent, as defined under this section.

*Annual Authorized Return.* That amount an owner of an eligible low income housing project may receive in distributions from the project each year, plus debt service payments payable each year attributable to the equity take-out portion of any loan approved under the plan of action, expressed as a percentage of the project's extension preservation equity.

*Bona Fide Offer.* A certain and unambiguous offer to purchase an eligible low income housing project pursuant to subpart B of this part made in good faith by a qualified purchaser with the intent that such offer result in the execution of an enforceable, valid and binding contract. A bona fide offer shall include, for purposes of subpart B of this part, a contract of sale and an earnest money deposit, as set forth in § 248.157(g). For mandatory sales under § 248.161, the offer must include a contract of sale, an earnest money deposit and also be for a purchase price which equals the transfer

preservation value.

*Capital Improvement Loan.* A direct loan originated by the Commissioner under part 219, subpart C of this chapter.

*Community-Based Nonprofit Organization.* A private nonprofit organization that --

(1) Is organized under State or local laws;

(2) Has no part of its net earnings inuring to the benefit of any member, founder, contributor, or individual;

(3) Is neither controlled by, nor under the direction of, individuals or entities seeking to derive profit or gain from the organization.

(4) Has applied for, or has a tax exemption ruling from the Internal Revenue Service under *section 501(c) of the Internal Revenue Code of 1986*;

(5) Does not include a public body (including the participating jurisdiction) or an instrumentality of a public body. An organization that is State or locally chartered may qualify as a community-based nonprofit organization; however, the State or local government may not have the right to appoint more than one-third of the membership of the organization's governing body and no more than one-third of the board members can be public officials;

(6) Has standards of financial accountability that conform to Attachment F of OMB Circular No. A-110 (Rev.) "Standards for Financial Management Systems";

(7) Has among its purposes the provision of decent housing that is affordable to low-income and moderate-income persons, as evidenced in its charter, articles of incorporation, resolutions or by-laws;

(8) Maintains accountability to low income community residents by --

(i) Maintaining at least one-third of its governing board's membership for low income neighborhood residents, other low-income community residents, or elected representatives of low-income neighborhood organizations. For urban areas, "community" may be a neighborhood or neighborhoods, city, county, or metropolitan area; for rural areas, it may be neighborhood or neighborhoods, town, village, county, or multi-county area (but not the entire State), provided the governing board contains low-income residents from each county of the multi-county area; and

(ii) Providing a formal process for low-income, program beneficiaries to advise the organization on its decisions regarding the acquisition, rehabilitation and management of affordable housing.

*Default.* For purposes of § 248.105(a), the failure of the owner to make any payment due under the mortgage (including the full amount of the debt if the mortgagee has accelerated the debt on the basis of a non-monetary default) within 30 days after such payment becomes due.

*Eligible Low Income Housing.* Any project that is not subject to a use restriction imposed by the Commissioner that restricts the project to low and moderate income use for a period at least equal to the remaining term of the mortgage, and that is financed by a loan or mortgage --

(1) That is --

(i) Insured or held by the Commissioner under section 221(d)(3) of the National Housing Act and assisted under part 215 of this chapter or project-based assistance under parts 880, 881 or 886 of this title;

(ii) Insured or held by the Commissioner under part 221 of this chapter and bearing a below market interest rate as provided under § 221.518(b) of this chapter;

(iii) Insured, assisted, or held by the Commissioner or a State or State agency under part 236 of this chapter; or

(iv) A purchase money mortgage held by the Commissioner with respect to a project which, immediately prior to HUD's acquisition, would have been classified under paragraphs (1)(i), (ii), or (iii) of this definition; and

(2) That, under regulation or contract in effect before February 5, 1988, is or will within 24 months become eligible for prepayment without prior approval of the Commissioner.

*Equity Loan.* A loan or advance of credit to the owner of eligible low income housing and insured by the Commissioner under part 241, subpart E of this chapter.

*Extension Preservation Equity.* The extension preservation equity of a project is:

(1) The extension preservation value of the project determined under § 248.111; less

(2) The outstanding balance of any debt secured by the property.

*Extension Preservation Rent.* The extension preservation rent is the gross potential income for the project that would be required to support:

(1) The annual authorized return;

(2) Debt service on any rehabilitation loan for the project;

(3) Debt service on the federally-assisted mortgage(s) for the project;

(4) Project operating expenses; and

(5) Adequate reserves.

*Extension Preservation Value.* The fair market value of the project based on the highest and best use of the project as multifamily market-rate rental housing.

*Fair market rent.* The section 8 existing fair market rent published for effect and as defined under § 882.102 of this title, applicable to the jurisdiction in which the project is located, with adjustments, where appropriate, for projects in which tenants pay their own utilities. (No utility adjustments will be made to the fair market rent for purposes of determining the Federal cost limit.)

*Federal Cost Limit.* The greater of 120 percent of the section 8 existing fair market rent for the market area in which the project is located or 120 percent of the prevailing rents in the relevant local market area in which the project is located.

*Federally-assisted Mortgage.* Any mortgage as defined in this section, any insured operating loss loan secured by the project and any loan insured by the Commissioner under part 241 of this chapter.

*Good Cause.* With respect to displacement, the temporary or permanent uninhabitability of the project justifying relocation of all or some of the project's tenants (except where such uninhabitability is caused by the actions or inaction of the owner), or actions of the tenant that, under the terms of the tenant's lease and applicable regulations, constitute a basis for eviction.

*HOME Investment Trust Fund.* A public fund established in the general local or State government in which a project is located pursuant to title II of the Cranston-Gonzalez National Affordable Housing Act.

*Homeownership Program.* A program developed by a resident council for the sale of an eligible low income

housing project to the tenants in accordance with the standards in § 248.173 or § 248.175.

*Interest Reduction Payments.* Payments made by the Commissioner pursuant to a contract to reduce the interest costs on a mortgage insured under part 236 of this chapter, as provided under subpart C of part 236 of this chapter.

*Limited Equity Cooperative.* A tenant cooperative corporation which, in a manner acceptable to the Secretary, restricts the initial and resale price of the shares of stock in the cooperative corporation so that the shares remain affordable to low income families and moderate income families.

*Low Income Affordability Restrictions.* Limits imposed by regulation or regulatory agreement on tenant rents, rent contributions, or income eligibility with respect to eligible low income housing.

*Low Income Families.* Families or persons whose incomes do not exceed the levels established for low income families under part 813 of this title.

*Low Vacancy Area.* A market area in which the current supply of decent, safe and sanitary, vacant, available rental units, as a proportion of the total overall rental inventory in the area is not sufficient to allow for normal growth and mobility, taking into account the need for vacancies resulting from turnover and to meet growth in renter households. The determination of a low vacancy area, as set forth in § 248.165(h), will be made by the Commissioner, utilizing the most recent available data for the market area on the rental inventory, renter households, rental vacancy rates and other factors as appropriate.

*Moderate Income Families.* Families or persons whose incomes are between 80 percent and 95 percent of median area income, as determined by the Commissioner, with adjustments for smaller and larger families.

*Mortgage.* The mortgage or deed of trust insured or held by the Commissioner or a State or State agency under parts 221 or 236 of this title or the purchase money mortgage taken back by the Commissioner in connection with the sale of a HUD-owned project and held by the Commissioner, where such mortgage, deed or trust or purchase money mortgage is secured by eligible low income housing.

*Nonprofit Organization.* Any private, nonprofit organization or association that --

(1) Is incorporated under State or local law;

(2) Has no part of its net earnings inuring to the benefit of any member, founder, contributor, or individual;

(3) Complies with standards of financial accountability acceptable to the Commissioner; and

(4) Has among its principal purposes significant activities related to the provision of decent housing that is affordable to very low, low, and moderate income families.

*Notice of Intent.* An owner's notification to the Commissioner of its intention to terminate the low income affordability restrictions on the project through prepayment of the mortgage or voluntary termination of the insurance contract, to extend the low income affordability restrictions on the project, or to transfer the project to a qualified purchaser.

*Owner.* The mortgagor or trustor under the mortgage secured by eligible low income housing.

*Participating Jurisdiction.* For purposes of the resident homeownership program established in § 248.173, any State or unit of general local government that has been so designated in accordance with section 216 of the Cranston-Gonzalez National Affordable Housing Act of 1990 *(42 U.S.C. 12746).*

*Plan of Action.* A plan providing for the termination of the low income affordability restrictions on the project

through prepayment of the mortgage or voluntary termination of the insurance contract, for extension of the low income affordability restrictions on the project, or for the transfer of the project to a qualified purchaser. A homeownership program constitutes a plan of action for purposes of subpart B of this part.

*Prepayment.* Prepayment in full of a mortgage, or a partial prepayment or series of partial prepayments that reduces the mortgage term by a least six months, except where the prepayment in full or partial prepayment results from the application of condemnation proceeds.

*Preservation Equity.* The extension preservation equity or transfer preservation equity, as defined under this section.

*Preservation Value.* The extension preservation value or transfer preservation value, as defined under this section.

*Priority Purchaser.* Any entity that is not a related party to the owner and that is either --

(1) A resident council organized to acquire the project in accordance with a resident homeownership program that meets the requirements of subpart B of this part; or

(2) Any nonprofit organization or State or local agency that agrees to maintain low income affordability restrictions for the remaining useful life of the project. A nonprofit organization or State or local agency that is affiliated with a for-profit entity for purposes of purchasing a project under subpart B of this part shall not be considered a priority purchaser.

*Public Housing Agency.* A public housing agency, as defined in section 3(b) of the United States Housing Act of 1937 *(42 U.S.C. 1437a*(b)).

*Qualified Purchaser.* Any entity that is not a related party to the owner and that agrees to maintain low income affordability restrictions for the remaining useful life of the project, and includes for-profit entities and priority purchasers.

*Regulatory Agreement.* The agreement executed by the owner and the Commissioner or a State agency providing for the regulation of the operation of the project.

*Related Party.* An entity that, either directly or indirectly, is wholly or partially owned or controlled by the owner of the project being transferred under subpart B of this part, is under whole or partial common control with such owner, or has any financial interest in such owner or in which such owner has any financial interest. However, this shall not prohibit a nonprofit organization from buying out the interest of its limited dividend or for-profit partners in connection with the sale of eligible low income housing under subpart B of this part, as long as the sale is made on an arm's length basis and the partners who sell their interest completely divest themselves of any input in the continued operation of the project. The purchaser and the owner shall not be deemed related parties on the basis that financing is provided to the purchaser by the seller, or a management company affiliated with the seller, as long as:

(1) Only a loan, and not a grant, is provided;

(2) The financing is provided for the acquisition of the project, the rehabilitation of the project, or both;

(3) In the case of financing for the acquisition of the project, the sum of the principal amount of the loan, plus the amount of the acquisition loan under section 241(f) of the National Housing Act *(12 U.S.C. 1715z-6*(f)), and any Federal grant to cover acquisition of the project, does not exceed the sum of the sales price and the expenses associated with the acquisition, loan closing and implementation of the plan of action; and in the case of financing for the rehabilitation of the project, the principal amount of the loan does not exceed the equity requirements applicable to the rehabilitation loan or capital improvement loan obtained by the purchaser under part 241 or part 219 of this chapter;

(4) The loan is not a condition of accepting a bona fide offer or entering into a sales contract;

(5) The seller has no input in the continued operation of the project as a result of the loan; and

(6) In the case of a loan provided by a management company that is affiliated with the seller, the execution of a management contract between the purchaser and the management company is not a condition of the loan. This rule does not bar an owner, or former owner, from membership on a nonprofit organization's board of directors, as long as the owner, or former owner, participates only in his or her personal capacity, without compensation, and holds a nonvoting membership. The purchaser and the owner shall not be deemed related parties solely by reason of the purchaser's retention of a property management entity of a company that is owned or controlled by the owner or a principal thereof, if retention of the management company is neither a condition of sale nor part of consideration paid for the project and the property management contract is negotiated by the qualified purchaser on an arm's length basis.

*Relevant Local Market.* An area geographically smaller than the market area established by the Commissioner for purposes of determining the section 8 existing fair market rent, that is identifiable as a distinct rental market area in which similar projects and units would effectively compete with the subject project, for potential tenants.

*Relocation Expenses.* Relocation expenses shall consist of payment for --

(1) Advisory services, including timely information, counseling (including the provision of information on a resident's rights under the Fair Housing Act *(42 U.S.C. 3601*-3619)), and referrals to suitable, affordable, decent, safe and sanitary alternative housing; and

(2) Payment for actual, reasonable moving expenses.

*Remaining Useful Life.* With respect to eligible low income housing, the period during which the physical characteristics of the project remain in a condition suitable for occupancy, assuming normal maintenance and repairs are made and major systems and capital components are replaced as becomes necessary.

*Reserve for Replacements.* The escrow fund established under the regulatory agreement for the purpose of ensuring the availability of funds for needed repair and replacement costs.

*Resident Council.* Any incorporated nonprofit organization or association in which membership is available to all the tenants, and only the tenants, of a particular project and --

(1) Is representative of the residents of the project;

(2) Adopts written procedures providing for the election of officers on a regular basis; and

(3) Has a democratically elected governing board, elected by the residents of the project.

*Residual Receipt Fund.* The fund established under the regulatory agreement for holding cash remaining after deducting from the surplus cash, as defined by the regulatory agreement, the amount of all allowable distributions.

*Return on Investment.* The amount of allowable distributions that a purchaser of a project may receive under a plan of action under § 248.157 or § 248.161.

*Section 8 Assistance.* Assistance provided under parts 880 through 887 of this title.

*Special Needs Tenants.* Those "elderly persons," 62 years of age or older, "elderly families," or families that include "disabled persons," as such terms are defined in § 812.2 of this title, or large families of five or more persons and requiring units with three or more bedrooms.

*State assisted or subsidized mortgage.* A mortgage which is assisted or subsidized by an agency of a State government without any Federal mortgage subsidy.

*Tenant Representative.* A designated officer of an organization of the project's tenants, a tenant who has been elected to represent the tenants of the project with respect to subpart B of this part, or a person or organization that has been formally designated or retained by an organization of the project's tenants to represent the tenants with respect to subpart B of this part.

*Termination of Low Income Affordability Restrictions.* The elimination of low income affordability restrictions under the regulatory agreement through termination of mortgage insurance or prepayment of the mortgage.

*Transfer Preservation Equity.* The transfer preservation equity of a project is:

(1) The transfer preservation value of the project determined under § 248.111; less

(2) The outstanding balance of the federally-assisted mortgage(s) for the project.

*Transfer Preservation Rent.* For purposes of receiving incentives pursuant to a sale of the project, transfer preservation rent shall be the gross income for the project that would be required to support:

(1) Debt service on the loan for acquisition of the project;

(2) Debt service on any rehabilitation loan for the project;

(3) Debt service on the federally-assisted mortgage(s) for the housing;

(4) Project operating expenses; and

(5) Adequate reserves.

*Transfer Preservation Value.* The fair market value of the project based on its highest and best use.

*Very Low Income Families.* Families or persons whose incomes do not exceed the level established for very low income families under § 813.102 of this title.

*Voluntary Termination of Mortgage Insurance.* The termination of all rights under the mortgage insurance contract and of all obligations to pay future insurance premiums.

§ 248.103 General prepayment limitation.

(a) *Prepayment.* An owner of eligible low income housing may prepay, and a mortgagee may accept prepayment of, a mortgage on such project only in accordance with a plan of action approved by the Commissioner.

(b) *Termination.* A mortgage insurance contract with respect to eligible low income housing may be terminated pursuant to § 207.253 of this chapter only in accordance with a plan of action approved by the Commissioner.

(c) *Foreclosure.* A mortgagee of a mortgage insured by the Commissioner may foreclose the mortgage on, or acquire by deed in lieu of foreclosure, any eligible low income housing only if the mortgagee also conveys title to the project to the Commissioner in connection with a claim for insurance benefits.

(d) *Effect of unauthorized prepayment.* A mortgagee's acceptance of a prepayment in violation of paragraph (a) of this section, or the voluntary termination of a mortgage insurance contract in violation of paragraph (b) of this section, shall be null and void and any low income affordability restrictions on the project shall continue to apply to the project.

(e) *Remedies for unauthorized prepayment.* A mortgagee's acceptance of a prepayment in violation of paragraph (a) of this section, or attempt to obtain voluntary termination of a mortgage insurance contract in violation of paragraph (b) of this section, is grounds for administrative action under parts 24 and 25 of this title, in addition to any other remedies available by law, including rescission of the prepayment or reinstatement of the insurance contract.

§ 248.105 Notice of intent.

(a) *Eligibility for filing.* An owner of eligible low income housing intending to prepay the mortgage or voluntarily terminate the mortgage insurance contract pursuant to § 248.141, extend the low income affordability restrictions of the housing in accordance with § 248.153, or transfer the housing to a qualified purchaser under § 248.157, may file a notice of intent unless the mortgage covering the project --

(1) Continued in default or fell into default on or after the November 28, 1990, and the mortgage has been assigned to the Commissioner as a result of such default;

(2) Continued in default or fell into default on or after November 28, 1990, while the mortgage was held by the Commissioner;

(3) Fell into default prior to November 28, 1990, if the owner entered into a workout agreement prior to that date, and on or after that date, the owner has defaulted under the workout agreement (and, if the agreement was with an insured mortgagee, the mortgage has been assigned to the Commissioner as a result of the default under the workout agreement); or

(4) Fell into default prior to November 28, 1990, but has been current since that date and the owner has not agreed to recompense the appropriate insurance fund for losses sustained by the fund as a result of any work-out or other arrangement agreed to by the Commissioner and the owner with respect to the defaulted mortgage.

(b) *Filing with the Commissioner.* The notice of intent shall be filed with the HUD Field Office in whose jurisdiction the project is located. The notice of intent shall identify the project by name, project number and location. It shall contain a statement indicating whether the owner intends to extend the affordability restrictions on the project by retaining ownership of the project or transferring it to a qualified purchaser, or whether the owner intends to terminate the affordability restrictions on the project through prepayment of the mortgage or termination of the mortgage insurance contract. The notice of intent shall also request the tenants to notify the owner, the Commissioner, and the State or local officer identified in the notice of intent of any individual or organization that has been designated or retained by the tenants to represent the tenants with respect to the actions to be taken under subpart B of this part.

(c) *Filing with the State or local government and tenants.* The owner simultaneously shall file the notice of intent with the chief executive officer of the appropriate State or local government in which the project is located, or any officer designated by executive order or State or local law to receive such information, and with the mortgagee. In addition, the owner shall deliver a copy of the notice of intent to each occupied unit in the project and to any tenant representative, if any, known to the owner, and shall post a copy of the notice of intent in readily accessible locations within each affected building of the project. The copies of the notice of intent delivered to the tenants and the tenant representative shall include a summary of possible outcomes of the filing which shall be furnished by the Commissioner. Upon the request of any non-English speaking tenants residing in the affected project, the owner shall tabulate the number and type of translations needed by the tenants and request the local HUD field office to provide the appropriate translations. The owner shall deliver a copy of the translated notice of intent to all of the tenants who requested such translation. The failure of an owner to comply with any non-federal notice requirements shall not invalidate the notice of intent.

§ 248.111 Appraisal and preservation value of eligible low income housing.

(a) *Appraisal.* Upon receiving a notice of intent indicating an intent to extend the low income affordability

restrictions under § 248.153 or transfer the project under § 248.157, the Commissioner shall provide for determination of the preservation values of the project pursuant to this section.

(b) *Notice.* Within 30 days after the filing of a notice of intent to extend the income restrictions or to transfer the project, the Commissioner shall provide the owner with written notice of --

(1) The need for, and the rules and guidelines governing, an appraisal of the project;

(2) The filing deadline for submission of the appraisal;

(3) The need for an appraiser retained by the Commissioner to inspect the project and the project's financial records; and

(4) Any delegation to an appropriate State agency, if any, by the Commissioner of responsibilities regarding the performance of an appraisal pursuant to this section.

(c) *Appraisers.* The Commissioner and the owner shall each select and compensate an appraiser who shall:

(1) Neither be an employee of the Federal Government nor an employee or officer of any entity that is affiliated with the owner or the mortgagee of record;

(2) Be certified by the appropriate State agency under the standards established by the Federal Financial Institutions Reform, Recovery and Enforcement Act of 1989 *(12 U.S.C. 1451*-1459); and

(3) Have six years of experience in the appraisal profession and at least three years experience in the practice of appraising multifamily residential properties;

(4) Is not the subject of a charge issued following a reasonable cause determination under the Fair Housing Act *(42 U.S.C. 3601*-3619).

(d) *Guidelines.* The Commissioner shall provide to the owner and the appraiser retained by the Commissioner guidelines for the conduct of the appraisal. The guidelines established by the Commissioner shall be consistent with customary appraisal standards. The guidelines shall assume repayment of the existing federally-assisted mortgage(s), termination of the existing Federal low income affordability restrictions, and costs of compliance with any State or local laws of general applicability. The guidelines may permit reliance upon assessments of rehabilitation needs and other conversion costs determined by an appropriate State agency, as determined by the Commissioner.

(e) *Operating expenses.* For the purpose of determining preservation values, the guidelines shall instruct the appraiser to use the greater of actual project operating expenses at the time of the appraisal, based on the average of the actual project operating expenses during the preceding three years, or projected operating expenses after conversion, as determined by the Commissioner. However, if the current year operating expenses are higher than those of the preceding three years and the Commissioner has made a determination that these costs are unlikely to decrease in the future, the appraiser shall use current year operating expenses rather than operating expenses for the preceding three years for purposes of comparison with projected operating expenses after conversion. Likewise, if the current year operating expenses are lower than those of the preceding years and the Commissioner has made a determination that these costs are unlikely to increase in the future, the appraiser shall use current year operating expenses rather than operating expenses for the preceding three years for purposes of comparison with projected expenses after conversion. Where the highest and best use of a project is not as rental housing, the appraiser shall use projected operating expenses assuming conversion of the project to its highest and best use.

(f) *Preservation values.* The preservation values will be determined on the basis of the appraisals conducted by the owner's and the Commissioner's independent appraisers. Each appraiser will determine both the extension preservation

value and the transfer preservation value, regardless of the owner's intentions as indicated in the notice of intent.

(g) *Highest and best use as residential property.* In determining the extension preservation value of the project, the appraiser shall assume conversion of the project to market-rate rental housing. The appraiser shall, in accordance with the guidelines established by the Commissioner, determine the amount of rehabilitation expenditures, if any, that would be necessary to bring the project up to quality standards required to attract and sustain a market-rate tenancy upon conversion and assess other costs that the owner could reasonably be expected to incur if the owner converted the property to market-rate multifamily rental housing.

(h) *Highest and best use.* In determining the transfer preservation value for the project, the appraiser shall assume conversion of the project to highest and best use for the property, and shall, in accordance with the guidelines established by the Commissioner, determine the amount of any rehabilitation expenditures, including demolition, that would be necessary to convert the project to such use and assess other costs that the owner could reasonably be expected to incur if the owner converted the property to its highest and best use.

(i) *Submission of appraisal.* Within four months after the filing of the notice of intent:

(1) The owner shall submit to the HUD Field Office in whose jurisdiction the project is located, the appraisal made by the owner's selected appraiser; and

(2) The Commissioner's selected appraiser shall conduct and submit an appraisal to the Commissioner.

(j) *Joint determination of preservation values.* No later than one month after the owner and the Commissioner exchange appraisals, the owner and the Commissioner shall, on the basis of the appraisals delivered to them, agree on the preservation values of the project. If no agreement as to preservation values can be reached, the owner and the Commissioner shall jointly select a third appraiser meeting the qualifications set forth in paragraph (c) of this section by the end of six months from the date that the notice of intent was filed. The cost of this third appraisal shall be borne equally by both parties. The third appraiser must comply with the guidelines set forth in paragraph (d) of this section and must conduct the appraisal and submit an appraisal within two months after accepting the assignment. The determination by the third appraiser of the project's preservation values shall be binding on both the owner and the Commissioner.

(k) *Timeliness of appraisals.* The Commissioner may approve a plan of action to receive incentives under §§ 248.153, 248.157 or 248.161 only based upon an appraisal conducted in accordance with this section that is not more than 30 months old, unless the failure of the Commissioner to approve the plan of action within the 30-month period was due to circumstances beyond the control of the owner.

§ 248.121 Annual authorized return and aggregate preservation rents.

(a) *Annual authorized return.* For each eligible low income housing project appraised under § 248.111, the Commissioner shall set an annual authorized return on the project equal to 8 percent of the extension preservation equity.

(b) *Aggregate preservation rents.* For each eligible low income housing project appraised under § 248.111, the Commissioner shall also determine the aggregate preservation rents. The aggregate preservation rents shall be used solely for the purposes of comparison with the Federal cost limit under § 248.123. Actual rents received by the owner (or a qualified purchaser) shall be determined pursuant to §§ 248.153, 248.157, and 248.161.

(c) *Extension preservation rent.* The extension preservation rent shall be the gross potential income for the project, as determined by the Commissioner, that would be required to support --

(1) The annual authorized return determined under paragraph (a) of this section;

(2) Debt service on any rehabilitation loan for the project, assuming a market rate of interest and customary terms;

(3) Debt service on the federally-assisted mortgage(s) for the project;

(4) Project operating expenses as determined by the Commissioner; and

(5) Adequate reserves.

(d) *Transfer preservation rent.* The transfer preservation rent shall be the gross potential income for the project, as determined by the Commissioner, that would be required to support --

(1) Debt service on the loan for acquisition of the project;

(2) Debt service on any rehabilitation loan for the project, assuming a market rate of interest and customary terms;

(3) Debt service on the federally-assisted mortgage(s) for the project;

(4) Project operating expenses as determined by the Commissioner; and

(5) Adequate reserves.

(e) *Adequate reserves and operating expenses.* For purposes of this section --

(1) Adequate reserves are the amount of funds which, when added to existing reserves, are sufficient to maintain the project, including needed deferred maintenance, at a level that meets the standards set forth in § 248.147; and

(2) Project operating expenses shall be based on operating expenses for the preceding 3 years, adjusted for reasonable reductions in operating costs due to rehabilitation and energy improvements. For purposes of comparison to the gross rents used in determining the Federal cost limit, project operating expenses shall include the cost of utilities paid by the residents.

(f) *Debt service.* For purposes of this section, the amount of debt service for an acquisition loan will be estimated based on the maximum loan to which the purchaser is entitled under § 241.1067 of this chapter. The debt service on any rehabilitation loan will be estimated using costs derived from the appraisals conducted under § 248.111, taking into account any funds provided for rehabilitation by State or local governments and assuming market rate interest rates.

§ 248.123 Determination of Federal cost limit.

(a) *Initial determination.* For each eligible low income housing project appraised under § 248.111, the Commissioner shall determine whether the aggregate preservation rents for the project exceed the amount determined by multiplying the number of dwelling units in the project, according to appropriate unit sizes, by 120 percent of the section 8 existing fair market rent for the appropriate unit sizes.

(b) *Relevant local markets.* If either the extension or transfer preservation rent for a project exceeds the amount determined under paragraph (a) of this section, the Commissioner shall determine whether such extension or transfer preservation rent exceeds the amount determined by multiplying the number of units in the project, according to the appropriate unit sizes, by 120 percent of the prevailing rents in the local market area. The relevant local market, and the prevailing rents in such relevant local market, shall be determined on the basis of the appraisal conducted by the appraiser selected by the Commissioner pursuant to § 248.111 and any other information that the Commissioner determines is appropriate. If there are no comparables in the relevant local market and it is not otherwise possible to determine prevailing rents in that area, the section 8 existing fair market rent shall be the sole measure for determining the Federal cost limit.

(c) *Effect.* The extension or transfer preservation rent for an eligible low income housing project appraised under § 248.111 shall be considered to exceed the Federal cost limit only if the extension or transfer preservation rent exceeds the amount determined under paragraphs (a) and (b) of this section.

§ 248.127 Limitations on action pursuant to Federal cost limit.

(a) *Retention of the project.* With respect to owners who seek to retain the project, the owner may file a plan of action to receive incentives under § 248.153, except that if the extension preservation rent exceeds the Federal cost limit, the amount of the incentives may not exceed an amount that can be supported by a projected income stream equal to the Federal cost limit.

(b) *Transfer of the project.* With respect to owners who seek to transfer the project --

(1) If the transfer preservation rent does not exceed the Federal cost limit, or if the transfer preservation rent exceeds the Federal cost limit and the owner is willing to transfer the project at a price which will result in project rents that, on an aggregate level, do not exceed the Federal cost limit, the owner may file a second notice of intent indicating an intention to transfer the project under § 248.157; or

(2) If the transfer preservation rent exceeds the Federal cost limit, the owner may file a second notice of intent to transfer the project under § 248.161 or, if no bona fide offers are received, to prepay the mortgage or terminate the mortgage insurance.

§ 248.131 Information from the Commissioner.

(a) *Information to owners terminating affordability restrictions.* Within six months after receipt of a notice of intent to terminate the low income affordability restrictions under § 248.141, the Commissioner shall provide the owner with a description of the criteria for such termination and with information that the owner needs to prepare a plan of action. This shall include information concerning the standards under § 248.141 regarding the approval of a plan of action and a list of the Federal incentives authorized under § 248.153 and available to those projects for which a plan of action involving termination of low income affordability restrictions, through prepayment of the mortgage or termination of the mortgage insurance contract, would not be approvable. The Commissioner shall also provide the owner with any other relevant information which the Commissioner may possess.

(b) *Information to owners extending affordability restrictions.* Within nine months of receipt of a notice of intent to extend the low income affordability restrictions under § 248.153 or to transfer the project under § 248.157, the Commissioner shall provide the owner who submitted the notice with --

(1) A statement of the preservation values of the project as determined under § 248.111;

(2) A statement of the aggregate preservation rents for the project as calculated under § 248.121;

(3) A statement of the applicable Federal cost limit for the market area (or relevant local market, if applicable) in which the project is located, and an explanation of the limitations under § 248.127 on the amount of assistance the Commissioner may provide based on such cost limits;

(4) A statement of whether either of the aggregate preservation rents exceeds the Federal cost limit; and

(5) A direction to file a plan of action and the information necessary to file a plan of action; or

(6) A direction to submit a second notice of intent under § 248.133.

(c) *Information to tenants and State or local governments.* The Commissioner shall provide any information provided to the owner under paragraphs (a) and (b) of this section to the tenant representative, if any, known to the

Commissioner, and shall post a notice in each affected building informing tenants of the name(s), address(es), and telephone number(s) of the tenant representative(s) and appropriate personnel in the local HUD field office, from whom they may obtain this information. The Commissioner shall also provide this information to that officer of State or local government to whom the owner submitted a notice of intent pursuant to § 248.105(c). The Commissioner shall include in the information packet made available to the tenants any other information relating to their rights and opportunities, including --

(1) The potential opportunity of the tenants to become priority purchasers under §§ 248.157 and 248.161; and

(2) The potential opportunity of resident homeownership under §§ 248.173 or 248.175.

§ 248.133 Second notice of intent.

(a) *Filing.* A second notice of intent must be filed by all owners who, after receiving the information provided by the Commissioner in § 248.131, elect to transfer the project under §§ 248.157 or 248.161.

(b) *Timeliness.* A second notice of intent must be submitted not later than 30 days after receipt of the information provided by the Commissioner under § 248.131. If an owner who is required to submit a second notice of intent fails to do so within this time period, the original notice of intent submitted under § 248.105 shall be void and ineffective for purposes of subpart B of this part.

(c) *Filing with the State or local government and tenants.* The owner simultaneously shall file the second notice of intent with that officer of State and local government to whom the owner submitted a notice of intent under § 248.105(c) and with the mortgagee. In addition, the owner shall deliver a copy of the second notice of intent to each tenant representative known to the owner, and if none is known, then to each occupied unit in the project.

§ 248.135 Plans of action.

(a) *Submission.* An owner seeking to terminate the low income affordability restrictions through prepayment of the mortgage or voluntary termination under § 248.141, or to extend the low income affordability restrictions on the project under § 248.153, shall submit a plan of action to the Commissioner in the form and manner prescribed in paragraph (d) or (e) of this section respectively, within 6 months after receipt of the information from the Commissioner under § 248.131.

(b) *Joint Submission.* An owner and purchaser seeking a transfer of the project under §§ 248.157 or 248.161 shall jointly submit a plan of action to the Commissioner in the form and manner prescribed in paragraph (e) of this section within six months after the owner's acceptance of a bona fide offer under § 248.157 or the purchaser's making of a bona fide offer under § 248.161.

(c) *Filing with the State or local government and tenants.* The owner shall notify the tenants of the plan of action by posting in each occupied building a summary of the plan of action and by delivery of a copy of the plan of action to the tenant representative, if any. In addition, the summary must indicate that a copy of the plan of action shall be available from the tenant representatives, whose names, addresses and telephone numbers are indicated on the summary, the local HUD field office, and the on-site office for the project, or if one is not available, in the location where rents are collected, for inspection and copying, at a reasonable cost, during normal business hours. Simultaneously with the submission to the Commissioner, the owner shall submit the plan of action to that officer of State or local government to whom the owner submitted a notice of intent under § 248.105(c). The Commissioner shall submit a copy of the plan of action to the appropriate agency of such State or local government which shall review the plan of action and advise the tenants of the project of any programs that are available to assist the tenants in carrying out the purposes of subpart B of this part.

(d) *Termination of affordability restrictions.* If the plan of action proposes to terminate the low income affordability

restrictions through prepayment or voluntary termination in accordance with § 248.141, it shall include:

(1) A description of any proposed changes in the status or terms of the mortgage or regulatory agreement;

(2) A description of any proposed changes in the low income affordability restrictions;

(3) A description of any change in ownership that is related to prepayment or voluntary termination;

(4) An assessment of the effect of the proposed changes on existing tenants;

(5) An analysis of the effect of the proposed changes on the supply of housing affordable to low and very low income families or persons in the community within which the project is located and in the area that the housing could reasonably be expected to serve;

(6) A list of any waivers requested by the owner pursuant to § 248.7; and

(7) Any other information that the Commissioner determines is necessary to achieve the purposes of subpart B of this part.

(e) *Extension of affordability restrictions.* If the plan of action proposes to extend the low income affordability restrictions of the project in accordance with § 248.153 or transfer the project to a qualified purchaser in accordance with §§ 248.157 or 248.161, the plan of action shall include:

(1) A description of any proposed changes in the status or terms of the mortgage or regulatory agreement;

(2) A description of the Federal incentives requested, including cash flow projections and analyses of how the owner will address any physical or financial deficiencies and maintain the low income affordability restrictions of the project;

(3) A description of any assistance from State or local government agencies, including low income housing tax credits that have been offered to the owner or purchaser or for which the owner or purchaser has applied or intends to apply;

(4) A description of any transfer of the property, including the identity of the transferee and a copy of any documents of sale;

(5) An income profile of the tenants as of the date of submission of the plan of action and as of January 1, 1987 (based on the area median income limits established by the Commissioner in February 1987), or if the January 1, 1987 profile is unavailable, a certification from the owner stating its unavailability and a profile as of January 1, 1988, or, if that is also unavailable, a profile as of January 1, 1989;

(6) A transfer of physical assets package, if a transfer is proposed;

(7) A list of any waivers requested by the owner pursuant to § 248.7; and

(8) Any other information that the Commissioner determines is necessary to achieve the purposes of subpart B of this part.

(f) *Revisions.* The owner or owner and purchaser may from time to time revise and amend the plan of action as may be necessary to obtain approval under subpart B of this part and must amend the plan of action no later than 30 days after a change in any of the information required in paragraphs (d) or (e) of this section. The owner or owner and purchaser shall submit any revision to the Commissioner, and provide a copy of the revision to the parties and in the manner specified in paragraph (c) of this section.

(g) *Failure to Submit.* If the owner fails to submit a plan of action to the Commissioner, when prepayment or termination is sought, within the 6 month period set forth in paragraph (a) of this section or, when a transfer is sought, if the owner and purchaser fail to submit a plan of action within the 6 month time period set forth in paragraph (b) of this section, the notice of intent filed by the owner under § 248.105 shall be ineffective for the purposes of subpart B of this part and the owner shall be barred from submitting another notice of intent under § 248.105 until 6 months after expiration of such period.

(h) *Comment Period for tenants and State or local governments.* Upon submission of the plan of action by the owner, the tenants of the affected project and the State or local government shall have 60 days in which to provide comments on the plan of action to the Commissioner or to the owner, who will then submit the comments to the Commissioner. The Commissioner shall not approve a plan of action under subpart B of this part before the end of this 60-day period and all comments received during this period will be considered by the Commissioner in making its determination to approve or disapprove a plan of action.

(i) *Notification to tenants and the State or local government of plan of action approval.* Upon the Commissioner's approval of the plan of action, the owner shall notify tenants of the terms thereof by posting in each occupied building a summary of the plan of action and by delivery of a copy of the plan of action to the tenant representative, if any. In addition, the summary must indicate that a copy of the plan of action shall be available for inspection and copying during reasonable hours in a location convenient to the tenants.

§ 248.141 Criteria for approval of a plan of action involving prepayment and voluntary termination.

(a) *Approval.* The Commissioner may approve a plan of action that provides for the termination of the low income affordability restrictions through prepayment of the mortgage or voluntary termination of the mortgage insurance contract only upon a written finding that --

(1) Implementation of the plan of action will not --

(i) Materially increase economic hardship for current tenants, and will not in any event result in a monthly rental payment by any current tenant that exceeds 30 percent of the monthly adjusted income of the tenant or an increase in the monthly rental payment in any year that exceeds 10 percent (whichever is lower); or in the case of a current tenant who already pays more than such percentage, an increase in the monthly rental payment in any year that exceeds the increase in the Consumer Price Index or 10 percent (whichever is lower); or

(ii) Involuntarily displace current tenants (except for good cause) where comparable and affordable housing is not readily available, determined without regard to the availability of Federal housing assistance that would address any such hardship or involuntary displacement; and

(2) The supply of vacant, comparable housing is sufficient to ensure that such prepayment will not materially affect --

(i) The availability of decent, safe, and sanitary housing affordable to low income and very low income families or persons in the area that the housing could reasonably be expected to serve;

(ii) The ability of low income and very low income families or persons to find affordable, decent, safe, and sanitary housing near employment opportunities; or

(iii) The housing opportunities of minorities in the community within which the housing is located.

(3) There are no open audit findings, open findings of noncompliance with title VI of the Civil Rights Act of 1964 *(42 U.S.C. 2000d);* the Fair Housing Act *(42 U.S.C. 3601*-3619); Executive Order 11063 (3 CFR 1959-1963 comp., p. 652); the Age Discrimination Act of 1975 *(42 U.S.C. 6101*-6107); section 504 of the Rehabilitation Act of 1973 *(29*

*U.S.C. 794);* and all regulations promulgated under such statutes and authorities (including, but not limited to 24 CFR part 100), or outstanding violations of the regulatory agreement.

(b) *Disapproval.* If the Commissioner determines a plan of action to prepay a mortgage or terminate an insurance contract fails to meet the requirements of paragraph (a) of this section, the Commissioner shall disapprove the plan and within a reasonable time, shall inform the owner of the reasons for disapproval and suggest alternatives. In the case of disapproval of the plan of action, except for the failure to meet the requirement of paragraph (a)(3) of this section, the notice of intent filed under § 248.105 shall be rendered ineffective for the purposes of this subtitle, and the owner, in order to receive incentives, must file a new notice of intent under such section. If the plan of action is disapproved because of an outstanding civil rights or audit finding, the finding must be closed before the Commissioner will approve a plan of action under this section.

§ 248.145 Criteria for approval of a plan of action involving incentives.

(a) *Approval.* The Commissioner may approve a plan of action for extension of the low income affordability restrictions on an eligible low income housing project or for transfer of the housing to a qualified purchaser, other than a resident council, only upon a finding that --

(1) Due diligence has been given to ensuring that the package of incentives set forth in the plan of action is, for the Federal Government, the least costly alternative that is consistent with the full achievement of the purposes of subpart B of this part. The Commissioner will conduct a "windfall profits" test to determine whether the project is located in a rental market where there is an adequate supply of decent, affordable housing. If the project is located in such a rental market, and if the provision of incentives would not serve other public policy objectives under subpart B of this part, then no incentives will be provided to the owner;

(2) The project will be retained as housing affordable for very low, low and moderate income families and persons, as determined under paragraph (a)(8) of this section, for the remaining useful life of the project;

(3) Throughout the remaining useful life of the project, adequate expenditures will be made for maintenance and operation of the project and the project meets the housing standards established in § 248.147 as determined by inspections conducted by the Commissioner;

(4) Current tenants will not be involuntarily displaced, except for good cause;

(5) Any increase in rent contributions for current tenants will be to a level that does not exceed 30 percent of the adjusted income of the tenant or the fair market rent, whichever is lower. However, the rent contributions of any tenants occupying the project at the time of any increase may not be reduced by reason of this paragraph, except with respect to tenants receiving section 8 assistance in accordance with paragraph (a)(7) of this section;

(6) Any resulting increase in rents for current tenants (except for increases made necessary by increased operating costs) shall be phased in as follows:

(i) If such increase is 30 percent or more, the increase shall be phased in equally over a period of not less than three years, with the first increase occurring upon the effective date of the plan of action, and the subsequent two increases occurring annually thereafter;

(ii) If such increase is more than 10 percent but less than 30 percent, it shall be limited to not more than 10 percent per year;

(7) Section 8 assistance shall be provided, to the extent appropriations are available, if necessary to mitigate any adverse effect on current very low and low income tenants;

(8) Rents for units becoming available to new tenants shall be at levels approved by the Commissioner, taking into account any incentives provided under subpart B of this part, that will ensure, to the extent practicable, that the units will be available and affordable to the same proportions of very low, low and moderate income families and persons, including families and persons whose incomes are 95 percent or more of area median income, as based on the area median income limits established by the Commissioner in February 1987, as resided in the project as of the date of the tenant income profile submitted under § 248.135(e)(5), or the date the plan of action is approved, whichever date results in the highest proportion of very low income families. This limitation shall not prohibit a higher proportion of very low income families and persons from occupying the project;

(9) Future rent adjustments shall be --

(i) Made by applying an annual factor, to be determined by the Commissioner, to the portion of rent attributable to operating expenses for the project; and

(ii) Subject to a procedure, established by the Commissioner, for owners to apply for rent increases not adequately compensated by annual adjustment under paragraph (a)(9)(i) of this section, under which the Commissioner may increase rents in excess of the amount determined under paragraph (a)(9)(i) of this section only if the Commissioner determines such increases are necessary to reflect extraordinary necessary expenses of owning and maintaining the project;

(10) Any savings from reductions in operating expenses due to management efficiencies shall be deposited in project reserves for replacement and the owner shall have periodic access to such reserves, to the extent the Commissioner determines that the level of the reserves is adequate and that the project is maintained in accordance with the standards established in § 248.147;

(11) The mortgage on the project is current; and

(12) There are no open audit findings, open findings of noncompliance with title VI of the Civil Rights Act of 1964 *(42 U.S.C. 2000d);* the Fair Housing Act *(42 U.S.C. 3601*-3619); Executive Order 11063 (3 CFR 1959-1963 comp., p. 652); the Age Discrimination Act of 1975 *(42 U.S.C. 6101*-6107); section 504 of the Rehabilitation Act of 1973 *(29 U.S.C. 794);* and all regulations promulgated under such statutes and authorities (including, but not limited to, 24 CFR part 100), or outstanding violations of the regulatory agreement.

(b) *Compliance with housing standards.* No incentives under § 248.153 may be provided, other than to qualified purchasers under §§ 248.157 and 245.161, and no distributions may be taken by the owner or purchaser, until the Commissioner determines that the project meets the housing standards set forth in § 248.147, except that incentives designed to correct deficiencies in the project may be provided.

(c) *Implementation.* Any agreement to maintain the low income affordability restrictions for the remaining useful life of the project may be made through execution of a new regulatory agreement, modifications to the existing regulatory agreement or mortgage, or in the case of prepayment of a mortgage or voluntary termination of mortgage insurance, a recorded instrument.

(d) *Determination of remaining useful life.* The Commissioner shall make determinations, on the record and after opportunity for a hearing, as to when the useful life of an eligible low income housing project has expired. Under procedures and standards to be established by the Commissioner, owners of eligible low income housing may petition the Commissioner for a determination that the useful life of such project has expired. Such petition may not be filed before the expiration of the 50-year period beginning upon the approval of a plan of action under subpart B of this part with respect to such project. In making a determination pursuant to a petition under paragraph (d) of this section, the Commissioner shall presume that the useful life of the project has not expired, and the owner shall have the burden of proof in establishing such expiration. The Commissioner may not determine that the useful life of any project has expired if such determination results primarily from failure to make regular and reasonable repairs and replacement, as

became necessary. In making a determination regarding the useful life of any project pursuant to a petition submitted under paragraph (d) of this section, the Commissioner shall provide for comment by tenants of the project and interested persons and organizations with respect to the petition. The Commissioner shall also provide the tenants and interested persons and organizations with an opportunity to appeal a determination under paragraph (d) of this section.

(e) In the case of any plans of action involving incentives the owner must agree to comply with title VI of the Civil Rights Act of 1964 *(42 U.S.C. 2000d);* the Fair Housing Act *(42 U.S.C. 3601*-3619); Executive Order 11063 (3 CFR 1959-1963 comp., p. 652); the Age Discrimination Act of 1975 *(42 U.S.C. 6101*-6107); section 504 of the Rehabilitiation Act of 1973 *(29 U.S.C. 794)* (including the Department's Accessibility Guidelines (24 CFR chapter I, subchapter A, appendix II) and all regulations issued pursuant to these authorities.

§ 248.147 Housing standards.

(a) *Standards.* As a condition to receiving incentives under subpart B of this part, the owner shall agree to maintain the project in accordance with local housing codes and the housing quality standards set forth in § 886.307 of this title. Where a housing quality standard conflicts with local housing codes, the owner shall maintain the project in compliance with the standard that is stricter.

(b) *Annual inspections.* The Commissioner shall inspect each project at least annually in order to determine compliance with the housing quality standards. At least 30 days prior to the inspection, the Commissioner shall notify any tenant representatives, or if none exist, the Commissioner shall provide the owner with a notice to be posted in each affected building, stating the time and date of the inspection and advising any interested tenants that they may accompany HUD personnel on the inspection and/or submit any comments they may have on the physical condition of the project. The Commissioner shall notify the owner of any deficiencies within 30 days following the inspection. The owner shall have 90 days from the date of such notification to correct any deficiencies cited by the Commissioner and shall promptly notify the Commissioner when such deficiencies have been corrected. The Commissioner shall reinspect the project upon such notification or, if the owner does not notify the Commissioner, upon the expiration of the 90-day period.

(c) *Sanctions for noncompliance.* If the Commissioner determines, upon reinspection of the project, that the project is still not in compliance with the standards set forth in paragraph (a) of this section, the Commissioner shall take any action appropriate to bring the project into compliance, including --

(1) Directing the mortgagee, with respect to an equity take-out loan provided under part 241 of this chapter, to withhold the disbursement to the owner of any escrowed loan proceeds and requiring that such proceeds be used for repair of the project; and

(2) Reduce the amount of the allowable distributions to 4 percent of extension preservation equity or (in the case of a purchaser 4 percent of cash invested, as appropriate, for the period ending upon a determination by the Commissioner that the project is in compliance with the standards and requiring that such amounts be used for repair.

(d) *Continued compliance.* To ensure continued compliance with the standards set forth in paragraph (a) of this section for a project subject to any action under paragraph (c) of this section, the Commissioner may limit access of and use by the owner of such amounts set forth in paragraph (c) of this section, for not more than the 2-year period beginning upon the determination that the project is in compliance with the housing standards.

(e) *Sanctions for continuous noncompliance.* If, upon inspection, the Commissioner determines that any eligible low income housing project has failed to comply with the standards established under this section for two consecutive years, the Commissioner may, upon notification to the owner of the noncompliance, take one or more of the following actions;

(1) Subject to the availability of appropriations, provide assistance, other than project-based assistance attached to

the project, under parts 882 and 887 of this title for any tenant eligible for such assistance who desires to terminate occupancy in the project. For each unit in the project vacated pursuant to the provision of assistance under this paragraph, the Commissioner may, notwithstanding any other law or contract for assistance, cancel the provision of project-based assistance attached to the project for one dwelling unit, if the project is receiving such assistance, or convert the project-based assistance allocation for that unit to assistance under part 882 or 887 of this title;

(2) In the case of projects for which an equity take-out loan has been made under part 241 of this chapter, direct the mortgagee to declare such a loan to be in default and accelerate the maturity date of the loan;

(3) Declare, or direct the insured mortgagee to declare, any rehabilitation loan insured or provided by the Commissioner with respect to the project, including loans provided under part 219 of this chapter, to be in default and accelerate the maturity date of the loan; and

(4) Suspend payments under or terminate any contract for project-based rental assistance under section 8 of the United States Housing Act of 1937 *(42 U.S.C. 1437f)*.

(f) *Sanctions not exclusive.* The Commissioner may take any other action authorized by law or the project regulatory agreement to ensure that the project will be brought into compliance with the standards established under this section or with other requirements pertaining to the condition of the project.

§ 248.149 Timetable for approval of a plan of action.

(a) *Notification of deficiencies.* Not later than 60 days after receipt of a plan of action, the Commissioner shall notify the owner in writing of any deficiencies that prevent the plan of action from being approved. Such notice shall describe alternative ways in which the plan may be revised to meet the criteria for approval set forth in § 248.145.

(b) *Notification of approval.* Not later than 180 days after receipt of a plan of action, or such longer period as the owner requests, but not more than 365 days, the Commissioner shall notify the owner in writing whether the plan of action, including any revisions, is approved. If approval is withheld, the notice shall describe --

(1) The reasons for withholding approval; and

(2) Suggestions to the owner for meeting the criteria for approval.

(c) *Opportunity to revise.* The Commissioner shall give the owner a reasonable opportunity of not more than 60 days to revise the plan of action when approval is denied. If the owner fails to comply with this time period, it shall not be eligible for relief under paragraph (d) of this section.

(d) *Delayed approval.* If the Commissioner fails to approve a plan of action within the time set forth in paragraph (b) of this section, the Commissioner shall provide incentives and assistance under subpart B of this part, to an owner who is entitled to receive such incentives and assistance, in the amount that the owner would have received if the Commissioner had complied with such time limitations. Paragraph (d) of this section does not apply to plans of action that are not approved because of deficiencies.

§ 248.153 Incentives to extend low income use.

(a) *Agreements by the Commissioner.* After approving a plan of action filed pursuant to § 248.145, from an owner of eligible low income housing that includes the owner's plan to extend the low income affordability restrictions of the project, the Commissioner shall, subject to the availability of appropriations for such purpose, enter into such agreements as are necessary to enable the owner to --

(1) Receive the annual authorized return for the project as determined under § 248.121;

(2) Pay debt service on the federally-assisted mortgage(s) covering the project;

(3) Pay debt service on any loan for rehabilitation of the project;

(4) Meet project operating expenses; and

(5) Establish adequate reserves.

(b) *Permissible incentives.* Such agreements may include one or more of the following incentives, as determined necessary by the Commissioner:

(1) Increased access to residual receipts accounts as necessary to enable the owner to realize the annual authorized return;

(2) An increase in the rents permitted under an existing project-based section 8 contract;

(3) Additional project-based section 8 assistance or an extension of any project-based assistance attached to the housing;

(4) An increase in the rents on non-section 8 units occupied by current tenants up to the maximum allowable rents;

(5) Financing of capital improvements under part 219 of this chapter;

(6) Financing of rehabilitation through provision of insurance for a second mortgage under part 241 of this chapter;

(7) Redirection of the Interest Reduction Payment subsidies to a second mortgage for projects which are insured, assisted, or held by the Commissioner or a State or State agency under part 236 of this chapter;

(8) Access by the owner to a portion of the preservation equity in the project through provision of insurance for an acquisition or equity loan insured under part 241, subpart E of this chapter or through a non-insured mortgage loan approved by the Commissioner and the mortgagee;

(9) An increase in the amount of allowable distributions up to the annual authorized return; and

(10) Other incentives authorized in law.

(c) *Limitation on the provision of permissible incentives.* (1) The total amount of incentives provided to a project under paragraphs (b)(2), (3), and (4) of this section shall not result in a projected rental income stream which exceeds the Federal cost limit.

(2) The debt service on the loan obtained by the owner under paragraph (b)(8) of this section, when added to the allowable distributions under paragraph (b)(9) of this section, shall not exceed the annual authorized return.

(d) *Interest reduction subsidies.* Where Interest Reduction Payment subsidies are sought to be redirected, pursuant to paragraph (b)(7) of this section, the lender may not unreasonably withhold its consent to such redirection.

(e) *Recalculation of section 236 basic rent and market rent.* With respect to any project with a mortgage insured or otherwise assisted pursuant to part 236 of this chapter, the basic rent and market rent, as defined in § 236.2 of this chapter, for each unit in such project may be increased to take into account the allowable distributions permitted under this section and the debt service on any equity loan, rehabilitation loan or acquisition loan approved under a plan of action under subpart B of this part.

§ 248.157 Voluntary sale of housing not in excess of Federal cost limit.

(a) *Offer to sell.* Where an owner has submitted a second notice of intent under § 248.133 for the purpose of transferring the project to a qualified purchaser, and the transfer preservation rent does not exceed the Federal cost limit, the owner shall offer the housing for transfer as provided in this section. The owner shall not be obligated to accept any offer made under this section, but may instead elect to retain the project and receive incentives under § 248.145.

(b) *Notification of qualified purchasers.* Upon receipt of a second notice of intent to transfer the project to a qualified purchaser, the Commissioner shall notify potential qualified purchasers of the availability of the project for sale, and of the names and addresses of the owner, or of a person representing the owner in the sale of the project, by --

(1) Mailing notices to non-profit organizations;

(2) Placing notices in the major local newspaper(s) in the jurisdiction in which the project is located;

(3) Mailing notices to clearinghouse networks; and

(4) Using any other means of notification which the Commissioner determines would be effective to notify potential qualified purchasers of the sale of the project.

(c) *Right of first offer to priority purchasers.* (1) For the 6-month period beginning on the date of receipt by the Commissioner of a second notice of intent under § 248.133, the owner may accept a bona fide offer only from:

(i) A resident council intending to purchase the project under §§ 248.173 or 248.175, which has met the requirements for tenant support, pursuant to those sections;

(ii) A resident council intending to purchase the project and retain it as rental housing, which has the support of a majority of the tenants; or

(iii) A community-based nonprofit organization which has the support of a majority of the tenants.

(2) If no bona fide offer to purchase the project is made and accepted during or at the end of the 6-month period specified in paragraph (c)(1) of this section, the owner may offer to sell the project during the next 6 months to any priority purchasers.

(3) If no bona fide offer to purchase the project is made and accepted during or at the end of the 6-month period specified in paragraph (c)(2) of this section, the owner may offer to sell the project during the 3 months immediately following that period only to qualified purchasers.

(d) *Purchase price.* The sale price, including assumption of the debt on the federally-assisted mortgage(s), or the amount of the debt on the federally-assisted mortgage(s) that the project is taken subject to, may not exceed the transfer preservation value of the project.

(e) *Expression of interest.* Any priority purchaser seeking to make an offer during the 6-month periods specified in paragraph (c) of this section shall, and other qualified purchasers may, submit written notice thereof to the Commissioner. Such notice, if made by a priority purchaser seeking to make an offer during either 6-month priority purchaser marketing period, shall contain the following:

(1) A statement identifying the priority purchaser as a State or local government agency, a nonprofit organization, or a resident council;

(2) A copy of its articles of incorporation, charter and list of officers and directors, if the purchaser is a nonprofit organization or a resident council and in the case of a nonprofit organization, proof that the organization is, or has applied to be, a tax exempt organization in accordance with *26 U.S.C. 501*(c); and

(3) A statement as to whether the purchaser is affiliated with any other entity for purposes of purchasing the project and whether any Low Income Housing Tax Credits may be awarded in connection with the purchase of the project.

(f) *Information from the Commissioner.* Within 30 days of receipt of an expression of interest by a priority purchaser, the Commissioner shall determine the status of the priority purchaser with respect to the categories listed in paragraph (h) of this section, and provide such purchaser with:

(1) A list of all possible assistance available from the Federal Government to facilitate a transfer of the project;

(2) The appraisal reports for the project as submitted under § 248.111;

(3) The Commissioner's determination as to the priority status of the purchaser and as to whether the purchaser qualifies as a resident council, community-based nonprofit organization or State or local government entity;

(4) A worksheet indicating the level of the earnest money deposit required upon the submission of a bona fide offer;

(5) An acknowledgment of the purchaser's right to inspect the project; and

(6) Any other relevant financial information that the Commissioner possesses concerning the project, including the information determined under § 248.121.

Within the same 30-day period, the Commissioner shall also notify the owner of the purchaser's expression of interest and instruct the owner to provide to the purchaser any information concerning the project that the Commissioner deems relevant to the transfer of the project.

(g) *Bona fide offer.* A bona fide offer is an offer to purchase eligible low-income housing at a sales price which does not exceed the transfer preservation value of the project.

(1) A bona fide offer must include the following:

(i) A contract of sale signed by the purchaser, which states that acceptance of the contract is contingent upon approval by the Commissioner;

(ii) An earnest money deposit from every qualified purchaser equal to the lesser of one percent of the transfer preservation value, $50,000 or $500 per unit, unless the purchaser is a resident council purchasing the project under a resident homeownership plan under § 248.173 or § 248.175, in which case the earnest money deposit shall be equal to $200 per unit from 75% of the occupied units; and

(iii) If the purchaser is a resident council intending to purchase the project pursuant to a resident homeownership plan, the information required under § 248.173(b); or

(iv) If the purchaser is a resident council intending to retain the project as rental housing, or a community-based nonprofit and the offer is submitted within the marketing period established in paragraph (c)(1) of this section, a resolution of the resident council, or a petition signed by tenants representing a majority of the units indicating their support of the offer.

(2) An owner may waive the requirement of an earnest money deposit or agree to accept a smaller deposit for all qualified purchasers, except resident councils who intend to purchase the project pursuant to a resident homeownership plan under § 248.173 or § 248.175. In order to be effective:

(i) The waiver must be indicated in the second notice of intent submitted under § 248.133 and the waiver must

apply equally to all qualified purchasers, except resident councils who intend to purchase the project pursuant to a resident homeownership plan under § 248.173 or § 248.175; or

(ii) If the second notice of intent has already been submitted, the owner must submit to the Commissioner, in writing, its decision to waive the earnest money deposit. The Commissioner shall notify all qualified purchasers who have submitted an expression of interest under paragraph (e) of this section that the owner has waived the earnest money deposit requirement.

(h) *Retention and acceptance of offers.* The owner shall accept or reject any bona fide offer within 30 days of receipt of such offer. For an offer to be bona fide, it must meet the requirements of paragraph (g) of this section, as well as be submitted to the owner within the appropriate marketing period under paragraph (c) of this section. If an owner rejects any offer, it must return the earnest money deposit to the offeror at the time of rejection. A bona fide offer which is rejected by the owner will still be considered a bona fide offer for purposes of this section, even after the earnest money deposit has been returned. If an owner decides to accept the offer at a later date, the purchaser may renew the offer by resubmitting the earnest money deposit, if a deposit had originally been required, within 30 days of notification of the owner's acceptance of the offer.

(i) *Submission of offer to HUD.* The purchaser shall submit the offer to the Commissioner. The Commissioner shall review the offer which is preliminarily accepted by the owner to determine whether it meets the requirements of a bona fide offer. The Commissioner shall notify the owner and purchaser, within 30 days after acceptance, whether the offer meets such requirements. The owner's preliminary acceptance of any offer pursuant to this section shall be conditional upon the Commissioner's certification that the offer is bona fide. If the Commissioner determines that the offer is not a bona fide offer, the offer will be considered invalid for the purposes of subpart B of this part.

(j) *Submission of plan of action.* Upon a determination by the Commissioner that the offer is bona fide and final acceptance of such an offer, the owner and purchaser shall jointly submit a plan of action to the Commissioner pursuant to § 248.135. The plan of action shall include any request for assistance from the Commissioner for purposes of transferring the project.

(k) *Requirements for plan of action approval.* If the qualified purchaser of the project is a resident council seeking to purchase the project under a resident homeownership program, the Commissioner may approve a plan of action only if the resident council's proposed resident homeownership program meets the requirements under § 248.173 or § 248.175. For all other qualified purchasers, the Commissioner may approve a plan of action submitted pursuant to this section only if the plan of action meets the criteria listed in § 248.145.

(l) *Failure to consummate sales transaction.* (1) If the owner accepts an offer from a priority purchaser during either of the two 6-month periods specified in paragraph (c) of this section, and before the expiration of the period specified in paragraph (c) of this section, the sales transaction either falls through or does not close within 90 days after the Commissioner's approval of the plan of action, the owner shall:

(i) Immediately notify the Commissioner that the sale has fallen through;

(ii) Notify any other purchaser that had submitted an offer to purchase the project; and

(iii) Resume holding the project open for sale for the remainder of the time periods specified in paragraph (c) of this section.

(2) If the owner accepts an offer from a purchaser, and during the 3-month period specified in paragraph (c) of this section, or thereafter, the sales transaction either falls through or does not close within 90 days after the Commissioner's approval of the plan of action, the owner shall take the following steps:

(i) Immediately notify the Commissioner that the sale has fallen through;

(ii) Contact any other purchaser that had submitted an offer to purchase the project and give such purchaser and any other qualified purchaser 60 days from the date of notification to the Commissioner in which to resubmit an offer to purchase the project.

(3) At any time during the 60-day period the owner may accept an offer submitted under paragraph (l)(2) of this section.

(4) If an offer submitted during the 60-day period specified in paragraph (l)(2) of this section is made and accepted, but the sale is not consummated within 90 days of the Commissioner's approval of the plan of action for reasons not attributable in whole or in part to the owner, the owner may terminate the low-income affordability restrictions through prepayment or voluntary termination, subject to compliance with the provisions of § 248.165.

(m) *Assistance.* Subject to the availability of amounts approved in appropriation acts, the Commissioner shall, for approvable plans of action, provide assistance sufficient to enable qualified purchasers to:

(1) Acquire the eligible low income housing project from the current owner for a purchase price not greater than the transfer preservation value of the project;

(2) Pay the debt service on the federally-assisted mortgage(s) covering the project;

(3) Pay the debt service on any loan for the rehabilitation of the project;

(4) Meet project operating expenses and establish adequate reserves for the housing;

(5) Receive a return on investment in an amount equal to 8 percent on any actual cash investment made to acquire the project;

(6) In the case of a priority purchaser, receive an adequate reimbursement for transaction expenses relating to acquisition of the project, not in excess of 5% of the project's transfer preservation equity, subject to approval by the Commissioner in accordance with standards applicable to insured loan transactions under this chapter; and

(7) In the case of an approved resident homeownership program, cover the costs of training for the resident council, homeownership counseling and training, the fees for the nonprofit entity or public agency working with the resident council, if such entity or agency is approved by the Commissioner, and costs related to relocation of tenants who elect to move. Assistance for such costs, exclusive of relocation expenses, shall not exceed $500 per unit or $200,000 for the project, whichever is less.

(n) *Incentives; residual receipts.* The Commissioner may provide assistance for all qualified purchasers under subpart B of this part in the form of one or more of the incentives authorized under § 248.153, except that any residual receipts for the project transferred to the owner shall be deducted from the sale price of the project. The incentives provided by the Commissioner to any qualified purchaser may include an acquisition loan provided under subpart E of part 241 of this chapter.

(o) *Grants to priority purchasers.* The Commissioner may provide assistance for priority purchasers under subpart B of this part in the form of a grant for each unit in the project in an amount, as determined by the Commissioner, that does not exceed the present value of the total of the projected fair market rent for the next ten years, or such longer period if additional assistance is necessary to cover the costs set forth in paragraph (m) of this section.

(p) *Reimbursement of assistance.* The Commissioner reserves the right to seek reimbursement from a priority purchaser who, within ten years of approval of a plan of action, becomes affiliated with or transfers the project to any non-priority purchaser. The Commissioner shall be entitled to receive reimbursement for the difference between the assistance provided to the priority purchaser and the assistance that would have been provided in the same

circumstances to a non-priority purchaser.

(q) *Seller financing.* In order to finance the acquisition or rehabilitation of a project under this section, a qualified purchaser may receive take-back financing from the owner of the project. If the purpose of the seller financing is to aid acquisition of the project, the principal amount of such financing, together with an acquisition loan provided under part 241 of this chapter, may not exceed the transfer preservation equity of the project, plus, in the case of priority purchasers, any expenses associated with the acquisition, loan closing, and implementation of the plan of action. If the purpose of the seller financing is to fund rehabilitation of the project, the principal amount of such financing may not exceed the equity requirements for a rehabilitation loan under § 241.70 or § 219.305 of this chapter. The seller may not charge interest on any seller financing at a rate in excess of that of the Federal acquisition or rehabilitation loan.

§ 248.161 Mandatory sale of housing in excess of the Federal cost limit.

(a) *In general.* With respect to any eligible low income housing for which the transfer preservation rent determined under § 248.121 exceeds the Federal cost limit, the owner shall offer the housing for transfer to qualified purchasers as provided in this section.

(b) *Applicability of voluntary sale provisions.* The provisions of § 248.157, other than paragraphs (a) and (p) of this section thereof, shall be applicable to any sale conducted under this section. If the owner receives an offer to purchase the project for a sale price equal to the transfer preservation value of the project, as determined under § 248.111, the owner shall be obligated to accept the offer upon its receipt and sell the project to the purchaser. If the owner receives an offer to purchase the project for a sale price less than the transfer preservation value of the project, the owner may accept the offer, but is not obligated to do so. Any offer to purchase a project under this section for less than the transfer preservation value must comply with the requirements of a bona fide offer in § 248.101, except for the requirement that the sale price equal the transfer preservation value. At the time of submission of the offer, the potential purchaser must also submit the documentation required in § 248.157(g).

(c) *Section 8 assistance.* Subject to the availability of amounts approved in appropriation acts, the Commissioner shall, for approvable plans of action, provide assistance to qualified purchasers under part 886, subpart A of this title sufficient to produce a gross potential income equal to the amount determined by multiplying 120 percent of the prevailing rents in the relevant local market in which the project is located by the number of units in the project, according to appropriate unit size, and any other incentives authorized under § 248.153 that would have been provided to a qualified purchaser under § 248.157.

(d) *Grants to qualified purchasers.* From amounts made available by Congress, the Commissioner may make grants to assist in the completion of transfers under this section to any qualified purchasers. Any grant made pursuant to paragraph (d) of this section shall be in an amount not exceeding the difference between the amount of assistance provided under paragraph (c) of this section and the amount of assistance specified in § 248.157(m).

(e) *Securing State and local funding.* The Commissioner shall assist any qualified purchaser of a project pursuant to this section in securing funding and other assistance, including tax and assessment reductions from State and local governments to facilitate a transfer under this section.

§ 248.165 Assistance for displaced tenants.

(a) *Section 8 assistance.* Each low income family that is displaced as a result of the prepayment of the mortgage or voluntary termination of an insurance contract on eligible low income housing shall, subject to the availability of funds, receive assistance under parts 882 or 887 of this title in the form of section 8 certificates or vouchers. At its discretion, the Commissioner may set the section 8 existing fair market rent levels at the exception rent in order to allow tenants to use the certificates or vouchers to remain at the project.

(b) *Notification of Commissioner.* The owner of any eligible low income housing project who prepays the mortgage

or voluntarily terminates the mortgage insurance contract pursuant to subpart B of this part, shall notify the Commissioner of:

(1) The names and addresses of all of the tenants in the project who will be displaced;

(2) The size of the unit in which each of the displaced tenants is currently dwelling; and

(3) The names of all of the displaced tenants who are special needs tenants, as that term is defined in § 248.101, as well as a statement as to the nature of their special need.

The owner shall provide the Commissioner with this information within 30 days of identifying such tenants for displacement, but in no event less than 30 days prior to the date when the tenants must vacate the premises.

(c) *Relocation of displaced tenants.* The Commissioner shall coordinate with public housing agencies to ensure that any very low or low income family displaced from eligible low income housing as the result of prepayment of the mortgage or termination of the mortgage insurance contract on such project is able to acquire a suitable, affordable dwelling unit in the area where the project from which the displaced family is located. The Commissioner, upon receiving information from the owner under paragraph (b) of this section stating that certain tenants will be displaced, shall request from the public housing agencies located in the same area as the affected project, notices of vacancies in other affordable projects which would be suitable for the displaced tenants. The Commissioner shall convey the notices of vacancies to the tenants who will be displaced along with the addresses of the local public housing agencies.

(d) *Relocation expenses.* The Commissioner shall require the owner of eligible low income housing who prepays or terminates the insurance contract resulting in the displacement of tenants to pay 50 percent of the relocation expenses of each family which is relocated, except that the Commissioner shall increase such percentage to the extent that State or local law of general applicability requires a higher payment by the owner.

(e) *Continued occupancy.* Each owner who prepays the mortgage or terminates the mortgage insurance contract on eligible low income housing shall, as provided in paragraph (g) of this section, allow the tenants occupying units in such project on the date of submission of a notice of intent under § 248.105 to remain in the project for a period of three years, commencing on the date of prepayment or contract termination, at rent levels existing at the time of prepayment or termination, except for rent increases made necessary due to increased operating costs.

(f) *Replacement unit.* In any case in which the Commissioner requires an owner to allow tenants to occupy units under paragraph (e) of this section, an owner may fulfill the requirements of such paragraph by providing such assistance necessary for the tenant to rent a decent, safe, and sanitary unit in another project for the same 3-year period and at a rental cost to the tenant not in excess of the rental amount the tenant would have been required to pay to the owner in the owner's project, except that the tenant must freely agree to waive the right to occupy the unit in the owner's project. The provisions of paragraph (d) of this section requiring an owner who prepays or terminates an insurance contract to pay a portion of the relocation expenses incurred by displaced tenants shall also be applicable to tenants who relocate pursuant to this paragraph.

(g) *Applicability.* The provisions of paragraphs (e) and (f) of this section shall apply only to:

(1) All tenants in eligible low income housing projects located in a low-vacancy area; and

(2) Special needs tenants.

(h) *Low Vacancy Areas.* The Commissioner shall notify the owner, within 30 days of the owner's request to prepay under § 248.169, whether the project is located in a low vacancy area for purposes of paragraph (g) of this section.

(i) *Required acceptance of section 8 assistance.* Any owner who prepays the mortgage or terminates the mortgage

insurance contract on eligible low income housing and maintains the project for residential rental occupancy may not refuse to rent, refuse to negotiate for the rental of, or otherwise make unavailable or deny the rental of a dwelling unit in such project to any person, or discriminate against any person in the terms, conditions, or privileges or rental of a unit, or in the provision of services or facilities in connection therewith, because the person receives assistance under parts 882 or 887 of this title.

(j) *Regional pools.* In providing assistance under this section, the Commissioner shall allocate the assistance on a regional basis through the regional offices of the Department of Housing and Urban Development. The Commissioner shall allocate assistance under this section in a manner so that the total number of assisted units in each such region available for occupancy by, and affordable to, low income families and persons does not decrease because of the prepayment of a mortgage on eligible low income housing or the termination of an insurance contract on such project.

(k) This section shall only apply to prepayments and terminations occurring pursuant to §§ 248.157(l) and 248.169.

§ 248.169 Permissible prepayment or voluntary termination and modification of commitments.

(a) *In general.* Notwithstanding any limitations on prepayment or voluntary termination under subpart B of this part, an owner may terminate the low income affordability restrictions through prepayment or voluntary termination, subject to compliance with the provisions of § 248.165, under one of the following circumstances:

(1) The Commissioner approves a plan of action under § 248.153(a), but does not provide the assistance approved in such plan and contained in an executed use agreement between the Commissioner and the owner, including section 8 assistance or a loan provided under part 219 of this chapter, but not including insurance of a rehabilitation or equity take-out loan under part 241 of this chapter, during the 15-month period beginning on the date of final approval of the plan of action;

(2) After the date that the project would have been eligible for prepayment pursuant to the terms of the mortgage, notwithstanding this part, the Commissioner approves a plan of action under § 248.157 or § 248.161, but does not provide the assistance approved in such plan, including section 8 assistance, a loan provided under part 219 of this chapter, a grant provided under § 248.157(o), or a grant under § 248.161(d), before the earlier of:

(i) The expiration of the 2-month period beginning on the commencement of the first fiscal year beginning after such final approval; or

(ii) The expiration of the 6-month period beginning on the date of final approval.

(3) The Commissioner approves a plan of action under §§ 248.157 or 248.161 for any eligible low income housing not covered by paragraph (a)(2) of this section, but does not provide the assistance approved in such plan before the earlier of:

(i) The expiration of the 2-month period beginning on the commencement of the first fiscal year beginning after such final approval; or

(ii) The expiration of the 9-month period beginning on the date of final approval.

(4) An owner who intended to transfer the project to a qualified purchaser under § 248.157 or § 248.161, and fully complied with the provisions of such section,

(i) Did not receive any bona fide offers from any qualified purchasers within the applicable time periods; or

(ii) Received and accepted a bona fide offer from a qualified purchaser, but the sales transaction fell through for reasons not attributable in whole or in part to the owner, and the owner then complied with the requirements of § 248.157(l) and did not receive another bona fide offer from any qualified purchasers.

(b) *Section 8 assistance.* When providing section 8 assistance, the Commissioner may enter into a contract with an owner, contingent upon the future availability of appropriations, for the purpose of renewing expiring contracts for rental assistance as provided in appropriations acts, to extend the term of such rental assistance for such additional period or periods necessary to carry out an approved plan of action. The contract and approved plan of action shall provide that, if the Commissioner is unable to extend the term of such rental assistance or is unable to develop a revised package of incentives providing benefits to the owner comparable to those received under the original approved plan of action, the Commissioner, upon the request of the owner, shall take the following actions, subject to the limitations under the following paragraphs:

(1) Modify the binding commitments made pursuant to § 248.145(a)(2)-(10) that are dependent upon such rental assistance; or

(2) If the Commissioner determines that such modification is infeasible, permit the owner to prepay the mortgage and terminate the plan of action and any implementing use agreements or restrictions, but only if the owner agrees in writing to comply with the provisions of § 248.165.

(c) *Failure to provide section 8 assistance.* With regard to paragraph (b) of this section, the Commissioner shall notify the owner of an inability to either extend the term of section 8 rental assistance or to develop a revised package of incentives providing benefits comparable to those received under the original plan of action as soon as practicable upon discovering that fact. The owner shall inform the Commissioner in writing, within 30 days of receipt of the notice that, since the Commissioner is unable to fulfill the terms of the original plan of action, the owner intends to request that the Commissioner take action under paragraphs (b)(1) or (2) of this section. The Commissioner shall, no later than 90 days from receiving the owner's notice, take action to extend the rental assistance contract and to continue the binding commitments under § 248.145(a)(2)-(10).

§ 248.173 Resident homeownership program.

(a) *Formation of resident council.* Tenants seeking to purchase eligible low income housing in accordance with §§ 248.157 and 248.161 shall organize a resident council for the purpose of developing a resident homeownership program in accordance with standards established by the Commissioner. In order to fulfill the purposes of this section, the resident council shall work with a public or private nonprofit organization or a public body, including an agency or instrumentality thereof. Such organization shall have sufficient experience to enable it to help the tenants to consider their options and to develop the capacity necessary to own and manage the project, where appropriate, and shall be approved by the Commissioner.

(b) *Submission of expression of interest.* A resident council shall identify itself as such in an expression of interest submittted pursuant to § 248.157 or § 248.161 and shall state that, it is interested in purchasing the project pursuant to a homeownership program.

(c) *Bona fide offer.* When submitting an offer to purchase the project pursuant to this section, the resident council must simultaneously submit a certified list of project tenants representing at least 75 percent of the occupied units in the project, and representing at least 50 percent of all of the units in the project, who have expressed an interest in participating in the homeownership program developed by the resident council. An offer made without this certified list will not be considered a bona fide offer for the purposes of subpart B of this part.

(d) *Submission of a homeownership program.* (1) The resident council shall prepare a homeownership program acceptable to the Commissioner for giving all residents of the project an opportunity to become homeowners. The plan shall describe the major elements of, and schedules for, the homeownership program and demonstrate how the program complies with all applicable requirements of this section. The plan shall also describe the resident council's current abilities and proposed capacity-building activities to successfully carry out the homeownership program in compliance with this section. The homeownership program shall include, at a minimum, the following information:

(i) The amount of grant funds requested from the Commissioner, and the expected amounts and sources of other funding;

(ii) The proposed use of the grant funds to be received from HUD and of all other funds, including proceeds from the sale of units to initial purchasers, consistent with paragraph (h) of this section;

(iii) A summary of major rehabilitation activities to be carried out, including repairs, replacements and improvements;

(iv) The price at which the resident council intends to transfer ownership interests in, or shares representing, units in the project, broken down by unit size and/or type; the factors that will influence the establishment of such price, including, but not limited to, the resident council's acquisition cost, estimated rehabilitation costs, capitalization of reserves and organizational costs; how the price arrived at by the resident council compares to the estimated appraised value of the ownership interests or shares; and the underwriting standard that the resident council plans to use, or reasonably expects a public or private lender to use, for potential tenant purchasers, consistent with paragraph (g)(2) of this section;

(v) The expected number of very low, low and moderate income tenants that will be initial owners under the program, consistent with paragraph (g)(1) of this section;

(vi) A pro forma analysis which demonstrates the financial feasibility and viability of the homeownership program, based on the required conditions specified in paragraph (g) of this section;

(vii) The financing arrangements that the tenants are expected to pursue or to be provided, including financing available through the resident council or a State or local governmental entity, and criteria for acceptability of conventional financing;

(viii) A description of the estimated costs expected to be paid by the homeowner at closing;

(ix) The type of homeownership contemplated, consistent with paragraph (f) of this section;

(x) How the marketing of currently vacant units and units occupied by nonpurchasing tenants that become vacant will affect the sales price and occupancy charges to purchasers;

(xi) A workable schedule of sale, subject to the limitations of paragraph (o) of this section, based on estimated tenant incomes;

(xii) Any restrictions on resale by homeowners over and above those specified in paragraph (i) of this section, and any restrictions on homeowners' equity, over and above those specified in paragraph (k) of this section;

(xiii) The qualifications of the resident council or the proposed management entity to manage the project, in compliance with paragraph (n) of this section;

(xiv) The expected number of non-purchasing tenants and their eligibility for section 8 rental assistance under paragraph (m)(2) of this section;

(xv) Expected scope and expenses of relocation activities, both for any temporary relocation due to rehabilitation as well as relocation assistance for nonpurchasing tenants, consistent with paragraph (m)(4) of this section;

(xvi) Expected scope and costs of technical assistance, training and counseling for the resident council, purchasers and non-purchasing tenants; and

(xvii) A certification that the resident council shall comply with the provisions of the Fair Housing Act *(42 U.S.C.*

*3601*-3619); title VI of the Civil Rights Act of 1964 *(42 U.S.C. 2000d)*; Executive Order 11063 (3 CFR 1959-1963 comp., p. 652); section 504 of the Rehabilitation Act of 1973 *(29 U.S.C. 794)*; the Age Discrimination Act of 1975 *(42 U.S.C. 6101*-6107); and all regulations issued pursuant to these statutes and authorities.

(2) The Commissioner shall give the resident council a reasonable opportunity to revise the homeownership program if approval is denied.

(e) *Approval of a homeownership program; assistance provided.* (1) When the Commissioner determines that the homeownership program submitted by the resident council meets the requirements of this section, is financially feasible, and is the least costly alternative that is consistent with establishing a viable homeownership program, the Commissioner shall approve the program.

(2) In connection with an approved homeownership program the Commissioner shall provide assistance sufficient to pay the following costs:

(i) The purchase price, which shall not exceed the transfer preservation value;

(ii) Transaction costs, as provided in § 248.157(m)(6);

(iii) Other costs, as provided in § 248.157(m)(7);

(iv) The costs of rehabilitation;

(v) The establishment of an adequate reserve for replacements; and

(vi) If necessary, the establishment of operating reserve escrows including contingencies against unexpected increases in expenses or shortfalls in homeowners' payments.

(3) Upon approval of the homeownership program, the Commissioner and the resident council shall enter into a agreement, which shall include, among other matters, procedures governing the drawdown of funds and remedies for noncompliance with the requirements of this section.

(f) *Method of conversion.* The Commissioner shall approve the method for converting the project to homeownership, which may involve acquisition of ownership interests in, or shares representing, the units in a project under any arrangement determined by the Commissioner to be appropriate, such as cooperative ownership, and fee simple ownership, including condominium ownership.

(g) *Required conditions.* The Commissioner shall require that the form of homeownership impose appropriate conditions, including conditions to assure that:

(1) To the extent practicable, the number of initial owners that are very low, low, and moderate income persons at initial occupancy are of the same proportion of very low, low, and moderate income tenants (including families and persons whose incomes are 95 percent or more of area median income) as resided in the project on January 1, 1987 (or if the January 1, 1987 profile is unavailable, a certification from the owner stating its unavailability and a profile as of January 1, 1988, or, if that is also unavailable, a profile as of January 1, 1989) or as of the date of approval of the plan of action, whichever date results in the higher proportion of very low income families, except that the resident council may, at its option, increase the proportions of very low income and low income initial owners, however, no current tenant may be denied homeownership as a result of this paragraph;

(2) Projected debt service payments, occupancy charges and utilities payable by the owners shall not exceed 35 percent of the monthly adjusted gross income of the owners;

(3) The aggregate incomes of initial owners and other sources of funds for the project are sufficient to permit

occupancy charges to cover the full operating costs of the project and any debt service; and

(4) Each initial owner occupies the unit it acquires for at least the initial 15 years of ownership, unless the resident council determines that the initial owner is required to move outside the market area due to a change in employment or an emergency situation.

(h) *Use of proceeds from sales to eligible families.* The entity that transfers ownership interests in, or shares representing, units to eligible families, or another entity specified in the approved application, may use 50 percent of the proceeds, if any, from the initial sale for costs of the homeownership program, including improvements to the project, operating and replacement reserves for the project, additional homeownership opportunities in the project, and other project-related activities approved by the Commissioner. The remaining 50 percent of such proceeds shall be returned to the Commissioner for use under §§ 248.157 and 248.161, subject to the availability of appropriations. Such entity shall keep, and make available to the Commissioner, all records necessary to calculate accurately payments due the Commissioner under paragraph (h) of this section.

(i) *Restrictions on resale by homeowners.* Resale of a homeowner's interest in a project with an approved homeownership program may occur subject to any reasonable restrictions placed on such a transfer by the resident council and approved by the Commissioner.

(1) *Transfer permitted.* A homeowner may transfer the homeowner's ownership interest in the unit, subject to the right to purchase under paragraph (i)(2) of this section, the requirement for the purchaser to execute a promissory note, if required under paragraph (i)(3) of this section and the restrictions on retention of sales proceeds in paragraph (k) of this section. An applicant may propose in its application, and HUD may approve, reasonable restrictions on the resale of units under the program.

(2) *Right to purchase.* Where a resident management corporation, resident council, or cooperative has jurisdiction over the unit, it shall have the right to purchase the ownership interest in the unit from the initial homeowner for the amount specified in a firm contract between the homeowner and a prospective buyer. Where a resident management corporation, resident council, or a cooperative exercises a right to purchase, it shall resell the unit to an eligible family within a reasonable period of time.

(3) *Promissory note required.* At closing, the initial homeowner shall execute a nonrecourse promissory note for a term of twenty years, in a form acceptable to HUD, equal to the difference between the fair market value of the unit and the purchase price, payable to the Commissioner, together with a mortgage securing the obligation of the note.

(i) With respect to a sale by an initial homeowner, the note shall require payment upon sale by the initial homeowner, to the extent proceeds of the sale remain after paying off other outstanding debt incurred in connection with the purchase of the property, paying any other amounts due in connection with the sale, including closing costs and transfer taxes, and paying the family the amount of its equity in the property, computed in accordance with paragraph (k) of this section.

(ii) With respect to a sale by an initial homeowner during the first six years after acquisition, the family may retain only the amount computed under paragraph (k) of this section. Any excess is distributed as provided in paragraph (1) of this section.

(iii) With respect to a sale by an initial homeowner six to twenty years after acquisition, the amount payable under the note shall be reduced by 1/168th of the original principal amount of the note for each full month of ownership by the family after the end of the sixth year. The homeowner may retain all other proceeds of the sale.

(j) *Execution of promissory note by subsequent purchaser.* Where a subsequent purchaser during the 20-year period, measured by the term of the initial promissory note, purchases the property for less than the then current fair market value, the purchaser shall also execute at closing such a promissory note and mortgage, for the amount of the

discount. The term of the promissory note shall be the period remaining of the original 20-year period. The note shall require payment upon sale by the subsequent homeowner, to the extent proceeds of the sale remain after paying off other outstanding debt incurred in connection with the purchase of the property, and paying any other amounts due in connection with the sale (such as closing costs and transfer taxes). The amount payable on the note shall be reduced by a percentage of the original principal amount of the note for each full month of ownership by the subsequent homeowner. The percentage shall be computed by determining the percentage of the term of the promissory note that the homeowner has owned the property. The remainder may be retained by the subsequent homeowner selling the property.

(k) *Homeowners' equity.* The amount of equity an initial homeowner has in the property is determined by computing the sum of the following:

(1) The contribution to equity paid by the family, if any, including any down payment and any amount paid towards principal on a mortgage loan during the period of ownership;

(2) The value of any improvements installed at the expense of the family during the family's tenure as owner, as determined by the resident council based on evidence of amounts spent on the improvements, including the cost of material and labor; and

(3) The appreciated value, determined by applying the Consumer Price Index (urban consumers) against the contribution to equity under paragraphs (k) (1) and (2) of this section, excluding the value of any sweat equity or volunteer labor used to make improvements to the unit. The resident council may, at the time of initial sale, enter into an agreement with the family to set a maximum amount which this appreciation may not exceed.

(l) *Use of recaptured funds.* Any net sales proceeds that may not be retained by the homeowner under the homeownership program approved under this section shall be paid to the HOME Investment Trust Fund for the unit of general local government in which the project is located. If the project is located in a unit of general local government that is not a participating jurisdiction, as such term is defined in § 248.101, any such net sales proceeds shall be paid to the HOME Investment Trust Fund for the State in which the project is located. With respect to any proceeds transferred to a HOME Investment Trust Fund under paragraph (l) of this section, the Commissioner shall take such actions as are necessary to ensure that the proceeds shall be immediately available for eligible activities to expand the supply of affordable housing under section 212 of the Cranston-Gonzalez National Affordable Housing Act of 1990 *(42 U.S.C. 12742).* The Commissioner shall monitor the HOME Investment Trust Fund for each State and unit of local government and shall require maintenance of any records necessary to calculate accurately payments due under this paragraph (l) of this section.

(m) *Protection of nonpurchasing families.* Nonpurchasing families who continue to reside in a project subject to a homeownership program approved under this section shall be protected as follows:

(1) *Eviction.* No tenant residing in an eligible property on the date the Commissioner approves a plan of action may be evicted by reason of a homeownership program approved under this section. This does not preclude evictions for material violation of the terms of occupancy of the unit.

(2) *Section 8 assistance.* If a tenant decides not to purchase a unit, or is not qualified to do so, the Commissioner shall ensure that assistance under parts 882 or 887 of this title is available for use in that or another property by each tenant that meets the eligibility requirements thereunder.

(3) *Rent increases for ineligible tenants.* Rents for tenants who do not purchase a unit but are ineligible for assistance under paragraph (m)(2) of this section may be increased to a level that does not exceed 30 percent of the tenant's adjusted income or the section 8 existing fair market rent, whichever is lower. Rent increases shall be phased in in accordance with § 248.145(a)(6).

(4) *Relocation assistance.* The resident council shall also inform each tenant that if the tenant chooses to move, the resident council, as owner of the project, will pay relocation expenses in accordance with the approved homeownership program. The provisions of § 248.165 shall not apply to resident councils who are project owners pursuant to an approved homeownership program under this section.

(n) *Qualified management.* As a condition of approval of a homeownership program under subpart B of this section, the resident council shall have demonstrated its abilities to manage eligible properties by having done so effectively and efficiently for a period of not less than three years or by entering into a contract with a qualified management entity that meets such standards as the Commissioner may prescribe to ensure that the project will be maintained in a decent, safe and sanitary condition.

(o) *Timely homeownership.* The resident council shall acquire ownership of the project no later than 90 days after final approval of a plan of action pursuant to this section. The resident council shall transfer ownership of units in the project (other than units occupied by nonpurchasing tenants) to the tenants within a reasonable time thereafter, but in no event more than 4 years from the date of transfer of the project to the resident council. The Commissioner may seek contractual remedies against any resident council which fails to transfer ownership of all units within the 4-year period. During the interim period when the project continues to be operated and managed as rental housing, the resident council shall utilize written tenant selection policies and criteria that are approved by the Commissioner as consistent with the purpose of providing housing for very low income families. The resident council shall promptly notify in writing any rejected applicant of the grounds for any rejection.

(p) *Housing standards; inspections.* (1) Until the resident council has transferred all units in the project (other than those occupied by nonpurchasing tenants) to the initial purchasers, the project shall be maintained in accordance with the housing standards set forth in § 248.147.

(2) The Commissioner shall inspect the project at least annually in order to determine compliance with paragraph (p)(1) of this section.

(q) *Audits.* Each resident council shall be subject to the audit requirements in part 45 of this title and shall submit an annual audit to the Commissioner in such form as the Commissioner may prescribe. The resident council shall keep such records as may be reasonably necessary to fully disclose the amount and the disposition by such resident council of the proceeds of assistance received under subpart B of this part, including any proceeds from sales under paragraphs (h) and (l) of this section, the total cost of the homeownership program in connection with which such assistance is given or used, and the amount and nature of that portion of the program supplied by other sources, and such other sources as will facilitate an effective audit.

The Commissioner or his or her duly authorized representative shall have access for the purpose of audit and examination to any books, documents, papers, and records of the resident council that are pertinent to assistance received under subpart B of this part. The Comptroller General of the United States, or any of the duly authorized representatives of the Comptroller General, shall also have access, for the purpose of audit and examination, to any books, documents, papers, and records of the resident council that are pertinent to assistance received under subpart B of this part.

(r) *Reports.* The resident council shall submit reports, as required by the Commissioner, in order to demonstrate continued compliance with the requirements of this section.

(s) *Assumption of the Federally-assisted mortgage.* The resident council may not assume a mortgage insured, held or assisted by the Commissioner under part 236 of this chapter or under part 221 of this chapter and bearing a below market interest rate as provided under § 221.518(b) of this chapter.

§ 248.175 Resident homeownership program -- limited equity cooperative.

(a) Tenants may carry out a resident homeownership program through the purchase of eligible low income housing by a limited equity cooperative and the operation of the project as a limited equity cooperative.

(b) The purchase of a project by a limited equity cooperative and the operation of the project by the limited equity cooperative shall be carried out in accordance with the provisions of § 248.173 (a), (b), (c), (d), (except that paragraph (d)(i) of paragraph (d) shall include a statement of the amount of grant funds and the amount and type of incentives requested, rather than only the amount of grant funds requested), (e), (g)(3), (h), (i) (except paragraphs (i) (1) and (3)), (m), (n) and (o).

(c) The purchase and operation of eligible low income housing by a limited equity cooperative under this section shall be carried out in accordance with all provisions of subpart B of this part otherwise, applicable to the transfer and operation of a project with continued low income affordability restrictions, except as provided in this section.

§ 248.177 Delegated responsibility to State agencies.

(a) *In general.* The Commissioner shall delegate some or all responsibility for implementing subpart B of this part to a State housing agency if such agency submits a preservation plan acceptable to the Commissioner.

(b) *Approval.* State preservation plans shall be submitted in such a form and in accordance with such procedures as the Commissioner shall establish. The Commissioner may approve plans that contain:

(1) An inventory of low income housing located within the State that is or will be eligible low income housing under subpart B of this part within five years;

(2) A description of the agency's experience in the area of multifamily financing and restructuring;

(3) A description of the administrative resources that the agency will commit to the processing of plans of action in accordance with subpart B of this part;

(4) A description of the administrative resources that the agency will commit to the monitoring of approved plans of action in accordance with subpart B of this part;

(5) An independent analysis of the performance of the multifamily housing inventory financed or otherwise monitored by the agency;

(6) A certification by the public official responsible for submitting the comprehensive housing affordability strategy under section 105 of the Cranston-Gonzalez National Affordable Housing Act *(42 U.S.C. 12705)* that the proposed activities are consistent with the approved housing strategy of the State within which the eligible low income housing is located; and

(7) Such other certifications or information that the Commissioner determines to be necessary to implement an approved State preservation plan, which may include incentives that are authorized under other provisions of subpart B of this part.

(c) *Implementation agreements.* The Commissioner may enter into any agreements necessary to implement an approved State preservation plan, which may include incentives that are authorized under other provisions of subpart B of this part.

(d) *Fees.* Any State agency with responsibility so delegated under subpart B of this part may not charge any owner of eligible low income housing any fee for accepting notices of intent, processing plans of action or any other process pursuant to approval of a plan of action under subpart B of this part. This prohibition shall not preclude:

(1) An owner paying for its appraisal or share of a joint appraisal under the provisions of § 248.111; or

(2) A State agency from collecting fees normally associated with providing and processing financing insured under part 241 of this chapter.

§ 248.179 Consultation with other interested parties.

The Commissioner shall confer with any appropriate State or local government agency to confirm any State or local assistance that is available to achieve the purposes of subpart B of this part and shall give consideration to the views of any such agency when making determinations under subpart B of this part. The Commissioner shall also confer with appropriate interested parties that the Commissioner believes could assist in the development of a plan of action that best achieves the purposes of subpart B of this part.

§ 248.181 Notice to tenants.

Except as provided in §§ 248.105 and 248.133, with respect to the first and second notices of intent, with regard to all provisions of subpart B of this part which mandate that information or material be given to the tenants, by the Commissioner, the owner, or a qualified purchaser, or other party, this requirement shall be satisfied where the notifying entity:

(a) Posts a copy of the information or material in readily accessible locations within each affected building, or posts notices in each location describing the information or material and specifying a location, as convenient to the tenants as is reasonably practical, where a copy may be examined and copied during reasonable hours; and

(b) Supplies a copy of the information or material to a tenant representative, if any.

§ 248.183 Preemption of State and local laws.

(a) *In general.* No State or political subdivision of a State may establish, continue in effect, or enforce any law or regulation that:

(1) Restricts or inhibits the prepayment of any mortgage described in § 248.101 or the voluntary termination of any insurance contract pursuant to § 207.253 of this chapter on eligible low income housing projects;

(2) Restricts or inhibits an owner of such projects from receiving the authorized annual return provided under § 248.121;

(3) Is inconsistent with any provision of subpart B of this part, including any law, regulation, or other restriction that limits or impairs the ability of any owner of eligible low income housing to receive incentives authorized under subpart B of this part, including authorization to increase rental rates, transfer the project, obtain secondary financing, or use the proceeds of any such incentives; or

(4) In its applicability to low income housing is limited only to eligible low income housing for which the owner has prepaid the mortgage or terminated the insurance contract.

(b) *Effect.* Any law, regulation or restriction described in paragraph (a) of this section shall be ineffective and any eligible low income housing exempt from the law, regulation, or restriction, only to the extent that it violates the provisions of this section.

(c) *Law of general applicability; contractual restrictions.* This section shall not prevent the establishment, continuing in effect, or enforcement of any law or regulation of any State or political subdivision of a State not inconsistent with the provisions of subpart B of this part and relating to building standards, zoning limitations, health, safety, or habitability standards for housing, rent control, or conversion of rental housing to condominium or cooperative ownership, to the extent such law or regulation is of general applicability to both projects receiving Federal assistance and nonassisted projects. This section shall not preempt, annul, or alter any contractual restrictions or

obligations existing before November 28, 1990 or voluntarily entered into by an owner of eligible low income housing on or after that date, and that limit or prevent that owner from prepaying the mortgage on the project or terminating the mortgage insurance contract.

15a. The subpart heading for newly designated subpart C is revised to read as follows:

Subpart C -- Prepayment and Plans of Action Under the Emergency Low Income Preservation Act of 1987

16. In § 248.213, paragraph (b)(9) is redesignated as paragraph (b)(10) and a new paragraph (b)(9) is added to read as follows:

§ 248.213 Plan of action.

* * * * *

(b) * * *

(9) A list of any waivers requested by the owner pursuant to § 248.7 of this part; and

* * * * *

17. Section 248.221 is amended by adding new paragraphs (c) and (d) to read as follows:

§ 248.221 Approval of a plan of action that involves termination of low income affordability restrictions.

* * * * *

(c) There are no open audit findings, open findings of noncompliance with title VI of the Civil Rights Act of 1964 *(42 U.S.C. 2000d);* the Fair Housing Act *(42 U.S.C. 3601*-3619); Executive Order 11063 (3 CFR 1959-1963 comp., p. 652); the Age Discrimination Act of 1975 *(42 U.S.C. 6101*-6107); section 504 of the Rehabilitation Act of 1973 *(29 U.S.C. 794);* and all regulations promulgated under such statutes and authorities (including, but not limited to, 24 CFR part 100), or outstanding violations of the regulatory agreement.

(d) Any plan of action approved under this section shall specify actions that the Commissioner and the owner shall take to ensure that tenants displaced as a result of the termination of low income affordability restrictions are relocated to affordable housing.

18. Section 248.233 is amended by adding a new paragraph (f) to read as follows:

§ 248.233 Approval of a plan of action that includes incentives.

* * * * *

(f) The Commissioner shall not approve a plan of action under this section if there are open findings of noncompliance with title VI of the Civil Rights Act of 1964 *(42 U.S.C. 2000d);* the Fair Housing Act *(42 U.S.C. 3601*-3619); Executive Order 11063 (3 CFR 1959-1963 comp., p. 652); the Age Discrimination Act of 1975 *(42 U.S.C. 6101*-6107); section 504 of the Rehabilitation Act of 1973 *(29 U.S.C. 794);* and all regulations promulgated under such statutes and authorities, or if there are open audit findings with respect to violations of the regulatory agreement.

57 FR 11992

19. In § 248.234, paragraph (c) is redesignated as paragraph (d), and a new paragraph (c) is added to read as follows:

§ 248.234 Section 8 rental assistance.

* * * * *

(c) The approved plan of action shall specify actions that the Commissioner and the owner shall take to ensure that any tenants displaced as a result of actions taken under paragraph (b) of this section are relocated to affordable housing.

* * * * *

§ 248.235 [Removed]

20. Section 248.235 is removed.

20a. A new subpart D (consisting of §§ 248.300 through 248.319) is added to read as follows:

Subpart D -- State Preservation Project Assistance

248.300 General.

248.301 Initial application.

248.303 Approval of a State agency's initial application.

248.305 Applicability of subpart B of this part.

248.307 Authority to process and approve notices of intent and plans of action.

248.311 Notice of intent.

248.315 Preservation agreements.

248.319 Application for assistance.

Subpart D -- State Preservation Project Assistance

§ 248.300 General.

Upon application by a State agency or a local public housing agency, the Commissioner may make available assistance for use in preventing the loss of housing affordable for low and moderate income families that is assisted under a State program under the terms of which the owner may prepay a State assisted or subsidized mortgage on such housing.

§ 248.301 Initial application.

A State agency shall make an initial application to the Commissioner which:

(a) Describes the manner by which the State housing program provides mortgage assistance or subsidy to private mortgagors to provide housing opportunities for low and moderate income families;

(b) Includes copies of the authorizing legislation, any implementing regulations and any administrative guidance provided to owners;

(c) Includes a comprehensive description of the terms and conditions under which a private owner may prepay the assisted or subsidized mortgage without the prior consent of the State agency;

(d) Includes a complete set of pro forma mortgage and/or regulatory documents which evidence an owner's ability to prepay the assisted or subsidized mortgage without the consent of the State agency;

(e) Includes a list of all properties assisted under the State or local housing program whose owners are eligible to prepay the assisted or subsidized mortgages without the consent of the State agency.

§ 248.303 Approval of a State agency's initial application.

(a) The Commissioner will evaluate the State agency's application and will notify the State agency within 90 days of receipt that the program and properties qualify under subpart D of this part or that the program and properties do not qualify under subpart D of this part.

(b) If the Commissioner determines that the program and projects do not qualify under subpart D of this part, it will state the reasons why the program and properties do not qualify and will give the State agency an opportunity to provide additional information, as the Commissioner determines, which would assist the Commissioner in qualifying the program and properties.

§ 248.305 Applicability of subpart B of this part.

The provisions of subpart B of this part shall be applicable to any application of a State agency or local housing authority for assistance under subpart D of this part, except the following provisions:

Sec.

248.103 General prepayment limitation.

248.105 Notice of intent.

248.131 Information from the Commissioner: Only paragraph (a).

248.141 Criteria for approval of a plan of action involving prepayment and voluntary termination.

248.153 Incentives to extend low income use: Only paragraphs (a)(7), (d) and (e).

248.165 Assistance for displaced tenants.

248.169 Permissible prepayment or voluntary termination and modification of commitments.

248.173 Resident homeownership program: Only paragraph (s).

248.177 Delegated responsibility to State agencies.

§ 248.307 Authority to process and approve notices of intent and plans of action.

(a) *Delegation of authority.* State agencies which regulate or otherwise supervise owners of projects with State assisted or subsidized mortgages shall have the authority, reserved to the Commissioner under subpart B of this part, to process and approve all notices of intent and plans of action submitted to the State agency or local housing authority under subpart D of this part. State agencies may redelegate such authority to local housing authorities at their discretion.

(b) *Designation of processing agency.* The Executive Director of the State agency whose State assisted or subsidized mortgage program has been approved under § 248.303 shall inform all owners of projects with State assisted or subsidized mortgages that the State agency or a designated local housing authority shall accept and process notices of intent and plans of action.

§ 248.311 Notice of intent.

(a) *Eligibility for filing.* An owner of a project with a State assisted or subsidized mortgage intending to extend the low income affordability restrictions of the housing in accordance with § 248.153 or transfer the housing to a qualified purchaser under § 248.157 may file a notice of intent.

(b) *Filing with the State agency.* The notice of intent shall be filed with the agency specified in § 248.307(b) or the agency which regulates or otherwise supervises the State assisted or subsidized mortgage. The notice of intent shall also request the tenants to notify the owner and the State agency of any individual or organization that has been designated or retained by the tenants to represent the tenants with respect to the actions to be taken under subpart B and subpart D of this part.

(c) *Filing with HUD, mortgagee and tenants.* The owner simultaneously shall file the notice of intent with the local HUD field office having jurisdiction over the area in which the project is located and with the mortgagee, if any. In addition, the owner shall deliver a copy of the notice of intent to each tenant in the project and to any tenant representative, if any, known to the owner, and shall post a copy of the notice of intent in readily accessible locations within each affected building of the project. The copies of the notice of intent delivered to the tenants and the tenant representative shall include a summary of possible outcomes of the filing which shall be furnished by the State agency. Upon the request of any non-English speaking tenants residing in the affected project, the owner shall tabulate the number and type of translations needed by the tenants and request the State agency to provide the appropriate translations. The owner shall deliver a copy of the translated notice of intent to all of the tenants who requested such a translation. The failure of an owner to comply with any non-federal notice requirements shall not invalidate the notice of intent.

§ 248.315 Preservation agreements.

(a) *Agreements required.* Owners of projects with State assisted or subsidized mortgages whose plans of action have been approved under § 248.307 shall enter into agreements, contracts and/or mortgage modifications with the State agency or local housing authority to maintain the housing as affordable to tenants in accordance with § 248.145. Such

agreements may provide for the renewal of any assistance made available under § 248.319(c).

(b) *Term of agreement.* Preservation agreements shall be coterminous with the expiration of any assistance provided under § 248.153 and made available in accordance with § 248.319(c).

§ 248.319 Application for assistance.

(a) *Application for assistance.* State agencies or local housing authorities shall submit an application for assistance in a form prescribed by the Commissioner with the local HUD field office having jurisdiction over the project. The application shall include:

(1) A copy of the approved plan of action, including all applicable notices of intent;

(2) A copy of any worksheet or other document which demonstrates the extension and transfer preservation values of the project, the Federal cost limits (including the determination of relevant local market rents if applicable), and the preservation rents;

(3) A request for each incentive required as part of the approved plan of action and the amount thereof;

(4) A demonstration and certification by the Executive Director of the State agency or local housing authority that the assistance and incentives requested as part of the approved plan of action do not exceed the level of incentives required for a similarly situated project which is eligible low income housing as defined in subpart B of this part;

(5) Copies of proposed agreements, contracts and mortgage modifications proposed pursuant to § 248.315.

(b) *Notification of approval.* Not later than 90 days after receipt of the application for assistance, the local HUD field office shall notify the Executive Director of the State agency or local housing authority of the approval or disapproval of the application. If the application is disapproved, the notification shall state the reasons therefor and afford the State agency or local housing authority the opportunity to revise the application to make it approvable.

(c) *Funding.* After approving the State agency's or local housing authority's application for assistance, the HUD field office shall make the assistance in the approved application available to the State agency or local housing authority within the time frames specified in § 248.169.

(d) *Agreements.* The State agency or local housing authority shall provide the local HUD field office with a copy of all agreements entered into with the owner pursuant to § 248.315.

(e) *Section 8 contract administration.* Any contract for Section 8 assistance made pursuant to the approved plan of action, the State agency's or local housing authority's application for assistance and the regulations at 24 CFR 886, subpart A shall be administered by the State agency or local housing authority pursuant to § 886.120 of this title.

Dated: March 6, 1992.

Jack Kemp,

Secretary.

[FR Doc. 92-7512 Filed 4-7-92; 8:45 am]

BILLING CODE 4210-32-M

LEXSEE 56 FR 20262

DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

Office of the Secretary

AGENCY: Office of the Secretary, HUD.

24 CFR Parts 50, 219, 221, 241, and 248

Prepayment of a HUD-Insured Mortgage by an Owner of Low Income Housing

[Docket No. R-91-1513; FR-2978-P-01]

RIN 2501-AB14

*56 FR 20262*

May 2, 1991

ACTION: Proposed rule.

SUMMARY: This proposed rule sets forth HUD's procedures and standards for implementing subtitle A of title VI of the Cranston-Gonzalez National Affordable Housing Act of 1990, entitled the "Low Income Housing Preservation and Resident Homeownership Act," which repeals and replaces the Emergency Low Income Housing Preservation Act of 1987. This rule is intended to create a permanent and comprehensive program which preserves privately-owned, low income housing projects while not unduly restricting the owners' mortgage prepayment rights. In localities where there is an adequate supply of low income housing, prepayment of the mortgage would not otherwise undermine public policy objectives set forth in the statute, and prepayment would not result in a material increase in the economic hardship of the current tenants, owners of projects subject to low income affordability restrictions may terminate these restrictions and prepay their HUD-insured mortgages or terminate their mortgage insurance contracts. In areas where the supply of low income housing is inadequate, the low income affordability restrictions must be maintained on the projects for their remaining useful life, but owners may receive a fair market return on their investment through the receipt of incentives provided by HUD or through the transfer of the property to other entities which agree to continue the low income affordability restrictions. This rule provides an opportunity for homeownership of eligible low income housing projects by the tenants through resident homeownership programs. It also encourages the transfer of low income housing projects to nonprofit organizations and State and local government entities, by giving these entities the first opportunity to purchase available projects.

DATES: *Comment due date:* All written comments must be received on or before July 1, 1991. The Department urges commenters to submit comments as soon as possible after the publication of this proposed rule in order to receive full consideration.

ADDRESSES: Submit written comments to the Office of the General Counsel, Rules Docket Clerk, room 10276, Department of Housing and Urban Development, 451 7th Street SW., Washington, DC 20410. Communications should refer to the above docket number and title. A copy of each communication submitted will be available for public

inspection and copying during regular business hours (7:30 a.m.-5:30 p.m. Eastern Standard Time) at the above address. As a convenience to commenters, the Rules Docket Clerk will accept brief public comments transmitted by facsimile ("FAX") machine. The telephone number of the FAX receiver is (202) 708-4337. (This is not a toll-free number.) Only public comments of six or fewer total pages will be accepted via FAX transmittal. This limitation is necessary to assure reasonable access to the equipment. Comments sent by FAX in excess of six pages will not be accepted. Receipt of FAX transmittals will not be acknowledged, except that the sender may request confirmation of receipt by calling the Rules Docket Clerk at voice (202) 708-2084; TDD (202) 708-4594. (These are not toll-free numbers).
FOR FURTHER INFORMATION CONTACT: Kevin J. East, Office of Multifamily Housing Preservation and Property Disposition, Department of Housing and Urban Development, 451 7th Street SW., Washington, DC 20410. Telephone, voice (202) 708-2300; TDD (202) 708-4594. (These are not toll-free numbers.)

**TEXT:** SUPPLEMENTARY INFORMATION:

The information collection requirements contained in the rule have been submitted to the Office of Management and Budget for review under the provisions of the Paperwork Reduction Act of 1980 *(44 U.S.C. 3501*-3502). No person may be subject to a penalty for failure to comply with these information collection requirements until they have been approved and assigned an OMB control number. The OMB control number, when assigned, will be announced by separate notice in the Federal Register.

Background

During the late 1960's and early 1970's several thousand multifamily projects were built with mortgages insured or assisted by HUD under sections 221(d)(3) and 236 of the National Housing Act. HUD's regulations at 24 CFR 221.524 and 236.30 provide that in the case of a project owned by a limited distribution mortgagor that is not receiving payments under a rent supplement contract executed pursuant to 24 CFR part 215, the owner is permitted to prepay the mortgage debt at the expiration of 20 years after final endorsement of the mortgage for insurance. (The mortgage term of such mortgages is 40 years.) Prepayment of the mortgage has the effect of terminating the HUD-imposed low income affordability restrictions which ensure that the project is maintained for very low, low and moderate income tenants. Over the next 15 years, the owners of 360,000 units of multifamily projects insured or assisted under parts 236 and 221 of this title will become eligible to prepay their mortgage loans and convert their properties to market rate rental housing or other purposes. Considerable concern has been raised about the risk of losing viable low income projects due to owners exercising their option to prepay and convert their projects to more profitable use.

In response to these concerns, Congress initially enacted an emergency measure, title II of the Housing and Community Development Act of 1987, the Emergency Low Income Housing Preservation Act of 1987 (the "1987 Act"). The final rule implementing the 1987 Act, part 248 of title 24 of the CFR, was published on September 21, 1990 at *55 FR 38943* (the "existing rule"). The 1987 Act placed constraints on an owner's right of prepayment and created incentives to either encourage owners to retain the low income affordability restrictions in exchange for receiving a greater return on their investment or to transfer the property to purchasers who would agree to retain the low income affordability restrictions. The fundamental principles of the 1987 Act were that the housing should be preserved for its intended beneficiaries and that owners should be guaranteed a fair and reasonable return on their investment through new incentives.

The 1987 Act was intended to be temporary in nature and was designed to give Congress time to fashion a permanent program for the preservation of existing low income housing projects. Congress' permanent solution to this problem is embodied in title VI of the Cranston-Gonzalez National Affordable Housing Act, Public Law 101-625, enacted November 28, 1990. Subtitle A of title VI, the Low Income Housing Preservation and Resident Homeownership Act of 1990 (the "1990 Act"), repeals and replaces the 1987 Act.

The 1990 Act provides permanent authority to deal with HUD-assisted projects where owners have the option of

prepaying their mortgage loans. Its basic objectives are to assure that most of the "prepayment" inventory of assisted housing remains affordable to low income households and to provide opportunities for tenants to become homeowners, while at the same time fairly compensating owners for the value of their properties. This proposed rule implements subtitle A of title VI of the 1990 Act.

The prepayment process begins under the 1990 Act when the owner of eligible low income housing files a notice of intent. If the project is located in an area where there is an adequate supply of low income housing, the owner may seek to prepay the mortgage and terminate low income affordability restrictions pursuant to the standards set forth in section 218 of the statute and § 248.141 of the proposed rule. In all other cases, HUD and the owner would each hire an appraiser to estimate the value of the project as market rate rental housing (the "extension preservation value") and the value of the project at its highest and best use (the "transfer preservation value"). If HUD and the owner cannot agree on the appraised values based on the first two appraisals, a third appraiser would be hired jointly by HUD and the owner.

If the owner wants to retain the project, it would be entitled to receive incentives that would generate sufficient project income to enable the owner to receive an annual authorized return of 8 percent of its equity in the project, measured on the basis of the extension preservation value less outstanding debt. The total project income would not exceed the Federal cost limit, i.e., the greater of 120 percent of the section 8 fair market rent or 120% of the prevailing rents in the relevant local market area. The annual authorized return could be received in the form of allowable distributions, an equity loan, or both. As a condition to receiving such incentives, the owner would be obligated to maintain the project as low income housing for the project's remaining useful life.

If the owner seeks to sell the project, and the transfer preservation rent (i.e., the aggregate rent stream projected to be necessary to support the costs of sale, rehabilitation, debt service of the federally-assisted mortgage, operating expenses and adequate reserves) does not exceed the "Federal cost limit," the owner would offer the project for sale under § 248.157 for a price (including assumption of the federally-assisted mortgage) that may not exceed the transfer preservation value. The first 12 months of the sale period would be restricted to "priority purchasers," i.e., resident councils organized to purchase the project under a homeownership program, or any nonprofit organization or State or local agency that agrees to maintain low income affordability restrictions for the remaining useful life of the project. If, at the end of the 12-month period, the owner does not accept any bona fide offer from a priority purchaser, the owner must offer the project for sale to any qualified purchaser, including priority purchasers, for 3 months. If an offer to purchase is accepted, HUD would provide incentives, grant assistance, or both, sufficient to enable the purchaser to acquire the project, pay debt service on the federally-assisted mortgage and on any rehabilitation loan, meet operating expenses and establish adequate reserves, receive a return of 8 percent on any cash investment made by the purchaser and, in the case of a priority purchaser, receive reimbursement for transaction expenses. As in the case of an owner that retains the project and receives incentives, the purchaser would be obligated to maintain the project as low income housing for the project's remaining useful life. If the transfer preservation rent exceeds the Federal cost limit, the owner would offer the project for sale under § 248.161. The sale procedure under § 248.161 is similar to that under § 248.157, except that the owner is required to accept any bona fide offer to purchase the project for the transfer preservation value, whereas an owner under § 248.157 may elect not to accept a bona fide offer. Any amount necessary to fund the transfer, over and above incentives that can be supported by project rental income at the Federal cost limit, would be funded by a capital grant under § 248.161(d). Under either § 248.157 or § 248.161, if the owner does not receive a bona fide offer, the owner may prepay the mortgage and terminate the low income affordability restrictions, subject only to certain protections for current tenants.

Under § 248.173, if a project is being offered for sale under either § 248.157 or § 248.161, a "resident council" may seek to purchase the project under a resident homeownership program. HUD would provide grant assistance sufficient to pay the purchase price, transaction expenses, organizational costs, relocation expenses, training costs and establishment of adequate reserves for replacements and, if necessary, operating reserve escrows.

Part 241

The proposed rule also includes numerous revisions to part 241, "Supplementary Financing for Insured Project Mortgages." Section 602(a) of the 1990 Act substantially revised the provisions of section 241 of the National Housing Act, *12 U.S.C. 1715z-6*(f). As explained below, the proposed rule revises part 241, subparts E and F to include provisions that are applicable to owners proceeding under either the 1987 Act or the 1990 Act.

Amendments to Section 250 of the National Housing Act

Sections 602 (b) and (c) of the 1990 Act amend section 250 of the National Housing Act, *12 U.S.C. 1715z-15*, by deleting the former sections 250 (b) and (c), which required HUD to provide a priority for assistance under the section 8 and Flexible Subsidy programs to owners of subsidized projects in order to induce such owners not to prepay their mortgages. Sections 250 (b) and (c) were precursors of the 1987 Act and the 1990 Act, and were essentially rendered obsolete by the later-enacted statutes.

In addition, section 602(b) adds language to section 250 providing that a mortgagee may foreclose a mortgage on, or acquire by deed in lieu of foreclosure, any eligible low income housing project, as defined in section 229 of the 1990 Act, only if the mortgagee also conveys title to the Secretary in connection with a claim for insurance benefits. This amendment appears to be an attempt to impose the same restriction governing foreclosure that is contained in section 211(b) of the 1990 Act to projects whose mortgages have not yet reached the 18th year following final endorsement and thus are not yet subject to section 211(b). (Such projects are instead subject to section 250(a)). The Department has not promulgated regulations implementing section 250, and thus this proposed rule does not include any provisions implementing the amendments to section 250 in sections 602 (b) and (c).

Other Preservation Provisions of the 1990 Act

Subtitle B of title VI contains other preservation provisions concerning: (a) Advances by owners to finance capital improvements in subsidized projects; (b) increases in rent levels for subsidized projects; and (c) assistance to prevent prepayment under State mortgage programs. These provisions will be implemented through a separate rule.

Amendments Implementing HUD Reform Act Provisions

The proposed rule also includes amendments that implement certain provisions of the Department of Housing and Urban Development Reform Act of 1989, Public Law 101-235 (the "HUD Reform Act"), that were not implemented in the existing rule. The statutory provisions and the corresponding provisions of the proposed rule are as follows:

1. Section 219.325 has been amended to implement section 203(a)(2) of the HUD Reform Act, which authorizes HUD to adjust the terms of a capital improvement loan (for example, by deferring repayment of the debt as long as the low and moderate income character of the project is maintained) in connection with a plan of action.

2. Sections 248.221 and 248.234 have been amended to implement section 203(d) of the HUD Reform Act, which provides that any plan of action shall specify actions that the Secretary and the owner shall take to ensure that any tenants displaced as a result of (a) a plan of action that involves termination of low income affordability restrictions, or (b) modifications of a plan of action due to the Secretary's inability to extend section 8 assistance for the full term of the plan of action, are relocated to affordable housing.

3. Section 241.166 has been added to implement section 204(b) of the HUD Reform Act, which provides that (a) when underwriting a rehabilitation loan under part 241, subpart A, on a subsidized project, HUD may assume that any rental assistance provided for servicing the additional debt will be extended for the term of the loan; and (b) the holder of an insured mortgage that is senior to the rehabilitation loan may not withhold its consent to such a loan.

Public Comment Period

Section 604(d) of the 1990 Act provides that the Secretary shall, "subject to the provisions of section 553 of title 5" of the United States Code, publish proposed rules to implement the 1990 Act within 90 days of the date of enactment, and also provides that not later than 45 days after the expiration of the 90-day period, the Secretary shall issue an interim or final rule to implement the 1990 Act. The Department construes the reference to *5 U.S.C. 553* as a direction that HUD allow a suitable period for the receipt and consideration of public comments on the proposed rule. Accordingly, the Department has provided for a 60-day period after the publication of this proposed rule for the submission of public comments. On the basis of the public comments, an interim or final rule will be published within 45 days after the expiration of the 60-day comment period, and will replace the existing rule.

Description of the Proposed Rule

The proposed rule, as printed herein, contains three distinct subparts. It incorporates subpart B of the existing rule, which establishes procedures and standards for prepayments and plans of action under the 1987 Act, as subpart C, and implements the 1990 Act in a new subpart B. Each of these subparts is independent of the other. Subpart A of this rule contains general provisions relating to both subparts B and C and explains which subpart owners of eligible low income housing may proceed under in electing to prepay their mortgages, receive incentives or transfer the project.

*Section 248.1 (Purpose)*

The purpose of this proposed rule is based primarily on section 202(b) of the 1987 Act and § 248.101 of the existing rule. The basic purpose is to strike a balance between the continuing need for low income housing units and private owners' contractual right to prepay their HUD-insured or HUD-assisted mortgages. The proposed rule adds the purpose of facilitating the sale of projects to tenants under tenant homeownership programs, and also clarifies that the rule is intended to preserve housing for very low, low and moderate income tenants.

*Section 248.3 (Applicability)*

The provisions of the proposed rule are applicable to any project deemed eligible low income housing on or after November 1, 1987, with the exception of any project covered by a homeownership program approved by HUD under title IV, Subtitle B of the Cranston-Gonzalez National Affordable Housing Act, "HOPE for Homeownership of Multifamily Units." This exception is based on section 427 of the Act. (As explained below, the definition of "eligible low income housing" is slightly different for purposes of subpart B than the definition for purposes of subpart C.) A notice of program guidelines for HOPE for Homeownership for Multifamily Units Program (the "HOPE Program Guidelines") implementing title IV was published in the Federal Register on February 4, 1991 at *56 FR 4436*.

*Section 248.5 (Election to Proceed Under Subpart B or C)*

After January 1, 1991, owners of eligible low income housing who submit notices of intent to prepay their HUD-insured or assisted mortgage, terminate the mortgage insurance contract, extend the low income affordability restrictions on the project, or transfer the project to a qualified purchaser shall proceed under the provisions of subpart B of the proposed rule.

However, pursuant to section 604 of the 1990 Act, the proposed rule establishes a transition period during which certain owners may choose to comply with the provisions of either subpart B or subpart C. Section 604(a) of the 1990 Act provides that an owner of eligible low income housing that files a notice of intent under either the 1987 Act or the