**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ANAHEIM GARDENS, et al., Plaintiffs, v. THE UNITED STATES, Defendant. | ) | No. 93-655C (Judge Margaret M. Sweeney) |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to Rule 56(h)(2) of the Rules of the Court of Federal Claims, Plaintiffs, Joseph R. Biafora, Stephi Biafora, Thetford Properties III, L.P., and C-W Associates, submit the following responses to Defendant's proposed findings of fact.

1. Modern national housing policy began in the New Deal era with the passage of the National Housing Act of 1934. The Government initially provided low-income housing by subsidizing projects that were developed, owned, and managed by local public housing authorities. However, during the 1960's, to encourage private developers to construct, own, and manage low- and moderate-income housing, Congress enacted two programs – the section 221(d)(3) program and the section 236 program – that authorized the Federal Housing Administration, and later HUD, to provide mortgage insurance and other financial incentives. See Cienega Gardens v. United States, 331 F.3d 1319, 1234 (Fed. Cir. 2003).

**Response**: The proposed finding of fact is a citation to a judicial opinion, not an assertion of a finding of fact properly supported by an affidavit, deposition testimony or other

discovery response. Nonetheless, for purposes of this motion only, Plaintiffs agree with the asserted "proposed finding of fact."

2. Under the section 221(d)(3) program, developers received below-market mortgage interest rates. 12 U.S.C. 17151(d)(3). Under the section 236 program, developers received market-rate mortgages with an interest subsidy. 12 U.S.C. § 1715z-1.

**Response**: The proposed finding of fact is a citation to law, not an assertion of a finding of fact properly supported by an affidavit, deposition testimony or other discovery response. Nonetheless, for purposes of this motion only, Plaintiffs agree with the asserted "proposed finding of fact."

3. When obtaining a HUD-insured mortgage to develop a project under the section 221(d)(3) or 236 programs, the owner generally executed a deed of trust note payable to a private lending institution. The note evidenced a loan made pursuant to an agreement between the owner and the lending institution. Payment of the indebtedness was secured by a deed of trust on the subject property. The repayment term of the loan was generally forty years and the note specified the terms on which prepayment of the loan could occur. See Cienega Gardens, 331 F.3d at 1234.

**Response:** Plaintiffs disagree with the proposed finding of fact, to the extent it is one, because it is a citation to case law, as stated. It is not true that in all cases the deed of trust note specified the terms on which prepayment of the loan could occur since HUD regulations governed prepayment rights. *See, e.g.*, PA at 001-31; 054-57; 064-191;192-278; 279-81.

4. Prepayment was also limited by Federal regulations, which prohibited prepayment of the insured debt without HUD approval for 20 years after final endorsement of the project's

mortgage insurance. See, e.g., 24 C.F.R. § 221.524(a) (1970). The regulations governing prepayment were subject to amendment by HUD. See, e.g., 24 C.F.R. § 221.749 (1970).

**Response**: Plaintiffs disagree with the proposed finding of fact as stated. Prepayment of a government insured mortgage was not "limited" by § 221.524. In some cases, the cited regulation was consistent with prepayment terms stated in a mortgage note, in which case, the regulation did not "limit" anything. In other cases, the regulation was inconsistent with the language of a mortgage note, but rather than "limiting" prepayment, the regulation served to permit prepayment of the mortgage. *See generally* PA at 064-191; 073.

In addition, the proposed finding as stated is an incomplete characterization of the regulation. It is true that the regulation prohibited prepayment of an insured debt without HUD approval for 20 years after final endorsement of a project's mortgage. However, the regulation also permitted, among other things, prepayment of an insured § 221(d)(3) mortgage any time after 20 years from the date of HUD's final endorsement of the mortgage provided that the project was not receiving rent supplement assistance. *See* PA at 054-57.

5. To obtain Federal mortgage insurance, as well as other taxpayer-funded benefits, the developer entered into a "regulatory agreement" with HUD in which the owner accepted specific restrictions on the mortgaged property, including restrictions on tenant income, allowable rental rates, and cash distributions from project income. The regulatory agreement remained in force as long as the property was subject to the Government-insured mortgage. See Cienega Gardens, 331 F.3d at 1234-35.

**Response:** The proposed finding of fact is a citation to a judicial opinion, not an assertion of a finding of fact properly supported by an affidavit, deposition testimony or other

discovery response. Nonetheless, for purposes of this motion only, Plaintiffs agree with the asserted "proposed finding of fact."

6. The owners of Milwood Apartments, Joseph R. Biafora and Stephi Biafora, executed a deed of trust, a deed of trust note, and a regulatory agreement on January 4, 1971. DA1-11.

**Response:** Plaintiffs disagree with the proposing finding of fact as stated. The owners did not execute a "deed of trust" in addition to a deed of trust note. Properly stated, the finding should read that "[t]he owners of Milwood Apartment, Joseph R. Biafora and Stephi Biafora, executed a deed of trust note and a regulatory agreement on January 4, 1971." DA 1-11.

7. The loan evidenced by the deed of trust note was provided by Wells Fargo Bank, N.A. DA1. The loan's final maturity date was December 1, 2011. DA1.

**Response:** Plaintiffs agree with the proposed finding of fact as stated.

8. The final endorsement for Federal mortgage insurance was provided by HUD on January 13, 1972. DA2.

**Response:** Plaintiffs agree with the proposed finding of fact as stated.

9. Rider A to the deed of trust note concerns prepayment of the insured debt. DA4. The rider provides that "[t]he debt evidence by this Deed of Trust Note may not be prepaid, in whole or in part, prior to the final maturity date hereof, with the prior written approval of the Federal Housing Commissioner." DA4.

**Response:** Plaintiffs agree with the proposed finding of fact as stated.

10. The owner of Parthenia Manor Apartments, B&C Company, executed a deed of trust, a deed of trust note, and a regulatory agreement on December 1, 1970. DA12-22.

**Response**: Plaintiffs disagree with the proposed finding of fact as stated. The owners did not execute a "deed of trust" in addition to a deed of trust note. Properly stated, the finding

should read that "[t]he owner of Parthenia Manor Apartments, B&C Company, executed a deed of trust note and a regulatory agreement on December 1, 1970." DA12-22.

11. The loan evidenced by the deed of trust note was provided by Union Bank. DA12. The loan has a final maturity date of May 1, 2012. DA12.

**Response:** Plaintiffs agree with the proposed finding of fact as stated.

12. The final endorsement for Federal mortgage insurance was provided by HUD on October 30, 1972. DA13.

**Response:** Plaintiffs agree with the proposed finding of fact as stated.

13. Rider A to the deed of trust note concerns prepayment of the insured debt. DA15. The rider provides that "[t]he debt evidenced by this Deed of Trust Note may not be prepaid, either in whole or in part, prior to the final maturity date hereof, without the prior written approval of the Federal Housing Commissioner." DA15.

**Response:** Plaintiffs agree with the proposed finding of fact as stated.

14. The owners of Market North II Apartments, E.N. Richards and R.A. Bryan, Jr., executed a deed of trust, a deed of trust note, and a regulatory agreement on July 1, 1969. DA23-24, 70.

**Response:** Plaintiffs disagree with the proposed finding of fact to the extent it characterizes Richards and Bryan as the owners of Market North II Apartments. Richards and Bryan are former owners. *See* Defendant's Proposed Finding of Fact ¶ 18. Additionally, the proper name of the property is Market North Apartments #2. *See* DA23.

15. The loan evidenced by the deed of trust note was provided by Cameron-Brown Company. DA23. The loan has a final maturity date of April 1, 2011. DA23.

**Response**: Plaintiffs agree with the proposed finding of fact as stated.

16. The final endorsement for Federal mortgage insurance was provided by HUD on July 28, 1970.

**Response**: Plaintiffs agree with the proposed finding of fact as stated.

17. The preprinted deed of trust note states the "[p]rivilege is reserved to pay the debt in whole or in an amount equal to one or more monthly payments on principal next due, on the first day of any month prior to maturity upon at least thirty (30) days prior written notice to the holder." DA23. However, the deed of trust note contains the following typed addition: "Notwithstanding the prepayment privilege stated herein, no prepayments, total or partial, may be made without the prior written approval of the Federal Housing Commissioner." DA23.

**Response**: Plaintiffs agree with the proposed finding of fact as stated.

18. Thetford Properties III, L.P., purchased the Market North II Apartments project and assumed the project's Government-insured mortgage on June 15, 1983. DA25-70.

**Response**: Plaintiffs agree with the proposed finding of fact as stated, except that the proper property name is Market North Apartments #2. DA23.

19. The owners of 100 Centre Plaza, B-L Associates, executed a mortgage, a mortgage note, and a regulatory agreement on July 1, 1970. DA71-83.

**Response**: Plaintiffs agree with the proposed finding of fact, except that they disagree with that part of the assertion that states that B-L Associates was the owner of 100 Centre Plaza. The owner of 100 Centre Plaza was C-W Associates. DA 71.

20. The loan evidenced by the mortgage note was provided by the Massachusetts Housing Finance Agency ("MHFA"). DA71. Under the original mortgage documents, the owner had no contractual right to prepay until July 1, 1990. See DA71, 80-81.

**Response**: Plaintiffs agree with the proposed finding of fact as stated.

21. On August 3, 1988, B-L Associates and the MHFA executed a disposition agreement, a new regulatory agreement, and a "Modification and Restatement of Mortgage, Security Agreement and Assignment of Leases and Rents." DA84-113. The modified mortgage provided that "[p]rior to twenty (20) years from the date hereof, the Borrower may not prepay the principal amount of the Mortgage Note in advance of the amortization schedule established by the Agency, unless the Agency consents to prepayment and the purpose of prepayment is to convert the ownership of the Project to cooperative or condominium ownership by occupants." DA111.

**Response**: Plaintiffs agree with the proposed finding of fact, except that they disagree with that part of the assertion that states that B-L Associates and MHFA entered into the cited documents. The parties to the documents were MHFA and C-W Associates. DA 84-113.

22. Under the terms of the modified mortgage, the owner of 100 Center *[sic]* Plaza could not prepay and terminate affordability restrictions until August 3, 2008. DA111.

**Response**: Plaintiffs disagree with the proposed finding of fact as stated. The terms of the modified mortgage made it appear that the owner could not prepay and terminated affordability restrictions until August 3, 2008, but that was not actually the case. *See* PA at 338-81.

23. On December 27, 1990, the owner and MHFA amended the modified mortgage to permit prepayment with respect to 71 of the project's 216 units. DA116-21. In so doing, the parties stipulated that the owner would obtain incentives from HUD to maintain low-income affordability restrictions on the units, rather than prepay and terminate low-income affordability restrictions. DA117.

**Response**: Plaintiffs agree with the first sentence in the proposed finding of fact as stated. Plaintiffs disagree with the second sentence of proposed finding of fact as stated. The plain language of the amendment does not suggest or indicate that there was a stipulation to obtain incentives, rather than prepay and terminate low-income affordability restrictions. The amendment to the mortgage expressly permitted prepayment of the mortgage on 100 Centre Plaza. DA 117; *see also* PA at 361-77.

Dated: August 29, 2008

NIXON PEABODY LLP

/s/ Harry J. Kelly

Harry J. Kelly
401 9th Street N.W., Suite 900
Washington, D.C. 20004
P: (202) 585-8000
F: (202) 585-8080
hkelly@nixonpeabody.com

Attorney for Plaintiffs

**CERTIFICATE OF FILING**

I certify that on the 29th day of August 2008, a copy of "PLAINTIFFS' RESPONSE TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Harry J. Kelly
Harry J. Kelly