# In the United States Court of Federal Claims

No. 93-655 C
(Filed: September 14, 2011)

**************************************

ANAHEIM GARDENS et al.,   *
           *
     Plaintiffs,  *
           *
v.            *
           *
THE UNITED STATES,    *
           *
     Defendant.  *

**************************************

## RULING ON PLAINTIFFS' MOTION FOR LEAVE TO FILE A FIFTH AMENDED COMPLAINT

Before the court is plaintiffs' motion for leave to file a fifth amended complaint ("motion"), which was filed pursuant to Rule 15 of the Rules of the United States Court of Federal Claims ("RCFC"). Plaintiffs seek leave to file a fifth amended complaint for the purpose of expressly pleading the names of twenty-one additional properties that underlay the regulatory takings claims of plaintiffs Thetford Properties III, LP and Thetford Properties IV, LP.[1] Defendant opposes the motion, arguing that plaintiffs could have amended their complaint several times over the past sixteen years to include the additional Thetford properties but failed to do so. According to defendant, plaintiffs' delay is unprecedented, unexplained, undue, and highly prejudicial. The court determines that oral argument is unnecessary. For the reasons set forth below, plaintiffs' motion is granted.

## I. BACKGROUND

Unusual circumstances gave rise to the instant motion. In 1993, plaintiffs filed their original complaint, which asserted breach of contract and takings claims on behalf of twenty-five plaintiffs with respect to thirty properties insured by the United States Department of Housing and Urban Development ("HUD"). Thetford asserted claims on behalf of seven HUD-insured properties: (1) River Falls Apartments; (2) Market North II Apartments; (3) Deanswood Apartments; (4) Southgate Apartments; (5) Jefferson Court Apartments; (6) Glendale Court Apartments; and (7) Market North I Apartments. Plaintiffs amended their complaint four times between October 1993 and September 1997. At no time, however, did Thetford assert claims

---

[1] For convenience, the court refers to these two plaintiffs collectively as Thetford and the various properties at issue as Thetford properties.

with respect to any additional properties.[2]

In August 2000, the United States Court of Federal Claims ("Court of Federal Claims") dismissed plaintiffs' breach of contract claims for lack of privity and their takings claims as unripe. Plaintiffs appealed the dismissal of their regulatory takings claims. Six years later, in March 2006, the United States Court of Appeals for the Federal Circuit ("Federal Circuit") reversed the dismissal of plaintiffs' takings claims and remanded the case back to the Court of Federal Claims for discovery on the issue of ripeness. See Anaheim Gardens v. United States, 444 F.3d 1309 (Fed. Cir. 2006).

The parties served their first discovery requests in July 2006 and October 2006. Plaintiffs' requests included what they now describe as "an unambiguous definition of the 'Subject Properties' included in the litigation–i.e., a list of the properties involved by virtue of their ownership by the various named Plaintiffs." Mot. 2. The list of "Subject Properties" included twenty-three Thetford-owned properties, two of which were dismissed from the lawsuit, as indicated by the third amended complaint. See Pls.' Ex. C at 2 ¶ 2 (identifying all the Thetford properties listed in note 2, supra). In March 2007, six months after receiving the list of "Subject Properties" from plaintiffs and "prior to responding to any discovery requests," Opp'n 8, defendant objected to the inclusion of the additional Thetford properties because, in its view, those properties were not expressly identified in the fourth amended complaint and were therefore not part of the litigation:

Defendant objects to the plaintiffs' definition of "subject properties" as vague and overly broad insofar as it seeks information concerning projects that are not identified in the plaintiffs' fourth amended complaint, and seeks information concerning plaintiffs that declined to appeal the trial court's August 2000 dismissal to the Court of Appeals for the Federal Circuit. The defendant's response to plaintiffs' interrogatories is limited to the following projects: Anaheim Gardens, 1550 Beacon Plaza, Millwood Apartments, Parthenia Manor Apartments, Cedar Gardens, 100 Centre Plaza, Glenview Gardens Apartments, Waipahu Tower, Indian Head Manor Apartments, Halawa View Apartments, Metro West Apartments, Millwood Townhouses, Napa Park Apartments, Ontario Townhouses, The Palomar, Rock Creek Terrace Apartments, Sierra Vista I,

---

[2] The additional Thetford properties that are involved in the current–and, as described below, longstanding–dispute are: (1) Beaumont Avenue Apartments; (2) Coleridge Road Apartments; (3) Hardee Street Apartments; (4) Henry Street Apartments; (5) Holloway Court Apartments; (6) Icemorelee Apartments; (7) Johnson Court Apartments; (8) Millbank Court Apartments; (9) Person Court Apartments; (10) Raleigh North Apartments; (11) Tucker Street Apartments; (12) Young Avenue Apartments; (13) Calico Court Apartments; (14) Chowan Court Apartments; (15) Columbus Court Apartments; (16) Franklin Court Apartments; (17) Holiday Town Apartments; (18) Long Drive Apartments; (19) Oakwood Avenue Apartments; (20) Peachtree Court Apartments; and (21) Stewart's Creek Apartments.

Silverlake Village, River Falls Apartments, Market North Apartments II, Deanswood Apartments, Southgate Apartments, Jefferson Court Apartments, Glendale Court Apartments, Market North Apartments I, Su Casa Por Cortez, San Tomas Gardens and Foothill Plaza.  These projects are referred to as the "subject properties" in the defendant's interrogatory answers below.

Def.'s App. 170; see also Pls.' Ex. D at 1 (containing a March 27, 2007 letter from defense counsel to plaintiffs' counsel indicating that defendant "will be producing documents for those projects referenced in the definition of 'subject properties,' but only insofar as they are identified in paragraph seven of the Fourth Amended Complaint in Anaheim Gardens," and explaining that defendant "will not be producing documents relating to projects that are not at issue, i.e., projects not listed in the operative complaint").

On April 20, 2007, plaintiffs' counsel responded to the March 27, 2007 letter, stating that plaintiffs, utilizing the definition of "Subject Properties" contained in defendant's July 2006 discovery requests, "identified additional properties owned by Thetford III and Thetford IV that, although not listed in the complaint, have suffered the same taking and the same sort of damages as the other Thetford properties listed there."[3]  Def.'s App. 173-74 (emphasis added).  Plaintiffs' counsel justified his inclusion of the additional Thetford properties:

> [T]he Thetford partnerships were somewhat unique in that, unlike most owners of HUD-insured properties, the Thetford partnerships owned multiple properties. The plaintiffs themselves have not changed; in identifying these additional properties, they have simply specified in more detail the scope of the injury and damages that they alleged in their original complaint.  The plaintiffs have provided documents and other information responsive to your discovery requests with respect to these additional Thetford properties and we anticipate receiving responsive documents and information about them from the Government.  My notes indicate that you would review these properties and that we would have additional discussions after your receipt of this letter, at which time we can discuss a date for production of responses concerning these properties.

Id. at 174.  The parties apparently engaged in additional discussions, see id. at 178 (referencing defense counsel's April 26, 2007 letter and an April 27, 2007 telephone conversation), during which defendant again asserted that the court cannot "'entertain claims relating to projects that are not identified in the operative complaint in Anaheim Gardens,'" id. (quoting the April 26, 2007 letter), while plaintiffs contended otherwise, id. at 178-79.

In light of the parties' impasse and inability to resolve their discovery dispute, defendant, on May 8, 2007, moved for a protective order.  Plaintiffs, arguing that their discovery requests

---

[3]  Plaintiffs later withdrew their request for discovery related to six Thetford-owned projects based on the type of loan they had with the government.  See Def.'s App. 179.

were relevant, opposed defendant's motion for a protective order.  See Pls.' Opp'n Def.'s Mot.
Protective Order Or, Alternative, Mot. Amend Compl. 2-3 (arguing that the property listing set
forth in the complaint "was intended for illustrative purposes only and did not indicate that it was
intended to be an exhaustive list of the properties owned by the Thetford Plaintiffs," and
asserting that the complaint "put the Government on notice that Thetford III and IV were
plaintiffs here, that they owned multiple properties, and that those properties suffered the same
taking alleged by all the Plaintiffs").  Alternatively, plaintiffs moved for leave to amend their
complaint "[i]n the unlikely event that the Court concludes that RCFC 8 requires the Plaintiffs to
specifically list the Disputed Properties in their Complaint in order to obtain discovery . . . ."  Id.
at 9.

        A predecessor judge heard argument on defendant's motion for a protective order on
August 22, 2007, and denied the motion.[4]  In an August 24, 2007 ruling, the court memorialized
its decision and explained that plaintiffs did not have a dilatory motive and had not engaged in
undue delay with respect to seeking discovery concerning the twenty-three additional Thetford
properties.  It reasoned that "[t]he Thetford properties participated in HUD's mortgage insurance
programs that are the subject of these takings claims. . . .  The twenty-three additional Thetford
projects are located in the same state as the Thetford III and IV properties.  The likelihood of
prejudice to defendant is minimal."  Order 2, Aug. 24, 2007.  The court neither ruled upon
plaintiffs' alternative motion to amend nor granted plaintiffs leave to file a fifth amended
complaint.  See id.; accord Order 10, Oct. 21, 2009 ("Because defendant's motion was denied,
there was no need for [the court] to reach the merits of plaintiffs' alternative motion to amend the
complaint.").  Eventually, this case, together with Algonquin Heights v. United States, No. 97-
582C, was transferred to the undersigned.

        After the August 2007 ruling, plaintiffs "concluded that [the court] had implicitly
accepted the sufficiency of the Fourth Amended Complaint with regard to the Additional
Properties–i.e., that they were in the lawsuit."  Mot. 5.  In a letter to plaintiffs' counsel dated
September 11, 2007, defense counsel stated his belief that the "practical effect" of the August

---

    [4]  The court explained:

        And so that's a long way of simply saying that whatever forms the various
        motions take, and frankly, I don't have a list of all them here, but now that
        we'[ve] invested all this time . . . , I'm going to permit whatever discovery
        remains to be done so far as parties are concerned, and I just have to trust you as
        officers of the Court that it's necessary, and I'm going to deny any motions that
        shortcut the system by essentially creating a default situation.

Hr'g Tr. 7, Aug. 22, 2007.

2007 ruling "was to add a total of 27 projects to the respective actions."[5] Pls.' Ex. E at 1. The parties engaged in ripeness discovery. Plaintiffs note:

> [T]he Government, like the Plaintiffs, proceeded through discovery producing documents and asking questions about the disputed Additional Properties in the same manner as was done with the other properties whose status was never questioned, including . . . deposing [an RCFC] 30(b) (6) representative of each Additional Property and testing the expert's opinions related to the properties.

Mot. 6; see also id. at 7 ("Believing that these properties were in the litigation as a result of the August 2007 Order and the Defendant's representations and actions, the Plaintiffs refrained from seeking a Rule 26(c) protective order to block these additional depositions."); cf. Def.'s App. 187 (stating that defendant "complied with the Court's [August 24, 2007] order by providing documents and deposition discovery with respect to the additional Thetford projects" and "sought its own discovery from plaintiffs" because plaintiffs "had made clear that they intended to pursue taking claims regarding these projects").

Ripeness discovery concluded on December 7, 2007. On July 31, 2008, defendant again asserted its position that the court "did not–and could not–rule that taking claims regarding the additional Thetford properties are pending in this action." Def.'s App. 187; accord id. at 188 ("The additional Thetford properties are not identified in the operative complaint and, therefore, no claim regarding the additional Thetford properties is pending before the Court."). In a joint status report filed thereafter, plaintiffs again raised the issue of amending the fourth amended complaint. The court ordered plaintiffs to show cause why the additional Thetford properties were at issue in the case despite their absence from the fourth amended complaint. In their response to the show cause order, plaintiffs argued, inter alia, that the court determined in August 2007 that (1) those properties were in these proceedings and (2) Thetford's allegations were sufficient under RCFC 8 to place the additional Thetford properties at issue. Plaintiffs also asserted their position that defendant "conceded to Plaintiffs' counsel and the Court that the Subject Properties were in fact at issue in this litigation." Pls.' Reply Br. Concerning Order Show Cause 9; see also Reply 3 (emphasizing that plaintiffs relied upon defendant's assertion, i.e., defense counsel's September 11, 2007 statement that the August 2007 ruling added twenty-seven projects to the litigation, and concluded that no amendment to the complaint was either "necessary or warranted").

---

[5] In July 2008, Thetford IV filed a stipulation of dismissal with prejudice of claims related to two properties, Holiday Town II and Oakwood Avenue II. According to plaintiffs, defendant's consent to the dismissal of those Thetford properties "in effect acknowledges, or at a minimum would have made an objective reader believe, that those two properties were in the lawsuit because, but for their being in, there would be nothing to dismiss from the suit." Mot. 5 n.4.

The court ultimately determined that Thetford failed to satisfy the notice requirements set forth in RCFC 8 and that the fourth amended complaint "manifestly did not give defendant notice that the additional Thetford properties were a part of the case."  Order 9, Oct. 21, 2009.  The court directed plaintiffs to file a motion for leave to amend the complaint if Thetford desired to include the additional Thetford properties in their takings claims.  The instant motion followed.

## II.  MOTIONS FOR LEAVE TO AMEND

RCFC 15 governs amended and supplemental pleadings.  Pursuant to RCFC 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  In Foman v. Davis, the United States Supreme Court explained that the mandate set forth in Rule 15(a) "is to be heeded."  371 U.S. 178, 182 (1962).  It explained:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be "freely given."

Id.

Whether a court grants or denies a motion for leave to amend the complaint falls within its discretion, id., and a court "ought to exercise liberally its discretion to grant leave to amend," Wolfchild v. United States, Nos. 03-2684L, 01-568L, 2011 WL 3438414, at *6 (Fed. Cl. Aug. 5, 2011); see also Chitimacha Tribe of La. v. Harry L. Laws Co., 690 F.2d 1157, 1163 (5th Cir. 1982) (explaining that Rule 15 of the Federal Rules of Civil Procedure "evinces a bias in favor of granting leave to amend").  Nevertheless, leave to amend "should not be given automatically." Chitimacha Tribe of La., 609 F.2d at 1163.  The existence of "any one" of the reasons articulated in Foman may justify denial of a motion for leave to amend.  Spalding & Son, Inc. v. United States, 22 Cl. Ct. 678, 680 (1991); accord Hays v. United States, 16 Cl. Ct. 770, 772 (1989) (noting that the criteria set forth in Foman "are in the disjunctive, i.e., satisfaction of one is sufficient to deny the motion"); see also Te-Moak Bands of W. Shoshone Indians of Nev. v. United States, 948 F.2d 1258, 1261 (Fed. Cir. 1991); Mitsui Foods, Inc. v. United States, 867 F.2d 1401, 1403-04 (Fed. Cir. 1989).

When exercising discretion to grant or deny a motion for leave to amend, courts take into account the timeliness of the motion.  Tenneco Resins, Inc. v. Reeves Bros., Inc., 752 F.2d 630, 634 (Fed. Cir. 1985).  In order to avail itself of the liberality inherent in RCFC 15, the movant "must act with due diligence."  Parry v. Mohawk Motors of Mich., Inc., 236 F.3d 299, 306 (6th Cir. 2000).  "Mere passage of time need not result in a denial of leave to amend, but delay

becomes fatal at some period of time." <u>Chitimacha Tribe of La.</u>, 609 F.2d at 1163.  Accordingly,

> a motion to amend should be made as soon as the necessity for altering the pleading becomes apparent.  A party who delays in seeking an amendment is acting contrary to the spirit of the rule and runs the risk of the court denying permission because of the passage of time.

6 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, <u>Federal Practice & Procedure</u> § 1488 (3d ed. 2010).  Although courts "have not imposed any arbitrary timing restrictions on requests for leave to amend," <u>id.</u>, the party seeking leave to amend "must justify that request by more than invocation of the concept of the rule's liberality" in cases where a significant amount of time has elapsed, <u>Te-Moak Bands of W. Shoshone Indians of Nev.</u>, 948 F.2d at 1263.

Although "[d]elay alone, without a showing of prejudice," may warrant denial of an RCFC 15 motion, <u>Cooke v. United States</u>, 79 Fed. Cl. 741, 742 (2007), courts must assess whether the adverse party will be prejudiced by the proposed amendment, <u>Tenneco Resins, Inc.</u>, 752 F.2d at 634; <u>accord</u> <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 401 U.S. 321, 330-31 (1971) ("[I]n deciding whether to permit such an amendment, the trial court was required to take into account any prejudice that [the nonmoving party] would have suffered as a result . . . ."); <u>Laber v. Harvey</u>, 438 F.3d 404, 427 (4th Cir. 2004) (en banc) ("Delay alone, however, is an insufficient reason to deny the plaintiff's motion to amend."); <u>Bell v. Allstate Life Ins. Co.</u>, 160 F.3d 452, 454 (8th Cir. 1998) ("Delay alone is insufficient justification; prejudice to the nonmovant must also be shown."); <u>cf.</u> <u>Te-Moak Bands of W. Shoshone Indians of Nev.</u>, 948 F.2d at 1262 (noting that a determination of prejudice was deemed important in some, but not all, cases).  Undue prejudice "may be found when an amended pleading would cause unfair surprise to the opposing party, unreasonably broaden the issues, or require additional discovery." <u>Cooke</u>, 79 Fed. Cl. at 743; <u>see also</u> <u>Principal Life Ins. Co. v. United States</u>, 75 Fed. Cl. 32, 33 (2007) (denying leave to amend where amendment "would undoubtedly set off a new waive [sic] of motions, if not require further discovery").  Ultimately, timeliness and prejudice "reinforce each other," <u>Tenneco Resins, Inc.</u>, 752 F.2d at 634, because "the risk of substantial prejudice increases with the passage of time," 6 Wright et al., <u>supra</u>, § 1488.

An amendment to a pleading relates back to the date of the original pleading under certain circumstances, including when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading . . . ."  RCFC 15(c)(1)(B).  "Amendments that amplify or restate the original pleading or set forth facts with greater specificity should relate back."  3 James Wm. Moore et al., <u>Moore's Federal Practice</u> ¶ 15.19 (3d ed. 2010).  When addressing an issue of relation back, the court must determine whether the nonmovant had notice of the amendment by virtue of the facts set forth in the original pleading.  <u>Snoqualmie Tribe v. United States</u>, 372 F.2d 951, 960 (Ct. Cl. 1967).

## III.  DISCUSSION

The court first addresses the timeliness of plaintiffs' motion.  Next, it determines whether the amendment is futile.  Finally, the court assesses whether defendant is prejudiced by plaintiffs' proposed amendment.

### A.  Plaintiffs Delayed Filing Their Motion But Did Not Engage in "Undue Delay"

Defendant argues that claims involving the additional Thetford properties could have been asserted in the original complaint filed in 1993 or during any of the four subsequent amendments.  Plaintiffs' first mention of these additional Thetford properties, defendant emphasizes, did not occur until 2006, "more than 13 years into this litigation . . . ."  Opp'n 1.  But while defendant's reference to the passage of thirteen years is accurate, it is somewhat misleading.  As plaintiffs note, these proceedings were stayed for significant periods of time.  The Court of Federal Claims stayed proceedings from 1997 until 2000.  Proceedings were also stayed following plaintiffs' appeal to the Federal Circuit, which remanded the case back to the Court of Federal Claims in June 2006.  Ripeness discovery commenced in 2007, and plaintiffs assert that the issue of amendment was promptly brought before the court in response to defendant's motion for a protective order.[6]  Thus, plaintiffs argue that this issue "arose no more than 3 years ago, and is completely justified given the history of events in this case."  Reply 1.

Plaintiffs never fully explain why they did not identify the additional Thetford properties in their first, second, third, and fourth amended complaints.  Instead, they note the second amended complaint was amended "to add Plaintiffs, not properties."  Id. at 4.  Furthermore, plaintiffs emphasize that they

> reasonably believed that the Thetford Partnerships' regulatory takings claims were properly pleaded under Rule 8 of the RCFC[,] which did not require enunciation of each and every property underlying those claims in order to put the Government on notice of the claims.  Indeed, the rules did not require a plaintiff to specifically identify the properties in an inverse condemnation case until Rule 9(h)(7) was adopted in 2002.

Id. at 3.  The court previously rejected this position, which prompted the instant motion.

_____

[6]  Indeed, defendant argued in its motion for a protective order that plaintiffs could seek leave to amend the complaint if they "want to assert new claims that concern additional projects . . . ."  Def.'s Mot. Protective Order 7.  Thereafter, defendant opposed plaintiffs' effort to amend the operative complaint, citing the same reasons set forth in its opposition to the instant motion.  See Def.'s Reply Supp. Mot. Protective Order & Opp'n Pls.' Mot. File Fifth Am. Compl. 5-11.

It is apparent that the August 2007 ruling introduced uncertainty by not adjudicating the motion to amend that plaintiffs raised in the alternative.  The court denied defendant's motion for a protective order seeking to preclude discovery related to the additional Thetford properties, see Def.'s Mot. Protective Order 6 (arguing that discovery related to the additional Thetford properties was inappropriate because those properties were "above and beyond those identified in the operative complaint" and "only taking claims concerning those projects identified in the operative complaint are pending before the Court"), and plaintiffs interpreted the court's ruling as having "implicitly accepted the sufficiency of the Fourth Amended Complaint with regard to the Additional Properties," Mot. 5.  Implicit acceptance, however, is neither a defense nor an excuse for the delay in filing the instant motion.  RCFC 26(b)(1) sets forth the general rule related to the scope of discovery, and parties may obtain discovery of matters relevant to the subject matter involved in the case.  As the parties are well aware, relevant information is not necessarily admissible, and the discovery sought need only be reasonably calculated to lead to the discovery of admissible evidence.  The court believed that information related to the additional Thetford properties was, at a minimum, discoverable.  See supra note 4.  Nevertheless, the court's ruling authorizing discovery related to the additional Thetford properties, standing alone, had no effect upon Thetford's then-existing allegations or takings claims.

Thus, plaintiffs had no reasonable belief that the additional Thetford properties were somehow explicitly added to the litigation based upon the August 2007 ruling.  Neither the ruling nor the parties' ability to obtain discovery related to the additional Thetford properties precluded plaintiffs from renewing their motion or seeking further clarification from the court.  See 6 Wright et al., supra § 1488 (stating that a motion to amend "should be made as soon as the necessity for altering the pleading becomes apparent").  Accordingly, the court determines that plaintiffs delayed filing their motion.  Plaintiffs had four opportunities prior to the August 2007 ruling to include in their operative complaint the additional Thetford properties.  Since August 2007, plaintiffs could have renewed their motion to amend at any time.  Yet, plaintiffs did not file the instant motion until after the court sua sponte raised the issue and directed them to show cause why the additional Thetford properties were at issue when they were not identified in the operative complaint.

Defendant cites numerous cases finding undue delay after the passage of specific time periods.  See, e.g., Acosta-Mestre v. Hilton Int'l of P.R., Inc., 156 F.3d 49, 51-53 (1st Cir. 1998) (affirming the denial of a motion for leave to amend by naming an additional defendant that was filed fifteen months after the initial complaint); Te-Moak, 948 F.2d at 1261-63 (determining that the trial court abused its discretion by permitting amendments after an eight-year delay); Christofferson v. United States, 7 Fed. Cl. 361, 365 (2007) (denying leave to amend after approximately six years).  None of these cases accounts for the peculiar circumstances that occurred here.  Ultimately, the mere passage of time need not result in a denial of leave to amend, Chitimacha Tribe of La., 609 F.2d at 1163; accord Gen. Elec. Co. v. Sargent & Lundy, 916 F.2d 1119, 1130 (6th Cir. 1990) ("[D]elay by itself is not sufficient to deny a motion to amend."), and there is no evidence of bad faith or dilatory motive on the part of plaintiffs, see Foman, 371 U.S. at 182.  The deficiency that plaintiffs seek to cure now, while present

9

throughout these proceedings, was certainly raised by the parties in 2007, and plaintiffs sought an appropriate remedy at that time.  The August 2007 ruling never adjudicated the motion to amend that plaintiffs raised in the alternative, but the court shall not penalize plaintiffs as a result.

The court concludes that plaintiffs' delay in seeking leave to amend their operative complaint does not constitute "undue delay" that warrants denial of their motion.

### B.  Plaintiffs' Proposed Amendment Is Not Futile

Next, defendant argues that plaintiffs' proposed amendment would be futile because their "new breach of contract and taking claims are barred by the statute of limitations."  Opp'n 19. Any claim over which the Court of Federal Claims has jurisdiction must be brought "within six years after such claim first accrues."  28 U.S.C. § 2501 (2006); Barron Bancshares, Inc. v. United States, 366 F.3d 1360, 1369 (Fed. Cir. 2004).  Under section 2501, a claim accrues "as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money."  Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc) (quoting Nager Elec. Co. v. United States, 368 F.2d 847, 851 (Ct. Cl. 1966)). Section 2501 serves as a limitation upon the court's jurisdiction that cannot be waived.  John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 134 (2008).

Although the parties dispute when plaintiffs' claimed ripened, if at all, the parties agree that no claims could ripen after the enactment of the Housing Opportunity Extension Act of 1996.  Opp'n 19 (citing Pls.' Status Report Concerning Ripeness Dates 5 n.5).  According to defendant, the statute of limitations on the claims plaintiffs seek to add ran no later than 2002. Defendant asserts that any claims related to the additional Thetford properties do not arise out of the conduct, transaction, or occurrence set forth in the original complaint.  See Opp'n 19-20 (asserting that the additional Thetford properties, having been developed at different times, constructed in different cities and towns, and funded by different mortgages, are unique and arguing that it is insufficient, for purposes of relation back under RCFC 15(c), for plaintiffs to assert that each regulatory takings claim is predicated upon enactment of the Low-Income Housing Preservation and Resident Homeownership Act of 1991 ("LIHPRHA")).  Plaintiffs contend that amendment will simply

> increase the number of the properties underlying each of their respective claims. In other words, the claims of the two Plaintiffs–the partnerships–remain exactly the same, except that the number of properties included in each claim increases. This is not a situation where a new claim is being added or a new cause of action [is] being pled.

Mot. 14 (emphasis added); see also Reply 15 (arguing the alleged taking that caused injury to Thetford "with respect to the Additional Properties is exactly the same as that with respect to the other Thetford properties identified in the Fourth Amended Complaint, all of which arose out of

10

the enactment of LIHPRHA").

In <u>Snoqualmie Tribe</u>, the United States Court of Claims explained that "the inquiry in a determination of whether a claim should relate back will focus on the notice given by the general fact situation set forth in the original pleading." 372 F.2d at 960; <u>see also id.</u> at 961 (permitting relation back of an amendment where a treaty constituted the "'transaction' giving rise to the claims" and where a different cause of action was "sufficiently closely related to warrant the conclusion that the government received adequate notice of the possibility that it might have to defend against a broader claim"). Here, defendant has been on notice that Thetford asserted regulatory takings claims for their properties based upon the enactment of LIHPRHA. Although the circumstances surrounding how LIHPRHA purportedly effected a taking of Thetford's properties may be unique to each Thetford property, the alleged taking ultimately arose out of the same conduct, transaction, or occurrence. Moreover, Thetford have been plaintiffs in this action since 1993, and plaintiffs' proposed amendment to include the additional Thetford properties does not add any new claims. <u>Cf. Creppel v. United States</u>, 33 Fed. Cl. 590, 596-97 (1995) (determining that amendment and relation back were inappropriate, even if the takings claims brought by the prospective plaintiffs arose out of the same transaction or occurrence giving rise to the original complaints, because "no corporate or other legal relationship" existed between the original and prospective plaintiffs, and the original complaints "d[id] not contain information sufficient to notify defendant that the proposed additional plaintiffs have been involved in the litigation from the beginning"). Here, amendment permits plaintiffs to identify all Thetford properties that are encompassed by Thetford's existing takings claims. <u>See</u> Moore et al., <u>supra</u>, ¶ 15.19 (recognizing that amendments that amplify the original pleading or set forth facts with greater specificity should relate back). Even assuming, <u>arguendo</u>, that the proposed amendment did assert new claims, those claims ultimately arose out of the same conduct, transaction, or occurrence–the enactment of LIHPRHA–already set forth in the original complaint.

The court determines that defendant has had notice about the additional Thetford properties. Thetford alleges a regulatory taking of their property due to the enactment of LIHPRHA. Because plaintiffs' proposed amendment identifies additional Thetford properties purportedly affected by LIHPRHA, the amendment relates back to the date of the original complaint, <u>see</u> RCFC 15(c)(1)(B), and statute of limitations issues are not implicated. Plaintiffs' proposed amendment, therefore, is not futile.

### C. Defendant Fails to Establish Prejudice

Finally, the court addresses whether any prejudice results from granting the proposed amendment. Defendant claims severe prejudice, arguing that "essential documents are missing and important witnesses are either unavailable or have memories dimmed by the passage of time." Opp'n 15. It cites the deposition of a HUD witness who could not recall details about Thetford properties as an example of the "danger of belatedly allowing the assertion of new claims." <u>Id.</u> at 16. Defendant also claims plaintiffs failed to preserve documents about the additional Thetford properties, never produced any documents related to Peachtree Apartments,

11

Chowan Court Apartments, or Columbus Court Apartments, and produced no preservation appraisal for five Thetford properties.  Furthermore, defendant states:

> [T]he assertion of new claims would disrupt this litigation.  Plaintiffs' motion to amend comes after ripeness discovery closed, after the United States filed several dispositive motions, and after the Court heard oral argument on those motions. Because no claims about the additional Thetford projects were pending, the projects were not addressed in the United States' motion.  If new projects were belatedly added, additional briefing would be necessary, which would further delay the disposition of this case.

Id. at 17 n. 5.

Plaintiffs contend that none of defendant's claims of prejudice is unique to the additional Thetford properties: "[T]he Government is no better or worse off with regard to the Additional Properties than it is with any other property included in this lawsuit or the companion Algonquin Heights case."  Reply 11; accord id. at 13 (stating that "the situation is no different than it is for other properties not subject to the amendment").  According to plaintiffs, several appraisals are missing for properties not affected by the proposed amendment and "there is no additional discovery to be had, since all discovery with regard to the ripeness of the Additional Properties has been completed."  Id. at 13-14.  Indeed, plaintiffs note that defendant obtained RCFC 30(b)(6) deposition testimony concerning the additional Thetford properties, and defendant never raised any concern about an inability to defend against plaintiffs' motion for summary judgment due to missing documents or unavailability of evidence.

The parties exchanged discovery related to the additional Thetford properties during the course of ripeness discovery.  The documents and testimony they obtained during ripeness discovery were utilized in connection with briefing their respective dispositive motions.  When defendant moved for partial summary judgment with respect to plaintiffs Milwood Apartments, Parthenia Manor Apartments, Market North II Apartments, and 100 Centre Plaza, and moved for summary judgment on the issue of ripeness with respect to all plaintiffs, it did not claim a disadvantage due to unavailability of evidence.  No disadvantage existed then, and it does not exist now.  To the extent that certain evidence is unavailable, both parties are equally affected. Granting plaintiffs leave to amend will not necessitate a reopening of ripeness discovery.  Cf. Cooke, 79 Fed. Cl. at 743 (recognizing that undue prejudice may result when an amended pleading would require discovery); Principal Life Ins. Co., 75 Fed. Cl. at 33 (same).

Amendment will also not cause unfair surprise.  See Cooke, 79 Fed. Cl. at 743 (recognizing that undue prejudice may result when an amended pleading causes unfair surprise); see also Ricoh Co., Ltd. v. Nashua Corp., 947 F. Supp. 21, 25 (D.N.H. 1996) (permitting amendment to add an additional plaintiff where the nonmovant had been aware of the prospective plaintiff's "significant role" in the plaintiffs' business activities and previously obtained information from the prospective plaintiff during discovery).  Notwithstanding the

uncertainty of whether the additional Thetford properties were properly in this case, defendant, as explained above, has known about the additional Thetford properties since at least 2007. Defendant obtained discovery related to the additional Thetford properties and argued, in its motion for summary judgment on the issue of ripeness, that Thetford were barred from rearguing futility to exhaust administrative remedies.  See Def.'s Mot. Summ. J. on Ripeness 10-11, 16 & n.10 (discussing Thetford's prior litigation before the United States Court of Appeals for the Fourth Circuit, explaining that they were controlled by a single individual who had a fiduciary obligation to both partnerships, and reiterating its position that the court permitted discovery concerning an additional twenty-three Thetford-owned properties that defendant believed were not properly in the case).  Defendant's argument applies to all Thetford properties, including the additional Thetford properties.

To summarize, defendant has not established that it would suffer prejudice as a result of plaintiffs' proposed amendment.  The court has assessed whether defendant will be prejudiced by the proposed amendment, see Zenith Radio Corp., 401 U.S. at 330-31; Tenneco Resins, Inc., 752 F.2d at 634, and determines that, in light of the circumstances presented here, no such prejudice exists.

## IV.  CONCLUSION

Amendment of the operative complaint to include the additional Thetford properties within Thetford's regulatory takings claims brings an end, finally, to this protracted dispute.  For the foregoing reasons, plaintiffs' motion is **GRANTED**.  Plaintiffs shall file their fifth amended complaint **by no later than Monday, September 19, 2011**.  Defendant shall file an answer or otherwise respond to the fifth amended complaint by no later than **Friday, September 30, 2011**.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge