# In the United States Court of Federal Claims

No. 93-655 C
(Filed: September 26, 2012)

```
*************************************
                                      *
ANAHEIM GARDENS, et al.,              *
                                      *
                  Plaintiffs,         *
                                      *
      v.                              *
                                      *
THE UNITED STATES,                    *
                                      *
                  Defendant.          *
                                      *
*************************************
```

*Harry J. Kelly*, Nixon Peabody LLP, Washington, D.C., for Plaintiffs.

*David A. Harrington*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

## OPINION

**DAMICH**, Judge:

Plaintiffs are a number of owners and developers of low-income housing projects who claim a taking of their contractual right to prepay government-insured mortgages on their respective projects after 20 years and thereby to terminate certain governmental restrictions on rents and other aspects of the use of their properties. These "affordability restrictions" were part of their bargain to provide below-market rate rents to low-income tenants in exchange for mortgage guarantees and interest subsidies from the federal government. Defendant has moved for partial summary judgment here with respect to Plaintiffs' claims concerning six projects[1] on the grounds that they lacked any contractual right to prepay at the time of the alleged taking.

The court grants Defendant's motion as to five of the six properties and denies it as to the sixth property.

I.   Background

---

[1] Defendant initially included a seventh project, Hardee Street Apartments, in its motion, but withdrew its action with respect to that project in the course of the briefing herein.

In the 1960s, Congress enacted two programs to encourage the private development of housing for low-income residents. These programs – the section 221(d)(3) program and the section 236 program – authorized the Federal Housing Administration and later the United States Department of Housing and Urban Development ("HUD") to provide mortgage insurance and other financial incentives. Generally, the project owner executed a deed of trust note payable to a private lender. The note evidenced the mortgage agreement, which was secured by a deed of trust on the property. Under these programs, the term of the loan was generally 40 years. To the extent prepayment was allowed, the terms for prepayment were specified in the note. Prepayment of the insured debt without HUD approval was also prohibited by regulation for 20 years from the date of the federal government's endorsement of the mortgage insurance. 24 C.F.R. § 221.524(a) (1970).[2]

In exchange for the government mortgage backing, the owners reached regulatory agreements with the government in which the owners agreed to such restrictions as rental rates, restrictions on tenant income, return on equity from the projects, etc. ("the affordability restrictions").

Out of concern that the owners' prerogative to prepay and be free of the affordability restrictions, thus enabling them to offer their rental housing at market rates, would result in an abrupt diminution of the supply of affordable housing, Congress enacted the Emergency Low Income Housing Preservation Act ("ELIHPA") in 1988. In 1990, Congress enacted the Low Income Housing Preservation and Resident Homeownership Act ("LIHPRHA") as the successor to ELIHPA. Jointly referred to as the Preservation Statutes, the two acts were intended as a matter of public policy to burden and, in most instances, deter prepayment in order to preserve the stock of affordable public housing. Both statutes thus required HUD approval for mortgage prepayment. The strict conditions established under the Preservation Statutes for HUD's approval of mortgage prepayment are the basis for Plaintiffs' claims of a regulatory taking. As noted by the Federal Circuit,

> the Acts set very high the statutory conditions for HUD approval of a mortgage prepayment plan. As a result, because investors could not prepay mortgages and turn their properties into better investments, many felt they had effectively lost the use of their property.

*Anaheim Gardens v. United States*, 444 F.3d 1309, 1313 (Fed. Cir. 2006).

Five of the projects at issue here – Milwood Apartments, Parthenia Manor Apartments, Market North II Apartments,[3] Holiday Town Apartments, and Stewart's Creek Apartments #1 – were developed as § 221(d)(3) projects. The sixth project at issue here, 100 Centre Plaza, participated in the Government's § 236 program.

---

[2] The regulations governing prepayment were also subject to amendment by HUD. 24 C.F.R. § 221.749 (1970).

[3] Plaintiffs assert that the proper name of the property is "Market North Apartments #2." Pls.' Resp. to Def.'s Proposed Findings of Uncontroverted Fact 5, para. 14. The distinction is immaterial to the court's decision on this motion.

The deed of trust, deed of trust note, and regulatory agreement regarding the Milwood Apartments were executed on January 4, 1971. Def.'s App. 1-11. The final maturity date of the loan was December 1, 2011. *Id.* at 1. The final endorsement for federal mortgage insurance was dated January 13, 1972. *Id.* at 2. Rider A to the deed of trust note specified, "[t]he debt evidenced by this Deed of Trust Note may not be prepaid, either in whole or in part, prior to the final maturity date hereof, without the prior written approval of the Federal Housing Commissioner." *Id.* at 4.

The Parthenia Manor Apartments deed of trust, deed of trust note, and regulatory agreement were executed on December 1, 1970. *Id.* at 12-22. The final maturity date of the loan was May 1, 2012. *Id.* at 12. The final endorsement for federal mortgage insurance was October 30, 1972. *Id.* at 13. Rider A specified the restriction on prepayment: "[t]he debt evidenced by this Deed of Trust Note may not be prepaid, either in whole or in part, prior to the final maturity date hereof, without the prior written approval of the Federal Housing Commissioner." *Id.* at 15.

Market North II Apartments' deed of trust, deed of trust note, and regulatory agreement were executed July 1, 1969. *Id.* at 23-24, 70. The final maturity date of the loan was April 1, 2011. *Id.* at 23. The final endorsement for federal mortgage insurance was July 28, 1970. *Id.* at 24. A preprinted portion of the deed of trust note read, "[p]rivilege is reserved to pay the debt in whole or in an amount equal to one or more monthly payments on principal next due, on the first day of any month prior to maturity upon at least thirty (30) days' prior written notice to the holder." *Id.* at 23. The deed of trust note, however, also contained a typed addition, that specified, "Notwithstanding the prepayment privilege state herein, no prepayments, total or partial, may be made without the prior written approval of the Federal Housing Commissioner." *Id.*

The Holiday Town Apartments #1 deed of trust, deed of trust note, and regulatory agreement were executed July 1, 1971. Pls.' App. at 407-08. The final maturity date of the loan was December 1, 2012. *Id.* at 407. The final endorsement was July 19, 1973. *Id.* at 407-08. The Deed of Trust Note references a "Schedule A" relating to prepayment rights, although that Schedule A is not included in Plaintiffs' Appendix attached to their response to Defendant's motion. Nevertheless, Plaintiffs state in their response, "In any event, as with the notes for Milwood, Parthenia Manor, Market North #2, and Stewart's Creek, the Holiday Town note states that the owner had no right to prepay the mortgage without HUD's consent during the life of the mortgage. The language of these notes is undisputed." Pls.' Resp. 3.

The Stewart's Creek Apartments #1 deed of trust, deed of trust note, and regulatory agreement were executed on October 1, 1972. Def.'s App. at 122-23, 130-31. The final maturity date of the loan was January 1, 2014. *Id.* at 122. The HUD final endorsement was December 19, 1975. *Id.* at 123. The deed of trust note contains a type-written reference to a Schedule A relating to late charges and prepayment rights. That Schedule A in turn states, "Notwithstanding the prepayment privilege state herein, no prepayments, total or partial, may be made without the prior written approval of the Federal Housing Commissioner." *Id.* at 124.

3

The 100 Centre Plaza mortgage, mortgage note, and regulatory agreement were executed on July 1, 1970. *Id*. at 71-83. The mortgage loan was provided by the Massachusetts Housing Finance Authority ("MHFA"). *Id*. at 71. Paragraph 17 of the mortgage specified that the owner could not make any prepayments "prior to twenty years from the date of the permanent loan," thus July 1, 1990, and thereafter only on specified terms. *Id*. at 80. On August 3, 1988, however, the owner, C-W Associates and MHFA executed a disposition agreement, a new regulatory agreement, and a "Modification and Restatement of Mortgage, Security Agreement and Assignment of Lease and Rents" (the "Modification"). *Id*. at 84-113. Paragraph 3 of the Modification provided,

> Prior to twenty (20) years from the date hereof, the Borrower may not prepay the principal amount of the Mortgage Note in advance of the amortization schedule established by the Agency, unless the agency consents to prepayment and the purpose of prepayment is to convert the ownership of the Project to cooperative or condominium ownership by occupants.

*Id*. at 111.

Pursuant to the Modification, therefore, the prepayment date was extended to August 2008, except with the consent of MHFA and upon the conditions relating to conversion to cooperative or condominium ownership by the residents. MHFA consent was also conditioned on its determination that prepayment would not result in an escalation of rents and that the need for low income housing was no longer acute, as well as provisions regarding the redeemability of the project's "Funding Bonds" (utilized for the construction of dining facilities and unit reconfigurations). *Id*.

On December 27, 1990, the owner and MHFA agreed to an amendment of the Modification, "First Amendment to Modification and Restatement of Mortgage, Security Agreement and Assignment of Lease and Rents" (the "Amendment"). *Id*. at 116. The Amendment specified that the owner would have the right to make prepayment with respect to 71 (out of 216) units in the project, described as "the Section 236 Assisted Units" or "the Section 236 Portion of the Mortgage Note." *Id*. at 117. It also set certain conditions on prepayment, however, with respect to payment on the Funding Bonds provided by the agency. *Id*.

Plaintiffs' complaint alleges that the Low Income Housing Preservation and Resident Homeownership Act ("LIHPRHA") effected a taking of their contractual right to prepayment under the § 221(d)(3) and § 236 programs. The inquiry here, then, is whether the six projects in question had such a contractual right to prepay at the time of the alleged taking.

II.   Standards for Summary Judgment

Summary judgment is a "salutary method" of procedure under the Rules of the Court of Federal Claims ("RCFC") to dispose of actions, where warranted, in a just, speedy, and inexpensive manner. *See Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562 (Fed. Cir. 1987). A motion for summary judgment will be granted if "there is no genuine issue

4

as to any material fact and . . . the movant is entitled to judgment as a matter of law." RCFC 56 (c )(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When considering a summary judgment motion, the court's proper role is not to "weigh the evidence and determine the truth of the matter," but rather "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it "might affect the outcome of the suit"; a dispute is genuine if the evidence is such that a reasonable trier of fact could find for the nonmoving party. *Id*. at 248.

The party moving for summary judgment may prevail by demonstrating the absence of any genuine issues of material fact or by showing the absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 322-23. If the moving party makes such a showing, the burden shifts to the nonmoving party to demonstrate that there is a genuine issue of material fact. *Id*. at 324. Any inferences that may be drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Similarly, "[i]n cases in which there is doubt as to the existence of a genuine issue of material fact, that doubt must be resolved in favor of the nonmovant." *Cooper v. Ford Motor Co.*, 748 F.2d 677, 679 (Fed. Cir. 1984). "The movant also must demonstrate its entitlement to judgment as a matter of law." *Id*.

   III.   Discussion

Defendant notes that Plaintiffs' complaint alleges that LIHPRHA effected an as-applied, regulatory taking of their contractual right to prepay their Government-insured loans, Fifth Am. Compl. ¶¶ 80-81, for which they seek just compensation pursuant to the Takings Clause of the Fifth Amendment of the United States Constitution. It is settled law, however, that "only persons with a valid property interest at the time of the taking are entitled to compensation." *Huntleigh USA Corp. v. United States*, 525 F.3d 1370, 1377 (Fed. Cir. 2008). Defendant argues that, because Plaintiffs cannot establish that they had a contractual right to prepay, the property interest element of their takings claim fails.

   A. Milwood Apartments, Parthenia Manor Apartments, Market North II Apartments, Holiday Town Apartments, and Stewart's Creek Apartments #1

As noted, Plaintiffs have acknowledged that the language of the deeds of trust or mortgage notes of these properties is "undisputed" that "the owner had no right to prepay the mortgage without HUD's consent during the life of the mortgage." Pls.' Resp. 3. They also acknowledge that, under then-applicable HUD regulations, as § 221(d)(3) properties receiving rent supplement assistance, these projects were "precluded from prepaying the mortgage for the entire 40-year term of the rent supplement contract without HUD's consent." Pls.' Resp. 4, citing 24 C.F.R. § 221.524.

Plaintiffs argue, however, that HUD's regulations and policies, HUD's processing of the properties, and HUD's own statements in litigation demonstrate these properties' right to prepay.

They note that, while all five of these properties had begun as § 221(d)(3) projects receiving rent supplement assistance, it is undisputed that each had converted to receiving Section 8 Loan Management Set Asides ("Section 8 LMSA") prior to the enactment of the Preservation Statutes. Thus, each became "a § 221(d)(3) project that was <u>not</u> receiving rent supplement assistance." *Id*. at 5. Plaintiffs contend that "[o]nce a project converted from receiving rent supplement assistance to receiving Section 8 LMSA, it was no longer subject to the 40-year prepayment lockout period applicable to rent supplement properties and reflected in the original mortgage notes; instead, it became subject to the standard 20-year prepayment restriction in 24 C.F.R. § 221.524." *Id*.

Plaintiffs' argument is bolstered by reference to a July 17, 1992, legal opinion prepared by HUD's Multifamily Mortgage Division, which advised,

> If the rent supplement is converted to Section 8 assistance, the project would no longer be considered a rent supplement project and would not be subject to the prepayment prohibitions of Sections 221.524 and 236.30; rather, a limited distribution mortgagor which is not receiving rent supplement assistance would be permitted to prepay its mortgage without HUD's consent after 20 years from the date of final endorsement.

Pls.' App. 71.

Furthermore, it was HUD's policy that prepayment allowed by regulation trumped contrary language in the mortgage note:

> [I]f the applicable program regulations at § 221.524 or § 236.30 allow prepayment at the expiration of 20 years after final endorsement, but the mortgage note prohibits prepayment without HUD's consent for the full term of the mortgage, HUD would construe the regulation as superseding the prepayment prohibition in the mortgage note.

Proposed Rule, "Prepayment of a HUD-Insured Mortgage by an Owner of Low Income Housing," 56 Fed. Reg. 20262 (Pls.' App. 210).

Accordingly, Plaintiffs aver that, based on HUD's regulations and acknowledged policy, "Plaintiffs have a valid property interest in the right to prepay because HUD has repeatedly said they do, and the Government should not be allowed to argue otherwise now." Pls.' Resp. 6.

Plaintiffs also argue that HUD's administrative processing of these properties' requests for financial incentives further demonstrates their right to prepay. They reason that, "[u]nder LIHPRHA, only projects which were eligible to prepay – i.e., had a right to prepay, whether contractual or regulatory – without HUD's prior approval could be deemed 'eligible low income housing.'" Pls.' Resp. 7 (citing 12 U.S.C.S. § 4119(1)(B), Pls.' App. at 292). A property had to be considered "eligible low income housing" to be eligible to receive financial incentives.

6

Milwood, Parthenia Manor, and Market North #2 completed the LIHPRHA process and were approved to receive incentives. Pls.' App. at 294-304, 305-17, 318-30. Their use agreements expressly described them as "eligible low income housing" or "eligible to prepay the mortgage." *Id*. Both Stewart's Creek Apartments #1 and Holiday Town Apartments #1 were also considered eligible to proceed with processing.

Finally, Plaintiffs cite Defendant's submission earlier in this litigation of a statement agreeing to Plaintiffs' assertions of the prepayment dates of these properties as a judicial admission of the properties' right to prepay. Pls.' App. at 331-41.

Defendant does not dispute Plaintiffs' proposed finding of fact that "once a project converted from rent supplement assistance to Section 8 LMSA, it was no longer subject to the 40-year prepayment lockout applicable to rent supplement properties, and became subject only to the standard 20-year prepayment restriction contained in 24 C.F.R. § 221.524." Def.'s Resp. to Pls.' Proposed Findings of Uncontroverted Fact 2-3, para. 11. Nor does Defendant contest that it was HUD's policy that "prepayment regulations superseded contrary language in a mortgage note." *Id*. at 3, para. 12. It does dispute, however, that its earlier-filed document regarding prepayment dates constitutes a judicial admission of a contract-based right to prepay; and the court agrees with Defendant. Defendant's document was titled, "Defendant's Counter-List of Anniversary Dates," suggesting it was merely acknowledging the "20-year" anniversaries from the date of final HUD endorsement of the deed of trust notes. These dates would signify the earliest any given property could make prepayment without HUD approval, *if* prepayment were authorized. Furthermore, and more significantly, Defendant's acknowledgement of the 20-year dates does not constitute an admission that such prepayment was authorized because of a contract-based right rather than a regulation-based prerogative.

The latter distinction – as to whether the authority to make prepayment is based on contract or regulation – is the sockdolager of Defendant's rebuttal. "The prospect that an owner could have prepaid if HUD's pre-1988 *regulations* had not been amended is simply irrelevant to whether plaintiffs possessed a valid *contractual* right to prepay." Def.'s Reply 2-3. The only count remaining of Plaintiffs' Complaint seeks compensation for an alleged taking of a "contract right to prepay." Fifth Am. Compl. ¶¶ 79-82. A plaintiff can only properly pursue a takings claim if he has a valid property interest at the time of the taking. *Cienega Gardens v. United States*, 331 F.3d 1319, 1329 (Fed. Cir. 2003); *Huntleigh USA Corp. v. United States*, 525 F.3d 1370, 1377 (Fed. Cir. 2008).

Plaintiffs have alleged a property interest based on a contractual right to prepay, rather than an interest based on regulation, although they cite HUD regulations as the grounds for defeating Defendant's motion. In any event, even a regulation-based takings claim would not avail them, because "[n]o person has a vested interest in any rule of law, entitling him to insist that it shall remain unchanged for his benefit." *New York Cent. R. Co. v. White*, 243 U.S. 188, 198 (1917). Plaintiffs, though, claim a right to prepay predicated on a HUD regulation and taken from them by the Preservation Statutes, LIHPRHA in particular. As the Federal Circuit has observed, however, "no one is considered to have a property interest in a rule of law." *Branch v. United States*, 69 F.3d 1571, 1577-78 (Fed. Cir. 1995).

7

Accordingly, as it cannot be held that the enactment or implementation of LIHPRHA took a contract-based property right of any of these properties to prepay their mortgage loans without HUD approval, Defendant's motion for summary judgment is warranted as a matter of law.

    B.  100 Centre Plaza

Pursuant to the initial mortgage note, 100 Centre Plaza was contractually entitled to make prepayment as of the 20th year after final endorsement by the Government. That 20th anniversary date would have been July 1, 1990, but was extended, however, to August 2008 by virtue of the Modification executed August 3, 1988. The Amendment to the Modification, however, between the owner and MHFA, reached on December 27, 1990, explicitly reinstated the owner's right to prepay, at any time, the Section 236 portion of the mortgage note.

The Amendment also recited, in the very next sentence, that the "Borrower agrees to use its best efforts to endeavor to obtain incentives for the Section 236 Assisted Units made available by the U.S. Department of Housing and Urban Development pursuant to Title II." Def.'s App. at 117. The Borrower further agreed to accept such incentives if offered (if offered on terms generally extended to other owners) and thereby "to continue the low and moderate income character of the Section 236 Assisted Units for at least the remainder of the term of the loan . . ." *Id*.

Thus, Defendant argues that "at no time did the owner of 100 Cent[re] Plaza have a contractual right to prepay that permitted the termination of low-income affordability restrictions." Def.'s Mot. 7. Defendant reasons that, in accepting the Amendment to the Modification, "the parties stipulated that the owner would obtain incentives from HUD to maintain low-income affordability restrictions, rather than prepay and terminate" the restrictions. *Id*.

Defendant, however, is mistaken as to both the letter and the spirit of the Amendment. As the Amendment explains in its prefatory clauses, neither the owner nor the agency, MHFA, had intended that the Modification, which extended the prepayment date to 2008, would have had the effect of precluding the option of the owner to seek financial incentives under LIHPRHA as an alternative to prepayment. *Id*. at 116. In early 1990, pursuant to ELIHPA, the owner submitted to HUD a Notice of Intent ("NOI") to Prepay (the mandated first step in seeking either prepayment and termination of the affordability restrictions or financial incentives in lieu of prepayment). HUD declared the NOI premature because the Modification had extended the prepayment date to August 2008, unless MHFA gave its consent and the project was converted to condominium or cooperative status. Pls.' App. at 347-48. Because, however, the owner had not provided MHFA with a plan for such conversion, MHFA could not formally grant its consent to prepayment. Without that consent by MHFA, HUD advised the owner that it could not proceed with processing for incentives.

Accordingly, MHFA and the owner reached agreement on the Amendment to the Modification. The right to prepay had to be effective before 100 Centre Plaza could continue to pursue its objective of financial incentives. Thus, Defendant is incorrect in asserting that the

8

property "never had a contractual right to prepay and terminate affordability restrictions."  Def.'s Reply 7.  Based on the Amendment, 100 Centre Plaza actually did then renew its quest for incentives (at that point under LIHPRHA) and HUD actually did proceed to process the property for financial incentives.  *See, e.g.*, Pls.' App. at 391-95 (HUD letter advising that the property's notice of intent was received and that the property was an eligible project).  While the owner was obliged to make its best efforts to seek incentives and to accept if offered, it is beyond factually clear to the court that 100 Centre Plaza, by virtue of the Amendment to the Modification, did indeed obtain and possess a contractual right to prepayment (and to terminate the affordability restrictions).  Thus, it had a valid property interest at the time of the alleged taking.

Defendant's motion for summary judgment with respect to 100 Centre Plaza is therefore denied.

IV.     Conclusion

For the reasons stated above, Defendant's motion for summary judgment is granted with respect to Milwood Apartments, Parthenia Manor Apartments, Market North II Apartments, Holiday Town Apartments, and Stewart's Creek Apartments #1, and denied with respect to 100 Centre Plaza.

s/ Edward J. Damich
EDWARD J. DAMICH
Judge