# In the United States Court of Federal Claims

No. 93-655 C
(Filed: February 19, 2013)

```
**************************************
                                     *
ANAHEIM GARDENS, et al.,             *
                                     *
                   Plaintiffs,       *
                                     *
          v.                         *
                                     *
THE UNITED STATES,                   *
                                     *
                   Defendant.        *
                                     *
**************************************
```

*Harry J. Kelly*, Nixon Peabody LLP, Washington, D.C., for Plaintiffs.

*David A. Harrington*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

## OPINION

**DAMICH**, Judge:

On cross-motions for summary judgment on ripeness regarding Plaintiffs' claim that the Government has effected a taking of their claimed contractual right to prepay government-insured mortgages on low-income housing, this Court, in September 2012, granted summary judgment in part to Defendant and denied summary judgment to Plaintiffs. *Anaheim Gardens v. United States*, 107 Fed. Cl. 404 (2012).[1]

Plaintiffs have moved the Court to reconsider both actions.

The Court finds in retrospect that it construed too narrowly the scope of the Proposed Findings of Uncontroverted Fact that accompanied Plaintiffs' motion for summary judgment. Having in fact proffered its expert's calculations to show that the properties in question could not have been granted prepayment approval under the terms of the Preservation Statutes, Plaintiffs properly made out a prima facie case for summary judgment. The burden of production

---

[1] *See also Algonquin Heights v. United States*, No. 97-582 C (Fed. Cl. Sept. 26, 2012) (order on summary judgment).

therefore shifted to Defendant to "set forth specific facts to show that there was a genuine issue of material fact in the case." *In Re Cygnus Telecommunications Tech., LLC, Patent Litigation*, 536 F.3d 1343, 1356 (Fed. Cir. 2008). Because Defendant, however, failed to rebut or controvert Plaintiffs' expert's calculations, the Court finds summary judgment warranted in favor of Plaintiffs and accordingly grants Plaintiffs' motion for reconsideration.

Plaintiffs also seek reconsideration of the Court's grant of partial summary judgment to Defendant. Plaintiffs' expert employed three tests to demonstrate that the properties in question were "prepayment ineligible." The Court discounted the third test as "unproven" and unconvincing ("lacking the indicia of facts of the kind that led the Federal Circuit to remand this inquiry to the trial court," *Anaheim Gardens*, 107 Fed. Cl. at 420). The Court, however, granted summary judgment to Defendant with respect to whichever properties, if any, "which do not meet either of the first two tests of" the expert's calculations. *Id*. at 422. Per a Joint Status Report filed pursuant to a court order subsequent to the summary judgment opinion in this case, the Government identified five such properties,[2] that is, five properties as to which Plaintiffs' expert was unable to conclude were "prepayment ineligible." The Court denies Plaintiffs' motion for reconsideration respecting these properties.

I.      Standard for Reconsideration

Pursuant to Rule 59(a)(1) of the Rules of the Court of Federal Claims ("RCFC"), a party may file a motion to reconsider a prior decision by the Court. RCFC 59(a)(1). The decision to grant the motion rests within the sound discretion of the Court. *See Yuba Natural Res., Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990). The Court must exercise extreme care in deciding such a motion. *A.A.B. Joint Venture v. United States*, 77 Fed. Cl. 702, 704 (2007). "The moving party must support its motion for reconsideration by a showing of exceptional circumstances justifying relief, based on a manifest error of law or mistake of fact." *Id.* Specifically, "[t]he motion must have one of the following bases: (1) an intervening change in controlling law has occurred; (2) previously unavailable evidence is now available; or (3) reconsideration is necessary to prevent manifest injustice." *Id.* The Court will deny a motion for reconsideration if a party uses it "merely as an opportunity to re-litigate issues already decided by the court." *Shell Petroleum, Inc. v. United States*, 47 Fed. Cl. 812, 814 (2000).

II.     Discussion

With their motion for summary judgment on ripeness, Plaintiffs had submitted deposition testimony and declarations by the property owners attesting to their conclusions that it would have been futile to have expended time and resources seeking prepayment approval. In addition, Plaintiffs proffered the report of their expert, David A. Smith, to substantiate the owners' conclusions regarding futility. *See* Report on Prepayment Ineligibility Under the Emergency Low Income Housing Preservation Act of 1987 and the Low Income Housing Preservation and Resident Homeownership Act of 1990 ("Smith Report"), Pls.' App. 397.

---

[2] Three of the properties are featured in this case – Deanswood Apartments, Hardee Street Apartments, and Person Court Apartments; two properties – Carriage House of Muskegon and Carriage House South – are found in the companion case of *Algonquin Heights v. United States*, No. 97-582 C (*see, e.g.,* Joint Status Report, docket # 154, Oct. 16, 2012).

Using the "Windfall Profits Test" ("WPT") developed in 1992 by the United States Department of Housing and Urban Development ("HUD") as a proxy for prepayment eligibility, Mr. Smith presented data and calculations to show that none of the properties in question could have been granted prepayment approval by HUD under the terms of the Preservation Statutes.

Defendant raised three arguments against the Smith Report. First, it asserted that courts should not accept expert testimony with respect to ripeness and that Mr. Smith was not qualified to offer an opinion concerning prepayment under the statutes. This court, however, rejected Defendant's challenge to Mr. Smith's qualifications to offer his expert opinion. *Anaheim Gardens*, 107 Fed. Cl. at 416. "Accordingly, the court will thus examine Mr. Smith's report to determine the extent to which it is based on facts and logical correlations that may serve as a foundation for Plaintiff's burden to demonstrate futility to a reasonable certainty." *Id.*

The Government also objected to the Smith Report on the grounds that the WPT was neither intended nor used by HUD to evaluate plans of action to prepay, but rather as a test for eligibility for financial incentives for a property to forego prepayment and remain under the affordability restrictions. Further, the Government argued that Mr. Smith did not even apply the WPT specifically as promulgated by HUD.

In its analysis, the court observed that "it is far from definitive that eligibility for incentives and prepayment were mutually exclusive." *Id.* at 421. Despite, however, Defendant's challenge to "Plaintiffs' equating the WPT and prepayment criteria tests, Mr. Smith's 'replication' of the WPT tests, and the relevance of Mr. Smith's self-created third test," the court also noted that Defendant "ha[d] not disputed the accuracy of either the ratio per project of FMR to income in test one of Mr. Smith's analysis or the ratio of market rent to (trended) affordable rent in test two of his analysis." *Id.* The court found, to the contrary, that Mr. Smith's data, "although presented in the context of the WPT rather than directly as evidence regarding the prepayment criteria, is strikingly akin to the data that was found by the Federal Circuit sufficient to demonstrate futility in *Cienega VI*."[3] *Id.*

The court denied summary judgment to Plaintiffs, however, even though Defendant had not specifically controverted Mr. Smith's data, because it determined that Plaintiffs had "not proffer[ed] these calculations themselves in their proposed findings of uncontroverted facts." *Id.* Thus, Defendant had "not been fully called upon to dispute them via responses to proposed findings of uncontroverted fact." *Id.*

In their motion for reconsideration, Plaintiffs argue that the Court's determination that the Smith Report calculations had not specifically been raised is both factually incorrect and leads to a manifestly unjust conclusion.

The Court then must review the manner in which, and extent to which, Plaintiffs raised the Smith Report calculations in support of their futility/ripeness argument. An illustrative example can be found in ¶ 11 of Plaintiffs' Proposed Findings of Uncontroverted Fact, Docket No. 286. With respect to 100 Centre Plaza, Plaintiffs asserted: "The owners' conclusion that it

---

[3] *Cienega Gardens v. United States*, 265 F.3d 1237 (Fed. Cir. 2001).

was futile to seek HUD's approval for a prepayment of 100 Centre Plaza's mortgage is confirmed by Plaintiffs' expert. PA 0378-0410 at 0380, 0390, and 0392." The citations were to Plaintiffs' Appendix. The entire Smith Report comprised pages 378 to 410 of the Appendix. The additional, individual page citations were to the Smith Report summary, Mr. Smith's "Algorithmic Test # 2 (whether there was an excess of supply of affordable housing over demand in the relevant housing market), and Mr. Smith's "Step 3" ("documentary evidence of HUD's acceptance" regarding processing for financial incentives).

In Response to that proposed finding of fact, Defendant contested Mr. Smith's qualifications as an expert, termed Mr. Smith's approach utilizing the WPT as "fundamentally flawed" ("The outcome of the Windfall Profits Test did not determine whether the project owner would be allowed to prepay pursuant to either ELIHPA or LIHPRHA"), and critiqued Mr. Smith for having devised "his own approach" ("Mr. Smith does not even apply the Windfall Profits Test that HUD promulgated as an interim guideline in April 1992"). Docket No. 293.

As Plaintiffs point out, however, on reconsideration, they did indeed proffer particular calculations for their properties by specifically referencing the Smith Report in their proposed finding of fact. The Court found the calculations persuasive: "strikingly akin to the data" that passed muster at the appellate level in *Cienega VI. Anaheim Gardens*, 107 Fed. Cl. at 422. Accordingly, Plaintiffs argue that "the Government not only had the opportunity to, but it had an obligation to, respond to these calculations." Pls.' Mot. for Recons. at 5.

In opposing reconsideration, the Government asserts that Plaintiffs' proposed finding of fact, i.e., that the owners' conclusion was "confirmed by Plaintiffs' expert," was itself no more than a conclusory assertion and did not constitute the proffer of specific calculations. Def.'s Resp. to Pls.' Mot. for Recons. at 3. "[T]he calculations were not set forth in plaintiffs' proposed findings of fact." *Id.* Defendant again questions the expert qualifications of Mr. Smith. In addition, Defendant noted that it had submitted the declaration of Mr. Kevin J. East, former Director of the Preservation Office of the Preservation Division, Office of Multifamily Housing Preservation and Property Disposition, attesting that HUD's ultimate decision whether an owner could prepay "would depend upon numerous factors" and was a complex analysis. It further argued that it had challenged Mr. Smith's methodology, "which necessarily raises genuine issues of material fact." *Id.* at 5. Defendant also asserts that "[s]hortcomings in Mr. Smith's approach would have been addressed in greater detail by the United States if plaintiffs' proposed findings had not been stated in such conclusory terms." *Id.* at 4. For example, in opposing reconsideration, it indicates it would have challenged Mr. Smith's use of Metropolitan Statistical Area ("MSA") data ("Mr. Smith provides no basis for concluding that HUD would have used unadjusted MSA data – to analyze whether to permit prepayment"). *Id.*

The Court finds on reconsideration, contrary to its determination on the summary judgment motions, that Plaintiffs' proposed finding of fact did indeed reference and thus proffer the Smith Report and, in particular, calculations and data respecting prepayment eligibility. Thus, in the context of Plaintiffs' motion for summary judgment under Rule 56 of the Rules of

the Court of Federal Claims ("RCFC"),[4] the Court further finds that Plaintiffs properly met their prima facie burden of showing the absence of genuine issues of material fact and entitlement to judgment as a matter of law.

Under summary judgment, "[i]f a showing is made that would entitle the movant to judgment unless contradicted," the burden shifts to the nonmovant to set forth *specific facts* to show that there is a genuine, material issue for trial. *Cable Elec. Products, Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1022 (Fed. Cir. 1985), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1358-59 (Fed. Cir. 1999) (en banc). "Indeed, this 'shift of burden and the duty to come forward with possible contradiction of proof is the essence of' summary judgment. *Id.* (quoting *DeLong Corp. v. Raymond Int'l, Inc.*, 622 F.2d 1135, 1144 (3d Cir. 1980)). If the opposing party fails to respond or properly address the moving party's assertion of fact, the court may consider the fact undisputed or grant summary judgment "if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." RCFC 56(e)(2). *See Macy Elevator, Inc. v. United States*, 97 Fed. Cl. 708, 721 (2011).

The question, then, is whether Defendant met its countervailing burden "to set forth specific facts." *See, e.g., In Re Cygnus Telecommunications*, 536 F.3d at 1356 (holding that, once the movant presented evidence sufficient to an essential element of its case, "the burden of production" fell on the nonmovant to set forth specific facts showing a genuine issue of material fact in the case); *Pine Ridge Coal v. Local 8377, United Mine Workers*, 187 F.3d 415, 421 (4th Cir. 1999) (affirming magistrate judge's grant of summary judgment to plaintiff where defendant failed to offer evidence rebutting plaintiff's calculation of coal mine's daily fixed costs).

Given this Court's determination that the data presented by Plaintiffs in the Smith Report was comparable to the data found sufficient in *Cienega VI*, the burden of production therefore shifted to Defendant to controvert that data by a showing of "specific facts."

Defendant vigorously contested Mr. Smith's use of the WPT as a proxy for prepayment eligibility under the Preservation Statutes, and disputed that Mr. Smith had even accurately employed the WPT in any event. In addition, Defendant presented the declaration of Mr. East that HUD would conduct a complex analysis of a plan of action to prepay and its decision would depend on "numerous factors." Nevertheless, as the Court explicitly noted in its decision denying summary judgment to Plaintiffs, what was lacking in Defendant's opposition was any specific contradiction of the data in Mr. Smith's calculations. The arguments that Defendant raised in opposition to Plaintiffs' motion for summary judgment are off-point, however, with respect to the Smith Report calculations.

It is less important whether the WPT was intended as a test for financial incentives rather than for prepayment approval, than whether the calculations themselves that Mr. Smith employed in the course of utilizing the WPT demonstrated that the properties did not meet the conditions for prepayment under the criteria of the Preservation Statutes. The Federal Circuit

---

[4]  The RCFC generally mirror the Federal Rules of Civil Procedure ("FRCP") and the Court of Federal Claims may therefore rely on precedent under the FRCP respecting the application of summary judgment. *Grand Acadian, Inc. v. United States*, 97 Fed. Cl. 483, 488 n.6 (citing *C. Sanchez & Son, Inc. v. United States*, 6 F.3d 1539, 1541 n.2).

has already determined that HUD had no discretion to grant prepayment approval contrary to the "strict numerical criteria" of the statutes. *Cienega VI*, 265 F.3d at 1243. Defendant needed to rebut the *calculations*, not the applicability of the WPT. The same holds true even if Mr. Smith did not even apply the WPT to a fault. Plaintiffs' proffered data and calculations were the issue, not the WPT. Defendant challenged the "methodology" of the WPT, that is, as the framework of Mr. Smith's report, but defaulted on presenting "specific facts" to challenge the calculations at issue. As Plaintiffs argue, "the Government had a full and fair opportunity to examine Mr. Smith about the test, the data, and the calculations themselves . . . Yet, it failed to offer any factual evidence to rebut Plaintiffs' Uncontroverted Fact Statements." Pls.' Mot. for Recons. at 8.

It is not appropriate for the Government now to suggest how it might have taken issue with Mr. Smith's calculations, such as his use of MSA data. Plaintiffs are correct in complaining that allowing the Government a further opportunity to contest Mr. Smith's data "would give the Government the proverbial second bite at the apple and let the Government do in a bench trial what it was required to do, but opted not to do, in the summary judgment motions." *Id*. at 9.

Accordingly, the Court grants summary judgment for Plaintiffs as to the properties at issue which Plaintiffs' expert, Mr. Smith, based on the calculations of his tests one and two, concluded would have been "prepayment ineligible."

Plaintiffs also ask the Court to reconsider its grant of partial summary judgment in favor of Defendant to the extent it would dismiss certain of Plaintiffs' properties solely on the basis of Mr. Smith's test one and test two calculations. In this Court's September 26, 2012, decision on summary judgment, although it had then denied Plaintiffs' motion, the Court granted partial summary judgment to Defendant with respect to those properties, "if any, which fail to meet either of Mr. Smith's calculations, as to his conclusion of 'prepayment ineligible,' according to these two tests (that is, not counting his third test at all). In a subsequent order, the Court directed the parties to identify the properties that remained active in the case subsequent to its rulings on summary judgment.

Defendant accordingly identified three properties in this case – Deanswood Apartments ("Deanswood"), Hardee Street Apartments ("Hardee Street"), and Person Court Apartments ("Person Court") – and two properties in the companion *Algonquin Heights* litigation – Carriage House of Muskegon and Carriage House South – that Mr. Smith did not deem "prepayment ineligible" in his expert report and which therefore it argues have been dismissed pursuant to the Court's decision.

Plaintiffs first object that these properties did not "fail" Mr. Smith's tests one and two, only that they were found to be "indeterminate" under test one and that test two was not performed due to "insufficient available data." Pls.' Mot. for Recons. at 9-10. The Court, however, was focusing on Mr. Smith's data and calculations. If Mr. Smith was not able to proffer an expert conclusion that the properties were "prepayment ineligible" based on his available data, then Plaintiffs have not shown their own specific facts to demonstrate a genuine issue of material fact.

In addition, however, Plaintiffs argue that "the disposition of these five properties in Mr. Smith's report is not dispositive of whether they are dismissed." They point out that Plaintiffs also proffered, both in support of their own motion for summary judgment and in opposition to the Government's motion for summary judgment, the declarations and/or deposition testimony of the owners that it would have been futile to have sought prepayment approval. The Government had argued that the owners' attestations were conclusory and were insufficient to raise genuine issues of material fact. Indeed, the Court's discussion and analysis focused almost entirely on the matter of the data and calculations in the Smith Report and its decision on summary judgment was made solely on that basis.

In the course of the Court's preliminary recitation of Plaintiffs' "case for futility," the Court overstated its initial observation that the owners' attestations seemed more than merely conclusory and seemed to raise genuine issues of fact. That observation was intended solely in the context of Plaintiffs' expert's report, which presented the data buttressing the owners' conclusions. The Court does not, and did not, find that, in the absence of test one and test two data, the owners' declarations by themselves raised genuine issues of material fact sufficient to deny summary judgment to Defendant respecting these five properties. Accordingly, the Court denies Plaintiffs' motion for reconsideration of its grant of partial summary judgment to the Government as it applies to these properties.

III.    Conclusion

For the reasons stated above, the Court grants Plaintiffs' motion for reconsideration in part and denies it in part. Plaintiffs' motion for summary judgment on ripeness is granted with respect to the properties which, per tests one and two of the Smith Report, Plaintiffs' expert concluded were "prepayment ineligible." Reconsideration is denied as to the Court's grant of summary judgment in favor of Defendant respecting the handful of properties that were not determined "prepayment ineligible" under tests one and two.

s/ Edward J. Damich
EDWARD J. DAMICH
Judge