# In the United States Court of Federal Claims

No. 93-655C

(E-Filed:  November 12, 2015)

| | |
|---|---|
| ANAHEIM GARDENS, et al., | ) |
| | ) |
| | ) Deposition Discovery; Protective |
| Plaintiffs, | ) Order; RCFC 26(c); RCFC |
| | ) 30(b)(6). |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Harry J. Kelly, III, Washington, D.C., for plaintiffs.

David A. Harrington, Senior Trial Counsel, with whom were Joyce R. Branda, Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.

## OPINION and ORDER

This is a temporary regulatory takings case.  Plaintiffs are fifty-one owners of low-income housing who claim a taking of their contractual right to prepay government-insured mortgages on their respective housing projects, and thus to terminate certain governmental restrictions on rents and other aspects of the properties' use.  See Sixth Am. Compl. ¶¶ 79-82, ECF No. 376; 2d Am. Compl. ¶¶ 76-78, Algonquin Heights Assocs., L.P. v. United States, No. 97-582, ECF No. 54.  Defendant is the United States Department of Housing and Urban Development (HUD, the government or defendant).  Plaintiffs base their claims on either the Emergency Low Income Housing Preservation Act of 1987 (ELIHPA) or the Low Income Housing Preservation and Resident Homeownership Act of 1990 (LIHPRHA).

These cases were formally consolidated on April 30, 2013, with Anaheim Gardens as the lead case.  See Order, ECF No. 327.  Fact and expert discovery are now underway

for six plaintiffs, known as the First Wave plaintiffs, and is scheduled to conclude thirty days after the court rules on two motions for protective order now pending before it. Scheduling Order 1, ECF No. 378.

This order resolves plaintiffs' motion for a protective order regarding defendant's Rule 30(b)(6) deposition notice issued to First Wave plaintiff Cedar Gardens Associates (Cedar Gardens).[1]  Pls.' Mot., ECF No. 375.  Plaintiffs seek a protective order "limiting the scope of the . . . Rule 30(b)(6) deposition of Cedar Gardens to topics 14, 15 and 16 [out of 16 topics] in the current deposition notice, and documents produced for the first time after the August 2013 depositions" of James R. Bancroft.  Id. at 2.  Defendant responds that it is entitled to an "unfettered Rule 30(b)(6) deposition of the Cedar Gardens partnership," and urges the court to deny plaintiffs' motion.  Def's Resp., ECF No. 383.  Plaintiffs' filed a reply.  Pls.' Reply, ECF No. 386.  Both parties filed an appendix with documents in support of their briefs.  Pls.' App. (PA), ECF No. 375-1; Def.'s App. (DA), ECF No. 383-1.  Plaintiffs' motion is ripe for decision.

For the reasons explained below, plaintiffs' motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

---

[1]     The court's rules require that a motion for a protective order "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action."  RCFC 26(c)(1). Plaintiffs did not include this certification with their motion.  However, according to plaintiffs, "[t]he parties conferred about this dispute several times but were unable to reach resolution."  Pls.' Mot. 2.  Plaintiffs also provided a detailed history of the parties' attempts to resolve this dispute, including discussions about defendant's draft Rule 30(b)(6) notice, plaintiffs' offer to make Mr. Bancroft's individual testimony binding on Cedar Gardens, and defendant's two offers to drop topic numbers 1-13 from its Rule 30(b)(6) notice, in return for certain stipulations from Cedar Gardens.  See Pls.' Mot. 2-4; Def.'s Resp. 4-5; see also DA018-DA019, DA022-DA023, DA025, DA029 (various email messages between counsel discussing defendant's Rule 30(b)(6) notice).  Based on these representations, the court is satisfied that plaintiffs have complied with Rule 26(c)(1).

I.      Background

        A.      Cedar Gardens Associates History

        From 1970 to 1995, Cedar Gardens was a general partnership with, at varying points in its history, either two, three, or twenty-two general partners.[2]  See DA004-DA005 (plaintiffs' response to defendant's interrogatory for partnership information).

        Regardless of the number of general partners, the record shows that at every point in Cedar Gardens' history the same two individuals either owned the largest share of Cedar Gardens (at least 45 percent each), or served as the only managing general partners.  Those two individuals were Mr. James R. Bancroft and Mr. James H. McAlister.  See DA004-DA005; Pls.' Reply 3-5 (discussing Mr. Bancroft's role in Cedar Gardens).  Plaintiffs represent that Mr. McAlister is deceased, and that at the time of plaintiffs' motion, Mr. Bancroft was 95 years old.  See Pls.'s Mot 2.  Plaintiffs state that as Mr. Bancroft is "the sole living partner of the Cedar Gardens entity," id., they will designate him as the Rule 30(b)(6) witness for Cedar Gardens, see id. at 1, 5.

---

[2]     Plaintiffs' response to defendant's interrogatory shows that two individuals, Messrs. Bancroft and McAlister—each of whom owned 45% of Cedar Gardens in 1970—were the only two general partners from 1970 to 1995, and after 1995, were the only two managing general partners.  See DA004-DA005.

        As noted by defendant, the record provides conflicting evidence as to the point at which Messrs. Bancroft and McAlister added twenty additional general partners, bringing their total to twenty-two general partners.  Def.'s Resp. 4.  In their written response to defendant's interrogatory, plaintiffs provide that this occurred in 1995, DA005, while Mr. Bancroft suggested during his deposition that this happened no later than the 1980s, see PA065 (Bancroft Dep. 49:4-20, Aug. 29, 2013) (testifying that Cedar Gardens added additional partners "when the project was finished and ready to operate," and that those additional partners "merely put up money and had no interest in managing the project"); PA090 (Bancroft Dep. 149:5-150:14, Aug. 29, 2015) (discussing a December 1987 memo regarding possible purchase of the "additional property" and referring to information provided to "our partners").  The point at which Messrs. Bancroft and McAlister brought in twenty additional general partners is immaterial.  The material point is that plaintiffs stated that only Messrs. Bancroft and McAlister were managing general partners, DA005, and nothing in the record suggests this statement is inaccurate.

B.      August 2013 Individual Deposition of James R. Bancroft

In May 2013, plaintiffs requested that defendant schedule Mr. Bancroft's individual deposition, both because he was then 93 years of age, and because he had certain health issues, which plaintiffs explained to defendant in specific detail.  See DA009 (email between counsel).  Plaintiffs made this request pursuant to the April 2013 scheduling order entered by the judge previously assigned to this case, in which that judge permitted depositions of any individual if there was a concern that the witness might be unavailable to testify at a later trial.  See Pls.' Mot. 2 & n.1; see also Order, Apr. 30, 2013, ECF No. 327.

By mutual agreement, Mr. Bancroft was deposed in his individual capacity over two full days in August 2013, at which time each party conducted both direct and cross-examination.  Pls.' Mot. 1-2; PA001-PA052 (Bancroft Dep., Aug. 28, 2013); PA053-PA132 (Bancroft Dep., Aug. 29, 2013).

During his deposition, Mr. Bancroft testified about a portion of Cedar Gardens' claim that it had not previously presented to defendant.[3]  In 1988, Cedar Gardens purchased a parcel of land adjacent to Cedar Gardens Apartments, the housing project for which it brings its takings claim.  See Pls.' Mot. 4 n.3; PA189.  The parties refer to this parcel of land as the "additional property" or the "additional parcel."  Pls.' Mot. 4; Def.'s Resp. 5.  After Mr. Bancroft's August 2013 deposition, Cedar Gardens produced new documents and responded to additional interrogatories about the additional property. Pls.' Mot. 4.

C.      Defendant's Rule 30(b)(6) Deposition Notice and Plaintiffs' Motion for Protective Order

Defendant issued Cedar Gardens a Rule 30(b)(6) deposition notice for sixteen enumerated topics, to which plaintiffs have no objection for the production of a witness to respond to questions on three topics (topic nos. 14-16).  Plaintiffs concede that topic numbers 15 and 16 relate to the additional property, and they have no objection to answering questions about either topic, or about the documents it produced after Mr. Bancroft's August 2013 deposition.  Id.  Plaintiffs also acknowledge that topic number 14 is not duplicative of the August 2013 deposition, and have no objection to this topic.  Id. at n.4.

---

[3]      According to plaintiffs' counsel, "[d]uring the second day of depositions, Mr. Bancroft turned over some letters addressing the parcel that had not been previously produced to the Plaintiffs lawyers, or the Government."  Pls.' Mot. 4 n.3.

Plaintiffs, however, argue that topic numbers 1-13 are "duplicative and cumulative" of the topics about which defendant questioned Mr. Bancroft during his August 2013 deposition, id. at 1, 4, and ask the court to enter a protective order under Rule 26(c) barring defendant from questioning its witness on those topics, id. at 2. Plaintiffs further represent that they have repeatedly offered to make Mr. Bancroft's individual testimony binding on Cedar Gardens, thus eliminating the need for defendant to take Rule 30(b)(6) testimony on topic number 1-13, and that this offer remains open. Id. at 3 n.2; see also id. at 3 ("Plaintiffs offer[] to stipulate that all of Mr. Bancroft's prior testimony in the August 2013 depositions would be binding on the Cedar Gardens entity.").

Defendant responds that the standard for a protective order is not whether discovery is cumulative or duplicative, but whether it is "unreasonably" cumulative or duplicative. Def.'s Resp. 8. Defendant insists that its Rule 30(b)(6) notice does not rise to this level, thus plaintiffs have failed to show that a protective order is warranted.

II.    Legal Standard

The court's rules provide that the court must limit discovery if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

RCFC 26(b)(2)(C). As further provided by the court's rules, a party may seek a protective order from discovery, and "[t]he court may, for good cause, issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense. . . ." RCFC 26(c)(1) (emphasis added). The court has a variety of options should it find that a motion for protective order is warranted, including "forbidding the . . . discovery," or "forbidding inquiry into certain matters, or limiting the scope of . . . discovery to certain matters." RCFC 26(c)(1)(A), (D).

The burden of demonstrating "good cause" rests with the party seeking to shield itself from discovery. Capital Props., Inc. v. United States, 49 Fed. Cl. 607, 611 (2001). In order to establish "good cause," a party must show "that the discovery request is considered likely to oppress an adversary or might otherwise impose an undue burden." Sparton Corp. v. United States, 44 Fed. Cl. 557, 561 (1999). "The movant must make a 'particularized factual showing' that it will suffer harm if the Court does not issue a protective order." Iris Corp. Berhad v. United States, 84 Fed. Cl. 489, 492 (2008) (quoting AG-Innovations, Inc. v. United States, 82 Fed. Cl. 69, 78 (2008)).

To show an undue burden under Rule 26(c), courts have said that the movant "must show a clearly defined and serious injury." Millsaps v. Aluminum Co. of Am., No. 10-84924, 2012 WL 203458, at *2 (E.D. Pa. Jan. 24, 2012) (quoting City of St. Petersburg v. Total Containment, Inc., No. 07-191, 2008 WL 1995298, at *2 (E.D. Pa. May 5, 2008)); U.S. Commodity Futures Trading Comm'n v. Whitney, 441 F. Supp. 2d 61, 70 (D.D.C. 2006) ("[U]ndue burden exists if [the movant] demonstrates that it will suffer 'clearly defined and serious injury' if the discovery were permitted without a protective order." (quoting McKesson HBOC, Inc. v. Islamic Republic of Iran, 226 F.R.D. 56, 57 (D.D.C. 2004)).

Ultimately, whether to issue a protective order is "committed to the discretion of the trial court." Florsheim Shoe Co., Div. of Interco, Inc. v. United States, 744 F.2d 787, 797 (Fed. Cir. 1984).

III.   Discussion

As the movant, plaintiffs have the burden to show that producing a Cedar Gardens witness to respond to topic numbers 1-13 in defendant' Rule 30(b)(6) deposition would be an undue burden. See RCFC 26(c)(1).

Plaintiffs object to producing a Rule 30(b)(6) witness on topic numbers 1-13 for three reasons. "[T]he issue is whether the additional discovery the Government seeks is objectionable, given Mr. Bancroft's advanced age, the fact that he was previously deposed for two days to preserve his testimony, and Plaintiffs' offer to stipulate that his prior testimony is binding on the partnership entity." Pls.' Mot. 4. Plaintiffs argue this discovery is "unduly burdensome" because "the majority of the topics identified in the present notice are duplicative and cumulative" of Mr. Bancroft's August 2013 deposition. Id. at 1. Plaintiffs have never disputed that the discovery is relevant.

Defendant does not dispute plaintiffs' characterization of topic number 1 to 13 as duplicative and cumulative of Mr. Bancroft's August 2013 deposition, in fact, defendant acknowledges that "Mr. Bancroft testified about many of the subjects that are to be

addressed in the Rule 30(b)(6) deposition." [4]  Def.'s Resp. 8.  Nonetheless, defendant
argues that its notice is neither "unduly burdensome," nor "unreasonably cumulative," id.
at 6-7, and that Rule 26 prohibits "only unreasonably cumulative testimony," id. at 8.
Plaintiffs reply that "additional testimony about topics already testified to by Mr.
Bancroft combined with the offer to stipulate that the prior testimony would bind and be
admissible against the [Cedar Gardens] partnership renders the testimony sought in the
requested Rule 30(b)(6) deposition unreasonably cumulative."  Pls.' Reply 3 n.4.

In the court's view, there are two parts to plaintiffs' motion—its offer that Cedar
Gardens be bound by Mr. Bancroft's individual deposition testimony, and if so, whether
defendant may question Mr. Bancroft about topic numbers 1-13 beyond those questions
he answered during his August 2013 deposition.

A.     Cedar Gardens' Stipulation to Be Bound by Mr. Bancroft's August
       2013 Individual Deposition Testimony

Plaintiffs emphasize that Mr. Bancroft is the only available Cedar Gardens
witness.  Pls.' Mot. 5 ("Mr. Bancroft is the only surviving partner of Cedar Gardens.").
While defendant acknowledges this point, see Def.'s Resp. 4 n.1, it nonetheless suggests
that plaintiffs are not obligated to name Mr. Bancroft as the Rule 30(b)(6) witness for
Cedar Gardens.  Id. at 6-7 ("Mr. Bancroft need not testify.").  As plaintiffs correctly point
out, even were they to find another witness, that person would be obligated to educate
himself by reviewing Mr. Bancroft's earlier testimony, and talking to Mr. Bancroft, if he
were available.  See Pls.' Reply 9.

Defendant does not assert that it would be prejudiced if Cedar Gardens was bound
by Mr. Bancroft's individual testimony, and it offered no explanation for its refusal to
accept plaintiffs' offer, which they renewed in their motion.

Defendant points out, however, that it offered Cedar Gardens a compromise.
Defendant would withdraw topic numbers 1-13 from its Rule 30(b)(6) notice, if Cedar
Gardens would stipulate to two facts relevant to the regulatory takings analysis under
Penn Central Transportation Co. v. New York City, 438 U.S. 104 (1978). [5]

---

[4]     Neither deposition notice is in the record, so the court accepts the parties mutual
position that topic numbers 1-13 of defendant's Rule 30(b)(6) notice are duplicative of
topics about which Mr. Bancroft was questioned during his August 2013 individual
deposition.

[5]     This was defendant's second attempt at compromise.  In its first attempt, it agreed
to withdraw topic numbers 1-13, if Cedar Gardens would stipulate that: (1) it was

> [I]n the interest of compromise, we are prepared to limit the deposition [to the "additional property" near Cedar Gardens] if you in turn will stipulate that (1) the Cedar Gardens partnership does not know what benefits afforded by the 221(d)(3) program led the partnership to participate in the 221(d)(3) program in 1971, and (2) the Cedar Gardens project was sold pursuant to LIHPRHA at the project's fair market value as determined by Cedar Garden's appraiser.

Def.'s Resp. 5 (citing DA29).  In defendant's view, "[t]hese propositions seemingly were established by Mr. Bancroft's deposition testimony."  Id. (citing PA004, PA018). Plaintiffs declined.  Defendant later characterized these stipulations as "more specific stipulations" than Mr. Bancroft's testimony.  Id. at 10.  Through its offers, it is apparent that defendant has no objection to accepting stipulations in lieu of Rule 30(b)(6) testimony, as long as it specifies the stipulations.

Thus, the court finds there is no reason not to accept plaintiffs' offer to permit Cedar Gardens Associates to be bound by Mr. Bancroft's individual deposition testimony.  Plaintiffs have no other Cedar Gardens witness, and asking the same individual the same questions would be unreasonably duplicative.  See RCFC 26(b)(2)(C).

> B. Cedar Gardens Testimony on Topics 1-13 Beyond Mr. Bancroft's August 2013 Deposition

Remaining is the question of whether plaintiffs are entitled to a protective order for topic numbers 1-13 for questions beyond those Mr. Bancroft answered during his August 2013 deposition.

Plaintiffs rely on Novartis Pharmaceuticals Corp. v. Abbott Laboratories, in which the court declined to compel a Rule 30(b)(6) deposition, where the designated witness had previously been deposed on an individual basis on the same topics, and the testifying party offered to be bound by the witness's earlier individual testimony.  Pls.' Mot. 9 (citing Novartis, 203 F.R.D. 159, 162-63 (D. Del. 2001)).

Defendant in turn points to several cases in which courts have refused to enter a protective order for a Rule 30(b)(6) deposition, despite the fact that the designated

---

asserting no claim regarding the "additional property," and (2) it did not know why Cedar Gardens entered the [HUD] Section 221(d)(3) program.  See Def.'s Resp. 5 (citing DA018-DA019).  Cedar Gardens declined.  Id. (citing DA023).

witness had previously been deposed on an individual basis.  <u>See</u> Def.'s Resp. 8 (citing <u>N.H. Ins. Co. v. Blackjack Cove, LLC</u>, No. 3:10-cv-00607, 2013 WL 5278667, at *2 (M.D. Tenn. Sept. 18, 2013); <u>La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer</u>, 285 F.R.D. 481, 487 (N.D. Cal. 2012); <u>Kelly v. Provident Life & Accident Ins. Co</u>., No. 04cv807, 2011 WL 2448276, at *4 (S.D. Cal. June 20, 2011)).

None of the parties' cases, however, are exactly like the situation with Cedar Gardens.  In <u>Novartis</u>, there is no indication that the testifying party had voluntarily agreed to produce its Rule 30(b)(6) witness to answer questions about new topics, as Cedar Gardens has.  This is relevant because it pertains to the burden imposed on the witness.  The other cases, on which defendant has relied, are also inapposite because none of those cases involve an offer by the testifying party to be bound by its witness's earlier individual testimony, as Cedar Gardens has offered in this case.

The court is left to consider whether the burden on Cedar Gardens is undue, given the "needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  RCFC 26(b)(2)(C)(iii).

Defendant argues that when it deposed Mr. Bancroft, it did not know plaintiffs would name Cedar Gardens as a First Wave property.  Def.'s Resp. 9.  While the record supports defendant's assertion, defendant offers no explanation as to why this matters.  The only difference between the six First Wave plaintiffs and the remaining non-First Wave plaintiffs is the timing of their discovery and possible trial.  Each plaintiff has the same <u>Penn Central</u> burdens of proof, regardless of whether or not it is a First Wave plaintiff.

Defendant further argues that when it took Mr. Bancroft's deposition, it was unaware that Cedar Gardens would have no other available witnesses.  <u>Id.</u> ("The United States had no inkling that Cedar Gardens would subsequently take the position that the Bancroft deposition should be the Government's only opportunity for deposition discovery.").  Plaintiffs do not deny this, and describe defendant's argument as a "red herring."  Pls.' Reply 5.  Plaintiffs add that when defendant deposed Mr. Bancroft, it knew it might have no other opportunity to do so, given both his advanced age and health issues, and therefore it should have known it had to ask all its questions at that time.  <u>Id.</u> at n.6.

The court finds that while plaintiffs have shown that defendant should have known the August 2013 deposition would be its only opportunity to question <u>Mr. Bancroft</u>, it has not shown that it put defendant on notice—prior to Mr. Bancroft's August 2013

deposition—that Cedar Gardens had no other available witness, so that the August 2013 deposition was also defendant's only opportunity to question Cedar Gardens.

Defendant also emphasizes its need to defend against plaintiffs' claim on the two Penn Central factors.  Def.'s Resp. 2, 6 n.2, 7 ("To defend this claim, the United States needs discovery about LIHPRHA's economic impact on the project and the [Cedar Gardens] partnership's expectations at the time it entered into the HUD program." (citing Cienega Gardens v. United States (Cienega X), 503 F.3d 1266, 1288 (Fed. Cir. 2007)).

Considering the relevant facts, the court does not find that the additional discovery is an undue burden.  By accepting Cedar Gardens' offer to be bound by Mr. Bancroft's earlier testimony, and by limiting defendant's questions on topic numbers 1-13, if any, to those beyond its earlier questions, the court has addressed plaintiffs' concern about the burden of answering questions that are duplicative of Mr. Bancroft's earlier testimony.

Having done so, plaintiffs' only remaining objection to answering questions on topic numbers 1-13 is Mr. Bancroft's advanced age.  See Pls.' Mot. 4.  Taking into consideration the importance of the issues at stake in this case, defendant's need to defend itself on the two Penn Central factors, and the fact that Cedar Gardens is voluntarily producing Mr. Bancroft to answer questions about new topics, plaintiffs' complaint based on Mr. Bancroft's age is insufficient to show undue burden.

Plaintiffs' motion for a protective order is **GRANTED-IN-PART** and **DENIED-IN-PART**.  The court enters the protective order below.

First Wave plaintiff Cedar Gardens Associates will be bound by the August 28, 2013 and August 29, 2013 individual deposition testimony of James R. Bancroft.

Defendant will limit its examination of Cedar Gardens Associates' Rule 30(b)(6) witness on topic numbers 1-13, if any, to questions it did not direct to Mr. Bancroft during his August 28, 2013 and August 29, 2013 individual deposition.

Plaintiffs' motion is otherwise denied.  The court informs the parties that defendant's motion for protective order is under active consideration.

IT IS SO ORDERED.

s/ Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Chief Judge