# In the United States Court of Federal Claims

No. 93-655C

(E-Filed: April 8, 2022)

|  |  |  |
|---|---|---|
| ANAHEIM GARDENS, et al., | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | Motion to Dismiss; RCFC 12(b)(1); Standing; Limited Partnership; Legal Existence. |
| THE UNITED STATES, | ) ) | |
| Defendant. | ) ) | |

Harry J. Kelly, Washington, DC, for plaintiffs.

Shari A. Rose, Senior Trial Counsel, with whom were Brian M. Boynton, Acting Assistant Attorney General, Martin F. Hockey, Jr., Acting Director, Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant, with Amanda L. Tantum, Senior Trial Counsel, and Sarah E. Kramer and In K. Cho, Trial Attorneys, of counsel.

OPINION AND ORDER

CAMPBELL-SMITH, Judge.

On August 27, 2021, defendant filed a motion to dismiss plaintiffs' complaint in this case pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), or in the alternative, for summary judgment pursuant to RCFC 56. See ECF No. 578. Plaintiffs filed their response to defendant's motion to dismiss on September 24, 2021, see ECF No. 579; and defendant filed its reply in support of its motion on October 15, 2021, see ECF No. 580. Pursuant to the court's order granting them leave, see ECF No. 586, on December 21, 2021, plaintiffs filed a supplemental brief regarding defendant's motion to dismiss, see ECF No. 587, to which defendant responded on January 5, 2022, see ECF No. 588. Plaintiffs replied on January 11, 2022. See ECF No. 589. On March 29, 2022, the court held oral argument on this motion. The motion is thus fully briefed and ripe for decision.

The court has considered all of the parties' arguments and addresses the issues that are pertinent to the court's ruling in this opinion.  For the following reasons, defendant's motion to dismiss is **DENIED**.

I.   Background

   A.   Procedural History

Plaintiffs in this case assert takings claims based on the enactment of the Emergency Low Income Housing Preservation Act of 1987, Pub. L. No. 100-242, § 202, 101 Stat. 1877 (1988), and the Low-Income Housing Preservation and Resident Homeownership Act of 1990, Pub. L. No. 101-625, 104 Stat. 4249 (1990), known collectively as the "Preservation Statutes," which plaintiffs allege prevented them from exercising their contractual mortgage prepayment rights for government loans on subsidized apartment complexes.[1]  See ECF No. 492 at 4-6 (cited at Anaheim Gardens L.P. v. United States, 953 F.3d 1344, 1347-48 (Fed. Cir. 2020)); see also ECF No. 412 at 27-28 (plaintiffs' seventh amended complaint).

Following the United States Court of Appeals for the Federal Circuit's reversal of this court's summary judgment decision in favor of defendant, in early 2021, the parties had been preparing for trial on the claims of Buckman Gardens L.P., Chauncy House Company, Cedar Gardens Associates, Rock Creek Terrace L.P., and 3740 Silverlake Village, L.P. (Silverlake), known as the First Wave Plaintiffs (FWPs) in this case.  See ECF No. 492 at 5-6, 22 (cited at Anaheim Gardens, 953 F.3d at 1348, 1357); see also ECF No. 564 (trial management order).  During the trial preparation process, defendant filed a motion to dismiss arguing that four of the five FWPs were no longer recognized entities and, therefore, no longer had the necessary standing to pursue their claims in this case.  See ECF No. 563 at 7-8.

After briefing on defendant's initial motion was complete, the court determined that it required additional information from the parties and ordered supplemental briefing.  See ECF No. 569 at 1 (March 25, 2021 scheduling order).  The parties filed their supplemental briefs and, in doing so, both parties presented new legal theories of the case.  See ECF No. 573 (July 23, 2021 scheduling order explaining the procedural history of defendant's motion to dismiss).  The court, therefore, denied defendant's motion as moot and ordered defendant to file a renewed motion to dismiss presenting a "comprehensive and cohesive argument in support of its current position."  Id. at 3.

Defendant did so.  See ECF No. 578.  In its renewed motion, defendant argued that only two of the FWPs lacked the ability to bring their claims—Buckman Gardens, L.P., and Silverlake.  See id. at 7.  Defendant noted that it no longer challenged "the

---

[1]   This case has a long history; much of the pertinent procedural background of this dispute may be found in Anaheim Gardens L.P. v. United States, 953 F.3d 1344 (Fed. Cir. 2020).

standing or capacity" of plaintiffs Rock Creek Terrace, L.P., Cedar Gardens Associates, and Chauncy House Company.  Id. at 7 n.1.

After briefing on defendant's renewed motion was complete, plaintiff moved for leave to file a supplemental brief, which the court granted.  See ECF No. 586 (order); see also ECF No. 587 (plaintiff's supplemental brief).  In its supplemental brief, plaintiff argued that Silverlake "completed all steps required by California law for reinstatement of the limited partnership," ECF No. 587 at 3, and, consequently, "now has all the powers, rights, and obligations of a California limited partnership," including the ability to maintain its suit, id. at 4.  In response, defendant agreed that plaintiff's reinstatement "restored its capacity to maintain suit" and withdrew its motion to dismiss pursuant to RCFC 12(b)(6) and, in the alternative, motion for summary judgment "as to Silverlake."[2]  ECF No. 588 at 2.  The court, therefore, addresses in this opinion only Buckman Gardens' ability to maintain its suit and will refer to Buckman Gardens as plaintiff throughout this opinion.

      B.      Plaintiff's History[3]

Plaintiff was formed on September 28, 1971, as a limited partnership under the laws of the Commonwealth of Virginia.  See ECF No. 578-1 at 9, 21 (plaintiff's Sept. 28, 1971 limited partnership agreement).  There were two general partners—John G. Gosnell and Clarence W. Gosnell, Jr.—and two limited partners—Murray Haber and Richard S. Bright.  See id. at 9.  The limited partnership was formed to "construct, operate, maintain and improve, and to buy own, sell, convey, assign, mortgage or lease real estate and any personal property necessary to the operation of a housing project known as Buckman Gardens."  Id. at 9.  The agreement forming the limited partnership provided that the partnership term would end in 2014, but also provided that it may be terminated by:

---

[2]     The parties disagree about the date that Silverlake's reinstatement took effect.  See ECF No. 588 at 2 (defendant stating that Silverlake was reinstated as of November 29, 2021); ECF No. 589 at 3 (plaintiff arguing that the court "should not adopt [defendant's] misstatements about the timing of, or purported need for, reinstatement of Silverlake," and that the actual date of reinstatement was October 22, 2021).  The court declines to make any finding as to either the date of Silverlake's reinstatement or whether its reinstatement was required because the issue was rendered moot by defendant's withdrawal of its motion to dismiss pursuant to RCFC 12(b)(6) and, in the alternative, motion for summary judgment.

[3]     Because "standing is a threshold jurisdictional issue," Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002), and defendant challenges the jurisdictional facts in the complaint—those related to plaintiff's corporate status—the court "may consider relevant evidence in order to resolve the factual dispute," Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988).  The court will, therefore, review and rely on the facts contained in the parties' appendices, attached to their briefing on this motion.  See ECF No. 578-1 (defendant's appendix); ECF No. 579-1 (plaintiff's appendix).

  (i)  The bankruptcy, insolvency, resignation, death, incapacity or removal of both General Partners.

  (ii)  The sale or destruction of the improvements comprising the project.

  (iii)  The payment in full, foreclosure or other discharge of the FHA Insured Mortgage covering the project (the "FHA Insured Mortgage").

  (iv)  The unanimous written consent of all the General and Limited Partners.

Id. at 10.

  Plaintiff owned and operated the apartment complex until 1996. See ECF No. 579-1 at 6 (Sept. 13, 2021 declaration of John Wall). On March 27, 1996, plaintiff "transferred operational responsibilities" of the property, and on April 15, 1996, the sale of the property became final at the time of closing. Id. at 6-7. "Because Buckman Gardens was a single purpose entity, once the apartment complex was sold, Buckman Gardens did not have ongoing business activities to conduct." Id. at 7. The partnership agreement provided that "upon dissolution of the Partnership or upon termination thereof, . . . , the General Partners shall proceed to the liquidation and termination of the Partnership." ECF No. 578-1 at 17. Thus, according to plaintiff, upon sale of the property, plaintiff "continued the remaining activity required to wind up its affairs." ECF No. 579-1 at 7. This included "complet[ing] and submitt[ing] audited financial statements and supplementary information for the period end[ing on] March 27, 1996, as required by the United States Department of Housing and Urban Development." Id.

  In August 1997, plaintiff "became a plaintiff in Algonquin Heights v. United States, No. 97-582[C]," which was then consolidated with this suit. Id. According to plaintiff, the general partners—John G. Gosnell and Clarence W. Gosnell, Jr.—viewed any judgment resulting from their claims in this case as an asset of the partnership." ECF No. 579 at 14 (citing ECF No. 579-1 at 100 (Sept. 22, 2021 declaration of Barry Gosnell)).

II.  Legal Standards

  When a challenge is mounted pursuant to RCFC 12(b)(1), plaintiff bears the burden of establishing this court's subject matter jurisdiction by a preponderance of the evidence. See Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988); Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993). In reviewing plaintiff's allegations in support of jurisdiction, the court must presume all undisputed facts are true and construe all reasonable inferences in plaintiff's favor. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v.

Fitzgerald, 457 U.S. 800, 814-15 (1982); Reynolds, 846 F.2d at 747 (citations omitted). If, however, a motion to dismiss "challenges the truth of the jurisdictional facts alleged in the complaint, the . . . court may consider relevant evidence in order to resolve the factual dispute." Reynolds, 846 F.2d at 747. If the court determines that it lacks subject matter jurisdiction, it must dismiss the complaint. See RCFC 12(h)(3).

"Standing is a threshold jurisdictional issue." Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002); see also Fund Liquidation Holdings, LLC v. Bank of Am. Corp., 991 F.3d 370, 382-84 (2d Cir. 2021) (noting that, in the context of a suit filed by a dissolved corporation, standing must be determined at the outset). Standing is determined when a case is filed. See Arizonans for Official English v. Arizona, 520 U.S. 43, 68 n.22 (1997) ("'The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'") (quoting United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980)). In the case of a dissolved partnership, "a plaintiff corporation or partnership must have legal existence to have constitutional standing." See Fund Liquidation Holdings, 991 F.3d at 386. Whether a dissolved partnership has a legal existence, however, is a question of state law. See id.

III.     Analysis

    A.     Upon Sale of the Building, Plaintiff's Term Ended and Its Winding Up Process Began

In its motion, defendant argues that plaintiff had no legal existence at the time it filed its suit, and therefore, had no standing to bring its claims. See ECF No. 578 at 8, 15-17. Specifically, defendant contends that plaintiff's partnership agreement provided that the limited partnership would terminate upon the sale of the building, which occurred in 1996—more than one year before plaintiff filed its complaint. See id. at 17. Defendant argues that plaintiff's sale of the building "trigger[ed] an immediate termination of the partnership, rather than dissolution." Id. According to defendant, plaintiff did not amend the partnership agreement to effect its continuity after termination. See id. Thus, defendant contends, plaintiff did not legally exist when it filed its complaint in 1997, and it therefore lacks standing. See id.

Plaintiff does not dispute that it sold the building or that the sale triggered the end of the partnership. See ECF No. 579 at 20. Plaintiff argues, however, that Virginia law establishes that not until a partnership has completed winding up can it—as a matter of law—terminate. See id. at 20-22. Citing the partnership agreement, plaintiff contends that termination is the end of the term of the agreement and the beginning of the winding up process. See id. at 21 (citing Section 10 of the partnership agreement). According to plaintiff, the partnership agreement required that "'UPON DISSOLUTION AND TERMINATION,' . . . the partnership must 'proceed to liquidation.'" Id. (quoting and

5

citing ECF No. 578-1 at 17 (partnership agreement)) (emphasis in original).  Plaintiff argues that it was winding up after the sale of the building and that it therefore had a legal existence when it filed its complaint.  See id. at 22.

The court agrees with plaintiff that the sale of the building did not immediately terminate plaintiff's legal existence.  The partnership agreement clearly provides for a winding up period upon both dissolution and termination.  See ECF No. 578-1 at 17 (stating that "upon dissolution of the Partnership or upon termination therefore, . . . , the General Partners shall proceed to the liquidation and termination of the Partnership").  It is the view of the court that the sale of the building terminated the limited partnership and began the winding up process described in the partnership agreement.  See id.  Accordingly, plaintiff filed its complaint in this matter during its winding up phase.

### B. Plaintiff Had Standing to Bring its Suit

The court must next determine whether, under Virginia law, a limited partnership in its winding up period continues to have a legal existence such that it may file a lawsuit.  See, e.g., Fund Liquidation Holdings, 991 F.3d at 386.  To make this determination, the court turns to the Virginia Revised Uniform Limited Partnership Act (RULPA).  See Va. Code §§ 50-73.1-50-73.78.  The pertinent statute, located in Article Eight of RULPA (entitled "Dissolution"), is titled "Winding Up."  Id. § 50-73.51.  Virginia law allows the "general partners who have not wrongfully dissolved a limited partnership," to wind up the partnership.  Id. at § 50-73.51(B).  If no such general partner exists, the limited partners, "or a person or persons approved by the limited partners" may wind up the limited partnership.  Id.

The statute does not explicitly describe the entire universe of activities that may be deemed to be part of the winding up process.  It does, however, list the activities that a liquidating trustee—defined as "a person, other than a general partner, but including a limited partner, who carries out the winding up of a limited partnership as provided in this chapter," id. § 50-73.1—may carry out in service of winding up, id. at § 50-73.51(C).  In that section, the law permits a liquidating trustee to "prosecute and defend suits, whether civil, criminal or administrative."  Id.  Likewise, Virginia's Uniform Partnership Act, which applies to limited partnerships in the absence of a specific provision of RULPA, see id. § 50-73.75, provides that "[a] person winding up a partnership's business may . . . prosecute and defend actions and proceedings, whether civil, criminal, or administrative," id. § 50-73.119(C).  Black's law dictionary defines "prosecute" as follows:  "To commence and carry out (a legal action)."  Black's Law Dictionary (11th ed. 2019).

During the oral argument held on the subject of this motion, the parties addressed Virginia law.  See ECF No. 594 (oral argument transcript).  Defendant conceded that, if the court found plaintiff existed at the time it filed its complaint, this statute may apply.

See id. at 7. It argued, however, that no liquidating trustee had been appointed, plaintiff's general partners have passed away, and the statute is narrowly drafted as to who may continue litigation. See id. at 7, 13-14, 17. Plaintiff responded that no liquidating trustee need be appointed for the case to continue. See id. at 8-10. According to plaintiff, standing was determined at the outset of the case and the general partners were alive at that time. See id. at 8-9. Plaintiff further argued that one of the limited partners—Murray Haber—is still living and also party to the case. See id. at 11, 15-16; see also Algonquin Heights v. United States, Case No. 97-582C, ECF No. 54 (plaintiffs' second amended complaint listing Mr. Haber as a plaintiff). Plaintiff thus contended that it had standing to bring its case and the general partners' deaths had no impact on the case. See id. at 9, 18-19.

In the court's view, Virginia law, interpreted in conjunction with the definition of "prosecute," permits a limited partnership to initiate a lawsuit during the period of its winding up. See Va. Code § 50-73.51(B), (C); § 50-73.119(C). Defendant has not pointed to any evidence that plaintiff has filed a certificate of cancellation, or otherwise completed the process of winding up to cancellation. See ECF No. 578; ECF No. 580. When plaintiff filed this suit, its general partners were living and were parties to the suit, as were its limited partners.[4] See ECF No. 326-4 at 2 (status report listing all plaintiffs active in the case). Mr. Haber continues to be a plaintiff in this case and, under Virginia law, may wind up plaintiff's affairs in the absence of the general partners.[5] See Va. Code § 50-73.51(B). The court thus concludes that, under Virginia law, plaintiff maintained a legal existence after its termination such that it was permitted to file this suit during the period of its winding up and plaintiff's limited partner, Mr. Haber, is authorized by law to wind up the partnership's affairs, including the continued prosecution of this lawsuit. Plaintiff, therefore, has standing and defendant's motion must be denied.

---

[4]     During oral argument, plaintiff asserted that John Wall was and remains plaintiff's designated agent for purposes of carrying out this litigation. See ECF No. 594 at 11-12. The court, however, does not reach the legal significance of Mr. Wall's involvement or ability to operate as an agent because Murray Haber's continued presence and participation is sufficient for to continue to prosecute this action.

[5]     In the court's view, RULPA's definition of a liquidating trustee as a "a person, other than a general partner, but including a limited partner, who carries out the winding up of a limited partnership as provided in this chapter," Va. Code § 50-73.1, may include Mr. Haber even if he was not so appointed by the court as is permissible pursuant to Virginia Code § 50-73.51(B). The court need not reach that question, however, because the statute permits Mr. Haber as a limited partner to wind up plaintiff's business and includes in the winding up process the filing and continued prosecution of litigation. See Va. Code § 50-73.51(C); id. at § 50-73.119(C).

IV.	Other Pending Matters and Future Proceedings

The court's March 19, 2021 order cancelled the scheduled April 5, 2021 trial in this case for FWPs to allow the court to resolve defendant's motion to dismiss.  See ECF No. 568.  On March 25, 2021, the court stayed the parties' five motions in limine (ECF No. 512; ECF No. 513; ECF No. 514; ECF No. 529; and ECF No. 532) and defendant's motion for leave to amend its exhibit list (ECF No. 542).  See ECF No. 569 at 3.  Because the court shall require the parties to review their pretrial filings prior to trial, defendant's motion to amend its exhibit list, ECF No. 542, shall be denied, as moot.  Before the court lifts the stay on the parties' motions in limine, the court will allow the parties the opportunity to inform the court whether the motions can be decided as currently filed or whether they require any changes.

The court will hold the pretrial conference and trial in this matter virtually through the use of Zoom for Government.  The parties shall propose dates for the pretrial conference and trial in a joint status report to be filed on or before April 22, 2022, and shall also indicate in that report whether the parties believe that they are still in need of thirteen days for trial.

Given the length of time since the parties filed the documents required by RCFC Appendix A, Part VI, ¶¶ 14(a) and (c), 15, and 16, the court asks that the parties review their filings and file a joint status report indicating whether any of the filings require updating prior to trial.  Because the docket in this matter is voluminous, the court summarizes its understanding of the parties' operative filings below.  Should the court's understanding be deficient, the parties shall so indicate in their joint status report.

| Filing | Plaintiff ECF No. | Defendant ECF No. | Joint ECF No. |
|---|---|---|---|
| Memorandum of Facts and Law | 511 | 538 | |
| Witness List | 504 | 522 | |
| Objections to Witnesses | 544 | 520 | |
| Exhibit List | 506 | 517 | |
| Objections to Exhibits | 543 | 518 | |
| Joint Stipulations | | | 546 |
| Joint Exhibits | | | 545 |
| Final List of Exhibits to Which There Are Objections | 543 | 547 | |
| Final List of Witnesses to Which There Are Objections | 544 | 548 | |

V.  Conclusion

Accordingly, for the foregoing reasons:

(1) Defendant's motion to dismiss pursuant to RCFC 12(b)(1) as to plaintiff Buckman Gardens, L.P., ECF No. 578, is **DENIED**, and defendant's motion to dismiss pursuant to RCFC 12(b)(6) and, in the alternative, motion for summary judgment as to plaintiff 3740 Silverlake Village, L.P., ECF No. 578, is **DENIED** as moot;

(2) The pending motions in limine in this case, ECF No. 512, ECF No. 513, ECF No. 514, ECF No. 529, and ECF No. 532, shall remain **STAYED** until further order of the court;

(3) The clerk's office is directed to **LIFT** the stay on defendant's motion for leave to file an amended exhibit list, ECF No. 542;

(4) Once the stay is lifted, defendant's motion for leave to amend its exhibit list, ECF No. 542, is **DENIED** as moot; and

(5) On or before **April 22, 2022**, the parties are directed to **CONFER** and **FILE** a **joint status report** informing the court whether the parties' motions in limine can be decided as currently filed; whether any of the parties' pretrial filings listed in the Fourth Amended Scheduling Order, ECF No. 503, and in the chart above, require updating prior to trial in this matter; whether the parties believe that thirteen days will be sufficient time for trial in this case; and proposing dates for the pretrial conference and trial in this matter.

IT IS SO ORDERED.

                                                s/Patricia E. Campbell-Smith
                                                PATRICIA E. CAMPBELL-SMITH
                                                Judge